### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM C. STEPPACHER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br><div align="right">Plaintiff,</div><br><div align="center">v.</div><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, and RICHARD MOWSER,<br><br><div align="right">Defendants.</div> | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff William C. Steppacher, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Alfi, Inc. ("Alfi" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Alfi common stock or warrants pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about May 4, 2021 (the "IPO" or "Offering"); and/or (b) Alfi securities between May 4, 2021 and November 15, 2021, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Alfi provides interactive artificial intelligence and machine learning software solutions.  The Company was led by, among other management, Chief Executive Officer ("CEO") Paul Antonio Pereira ("P. Pereira"), Chief Technology Officer ("CTO") Charles Raglan Pereira ("C. Pereira"), and Chief Financial Officer ("CFO") Dennis McIntosh ("McIntosh").

3.      On January 8, 2021, Alfi filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on May 3, 2021 (the "Registration Statement").

4.      On or about May 4, 2021, pursuant to the Registration Statement, Alfi's common stock and warrants began trading on the NASDAQ Capital Market ("NASDAQ") under the trading symbols "ALF" and "ALFIW", respectively.

5.      On May 5, 2021, Alfi filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

6.      Pursuant to the Offering Documents, Alfi conducted the IPO, selling approximately 3.7 million shares of common stock, and approximately 3.7 million warrants, to the public at the Offering price of $4.15 per both share and warrant for approximate proceeds to the Company of $14 million after applicable underwriting discounts and commissions, and before expenses.

7.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Alfi maintained deficient disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Company and its employees could and did engage in corporate transactions and other matters without sufficient and appropriate consultation with or approval by the Company's Board of Directors (the "Board"); (iii) all the foregoing increased the risk of internal and regulatory investigations into the Company and its employees; (iv) all the foregoing, once revealed, was likely to have a material negative impact on the Company's reputation, financial condition, and ability to timely file periodic reports with the SEC; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.      On October 28, 2021, Alfi disclosed in an SEC filing that, on October 22, 2021, the Board had placed P. Pereira, C. Pereira, and McIntosh "on paid administrative leave and authorized an independent internal investigation regarding certain corporate transactions and other matters." That filing further disclosed, among other changes, that on October 22, 2021, the Board had

appointed a new interim CEO and Chairman of the Board, and that "[o]n October 28, 2021, Mr. C. Pereira's employment with the Company was terminated."

9.      On this news, Alfi's stock price fell $1.24 per share, or 21.91%, to close at $4.42 per share on October 29, 2021.

10.     On November 1, 2021, Alfi disclosed in another SEC filing, among other matters, that the Company's Chair of the Audit Committee had resigned from the Board, and details concerning the corporate transactions and matters that had precipitated the internal investigation into P. Pereira, C. Pereira, and McIntosh.   According to that filing, the internal investigation resulted from "the Company's purchase of a condominium for a purchase price of approximately $1.1 million" and "the Company's commitment to sponsor a sports tournament in the amount of $640,000," both of which "were undertaken by the Company's management without sufficient and appropriate consultation with or approval by the Board."

11.     Then, on November 15, 2021, Alfi disclosed that it "received a letter from the staff of the [SEC] indicating that the Company, its affiliates and agents may possess documents and data relevant to an ongoing investigation being conducted by the staff of the SEC" and "that such documents and data should be reasonably preserved and retained until further notice."  According to Alfi, "[t]he materials to be preserved and retained include documents and data created on or after April 1, 2018 that[,]" among other things, "were created, modified or accessed by certain named former and current officers and directors of the Company or any other officer or director of the Company" or "relate or refer to the condominium or the sports tournament sponsorship identified in the Company's Current Report on Form 8-K filed on November 1, 2021, or financial reporting and disclosure controls, policies or procedures."

12. Also on November 15, 2021, Alfi announced "that Louis A. Almerini, CPA, has been appointed by the [Board] to serve as interim [CFO], effective November 8, 2021."

