## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM C. STEPPACHER, JR., Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-24232-KMW |
| Plaintiff, | |
| v. | |
| ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, and RICHARD MOWSER, | |
| Defendants. | |
| GARY KLEINSCHMIDT, Individually and on behalf of All Others Similarly Situated, | Case No. 1:21-cv-24338-JLK |
| Plaintiff, | |
| v. | |
| ALFI, INC., PAUL PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, RICHARD MOWSER, KINGSWOOD CAPITAL MARKETS, REVERE SECURITIES LLC, and WESTPARK CAPITAL, INC., | |
| Defendants. | |

## CANDIDO RODRIGUEZ'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL

Lead Plaintiff Movant Candido Rodriguez ("Rodriguez") respectfully submits this memorandum of law in opposition to the three competing motions for appointment as lead plaintiff and approval of lead counsel (Dkt. Nos. 12, 13, 14).[1]

## I.      INTRODUCTION

Four individuals (or groups of individuals) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motions were filed by Rodriguez (Dkt. No. 11); the self-styled "Alfi Investor Group" consisting of John K. Allen ("Allen"), Executor and a Trustee of the Joseph M. Driscoll Trust, and Alexander C. Takian ("Takian") (Dkt. No. 12); Chad Haber and Aileen Haber (the "Habers") (Dkt. No. 13); and Josh Buterin ("Buterin") (Dkt. No. 14).

The PSLRA directs the Court to appoint the "most adequate plaintiff" as lead plaintiff—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). If the movant with the largest financial interest is ineligible for appointment as lead plaintiff, the presumption falls to the movant with the next largest financial interest until a suitable lead plaintiff is identified.

---

[1] All movants support consolidation of the above-captioned related actions. As such, only the appointment of lead plaintiff and approval of counsel are addressed herein.

Here, Buterin has the largest financial interest. However, Buterin is ineligible for appointment as lead plaintiff because he participated in a multi-million-dollar tax fraud scheme. Lead plaintiffs have a fiduciary duty to the class, and movants implicated in fraudulent schemes cannot be trusted to adequately represent the class. As such, Buterin should be disqualified.

Rodriguez has the next largest financial interest after Buterin. Rodriguez's financial interest, as measured by his recoverable last in, first out (LIFO) loss, is $257,107.79. *See* Dkt. No. 11-5. While the Habers claim a collective loss of $338,698.30 ($273,778.61 for Chad Haber, and $64,919.69 for Aileen Haber, *see* Dkt. No. 13-5), Chad Haber's recoverable loss is $0 because he sold all his shares before the first corrective disclosure alleged in this action. Losses on such transactions are not recoverable. As such, Rodriguez has a much larger financial interest than the Habers, and the next largest financial interest after Buterin.

Moreover, as demonstrated in Rodriguez's memorandum of points and authorities in support of his lead plaintiff motion (Dkt. No. 11-1), Rodriguez satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Accordingly, Rodriguez is the presumptively most adequate plaintiff.

Since Rodriguez is the presumptively most adequate plaintiff, and the presumption has not been rebutted, Rodriguez should be appointed as lead plaintiff, and his selection of lead counsel should be approved.[2]

## II.   THE PSLRA MANDATED PROCEDURE FOR APPOINTING A LEAD PLAINTIFF

The PSLRA mandates that the Court appoint "the most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the

---

[2] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

"most adequate plaintiff" is the movant that: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.").

