UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM C. STEPPACHER, JR., Individually and on Behalf of All Others Similarly Situated, <br><br>                                     Plaintiff, <br><br>                v. <br><br> ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, and RICHARD MOWSER, <br><br>                                 Defendants. | Case No. 1:21-cv-24232-KMW <br><br> **MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF JOSH BUTERIN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** |

## TABLE OF CONTENTS

**Page(s)**

I.    <u>PRELIMINARY STATEMENT</u> .................................................................................... 1

II.   <u>ARGUMENT</u>.................................................................................................................. 5

    A.      BUTERIN SHOULD BE APPOINTED LEAD PLAINTIFF ................................ 5

          1.      Buterin Has The Largest Financial Interest Of Any
                 Competing Movant In The Relief Sought By The Class ............................ 6

          2.      Buterin Satisfies The Requirements Of Rule 23 ....................................... 9

    B.      THE HABER FAMILY IS INADEQUATE, ATYPICAL,
          AND SUBJECT TO UNIQUE DEFENSES........................................................... 10

    C.      BUTERIN'S SELECTION OF COUNSEL SHOULD
          BE APPROVED .................................................................................................... 12

III.  <u>CONCLUSION</u>............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brustein v. Lampert*,
    No. 04-61159-CIV-LENARD/KLEIN,
    2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005) ......................................................5, 9

*Cole v. Health Mgmt. Assocs.*,
    No. 2:07-cv-484-FtM-34SPC,
    2008 U.S. Dist. LEXIS 128021 (M.D. Fla. May 14, 2008)...................................................3, 7

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................. *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633
    (N.D. Cal. Aug. 22, 2008)...........................................................................................................7

*Foster v. Maxwell Techs., Inc.*,
    Nos. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538
    (S.D. Cal. Oct. 24, 2013) ............................................................................................................7

*Galmi v. Teva Pharms. Indus. Ltd.*,
    302 F. Supp. 3d 485 (D. Conn. 2017).........................................................................................3

*In re Bally Total Fitness Sec. Litig.*,
    Nos. 04 C 3530, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)............................4, 12

*In re Cendant Corp. Litig.*,
    364 F.3d 201 (3d Cir. 2001).....................................................................................................5, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
    06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878
    (E.D.N.Y. Mar. 2, 2007) .............................................................................................................7

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016).........................................................................................7

*Luczak v. Nat'l Bev. Corp.*,
    No. 0:18-cv-61631-KMM, 2021 U.S. Dist. LEXIS 142079
    (S.D. Fla. July 12, 2021) ...................................................................................................3, 7, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................................11

*Miller v. Dyadic Int'l, Inc.*,
No. 07-80948-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 32271
(S.D. Fla. Apr. 18, 2008) ................................................................................................4, 10

*Piven v. Sykes Enters.*,
137 F. Supp. 2d 1295 (M.D. Fla. 2000)..............................................................................2, 6, 9

*Plymouth County Ret Sys. v. Carter's, Inc.*,
No. 1:08-CV-2940-JOF, 2009 U.S. Dist. LEXIS 20582
(N.D. Ga. Mar. 13, 2009)...................................................................................................6

*Prado-Steiman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) .........................................................................................3, 9

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)........................................................................................................5, 11

*Tran v. Erba Diagnostics, Inc.*,
No. 15-cv-2440-COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864
(S.D. Fla. Apr. 8, 2016) ......................................................................................................5, 9

*Valley Forge Christian College v. Americans United for Separation of
Church and State, Inc.*, 454 U.S. 464 (1982).....................................................................5, 11

*Vincelli v. National Home Health Care Corp.*,
112 F. Supp. 2d 3109 (M.D. Fla. 2000)..............................................................................2, 6

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000).............................................................................................................11

*Warth v. Seldin*,
422 U.S. 490 (1975).............................................................................................................11

**Statutes**

15 U.S.C. § 77z-1(a) ................................................................................................... *passim*

15 U.S.C. § 78u-4(a) ................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ...................................................... *passim*

Section 10(b) of the Securities Exchange Act of 1934 .......................................................3, 7, 11

**Rules**

Fed. R. Civ. P. 23........................................................................................................ *passim*

