UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| WILLIAM C. STEPPACHER, JR., Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, and RICHARD MOWSER,<br><br>         Defendants. | Case No. 1:21-cv-24232-KMW-CMM<br><br>**CHAD AND AILEEN HABER'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |

- 1 -

011065-11/1789825 V2

## I.      INTRODUCTION

Four motions for appointment as lead plaintiff are pending before this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). A review of the competing filings reveals that movants Chad Haber and Aileen Haber ("the Habers") are the "most adequate plaintiff". 15 U.S.C. § 78u-4(a)(3)(B)(i).[1]

*First*, it appears beyond speculation that Josh Buterin, the movant with the largest *claimed* losses, has filed an inaccurate certification under oath. Specifically, in his certification, Buterin claims to have made only two unusually large trades in ALF on the same day (June 25, 2021); purchases of (1) 219,182 shares at a price of $18.1956 per share and (2) 38,138 shares at a price of $18.4900 per share, respectively. But a review of ALF trade data for June 25, 2021, as reported by Bloomberg, confirms that no trade in the number of those share amounts exists.  *See* Declaration of Reed R. Kathrein ("Kathrein Decl."), ¶2, Ex. A, B and C, filed herewith. And, in the case of Mr. Buterin's second trade, no trade exists at the claimed price ($18.1956). *Id.* at ¶2, Ex. D.  After the filing of the motions, the Habers' counsel reached out to Buterin's counsel raising these trade discrepancies and requesting documentary support for Buterin's certification. But Buterin's counsel mysteriously refused to provide Habers' counsel these basic documents, absent the Court's finding that Buterin is incapable of adequately representing the class in this litigation. But the law is clear, that upon a proper non-speculative showing, the Court may require the production of supporting documents, and where the certifications are in error, the movant may be found inadequate. *See e.g., Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 413 (E.D. Pa. 2019).

---

[1] All capitalized terms are defined in the Haber's initial brief, unless otherwise indicated. *See* ECF No.13.

If Buterin cannot show support for his trades, the Habers, with $338,698.30 in claimed losses, are the movants with the next largest financial interest, which is the primary focus of the PSLRA appointment criteria.[2]

|  | **Loss Claimed** |
|---|---|
| ~~Josh Buterin~~ | ~~$3,984,587~~ |
| Chad Haber and Eileen Haber | $338,698.30 |
| Candido Rodriguez | $257,107.79 |
| Alexander C. Taikan<br><br>Joseph M. Driscol Trust | $255,732.10 |

The Habers have also made a *prima facie* showing of typicality and adequacy. Here, like other class members, the Habers raise the common question of whether Defendants made material misrepresentations that artificially inflated the Company's stock price. Moreover, the Habers have demonstrated their adequacy given their significant financial stake and commitment to zealously prosecute the class's claims. *See* ECF No. 13-7.

Having satisfied these two steps, the Habers are entitled to a strong presumption that they are the "most adequate plaintiff." That presumption can only be rebutted "upon proof" that the Habers are inadequate or atypical. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). There are no facts, let alone any "proof," suggesting that the Habers are somehow unfit to represent the Class. Accordingly, the Court should appoint the Habers Lead Plaintiff and approve their choice of

---

[2] *See* ECF Nos. 11,12,13 and 14, respectively.

counsel. Alternatively, the Court should require Buterin to produce trade confirmations reflecting the claimed transactions on his certification.

## II. ARGUMENT

### A. Buterin's Certification Likely Demonstrates He is Not the Most Adequate Plaintiff

While Buterin has filed a certification under oath and claims to have the largest loss of any other movant, a review of that certification with publicly available information indicates the certification is inaccurate.

In particular, the PSLRA requires prospective lead plaintiffs to submit a sworn certification and listing "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv). Buterin submitted a Plaintiff's Certification which appears to be electronically signed by him. *See* Declaration of Emily Komlossy, ("Komlossy Decl.") Ex. C (ECF No. 14-4) (the "Certification"). A document entitled "List of Purchases and Sales" was attached. *Id.* at 4. Buterin lists only two trades:

| Alfi, Inc. (ALF) | | | | Buterin, Josh |
|---|---|---|---|---|
| Transaction Type | Date | List of Purchases and Sales | | Price Per Share/Unit |
| | | | Number of Shares/Unit | |
| Account 1 Purchase | 6/25/2021 | | 219,182 | $18.1956 |
| Account 2 Purchase | 6/25/2021 | | 38,138 | $18.4900 |

The dollar amount of those trades set forth in loss calculations is $3,988,149 and $705,172 respectively. Komlossy Decl. Ex. A (ECF No. 14-2). Because these claimed trades are unusually large for a single trade, especially of a retail investor, Buterin's Certification raises

- 4 -

011065-11/1789825 V2

serious questions concerning the reliability of Buterin's certification. For example, the average trade size in publicly traded common stock is around $10,000 and for retail investors, less than $8,000.[3] Nearly 75% of trades in publicly traded common stock are for less than $5,000, and only 0.18% are for a trade block size of $200,000. [4]

A review of actual trades reported by Bloomberg confirms these concerns. According to Bloomberg data reflecting trades in ALF on June 25, 2021, which is available to Bloomberg terminal subscribers, Buterin's claimed trades do not exist.[5] Bloomberg data shows no trades as large as 200,000 shares (Account 1). *See* Kathrein Decl. Ex. A. Similarly, there were no reported trades for 38,138 shares (Account 2). *See* Kathrein Decl., Ex. B. While the Bloomberg data shows there were trades at $18.490 per share (Account 2 Purchase) (See Kathrein Decl. Ex. C), the Bloomberg data shows no trades at $18.1956 per share (Account 1) and there were no trades of the exact size certified by Buterin. Kathrein Decl. Exs. C and D. In fact, there are no single trades larger than 54,970 shares on June 25, 2021. *Id.* at Ex. B.

