UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| WILLIAM C. STEPPACHER, JR., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, and RICHARD MOWSER,<br><br>Defendants. | Case No. 1:21-cv-24232-KMW-CMM<br><br>**CHAD AND AILEEN HABER'S REPLY IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................1

II. ARGUMENT..........................................................................................................3

    A.  The "Most Adequate Plaintiff" Presumption in Favor of the Habers
    Has Not Been Rebutted..................................................................................3

        1.  *Dura* Principles Are Not Applied to Assess Financial
        Interest at the Lead Plaintiff Appointment Stage.......................................3

        2.  The Habers' *Dura* Losses Exceed Those of Rodriguez and
        the Alfi Investor Group When the September 2, 2021
        Disclosure Event Is Properly Considered. ...................................................6

III. CONCLUSION..........................................................................................................9

011065-11/1793969 V1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Blitz v. AgFeed Indus., Inc.*,
2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012).................................................................2, 5

*Bodri v. GoPro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) .................................................................2, 4

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*,
2013 WL 3934243 (N.D. Ill. July 30, 2013) ......................................................................4

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) .............................................................2, 5, 6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................. *passim*

*Fialkov v. Celladon Corp.*,
2015 WL 11658717 (S.D. Cal. Dec. 9, 2015)......................................................................6

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012)........................................................................................6

*In re Jan. 2021 Short Squeeze Trading Litig.*,
2021 WL 4840857 (S.D. Fla. Oct. 15, 2021).....................................................................1

*Nicolow v. Hewlett Packard Co.*,
2013 WL 792642 (N.D. Cal. Mar. 4, 2013).........................................................................4

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) .......................................................................................5

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ........................................................................................4

*In re Watchguard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ...........................................5, 6

### STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(iii)............................................................................................1

15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II).......................................................................................1

Exchange Act Section 10(b) ................................................................................................5

PSLRA ............................................................................................................................1, 2, 5

**OTHER AUTHORITIES**

Rule 23 ......................................................................................................................................1

## I.   PRELIMINARY STATEMENT

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can **only** be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate. 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See, e.g., In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at \*5 (S.D. Fla. Oct. 15, 2021) (finding that the presumption "may only be rebutted upon 'proof'" of inadequacy or atypicality and rejecting challenge founded on "mere speculation").

***The Habers are the presumptive Lead Plaintiffs***. Here, the presumptive most adequate plaintiffs—i.e., the presumptive Lead Plaintiffs – are the Habers, who suffered losses of nearly $340,000 in connection with their Class Period purchases of Alfi securities.  See Dkt. No. 13-5.[1]

***The Court should decline the competing movants' invitation to shrink the Habers' losses by switching methods***.  Now, seeing that they lack the largest loss, the two remaining competing movants – Candido Rodriguez ("Rodriguez") and the Alfi investor group – argue for the application of another loss calculation methodology to diminish the Habers' financial interest.  *See* Dkt. No. 18 at pp. 7-8; Dkt. No. 21 at p. 4. The competing movants do so without: (i) explaining why the out-of-pocket net losses they and every other movant emphasized in their initial moving papers just weeks ago are no longer a reliable indicator; and (ii) calculating their own respective losses under the newly proposed test. *See* Dkt. Nos. 18, 21.

---

[1] The only movant initially claiming a larger loss than the Habers was Josh Buterin, who has withdrawn his motion.  Dkt. No. 35.

011065-11/1793969 V1

Specifically, the competing movants urge the Court to apply a results-driven analysis to the Habers' transactions that they inaccurately assert is supported by *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"). *See* Dkt. No. 18 at pp. 7-8; Dkt. No. 21 at p. 4. Of course, the newly proposed "*Dura* loss" methodology – which purports to exclude losses on "in and out" transactions that took place during the class period but before the alleged fraud was revealed to the public – was nowhere to be seen in their original moving papers. *Cf.* Dkt. Nos. 11-12. "This fact alone counsels in favor of adopting the [original] methodology, as opposed to the [new *Dura* loss] methodology."[2]  Moreover, although Rodriguez and the Alfi investor group themselves engaged in "in and out transactions" during the Class Period [*see* Dkt. Nos. 11-5 and 12-5], neither bother to calculate their own losses under a "*Dura* loss" methodology.

