# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| WILLIAM C. STEPPACHER, JR., Individually and On Behalf of All Others Similarly Situated, | Case No. 1:21-cv-24232-KMW-CMM |
| Plaintiff, | **CHAD AND AILEEN HABER'S [PROPOSED] RESPONSE TO COMPETING MOVANTS' SUR-REPLIES IN CONNECTION WITH MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |
| v. | |
| ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, and RICHARD MOWSER, | |
| Defendants. | |

011065-11/1813665 V2

Lead Plaintiff Movants Chad and Aileen Haber (the "Habers") respectfully submit this response to the sur-replies of competing movants Candido Rodriguez ("Rodriguez") and John K. Allen ("Allen"), on behalf of the Joseph M. Driscoll Trust (the "Driscoll Trust"), as the Executor and a Trustee of the Driscoll Trust, and Alexander C. Takian (the "Alfi Investor Group") (collectively, the "Competing Movants"). *See* Dkt. Nos. 46-47.

## I.  INTRODUCTION

In their zeal to artificially reduce the Habers' losses so they can claim the PSLRA's lead plaintiff presumption for themselves, the Competing Movants' sur-replies make numerous misstatements of law and fact, all of which undermine every movant's interest, as well as that of the vast majority of the class of Alfi shareholders harmed by Defendants' alleged wrongdoing. Indeed, the Competing Movants ask the Court, at this preliminary stage, to not only foreclose the lead plaintiff's ability to allege additional partial disclosures beyond those identified in the initial complaints, potentially impairing their ability to seek further relief as the facts warrant, but also to impose an erroneous loss causation standard skewed heavily in favor of Defendants.  Neither of these serve the interest of Class members.

At bottom, the Court should be skeptical of the gamesmanship inherent in the Competing Movants' resort to changing metrics for evaluating the movants' respective financial interests midstream and advancing arguments antithetical to the interests of the Class.  The competing movants' tactics are manifestly focused on securing a leadership role for the competing movants and their counsel at seemingly any cost, rather than in providing the Court with a reliable, objective means under controlling precedent to assess the movants' real interest in this litigation.

011065-11/1813665 V2

## II.      ARGUMENT

**A.      The Court May Disregard the Sur-Replies Since the Habers' Reply Responded to Arguments Raised for the First Time in the Competing Movants' Opposition Papers**

The Court would be well within in its discretion to disregard the sur-replies. *See First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) (a district court's consideration of a sur-reply is purely discretionary).  The Competing Movants argued that sur-replies were warranted because the Habers purportedly raised "new arguments" in their reply brief by offering the September 2, 2021 Bleecker Report as a proposed disclosure event. *See* Dkt. Nos. 43-44.  Not so.  The Habers' offering of the Bleecker Report responded directly to and rebutted the arguments and evidence the Competing Movants advanced in their oppositions challenging the Habers' financial interest, adequacy and typicality. *See TCC Air Servs., Inc. v. Schlesinger*, 2009 WL 565516, at *7 (S.D. Fla. Mar. 5, 2009) (observing that while a reply memorandum may not raise new arguments or evidence, there is "'[a] significant difference . . . between new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other' when they are raised in reply briefs.").

Specifically, in their opposition papers, the competing movants urged the Court to jettison the conventional net loss metric that every movant relied on in representing their financial interest. *See* Dkt. No. 18 at pp. 7-8; Dkt. No. 21 at p. 4. Instead, competing movants implored the Court to apply an entirely new test solely to the Habers that is purportedly in line with *Dura* but that conveniently reduces the Habers' purported financial interest relative to the Competing Movants.  *Id*.  In direct response to the Competing Movants' midgame maneuvering, the Habers offered the Bleecker Report to show:

- The Competing Movants' novel *Dura*-loss test to be applied, only to the Habers, is not an "accounting method" that can be "rational[ly] and consistently applied" since it presupposes that the initial complaints, despite the very early stage at which this litigation stands, capture all of the potential corrective disclosure

events in this case.  *See, e.g., In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (in evaluating lead plaintiff movants' financial interests, court must apply an "accounting method" that can be "rational[ly] and consistently applied.");[1] and

- Even if the Court were to apply the proposed *Dura* loss methodology, considering all plausible identified disclosure events, the Habers still maintain a larger claimed financial interest in the litigation relative to the competing applicants.

*See* Dkt. No. 40.

Accordingly, since the Bleecker Report simply responded to arguments and evidence raised by the competing movants in their opposition, the sur-replies should not be considered. *See, e.g., Equal Emp. Opportunity Comm'n v. Univ. of Miami*, 2021 WL 2349490, at *2 (S.D. Fla. June 9, 2021) (in denying consideration of sur-reply, court rejected argument that the reply raised new argument since the reply merely responded to the arguments and the evidence the Plaintiff relied on in her response in opposition).

