UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-24232-CIV-WILLIAMS

WILLIAM C. STEPPACHER, JR., *et al.*,

    Plaintiffs,

vs.

ALFI, INC., *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on three motions to appoint lead plaintiff and lead plaintiff's counsel, filed by competing lead plaintiff movants Candido Rodriguez ("Mr. Rodriguez"), Alfi Investor Group,[1] and Chad Haber and Aileen Haber (collectively, the "Habers").[2] (DE 11; DE 12; DE 13, respectively.) For the reasons set forth below, Mr. Rodriguez's motion (DE 11) is **GRANTED**. Mr. Rodriguez is appointed lead plaintiff in this matter; Glancy Prongay & Murray LLP is appointed lead counsel; and Saxena White P.A. is appointed local counsel. Accordingly, Alfi Investor Group's motion (DE 12) and the Habers' motion (DE 13) are **DENIED.**

---

[1] Alfi Investor Group is an investor group composed of: John K. Allen, on behalf of the Joseph M. Driscoll Trust, as Executor and a Trustee; and Alexander C. Takian. (DE 12 at 1.)

[2] Alfi Investor Group and the Habers filed responses (DE 21; DE 20) to Mr. Rodriguez's motion (DE 11), and Mr. Rodriguez filed a reply (DE 39). Mr. Rodriguez and the Habers filed responses (DE 18; DE 20) to Alfi Investor Group's motion (DE 12), and Alfi Investor Group filed a reply (DE 41). Mr. Rodriguez and Alfi Investor Group filed responses (DE 18; DE 21) to the Habers' motion (DE 13), the Habers filed a Reply (DE 40), Mr. Rodriguez and Alfi Investor Group filed sur-replies (DE 46; DE 47), and the Habers filed a sur-sur-reply (DE 50).

I.  **BACKGROUND**

Because this matter encompasses two consolidated matters, the Court briefly reviews both the procedural history and factual background.

   A.  *Procedural History*

On December 2, 2021, William C. Steppacher, Jr., ("Mr. Steppacher, Jr."), the current named plaintiff in this matter, filed the Complaint. (DE 1.) On December 15, 2021, Consol Plaintiff Gary Kleinschmidt filed a substantially similar complaint (the "Consol Complaint")[3] in the case styled *Kleinschmidt v. Alfi, Inc., et al.*, No. 21-cv-24338-JLK, DE 1 (S.D. Fla. Dec. 15, 2021). On January 31, 2022, the three competing lead plaintiff movants filed motions to consolidate the two cases and appoint lead plaintiff and lead plaintiff's counsel.[4] (DE 11; DE 12; DE 13.) On February 3, 2022, the Court granted the motions to consolidate *Kleinschmidt v. Alfi, Inc.*, under the instant case, *Steppacher, Jr. v. Alfi, Inc. et al.*, No. 21-cv-24232-KMW, DE 16 (S.D. Fla. Feb. 3, 2022). On April 4, 2022, after briefing on the lead plaintiff and lead plaintiff's counsel motions was complete, the Court held a motions hearing. (DE 55; DE 68.)

   B.  *Factual Background*

Alfi, Inc. ("Alfi") is a Delaware corporation with its principal offices located in Miami Beach, Florida. (DE 1 at 6.) Alfi's business is to provide artificial intelligence and machine learning software. (*Id.* at 2.) In early 2021, Alfi began the process of holding an initial

---

[3] Pursuant to the Court's order entered on March 28, 2022, the deadlines to respond and reply to the Complaint and Consol Complaint are suspended, and the Parties must file a joint proposed schedule for the filing of an amended complaint, if any, and subsequent responses and replies by **April 14, 2022, at 5:00 p.m.** (DE 59.)

[4] Mr. Steppacher, Jr., filed a motion on behalf of a fourth lead plaintiff movant, Josh Buterin, but subsequently withdrew the motion. (DE 14; DE 35.)

public offering ("IPO") by filing a registration statement ("Form S-1") with the Securities and Exchange Commission ("SEC"). (*Id.* at 2.) On May 4, 2021, Alfi's common stocks and warrants began trading on the NASDAQ Capital Market under the trading symbols "ALF" and "ALFIW." (*Id.*) The following day, Alfi filed a prospectus ("Form 424B4") with the SEC in connection with the IPO. (*Id.*)

