# EXHIBIT 2

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549
FORM 8-K
CURRENT REPORT
PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

Date of report (Date of earliest event reported):                                                                   June 27, 2022

## Alfi, Inc.

(Exact Name of Registrant as Specified in Charter)

| Delaware | 001-40294 | 30-1107078 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

429 Lenox Avenue, Suite 547

Miami Beach, Florida                                                                                                         33139

| (Address of Principal Executive Offices) | (Zip Code) |
|---|---|

Registrant's telephone number, including area code:(305) 395-4520

(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common stock, par value $0.0001 per share | ALF | Nasdaq Capital Market |
| Warrants, each whole warrant exercisable for one share of common stock at an exercise price of $4.57 | ALFIW | Nasdaq Capital Market |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☒

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01          Entry into a Material Definitive Agreement.**

As previously disclosed in the Current Report on Form 8-K filed by Alfi, Inc. (the "Company") on April 18, 2022 (the "April Form 8-K"), the Company and Lee Aerospace, Inc. (the "Lender") entered into a Credit and Security Agreement (the "Credit Agreement") pursuant to which the Lender made available to the Company a non-revolving line of credit, up to an aggregate principal amount of $2,500,000, on the terms and conditions set forth in the Credit Agreement. The Lender is wholly owned by an entity which is majority owned and controlled by James Lee, the Company's Chairman of the Board of Directors. Mr. Lee is also President of the Lender. In addition, Mr. Lee and the Lender, together, beneficially own over 30% of the shares of the Company's common stock.

On June 27, 2022, the Company and the Lender entered into Amendment No. 1 to the Credit and Security Agreement ("Amendment No. 1") and an Amended and Restated Non-Revolving Line of Credit Note (the "Amended Note"), pursuant to which the non-revolving line of credit available to the Company from the Lender was increased to $2,750,000. The Amendment No. 1 and the Amended Note do not otherwise amend the terms of the Credit Agreement and related documents, a brief description of which is set forth in the April Form 8-K and is incorporated into this Item 1.01 by reference.

Through July 1, 2022, the Lender has funded to the Company $2,750,000 under the Credit Agreement, as amended.

**Item 2.03          Creation of a Direct Financial Obligation or an Obligation Under an Off-Balance Sheet Arrangement of a Registrant.**

The disclosures included in Item 1.01 above, including regarding Amendment No. 1 and the Amended Note, and the transactions completed thereby, are incorporated into this Item 2.03 by reference.

**Item 8.01          Other Events.**

Effective July 1, 2022, David Gardner, the Company's Chief Technology Officer, resigned from such position in order to pursue other opportunities to accommodate personal circumstances.

As discussed above, the Company has borrowed the maximum amount available under the Credit Agreement. Since its inception, the Company has generated only nominal revenue from customers and business activity and currently has very limited cash on hand. The Company is endeavoring to raise additional capital through debt or equity financing, but there is no assurance that additional capital will be available on terms acceptable to the Company or will be sufficient to enable the Company to complete its development activities or sustain operations. If the Company is unable to raise sufficient additional capital to sustain operations, then it will have to further extend payables, reduce overhead, or scale back its current business plan until such additional capital is raised, any of which could have a material adverse effect on the Company. There is no assurance that such a plan will be successful. If the Company is unable to raise sufficient additional capital to sustain operations, then the Company will be required to pursue other alternatives which may include selling assets, selling or merging its business, ceasing operations or filing a petition for bankruptcy (either liquidation or reorganization) under applicable bankruptcy laws.

**Item 9.01          Financial Statements and Exhibits.**

(d) Exhibits

99.1     Amendment No. 1 to Credit and Security Agreement, dated June 27, 2022, between Alfi, Inc. and Lee Aerospace, Inc.
99.2     Amended and Restated Non-Revolving Line of Credit Note, dated June 27, 2022, made by Alfi, Inc. in favor of Lee Aerospace, Inc.

104      Cover Page from this Current Report on Form 8-K, formatted in Inline XBRL

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its behalf by the undersigned, hereunto duly authorized.

**ALFI, INC.**

By: /s/ Peter Bordes

Peter Bordes
Interim Chief Executive Officer

Date: July 1, 2022

**Exhibit 99.1**
**EXECUTION COPY**

**AMENDMENT NO. 1**
**TO**
**CREDIT AND SECURITY AGREEMENT**

**AMENDMENT NO. 1 TO CREDIT AND SECURITY AGREEMENT** (this "**Amendment No. 1**") is made this June 27, 2022, by and between **ALFI, INC.**, a Delaware corporation, as the borrower hereunder (the "**Company**" or the "**Borrower**"), and **LEE AEROSPACE, INC.**, a Kansas corporation (the "**Lender**" and, together with the Borrower, the "**Parties**" and each, individually, a "**Party**").

**R E C I T A L S :**

The Parties have entered into a Credit and Security Agreement, dated as of April 12, 2022 (the "**Credit Agreement**") and desire to amend the Credit Agreement to increase the amount of the line of credit available thereunder as described in this Amendment No. 1.

