**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 21-24232-CIV-WILLIAMS**

CANDIDO RODRIGUEZ, Individually and
on behalf of All Others Similarly Situated,

        Plaintiff,

      v.

ALFI, INC., PAUL ANTONIO PEREIRA,
DENNIS MCINTOSH, JOHN M. COOK,
II, PETER BORDES, JIM LEE, JUSTIN
ELKOURI, ALLISON FICKEN, FRANK
SMITH, RICHARD MOWSER,
KINGSWOOD CAPITAL MARKETS,
REVERE SECURITIES LLC, and
WESTPARK CAPITAL, INC.,

        Defendants,

**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS OF
DEFENDANTS ALFI, INC., JOHN M. COOK, II, PETER BORDES, JIM LEE,
<u>JUSTIN ELKOURI, ALLISON FICKEN, AND FRANK SMITH</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................... 2

    A.    Alfi Goes Public................................................................................ 2

    B.    Defendant Pereira Touts Alfi ............................................................. 3

    C.    The Truth Gradually Emerges ........................................................... 3

    D.    Alfi Restates Its Financial Results ..................................................... 5

III.    ARGUMENT........................................................................................... 6

    A.    Applicable Legal Standards Disfavor Alfi Defendants' Motion ................ 6

    B.    The Alfi Defendants Materially Misled Investors ..................................... 6

        1.    Alfi's Registration Statement Contained False And Materially Misleading Statements Of Fact, Violating The Securities Act ....... 7

        2.    The Complaint Alleges That Defendants Materially Misled Investors During The Class Period, Violating The Exchange Act ............................................................................................. 10

    C.    The Complaint Adequately Pleads Scienter In Connection With The Alfi's Materially Misleading Statements During The Class Period In Accordance With The Exchange Act ............................................................................ 12

        1.    Legal Standard ............................................................................... 12

        2.    The Complaint Pleads Scienter With Specificity.......................... 12

        3.    The Court Should Impute Defendants Pereira's And McIntosh's And Charles Pereira's Scienter To Alfi ....................................... 13

        4.    The Company's GAAP Violations Support A Finding Of Scienter ......................................................................................... 15

        5.    Alfi's Internal Control Deficiencies Support A Support A Finding Of Scienter ...................................................................... 15

        6.    The Internal Turmoil At Alfi Supports A Finding Of Scienter .... 16

7.      The SEC Investigation Supports A Finding Of Scienter .............. 17

8.      Alfi Defendants' Remaining Arguments Fail To Defeat A Finding Of Scienter ...................................................................................... 17

D.      The Complaint Adequately Pleads The Loss Causation Element Of Plaintiffs' Section 10(b) Claim ................................................................. 18

1.      Loss Causation is Adequately Alleged Through Partial Disclosures .................................................................................... 19

2.      Alfi Defendants' Remaining Arguments Fail To Defeat Loss Causation ........................................................................................ 20

E.      The Alfi Defendants Fail To Carry Their Burden Of The Securities Act's Affirmative Defense Of Loss Causation ..................................................... 23

F.      The Complaint Is Not a Shotgun Pleading ............................................... 24

G.      The Complaint Sufficiently Alleges Control Person Liability ................. 26

IV.      CONCLUSION.................................................................................................... 26

## TABLE OF AUTHORITIES

CASES

*Acticon AG v. China North East Petroleum Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012) ................................................................................. 22, 23

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ............................................................................. 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 6

*Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*,
  No. 12-80393-CIV, 2013 WL 1149668 (S.D. Fla. Mar. 19, 2013) .............................. 27

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 6

*Brophy v. Jiangbo Pharms., Inc.*,
  781 F.3d 1296 (11th Cir. 2015) ............................................................................... 16

*Brown v. Enstar Group, Inc.*,
  84 F.3d 393 (11th Cir. 1996) .................................................................................. 26

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ............................................................................... 12

*De Vito v. Liquid Holdings Grp., Inc.*,
  No. 15-CV-6969 (KM) (JBC), 2018 WL 6891832 (D.N.J. Dec. 31, 2018) ................... 8

*Drucker v. Just for Feet Inc.*,
  No. CV 97-B-1578-S, 2000 WL 36733071 (N.D. Ala. Sept. 29, 2000) ....................... 10

*Druskin v. Answerthink, Inc.*,
  299 F. Supp. 2d 1307 (S.D. Fla. 2004) ..................................................................... 14

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ........................................................................................... 19, 20

*Eastwood Enters., LLC v. Farha*,
  No. 8:07-cv-1940-T-33EAJ, 2009 WL 3157668 (M.D. Fla. Sept. 28, 2009) ............... 17

*FindWhat Inv'r Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ..................................................... 6, 18, 19, 21

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ..................................................................... 15

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008) .......................................................... 16

*Harden v. Raffensperger, Hughes & Co.*,
  65 F.3d 1392 (7th Cir. 1995) ......................................................................... 9

*Hemmer Group v. Southwest Water Co.*,
  527 Fed. App'x 623 (9th Cir. 2013) ................................................................ 7

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ....................................................................................... 1

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004) ........................................................................ 23

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................................... 26

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
  851 F. Supp. 2d 746 (S.D.N.Y. 2012) .......................................................... 26

*In re Bio-Technology General Corp. Sec. Litig.*,
  380 F. Supp. 2d 574 (D.N.J. 2005) ................................................................. 7

*In re Bradley Pharms., Inc. Sec. Litig.*,
  421 F. Supp. 2d 822 (D.N.J. 2006) .............................................................. 22

*In re Bus. Objects S.A. Sec. Litig.*,
  No. C 04–2401 MJJ, 2005 WL 1787860 (N.D. Cal. July 27, 2005) ............................ 25

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017) .......................................................... 11

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019) ............................................... 11, 18, 19

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013) ........................................................................ 24

*In re Faro Techs. Sec. Litig.*,
   534 F. Supp. 2d 1248 (M.D. Fla. 2007) ..................................................................... 13

*In re Flowers Foods, Inc. Sec. Litig.*,
   No. 7:16-CV-222 (WLS), 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018).............. 19, 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   643 F. Supp. 2d 562 (S.D.N.Y. 2009) .................................................................. 23, 24

*In re Hamilton Bankcorp., Inc. Sec. Litig.*,
   194 F. Supp. 2d 1353 (S.D. Fla. 2002) ...................................................................... 16

*In re Home Loan Servicing Sols., Ltd. Sec. Litig.*,
   16-CV-60165-WPD, 2016 WL 10592320 (S.D. Fla. June 6, 2016) ............................ 22

*In re Intuitive Surgical Sec. Litig.*,
   65 F. Supp. 3d 821 (N.D. Cal. 2014) .................................................................... 24, 25

*In re Jiangbo Pharms., Inc., Sec. Litig.*,
   884 F. Supp. 2d 1243 (S.D. Fla. 2012) ...................................................................... 21

*In re KLX, Inc. Sec. Litig.*,
   232 F. Supp. 3d 1269 (S.D. Fla. 2017) ...................................................................... 10

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..................................................................... 15

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ......................................................................... 15

*In re Netbank, Inc. Sec. Litig.*,
   No. CIV.A.1:07-CV-2298-B, 2009 WL 2432359 (N.D. Ga. Jan. 29, 2009) ................ 19

*In re OSG Sec. Litig.*,
   12 F. Supp. 3d 622 (S.D.N.Y. 2014) .......................................................................... 16

*In re Rent-Way Sec. Litig.*,
   209 F. Supp. 2d 493 (E.D. Pa. 2002) ......................................................................... 15

*In re Tyco Int'l Ltd.*,
   No. MDL 02–1335–B, 2004 WL 2348315 (D.N.H. Oct.14, 2004) .............................. 25

*In re Unicapital Corp. Sec. Litig.*,
149 F.Supp.2d 1353 (S.D. Fla. 2001)................................................................... 7, 8, 26

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ..................................................................... 16

*In re Winn-Dixie Stores, Inc. Sec. Litig.*,
531 F.Supp.2d 1334 (M.D. Fla. 2007) ............................................................. 13

*Johnson v. Pozen Inc.*,
No. 1:07CV599, 2009 WL 426235 (M.D.N.C. Feb.19, 2009) .................................... 25

*Katyle v. Penn Nat. Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011)............................................................................ 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)............................................................................. 9

*Kiken v. Lumber Liquidators Holdings, Inc.*,
155 F. Supp. 3d 593 (E.D. Va. 2015)................................................................ 21

*Levine v. AtriCure, Inc.*,
508 F. Supp. 2d 268 (S.D.N.Y. 2007) ............................................................... 23

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011).............................................................................. 8

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
403 F.3d 1050 (9th Cir. 2005)........................................................................... 9

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016)...................................................................... 19, 21

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014).................................................................... 23

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009)....................................................................... 20, 22

*Luczak v. National Beverage Corp.*,
812 Fed. Appx. 915 (11th Cir. 2020) ............................................................ 19, 20