13. Finally, on November 16, 2021, Alfi filed a notice of its inability to timely file its quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2021 (the "3Q21 10-Q"). That filing cited, *inter alia*, "recent changes in the Company's [CEO] and [CFO] and in the Chair of the Audit Committee" of the Board, as well as needing "a new independent registered public accounting firm," as reasons for the Company's inability to timely file the 3Q21 10-Q.

14. Following these disclosures, the Company's stock price fell $0.24 per share, or 5.21%, to close at $4.37 per share on November 16, 2021.

15. As of the time this Complaint was filed, the price of Alfi common stock and warrants were trading below the $4.15 per share Offering price, damaging investors.

16. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

17. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

18. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

19.     Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Alfi is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

20.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

21.     Plaintiff purchased or otherwise acquired Alfi common stock or warrants pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Alfi securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein. Plaintiff attaches his Certification hereto with Schedule A of transactions.

22.     Defendant Alfi is a Delaware corporation with principal executive offices located at 429 Lenox Avenue, Suite 547, Miami Beach, Florida.  Alfi's common stock and warrants trade in an efficient market on the NASDAQ under the trading symbols "ALF" and "ALFIW", respectively.

23.     Defendant P. Pereira served as Alfi's Chairman of the Board, President, and CEO from before the start of the Class Period to October 22, 2021.  P. Pereira is also a co-founder of the Company.  P. Pereira signed or authorized the signing of the Registration Statement filed with the SEC.

24.     Defendant McIntosh served as Alfi's CFO and Treasurer from before the start of the Class Period to November 8, 2021. McIntosh signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendants P. Pereira and McIntosh are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

26.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Alfi's SEC filings, press releases, and other market communications. The Exchange Act Individual Defendants were provided with copies of Alfi's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Alfi, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

27.     Alfi and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

28.     Defendant John M. Cook, II ("Cook") has served as Alfi's Chief Business Development Officer at all relevant times. Cook also served as a Director of the Company at the time of the IPO. Cook signed or authorized the signing of the Registration Statement filed with the SEC.

29.     Defendant Peter Bordes ("Bordes") has served as a Director of Alfi at all relevant times.  Bordes has also served as the Company's Interim CEO since October 22, 2021.  Bordes signed or authorized the signing of the Registration Statement filed with the SEC.

30.     Defendant Jim Lee ("Lee") has served as a Director of Alfi at all relevant times.  Lee has also served as the Company's Chairman of the Board since October 22, 2021.  Lee signed or authorized the signing of the Registration Statement filed with the SEC.

31.     Defendant Justin Elkouri ("Elkouri") served as a Director of Alfi at the time of the IPO.  Elkouri signed or authorized the signing of the Registration Statement filed with the SEC.

32.     Defendant Allison Ficken ("Ficken") has served as a Director of Alfi at all relevant times.  Ficken signed or authorized the signing of the Registration Statement filed with the SEC.

33.     Defendant Frank Smith ("Smith") has served as a Director of Alfi at all relevant times.  Smith signed or authorized the signing of the Registration Statement filed with the SEC.

34.     Defendant Richard Mowser ("Mowser") served as a Director of Alfi at the time of the IPO.  Mowser signed or authorized the signing of the Registration Statement filed with the SEC.

35.     The Exchange Act Individual Defendants and Defendants Cook, Bordes, Lee, Elkouri, Ficken, Smith, and Mowser are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

36.     As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Alfi common stock and warrants in the IPO for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

37.     Alfi and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

38.     The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

39.     Alfi provides interactive artificial intelligence and machine learning software solutions.  The Company was led by, among other management, CEO P. Pereira, CTO C. Pereira, and CFO McIntosh.

40.     On January 8, 2021, Alfi filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on May 3, 2021.

41.     On or about May 4, 2021, pursuant to the Registration Statement, Alfi's common stock and warrants began trading on the NASDAQ under the trading symbols "ALF" and "ALFIW", respectively.