Once the Court identifies the presumptively most adequate plaintiff, the presumption may be rebutted only "upon proof . . . that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

### III.   BUTERIN IS INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFF BECAUSE HE PARTICIPATED IN A MULTI-MILLION-DOLLAR TAX FRAUD SCHEME

District Judge Gary A. Fenner of the Western District of Missouri described the tax fraud scheme involving Buterin, Yans Zaslavsky (Buterin's business partner and co-owner of Country Hill Motors), and their accountant, Allen R. Davison, as follows:

> For nearly fifteen years, [Allen R.] Davison has promoted a substantial number of unlawful tax arrangements that involve sham companies, bogus deductions, and fabricated documents.
>
> . . .
>
> Revenue agent Carlson audited Davison clients, ***Zaslavsky and Buterin, who maintained three separate unlawful tax arrangements: the parallel C arrangement, ESOP–S arrangement, and a sham 412(i) pension plan arrangement***. . . . In addition, ***Buterin also maintained a Roth IRA–C arrangement***. . . . In order to effect each tax-fraud scheme, Davison directed the formation of management companies. Carlson examined the tax returns for each of these management companies, Buterin and Zaslavsky's operating business, Country Hill Motors, and also each client's individual tax returns. Carlson also

3

examined the books and records (or lack thereof) of the management companies, and the actual books and records of the operating business. Carlson's review concluded that not one of these management companies performed any services, conducted any business, adhered to any purported management agreement or otherwise had any business purpose. . . . Here, ***Davison's tax-fraud schemes fraudulently reduced Buterin and Zaslavsky's reported tax liability by more than $2 million between the 2004–2006 tax years alone***.

*United States v. Davison*, No. 08-cv-0120, 2010 WL 1935951, at *3-*4 (W.D. Mo. May 11, 2010) (emphasis added). As a result of this scheme, the United States Internal Revenue Service (IRS) sent Buterin a Notice of Deficiency totaling $2,364,129.25 (including Fraud Penalties of $1,013,198.25) for taxable years 2005 and 2006. *See United States of America v. Buterin*, No. 2:10-mc-00210-JWL-DJW (D. Kan. May 18, 2010), Dkt. No. 26-4.[3]

It is well established that "[t]o judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Accordingly, "[c]ourts have refused to appoint individuals of questionable character to serve as fiduciaries in class actions." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (citing *Hall v. Nat'l Recovery Sys. Inc.*, 1996 WL 467512, at *5-*6 (M.D. Fla. Aug. 9, 1996)); *see also In re Surebeam Corp. Sec. Litig.*, No. 03-cv-1721, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary."); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (disqualifying movant under investigation for fraud, holding "the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence"); *Xianglin Shi v. Sina*

---

[3] A copy of the Notice of Deficiency is also attached to this memorandum as Exhibit A. Buterin filed the Notice of Deficiency as an exhibit to his Proposed Findings of Fact and Conclusions of Law in the *Buterin* action.

*Corp.*, No. 05-cv-2154, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (disqualifying a movant "who pled guilty in 1995 to providing false information to a financial institution," reasoning that "convictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative"); *Villare v. ABIOMED, Inc.*, No. 19-cv-7319, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) ("[A] criminal fraud conviction ten years ago remains extremely concerning for an individual seeking to serve as a fiduciary for absent class members asserting they are the victims of a fraudulent scheme.").

Regarding unpaid taxes in particular, at least one court rejected a proposed class representative who "failed to pay approximately $700,000 in federal income taxes," "entered into a consent judgment" with the IRS to "pay $675,138.99 in outstanding tax liabilities for 1983 and 1984" and "ended up settling with the IRS for $22,255.18," holding that such tax issues, among other issues, "raise[d] concerns about [his] ability to serve as a fiduciary for the class." *Batter v. Hecla Mining Co.*, No. 19-cv-05719, 2020 WL 1444934, at *5-*6 (S.D.N.Y. Mar. 25, 2020).

The same result is warranted here with respect to Buterin. The interests of the class should not be placed in the hands of a fiduciary with a history of fraud. Buterin's inadequacy is further compounded by the fact that he declined to inform the Court and the competing lead plaintiff movants of his highly relevant history. As such, Buterin is inadequate, and should be disqualified from consideration.

**IV.  RODRIGUEZ IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF BECAUSE RODRIGUEZ HAS THE NEXT LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS AFTER BUTERIN**

Rodriguez satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). First, he filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 11. Second, he satisfies the requirements of

Rule 23, as demonstrated in his memorandum of law in support of his lead plaintiff motion. Finally, as explained *infra*, Rodriguez has the largest financial interest in the relief sought by the class of the remaining movants.