Lead Plaintiff Movant Josh Buterin respectfully submits this Memorandum of Law: (i) in further support of his motion for appointment as Lead Plaintiff and approval of his selections of Pomerantz[1] and Komlossy Law as Lead and Liaison Counsel, respectively, for the Class (Dkt. No. 14) in the above-captioned consolidated action (the "Consolidated Action");[2] and in opposition to the competing motions of: (i) Candido Rodriguez ("Rodriguez") (Dkt. No. 11); (ii) the Joseph M. Driscoll Trust (the "Driscoll Trust"), as the Executor and a Trustee of the Driscoll Trust, and Alexander C. Takian ("Takian" and, collectively with the Driscoll Trust, the "Alfi Investor Group") (Dkt. No. 12); and (iii) Chad Haber ("C. Haber") and Aileen Haber ("A. Haber" and, collectively with C. Haber, the "Haber Family") (Dkt. No. 13).

## I.       PRELIMINARY STATEMENT

This is a class action securities lawsuit against Alfi and certain of the Company's officers and directors.  As with all federal class action securities lawsuits, a Lead Plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23.  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Buterin, who suffered a loss of nearly \$4 million in connection with his purchases of Alfi securities because of the alleged wrongdoing at issue in the Consolidated Action—a far greater financial interest in this litigation than any competing movant.  The table below compares Buterin's loss to that of the other competing movants:

---

[1] All capitalized terms herein are defined in Buterin's moving brief, unless otherwise indicated. *See* Dkt. No. 14.

[2] Buterin also initially sought to consolidate the Related Actions.  *See* Dkt. No. 14 at 6-7.  The Court has since granted that aspect of Buterin's motion.  *See* Dkt. No. 16.

| Movant | Loss | |
|---|---|---|
| Buterin | $3.98M | |
| Rodriguez | $257,108 | |
| Alfi Investor Group | $255,732 | |
| Haber Family | $64,920 | |
| *A. Haber* | | *$64,920* |
| ~~*C. Haber*~~ | | ~~*$0*~~ |

As the above table reflects, Buterin's loss is significantly larger than that of any competing movant. The movant with the next largest financial interest, Rodriguez, only incurred a loss of $257,108—over $3.7 million, or almost 94%, less than Buterin. Indeed, Buterin's losses are approximately 590% larger than all other competing movants' losses combined. As such, Buterin clearly has the greatest financial interest within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff. *See, e.g.*, *Vincelli v. National Home Health Care Corp.*, 112 F. Supp. 2d 3109, 1317 (M.D. Fla. 2000) (equating monetary loss with financial interest); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1302-03 (M.D. Fla. 2000) (same).

Although the Haber Family claims to have incurred an aggregate loss of $338,698 in connection with the wrongdoing alleged in the Consolidated Action, which would give it the second largest financial interest in this litigation after Buterin, C. Haber—who claims to have incurred **over 80%** of the Haber Family's collective losses—sold all of his holdings of Alfi securities **before** any of the alleged corrective disclosures in the Consolidated Action, the first of which took place on October 28, 2021 (*see* Dkt. No. 1 ¶¶ 8-14; *Kleinschmidt v. Alfi, Inc. et al.*, No. 1:21-cv-24338 ("*Kleinschmidt*"), Dkt. No. 1 ¶¶ 4-8). C. Haber thus held **zero** Alfi securities that were damaged by the corrective disclosures that laid bare Alfi's malfeasance on October 28, 2021 and November 15-16, 2021, as alleged in the Complaints in the Consolidated Action. Accordingly, C. Haber held no securities that declined in value as a consequence of the revelation of the