This situation is similar to the certification filed in *Trevena, Inc.*, 383 F. Supp. 3d at 413. There, apparent errors in the certifications caused the Court to order the movant to submit his trade confirmations. *Id., citing In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("Any time the question [of the largest financial interest] appears genuinely contestable, we think that a district court would be well within its discretion...in seeking further information if it deems

---

[3] Phil Mackintosh, *Why Trade Sizes and Stock Prices Matter*, July 19, 2021, NASDAQ, found at https://www.nasdaq.com/articles/why-trade-sizes-and-stock-prices-matter-2021-07-29. Mr. Mackintosh is Nasdaq's Chief Economist. https://www.nasdaq.com/authors/phil-mackintosh.

[4] *Id.*

[5] According to *Bloomberg*, "[T]he Bloomberg Terminal brings together real-time data on every market…" https://www.bloomberg.com/professional/solution/bloomberg-terminal/.

011065-11/1789825 V2

the original submissions to be an inadequate basis for an informed decision."). After confirming the errors, the Court found the errors in his sworn statements highlight issues of carelessness, which undermined the movant's adequacy and sophistication to serve the class as lead plaintiff. *Id.* at 415.

Furthermore, Buterin's counsel's reluctance to provide trade confirmations for the claimed transactions – a standard request – only raises additional questions. *See, Camp v. Qualcomm Inc.,* 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (highlighting "doubts about [the lead plaintiff's] ability to serve as the class representative because of ... errors in the transaction records and loss calculations accompanying [his] motion," and refusal to provide basic details (internal quotations and citation omitted)); *see also*, *Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 455 (D. Mass. 2018) ("[Plaintiff's] willingness to make false statements under oath contributes to the court's conclusion that he would not have been an adequate lead plaintiff."); *Hirtenstein v. Cempra, Inc.*, 2017 WL 2874588, at *3 n.5 (M.D.N.C. 2017) ("Finally, though the error in [one of the lead plaintiff's] personal declaration[s] did not affect the ... Group's loss calculations, the parties are cautioned that exhibits to sworn declarations should be treated carefully and that even typographical errors can have detrimental effects in securities litigation.") (citation omitted)); *Bhojwani v. Pistolis*, 2007 WL 9228588, at *3 (S.D.N.Y. 2007) (expressing concern with a minor loss calculation error as reflecting "a certain carelessness about detail that undermines the adequacy of" the proposed lead plaintiff).

It is possible that Buterin actually made these purchases, but they would likely have been off market, which would impact his typicality and ability to assert the "presumption of reliance" for class certification purposes. *See Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988) ("Any showing that severs the link between the alleged misrepresentation and either the price received

011065-11/1789825 V2

(or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance.") If Buterin traded off-market he will have to make an individual showing of reliance. *Id.* at 247 ("An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.") Accordingly, Mr. Buterin's transactions would not be typical of the Class as he is subject to unique defenses.

**B.      The Habers are the Most Adequate Plaintiff**

Excluding Buterin, the Habers have the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). In addition to possessing the largest financial interest in the relief sought by the Class, the Habers also satisfy the typicality and adequacy requirements of Rule 23. As demonstrated in the Habers' moving papers, the Habers are a typical class representative. Here, like all other Class members, the Habers: (1) purchased Alfi shares on the open market during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements; and (3) were harmed when the truth was revealed. As such, the Habers are a typical Class representative.

The Habers similarly satisfy Rule 23's adequacy requirement because they are capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). The Habers have a substantial financial stake in the litigation as well as the incentive and ability to vigorously represent the Class' claims. Further, the Habers' interests are perfectly aligned with those of other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Habers and the Class.

### III.    CONCLUSION

For the reasons discussed above and in the opening brief (ECF. No. 13) the Habers respectfully request that the Court appoint them Lead Plaintiff and approve their selection of Hagens Berman as Lead Counsel for the Class. Alternatively, the Habers respectfully submit that

011065-11/1789825 V2

the Court should order Buterin to produce trade confirmations reflecting the claimed purchase transactions on his certification.

Dated: February 14, 2022

Respectfully submitted,

By: s// David M. Bucnker
    David M. Buckner (FBN 60550)

BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485
Email: david@bucknermiles.com

*Liaison Counsel for [Proposed] Lead Plaintiff
Chad and Aileen Haber*

Reed R. Kathrein (262161)
Lucas E. Gilmore (*pro hac vice* forthcoming)
Wesley A. Wong (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA  92101
Telephone: (619) 929-3340
Facsimile: (619) 929-3337
Email:  reed@hbsslaw.com
Email:  lucasg@hbsslaw.com
Email:  wesleyw@hbsslaw.com

Steve W. Berman (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

*Lead Counsel for [Proposed] Lead Plaintiff
Chad and Aileen Haber*

011065-11/1789825 V2

Steven J. Bonafonte (*pro hac vice* forthcoming)
DCB LAW GROUP LLC
62 West Street
PO Box 630
Litchfield, CT 06759
Telephone: (860) 560-6092
Email: bonafonte@dcblawgroup.com

*Additional Counsel for [Proposed] Lead Plaintiff*
*Chad and Aileen Haber*

- 9 -