Moreover, *Dura* articulated a pleading standard, not an accounting loss methodology, and therefore courts generally decline to assess financial interest with reference to the principles articulated in *Dura* at this stage of the litigation. *See Cook v. Allergan PLC*, 2019 WL 1510894, at \*3 (S.D.N.Y. Mar. 21, 2019) (rejecting movant's "convoluted [*Dura*] loss calculation methodology at the expense of [] considerably more straightforward calculations"); *Blitz v. AgFeed Indus., Inc.,* 2012 WL 1192814, at \*4 (M.D. Tenn. Apr. 10, 2012) ("Dura, however, was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and Dura does not discuss FIFO or LIFO losses.").

***The Habers' losses under Dura losses exceed those of the competing movants when a partial disclosure is properly considered.*** Regardless, the competing movants' "*Dura*" argument is predicated on the erroneous assumption that the only disclosures of the fraud relating to the

---

[2] *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at \*3 (N.D. Cal. Apr. 28, 2016) (noting that movants focused "exclusively" on "losses" in their motions and rejecting attempt to switch metrics).

011065-11/1793969 V1

Individual Defendants' use of corporate funds for personal use are those identified in the initial complaints filed to date. But the existing complaints glaringly omit a key, earlier partial corrective disclosure of Defendants' fraud that will surely be alleged in forthcoming amended complaint after the leadership appointment: the release of a September 2, 2021 report authored by market analyst Bleecker Street Research revealing the Alfi's executive team's misconduct, including Defendant CEO Pereira's long track record of using company funds for personal use. Declaration of Reed. R. Kathrein "Kathrein Reply Decl.", Ex. A, filed herewith.  The Bleecker Research Report, which also exposed Defendants' misrepresentations of Alfi's business model to investors and customers, caused Alfi's common stock to decline nearly 11% over the next three trading days.  Kathrein Reply Decl., Ex. B.  Importantly, the September 2, 2021 report precipitated Alfi's later disclosures of an internal investigation, termination of senior executives, pendency of an SEC investigation, and inability to file its quarterly report all stemming from the Individual Defendants' use of company funds for their personal use.

Considering the September 2, 2021 disclosure event, the Habers' *Dura* losses are over $425,000, much larger than the net losses of Rodriguez and the Alfi investor group. Accordingly, the Habers' motion should be granted. Kathrein Reply Decl., Ex. C.

## II.      ARGUMENT

### A.      The "Most Adequate Plaintiff" Presumption in Favor of the Habers Has Not Been Rebutted.

#### 1.      *Dura* Principles Are Not Applied to Assess Financial Interest at the Lead Plaintiff Appointment Stage

The two remaining competing movants claim that the Habers have purportedly inflated their financial interest by including trading losses realized before Alfi's first alleged corrective disclosure on October 28, 2021. *See* Dkt. No. 18 at pp. 7-8; Dkt. No. 21 at p. 4. Rather than calculating the movants' respective Class Period losses on a simple net loss basis as they had

- 3 -

done previously [*see* Dkt. Nos. 11-5 and 12-5], Rodriguez and the Alfi investor group now urge the Court to employ a *Dura*-derived loss-causation methodology that purportedly would significantly reduce the Habers' losses relative to their own. *See* Dkt. No. 18 at pp. 7-8; Dkt. No. 21 at p. 4.

As an initial matter, neither Rodriguez nor the Alfi investor group made any reference to *Dura* principles in describing their claimed financial interests in their motion papers. *See* Dkt. Nos. 11-12. Rather, Rodriguez and the Alfi investor group only began to advocate for the use of a *Dura*-based methodology in their opposition briefs—that is, only because they perceived an advantage to doing so after reviewing the Habers' motion papers. *See Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.,* 2013 WL 3934243, at *3 (N.D. Ill. July 30, 2013) (recognizing that "[i]t was only after Retirement Funds discovered that it did not have the largest loss amount when compared to other Plaintiffs that Retirement changed its position in later filings as to the proper loss calculation, seeking to exclude pre-June 7, 2012 losses" and ultimately finding that the "record reflects that Central States has the largest potential LIFO losses").