**B.      Lead Plaintiff Movants May Allege Additional Plausible Partial Disclosures to Establish their Financial Interest**

The Competing Movants argue that a lead plaintiff movant may not offer for consideration a disclosure event not alleged in the initial complaint, and falsely claim that the Habers offer no supporting authority.  Dkt. No. 47. But in their reply, the Habers cited and discussed *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 115-117 (E.D.N.Y. 2012), where the court appointed a movant to serve as lead plaintiff even though it sold "most, if not all," of its shares before the full extent of the alleged fraud had been disclosed. There, in response to the competing movants' oppositions challenging the plaintiff's financial interest under a *Dura* loss

---

[1] The Competing Movants' own authorities recognize that application of *Dura* may be inappropriate here, where there are several alleged partial disclosures and likely a varying fraud premium.  *See, e.g., City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (recognizing that "some courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if," for example, "a case involves multiple disclosures and the analysis of recoverable losses is murky and lacks sufficient evidence.").

011065-11/1813665 V2

analysis, the plaintiff advanced a "leakage theory," in which the plaintiff contended that the truth of the alleged fraud "leaked out" in the form of partial disclosures, reducing the price of the company's stock before the plaintiff sold its holdings. *Id.* at 115. The *Gentiva* Court considered and found that the plaintiff's "several plausible and legitimate partial disclosures" supported the plaintiff's claimed losses. *Id.*

Indeed, the competing movants' own authorities undermine this position.  In *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 502 (D. Conn. 2017), the court addressed the issue of whether or not a proposed lead plaintiff movant may rely on a potential disclosure event not alleged in the initial complaints.  After canvassing the authorities on this issue, including *Gentiva*, the *Galmi* Court held that "[s]o long as a partial disclosure can be plausibly alleged, a proposed lead plaintiff should not be precluded from relying on that disclosure to establish recoverable losses." *Id.* After examining the movant's proposed disclosures, the *Galmi* Court ultimately rejected their consideration for purposes of supporting the movant's claimed losses. The *Galmi* Court first observed that the "movant provides neither citations to publicly available documents nor a sworn affidavit in support of its alleged partial disclosures, so the court is not in an ideal position to determine whether they are plausible allegations of partial disclosures." *Id.* Moreover, accepting the allegations in the reply as true, the *Galmi* Court held that the proposed partial disclosures as alleged were not sufficiently related to the misconduct alleged. Here, in contrast to the movant in *Galmi*, the Habers have supplied a declaration attaching the Bleecker Report and Alfi share price data showing that when the Bleecker Report was revealed to the

- 4 -

market it caused a negative impact on the price of Alfi's shares.  Thus, unlike in *Galmi*, the Court can readily evaluate the plausibility of the Bleecker Report as a partial disclosure.[2]

For the same reasons, the Competing Movants' reliance on *Africa v. Jianpu Tech. Inc.*, 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021) is misplaced.  There, the movant improperly characterized the company's reverse stock split as a corrective disclosure, but then later admitted to having no authority considering such an event to be a partial corrective disclosure.  *Id*. Accordingly, the court found the movant's partial disclosure "theory is too undeveloped to be appropriately considered at this stage."  *Id*.

## C.     The Bleecker Report is Directly Related to the Alleged Wrongdoing

Next, the Competing Movants dismiss the Bleecker Report as a disclosure event because it purportedly did not prove "(1) Alfi maintained deficient controls over disclosures and financial reporting; (2) Alfi and its employees engaged in corporate transactions without sufficient consultation or board oversight; (3) this increased the risk of internal and regulatory investigations into the Company and its employees; and (4) revelation of these facts was likely to have a negative impact on the Company's reputation, financial condition, and ability to timely file periodic reports with the SEC."  Dkt. No. 46 at pp. 2-3; Dkt No. 47 at p. 2. But this argument

---

[2] This Court's decision in *Maliarov* does not counsel otherwise, as the Court appointed a movant that incurred some of its losses in the period following a partial disclosure, over a movant who incurred **no losses** on shares held through the corrective disclosure. *See* 2016 WL 1367246, at *3-4.  Similarly, the Competing Movants' reliance on *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *7 (E.D.N.Y. Mar. 2, 2007), is misplaced.  There, the court set aside a movant who had **gains** on shares held through the disclosures.  That is not the case here. Likewise, *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018), is inapt as there the court required that plaintiffs' losses be netted against profits attributable to the same fraud.  Finally, in *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015), the movant that was denied lead plaintiff appointment "did not own any shares" at the end of the class period.

011065-11/1813665 V2

mischaracterizes the facts revealed in the Bleecker Report, construes the complaints' allegations too narrowly, and misapplies the law on loss causation.