The Complaint in this matter was brought against multiple Defendants, including Alfi and certain Alfi board members, executives, and directors. (*Id.* at 6–8.) The Complaint alleges that the registration statement and the prospectus (collectively, the "Offering Documents"), were negligently prepared and misleading, and that between May 4, 2021, and November 15, 2021, (the "Class Period"), Defendants made materially false and misleading statements about Alfi's "business, operations, and compliance policies." (*Id.* at 3.) Further, the Complaint alleges that Alfi maintained insufficient disclosure controls and internal operating procedures, and that "the Company and its employees could and did engage in corporate transactions and other matters without sufficient and appropriate consultation with or approval by the Company's Board of Directors." (*Id.*)

According to the Complaint and Consol Complaint—and relevant to the lead plaintiff motions before the Court today—on October 28, 2021, Alfi's alleged fraud began to be revealed via a corrective disclosure. (*See id.*) On that day, Alfi disclosed in an SEC filing that the Board of Directors (the "Board") had placed Defendant Paul Antonio Pereira (Alfi's CEO), Charles Raglan Pereira (Alfi's CTO), and Defendant Dennis McIntosh (Alfi's CFO) on leave pending an investigation. (*Id.*) Alfi's share price then began to fall. (*Id.* at 4.) Shortly thereafter, on November 1, 2021, Alfi disclosed in another SEC filing that the company had purchased a $1.1 million condominium and sponsored a sports tournament.

(*Id.*) On November 15, 2021, Alfi disclosed it had received a letter from the SEC regarding an ongoing investigation. (*Id.*) Just over two weeks later, Mr. Steppacher, Jr. filed the Complaint, initiating this federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Alfi common stock or warrants pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Alfi securities during the Class Period. (*Id.* at 2.) The Complaint was brought pursuant to the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). The Complaint[5] contains four (4) Counts: Count I, alleging violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5; Count II, alleging violations of Section 20(a) of the Exchange Act; Count III, alleging violations of Section 11 of the Securities Act; and Count IV, alleging violations of Section 15 of the Securities Act. (*Id.* at 20, 23, 25, 26.)

## II.  LEGAL STANDARD

Because this matter is a private securities fraud class action lawsuit, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4, *et seq.*, dictates the procedure for appointing a lead plaintiff. The Court is guided by PSLRA Section 78u-4(a)(3)(B)(i), which states that the lead plaintiff is one which "the court determines to be most capable of adequately representing the interest of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

---

[5] The Consol Complaint raises substantially similar claims as the Complaint. (*Compare Kleinschmidt*, No. 21-cv-24338-JLK at DE 1, *with* DE 1.) Because the Parties have indicated a desire to file an amended complaint following appointment of a lead plaintiff and lead plaintiff's counsel (DE 57), the Court does not delve more than is necessary into the existing complaints at this time.

The PSLRA contains a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);[6]
>
> (bb) in the determination of the court, has the **largest financial interest** in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc) (emphasis added). "Given the PSLRA's framework, the person(s) or entity with the greatest financial interest generally enjoys the rebuttable presumption that he, she, or it is the most adequate plaintiff to serve as lead plaintiff." *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at *2 (S.D. Fla. Oct. 15, 2021) (citing *Kornfield v. Opteum Inc.*, 2008 WL 11408525, at *3 (S.D. Fla. Sept. 29, 2008) ("[T]he most important factor in determining the lead plaintiff is the amount of financial interest claimed.") (alteration added and citations omitted)); *Luczak v. Nat'l*

---

[6] The PSLRA provides that within twenty (20) days after the date a complaint is filed, the plaintiff or plaintiffs shall publish a notice advising members of the purported plaintiff class of the pendency of the action and that any member may move to serve as lead plaintiff within sixty (60) days after the notice is published. 15 U.S.C. § 78u-4(a)(3)(A)(i). "Before a district court may rule on a motion to appoint lead plaintiff, it has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation." *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 1997089, at *2 (S.D. Fla. May 18, 2021) (*citing Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *2 (D.N.J. Apr. 14, 2020) (citations and quotations omitted)).

Notice was published in the instant action on December 2, 2021. (DE 11-3.) The notice contained the case name, docket number, and the court where the action was pending—all information which serves to notify potential lead plaintiff movants of this action. Thus, the Court finds the notice satisfies the PSLRA. Further, the three motions in consideration before the Court today were timely filed on January 31, 2022, and therefore, all three lead plaintiff movants satisfy the first of the three factors under the PSLRA's rebuttable presumption for "most adequate" plaintiff. § 78u-4(a)(3)(B)(iii)(I)(aa).