**NOW, THEREFORE**, for and in consideration of the foregoing recitals and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged by the Parties, the Parties agree as follows:

1. <u>Definitions</u>. Capitalized terms used and not defined in this Amendment No. 1 have the respective meanings assigned to them in the Credit Agreement.

2. <u>Amendments to the Credit Agreement</u>. As of the Effective Date (as defined below), the Credit Agreement is hereby amended as follows:

   a. The definition of "Available Credit" set forth in Section 1.01 of the Credit Agreement is hereby amended and restated in its entirety as follows:

      "**Available Credit**" means, at any time, the amount, if any, by which Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) exceeds the sum of the aggregate principal amount of the Loans made hereunder before such time.

   b. The reference in Section 2.01 of the Credit Agreement to "Two Million Five Hundred Thousand Dollars ($2,500,000)" is amended and restated as, and replaced with, "Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000)".

3. <u>Effectiveness</u>. This Amendment No. 1 is effective as of the date first written above (the "**Effective Date**"). Except as expressly provided in this Amendment No. 1, all of the terms and provisions of the Credit Agreement are and will remain in full force and effect. On and after the Effective Date, each reference in the Credit Agreement to "this Credit Agreement," "the Credit Agreement," "hereunder," "hereof," "herein," or words of like import, and each reference to the Credit Agreement in any other agreements, documents, or instruments executed and delivered pursuant to, or in connection with, the Credit Agreement, will mean and be a reference to the Credit Agreement as amended by this Amendment No. 1.

4. <u>Miscellaneous</u>.

   a. This Amendment No. 1 shall be governed by and construed in accordance with the laws of the State of Florida, excluding its choice-of-law principles, and all claims, disputes and controversies relating to or arising out of this Amendment No. 1 or the breach thereof, whether sounding in contract, tort, or otherwise, shall likewise be governed by the laws of the State of Florida, excluding its choice-of-law principles. Any legal action or proceeding with respect to this Amendment No. 1 may be brought in the courts of the State of Florida sitting in Miami, Florida, or the United States District Court for the Southern District, Miami Division, and by execution and delivery of this Amendment No. 1, the Company and the Lender consent, each for itself and in respect of its Property, to the non-exclusive jurisdiction of those courts. The Company and the Lender each irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Amendment No. 1 or other document related thereto. The Company and the Lender each waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by the Law of the State of Florida.

   b. The provisions of this Amendment No. 1 shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Lender. Nothing in this Amendment No. 1, expressed or implied, shall be construed to confer upon any Person (other than the Parties, their respective successors and assigns permitted hereby) any legal or equitable right, remedy, or claim under or by reason of this Amendment No. 1.

   c. This Amendment No. 1 may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

   d. This Amendment No. 1 constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

*[Signature Page Follows]*

2

**IN WITNESS WHEREOF**, the Parties have caused this Amendment No. 1 to be duly executed as of the date first above written.

**BORROWER:**                                      **ALFI, INC.**
                                                   a Delaware corporation
                                                   By: /s/ Peter Bordes
                                                   Name: Peter Bordes
                                                   Title:

**LENDER:**                                        **LEE AEROSPACE, INC.**
                                                   a Kansas corporation
                                                   By: /s/ Jim Lee
                                                   Name: Jim Lee
                                                   Title: President

Lending Office:
Lee Aerospace, Inc.
9323 E. 34th St.
Wichita, Kansas 67226
Attn: President
Facsimile Number: (316) 636-9256
Email address: jlee@leeaerospace.com

3

**Exhibit 99.2**
EXECUTION COPY

### AMENDED AND RESTATED NON-REVOLVING LINE OF CREDIT NOTE

$2,750,000.00

June 27, 2022
Miami Beach, Florida

FOR VALUE RECEIVED, the undersigned, Alfi, Inc., a Delaware corporation (**the "Borrower"**), promises to pay to the order of Lee Aerospace, Inc., a Kansas corporation (the "**Lender**"; the Lender and any subsequent holder(s) hereof being hereinafter referred to collectively as the "**Holder**"), at the office of the Lender or at such other place as the Holder may, from time to time designate to the Borrower in writing, the principal sum of Two Million Seven Hundred Fifty Thousand AND No/100 DOLLARS ($2,750,000.00), or so much thereof as is from time to time outstanding and has been disbursed pursuant to the provisions of Article II of the Credit and Security Agreement, dated of even date herewith, by and between the Lender and the Borrower (as amended or supplemented from time to time, the "**Credit Agreement**") (the terms and provisions of which are hereby incorporated herein and made an integral part hereof by reference), together with interest on so much thereof as is from time to time outstanding and unpaid, calculated at the applicable rate(s) and in the manner set forth in the Credit Agreement, in lawful money of the United States of America (*i.e.,* money that at the time of payment is legal tender in payment of all debts and dues, public and private), such principal and interest to be paid in the manner set forth below. Capitalized terms that are defined in the Credit Agreement and that are used but not otherwise defined herein have the same respective meanings when used herein as ascribed to them in the Credit Agreement.