*Marrari v. Med. Staffing Network Holdings, Inc.*,
395 F. Supp. 2d 1169 (S.D. Fla. 2005)........................................................... 26

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013)........................................................................ 18, 19, 21

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
848 F.2d 674 (6th Cir. 1988)..................................................................................... 25

*Miyahira v. Vitacost.com, Inc.*,
No. 10-80644-CIV, 2012 WL 12895513 (S.D. Fla. June 28, 2012) ....................... 10, 11

*Miyahira v. Vitacost.com, Inc.*,
715 F.3d 1257 (11th Cir. 2013)...................................................................................... 7

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008)............................................................................ 12, 14

*Nelson v. Hodowal*,
512 F.3d 347 (7th Cir. 2008)....................................................................................... 10

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014)................................................................................. 19, 21

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
564 F. Supp. 3d 1272 (N.D. Ga. 2021) ........................................................................ 18

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*,
111 F. Supp. 3d 1336 (S.D. Fla. 2015).................................................................. 13, 17

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)................................................................................... 18

*Rougier v. Applied Optoelectronics, Inc*,
No. 4:17-CV-2399, 2019 WL 6111516 (S.D. Tex. Mar. 27, 2019).............................. 25

*S.E.C. v. Carriba Air*,
681 F.2d 1318 (11th Cir. 1982).................................................................................... 7

*S.E.C. v. City of Miami, Fla.*,
988 F. Supp. 2d 1343 (S.D. Fla. 2013)............................................................. 6, 14, 15

*S.E.C. v. Kingdom Legacy General Partner, LLC*,
No. 2:16-cv-441-FtM-38MRM, 2017 WL 417093 (M.D. Fla., Jan. 31, 2017) ............ 25

*S.E.C. v. Merch. Capital, LLC*,
483 F.3d 747 (11th Cir. 2007)...................................................................................... 7

*S.E.C. v. Morgan Keegan & Co.*,
    678 F.3d 1233 (11th Cir. 2012) ..................................................................................... 7

*Saddle Rock Partners, Ltd. v. Hiatt*,
    No. 95-2326 GA, 1996 WL 859986 (W.D. Tenn. Mar. 26, 1996) .............................. 25

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ...................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................... 12, 14

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) .................................................................................................. 7

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
    28 F. Supp. 3d 93 (D. Mass. 2014) .......................................................................... 17

*Waters v. Gen. Elec. Co.*,
    No. 08 CIV. 8484 RJS, 2010 WL 3910303 (S.D.N.Y. Sept. 29, 2010) ........................ 22

*Wochos v. Tesla*,
    985 F.3d 1180 (9th Cir. 2021) .................................................................................. 22

## STATUTES

15 U.S.C. § 77k(e) ........................................................................................................ 24

15 U.S.C. § 77o ........................................................................................................... 26

15 U.S.C. § 78u–4(b)(2) ............................................................................................... 12

15 U.S.C. § 78u–4(e)(1) ............................................................................................... 22

## RULES

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 27

Lead Plaintiff Candido Rodriguez, plaintiff John K. Allen, on behalf of the Joseph M. Driscoll Trust, and plaintiff Alexander C. Takian (collectively, "Plaintiffs") hereby oppose the Alfi Defendants'[1] Motion to Dismiss Amended Consolidated Class Action Complaint ("Complaint") or, in the Alternative, For a More Definite Statement (ECF No. 98) (the "Motion" or "Alfi Def. Br.") and state the following:

## I.        INTRODUCTION

The Complaint sufficiently pleads that the Alfi Defendants materially misled investors, violating the Securities Act of 1933 (the "Securities Act") by issuing a materially false and misleading Registration Statement in connection with the Company's initial public offering ("IPO") and the Securities Exchange Act of 1934 (the "Exchange Act") by misleading investors about the Company's performance, internal controls, and material conflicted transactions throughout the Class Period.

Congress designed the Securities Act as a form of consumer protection "to assure compliance with the disclosure provisions . . . by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). The Securities Act purposefully replaces the rule of *caveat emptor* with a strict duty on the part of the issuer, its board of directors, and its advisors to accurately disclose relevant financial and operational information as required under applicable U.S. Securities and Exchange Commission regulations. Where a Registration Statement contains a misrepresentation or omits required information, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id*. Accordingly, claims under the Securities Act are not fraud claims and, as the Supreme Court has observed, pleading such claims "places a relatively minimal burden on a plaintiff." *Id*.

In this case, Alfi's registration statement filed on Form S-1 and prospectus (collectively, the "Registration Statement") included, *inter alia*, materially false financial results for two fiscal years, which the Company ultimately restated. These materially false financial statements led investors like Plaintiffs to falsely believe that Alfi's finances and operations were stronger than

---

[1] The "Alfi Defendants" are Alfi, Inc. ("Alfi" or "Company"), John M. Cook, II, Peter Bordes, Jim Lee, Justin Elkouri, Allison Ficken, and Frank Smith. "Defendants" are the Alfi Defendants, Paul Antonio Pereira ("Pereira"), Dennis McIntosh ("McIntosh"), Kingswood Capital Markets, Revere Securities LLC, and Westpark Capital, Inc.

they truly were. In particular, the Registration Statement reported net income for the 2019 fiscal year when in fact the Company actually had a net loss of $1.6 million, overreported stockholders' equity – *i.e.*, Alfi's net worth – for 2019 by over 98%, underreported Alfi's net loss for 2020 by over 26%, and reported a stockholders' equity balance for 2020, when in fact, there was a stockholders' ***deficit*** balance of over $3.4 million. The Court will not overlook the importance of these facts to investors, especially since Defendants effectively admitted their falsity and materiality by restating them.

The Complaint also pleads violations of the Exchange Act, by raising a cogent and compelling inference of scienter in connection with Alfi's materially misleading false statements and omissions throughout the Class Period, and sufficiently alleging loss causation. Specifically, the Complaint pleads that at least three Company executives created and maintained a weak control environment for their own personal benefit, enabling themselves to carry out transactions with Company funds on their own behalf, which ultimately caused Alfi to make materially false disclosures to investors. This weak internal control environment also enabled Defendant Pereira, Alfi's founder and former Chairman and CEO, to make misleading statements to the market, which the Company repeated, pumping Alfi's stock up to its all-time high. Plaintiffs' Complaint also alleges a series of disclosures that resulted in a nearly-74% drop in the value of the Company's stock.

Plaintiffs have adequately alleged securities law violations and Alfi Defendants' Motion to Dismiss should be denied.

## II. STATEMENT OF FACTS

### A. Alfi Goes Public

Alfi is an advertising analytics technology company founded in 2018 by its then-CEO, Defendant Pereira, its Chief Business Development Officer and former CFO, Defendant Cook, and its then-Chief Technology Officer (and Defendant Pereira's son), Charles Pereira. ¶53.[2] Alfi claims to use proprietary technology to deliver targeted advertising to the viewer of an Alfi-enabled device without storing any personal identifiable information. *Id.*

In May 2021, Alfi went public. Its registration statement on Form S-1 was declared effective by the U.S. Securities and Exchange Commission on May 3, 2021, and on or about May

---

[2] References to "¶__" are to the Complaint.

5, 2021, Alfi filed the final prospectus for the IPO ("Prospectus"), which, combined with the Form S-1, formed the Registration Statement. ¶¶57-58. The Registration Statement included Alfi's financial results for the years ended December 31, 2019 and 2020 ("FY 2019" and "FY 2020"). ¶77.

On May 4, 2021, Alfi securities began trading on NASDAQ. ¶58. On May 6, 2021, Alfi completed the IPO, raising net proceeds of $15.7 million. ¶¶59-60. By August 13, 2021, over 80% of the warrants sold in the IPO had been exercised, providing the company with over $16 million in additional funding. ¶60.

### B.   Defendant Pereira Touts Alfi

On June 16, 2021, during a live online show with Benzinga, an online trading platform, Defendant Pereira announced that Alfi had over 22,000 Uber and Lyft users "signed up waiting for deployment of Alfi tablets." ¶159. The next day, on June 17, 2021, Alfi confirmed Defendant Pereira's statement, publishing a press release that highlighted that "Excess of 20,000 Uber and Lyft drivers waiting for installation of Alfi screens." ¶160. Then, on June 22, 2021, Benzinga published an "exclusive" from an interview with Defendant Pereira, reporting that Alfi had announced a $2 million stock buyback plan. ¶162. At the time, however, the Board had not approved any such buyback plan. The share repurchase program was approved *after* the statement, which was false at the time it was made. ¶163. Alfi's announcements of its purportedly successful rollout and share repurchase program caused its share price to soar, hitting an all-time high on June 28, 2021, when it closed at $18.59 per share. ¶71.