42.     On May 5, 2021, Alfi filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which formed part of the Registration Statement.

43.     Pursuant to the Offering Documents, Alfi conducted the IPO, selling approximately 3.7 million shares of common stock, and approximately 3.7 million warrants, to the public at the Offering price of $4.15 per both share and warrant for approximate proceeds to the Company of $14 million after applicable underwriting discounts and commissions, and before expenses.

**<u>Materially False and Misleading Statements Issued in the Offering Documents</u>**

44.     With respect to the Company's disclosure controls and procedures, the Offering

Documents assured investors, in relevant part:

> Our disclosure controls and procedures are designed to reasonably assure that
> information required to be disclosed by us in reports we file or submit under the
> Exchange Act is accumulated and communicated to management, recorded,
> processed, summarized and reported within the time periods specified in the rules
> and forms of the SEC.

45.     Similarly, with respect to Alfi's internal control over financial reporting, the

Offering Documents assured investors, in relevant part, that "[o]ur internal control over financial

reporting is a process designed to provide reasonable assurance regarding the reliability of

financial reporting and the preparation of financial statements in accordance with generally

accepted accounting principles[,]" and that "[i]n connection with this offering, we intend to begin

the process of documenting, reviewing and improving our internal controls and procedures for

compliance with Section 404 of the Sarbanes-Oxley Act, which will require annual management

assessment of the effectiveness of our internal control over financial reporting."

46.     The Offering Documents also represented that "[t]he roles of [CEO], President and

Chairman of [the Board] are currently performed by the same person because we do not have a

policy regarding the separation of these roles," although the Board "believes that it is in the best

interests of the Company and our stockholders to make that determination from time to time based

upon the position and direction of the Company and the membership of [the Board]"; that the

Board "has determined that our leadership structure is appropriate for the Company and our

stockholders as it helps to ensure that the [Board] and management act with a common purpose

and provides a single, clear chain of command to execute our strategic initiatives and business

plans"; and that the Board "believes that a combined role of [CEO], President and Chairman is

better positioned to act as a bridge between management and [the Board], facilitating the regular flow of information."

47.     Additionally, the Offering Documents stated that "[w]e are committed to having sound corporate governance principles, which are essential to running our business efficiently and maintaining our integrity in the marketplace"; that "[w]e understand that corporate governance practices change and evolve over time, and we seek to adopt and use practices that we believe will be of value to our stockholders and will positively aid in the governance of the Company"; that, "[t]o that end, we regularly review our corporate governance policies and practices and compare them to the practices of other peer institutions and public companies"; and that "[w]e will continue to monitor emerging developments in corporate governance and enhance our policies and procedures when required or when our board determines that it would benefit our Company and our stockholders."

48.     The statements referenced in ¶¶ 44-47 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Alfi maintained deficient disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Company and its employees could and did engage in corporate transactions and other matters without sufficient and appropriate consultation with or approval by the Board; (iii) all the foregoing increased the risk of internal and regulatory investigations into the Company and its employees; (iv) all the foregoing, once revealed, was likely to have a material negative impact on the Company's reputation, financial condition, and ability

to timely file periodic reports with the SEC; and (v) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

49.     The Class Period begins on May 4, 2021, when Alfi's common stock and warrants began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 44-47, *supra*.

50.     On June 10, 2021, Alfi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  With respect to Alfi's disclosure controls and procedures, the 1Q21 10-Q assured investors, in relevant part:

> [The Exchange Act Individual Defendants] evaluated the effectiveness of our disclosure controls and procedures . . . as of March 31, 2021 (the "Evaluation Date"). Based upon that evaluation, the [Exchange Act Individual Defendants] concluded that, as of the Evaluation Date, our disclosure controls and procedures are effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act (i) are recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms and (ii) are accumulated and communicated to management, specifically [the Exchange Act Individual Defendants], as appropriate to allow timely decisions regarding required disclosure[.]