A.      **Recoverable Loss Is the Primary Measure of Financial Interest**

The PSLRA does not specify a means of calculating the "largest financial interest," so "the method used and the factors considered . . . remain fully within the discretion of the district court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 406-07 (S.D.N.Y. 2004); *see also In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied.").

In their discretion, courts have typically considered four factors to determine which movant has the largest financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Luczak v. Nat'l Beverage Corp.*, No. 18-cv-61631, 2018 WL 9847842, at *1 (S.D. Fla. Oct. 12, 2018); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (collecting cases).

Most courts accord the last factor, estimated losses, "the greatest weight." *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-cv-2989, 2021 WL 4840857, at *2 (S.D. Fla. Oct. 15, 2021); *CannaVest*, 93 F. Supp. 3d at 270 (same). While there are a variety of methods for determining financial loss, courts generally prefer the last-in, first-out (LIFO) loss calculation methodology. *See id.* at 271 n.5 ("the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses") (citation omitted).

Moreover, the PSLRA "require[s] that the financial interest not be measured simply as the

6

total loss suffered by an investor related to the subject stock, but rather as the damages attributable to the fraud." *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-cv-61572, 2018 WL 8804814, at *2 (S.D. Fla. Dec. 6, 2018) (holding "only those losses proximately caused by defendant's fraud are recoverable for purpose of determining which proposed lead plaintiff has the largest financial interest") (citation omitted). As such, many courts exclude losses on securities that were not held at the time of a corrective disclosure because such losses are unrecoverable. *See CannaVest*, 93 F. Supp. 3d at 273 ("[L]osses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public are not to be included in loss calculations for purposes of selecting lead plaintiff.") (internal citations, quotation marks, and brackets omitted).[4] This trend is in response to the Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) which held: "[I]f . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led

---

[4] *See also Simco v. Aegean Marine Petroleum Network Inc.*, No. 18-cv-4993, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."); *Gutman v. Sillerman*, No. 15-cv-7192, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) ("[W]hen evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures.") (collecting cases); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) ("any losses that [the movant] may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation" and "any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff"); *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-06140, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008) ("the court finds no reason to include losses in its calculations that would later be considered uncompensable" recognizing "it is difficult, if not impossible, to demonstrate loss causation for shares bought and sold before the disclosure of the misstatements or omissions"); *Foster v. Maxwell Techs.*, Inc., No. 13-cv-00580, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class.").

to any loss." *Id.* at 342.

The principle of *Dura* applies to losses under both Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933 (both claims in this action). *See Davidco Invs., LLC v. Anchor Glass Container Corp.*, No. 04-cv-2561, 2006 WL 547989, at *25 (M.D. Fla. Mar. 6, 2006) (dismissing plaintiffs' Section 11 claims where plaintiffs "sold all of their stock prior to [the] corrective disclosure") (citing *Dura*). Specifically, in the Section 11 context, "[t]he affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) (citing 15 U.S.C. § 77k(e)). Courts routinely hold that there is no recoverable loss if a plaintiff sells his shares before the corrective disclosure(s), and often dismiss such plaintiffs' Section 11 claims for lack of standing. *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000) ("[T]he Section 11 defendants have an absolute 'negative causation' defense pursuant to Section 11(e) for any [] shareholders who disposed of their shares prior to the corrective disclosure."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) ("Under the 1933 Act, the price decline before disclosure may not be charged to defendants.") (internal quotation marks, citations, and brackets omitted); *Anchor Glass*, 2006 WL 547989, at *25.

Accordingly, recoverable losses (excluding losses on shares purchased and sold before any corrective disclosure) is the best measure of financial interest.