2

Defendants' alleged wrongdoing, and thus has incurred no losses whatsoever that are recoverable in the Consolidated Action pursuant the loss causation methodology mandated by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  With respect to fraud claims arising under Section 10(b) of the Exchange Act, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, ***the misrepresentation will not have led to any loss***."  *Id.* at 342 (emphasis added); *see also Luczak v. Nat'l Bev. Corp.*, No. 0:18-cv-61631-KMM, 2021 U.S. Dist. LEXIS 142079, at *12 (S.D. Fla. July 12, 2021) ("Plaintiff did not suffer an injury-in-fact because he did not own shares of [the company] when the alleged corrective disclosures were made[.]"); *Cole v. Health Mgmt. Assocs.*, No. 2:07-cv-484-FtM-34SPC, 2008 U.S. Dist. LEXIS 128021, at *16 (M.D. Fla. May 14, 2008) ("[U]nder Dura, [the Court] should not consider the losses suffered by [movant] prior to [the company]'s issuance of the . . . statement which revealed [the concealed wrongdoing at issue.]"); *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017) (disregarding losses not "directly tied to the misconduct alleged in the complaint").  C. Haber thus has ***zero*** recoverable losses in the Consolidated Action, meaning that the Haber Family has significantly overstated its financial interest in this litigation.  As such, all of C. Haber's losses are disqualified, leaving the Haber Family with a mere $64,920 in potentially recoverable losses in this action.

In addition to his significant financial interest, Buterin also satisfies the typicality and adequacy requirements of Rule 23.  Buterin, like all Class members, purchased Alfi securities at prices artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of the alleged corrective disclosures.  These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23.  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14

3

(11th Cir. 2000). Buterin is also an adequate Class representative under Rule 23. His significant financial interest in this litigation ensures that he will vigorously pursue recovery on behalf of the Class. *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 32271, at \*19 (S.D. Fla. Apr. 18, 2008). Buterin has further demonstrated his adequacy by submitting a detailed Declaration, attesting to, *inter alia*, his background, his understanding of this litigation generally and the significance of his motion specifically, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities, including by overseeing the efforts of counsel. *See generally* Dkt. No. 14-5. Accordingly, Buterin is highly qualified to serve as class representative and to supervise Pomerantz and Komlossy Law, his chosen counsel, to prosecute this action vigorously on behalf of Alfi investors.

By contrast, the Haber Family is inadequate and/or atypical and thus disqualified from consideration irrespective of its financial interest in this litigation—which, in any event, is still significantly smaller than Buterin's financial interest. The fact that one of the Haber Family's members did not retain ***any*** Alfi securities at the times that Alfi's alleged wrongdoing came to light not only reduces its financial interest in this litigation by ***over 80%***, but also subjects the group to unique defenses that disqualify it from appointment as Lead Plaintiff. The PSLRA precludes the appointment of a lead plaintiff that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(bb), 78u-4(a)(3)(B)(iii)(II)(bb); *see also In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at \*19 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."). "[S]tanding requires that the plaintiff

'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).  Apparently lacking any injury caused by Alfi's alleged malfeasance, it is highly likely that C. Haber will ultimately be found to lack standing to pursue securities claims against the Defendants if the Haber Family is appointed as Lead Plaintiff, or at the very least will have to spend considerable time litigating this issue, at the expense of the Haber Family's capacity to pursue the Class's securities claims.

For the reasons set forth herein, Buterin respectfully requests that the Court grant his motion in all respects and deny the competing motions.

## II.     ARGUMENT

### A.     BUTERIN SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make a *prima facie* showing of adequacy and typicality under Rule 23.  *Brustein v. Lampert*, No. 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106, at *14 (S.D. Fla. June 15, 2005) (citing *In re Cendant Corp. Litig.*, 364 F.3d 201, 263 (3d Cir. 2001)); *see also, e.g.*, *Tran v. Erba Diagnostics, Inc.*, No. 15-cv-2440-COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864, at *3 (S.D. Fla. Apr. 8, 2016).  Once this presumption is triggered, it may be rebutted only upon ***proof*** that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Buterin.

5

**1. Buterin Has The Largest Financial Interest Of Any Competing Movant In The Relief Sought By The Class**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Eleventh Circuit and around the country recognize that the amount of financial loss is the most significant factor to be considered. *See*, *e.g.*, *Vincelli*, 112 F. Supp. 2d at 1317 (equating monetary loss with financial interest); *Piven*, 137 F. Supp. 2d at 1302-03 (same); *Plymouth County Ret Sys. v. Carter's, Inc.*, No. 1:08-CV-2940-JOF, 2009 U.S. Dist. LEXIS 20582, at *5 (N.D. Ga. Mar. 13, 2009) (same).