Consequently, the Court should be wary of Rodriguez's and Alfi investor group's self-serving shift to a different methodology in the middle of motion briefing. *See*, *e.g.*, *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) (denying motion by movant whose position "changed and adjusted, depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved."); *GoPro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (refusing to use the "retained shares" methodology when the moving parties initially focused solely on LIFO: "This fact alone counsels in favor of adopting the LIFO methodology"); *Nicolow v. Hewlett Packard Co*., 2013 WL 792642, at *3-4 (N.D. Cal. Mar. 4, 2013) (finding that "[t]he weight of authority puts the most emphasis on the competing movants'

- 4 -

estimated losses, using a 'last in, first out ('LIFO') methodology. . . . Tellingly, VRS itself made no reference to net shares purchased or a retained shares calculation in its opening motion, . . . shifting its argument only after PGGM came forward with larger LIFO losses").

Moreover, courts generally do not employ a loss-causation methodology premised on *Dura* principles in assessing financial interest. *See, e.g.*, *Allergan*, 2019 WL 1510894, at *3 (declining to conduct a "*Dura*" analysis to determine financial interest at the lead plaintiff stage); *Blitz*, 2012 WL 1192814, at *4 (noting that *Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *14-*15 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009).

*Dura* does not provide an accounting methodology. Rather, the case merely articulates a pleading standard for securities fraud claims alleging violations of Section 10(b) of the Exchange Act—namely, that "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura*, 544 U.S. at 346. Consequently, in *Watchguard*, the court expressly declined to look to *Dura* in assessing the financial interest of a Lead Plaintiff movant, explaining its reasoning as follows:

> [The movant's] citation to the discussion of securities class action damages in *Dura* . . . is inapposite. The *Dura* court held that a plaintiff needed to do more than allege the purchase of stock at a fraud-inflated price in order to plead loss causation. The Supreme Court recognized, as does this court, that numerous factors may affect the price of a security. The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue.

*Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6.

Courts have further recognized that engaging in a "*Dura*" analysis at the lead plaintiff stage is not appropriate, when as here, the case involves multiple alleged corrective disclosures

and thus a potential for a varying "fraud premium," which thereby confounds the calculation of recoverable losses. *See Allergan*, 2019 WL 1510894, at *3 (varying fraud premium made it "unwise to embrace . . . [a] convoluted [*Dura*] loss calculation methodology at the expense of . . . considerably more straightforward [LIFO] calculations"); *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (rejecting *Dura* analysis where there were partial corrective disclosures). That is precisely the case here, where Defendants' fraud was exposed through multiple corrective disclosures. It is for these reasons that the "most illuminating" metric is "approximate loss, the only factor that makes no assumptions regarding the fraud premium." *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *16; *Allergan*, 2019 WL 1510894, at *3 (rejecting *Dura* methodology in case involving a multi-year class period and multiple partial disclosures); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 117 (E.D.N.Y. 2012) (rejecting "contention that other movants improperly included regular trading losses from earlier stock sales that are not recoverable under the federal securities laws").

Based on the foregoing, the Court should decline Rodriguez's and the Alfi Group's invitation to apply a novel "*Dura*" loss methodology and simply assess financial interest in terms of the competing movants' losses calculated on a net loss basis.

> **2.      The Habers' *Dura* Losses Exceed Those of Rodriguez and the Alfi Investor Group When the September 2, 2021 Disclosure Event Is Properly Considered.**

Significantly, the remaining competing movants improperly limit their "*Dura*" analysis to the corrective disclosures alleged in the complaints filed to-date beginning on October 28, 2021. But that approach is premature and unduly narrow, as it completely ignores at least one corrective disclosure event that occurred on September 2, 2021.

On that date, Bleecker Street Research published an investigative report entitled "Alfi (ALF): Miami's First Tech IPO Is Quintessential Florida; An Ad-Tech Company With A

Questionable C-Suite, 'Continuing' Buy-Backs, And Relying On A Laser Engraving Company

For Distribution."  Kathrein Reply Dec., Ex. A. The report first examined extensive litigation

between Alfi's founder and CEO Paul Pereira and his previous employer Danimer Scientific

formerly known as Meredian ("Meredian"), wherein Meredian alleged that Pereira had a history

of making material misrepresentations to investors and engaging in self-dealing.  The report

noted that Meredian alleged that Pereira:

- **"Repeatedly altered and misrepresented Meredian's projections and other company information** in presentations and communications to potential customers and/or investors in order to obtain their business under false pretenses."
- **"Repeatedly and purposefully disclosed confidential information of customers and/or potential customers in press releases and presentations."**
- **"Repeatedly used Meridian funds to reimburse himself and/or the Alton Companies for personal and non-business-related expenses by misrepresenting that expense requests were for business purposes.** These included, without limitation, travel expenses for Pereira and his wife that were not business-related, dry cleaning services, dining expenses, boat fuel, and fishing equipment."
- **"Repeatedly wasted company money on non-essential and useless endeavors**, including establishing an office in Miami, Florida (which was used by Pereira and/or the Alton Companies for non-Meridian business), hiring personal friends who lacked any relevant experience and brought no value to Meridian, **paying for trips abroad for his son and his son's friend, and retaining a marketing firm at an exorbitant rate whose primary purpose was to promote Pereira** and/or the Alton Companies, rather than Meridian. As a result, Meridian was unable to purchase raw materials, equipment, and safety items necessary to operate its core business."
- **"Repeatedly engaged in self-dealing, including retaining and causing substantial feeds [*sic*] to be paid to the House of Miami, a company owned and controlled by Pereira and his wife, for graphic design services** that were unnecessary and/or exorbitant, and the fees for which went directly to Pereira and his wife."

Kathrein Reply Decl., Ex. A at pp. 3-4 The Bleecker Report also revealed that Alfi's Chief

Business Development Officer and Co-Founder Defendant John Cook had been barred by

FINRA and charged by the SEC for his involvement in a stock fraud scheme in 2001. *Id*. at p. 6.

- 7 -

011065-11/1793969 V1

The Bleecker Report further disclosed how Alfi's website had concealed the fact that their Chief Technology Officer Charles Ragalan Pereira is the son of Paul Pereira. *Id.* at pp. 6-7. Moreover, the Bleecker Report detailed how Alfi had misrepresented their model to customers or users, as the analyst called several of the early adopters of the technology, who made claims contradictory to Alfi's claims. *Id.* at pp. 7-15.

On this news, Alfi's common stock declined nearly 11% over the next three trading days, falling from $8.82 per share when the market opened on September 2, 2021 to $7.86 per share when the market closed on September 8, 2021.   Kathrein Reply Dec., Ex. B.

Significantly, the Bleecker Research report precipitated Alfi's later disclosures of an internal investigation, termination of senior executives, pendency of an SEC investigation, and inability to file its quarterly report all arising out of the Individual Defendants' use of company funds for their personal use.



011065-11/1793969 V1

Considering the September 2, 2021 disclosure event, the Habers' *Dura* losses remain well in excess of Rodriguez's and the Alfi Investor Group's claimed LIFO out of pocket losses

| Movant | *Dura* Loss |
|---|---|
| **1.  The Habers** | $425,348.30 |
| **2.  Candido Rodriguez** | $257,107.79 |
| 2a. Candido Rodriguez | $204,443.11 |
| 2b. Lorena Ramirez | $17,182.12 |
| 2c. Patatas Duero S.L.N.E. | $8,142.16 |
| 2d. Horticolas Duero S. Coop | $27,340.40 |
| **3.  Alfi Investor Group** | $255,732.10 |
| 3a. Joseph M. Driscoll Trust | $230,001.65 |
| 3b. Alexander Takian | $25,730.45 |

### III.    CONCLUSION

For the reasons discussed above and in the opening brief (Dkt. No. 13) the Habers respectfully request that the Court appoint them Lead Plaintiff and approve their selection of Hagens Berman as Lead Counsel for the Class.

Dated: February 22, 2022                          Respectfully submitted,

By: s// David M. Bucnker
David M. Buckner (FBN 60550)

BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485
Email: david@bucknermiles.com

*Liaison Counsel for [Proposed] Lead Plaintiff
Chad and Aileen Haber*

011065-11/1793969 V1

Reed R. Kathrein (262161)
Lucas E. Gilmore (*pro hac vice* forthcoming)
Wesley A. Wong (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA  92101
Telephone: (619) 929-3340
Facsimile: (619) 929-3337
Email:  reed@hbsslaw.com
Email:  lucasg@hbsslaw.com
Email:  wesleyw@hbsslaw.com

Steve W. Berman (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

*Lead Counsel for [Proposed] Lead Plaintiff
Chad and Aileen Haber*

Steven J. Bonafonte (*pro hac vice* forthcoming)
DCB LAW GROUP LLC
62 West Street
PO Box 630
Litchfield, CT 06759
Telephone: (860) 560-6092
Email: bonafonte@dcblawgroup.com

*Additional Counsel for [Proposed] Lead Plaintiff
Chad and Aileen Haber*

- 10 -