Specifically, after detailing Defendant CEO Paul Pereira's and other members of Alfi's executive team's long history of alleged unethical conduct, including self-dealing, siphoning of corporate funds for personal use, and lying to investors at their past companies, the Bleecker Report explains how these same executives have carried over this same wrongful conduct at Alfi. Dkt. No. 40-2 at pp. 2-4, 6-15. In particular, the Bleecker Report charges Alfi's C-Suite with (i) concealing the fact that their Chief Technology Officer Charles Raglan Pereira is the son of Paul Pereira; (ii) misrepresenting the technical capabilities of Alfi's products to customers and investors; and (iii) presenting false financial projections concerning advertising inventory and tablet deployment to allow Alfi to go public and drive up its share price. *Id*. Thus, the Bleeker Report sheds light on Alfi's false statements in its IPO materials and deficient controls over disclosures and reporting, as alleged in the complaints. *See* Dkt. No. 1 ¶¶ 7, 44-47; *see also Kleinschmidt v. Alfi, Inc*., No. 1:21-cv-24338, Dkt. No. 1 ¶¶ 9, 37, 41-45. Moreover, the Bleecker Research report precipitated and plainly relates to Alfi's later disclosures of an internal investigation of the C-Suite, termination of Alfi senior executives, pendency of an SEC investigation, and inability to file its quarterly report all arising out of the Individual Defendants' use of company funds for their personal use. *See* Dkt. No. 1 ¶¶ 61-66; *see also Kleinschmidt v. Alfi, Inc*., No. 1:21-cv-24338, Dkt. No. 1 ¶¶ 51-54. Accordingly, the Bleecker Report "relate[s] back to the misrepresentation[s]." *Luczak v. Nat'l Bev. Corp*., 812 F. App'x 915, 922 (11th Cir. 2020) (where a plaintiff alleges that multiple disclosures "cumulatively disclose[]" the fraud, the plaintiff does not need to allege that each corrective disclosure individually "shows proof of

- 6 -

fraud" or "proof of liability") (citing *Katyle v. Penn Nat'l Gaming, Inc*., 637 F.3d 462, 472-73 (4th Cir. 2011)).

**D.     The Bleecker Report Caused a Decline in Alfi's Share Price After its Disclosure**

Finally, the Competing Movants erroneously argue that there was no price decline following the disclosure of the Bleecker Report.  Dkt. No. 46 at pp. 4-6; Dkt. No. 47 at pp. 2-3. But the Competing Movants predicate this argument on an analysis of only a five-hour trading window for Alfi shares after the release of the Bleeker Report.  *Id*. This time limitation is arbitrary.[3]  The Habers have demonstrated that Alfi's common stock declined nearly 11% over the next three trading days, falling from $8.82 per share when the market opened on September 2, 2021 to $7.86 per share when the market closed on September 8, 2021.  Significantly, the only news pertaining to Alfi shares was the Bleecker Report.[4] This evidence is sufficient to establish loss causation. *Hartel v. GEO Grp., Inc*., 2021 WL 4397841, at *13 (S.D. Fla. Sept. 23, 2021) (upholding loss causation theory on multiple day drop).

### III.     CONCLUSION

For the reasons discussed herein and in their past filings, the Habers respectfully request that the Court appoint them Lead Plaintiff and approve their selection of Hagens Berman as Lead Counsel for the Class.

---

[3] For example, even the initial complaints recognize that with each partial disclosure it took the market at least one full trading day to digest the facts revealed by Alfi. *See* Dkt. No. 1 ¶¶ 9, 14, 58, 64; *see also Kleinschmidt v. Alfi, Inc*., No. 1:21-cv-24338, Dkt. No. 1 ¶¶ 5, 8, 48, 53.

[4] *See* "Alfi Shares Down ~4%; Short Research Firm Bleecker Street Earlier Issued Report 'Alfi (ALF): Miami's First Tech IPO Is Quenessential Florida; An Ad-Tech Company With A Questionable C-Suite, "Continuing" Buy-Backs That Haven't Happened...'," Benzinga (Sep. 2, 2021), available at https://www.benzinga.com/short-sellers/21/09/22781762/alfi-shares-down-4-short-research-firm-bleecker-street-earlier-issued-report-alfi-alf-miamis-first- (last visited on Mar. 8, 2022).

- 7 -

011065-11/1813665 V2

Dated: March 8, 2022

Respectfully submitted,

By: s// David M. Buckner
    David M. Buckner (FBN 60550)

BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485
Email: david@bucknermiles.com

*Liaison Counsel for [Proposed] Lead Plaintiff*
*Chad and Aileen Haber*

Reed R. Kathrein (262161)
Lucas E. Gilmore (*pro hac vice* forthcoming)
Wesley A. Wong (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA  92101
Telephone: (619) 929-3340
Facsimile: (619) 929-3337
Email:  reed@hbsslaw.com
Email:  lucasg@hbsslaw.com
Email:  wesleyw@hbsslaw.com

Steve W. Berman (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

*Lead Counsel for [Proposed] Lead Plaintiff*
*Chad and Aileen Haber*

- 8 -

011065-11/1813665 V2

- 9 -

Steven J. Bonafonte (*pro hac vice* forthcoming)
DCB LAW GROUP LLC
62 West Street
PO Box 630
Litchfield, CT 06759
Telephone: (860) 560-6092
Email: bonafonte@dcblawgroup.com

*Additional Counsel for [Proposed] Lead Plaintiff*
*Chad and Aileen Haber*

011065-11/1813665 V2