*Beverage Corp.*, 2018 WL 9847842, at *1 (S.D. Fla. Oct. 12, 2018). Accordingly, the operative question in this matter is which lead plaintiff movant—Mr. Rodriguez,[7] Alfi Investor Group, or the Habers—has the largest financial interest.

In addition to having the "largest financial interest," the "most adequate" plaintiff must also satisfy the class action requirements of Federal Rule of Civil Procedure 23 ("Rule 23"): (1) that the class is so numerous that joinder of all members is impracticable, (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Of the four Rule 23 requirements, two—typicality and adequacy—directly address the personal characteristics of a class representative, rather than the class. Consequently, courts have limited inquiry to the typicality and adequacy prongs of Rule 23 at the lead plaintiff appointment stage. *Mulvaney v. Geo Grp., Inc.*, 2016 WL 10519276, at *2 (S.D. Fla. Nov. 21, 2016) ("[A]t the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate."). To rebut the presumption of "most adequate" plaintiff under the PSLRA, a

---

[7] Lorena Ramirez, Horticolas Duero S. Coop, and Patatas Duero S.L.N.E. assigned "all rights, title, ownership, and interest in claims, demands, and causes of action of any kind whatsoever" to Mr. Rodriguez. (DE 11-4 at 1.) Ms. Ramirez is Mr. Rodriguez's wife, and Horticolas Duero S. Coop and Patatas Duero S.L.N.E. are Mr. Rodriguez's companies. (*Id*.) Alfi Investor Group argues that the Mr. Rodriguez's losses are less than asserted, because Mr. Rodriguez's losses include the losses of his wife and his two companies. (DE 21 at 2.) This argument is not persuasive, considering all rights were assigned to Mr. Rodriguez by relatives/related entities, as explained in the exhibits to his lead plaintiff motion. (*See* DE 11-4.) Alfi Investor Group also asserts that the assignments filed by Mr. Rodriguez with his lead plaintiff's motion were invalid. (DE 21 at 3.) However, Alfi Investor Group has not directed the Court to any requirement that valid assignments be filed with a lead plaintiff motion, and regardless, Mr. Rodriguez has now filed valid assignments. Thus, the Court considers Mr. Rodriguez's loss total as inclusive of those rights assigned to him. (*See* DE 39 at 3 n.2.)

member of the purported plaintiff class must offer proof that such plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequate representation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### III. DISCUSSION

The primary dispute between the three lead plaintiff movants centers on the operative question before the Court: which lead plaintiff movant has the largest financial interest under the PLSRA's rebuttable presumption for "most adequate" plaintiff. Based only on the total losses reported by each lead plaintiff movant in their motions for appointment, the Habers had the "largest financial interest." (DE 11-5; DE 12-5; DE 13-5.) Mr. Rodriguez reported a loss total of $257,107.79 (DE 11-5 at 4), and Alfi Investor Group reported a loss total of $255.732.10 (DE 12-5 at 15.) The Habers reported a loss total of $338,698.30 (DE 13-5 at 2.) However, both Mr. Rodriguez and Alfi Investor Group assert that the Habers' loss total was overstated, because Chad Haber sold all his shares prior to October 28, 2021, the date of the first alleged corrective disclosure, the SEC filing stating that certain Alfi executives had been placed on leave pending an investigation. (DE 1 at 3; DE 18 at 10; DE 13-5.)  Aileen Haber also sold most of her shares prior to that date. (DE 18 at 10; DE 13-5.) Thus, Mr. Rodriguez and Alfi Investor Group assert that the Habers' true loss total is $17,052.70. (*Id*.) In an attempt to bolster their loss total, the Habers put forth—in their Reply—that the actual first corrective disclosure was made on September 2, 2021, when short-seller Bleecker Street Research published a report (the "Bleecker Report") "revealing the Alfi's executive team's misconduct." (DE 40 at 7.) Thus, before the Court can determine which lead plaintiff movant has the "largest financial

interest," it must first consider whether the Bleecker Report qualifies as a corrective disclosure.