This Note amends, restates and replaces in its entirety that certain Non-Revolving Line of Credit Note, dated as of April 12, 2022, made by the Borrower in favor of the Lender with a principal sum of up to Two Million Five Hundred Thousand AND No/100 DOLLARS ($2,500,000.00) to increase such principal sum as set forth herein.

So long as there is any principal or accrued and unpaid interest outstanding under this Note, accrued interest on the unpaid principal amount of this Note shall be due and payable, in arrears, on the Maturity Date.

The entire outstanding and unpaid principal amount evidenced by this Note shall be due and payable on the Maturity Date.

The Borrower may prepay the principal amount outstanding, from time to time, under this Note, in whole or in part, without premium or penalty, *provided* that every prepayment of principal evidenced by this Note is accompanied by the payment of all accrued and unpaid interest on the principal amount being prepaid.

Interest on the outstanding principal amount of this Note, from the date of advance until paid in full, will accrue at the then effective Interest Rate.

In the event that any installment of principal or interest owing hereunder is not paid promptly when due, or within the grace period thereafter, if any, provided by the Credit Agreement, or should any other Event of Default occur, then, and in such event, the entire unpaid principal indebtedness evidenced hereby, and any and all other sums advanced and owed to the Holder in accordance with the terms hereof or of the other applicable Credit Documents, or any of them, together with all unpaid interest accrued thereon, will, at the option of the Holder and without notice except as specified in the applicable Credit Documents, immediately become due and payable; and the Holder may collect the same forthwith, regardless of the then stipulated applicable date of maturity. Nothing contained in this Note is to be deemed to confer on the Borrower any right to cure or reinstate the maturity of this Note in the event of any acceleration of this Note.

---

Time is of the essence in the payment of this Note. The Borrower shall pay all reasonable costs and expenses of collection of the indebtedness evidenced by this Note which, in the event that this Note or any part hereof is collected by or through an attorney-at-law, include reasonable attorneys' fees and all other reasonable expenses and court costs incurred in connection therewith.

Presentment for payment, demand, protest, and notice of demand, dishonor, protest, and non-payment, and all other notices (except those required by the Credit Agreement and other Credit Documents) are hereby waived by the Borrower. The Borrower hereby represents, warrants, and covenants that no funds disbursed hereunder will be used for personal, family or household purposes.

No failure to accelerate the debt evidenced hereby by reason of the occurrence of any default hereunder, acceptance of a past due installment, or any other indulgences granted from time to time by the Holder is to be construed (i) as a novation of this Note, as a reinstatement of the indebtedness evidenced hereby, as a waiver of the Holder's right of acceleration, or of the right of the Holder thereafter to insist upon strict compliance with all of the provisions of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of Florida; and the Borrower hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, that would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder made by agreement with any other Person now or hereafter liable for the payment of any portion of this Note (whether by means of guaranty, suretyship, or otherwise) will operate to release, discharge, modify, change, or affect the original liability of the Borrower under this Note, either in whole or in part, unless the Holder stipulates otherwise in writing. None of the provisions of this Note can be orally waived, changed, modified, or discharged; but rather all waivers, changes, modifications, and discharges of any and all provisions hereof must be made in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

This Note evidences a borrowing under, is subject to, and will be enforced in accordance with, the applicable provisions of the Credit Agreement and is the *"***Note***"* as defined in the Credit Agreement. The Borrower's prompt and full repayment of the indebtedness evidenced by this Note is secured by all of the Collateral described in the Credit Agreement.

If from any circumstances whatsoever, fulfillment of any provision of this Note, at the time performance of such provision is due, involves transcending the limit of validity then prescribed by an applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, *ipso facto*, the obligation to be fulfilled will be automatically reduced to the limit of such validity, so that in no event will any exaction be possible under this Note that is in excess of the current limit of such validity, but such obligation will be fulfilled to the limit of such validity.

This Note is intended as a contract under, and all provisions hereof are in all respects (including all matters of construction, interpretation, validity, enforceability, performance, breach, and the consequences of breach) to be governed and controlled by, the internal, substantive laws of the State of Florida (excluding and without regard to any and all rules and principles concerning any conflict of laws) as amended and now in effect.

As used herein, the term "**Borrower**" is to be deemed to include all of the Borrower's respective successors and assigns, whether by voluntary action or by operation of law. As used herein, the term "**Holder**" is to be deemed to include the Lender and its successors and assigns, whether by voluntary action or by operation of law, as well as the respective successors, legal representatives, and assigns of each and every subsequent holder or assignee to whom this Note is transferred or assigned, in whole or in part. All pronouns and adjectives used herein indicating gender are to be construed to include the masculine, feminine, and neuter genders; and all words implying the singular are to be construed to include the plural and vice versa.

2

---

**IN WITNESS WHEREOF,** the Borrower, intending to be legally bound by all of the provisions of this Note, has duly authorized, signed, and delivered this Note to the Lender, all effective as of the date first above written.

**Alfi, Inc.**
By: /s/ Peter Bordes

Name: Peter Bordes
Title: CEO

3