### C.   The Truth Gradually Emerges

On October 28, 2021, Alfi announced that, as of October 22, 2021, the Board had "placed each of Paul Pereira, the Company's President and Chief Executive Officer, Dennis McIntosh, the Company's Chief Financial Officer and Treasurer, and Charles Pereira, the Company's Chief Technology Officer, on paid administrative leave and authorized an independent internal investigation regarding certain corporate transactions and other matters" (the "Investigation"). ¶188. Alfi additionally disclosed that Charles Pereira's employment with the Company was terminated on October 28, 2021. *Id.* On this news, the Company's shares fell $1.24, or approximately 21.91%, to close at $4.42 on October 29, 2021. ¶189.

On November 1, 2021, Alfi disclosed that that its previous auditor was going out of business, and that the Company's newly hired replacement had resigned on October 29, 2021 after

less than two weeks. ¶77. The Company further announced that the Board had received a letter via email from Defendant Richard Mowser, resigning because he believed that the decision to replace Defendants Pereira and McIntosh was "personal and calculated" and a means for "certain directors/shareholders to take control of the company[]." ¶78. Alfi additionally stated that the Board's decision to place Defendants Pereira and McIntosh on leave and authorize the Investigation was precipitated by their entry of Alfi into two corporate transactions without the Board's knowledge: the purchase of a condominium for $1.1 million in Miami Beach, and Alfi's commitment to sponsor a sports tournament for $640,000. ¶¶80-82.

Then, after the market closed on November 15, 2021, Alfi announced that, on November 9, 2021, the Company received a document preservation letter from the SEC because Alfi could have documents and data relevant to the SEC's ongoing investigation into the condo purchase, the sports tournament sponsorship, and Alfi's financial reporting and disclosure controls. ¶83. In a separate filing on November 16, 2021, Alfi stated that it was unable to timely file its quarterly report for the period ended September 30, 2021 due to the recent changes in its management and its lack of independent auditor. ¶84. On all this news, Alfi's stock price fell $0.24, to close at $4.37 per share on November 16, 2021. ¶85.

On February 3, 2022, Alfi announced that Defendants Pereira and McIntosh had resigned, effective February 2, 2022. ¶86. Then, on February 23, 2022, Alfi announced the results of the Investigation. ¶87. The Company admitted that (1) "former senior management" had caused Alfi to purchase a condominium for $1.1 million without the Board's knowledge or approval; (2) Defendant Pereira "signed a certification filed with Miami-Dade County which incorrectly stated that the Board and the Company's stockholders approved the purchase"; (3) the condominium was transferred to a newly formed limited liability company controlled by Defendants Pereira and McIntosh without the Board's knowledge or approval; (4) Alfi's "former senior management caused" Alfi to enter into an agreement to sponsor a sports tournament for two years for a $640,000 sponsorship fee, paid in cash and through the issuance of Company stock, without the Board's knowledge or approval; (5) Alfi's "former senior management caused" paid three vendors in part through issuing Alfi stock without the Board's knowledge or approval; (6) Defendant Pereira's statements on June 16, 2021 were false because, at such time, "such number of drivers had expressed interest in applying to secure contracts with the Company and, in June 2021, 1,253 drivers had contracts with the Company"; (7) the Board had to *subsequently* approve the $2 million

4

share repurchase program Defendant Pereira touted on June 22, 2021; and (8) former senior management had engaged in other misconduct, including making unauthorized social media posts touting the Company in order to boost its stock price and unauthorized interference with the Company's computer systems and platforms. ¶¶89-102.

Even more critically, the Investigation found Alfi's internal control over financial reporting to be deficient with respect to: (1) the disbursement process for third-party vendors; (2) the review and approval process for significant vendor contracts; (3) the use of the Company credit card by executives; (4) the supervision and approval of travel and entertainment expenses incurred by executives; (5) segregation of duties for the payment and recording of invoices and related bank reconciliations; (6) the lack of a sufficient accounting manual; and (7) guidelines for the capitalization of fixed assets. ¶103. In other words, the Investigation concluded that the Company's CEO and CFO, who were responsible for maintaining its internal controls, established a control environment that enabled them to use Company resources for their own personal benefit.

On March 11, 2022, Alfi admitted that these failures had caused it to issue materially false financial reports. The Company announced that its previously issued audited results for the years ended December 31, 2019 and 2020, included in Alfi's Registration Statement, and the Company's previously issued quarterly financial statements on Form 10-Q for the quarterly periods ended March 31, 2021 and June 30, 2021 should no longer be relied upon due to four identified accounting errors. ¶106. Alfi also disclosed that it expected to conclude that material weaknesses in its internal controls over financial reporting for the periods covered by these accounting errors and that Alfi's disclosure controls and procedures for such periods were not effective. ¶108. It additionally admitted that its previously released financial results had failed to comply with GAAP in at least one way. ¶120. On this news, Alfi's stock price fell $0.13, or 8.075%, to close at $1.48 per share on March 14, 2022. ¶109.

### D.    Alfi Restates Its Financial Results

On May 16, 2022, Alfi issued two Form 10-Q/As for 1Q 2021 and 2Q 2021 (the "1Q 2021 10-Q/A" and the "2Q 2021 10-Q/A", respectively). The Company also issued its belated Form 10-K for the 2021 fiscal year (the "2021 10-K"), which included accompanying restated financial statements for the 2019 and 2020 fiscal years (the 2019 and 2020 fiscal year restatement in the 2021 10-K, together with the 1Q 2021 10-Q/A and 2Q 2021 10-Q/A are referred to as the "Restatement"). ¶110. The Restatement corrected the accounting errors that the Company

5

identified on March 11, 2022. ¶111. As a result, the stockholders' equity in the Company, *i.e.*, Alfi's net worth or book value, greatly decreased, as did Alfi's reported net income for FY 2019 and FY 2020. ¶111. The balances of Alfi's technology and its tablets decreased. ¶112. The Restatement disclosed that Alfi's internal controls over financial reporting and disclosure controls and procedures were not effective, and that a material weakness existed in the Company's internal controls over financial reporting. ¶113. More, the Restatement showed that the Company had not reported its financial results in accordance with GAAP. ¶¶116-135.

III.     ARGUMENT

A.     **Applicable Legal Standards Disfavor Alfi Defendants' Motion**

This Court will deny a motion to dismiss where a complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true," *S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1352 (S.D. Fla. 2013), "draw[ing] all reasonable inferences in [plaintiff's] favor." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B.     **The Alfi Defendants Materially Misled Investors**

Plaintiffs bring Securities Act claims against the Alfi Defendants for materially false and misleading statements and omissions in Alfi's Registration Statement concerning: (1) Alfi's FY 2019 and FY 2020 financial results, including the intangible asset balances, the balance for "other assets," *i.e.*, the Company's tablets, Alfi's total stockholders' equity balances, and the Company's reported net income/loss; (2) affirmations that Alfi's FY 2019 and FY 2020 financial results were prepared in accordance with GAAP; and (3) Alfi's internal controls. ¶¶136-47.

Plaintiffs also bring a claim against Alfi for violating Section 10(b) of the Exchange Act and Rule 10b-5 for its materially false and misleading statements and omissions throughout the Class Period, including: (1) the same false and misleading statements in the Registration Statement; (2) Alfi's quarterly financial results for the quarters ended March 31 and June 30, 2021 filed on Form 10-Q ("1Q 2021 10-Q" and "2Q 2021 10-Q") (¶¶151, 164); (3) affirmations that Alfi's 1Q 2021 10-Q and 2Q 2021 10-Q were prepared in accordance with GAAP (¶¶152, 153, 165); (4) a statement in Alfi's 2Q 2021 10-Q that Alfi "signed a contract to acquire additional

office space" (¶167); (5) statements that Alfi's internal controls were effective in Alfi's 1Q 2021 10-Q and 2Q 2021 10-Q (¶¶155, 169); and (6) a June 17, 2021 press release highlighting that "[e]xcess of 20,000 Uber and Lyft drivers waiting for installation of Alfi screens" (¶160).

The results of Alfi's Investigation, including that Alfi's internal controls were deficient, and the restatement of Alfi's FY 2019, FY 2020, 1Q 2021, and 2Q 2021 financial statements all serve as admissions that these statements were materially false and misleading.

Thus, Alfi Defendants mainly argue that the alleged misstatements were not material. "The test for materiality in the securities [] context is 'whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action.'" *S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (quoting *S.E.C. v. Carriba Air*, 681 F.2d 1318, 1323 (11th Cir. 1982)). Materiality is an objective inquiry involving the significance of an omitted or misrepresented fact to a reasonable investor. *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1245 (11th Cir. 2012) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976)). Determining whether a statement is material "requires delicate assessments of the inferences a reasonable [investor] would draw from a given set of facts" and "***these assessments are peculiarly ones for the trier of fact.***" *Id.* at 1245-46 (emphasis added).[3]

### 1.   Alfi's Registration Statement Contained False And Materially Misleading Statements Of Fact, Violating The Securities Act

Section 11 of the Securities Act imposes strict liability on a security's issuer, underwriter, and anyone who signed a registration statement when the registration statement for that security contains misrepresentations and omissions. *In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1367 (S.D. Fla. 2001).