51.     The 1Q21 10-Q also represented that "[t]here was no change in our internal control over financial reporting . . . that occurred during the fiscal quarter ended March 31, 2021 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

52.     Appended as exhibits to the 1Q21 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "[t]he [1Q21 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the

Securities Exchange Act of 1934" and that "[t]he information contained in the [1Q21 10-Q] fairly presents, in all material respects, the financial condition and result of operations of the Company."

53.     On August 16, 2021, Alfi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q").  The 2Q21 10-Q contained substantively the same statements as referenced in ¶¶ 50-51, *supra*, regarding the review and effectiveness of the Company's disclosure controls and procedures, and that there were no changes in Alfi's internal control over financial reporting during the quarter that materially affected, or were reasonably likely to materially affect, the Company's internal control over financial reporting.

54.     The 2Q21 10-Q also noted the purchase of an "Office Condo," stating that "[t]he Company signed a contract to acquire additional office space for $1,100,000 in Miami Beach, FL on July 12, 2021[,]" the purchase of which "is expected to close late August."

55.     Appended as exhibits to the 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 52, *supra*, signed by the Exchange Act Individual Defendants.

56.     The statements referenced in ¶¶ 49-55 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Alfi maintained deficient disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Company and its employees could and did engage in corporate transactions and other matters without sufficient and appropriate consultation with or approval by the Board; (iii) all the foregoing increased the risk of internal and regulatory investigations into the Company and its employees; (iv) all the foregoing, once revealed, was likely

13

to have a material negative impact on the Company's reputation, financial condition, and ability to timely file periodic reports with the SEC; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

57.     On October 28, 2021, during after-market hours, Alfi filed a current report on Form 8-K with the SEC, disclosing that, on October 22, 2021, the Board had placed P. Pereira, C. Pereira, and McIntosh "on paid administrative leave and authorized an independent internal investigation regarding certain corporate transactions and other matters."   That Form 8-K further disclosed, in relevant part, that "[o]n October 22, 2021, the Board elected [Defendant] Bordes . . . to serve as interim [CEO]"; that, "[o]n October 22, 2021, the Board elected [Defendant] Lee . . . to serve as Chairman of the Board, replacing [Defendant] P. Pereira in such role"; that, "[o]n October 27, 2021, the Board appointed David Gardner, the Company's Vice President of Technology, to serve as the Company's [CTO] effective immediately, replacing Mr. C. Pereira in such role"; and that, "[o]n October 28, 2021, Mr. C. Pereira's employment with the Company was terminated."

58.     On this news, Alfi's stock price fell $1.24 per share, or 21.91%, to close at $4.42 per share on October 29, 2021.  Despite this decline in the Company's stock price, Alfi securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of the Exchange Act Defendants' continued misstatements and omissions regarding the likely consequences of the internal investigation into the conduct of P. Pereira, C. Pereira, and McIntosh.

59.     For example, on November 1, 2021, Alfi filed another current report on Form 8-K with the SEC, disclosing, among other things, that the Company's Chair of the Audit Committee had resigned from the Board, and details concerning the corporate transactions and matters that

had precipitated the internal investigation into P. Pereira, C. Pereira, and McIntosh.  Specifically,

with respect to Alfi's internal investigation, that Form 8-K stated, in relevant part:

> The corporate transactions that precipitated the Board's actions to place the executives on paid administrative leave and to authorize the independent internal investigation included: (i) the Company's purchase of a condominium for a purchase price of approximately $1.1 million and the related erroneously certified corporate resolution regarding the unanimous approval by the Board and the Company's stockholders of such purchase, and (ii) the Company's commitment to sponsor a sports tournament in the amount of $640,000, a portion of which was payable through the issuance by the Company of unregistered shares of the Company's common stock, and as to which the Company would be obligated to pay additional cash amounts if the net proceeds received by the recipient upon the sale of such shares are less than an amount specified in the contract and for which the Company would be given a credit toward sponsorship or attendance at events in the future if the net proceeds received by the recipient upon the sale of such shares exceed an amount specified in the contract. (The Company's entry into the contract for the purchase of the condominium was disclosed in the [2Q21 10-Q].) ***These transactions were undertaken by the Company's management without sufficient and appropriate consultation with or approval by the Board.*** The independent internal investigation is expected to investigate the details of the above-noted transactions and any other matters that come to the Board's attention regarding actions taken by the executives in their management of the Company. ***One of the goals of the independent internal investigation is to help the Company in developing improved corporate governance policies and procedures to ensure that the Board is provided the opportunity to consider and provide appropriate input to the Company's management on significant corporate transactions.*** If, during the course of the independent internal investigation, the Board uncovers any wrongdoing, it will take appropriate action with respect to the person or persons responsible therefor.

(Emphases added.)

60.     The statements referenced in ¶¶ 57 and 59 were materially false and misleading

because the Exchange Act Defendants made false and/or misleading statements, as well as failed

to disclose material adverse facts about the Company's business, operations, and compliance

policies.  Specifically, the Exchange Act Defendants made false and/or misleading statements

and/or failed to disclose that: (i) Alfi faced an increased risk of regulatory investigation into the

Company and its employees; (ii) the foregoing, as well as the Company's internal investigation

into P. Pereira, C. Pereira, and McIntosh, were likely to have a material negative impact on the Company's reputation, financial condition, and ability to timely file periodic reports with the SEC; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Fully Emerges

61.     On November 15, 2021, during after-market hours, Alfi filed a current report on Form 8-K with the SEC, disclosing that "[o]n November 9, 2021, the Company received a letter from the staff of the [SEC] indicating that the Company, its affiliates and agents may possess documents and data relevant to an ongoing investigation being conducted by the staff of the SEC" and "that such documents and data should be reasonably preserved and retained until further notice."  The same filing also disclosed, in relevant part:

> The materials to be preserved and retained include documents and data created on or after April 1, 2018 that: (i) were created, modified or accessed by certain named former and current officers and directors of the Company or any other officer or director of the Company; or (ii) relate or refer to the condominium or the sports tournament sponsorship identified in the Company's Current Report on Form 8-K filed on November 1, 2021, or financial reporting and disclosure controls, policies or procedures. The Company intends to cooperate fully with the SEC in this matter.

62.     Also on November 15, 2021, during after-market hours, Alfi issued a press release announcing "that Louis A. Almerini, CPA, has been appointed by the [Board] to serve as interim [CFO], effective November 8, 2021."

63.     Then, on November 16, 2021, Alfi filed a notification of late filing on Form 12b-25 with the SEC, disclosing the Company's inability to timely file the 3Q21 10-Q with the SEC because of, *inter alia*, recent management changes related to the investigation into P. Pereira, C. Pereira, and McIntosh, the resignation of the Company's Chair of the Audit Committee from the

Board, and the resignation of Alfi's independent registered public accounting firm.  Specifically, that that filing advised, in relevant part:

> Alfi . . . is unable, without unreasonable effort or expense, to file its [3Q21 10-Q] by the November 15, 2021 filing date applicable to smaller reporting companies: (i) due to recent changes in the Company's [CEO] and [CFO] and in the Chair of the Audit Committee (the "Audit Committee") of the [Board]; and (ii) because the Company has not yet engaged a new independent registered public accounting firm, which is needed to provide the required review of the Company's financial statements to be filed as part of the [3Q21 10-Q]. As previously disclosed by the Company in its filings with the [SEC], on: (i) October 22, 2021, the Board placed [Defendant P.] Pereira, the Company's President and [CEO], and [Defendant] McIntosh, the Company's [CFO] and Treasurer, on paid administrative leave and elected [Defendant] Bordes, a member of the Board, to serve as the Company's interim [CEO]; (ii) October 27, 2021, [Defendant] Mowser, a director of the Company and Chair of the Audit Committee, resigned as a member of the Board; (iii) October 29, 2021, the Company's then-serving independent registered public accounting firm resigned; (iv) November 1, 2021, the Board appointed Allen Capsuto to serve as a director of the Company and as Chair of the Audit Committee; and (v) November 8, 2021, the Board appointed Louis A. Almerini to serve as the Company's interim [CFO]. The Audit Committee is in the process of selecting and engaging a new independent registered public accounting firm.