**B.      Rodriguez Has the Next Largest Recoverable Loss After Buterin**

Rodriguez's financial interest, as measured by his recoverable loss, is $257,107.79. *See* Dkt. No. 11-5. While the Habers claim a loss of $338,698.30 in their opening papers ($273,778.61 for Chad Haber plus $64,919.69 for Aileen Haber), *see* Dkt. No. 13-5, the entirety of Chad's loss

is attributable to shares he purchased and then sold before the first corrective disclosure alleged in this action on October 28, 2021. *See* Dkt. No. 1 ¶¶ 57-58. Chad purchased shares in June, July, and August of 2021, but completely closed his position on October 22, 2021, approximately one week before the first corrective disclosure on October 28, 2021. *See* Dkt. No. 13-5. "Losses" from these transactions are not recoverable, and therefore do not count. *See CannaVest*, 93 F. Supp. 3d at 273. Aileen Haber likewise sold a substantial number of shares before the first corrective disclosure. *See* Dkt. No. 13-5. Removing "losses" on these shares decreases her loss to just $17,052.70. As such, Rodriguez has the largest loss of the remaining lead plaintiff movants:[5]

| Movant | Recoverable Loss (LIFO) |
|---|---|
| ~~Josh Buterin~~ | ~~$3,984,587.00~~ |
| Candido Rodriguez | $257,107.79 |
| *Alexander C. Takian* | *$25,730.45* |
| *Joseph M. Driscoll Trust* | *$230,002.25* |
| Alfi Investor Group Total | $255,732.10 |
| *Chad Haber* | *$0.00* |
| *Aileen Haber* | *$17,052.70* |
| Habers Total | $17,052.70 |

While the Alfi Investor Group's loss is close to Rodriguez's loss, for purposes of identifying the movant with the largest financial interest, "any financial difference is meaningful." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (collecting cases).

Since Rodriguez has the largest financial interest of the remaining movants, filed a timely motion, and satisfies the requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

---

[5] The figures in this chart are taken from the movants' loss charts submitted with their lead plaintiff motions.

9

## V.   THE PRESUMPTION THAT RODRIGUEZ IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). No proof has been presented that Rodriguez would be inadequate or subject to unique defenses. Rodriguez is not aware of any possible basis for such a contention. Rodriguez has been a farmer for approximately 28 years and has managed his own investments for approximately 6 years. Lorena Ramirez, his spouse, and Horticolas Duero S. Coop and Patatas Duero S.L.N.E., his businesses, have assigned their claims to Rodriguez. As such, Rodriguez should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").

## VI.   THE LEAD PLAINTIFF'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). "The district court should generally employ a deferential standard in reviewing the lead plaintiff's choice." *Short Squeeze Trading*, 2021 WL 4840857, at *6 (citing *Einhorn v. AxoGen, Inc.*, No. 19-cv-69, 2019 WL 5636382, at *3 (M.D. Fla. Apr. 30, 2019)).

Here, Rodriguez has selected Glancy Prongay & Murray LLP as lead counsel for the class and Saxena White P.A. as local counsel. The firms have successfully prosecuted numerous

10

securities fraud class actions on behalf of injured investors. Accordingly, the Court should approve Rodriguez's selection of counsel.

## VII.    CONCLUSION

For the foregoing reasons, Rodriguez respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Rodriguez as Lead Plaintiff; and (3) approving Lead Plaintiff's selections of Glancy Prongay & Murray LLP as Lead Counsel and Saxena White P.A. as Local Counsel for the class.

Dated:  February 14, 2022

Respectfully submitted,

**SAXENA WHITE P.A.**

By: /s/ Adam D. Warden
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Candido Rodriguez*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Candido Rodriguez, and Proposed Lead Counsel for the Class*

11

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

**<u>CERTIFICATE OF SERVICE</u>**

I, Adam D. Warden, hereby certify that on February 14, 2022, a true and accurate copy of the above document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send Notice of Electronic Filing (NEF) to all counsel of record.

<u>s/ Adam D. Warden</u>
Adam D. Warden

13