No competing movant seeking appointment as lead plaintiff in the Consolidated Action has a larger financial interest in this litigation than Buterin. As the chart at p. 2 illustrates, Buterin suffered a loss of **_nearly $4 million_** in connection with his purchases of Alfi common stock or warrants pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO, and/or Alfi securities during the Class Period. *See* Dkt. No. 14-2. Rodriguez, the movant with the next largest loss, incurred a loss over $3.7 million, or almost 94%, less than Buterin. *See* Dkt. No. 11-5. Indeed, Buterin's losses are approximately 590% larger than all other competing movants' losses combined. As such, Buterin clearly has the greatest financial interest within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff.

Although the Haber Family claims to have suffered a larger loss than Rodriguez, which would give it the second largest financial interest in this litigation after Buterin, most of those losses are not recoverable. The seminal Supreme Court decision *Dura Pharmaceuticals, Inc. v.*

*Broudo*, 544 U.S. 336 (2005), unambiguously established the principle that any assessment of losses for claims arising under Section 10(b) of the Exchange Act must take into account only *recoverable* losses—*i.e.*, losses actually traceable to the alleged wrongdoing and its disclosure. Fifteen years after *Dura*, it is by now axiomatic that if "the purchaser sells the shares . . . before the relevant truth beings to leak out, the misrepresentation will not have led to any loss." 544 U.S. at 342; *see also Luczak*, 2021 U.S. Dist. LEXIS 142079, at *12 ("Plaintiff did not suffer an injury-in-fact because he did not own shares of [the company] when the alleged corrective disclosures were made[.]"); *Cole*, 2008 U.S. Dist. LEXIS 128021, at *16 ("The Court agrees that, for the purpose of resolving the instant Motions [for appointment as Lead Plaintiff], under Dura, it should not consider the losses suffered by [a movant] prior to [the company]'s issuance of the . . . statement which revealed [the concealed wrongdoing at issue.]"); *In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) ("[U]nder *Dura* and its progeny," losses are only recoverable if "proximately . . . linked to the misconduct at issue in this litigation."); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) ("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the defendant's misrepresentations or other fraudulent conduct."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure"); *Foster v. Maxwell Techs., Inc.*, Nos. 13-cv-00580- BEN-RBB et al., 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does ***not*** lead to a loss if the purchaser sells the shares ***before*** the truth is revealed." (Emphases added.)).

Here, a review of the Complaints in this litigation (*see generally* Dkt. No. 1; *Kleinschmidt*,

Dkt. No. 1) and the schedules of transactions appended to the Certifications submitted by the Haber Family's members (Dkt. No. 13-4 at *4) make it clear that C. Haber—who claims to have incurred *over 80%* of the Haber Family's collective losses—did not incur a recoverable loss in this litigation. The Complaints in the Consolidated Action both allege several corrective disclosures that laid bare the Defendants' alleged wrongdoing:

- The first alleged corrective disclosure occurred on October 28, 2021, when Alfi disclosed in an SEC filing that, on October 22, 2021, the Board had placed P. Pereira, C. Pereira, and McIntosh "on paid administrative leave and authorized an independent internal investigation regarding certain corporate transactions and other matters." *See* Dkt. No. 1 ¶ 8; *Kleinschmidt* Dkt. No. 1 ¶ 4. That filing further disclosed, among other changes, that on October 22, 2021, the Board had appointed a new interim CEO and Chairman of the Board, and that "[o]n October 28, 2021, Mr. C. Pereira's employment with the Company was terminated." *See* Dkt. No. 1 ¶ 8; *Kleinschmidt* Dkt. No. 1 ¶ 4. On this news, Alfi's stock price fell $1.24 per share, or 21.91%, to close at $4.42 per share on October 29, 2021. *See* Dkt. No. 1 ¶ 9; *Kleinschmidt* Dkt. No. 1 ¶ 5.