### A. *Corrective Disclosures*

The PSLRA requires that plaintiffs demonstrate loss causation in fraud-on-the-markets cases, or, in other words, that plaintiffs prove a "defendant's misrepresentations caused the loss for which the plaintiff seeks to recover." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (holding plaintiffs in securities litigation must prove proximate causation and economic loss) (citing § 78u-4(b)(4) (internal quotations omitted)).[8] In this Circuit, a plaintiff may demonstrate loss causation by: (1) identifying a "corrective disclosure," (2) demonstrating a subsequent price drop, and (3) "eliminating

---

[8] The Habers argue the Court should not apply a *Dura Pharmaceuticals, Inc. v. Broudo* loss causation analysis at the lead plaintiff movant stage. (DE 40 at 6 (asserting "*Dura* articulated a pleading standard, not an accounting loss methodology, and therefore courts generally decline to assess financial interest with reference to the principles articulated in *Dura* at this stage of the litigation").) In doing so, the Habers ignore the corrective disclosure analysis of other courts premised on *Dura* in appointing a lead plaintiff. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures."); *In re Comverse Tech., Inc. Securities Litigation*, No. 06-1825, 2007 WL 680779, at *4 (E.D.N.Y. March 2, 2007) ("[U]nder *Dura* and its progeny, any losses that [movant] may have incurred before [Defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation. While the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff.").

Further, the PSLRA requires courts to consider the "adequacy" of lead plaintiff movants under Rule 23. § 78u-4(a)(3)(B)(iii)(I)(cc). Therefore, if a lead plaintiff movant sold all his or her shares prior to a valid corrective disclosure, such a movant can satisfy neither the adequacy prong under Rule 23 nor the rebuttable presumption under the PSLRA. Fed. R. Civ. P. 23(1)(1) (providing "the representative parties will fairly and adequately protect the interests of the class.").

other explanations for this price drop, so that . . . it is more probable than not that it was the corrective disclosure . . . that caused at least a 'substantial' amount of the price drop." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311–12 (11th Cir. 2011) (citation omitted). At issue here is whether the corrective disclosure alleged in the Complaint and Consol Complaint—the October 28, 2021, Alfi SEC filing—should determine the largest financial interest among the lead plaintiff movants. The Habers assert that, instead, the Court should consider the September 2, 2021, Bleecker Report as the first corrective disclosure in determining which movant has the largest financial interest in this matter.[9]

To qualify as "corrective," a disclosure must relate to the same subject matter as the alleged fraudulent misrepresentations or misstatements which form the basis of the complaint in a securities fraud-on-the-market case, because "only then can the disclosure be said to have a 'corrective effect,' rather than merely a 'negative effect.'" *FindWhat Inv. Grp.*, 658 F.3d at 1312 n.28 (citations omitted). Importantly, the PSLRA "require[s] that the financial interest not be measured simply as the total loss suffered by an investor related to the subject stock, *but rather as the damages attributable to the fraud*."

---

[9] The Habers first raised the Bleecker Report in their Reply. (DE 40 at 7.) In general, new arguments and new evidence are not permitted in reply briefs. *See Baltzer v. Midland Credit Mgmt., Inc.*, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014) ("A reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence."); *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("As for reply briefs, this Court follows the same rule and repeatedly has refused to consider issues raised for the first time in a[] . . . reply brief."). Nevertheless, because the Court is tasked with selecting the "most adequate plaintiff" in this matter, it will consider the merits of the Bleecker Report as a corrective disclosure. The Parties in this matter have already indicated an intent to file an amended complaint following the appointment of a lead plaintiff, and the Court acknowledges that an earlier corrective disclosure may therefore be pleaded. (*See* DE 57 (requesting an extension of time to file responses/replies "[g]iven the possibility, indeed likelihood, that the Court-appointed Lead Plaintiff may desire to file an amended complaint . . . .").

*Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018) (emphasis added). The Eleventh Circuit requires that a corrective disclosure reveal new information: therefore, a corrective disclosure cannot be based only on publicly available information such as a company's corporate filings or filings available on a public docket in a legal proceeding. *See Meyer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013); *FindWhat Inv. Grp.*, 658 F.3d at 1312 n.28 ("Moreover, because a corrective disclosure must reveal a previously concealed truth, it obviously must disclose new information, and cannot be merely confirmatory") (citing *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir.2008)); *Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855, 863 (declining to consider a report which relied on "facts … that had existed in publicly accessible court dockets" a corrective disclosure).

A corrective disclosure must reveal new information because an efficient market reflects all publicly available information in the price of a security. *See Meyer*, 710 F.3d at 1198. Accordingly, if an alleged disclosure only repackages known information, it cannot "correct" any prior misrepresentation or misleading statement. *See id.* at 1198. In *Meyer*, the Eleventh Circuit declined to consider a short-seller's report as a corrective disclosure because the report merely repackaged public information. *Id.* at 1199–1200 ("If every analyst or short-seller's opinion based on already-public information could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue … using an analyst's negative analysis of public filings as a corrective disclosure. That cannot be—nor is it—the law.").