"By definition, a restatement corrects financial data that was false when made." *Hemmer Group v. Southwest Water Co.*, 527 Fed. App'x 623, 626 (9th Cir. 2013); *see also In re Bio-Technology General Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 586 (D.N.J. 2005) (a restatement establishes the falsity of the original statements for purposes of surviving a motion to dismiss). "[U]nder [GAAP], restatements are required only to correct accounting errors that are material."

---

[3] The materiality analysis for securities fraud cases is the same for claims brought under the Securities Act and the Exchange Act. *See Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1266 (11th Cir. 2013) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988), a case addressing materiality in an Exchange Act case, to analyze materiality in a Securities Act case).

*De Vito v. Liquid Holdings Grp., Inc.*, No. 15-CV-6969 (KM) (JBC), 2018 WL 6891832, at *32 (D.N.J. Dec. 31, 2018). In this case, the Restatement resulted in, in pertinent part: (1) net *income* decreasing by $1,665,867 to a net *loss* of $1,599,132 for FY 2019; (2) a decrease in stockholder's equity by $2,532,133, or **over 98%**, to $32,731 for FY 2019; (3) an increase in net loss by $1,988,316, or over 26%, to $5,547,275 for FY 2020; (4) a decrease in stockholder's *equity* balance by $4,469,170 to a restated stockholders' *deficit* of $3,438,265; (5) various adjustments decreasing intangible assets for FY 2019 and 2020 by over $2.5 million, and almost $3.5 million respectively; and (6) a decrease in Alfi's tablet balance by 65%. ¶¶111, 112, 144.[4] To be sure, such amounts are material. *E.g.*, *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 719 (2d Cir. 2011) (quantitative misstatements of 5% or more are presumed material).

The Alfi Defendants next argue that they "warned of the exact risk that allegedly materialized." Alfi Def. Br. at 27. But Alfi merely provided the vague, boilerplate warning that courts routinely find do not trigger application of the "bespeaks caution" doctrine. *Unicapital*, 149 F. Supp. 2d at 1374 ("To be exempt from liability the press releases must have been (1) identified as forward-looking and (2) accompanied by meaningful cautionary language identifying factors that could materially affect the prognostications. [] To qualify as "meaningful cautionary" language, a statement's warning must advise investors of "risks of a significance similar to that actually realized."") (negative treatment on other grounds). The Registration Statement simply stated:

> The members of our management team have limited or no experience managing a publicly-traded company, interacting with public company investors, and complying with the increasingly complex laws, rules and regulations that govern public companies. There are significant obligations we will now be subject to relating to reporting, procedures and internal controls, and our management team may not successfully or efficiently manage our transition to being a public company.

---

[4] Even if the Court does not accept that a restatement demonstrates that financial reports are per se material, it will not dismiss the Complaint on this basis. Assessing materiality is a facts-intensive question better left for later stages of litigation. *Unicapital*, 149 F. Supp. 2d at 1364 ("Materiality, though, is a question of fact that may rarely be resolved at the motion to dismiss stage.").

Alfi Def. Br. at 27.[5] Nothing in this supposed warning alerted investors that the management team, which had retained independent accounting professionals, failed to comply with GAAP, materially misstated the balance of Alfi's technology, its tablets, its overall net worth, and its net income, and that Alfi's internal controls were rife with deficiencies.

More, a defendant cannot point to alleged "disclosures" to escape liability for current misrepresentations of fact or omissions of **existing** fact. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1056-57 (9th Cir. 2005) (holding that the "bespeaks caution" doctrine does not apply to false representations of present fact); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996) (same); *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1405-06 (7th Cir. 1995) (same). A warning about the potential difficulty of complying with future obligations does not warn that the Registration Statement **itself** could be materially false. The Alfi Defendants represented that the financial statements in the Registration Statement were prepared in accordance with GAAP. The Investigation and Restatement later revealed that they were not. The Court will not excuse the Alfi Defendants from their strict liability for materially false statements in the Registration Statement.

---

[5] The Alfi Defendants append over 200 pages of documents to their Motion, citing to Exhibit 11 apparently to alert the Court that it includes cautionary language. *See* Alfi Def. Br. at 27. Plaintiffs certainly do not plead otherwise, and Alfi Defendants do not assert that Plaintiff misquoted or took out of context any section of any document the Complaint quotes or to which it refers. Thus, this document, and the others that the Alfi Defendants submit, can only possibly be submitted for the truth of their contents. For that reason, the Court should not accept them at the pleading stage. As the Ninth Circuit wrote in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018):

> "[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access. If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief. Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine."

### 2. The Complaint Alleges That Defendants Materially Misled Investors During The Class Period, Violating The Exchange Act

After the IPO, Alfi and Defendants Pereira and McIntosh continued to mislead investors throughout the Class Period. Until March 11, 2022, they continued to materially mislead with the materially false financial statements for fiscal years 2019 and 2020. They issued additionally materially misleading quarterly financial statements for the quarterly periods ended March 31, 2021 and June 30, 2021. ¶¶151-58, 164-72. As discussed in detail in Section III.B.1, *supra*, the fact that Alfi restated these financial results demonstrates that they were materially false.

The Alfi Defendants' argument that that none of these false financial figures, statements concerning Alfi's compliance with GAAP, and statements concerning the effectiveness of internal controls (and related SOX statements) were material to investors must fail. As a starting point, Alfi Defendants base their argument on the idea that Plaintiffs fail to show how Alfi's individual accounting errors, in violation of GAAP, were material. But Plaintiffs do not allege that the accounting errors were themselves actionable misstatements. Rather, Plaintiffs allege that the total impact of all these errors made Alfi's net income/loss, shareholders' equity, intangible asset, and "other assets" figures, as well as Alfi's affirmations that the financial statements were in accordance with GAAP, materially false and misleading during the Class Period. *Compare, e.g.*, ¶¶151-53 (alleged actionable misstatements), *with* ¶154 (reasons why the actionable misstatements were false and misleading).

In addition, none of the cases that they cite to support their argument support their point. In *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269 (S.D. Fla. 2017) (*see* Alfi Def. Br. at 25), the plaintiffs did not allege a restatement. In *Drucker v. Just for Feet Inc.*, No. CV 97-B-1578-S, 2000 WL 36733071 at *3-4 (N.D. Ala. Sept. 29, 2000) (*see* Alfi Def. Br. at 25), the Court held that the plaintiffs had failed to allege a single false statement. The restatement in that case was due to the company's decision to change to a different accounting methodology from a different but also recognized, sanctioned accounting methodology, with no violation of GAAP.

The Alfi Defendants cite to *Miyahira v. Vitacost.com, Inc.*, No. 10-80644-CIV, 2012 WL 12895513, at *7 (S.D. Fla. June 28, 2012) for the notion that statements that cause an "insignificant change in stock price" are immaterial "as a matter of law," (*see* Alfi Def. Br. at 26), but *Miyahira* does not actually lay out what constitutes an "insignificant change in stock price." Rather, *Miyahira* cites to *Nelson v. Hodowal*, 512 F.3d 347, 350 (7th Cir. 2008), which held that "information that, when revealed, ***has no effect on a stock's price*** is not 'material' to investors'

10

decisions." (Emphasis added). The Court should not take the Alfi Defendants' bald assertion that insignificant price changes is immaterial, without providing a scope of what constitutes "insignificant change" at face value. As discussed in detail in Section III.D, the Complaint pleads a series of partial disclosures that resulted in a nearly 74% decline in the value of Alfi's common stock over the course of the Class Period.

As for Alfi Defendants' arguments with respect to the falsity and materiality of Pereira's statement that over 22,000 drivers were "signed up waiting for deployment of Alfi tablets" (¶159), Alfi's confirmation that an "[e]xcess of 20,000 … drivers waiting for installation of Alfi screens" (¶161), as well as Pereira's statement announcing a stock buyback, Alfi admitted that these statements were false. ¶¶98, 99.

Despite this admission, Alfi Defendants now argue otherwise. But "expressing interest" is not the same as "signed up," and Alfi Defendants' attempt to equate the two just demonstrates the misleading nature of these statements. And, although Alfi did end up conducting a stock buyback, the decision to do so was only approved by the Board *after* Pereira announced that it happened. Although the Alfi Defendants may now wish they had a time machine, they do not.

Similarly, Alfi Defendants cannot seriously contest the materiality of these statements, when the Complaint alleges that the stock price shot up over 100% in response to Pereira's buyback announcement. ¶68, *see also* ¶71 (Alfi's stock hit an all-time high of $22.50/share on June 28, 2021, on the heels of these actionable statements). Nor was Alfi and Pereira's statement that over 20,000 drivers "signed up" mere puffery—rather, Alfi and Pereira offered a hard fact relating to the current state of affairs of a core aspect of the Company's business. *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1224 (N.D. Ga. 2019) (rejecting puffery argument and noting that "the fact that these statements relate to a core aspect of Equifax's business makes it even more likely that a reasonable investor would assign weight to them."); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 n.6 (S.D.N.Y. 2017) (statements that "purported to reflect the Company's current state of affairs" were not puffery).