64.     Following these disclosures, the Company's stock price fell $0.24 per share, or 5.21%, to close at $4.37 per share on November 16, 2021.

65.     As of the time this Complaint was filed, the price of Alfi common stock and warrants were trading below the $4.15 per share Offering price, damaging investors.

66.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

67.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Alfi common stock or warrants pursuant and/or

traceable to the Offering Documents issued in connection with the IPO, and/or Alfi securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

68.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alfi securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Alfi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

69.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

70.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

71.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Alfi;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Alfi to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Alfi securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

72.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

73.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Alfi securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

19

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Alfi securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

74.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

75.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

76.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

77.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

78.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Alfi securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Alfi securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

79.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Alfi securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Alfi's finances and business prospects.

80.     By virtue of their positions at Alfi, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew

or recklessly disregarded that material facts were being misrepresented or omitted as described above.

81.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Alfi, the Exchange Act Individual Defendants had knowledge of the details of Alfi's internal affairs.

82.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Alfi.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Alfi's businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Alfi securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Alfi's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Alfi securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

83.     During the Class Period, Alfi securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares

of Alfi securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Alfi securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Alfi securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

84.     By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

85.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)

86.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Alfi, and conducted and participated, directly and indirectly, in the conduct of Alfi's business affairs.  Because of their senior positions, they knew the adverse

non-public information about Alfi's misstatement of income and expenses and false financial statements.

88.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Alfi's financial condition and results of operations, and to correct promptly any public statements issued by Alfi which had become materially false or misleading.

89.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Alfi disseminated in the marketplace during the Class Period concerning Alfi's results of operations.  Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Alfi to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants, therefore, were "controlling persons" of Alfi within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Alfi securities.

90.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Alfi.  By reason of their senior management positions and/or being directors of Alfi, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Alfi to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of Alfi and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

91.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alfi.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

92.     Plaintiff repeats and incorporates paragraphs 1 through 75 contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

93.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

94.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

95.     Alfi is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

96.     As issuer of the shares, Alfi is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

97.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

98.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

99.     Plaintiff acquired Alfi shares pursuant and/or traceable to the Offering Documents for the IPO.

100.     Plaintiff and the Class have sustained damages.  The value of Alfi common stock and warrants has declined substantially subsequent to and because of Defendants' violations.

## COUNT IV

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

101.   Plaintiff repeats and incorporates paragraphs 1 through 75 and 92 through 100 contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

102.   This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

103.   The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Alfi within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Alfi to engage in the acts described herein.

104.   The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

105.   By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  December 2, 2021                                  Respectfully submitted,

                                                                         **KOMLOSSY LAW P.A.**
                                                                         /s/ *Emily C. Komlossy*
                                                                         Emily Komlossy (FBN 7714)
                                                                         eck@komlossylaw.com
                                                                         4700 Sheridan St., Suite J
                                                                         Hollywood, FL 33021
                                                                         Phone: (954) 842-2021
                                                                         Fax: (954) 416-6223


                                                                         POMERANTZ LLP
                                                                         Gustavo F. Bruckner
                                                                         (*pro hac vice* application forthcoming)
                                                                         Thomas H. Przybylowski
                                                                         (*pro hac vice* application forthcoming)
                                                                         600 Third Avenue
                                                                         New York, New York 10016
                                                                         Telephone: (212) 661-1100
                                                                         Facsimile: (212) 661-8665
                                                                         gfbruckner@pomlaw.com
                                                                         tprzybylowski@pomlaw.com

                                                                         *Attorneys for Plaintiff*