- The next alleged corrective disclosure occurred on November 15, 2021, when Alfi disclosed that it "received a letter from the staff of the [SEC] indicating that the Company, its affiliates and agents may possess documents and data relevant to an ongoing investigation being conducted by the staff of the SEC" and "that such documents and data should be reasonably preserved and retained until further notice." *See* Dkt. No. 1 ¶ 11; *Kleinschmidt* Dkt. No. 1 ¶ 7. According to Alfi, "[t]he materials to be preserved and retained include documents and data created on or after April 1, 2018 that[,]" among other things, "were created, modified or accessed by certain named former and current officers and directors of the Company or any other officer or director of the Company" or "relate or refer to the condominium or the sports tournament sponsorship identified in the Company's Current Report on Form 8-K filed on November 1, 2021, or financial reporting and disclosure controls, policies or procedures." *See* Dkt. No. 1 ¶ 11; *Kleinschmidt* Dkt. No. 1 ¶ 7. Also on November 15, 2021, Alfi announced "that Louis A. Almerini, CPA, has been appointed by the [Board] to serve as interim [CFO], effective November 8, 2021." Dkt. No. 1 ¶ 12. Finally, on November 16, 2021, Alfi filed a notice of its inability to timely file its 3Q21 10-Q. *See* Dkt. No. 1 ¶ 13; *Kleinschmidt* Dkt. No. 1 ¶ 7. That filing cited, *inter alia*, "recent changes in the Company's [CEO] and [CFO] and in the Chair of the Audit Committee" of the Board, as well as needing "a new independent registered public accounting firm," as reasons for the Company's inability to timely file the 3Q21 10-Q. Dkt. No. 1 ¶ 13. Following the November 15 and 16, 2021 disclosures, the Company's stock price fell $0.24 per share, or 5.21%, to close at $4.37 per share on November 16, 2021. *See* Dkt. No. 1 ¶ 14; *Kleinschmidt* Dkt. No. 1 ¶ 8.

Meanwhile, the transaction histories submitted by the Haber Family indicate that C. Haber

8

sold all of his shares of Alfi securities ***before*** the first corrective disclosure on October 28, 2021—

*i.e.*, ***before*** the truth of Alfi's alleged wrongdoing began to emerge.  *See* Dkt. No. 13-4 at *4.

Accordingly, the Haber Family's transaction histories, submitted under penalty of perjury, indicate

that C. Haber did not hold Alfi securities on October 28, 2021or November 15-16, 2021—the dates

of the only corrective disclosures alleged in this litigation.

Having sold ***all*** of his Alfi shares before any of the wrongdoing at issue in this litigation

was revealed, C. Haber did not actually hold any Alfi securities that were damaged by the

revelation of the Defendants' alleged wrongdoing.  Thus, ***none*** of C. Haber's claimed losses are

in fact a consequence of the alleged wrongdoing in the Consolidated Action, meaning that ***none***

of his losses are recoverable in this litigation.  The Haber Family's financial interest in the relief

sought by the Class is therefore reduced to $64,920—the loss claimed by A. Haber, the only

member of the Haber Family who appears to have incurred a recoverable loss in this litigation.

### 2.  Buterin Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class,

Buterin has also made the requisite *prima facie* showing that he satisfies the typicality and

adequacy requirements of Rule 23.  *See Brustein*, 2005 U.S. Dist. LEXIS 51106, at *14 (citing

*Cendant*, 364 F.3d at 263); *see also, e.g.*, *Tran*, 2016 U.S. Dist. LEXIS 186864, at *3.  First,

Buterin's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims against Alfi

and the other Defendants are based on the same legal theory and arise from the same events and

course of conduct as the Class's claims.  *See, e.g.*, *Prado-Steiman*, 221 F.3d at 1279 n.14; *Piven*,

137 F. Supp. 2d at 1306.  Second, Buterin satisfies the adequacy requirement of Rule 23(a)(4)

because there is no evidence of antagonism or conflict between Buterin's interests and the interests

of the Class, and his significant financial interest gives him a "sufficient interest in the outcome of

the case to ensure vigorous advocacy." *Miller*, 2008 U.S. Dist. LEXIS 32271, at \*19 (quoting *Weinberg v. Atlas Air Worldwide holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003)).

Further demonstrating his adequacy, Buterin has submitted a detailed Declaration, in which he attests to, *inter alia*, his background, his understanding of the significance of his motion, his understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA, and his readiness to undertake those responsibilities on behalf of the Class, including by supervising Pomerantz and Komlossy Law, his chosen counsel in this action. *See generally* Dkt. No. 14-5.

Finally, Buterin has further demonstrated his adequacy by selecting Pomerantz and Komlossy Law—counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently, as their respective firm resumes reflect—to serve as Lead Counsel and Liaison Counsel for the Class, respectively. *See* Dkt. Nos. 14-6 - 14-7.