The Bleecker Report is the type of publication disclaimed in *Meyer*: a short-seller's report which restates publicly available information (DE 40-2 at 1, 2 (stating "Bleecker

Street Research is short shares of ALF" and relying on court filings for its analysis).) For example, without identifying the case number or court location, the Bleecker Report repeatedly cites "Danimer" court filings for the proposition that Defendant Pereira engaged in alleged fraud or misbehavior in the past.[10] Such filings are publicly available. In addition, the Bleecker Report cites various news articles and press releases which, again, only restate publicly available information, as well as public SEC filings and a Financial Industry Regulatory Authority ("FINRA") broker report relating to a Defendant in this matter, John M. Cook, II. (DE 40-2 at 3–6 (citing an article in the *The Post-Searchlight*, various press releases, and SEC filings).) Although the Bleecker Report does state that its authors called alleged Alfi partners Value Cabs, Hammersmith Broadway Shopping Centre, and "several early adopters of the technology[,]" and that such partners "made claims contradictory to Alfi's claims[,]" the report's authors qualify that "[w]e believe this indicates one of the following *theories* . . . ." (*Id.* at 8.) At most, the Bleecker Report simply repackages existing public information, and alleges that certain partners made disparaging statements regarding Alfi. Pursuant to binding Eleventh Circuit precedent, publicly available information merely copied and restated in a short-seller report is insufficient to qualify as a corrective disclosure. *Meyer*, 710 F.3d at 1199; *Sapssov*, 608 F. App'x at 863; *FindWhat Inv. Grp.*, 658 F.3d at 1312 n.28. Thus, the Court declines to consider the Bleecker Report as a corrective disclosure. As alleged in the Complaint and

---

[10] The Bleecker Report appears to be referencing the now-closed case in the Middle District of Georgia, styled, *Meredian Holdings Group, Inc. et al. v. Paul Pereira, et al.*, No. 1:16-cv-124-WLS (M.D. Ga. Sept. 2, 2020) (the "Meredian Case"). The Amended Complaint filed in the Meredian Case references a "DaniMer Scientific" and contains the quoted phrases in the Bleecker Report, "[r]epeatedly engaged in self-dealing" and "becoming grossly inebriated . . . ." *Meredian Holding*, No. 1:16-cv-124-WLS, DE 12 at 1, 35. The Bleecker Report also cites to a news article about the case. (DE 40-2 at 3.)

Consol Complaint, the October 28, 2021, SEC filing by Alfi disclosed *new* information to the market and as such, qualifies as a corrective disclosure.[11]

### B. *Largest Financial Interest*

Although the PSLRA does not define how a court should calculate which lead plaintiff movant has the largest financial interest, courts in the Eleventh Circuit consider: (1) the number of shares purchased during the class period, (2) the amount of the investment or net funds expended during the class period, and (3) the estimated losses suffered. *See Kornfield*, 2008 WL 11408525, at *4 (stating "[i]n this Circuit, some courts in making this determination have considered" the above factors); *Short Squeeze Trading Litigation*, 2021 WL 4840857, at *2 (citing *Miller*, 2008 WL 2465286, at *3 (citation omitted)). Of the three factors, "[m]ost courts accord the third factor, the estimated losses, the greatest weight." *Short Squeeze Trading Litigation*, 2021 WL 4840857, at *2 (citations omitted); *Kornfield*, 2008 WL 11408525, at *4 (focusing on the applicants who suffered the greatest loss).

With the October 28, 2021, corrective disclosure and the Class Period in mind, the Court analyzes which of the three lead plaintiff movants has the largest financial interest. Because Chad Haber sold all his shares prior to October 28, 2021, and Aileen Haber sold most of her shares, the Habers loss total is approximately $17,052.10 (DE 18 at 10; DE 13-5.) Mr. Rodriguez maintained the same number of shares between July 1, 2021, and the end of the Class Period; therefore, his loss total remains the same. (DE 11-5.) Alfi

---

[11] As argued by the Habers during the motions hearing, discovery in this matter may reveal an earlier corrective disclosure. Although future filings and an amended complaint may hinge on a corrective disclosure earlier in time than the October 28, 2021, SEC filing, at this stage the Court is presented with two potential corrective disclosures and accordingly makes its ruling on the record to date.