Lastly, Alfi's statement that it "signed a contract to acquire additional office space for $1,100,000" is a misleading omission. Alfi failed to disclose that this contract was signed without the Board's knowledge or approval, was based upon a false certification that the stockholders approved the purchase, and that the condo was then transferred to an entity owned by Pereira and

11

McIntosh, presumably for their personal use. ¶¶89, 168. Alfi's later sale of the condo does not excuse these material omissions.

### C. The Complaint Adequately Pleads Scienter In Connection With The Alfi's Materially Misleading Statements During The Class Period In Accordance With The Exchange Act

#### 1. Legal Standard

A Complaint adequately pleads scienter when it "state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Section 10(b) and Rule 10b–5 require a showing of either an "intent to deceive, manipulate, or defraud," or "severe recklessness." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (*quoting Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 (11th Cir. 1999)). While courts evaluating the sufficiency of a complaint's scienter allegations will consider plausible non-culpable inferences, an inference is strong if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *Mizzaro*, 544 F.3d at 1249 ("the question before us boils down to whether a reasonable person *would* infer that there was at least a fifty-fifty chance that the individual defendants knew about the alleged fraud (or were severely reckless in not knowing about it) based on its nature, duration, or amount") (emphasis in original). "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Tellabs*, 551 U.S. at 324. Courts review "all the [scienter] allegations holistically" to determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-323, 326.

#### 2. The Complaint Pleads Scienter With Specificity

Knowing that the Complaint pleads a strong inference of fraudulent intent, the Alfi Defendants try to make a semantic argument: that a statement in the opening of the Complaint's 15-page section detailing their violations of the Exchange Act is the Complaint's sole, conclusory allegation of scienter. *See* Alfi Def. Br. at 15-16 (citing ¶149). This argument is without merit. The Complaint details each false statement, including its makers and the reasons for their falsity (¶¶151-172). It also includes additional allegations that raise an inference of scienter in addition to the circumstances of each individual false statement. ¶¶172-184. These facts distinguish this

case from *In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F.Supp.2d 1334, 1350 (M.D. Fla. 2007) (*see* Alfi Def. Br. at 16), in which there were no allegations that defendants knew that challenged statements were false when made.[6]

This is not a case alleging that mistakes or poor management resulted in weak internal controls. *Contra* Alfi Def. Br. at 13-14. Rather, the Complaint alleges that three Company executives created and maintained a weak control environment for their own benefit. *See, e.g.*, *In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1263 (M.D. Fla. 2007) (rejecting similar argument that complaint's allegations amounted to no more than mismanagement, concluding that the individual defendants "are not alleged to be simply poor managers—they are alleged to be dishonest ones."). This Court should hold that the Complaint adequately pleads a strong inference of scienter with respect to their materially false certifications and representations concerning the Company's controls, its now-restated financial results, and the undisclosed material transactions that Pereira and McIntosh carried out for their personal benefit.

### 3. The Court Should Impute Defendants Pereira's And McIntosh's And Charles Pereira's Scienter To Alfi

As discussed in additional detail in Plaintiffs' Memorandum of Law in Opposition to Defendants Paul Pereira's and Dennis McIntosh's Supplemental Memorandum in Support of Motion to Dismiss, the Complaint pleads with particularity the scienter of Defendants Pereira and McIntosh as well as Charles Pereira. Alfi has admitted that Defendants Pereira and McIntosh used material Company funds and shares to purchase a condominium in Miami for their personal use, sponsor a sports tournament, and pay three unapproved vendors. *See, e.g.*, ¶17. Defendant Pereira made false or unapproved comments on Benzinga as well as misleading social media posts about Alfi and its prospects. More, after being placed on leave and instructed not to access Alfi's computer systems, Defendants Pereira and McIntosh as well as Charles Pereira accessed and downloaded Company files. *Id.* The only competing scienter inference that the Alfi Defendants

---

[6] *Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1360 (S.D. Fla. 2015) (*see* Alfi Def. Br. at 16) does not even rely on merely "conclusory" allegations; rather, the Court listed and analyzed specific scienter allegations, and found that they do not support an inference of fraudulent intent on the part of a CEO. The Court ***did*** find that plaintiffs pled scienter on the part of two other executives, who, plaintiffs alleged, knew and had access to materials contradicting the company's public statements, and sustained the complaint against those defendants.

offer in their Motion with respect to the Pereiras and McIntosh is that they engaged in mismanagement, not fraud (Alfi Def. Br. at 13-14), but this is not a more cogent inference than that raised by the Complaint's allegations that they effectively used Alfi's funds as their own, and failed to disclose material personal transactions. *Tellabs, Inc.*, 551 U.S. at 324.

The Court will impute the scienter of Defendants Pereira and McIntosh and Charles Pereira to Alfi.[7] *See Druskin v. Answerthink, Inc.*, 299 F.Supp.2d 1307, 1322 (S.D. Fla. 2004) (finding that the scienter of a corporation's officer may be imputed to the corporation under general agency and corporate law principles). The Eleventh Circuit explained that courts would impute the scienter of officials who were "responsible for issuing the allegedly false public statements and were aware of the alleged fraud" to the corporation. *Mizzaro*, 544 F.3d at 1254-55. No precise definition of "responsible" is provided, but *Mizzaro*'s plain language expands the officials whose scienter courts will impute to the corporation beyond the "makers" of statements to officials with scienter who a) order the false statement; b) or approve it or its making; c) or approve of its issuance; d) or furnish information or language for inclusion therein; e) "or the like." The catch-all "or the like" indicates that "responsible" extends even beyond the actions specifically enumerated in the parenthetical of the definition, and that rather than providing a severely limiting rule, the Eleventh Circuit provided parameters, while acknowledging that it would be impossible to account for every situation where an official's actions might make him "responsible."

In *City of Miami*, denying a motion to dismiss, the court imputed to the issuer the scienter of defendant Boudreaux, the City's budget director responsible for preparing overall capital budgets. *City of Miami*, 988 F. Supp. 2d at 1347. The court held that Boudreaux "furnished materially false and misleading information because he was the "architect" of a fraudulent scheme and reported false budget information to the City's Chief of Operations, who in turn reported it to the City Manager, who incorporated the false information into the City's publicly released filings on behalf of the City of Miami. *Id.* at 1351, 1360. The court held that Boudreaux "furnished" the information, and thus his scienter was imputed to the City of Miami because he was in charge of

---

[7] To impute Charles Pereira's scienter to Alfi, the Eleventh Circuit holds that the Complaint need not name him as a defendant. *See Mizzaro*, 544 F.3d at 1254-55 (a complaint pleads a strong inference of corporate scienter if "**unnamed** [] officials were both responsible for issuing the allegedly false public statements and were aware of the alleged fraud").

14

the office, *i.e.*, ultimately responsible for its output, and because he was the architect of and participated in the fraudulent scheme. *Id.* at 1360-61.

City of Miami is directly on point. The Complaint raises a strong inference that Defendants Pereira and McIntosh and Charles Pereira were the architects of a scheme in which they ensured that the Company's internal controls were ineffective so that they could effectively use Alfi as a piggy bank. As CEO and CFO, Defendants Pereira and McIntosh were directly responsible for the contents of the Company's financial statements, and thus their scienter is imputed to the Company.

### 4.       The Company's GAAP Violations Support A Finding Of Scienter

Plaintiffs have alleged facts that demonstrate that Defendants Pereira and McIntosh, as the CEO and CFO of Alfi, engaged in knowing or deliberately reckless misconduct by releasing financial statements that they knew were false, or contradicted information to which they had access, in connection with the preparation of Alfi's financial statements during the Class Period. In addition to alleging that the Company's financial statements misrepresented its financial controls – which, the Complaint alleges, Defendants Pereira and McIntosh exploited for their personal gain – the Complaint pleads in detail numerous violations of GAAP over a period of ten fiscal quarters. *See* ¶¶116-135. The Eleventh Circuit held in *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1268 (11th Cir. 2006) that violations of GAAP may be sufficient to establish scienter when combined with other red flags. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) ("[W]hen significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter. After all, books do not cook themselves"); *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 507 (E.D. Pa. 2002) (specific facts explaining how defendants violated GAAP support an inference of scienter); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 638 (E.D. Va. 2000) (allegations of violations of simple accounting principles was probative of scienter). This is exactly the case here. Combined with Defendants' other false statements, the GAAP violations in Alfi's financial statements demonstrate a consistent pattern of dishonesty, providing powerful additional evidence of scienter.

### 5.       Alfi's Internal Control Deficiencies Support A Support A Finding Of Scienter

Another factor supporting scienter is the admitted, glaring weaknesses in Alfi's internal controls. The Complaint details several aspects of these weaknesses, including that the former executives routinely caused Alfi to enter into material contracts without the Board's knowledge or

approval, using the issuance of Alfi stock to pay for the transactions, and falsely certified that the Board authorized the issuance of such stock, among others. *See, e.g.*, ¶¶89-96, 103-05, 113-14. Indeed, the Company admitted to material weaknesses in its internal controls concerning the segregation of certain accounting duties and the reconciliation and analysis of key accounts due to failure to "design effective components of internal control, including risk assessment control activities information/communications and monitoring[,]" ¶114.

Courts routinely hold that weak internal controls will support an inference of scienter. *See, e.g.*, *In re Hamilton Bankcorp., Inc. Sec. Litig.*, 194 F. Supp. 2d 1353, 1357-58 (S.D. Fla. 2002) (company's failure to maintain adequate internal controls, combined with facts, supports a strong inference of scienter); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 633 (S.D.N.Y. 2014) ("A lack of adequate internal controls may support the inference of scienter."); *accord Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006).

### 6.   The Internal Turmoil At Alfi Supports A Finding Of Scienter

The internal turmoil evidenced by Defendant Mowser's resignation and characterization of events at Alfi (¶¶78-79) makes all of the Defendants' scienter minimally a question of fact. Even as the Alfi Defendants argue that the Pereiras and McIntosh mismanaged the Company, and as the Investigation blamed them for diverting Company resources for personal gain, Mowser – the chair of the Audit Committee – resigned because he believed that the decision to replace them was "personal and calculated" and a means for "certain directors/shareholders to take control of the company[]." ¶78. Where there is this kind of dissent between defendants concerning each other actions, the Court should not attempt to decide on the pleadings which are telling the truth about any other defendant's intent. This is precisely the kind of case that calls for evidence.

More, the series of resignations from Alfi supports an inference of scienter. "[A] resignation can strengthen an inference of scienter when it occurs around the same time as an investigation." *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1305 (11th Cir. 2015). This case involves five resignations, all around the same time as an investigation. Alfi's Board authorized the Investigation on October 22, 2021, four days after hiring a new auditing firm, Friedman LLP. ¶72. On October 26, 2021, Mowser resigned. ¶78. On October 29, 2021 – less than two weeks after beginning its engagement with Alfi's financials, and one week after the Investigation began – Friedman LLP resigned. ¶77. On February 2, 2022, only three weeks before Alfi reported the

16

results of the Investigation, Defendants Pereira and McIntosh resigned. ¶¶86-87. The most cogent inference from this string of resignations is that Friedman LLP realized immediately that it could not conduct a reliable audit based on the state of Alfi's financial records, and that Defendants Pereira, McIntosh, and Mowser realized that their positions were untenable in the face of their prior conduct.

### 7.      The SEC Investigation Supports A Finding Of Scienter

The SEC's ongoing investigation into the matters found in Alfi's investigation, Alfi's financial reporting, and its "disclosure controls, policies or procedures" (¶¶83, 115) also adds to the inference of scienter. *Walter*, 111 F.3d at 1376 ("Government investigations can contribute to an inference of scienter); *Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2009 WL 3157668, at *4 (M.D. Fla. Sept. 28, 2009) ("[c]ourts commonly hold that pending government investigations are relevant and provide notice of a possible fraud."); *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 115 (D. Mass. 2014) (A "government investigation can be seen as one more piece of the puzzle, a series of circumstances that add up to a strong inference of scienter") (collecting cases).

### 8.      Alfi Defendants' Remaining Arguments Fail To Defeat A Finding Of Scienter

Rather than focus on the many allegations discussed above that, taken together, support a strong and compelling inference of scienter, Alfi Defendants instead focus on a number of arguments in an attempt to excuse Defendants Pereira's scienter. However, these arguments not only fail, but highlight Alfi's own scienter.

First, Alfi argues that allegations from another lawsuit cannot be taken as true for the purposes of pleading scienter. Alfi Def. Br. at 16-17. However, Plaintiffs do not ask the Court to accept the truth of the matters asserted in this prior action. Rather, the MHG lawsuit against Defendant Pereira (¶¶173-76), supports a finding of, at minimum, severe recklessness as to Alfi. Indeed, MHG's 2016 lawsuit, in which it alleged that Pereira "engaged in a brazen pattern of improper conduct and self-dealing designed to enrich Pereira," ¶174, was a glaring red flag ignored by Alfi.

Second, Alfi excuses Pereira's statement during a June 2, 2021 Benzinga interview in which he acknowledges that he probably should not speak on a subject, but chose to do so anyways (¶178). Alfi Def. Br. at 17. But Pereira's June 2 statements just are another example of his brazen

disregard of the securities laws, and evidence of his recklessness concerning disclosures to investors.

Third, Alfi focuses on a former employee stating that they were unsure of whether Pereira was "organized enough" to access a spreadsheet that kept track of drivers that expressed interest in having Alfi tablets installed in their vehicles, whether those drives has signed a contract with Alfi, and which confirmed that the data tracked in the spreadsheet supported Alfi's admission that Pereira's June 16, 2021 statement that over 22,000 rideshare drivers "signed up" was misleading, as only 1,253 drivers had contracts with Alfi. ¶¶98, 179-80. In doing so, Alfi ignores that the former employee stated that Pereira was "definitely updated on the contents of the spreadsheet" and that it was readily accessible to those at Alfi (¶180)—a tiny company with between four and ten sales and marketing employees (¶53, n.1). Moreover, Alfi entirely ignores that the former employee's statement supports a strong inference as to its own scienter for making the very same statement as Pereira the next day (¶160). *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1303–04 (N.D. Ga. 2021) ("a plaintiff may prove severe recklessness by providing evidence that defendants possessed knowledge of facts or access to information contradicting their public statements, so as to prove that defendants knew or should have known that they were misrepresenting material facts related to the corporation.") (internal quotation and alteration omitted).

### D. The Complaint Adequately Pleads The Loss Causation Element Of Plaintiffs' Section 10(b) Claim

"To show loss causation in a § 10(b) claim, a plaintiff must offer 'proof of a causal connection between the misrepresentation and the investment's subsequent decline in value.'" *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013) (citing *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448 (11th Cir. 1997)). The plaintiff must show that the defendant's fraud was the proximate cause of the alleged loss. *See FindWhat*, 658 F.3d at 1309. "However, the plaintiff need not show that the defendant's misconduct was the sole and exclusive cause of his injury; he need only show that the defendant's act was a substantial or significant contributing cause." *Id.* (quotation marks omitted) (quoting *Robbins*, 116 F.3d at 1447). Loss causation is only subject to Rule 8's notice pleading standard, requiring a "short and plain" statement, and not the PSLRA's heightened pleading standards. *Equifax*, 357 F. Supp. 3d at 1248 (citing *Meyer*, 710 F.3d at 1196). Moreover, "proof of loss causation should not typically be resolved on a Rule 12(b)(6)

motion[.]" *In re Netbank, Inc. Sec. Litig.*, No. CIV.A.1:07-CV-2298-B, 2009 WL 2432359, at \*14 (N.D. Ga. Jan. 29, 2009).

Loss causation can be established by a single disclosure or a series of partial disclosures. *Meyer*, 710 F.3d at 1197; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) (allowing for the possibility that the "relevant truth" regarding the defendant's actions could "leak out" through partial disclosures). To plead loss causation through a series of partial disclosures, "the complaint must state facts that show (1) those disclosures gradually revealed to the market the undisclosed truth about [the defendant's fraudulent practice], and (2) such disclosures resulted in the decline of [the defendant's] share price." *Luczak v. National Beverage Corp.*, 812 Fed. Appx. 915, 921 (11th Cir. 2020) (internal citations omitted). In addition, "[d]isclosures need not address the prior misstatements specifically or fact-for-fact as long as they "share the same subject" as the prior misstatements." *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558, at \*20 (M.D. Ga. Mar. 23, 2018) (citing *FindWhat*, 658 F.3d at 1311 n.28; *Meyer*, 710 F.3d at 1197).

In cases involving partial disclosures, courts should not view each disclosure in a vacuum but instead should assess them together to see if a fraud was revealed over time. *See Equifax*, 357 F. Supp. 3d at 1249-1250 (initial disclosures, along with subsequent disclosures, "all combined to disclose the truth to investors"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209-11 (9th Cir. 2016) (loss causation pled where stock price dropped after announcement of SEC investigation, and subsequent disclosure confirmed the falsity of defendants' statements, even though no price reaction accompanied second disclosure); *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322-26 (5th Cir. 2014) (reviewing series of five partial disclosures and concluding that several did not constitute corrective disclosures themselves, but together they "collectively constitute[d] and culminate[d] in a corrective disclosure that adequately pleads loss causation").

### 1.    Loss Causation is Adequately Alleged Through Partial Disclosures

The Alfi Defendants argue that the Complaint does not sufficiently allege that the market reacted negatively to the alleged loss causation events on October 28, 2021, November 15, 2021, November 16, 2021, and March 11, 2022. But each of these disclosures gradually revealed new, material information about Defendants' fraud, and each was accompanied by a precipitous drop in Alfi's stock price.

The October 28, 2021 announcement that the Board had placed Defendants Pereira and McIntosh and Charles Pereira on leave and initiated the Investigation into "certain corporate transactions and other matters," and, that day, terminated Charles Pereira, revealed that the Board at least suspected the most senior Company executives of malfeasance. ¶188.

The November 15, 2021 announcement that the SEC had told Alfi to preserve all documents and data because of an ongoing investigation revealed that the malfeasance at Alfi was serious enough to warrant regulatory investigation. ¶190.

The November 16, 2021 announcement that Alfi was unable to timely file its quarterly report due to the changes in its management and its failure to engage a new accounting firm revealed that one impact of this malfeasance was to prevent Alfi from making material and accurate reports to investors, and that there may be issues with Alfi's accounting. ¶191.

The March 11, 2022 announcement that Alfi's previously issued financial results for the years ended December 31, 2019 and 2020 and quarterly financial results for the first and second quarters of 2021 should no longer be relied upon and should be restated, as well as Alfi's admission that it expected to conclude that material weaknesses in its internal controls over financial reporting for these financial periods, revealed that the impropriety at Alfi, facilitated in part through Alfi's weak control environment, had caused it to issue materially false financial results, misleading investors. ¶¶193-94.

Taken together, each of these partial disclosures serially, gradually revealed the truth about Alfi's materially false statements, *see Luczak*, 812 Fed. Appx. at 921,[8] and Plaintiffs' allegations sufficiently provide the Alfi Defendants "with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347.

### 2.    Alfi Defendants' Remaining Arguments Fail To Defeat Loss Causation

In addition to Alfi Defendants' encouraging the Court to assess each loss causation event in a vacuum, which as explained above, is inappropriate, the Alfi Defendants contend that the Complaint fails to allege loss causation in a number of additional ways. Each argument fails.

---

[8] *See also Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011) ("[N]either a single complete disclosure nor a fact-for-fact disclosure of the relevant truth to the market is a necessary prerequisite to establishing loss causation (although either may be sufficient)."); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 261 (5th Cir. 2009) ("[L]oss causation may be pleaded on the theory that the truth gradually emerged through a series of partial disclosures and that an entire series of partial disclosures caused the stock price deflation.").

First, the Alfi Defendants contend that the October 28 and November 15 announcements cannot serve as corrective disclosures because they announced investigations. Alfi Def. Br. at 19, 20-21 (citing *Meyer*, 710 F.3d at 1201). But *Meyer* merely states that the announcement of an investigation, ***standing alone***, are not corrective disclosures. *Meyer*, 710 F.3d at 1201 n.13 (an SEC investigation may "form the basis for a corrective disclosure"). Rather, courts have held announcements of investigations can constitute partial corrective disclosures when coupled with other disclosures of wrongdoing, such as here.[9] Indeed, the Class Period ends with the disclosure that after "evaluating the issues and findings identified in the Investigation and assessing the Company's internal control over financial reporting," Alfi had determined that its previously issued financial results "should no longer be relied upon and should be restated" and that Alfi expected to conclude that material weaknesses in its internal controls over financial reporting for these financial periods. ¶¶88, 106.

Moreover, as the Eleventh Circuit declared, "a corrective disclosure can come from any source, and can take any form from which the market can absorb the information and react." *FindWhat*, 658 F.3d at 1312 n.28. "To require, in all circumstances, a conclusive government finding of fraud merely to plead loss causation would effectively reward defendants who are able to successfully conceal their fraudulent activities by shielding them from civil suit." *Amedisys*, 769 F.3d at 324-25; *see also CVB*, 811 F.3d at 1210 ("any other rule would allow a defendant to escape liability by first announcing a government investigation and then waiting until the market reacted before revealing that prior representations under investigation were false").

Second, the Alfi Defendants argue that various stock increases following certain of Alfi's announcements defeats loss causation. Alfi Def. Br. at 19-20, 22-23. As an initial matter, each of the alleged disclosures saw Alfi's stock go from $5.66 before the October 28, 2021 disclosure, the first in the series, to close at $1.48 on March 14, 2022. ¶¶189, 197. And Alfi's stock never again recovered from its $5.66 price immediately before the first, post-market October 28, 2021

---

[9] *E.g.*, *Meyer*, 710 F.3d at 1201 n.13; *Flowers Foods*, 2018 WL 1558558, at *20 (federal investigation, including other loss causation allegations, "could reasonably indicate that Flowers had committed fraud or similar wrongdoing."); *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 609 (E.D. Va. 2015) (federal investigation announcement in part revealed "the widespread scope of Defendants' allegedly fraudulent scheme of covering up regulatory violations in order to inflate stock prices" and adequately alleged loss causation); *see also In re Jiangbo Pharms., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1265 n.8 (S.D. Fla. 2012) (holding that the announcement of an informal SEC inquiry may be sufficient to show loss causation).

disclosure. *See* Alfi Defs. Exs. 3a, 3b (ECF Nos. 98-4, 98-5). *See Lormand*, 565 F.3d at 262 (linking a series of disclosures to a total significant stock drop pleads loss causation).[10] The Alfi Defendants' reliance on *Wochos v. Tesla*, 985 F.3d 1180, 1198 (9th Cir. 2021) to argue that the recovery of Alfi's stock price after the March 11, 2022 disclosure defeats loss causation is thus unavailing.[11]

More, legal and economic principles underpinning securities fraud cases, including the efficient market theory, reject a connection between adequate allegations of loss causation and a rebound in a registrant's stock price. The PSLRA contains a "bounce back" provision, limiting damages from a securities violation. 15 U.S.C. § 78u–4(e)(1). In analyzing the PSLRA's bounce back provision, the Second Circuit found a limitation on damages "to those losses caused by the fraud and not by other market conditions." *Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012) (vacating dismissal) (quoting S. Rep. No. 104–98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699). Had Congress intended any other impact from the bounce back, it would have specified it. *Id*. By the PSLRA's terms, therefore, price recovery after correction does not negate adequate allegations of loss causation. Rather the PSRLA expressly assumes proof of Rule 10b-5's other elements, including loss causation, before it limits the damages.

In addition, *Wochos* jeopardizes a basic economic principle supporting securities class actions. The Complaint pleads and the Alfi Defendants do not contest that Alfi stock trades in an

---

[10] Defendants also point to the stock increase following the February 23 announcement of the Investigation, ignoring that Alfi's stock price had already partially corrected following the October and November 2021 disclosures. *See In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828-29 (D.N.J. 2006) (loss causation pled where stock price increased following restatement, because "the market had already incorporated that the previously released financial statements could not be relied upon"). Moreover, the February 23 announcement of the Investigation's findings did not reveal the full facts, including that Alfi's previously issued financials were false and should no longer be relied upon, were not prepared in accordance with GAAP, and that Alfi expected to conclude that material weaknesses in its internal controls existed and the disclosure controls were not effective.

[11] As is Alfi Defendants' reliance on *In re Home Loan Servicing Sols., Ltd. Sec. Litig*., No. 16-CV-60165-WPD, 2016 WL 10592320 (S.D. Fla. June 6, 2016). Whereas in *Home Loan Servicing*, the restatement event was the only alleged disclosure relating to a certain set of allegations, and other alleged disclosures did not relate back misrepresentations, *id.* at *5-6, this is not the case here. Similarly, there was only one alleged disclosure date in *Waters v. Gen. Elec. Co.*, No. 08 CIV. 8484 RJS, 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010).

efficient market. ¶198. As such, Alfi's stock price reflects all publicly available, material information. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1255-58 (11th Cir. 2014) (affirming class certification and finding of efficient market). To determine that the price recovery negated loss causation, the Court either have to correlate the reason(s) for the recovery to the correction or ruled that the market for Alfi was inefficient. Such findings are virtually impossible at the pleading stage, when no discovery is available. As the Second Circuit has stated, that assessment "raises factual questions" unsuitable for resolution at the pleading stage. *Acticon*, 692 F.3d at 39 (citation omitted).

*Wochos* has never been adopted in the Eleventh Circuit, or any other Circuit besides the Ninth Circuit, for good reason. This Court should not go first.

### E.     The Alfi Defendants Fail To Carry Their Burden Of The Securities Act's Affirmative Defense Of Loss Causation

"Once a plaintiff establishes a prima facie case under the Securities Act, loss causation is presumed"—*i.e.*, any decline in the stock price is presumed to have been caused by the misrepresentations or omissions in the registration statement. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009). Section 11 provides defendants a way of rebutting that presumption by showing that all or part of the stock loss did not result from any misrepresentation or omission—the "negative causation" defense. *Id.* But this is an affirmative defense, "reflecting Congress's 'desire to allocate the risk of uncertainty to the defendants.'" *Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007) (citation omitted).

The burden on defendants to prove negative causation is a "heavy" one. *Alaska*, 572 F.3d at 234. While a defendant may ultimately be able to prove negative causation, "an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 572 (S.D.N.Y. 2009) ("[T]he affirmative defense of negative causation is generally not properly raised on a Rule 12(b)(6) motion."); *Levine*, 508 F. Supp. 2d at 272-73 ("Because an analysis of causation is often fact-intensive, negative causation is generally established by a defendant on a motion for summary judgment or at trial."). Otherwise, it places the burden of pleading loss causation on plaintiffs, "'and removes the burden of establishing negative causation from the defendants, where it properly lies.'" *Levine*, 508 F. Supp. 2d at 273 (citation omitted).

23

"While courts have, on occasion, found dismissal of Section 11 and 12 claims based on a negative causation defense proper in light of the allegations pleaded in the complaint," they generally involve the same fact pattern—the stock price dropped *before* the alleged corrective disclosure. *Giant*, 643 F. Supp. 2d at 572. Under such a circumstance, "there could be no question that the drop in stock price [could] not be attributable to defendants' alleged misconduct." *Id.* There is no claim that such a fact pattern is present here.

In contrast, it is reversible error to dismiss a Section 11 claim based on a finding that the alleged corrective disclosures were not corrective or did not cause a loss attributable to any misrepresentation or omission; doing so improperly places the burden on plaintiff. *See Alaska*, 572 F.3d at 234. Instead, defendants are "required to prove that no reasonable juror could believe that any portion of [the stock] losses was caused by the defendants' alleged misrepresentations in the registration statements." *Id.* "This poses quite a different question than the one posed by the loss-causation issue under the Exchange Act[.]" *Id.*; *see also In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 523 (S.D.N.Y. 2013) (whether alleged corrective disclosures revealed misrepresentations or omissions and whether such disclosures caused stock drops "are issues of fact and are not appropriate for resolution in the motion to dismiss stage").

Alfi Defendants make no attempt to meet their heavy burden here. In fact, they do not even really try. Instead, the Alfi Defendants argue that loss causation is precluded "because the stock price quickly recovered after the filing of the March 11, 2022 Form 8-K," again relying on *Wochos*, and thus Plaintiffs' losses cannot be attributable to the alleges misrepresentations in the Registration Statement. But this argument does not show that all or part of the stock loss did not result from any misrepresentation or omission in the Registration Statement. Nor could it—the March 11, 2022 announcement directly stated that the financial results in the Registration Statement should no longer be relied on. ¶106. And, so long as the "recovery" after the March 11, 2022 announcement did not exceed Alfi's $4.15 IPO price, any such recovery is irrelevant for a plaintiff's recovery under Section 11. *See* 15 U.S.C. § 77k(e).

### F.     The Complaint Is Not a Shotgun Pleading

The Court will reject the Alfi Defendants' request that it order Plaintiffs to replead the Complaint because it is a shotgun pleading. So-called shotgun pleadings (also known as puzzle pleadings) "'abuse the principles of Rule 8 *not* because they are not short' but *because they are not plain*." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014) (emphasis

added). It suffices for a complaint to "detail[] each problematic statement, allege[] that each statement is false and misleading, and allege[] the reasons as to why each statement [is] false and misleading." *Id.* The Complaint does this, with specificity with respect to each false statement. ¶¶136-144; 145-147, 151-154, 155-158, 159-163, 164-166, 167-168, 169-172.

The Alfi Defendants' primary attacks on the plainness of the Complaint appear to be 1) its length and 2) its incorporation of "each and every" allegation in its claims. *See* Alfi Def. Br. at 12-13. The Alfi Defendants cite no support to argue that a complaint that exceeds a particular number of pages is somehow self-defeating or that claims cannot cite back to a complaint as a whole because there is none. As in *S.E.C. v. Kingdom Legacy General Partner, LLC*, No. 2:16-cv-441-FtM-38MRM, 2017 WL 417093, at *4 (M.D. Fla., Jan. 31, 2017), in this case:

> "The nature of the allegations within the Complaint are such that the alleged misstatements and omissions are listed under separate headings with the reasons they are false or misleading. It is plainly evident the Complaint contains sufficiently particularized counts allowing a reader to match up alleged misstatements and omissions with their explanatory counterparts."

Indeed, courts have consistently held that there is no single correct way to identify reasons that a statement is alleged to be materially false. *See In re Tyco Int'l Ltd.*, No. MDL 02–1335–B, 2004 WL 2348315, at *9 (D.N.H. Oct.14, 2004) (concluding that the plaintiffs' pleading structure of identifying the misleading statements in one section and describing accounting schemes rendering the statements misleading in another section was a reasonable way of presenting their allegations). There must simply be sufficient detail in plaintiff's complaint to "provide [the] defendant fair notice of the substance of ... plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988); *see Saddle Rock Partners, Ltd. v. Hiatt*, No. 95-2326 GA, 1996 WL 859986, at *7 (W.D. Tenn. Mar. 26, 1996); *Rougier v. Applied Optoelectronics, Inc*, No. 4:17-CV-2399, 2019 WL 6111516, at *8 (S.D. Tex. Mar. 27, 2019).

More, Courts are reluctant to strike even pleadings that could reasonably be called puzzle or shotgun pleadings. *See Johnson v. Pozen Inc.*, No. 1:07CV599, 2009 WL 426235, at *15 (M.D.N.C. Feb.19, 2009) (declining to dismiss a puzzle-style pleading where the plaintiff "winnowed down" the false and misleading statements in its response); *In re Bus. Objects S.A. Sec. Litig.*, No. C 04–2401 MJJ, 2005 WL 1787860, at *4 (N.D. Cal. July 27, 2005) (declining "to take the drastic step of dismissal based on the form of the pleading" where the alleged statements

could be "glean[ed]" from the bold and italicized statements). This Court will not strike the well-pled allegations in the Complaint.

G.      The Complaint Sufficiently Alleges Control Person Liability

Section 15 of the Securities Act imposes joint and several liability on "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under" Section 11. 15 U.S.C. § 77*o*. To establish Section 15 liability, a plaintiff must allege a primary violation of Section 11 and "that the defendant had (1) the power to control the general affairs of the entity primarily liable for the § 11 or § 12 violation at the time of the violation and (2) the power to control or influence the specific policy that resulted in primary liability under § 11 or § 12." *Unicapital*, 149 F.Supp.2d at 1367 (citing *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)).

The Alfi Defendants sole challenge to Plaintiffs' Section 15 claim is that there is no primary violation of Section 11. Alfi Def. Br. at 29. As explained above in Section III.B.1, the Complaint states a primary violation of Section 11.

Moreover, Defendants John M. Cook, II, Peter Bordes, Jim Lee, Justin Elkouri, Allison Ficken, and Frank Smith each were directors of Alfi at the time of the IPO and signed the Registration Statement used to conduct the IPO. ¶¶41-46, 223. The Complaint alleges that each of these defendants "had the requisite power to directly or indirectly control or influence the decision-making of the Company and the conduct of Alfi's business, including the wrongful conduct complained of herein." ¶220. At the motion to dismiss stage, this is sufficient to qualify as "control person[s]" for the purposes of Section 15. *Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1181 (S.D. Fla. 2005); *Unicapital*, 149 F. Supp. 2d at 1367-68 (similar); *see also In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 773 (S.D.N.Y. 2012) (holding that allegations that individual defendants were officers and signed the registration statements at issue sufficient to "satisfy Plaintiffs' obligation to plead control"); *In re Alstom SA*, 406 F. Supp. 2d 433, 494-95 (S.D.N.Y. 2005) ("It comports with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report." (internal quotation marks and alterations omitted)).

IV.   CONCLUSION

For the foregoing reasons, the Court should deny the Alfi Defendants' Motion in its entirety. If the Court is inclined to grant, in whole or in part, the Alfi Defendants' Motion, Plaintiffs

26

respectfully request that dismissal be without prejudice and with leave to amend to cure any defects via an amended pleading.  *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given); *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2013 WL 1149668, at *9 (S.D. Fla. Mar. 19, 2013).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs hereby respectfully request that the Court, in its discretion, schedule oral argument on the Alfi Defendants' Motion. Given the complex securities law matters raised in this motion, Plaintiffs submit that oral argument may assist the Court in its analysis and resolution of the Motion. Based on the Alfi Defendants' estimate that a total of 2 hours and 30 minutes would be necessary for all parties, and the Underwriters' and Defendant Pereira and McIntosh's estimates that 30 minutes and 15 minutes, respectively, would be necessary to present their arguments, Plaintiffs estimate that 30 minutes of time on their behalf would be sufficient to address the specific issues raised by the Alfi Defendants in their Motion.

Dated: October 11, 2022                    Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Adam D. Warden*
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road
Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Lead Plaintiff and*
*Local Counsel for the Class*

27

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
lsolish@glancylaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq. (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
skim@rosenlegal.com

*Counsel for Plaintiff John K. Allen,*
*on behalf of the Joseph M. Driscoll Trust and*
*Plaintiff Alexander C. Takian*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will automatically serve all counsel of record registered with the Court's CM/ECF system.


_s/ Adam D. Warden_
Adam D. Warden