\* \* \* \*

Because Buterin has the largest financial interest in the relief sought by the Class and otherwise satisfies Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling Buterin to appointment as Lead Plaintiff, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

### B.   THE HABER FAMILY IS INADEQUATE, ATYPICAL, AND SUBJECT TO UNIQUE DEFENSES

Even assuming, *arguendo*, that the Haber Family somehow claimed the largest financial interest in this litigation—which it has not—the Haber Family cannot trigger the "most adequate plaintiff" presumption because serious questions exist with respect to its standing to pursue claims

in this litigation, which disqualify it from appointment as Lead Plaintiff pursuant to the PSLRA. The fact that C. Haber incurred zero losses that are recoverable in this litigation not only significantly reduces the Haber Family's financial interest in this action (as discussed above), it also further disqualifies the group from consideration because, having sold all of his Alfi securities before the disclosure of the wrongdoing alleged in the Consolidated Action, C. Haber held zero securities on the dates of the only corrective disclosures, has incurred no injury traceable to Defendants' malfeasance, and thus lacks standing to pursue securities claims in this litigation. "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Valley Forge Christian College*, 454 U.S. at 472). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Standing is granted by Article III "only to redress or otherwise to protect against injury to the complaining party." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771-72 (2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). In a securities fraud action under Section 10(b) of the Exchange Act, injury-in-fact requires that the plaintiff actually held the securities at issue on the dates on which the alleged wrongdoing was revealed to the market—*i.e.*, that the economic loss that the plaintiff incurred on its investment was actually caused by the revelation of the wrongdoing, rather than by other market forces. *See, e.g.*, *Dura*, 544 U.S. at 343-44; *Luczak*, 2021 U.S. Dist. LEXIS 142079, at *12 ("Plaintiff did not suffer an injury-in-fact because he did not own shares of [the company] when the alleged corrective disclosures were made . . . . Consequently, Plaintiff cannot show that he suffered a concrete and actual injury due to Defendants' statements . . . or the subsequent causal connection necessary to establish standing."). As the Supreme Court held in *Dura*, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, ***the misrepresentation will not have led to any loss***."

*Dura*, 544 U.S. at 342 (emphasis added).

"The PSLRA . . . provides that we ask simply whether [a movant] is ***likely*** to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *Bally*, 2005 U.S. Dist. LEXIS 6243, at \*19 (emphasis added). If the Haber Family is appointed as Lead Plaintiff, its members will clearly be forced to spend considerable time and energy litigating the question of C. Haber's standing, at the expense of their ability to pursue securities claims on behalf of the Class. There is simply no reason to burden the Class with a Lead Plaintiff subject to such debilitating issues.

### C. BUTERIN'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Buterin has selected Pomerantz as Lead Counsel, and Komlossy Law as Liaison Counsel, for the Class. As their respective firm resumes reflect, these firms' attorneys are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. Nos. 14-6 - 14-7. Thus, the Court may be assured that by approving Buterin's selection of counsel, the members of the Class will receive the best legal representation available.

### III. <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in his moving brief (Dkt. No. 14), Buterin respectfully requests that the Court issue an Order: (1) appointing Buterin as Lead Plaintiff for the Class; and (2) approving Lead Plaintiff's selections of Pomerantz as Lead Counsel, and Komlossy Law as Liaison Counsel, for the Class.

12

Dated:  February 14, 2022

Respectfully submitted,

**KOMLOSSY LAW P.A.**
*/s/ Emily C. Komlossy*
Emily Komlossy (FBN 7714)
eck@komlossylaw.com
4700 Sheridan St., Suite J
Hollywood, FL 33021
Phone: (954) 842-2021
Fax: (954) 416-6223

***Counsel for Josh Buterin and Proposed
Liaison Counsel for the Class***

**POMERANTZ LLP**
Gustavo F. Bruckner
(admitted *pro hac vice*)
Thomas H. Przybylowski
(admitted *pro hac vice*)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
gfbruckner@pomlaw.com
tprzybylowski@pomlaw.com

***Counsel for Josh Buterin and Proposed
Lead Counsel for the Class***

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

***Additional Counsel for Josh Buterin***

13

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

/s/  *Emily C. Komlossy*
Emily C. Komlossy

14