Investor Group continued purchasing shares of ALF following the October 28, 2021, corrective disclosure, and therefore its loss total is slightly less. (DE 12-5.) Thus, Mr. Rodriguez reports the greatest loss and—in line with courts in this Circuit weighing estimated losses most heavily in determining which lead plaintiff movant has the greatest financial interest—has the largest financial interest.[12] *See, e.g., Short Squeeze Trading Litigation*, 2021 WL 4840857, at *2 (appointing as lead plaintiff the movant with the greatest losses); *Kornfield*, 2008 WL 11408525, at *4 (same); *Montesano*, 2020 WL 1873015, at *2 (same).

### C. *Rule 23 Factors*

To be deemed "most adequate plaintiff" under the PSLRA's rebuttable presumption, a lead plaintiff movant must demonstrate that they satisfy the Federal Rules of Civil Procedure Rule 23 factors, in addition to having the largest financial interest and having made a motion in response to a notice pursuant to the Act. § 78u-4(a)(3)(B)(iii)(I)(aa). As discussed above, of Rule 23's four requirements, only typicality and adequacy are relevant at the lead plaintiff appointment stage. *Short Squeeze Trading Litigation*, 2021 WL 4840857, at *3 (citing *Luczak*, 2018 WL 9847842, at *2; and *Miller*, 2008 WL 2465286, at *6).

First, a lead plaintiff movant's claims are typical where their claims share the "same essential characteristics as the claims of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000) (emphasis, quotation marks, and citation omitted); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009). Mr.

---

[12] Although Alfi Investor Group retained significantly more shares—65,202 to Mr. Rodriguez's 20,020—the Court weighs total loss the most heavily, as is the practice in this Circuit. (*Compare* DE 12-5, *with* DE 11-5.)

Rodriguez alleges that Defendants made "material misstatements and omissions concerning Alfi's business, operations, and financial prospects [in violation of] . . . federal securities laws," and that he, "like all members of the Class, purchased Alfi securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby." (DE 11-1 at 9.) Thus, Mr. Rodriguez's claims are typical of the class.

In determining a lead plaintiff movant's adequacy, courts consider whether any substantial conflicts of interest exist between the representative and the class, and whether the representative will adequately prosecute the action. *Phillips v. Churchill Capital Corp. IV*, 2021 WL 4220358, at *3 (Sept. 16, 2021). Mr. Rodriguez asserts he is not aware of any conflict between his claims and those asserted on behalf of the class and has submitted documentation attesting his ability and dedication to prosecute this action. (DE 11-2; DE 11-3.) Consequently, the Court finds that Mr. Rodriguez has sufficiently shown he satisfies Rule 23's typicality and adequacy requirements. Finding that Mr. Rodriguez has satisfied all three factors of the PSLRA's rebuttable presumption for "most adequate plaintiff" and that no competing movant has rebutted this presumption, the Court grants Mr. Rodriguez's motion (DE 11) and appoints Mr. Rodriguez as lead plaintiff in this matter.

### D. *Lead Plaintiff's Counsel*

In addition to vesting the Court with the responsibility of appointing a lead plaintiff, the PSLRA also requires the lead plaintiff to select lead counsel, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not interfere with the lead plaintiff's

selection of counsel unless necessary to "protect the interests of the class[.]"[13] *Short Squeeze Trading Litigation*, 2021 WL 4840857, at *6; § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Rodriguez has selected Glancy Prongay & Murray LLP to serve as lead counsel and Saxena White P.A. as local counsel. In support of both firms, Mr. Rodriguez filed the firms' resumes and a declaration in support (DE 11-6; DE 11-7; DE 11-2.) Upon review, the Court notes both firms have extensive securities fraud class action experience. Accordingly, the Court approves of the selection of Glancy Prongay & Murray LLP and Saxena White P.A., and appoints the firms as lead and local counsel, respectively.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Mr. Rodriguez's motion (DE 11) is **GRANTED**.
2. Mr. Rodriguez is appointed **LEAD PLAINTIFF** in this matter, and the Clerk is directed to re-style this case accordingly.
3. Glancy Prongay & Murray LLP is appointed **LEAD COUNSEL** and Saxena White P.A. is appointed **LOCAL COUNSEL**.
4. Alfi Investor Group's motion (DE 12) is **DENIED**.
5. The Habers' motion (DE 13) is **DENIED**.
6. The Parties must file a joint proposed schedule for the filing of an amended complaint, if any, and responses/replies by **April 14, 2022, at 5:00 p.m.**

---

[13] The Court is pleased to note that, in addition to addressing the guidelines set forth by the PSLRA, all three lead plaintiff movants articulated their commitment to diversity in assembling the lead counsel team and to working collaboratively once the Court made that decision.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>13th</u> day of April, 2022.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE