**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-24232-CIV-WILLIAMS**

CANDIDO RODRIGUEZ, Individually and
on behalf of All Others Similarly Situated,

                              Plaintiff,

        v.

ALFI, INC., et al.,

                            Defendants.

**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS
OF DEFENDANTS KINGSWOOD CAPITAL MARKETS,
REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    STATEMENT OF FACTS ............................................................................. 2

       A.    The IPO............................................................................................... 2

       B.    Alfi's Successful IPO Is Short-lived: The Company Soon Finds Itself Investigating Its Founders And Executive Management, Restates The Financial Results Reported In The Registration Statement, And Admits To Material Weaknesses In Its Internal Controls................................................................................... 3

III.   PLAINTIFFS ADEQUATELY STATE A CLAIM UNDER SECTION 11 AGAINST THE UNDERWRITER DEFENDANTS ................................................. 5

       A.    The Standard Governing Rule 12(b)(6) Motions To Dismiss ............... 5

             1.    Section 11 Imposes A Minimal Burden On Plaintiffs ............... 5

             2.    The Notice Pleading Standards Of Rule 8 Applies to Plaintiffs' Section 11 Claims Against The Underwriters ............................... 6

             3.    Rule 9(b) Does Not Govern Plaintiffs' Section 11 Claim Against The Underwriters, But Even So, Plaintiffs Have Pled Their Claim With The Requisite Particularity.................................................... 7

       B.    The Registration Statement Contained Untrue Statements Of Material Fact And Omitted Material Facts ......................................................... 8

             1.    The Underwriter Defendants Are Not Exempt From Liability.................. 9

             2.    The Statements Concerning Alfi's Internal Controls Are Actionable ...... 12

             3.    The Internal Control Statements Are Not Protected By The Safe Harbor Provision And The Underwriter Defendants May Not Belatedly Seek Protection Under The Bespeaks Caution Doctrine ................................. 13

                   (a)    The Safe Harbor And Bespeaks Caution Doctrine Do Not Apply To Misstatements Of Present Or Historical Fact................................ 14

                   (b)    The Internal Control Statements Were Not Accompanied By Meaningful Cautionary Statements............................................... 15

i

IV.  THE COURT HAS PERSONAL JURISDICTION OVER THE UNDERWRITER DEFENDANTS ................................................................................................................ 17

V.   CONCLUSION ................................................................................................................. 19

**TABLE OF AUTHORITIES**

CASES

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
  476 F.3d 1261 (11th Cir. 2007) ........................................................................................ 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 5

*Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*,
  No. 12-80393-CIV, 2013 WL 1149668 (S.D. Fla. Mar. 19, 2013) ......................................... 19

*BankAtlantic v. Coast to Coast Contractors, Inc.*,
  947 F. Supp. 480 (S.D. Fla. 1996) ..................................................................................... 17

*Barilli v. Sky Solar Holdings, Ltd.*,
  389 F. Supp. 3d 232 (S.D.N.Y. 2019) ................................................................................. 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 7

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) .................................................................................... 14, 15

*City of St. Clair Shores Police v. Nationstar Mortg. Holdings Inc.*,
  No. 15-61170-CIV, 2016 WL 4705718 (S.D. Fla. June 21, 2016) ...................................... 6, 8

*City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz
  Cellulose S.A.*,
  41 F. Supp. 3d 1369 (S.D. Fla. 2011) ................................................................................ 19

*Einhorn v. Axogen, Inc.*,
  42 F.4th 1218 (11th Cir. 2022) ......................................................................................... 15

*Feyko v. Yuhe Int'l, Inc.*,
  No. CV 11-05511 DDP PJWX, 2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ......................... 11

*FindWhat Inv'r Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ................................................................................... *passim*

*Gaynor v. Miller*,
  273 F. Supp. 3d 848 (E.D. Tenn. 2017) ............................................................................. 11

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ................................................................................................. 1, 6, 8

*Herring v. Secretary, Dep't of Corrs.*,
  397 F.3d 1338 (11th Cir. 2005) ................................................................................. 14

*Howard v. Chanticleer Holdings, Inc.*,
  No. 12-81123-CIV, 2013 WL 5236641 (S.D. Fla. Sept. 17, 2013) ............................ 9

*In re AFC Enters., Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) ................................................................. 8, 9

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010) ...................................................................... 9

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) ........................................................................ 9

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
  No. CV 11-2768 PSG (SSX), 2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) .................. 10, 11

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................... 11

*In re CytRx Corp. Sec. Litig.*,
  No. CV141956GHKPJWX, 2015 WL 5031232 (C.D. Cal. July 13, 2015) ............................ 11

*In re Dynegy, Inc. Sec. Litig.*,
  339 F. Supp. 2d 804 (S.D. Tex. 2004) ...................................................................... 12

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
  258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................................... 9, 10

*In re Friedman's, Inc. Sec. Litig.*,
  385 F. Supp. 2d 1345 (N.D. Ga. 2005) ....................................................................... 8

*In re Fuwei Films Sec. Litig.*,
  634 F. Supp. 2d 419 (S.D.N.Y. 2009) ......................................................................... 7

*In re Glob. Crossing, Ltd. Sec. Litig.*,
  313 F. Supp. 2d 189 (S.D.N.Y. 2003) ....................................................................... 10

*In re Hamilton Bankcorp., Inc. Sec. Litig.*,
  194 F. Supp. 2d 1353 (S.D. Fla. 2002) .................................................................. 9, 13

*In re LendingClub Sec. Litig.*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) ............................................................... 15, 16

iv

*In re Majesco Sec. Litig.*,
    No. CIV A 05CV-3557 PGS, 2006 WL 2846281 (D.N.J. Sept. 29, 2006) .............................. 10

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005)..................................................................................................... 13

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F.Supp.2d 277 (S.D.N.Y. 2013)....................................................................................... 10

*In re Mirant Corp. Sec. Litig.*,
    No. 1:02-CV-1467-RWS, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) ................................. 7

*In re OSG Sec. Litig.*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013)...................................................................................... 11

*In re Suprema Spec., Inc Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)....................................................................................................... 7

*In re Towne Servs., Inc. Sec. Litig.*,
    184 F. Supp. 2d 1308 (N.D. Ga. 2001) ................................................................................... 14

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)...................................................................................... 10

*In re WorldCom Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004)........................................................................................ 6

*Ins. Mgmt. Sols. Grp., Inc.*,
    No. 8:00CV2013T26MAP, 2001 WL 34106903 (M.D. Fla. July 11, 2001)............................ 13

*Johnson v. CBD Energy Ltd.*,
    No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016)............................................ 10

*Kammona v. Onteco Corp.*,
    587 F. App'x 575 (11th Cir. 2014) .......................................................................................... 17

*Kapps v. Torch Offshore, Inc.*,
    379 F.3d 207 (5th Cir. 2004) ..................................................................................................... 6

*Long v. Sports44.com, Inc.*,
    No. 806-CV-2384-T-27TGW, 2007 WL 3072405 (M.D. Fla. Oct. 19, 2007) ................... 17, 18

*Marrari v. Med. Staffing Network Holdings, Inc.*,
    395 F. Supp. 2d 1169 (S.D. Fla. 2005) .............................................................................. 14, 16

v

*MAZ Partners LP v. First Choice Healthcare Sols., Inc.*,
   No. 619CV619ORL40LRH, 2019 WL 5394011 (M.D. Fla. Oct. 16, 2019) ............................ 15

*Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*,
   No. MO:19-CV-217-DC, 2021 WL 9037758 (W.D. Tex. Sept. 13, 2021) ........................ 15, 16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)...................................................................................................... 6, 12

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ...................................................................................... 1

*Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*,
   966 F. Supp. 2d 525 (M.D.N.C. 2013) .......................................................................... 13

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
   119 F.3d 935 (11th Cir. 1997) ................................................................................. 17, 18

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004).......................................................................................... 16

*S.E.C. v. Keener*,
   No. 1:20-CV-21254, 2020 WL 4736205 (S.D. Fla. Aug. 14, 2020) ................................ 14

*S.E.C. v. Marin*,
   982 F.3d 1341 (11th Cir. 2020) ............................................................................... 17, 18

*Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*,
   178 F. Supp. 2d 1255 (S.D. Fla. 2000) .......................................................................... 13

*Slawin v. Bank of Am. Merch. Servs.*,
   491 F. Supp. 3d 1334 (N.D. Ga. 2020) .......................................................................... 14

*Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*,
   320 F. Supp. 3d 1285 (M.D. Fla. 2018)............................................................................ 5

*U.S. S.E.C. v. Carrillo*,
   115 F.3d 1540 (11th Cir.1997) ......................................................................... 17, 18, 19

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ...................................................................................... 7

*Yaroni v. Pintec Tech. Holdings Ltd.*,
   No. 20-CV-8062 (JMF), 2022 WL 1215450 (S.D.N.Y. Apr. 25, 2022) ........................... 16

<u>STATUTES</u>

15 U.S.C. §77k ................................................................................................................. 1

15 U.S.C. §77k(a) ................................................................................................... 6, 12, 18

15 U.S.C. §77k(b) ........................................................................................................... 10

15 U.S.C. §77k(b)(3)(C) .......................................................................................... 9, 11, 12

15 U.S.C. § 78u-5(b)(2)(D) .............................................................................................. 13

15 U.S.C. § 78u-5(c) ........................................................................................................ 13

15 U.S.C. § 78u-5(c)(1)(A)(i) ........................................................................................... 15

15 U.S.C. §77v ................................................................................................................ 17

15 U.S.C. §77v(a) ............................................................................................................ 18

<u>RULES</u>

Fed. R. Civ. P. 8 ........................................................................................................... 6, 7

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 6

Fed. R. Civ. P. 15(a)(2) .................................................................................................... 19

Lead Plaintiff Candido Rodriguez, and additional plaintiffs John K. Allen, on behalf of the Joseph M. Driscoll Trust, and Alexander C. Takian (collectively, "Plaintiffs") submit this memorandum of law in opposition to Defendants Kingswood Capital Markets, Revere Securities LLC, and Westpark Capital, Inc.'s Motion to Dismiss the Complaint[1] (ECF No. 96) (the "Moton" or "UW Mot.").

## I.      PRELIMINARY STATEMENT

Plaintiffs clearly allege a claim against Kingswood Capital Markets, Revere Securities LLC, and Westpark Capital, Inc. (collectively, "the Underwriter Defendants" or "Underwriters") for violating Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77k ("Section 11"), by their negligent participation in a false and misleading registration statement and prospectus (collectively, the "Registration Statement") for the initial public offering of both shares of common stock and warrants of Alfi, Inc. ("Alfi" or "the Company").

As the Supreme Court has recognized, Section 11 "was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). This liability extends to the underwriters of an offering. 15 U.S.C. §77k(a)(5). As the SEC explained, in enacting Section 11, "Congress recognized that underwriters occupied a unique position that enabled them to discover and compel disclosure of essential facts about the offering. Congress believed that subjecting underwriters to the liability provisions would provide the necessary incentive to ensure their careful investigation of the offering." The Regulation of Securities Offerings, SEC Release No. 7606A, 63 Fed. Reg. 67174, 67230, *available at* 1998 WL 833389 (Dec. 4, 1998).

Although the Underwriter Defendants have moved this Court to dismiss the Complaint, their Motion should be denied. Plaintiffs have more than satisfied their minimal burden of alleging materially false and misleading statements and omissions in Alfi's IPO Registration Statement,

---

[1] Unless otherwise indicated, all paragraph ("¶") references are to the Amended Consolidated Class Action Complaint (ECF No. 82) (the "Complaint"), all emphasis is added, and all quotations, internal citations and alterations are omitted. Plaintiffs do not oppose the Underwriters' Request for Judicial Notice (ECF No. 97) to the extent that it requests the Court to take notice that the referenced SEC filings made the referenced statements on the referenced dates. The Court may not, however, consider these documents "to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

and the Underwriters do not even directly challenge the alleged falsity or materiality of these misrepresentations and omissions.  Instead, the Underwriters attempt to avoid liability by asserting statutory defenses and protections which both lack merit and, as explained in more detail herein, are not even available to them.  Thus, Plaintiffs' Section 11 claim against the Underwriter Defendants should be sustained and the Underwriters' Motion should be denied in its entirety.

## II.   STATEMENT OF FACTS[2]

Defendant Alfi is an advertising-analytics technology company that claims to use its proprietary Digital Out-of-Home advertising platform to deliver targeted advertising to a viewer in front of an Alfi-enabled devices, such as a tablet or kiosk screen.  Alfi then purportedly provides to advertisers real time and accurate data on that viewer's demographics, location, and engagement collected through Alfi's platform.  ¶¶2, 53, 54.  Located in Miami Beach, Alfi was founded in 2018 by Defendant Paul Pereira, his son, Charles Pereira, and Defendant John Cook.  ¶¶2, 37, 53. Along with Defendants Pereira and Cook, individual defendants McIntosh, Bourdes, Lee, Elkouri, Ficken, Smith, and Mowser are, or were, executives or directors of the Company.  ¶¶38-47.

### A.   The IPO

In May 2021, Alfi conducted an initial public offering ("IPO").  ¶58.  Alfi filed its initial Form S-1 registration statement with the SEC on January 8, 2021, which was amended multiple times of From S-1/A, the last of which was filed on April 26, 2021, and declared effective by the SEC on May 3, 2021.  ¶¶3, 57.  On or about May 5, 2021, Alfi filed the final prospectus for the IPO ("Prospectus"), which, combined with the Form S-1, formed the Registration Statement. ¶¶57-58.  The Registration Statement included Alfi's financial results for the years ended December 31, 2019 and 2020 ("FY 2019" and "FY 2020," respectively), statements that these financial results were prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP"), and statements explaining and describing Alfi's internal controls.  ¶¶140-43, 145-46.

In the IPO Alfi offered both shares of its common stock and warrants exercisable for one share of common stock, priced at $4.15 per security.  ¶58.  The IPO was completed on May 6,

---

[2] The Statement of Facts herein focuses on facts specific to the Section 11 claims against the Underwriter Defendants.  For a more comprehensive statement of facts, Plaintiffs refer to, and incorporate by reference, the Statement of Facts section in the concurrently-filed Plaintiffs' opposition to the Alfi Defendants' motion to dismiss.

2021, in which 3,731,344 shares of common stock and 3,731,344 warrants to purchase one share of common stock were sold. ¶59. By May 10, 2021, the Underwriters exercised their over-allotment option to purchase an additional 559,701 shares and 559,701 warrants granted to the underwriters in connection with the IPO. *Id.* In total, Alfi sold 4,291,045 shares of common stock and 4,291,045 warrants in the IPO, for net proceeds of $15.7 million after deducting underwriting discounts and commissions and other offering expenses. ¶60. Alfi's common stock and warrants began trading on the NASDAQ on May 4, 2021.

The Underwriter Defendants each served as underwriters in the IPO, and received an underwriting discount of $1.425 million in connection with the IPO. ¶¶49-51.

**B.      Alfi's Successful IPO Is Short-lived: The Company Soon Finds Itself Investigating Its Founders And Executive Management, Restates The Financial Results Reported In The Registration Statement, And Admits To Material Weaknesses In Its Internal Controls**

Less than six months after Alfi's IPO, on October 28, 2021, the Company announced that it had placed Defendants Pereira and McIntosh on paid administrative leave, pending an independent internal investigation (the "Investigation") into "certain corporate transactions and other matters." ¶72. Alfi also announced that it terminated Charles Pereira's employment, after placing him on paid administrative leave less than a week prior. ¶74. In response to this news, Alfi's shares fell $1.24, or approximately 21.91%, to close at $4.42 on October 29, 2021. ¶75.

Over the next month, Alfi made several piecemeal announcements relating to the progress of the Investigation, including that the Company had received a letter from the SEC to preserve all documents and data for a wide breadth of topics. ¶83, *see generally* ¶¶76-115. On February 23, 2022, Alfi announced the results of the Investigation, admitting that "former senior management" caused Alfi to enter into multiple transactions without the Board's knowledge or approval, which included the issuance of Company stock, admitted that Defendant Pereira made multiple false statements to the market and that a social media account created on Pereira's computer made "inaccurate" posts about Alfi and its prospects, and that prior to Charles Pereira's firing, he had interfered with Alfi's computer systems and platforms, which hindered, delayed, and increased the expense of Alfi's Investigation. ¶¶87-102.

Alfi also admitted in its February 23, 2022 announcement that the Investigation found Alfi's internal controls over financial reporting to be deficient in many respects, including: (1) the disbursement process for third-party vendors; (2) the review and approval process for significant

vendor contracts; (3) the use of the Company credit card by executives; (4) the supervision and approval of travel and entertainment expenses incurred by executives; (5) segregation of duties for the payment and recording of invoices and related bank reconciliations; (6) the lack of a sufficient accounting manual; and (7) guidelines for the capitalization of fixed assets. ¶103. As part of the Investigation's findings, ten recommendations to enhance Alfi's internal controls were announced, including maintaining a proper "tone at the top," enhancing controls for funds disbursements, and establishing segregation of duties "across all aspects of financial operations." ¶104; *see also* ¶105.

Then on March 11, 2022 after the market closed, Alfi announced that its FY 2019 and FY 2020 financial results included in Alfi's Registration Statement, as well as the quarterly results previously issued by the Company after its IPO, should no longer be relied upon and should be restated due to a number of identified accounting errors that violated GAAP. ¶¶106, 120. Although the effects of the errors were still being determined, Alfi stated that it preliminarily expected its total stockholders' equity balances would decrease by $1.5 million as of December 31, 2019, by $2.9 million as of December 31, 2020, and by approximately $3.0 million as of June 30, 2021. ¶107. Alfi also stated that it expected to conclude that material weaknesses in its internal controls over financial reporting and that Alfi's disclosure controls and procedures for such periods were not effective. ¶107. In response to this news, Alfi's stock price fell $0.13, or 8.075%, to close at $1.48 per share on March 14, 2022. ¶109. In less than a year, Alfi's stock price tumbled $2.67, or almost 65% from its IPO price.

On May 16, 2022, Alfi issued its restated financial results (the "Restatement"). ¶110. Not only did the Restatement correct the accounting errors Alfi announced on March 11, 2022, but it included a number of additional, unexplained accounting adjustments. ¶111. These accounting errors were also in violation of GAAP. ¶¶116-135.

As a result, Alfi's stockholders' equity value – *i.e.*, its net worth – tanked, as did Alfi's reported net income. Specifically, and for the periods relevant to respond to this Motion, in FY 2019 Alfi's stockholder's equity balance decreased by $2,532,133, from a reported balance of $2,564,864 to a restated balance of just $32,731, and Alfi's net income decreased by $1,665,867 from a reported net income of $66,735 to a restated net *loss* of $1,599,132. For FY 2020, Alfi's stockholder's equity balance decreased by $4,469,170, from a reported balanced of $1,030,905 to a restated stockholders' *deficit* balance of $3,438,265, and Alfi's net loss became larger by $1,988,316, from a net loss of $3,558,959 to a net loss of $5,547,275. ¶¶111, 144(d)-(e). In

4

addition, as a result of the Restatement, the balance of Alfi's two most important – *i.e.*, potential revenue producing – assets greatly decreased.  ¶¶112, 144(f)-(g).

The Restatement also included a discussion of Alfi's internal controls, stating that the Company's current management evaluated Alfi's internal controls, and concluded that those controls were not effective and that a material weakness exists in Alfi's internal controls over financial reporting.  ¶113.  Specifically, Alfi's then-current management concluded that Alfi's "does not have a sufficient complement of personnel commensurate with the accounting and reporting requirements of a public company," and that the identified material weaknesses relate to "inadequate controls concerning the segregation of certain accounting duties and the reconciliation and analysis of key accounts."  ¶114.  Alfi's management concluded that that these material weaknesses arose because, "as a pre-revenue private company recently formed," Alfi did not have the "necessary personnel to design effective components of internal control, including risk assessment control activities information/communication and monitoring to satisfy the accounting and financial reporting requirements of a public company."  *Id.*

## III.   PLAINTIFFS ADEQUATELY STATE A CLAIM UNDER SECTION 11 AGAINST THE UNDERWRITER DEFENDANTS

### A.      The Standard Governing Rule 12(b)(6) Motions To Dismiss

On a Rule 12(b)(6) motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). [P]lausibility "is not akin to a probability requirement," rather, plausibility only requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

Thus, dismissal is only appropriate "if the allegations do not "raise the [plaintiffs'] right to relief above the speculative level."  *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1291 (M.D. Fla. 2018).  "The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations."  *Id.*

### 1.      Section 11 Imposes A Minimal Burden On Plaintiffs

Plaintiffs' sole claim against the Underwriter Defendants is brought pursuant to Section 11.  Complaint, §IX.  Section 11 creates a private remedy for any purchaser of a security if "any

part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ." 15 U.S.C. §77k(a). This liability extends to the Underwriter Defendants as the underwriters of Alfi's IPO (¶¶49-51). 15 U.S.C. §77k(a)(5).

"The section was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering[,]" *Huddleston*, 459 U.S. at 381-82, and "reflects Congress' sense that underwriters, issuers, and accountants bear a moral responsibility to the public [that] is particularly heavy." *In re WorldCom Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 657 (S.D.N.Y. 2004). The Eleventh Circuit instructs that "in applying Section 11 to the facts of th[e] case," courts "must always keep before us the underlying purpose of, and legislative intent behind, the statute." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1268 (11th Cir. 2007). Thus, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Huddleston*, 459 U.S. at 382.

"Section 11 … creates two ways to hold issuers liable for the contents of a registration statement – one focusing on what the statement says and the other on what it leaves out." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 179 (2015). "Either way, the buyer need not prove (as he must to establish certain other securities offenses) that the defendant acted with any intent to deceive or defraud." *Id.*; *APA Excelsior*, 476 F.3d at 1271. Thus, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements. Other defendants bear the burden of demonstrating due diligence." *Huddleston*, 459 U.S. at 382; *see also City of St. Clair Shores Police v. Nationstar Mortg. Holdings Inc.*, No. 15-61170-CIV, 2016 WL 4705718, at *7 (S.D. Fla. June 21, 2016). Accordingly, "Section 11 places a relatively minimal burden on a plaintiff." *Huddleston*, 459 U.S. at 382.

### 2. The Notice Pleading Standards Of Rule 8 Applies to Plaintiffs' Section 11 Claims Against The Underwriters

Because a plaintiff need not plead that a defendant's false statements were made with intent to defraud, the notice pleading standards under Fed. R. Civ. P. 8 applies. *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210 (5th Cir. 2004). Rule 8 provides that a complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, although the Supreme Court noted that mere labels or speculation do not

6

suffice, *Twombly* affirmed that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs do not plead any counts against the Underwriter Defendants that sound in fraud, and expressly disclaim that the Underwriter Defendants acted with any scienter or fraudulent intent as to their Section 11 claim.  ¶¶136, 214.  Rule 8 applies.

### 3. Rule 9(b) Does Not Govern Plaintiffs' Section 11 Claim Against The Underwriters, But Even So, Plaintiffs Have Pled Their Claim With The Requisite Particularity

The Underwriter Defendants incorrectly argue the Complaint sounds in fraud and is subject to Rule 9(b).  UW Mot. at 7.[3]  But whether a complaint sounds in fraud depends on the conduct alleged.  *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006).  In a multiple party case like this one, courts determine whether a *particular defendant* is alleged to have committed fraud to determine whether the claims against that defendant must be pled with particularity.  *In re Suprema Spec., Inc Sec. Litig.*, 438 F.3d 256, 273 (3d Cir. 2006) (holding that Rule 9(b) did not apply because "[a]s to its claims against the Outside Directors and Underwriters in particular, there are no allegations of fraud or reckless misconduct whatsoever"); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 436 (S.D.N.Y. 2009) (similar);[4] *see also In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-1467-RWS, 2008 WL 11334395, at \*7 (N.D. Ga. Aug. 5, 2008) (interpreting *Wagner* to permit a plaintiff to disentangle fraud defendants from non-fraud defendants, citing *Suprema*).

However, even if the Court determines that Plaintiffs' Section 11 claim against the Underwriter Defendants "sound in fraud," Plaintiffs plead their Section 11 claim against Defendants with the requisite particularity.  *Contra* UW Mot. at 7, 16-17 (arguing that the Complaint fails to meet the pleading requirements of both Rule 8 and Rule 9(b)).  To satisfy Rule 9(b), a plaintiff is required to "identify the specific statements or omissions alleged to be misleading, articulate the reasons why each statement or omission was misleading, and identify the time, place and context of each allegedly misleading statement. In short, Plaintiffs must set forth the 'who, what, when, where, and how' of the Defendants' allegedly fraudulent behavior."

---

[3] For the same reasons as addressed in Sec. III.F of Plaintiffs' concurrently-filed opposition to the Alfi Defendants' motion to dismiss, the Complaint is not an improper "shotgun" pleading.

[4] The Eleventh Circuit declined to address this issue.  *Wagner*, 464 F.3d at 1276, n.1.

*In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1367 (N.D. Ga. 2005); *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1378 (N.D. Ga. 2004).[5]

The Complaint identifies the Registration Statement, including the final Prospectus filed with the SEC on May 5, 2021, as containing the false and misleading statements (¶¶3, 138, 139), satisfying the "when" and "where."  The Complaint also identifies the specific statements in the Registration alleged to be false and misleading (¶¶140-43, 145-46), satisfying the "what," and states with particularity the reasons why the statements were misleading, including later disclosures by Alfi that they were false (¶¶144, 147), satisfying the "how."  As for the "who," Alfi's Registration Statement, including its Prospectus, is a "group-published document—the collective effort of the issuing company, its directors and officers, its accountants and lawyers, and the underwriters.  In recognition that all of these parties contribute to, and are thus responsible for, the statements in a prospectus, Section 11 of the Securities Act creates statutory liability for all of these classes of defendants, regardless of specific authorship." *AFC Enters.*, 348 F. Supp. 2d at 1379.  By identifying the Underwriter Defendants as liable under Section 11 (*see* Complaint, §IX (charging all defendants as liable for violations of Section 11)), the "who" has been sufficiently pled. *Id.*  These allegations are certainly sufficient to support Plaintiffs' Section 11 claims against the Underwriters, and their arguments to the contrary are in opposition to the "minimal burden" Section 11 places on a plaintiff. *Huddleston*, 459 U.S. at 382.

**B.    The Registration Statement Contained Untrue Statements Of Material Fact And Omitted Material Facts**

As alleged in the Complaint, the Registration Statement contained materially false and misleading statements and omitted material facts necessary to make the statements therein not misleading.  Specifically, the Registration Statement included materially false and misleading statements and omissions concerning: (1) Alfi's FY 2019 and FY 2020 financial results, including Alfi's intangible asset balances, the balance for Alfi's "other assets," *i.e.*, the Company's tablets, Alfi's total stockholders' equity balances, and the Company's reported net income/loss; (2) affirmations that Alfi's FY 2019 and FY 2020 financial results were prepared in accordance with GAAP; and (3) Alfi's internal controls.  ¶¶136-47.

---

[5] While Rule 9(b) requires the circumstances of the fraud be pleaded with particularity, it does not require scienter to plead [a] Section 11 … claim[] against the Underwriters Defendants." *Friedman's*, 385 F. Supp. 2d at 1367; *St. Clair Shores Police*, 2016 WL 4705718, at *7 (same).

### 1.    The Underwriter Defendants Are Not Exempt From Liability

The Underwriter Defendants do not dispute the falsity of Alfi's FY 2019 and FY 2020 financial results and the statements in the Registration Statement that the FY 2019 and FY 2020 financial results were prepared in accordance with GAAP (¶¶140-143).  Arguing otherwise would be futile, as "the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."  *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 709-10 (W.D. Tex. 2010) (same).

Rather, the Underwriter Defendants argue that they are exempt from liability for the false FY 2019 and FY 2020 financial statements included in the Registration Statement under the "reliance" or "due diligence" affirmative defense afforded to them by Section 11.  Under 15 U.S.C. §77k(b)(3)(C), non-issuer defendants will not be held liable under Section 11 if they:

> ***sustain the burden of proof*** … that … as regards any part of the registration statement purporting to be made on the authority of an expert …, [they] ***had no reasonable ground to believe*** and did not believe, at the time such part of the registration statement became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

*Id.*

More specifically, the Underwriter Defendants argue that they cannot be held liable for Alfi's false FY 2019 and FY 2020 financial statements because they are entitled to rely on the auditors' expertise as to these accounting misstatements.  UW Mot. at 8-11.  This argument should be rejected for the following reasons.

First, this affirmative defense is not available at the pleading stage.  *In re Hamilton Bankcorp., Inc. Sec. Litig.*, 194 F. Supp. 2d 1353, 1357 (S.D. Fla. 2002) ("The Underwriter Defendants' contentions that they were entitled to and did rely on the financial statements certified by Hamilton's auditor … is an affirmative defense which cannot be resolved on a motion to dismiss."); *AFC Enters.*, 348 F. Supp. 2d at 1380 ("As determinations of the reasonableness of a defendant's investigation or a defendant's reliance on expert opinion are fact-intensive inquiries, they are generally not properly resolved on motions to dismiss.") (collecting cases); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 597, 639, 642 (S.D. Tex. 2003) (because Section 11's affirmative defenses are established "upon proof of issues", court would not rule on them at motion to dismiss stage) (collecting cases); *cf Howard v. Chanticleer Holdings, Inc.*, No.

12-81123-CIV, 2013 WL 5236641, at *6 (S.D. Fla. Sept. 17, 2013) (rejecting defendants' argument in their motion to dismiss that the complaint clearly established the due diligence defense, noting that although defendants "may ultimately prove this defense, the Amended Complaint does not establish it as a matter of law.").[6]

Second, Section 11 is clear that the Underwriter Defendants bear not only the burden of invoking, but proving, the reliance defense. 15 U.S.C. §77k(b). The Underwriter Defendants attempt to flip this burden, arguing that it is Plaintiffs' burden to negate this fact-specific defense. *See* UW Mot. at 10-11 ("Plaintiff[s] never allege[] that it was unreasonable for the Underwriters to rely on the expertised portions of the Registration Statement ...."). Plaintiffs, however, have no burden to plead or negate any facts relating to this affirmative defense. *Enron*, 258 F. Supp. 2d at 639 ("Lead Plaintiff does not have the burden of pleading and proving Defendants' affirmative defenses of due diligence and/or reliance on an expert's opinion under § 11(b)(3), which expressly places the burden on Defendants."); *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 211 (S.D.N.Y. 2003) ("the statute expressly provides that the burden of proof is on defendants to establish this defense, and the plaintiffs need not negate such an affirmative defense in their pleading.").

In support of this improper burden switching, the Underwriter Defendants rely on two district court opinions from the Central District of California for the proposition that, "as a matter of law, underwriters can rely on the audited financial statements … absent red flags" that Plaintiffs

---

[6] *See also, e.g.*, *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 379 (S.D.N.Y. 2011) ("due diligence is an affirmative defense and therefore unavailing on a motion to dismiss"); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F.Supp.2d 277, 322-23 (S.D.N.Y. 2013) ("Because the affirmative defense turns on an evaluation of reasonableness, whether the defense is available is generally a fact issue, rarely suitable for summary judgment, let alone a motion to dismiss."); *Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *7 (S.D. Tex. July 6, 2016) ("the "reliance on expert" affirmative defense generally reserved for summary judgment or trial"); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSX), 2012 WL 12893520, at *6 (C.D. Cal. Feb. 16, 2012) ("applicability of the reliance defense in this case will be fact specific and is only suitable for determination on a motion for summary judgment or at trial."); *In re Majesco Sec. Litig.*, No. CIV A 05CV-3557 PGS, 2006 WL 2846281, at *5 (D.N.J. Sept. 29, 2006) (rejecting defendants' argument that the complaint should be dismissed pursuant to the due diligence defense because "such an inquiry is not one for a motion to dismiss. The underwriters … contention that it performed all necessary due diligence and had no reasonable ground to believe that an omission or misstatement was made is nothing more than an affirmative defense that defendants can assert and establish through discovery.").

10

must plead.  UW Mot. at 10-11 (citing *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008); *Feyko v. Yuhe Int'l, Inc.*, No. CV 11-05511 DDP PJWX, 2013 WL 816409 (C.D. Cal. Mar. 5, 2013)).  The holdings in these cases are in opposition to the plain language of the statute which allows defendants to invoke this defense only upon ***defendants'*** proof of the issue.  *See* 15 U.S.C. §77k(b)(3)(C).  At least two other courts in the same district have declined to follow *Countrywide* and *Feyko*.  *See China Intelligent Lighting*, 2012 WL 12893520, at \*6 (declining to follow *Countrywide* and rejecting argument that the complaint failed to allege "any reason why the underwriters were not entitled to rely on [company's] financial statements or the expert accounting judgements reflected in them."); *In re CytRx Corp. Sec. Litig.*, No. CV141956GHKPJWX, 2015 WL 5031232, at \*17 (C.D. Cal. July 13, 2015) (rejecting underwriter defendants' argument, anchored on *Countrywide* and *Feyko*, that plaintiffs failed to plead specific red flags).  To be sure, "[d]espite the Underwriter Defendants' contention that reliance is per se reasonable in the absence of red flags, no such rule of law exists.… Plaintiffs have adequately alleged that Defendants served as underwriters in a securities offering that employed a materially false or misleading registration statement.  Plaintiffs are not required to additionally plead red flags or facts negating the Underwriters' defense."  *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 401 (S.D.N.Y. 2013).

Moreover, the Underwriters have made no attempt whatsoever to meet their burden.  Rather, their argument is, in its entirety, that the FY 2019 and FY 2020 financial misstatements appearing in Alfi's Registration Statement were audited, Plaintiffs have not identified any red flags that would have caused the Underwriter Defendants to question these financials, and thus, the Underwriter Defendants are entitled to the reliance affirmative defense.  UW Mot. at 8-11.  But the Underwriter Defendants' say-so "do[es] not prove that [P]laintiffs' Section 11 claim is undoubtedly barred by the defense of reasonable reliance," and the Underwriter Defendants' attempt to do so should be rejected.  *Gaynor v. Miller*, 273 F. Supp. 3d 848, 871 (E.D. Tenn. 2017) (rejecting similar argument).  Indeed, the Underwriter Defendants fail to cite to a single allegation in the Complaint that establishes that their reliance was reasonable.  "Because the underwriters bear the burden of pleading and proving that their reliance on expertised portions of the registration statements was reasonable, and because they have failed to cite any allegations in the pleadings that establish their reliance was reasonable," the Section 11 claims asserted against them should

11

not be dismissed on this basis.  *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 875 (S.D. Tex. 2004).

In a last ditch effort to avoid liability, the Underwriter Defendants point to the results of Alfi's independent investigation, which admitted that "former senior management" took certain actions, entered into transactions with Company funds, and made false and misleading statements all without the "Board's knowledge or approval."  UW Mot. at 11 & n.2.  This argument ignores that the Board members, as directors and signatories to the Registration Statement (¶¶41-47), are themselves liable for the false FY 2019 and FY 2020 financial statements in the Registration Statement and must show their own reasonable reliance—which they have not—to avoid liability. 15 U.S.C. §77k(a)(1), (2); 15 U.S.C. §77k(b)(3)(C).  But more fundamentally, Alfi's investigatory findings concerning the actions made without the "Board's knowledge and approval" do not include, or even relate to, the false FY 2019 and FY 2020 financials.  ¶¶17, 89, 91, 95, 98-100, 161, 163, 168 (cited in support of this argument at page 11, n.2 of the UW Mot.).  As such, this argument is a red herring and should be ignored.

In sum, the reliance defense is available only when the Underwriter Defendants show that they "had no reasonable ground to believe" that the statements were false or misleading.  15 U.S.C. §77k(b)(3)(C).  Even if this defense were available at the pleading stage, the Underwriters have failed to meet their burden to invoke it, and their Motion should be denied on this basis.

### 2.    The Statements Concerning Alfi's Internal Controls Are Actionable

"[L]iteral accuracy is not enough [to comply with Section 11]: An issuer must also desist from misleading investors by saying one thing and holding back another."  *Omnicare*, 575 U.S. at 192.  "By voluntarily revealing one fact about its operations, a duty arises for the corporation to disclose such other facts, if any, as are necessary to ensure that what was revealed is not 'so incomplete as to mislead.'"  *FindWhat*, 658 F.3d at 1305 (citation omitted).

The risk factors section of the Registration Statement discussed the Company's internal controls, explaining to investors that they were "designed" to reasonably assure that Alfi's financial reporting was reliable and prepared in accordance with GAAP, and that information was accumulated and communicated timely. ¶¶145, 146.  However, despite listing a number of related risks as to Alfi's internal controls, this discussion was misleadingly incomplete because it failed to disclose that: (i) Alfi's internal controls were *already* not effective and were deficient in a multitude of ways; and (ii) material weaknesses existed concerning the segregation of accounting

12

duties and that, as a result, not only were the FY 2019 and FY 2020 financial results materially overstated, it allowed an environment in which Alfi's top executives were able to repeatedly use the Company for their own personal benefit. ¶¶103-105, 113-114, 147.  It is the failure to disclose these critical contrary facts that makes the internal control statements misleading (¶147).  *See FindWhat*, 658 F.3d at 1299 ("[T]o caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit."); *Hamilton*, 194 F. Supp. 2d at 1356 (omissions of material information regarding company's lack of internal controls materially misleading for purposes of Section 11 claim).[7]

### 3. The Internal Control Statements Are Not Protected By The Safe Harbor Provision And The Underwriter Defendants May Not Belatedly Seek Protection Under The Bespeaks Caution Doctrine

The Underwriter Defendants claim that the internal control statements are protected from liability by the Private Securities Reform Act's ("PSLRA") safe harbor provision, which protects statements that are forward-looking, accompanied by meaningful cautionary disclosures, and not made with actual knowledge that the statements were false or misleading.  15 U.S.C. § 78u-5(c).

The PSLRA safe harbor protection does have exclusions, including forward-looking statements that are "made in connection with an initial public offering[.]"  15 U.S.C. § 78u-5(b)(2)(D); *In re Ins. Mgmt. Sols. Grp., Inc.*, No. 8:00CV2013T26MAP, 2001 WL 34106903, at *9 (M.D. Fla. July 11, 2001); *Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 556 (M.D.N.C. 2013).  It is presumed that statements made in a registration statement filed for an IPO are made "in connection with" that IPO.  *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005).  The internal control statements at issue here were made in the Registration Statement issued in connection with Alfi's IPO. ¶¶1, 57-58, 138, 145-46.  Accordingly, the PSLRA's safe harbor protection is unavailable and the Motion should be denied on this basis.

Nor may the Underwriter Defendants seek protection under the judicially created "bespeaks caution" doctrine, which "operates similarly, protecting statements in the nature of projections that are accompanied by meaningful cautionary statements and specific warnings of

---

[7] The Underwriter Defendants place emphasis on the fact that the internal control statements were contained in the risk factors section and were not certifications as to the effectiveness of Alfi's internal controls. *See* UW Mot. at 12, 14. But these facts do not change the analysis. *E.g.*, *Sherleigh Assocs. LLC v. Windmere-Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1271-72 (S.D. Fla. 2000) (finding omissions in registration statement's risk factor section actionable).

the risks involved[.]" *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 n.7 (11th Cir. 1999). By failing to raise the defense of the "bespeaks caution" doctrine in their Motion, the Underwriter Defendants have waived it. *S.E.C. v. Keener*, No. 1:20-CV-21254, 2020 WL 4736205, at *6 (S.D. Fla. Aug. 14, 2020) ("[i]t is improper to raise an argument for the first time in a reply.") (citing *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005)); *see also, e.g.*, *Slawin v. Bank of Am. Merch. Servs.*, 491 F. Supp. 3d 1334, 1340 (N.D. Ga. 2020) (argument not raised by defendants in its opening brief or any opening brief of other defendants, and only raised for the first time in reply, is waived).

### (a) The Safe Harbor And Bespeaks Caution Doctrine Do Not Apply To Misstatements Of Present Or Historical Fact

Although the Court need not undertake an analysis to determine if the internal control statements are protected under either the statutory safe harbor or bespeaks caution doctrine—and it should not—these protections are not otherwise available. As explained above, Plaintiffs allege that the internal control statements were materially misleading because, at that time, Alfi's internal controls were ***already*** not effective and were deficient in a multitude of ways. *FindWhat*, 658 F.3d at 1299 (defendants cannot claim protection under the PSLRA's safe harbor provision for statements that purport to represent present facts); *Marrari v. Med. Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1179 (S.D. Fla. 2005) ("misrepresentations and omissions that were misleading at the time they were made, which would place these allegations, if true, beyond the protection of the "bespeaks caution" doctrine"); *In re Towne Servs., Inc. Sec. Litig.*, 184 F. Supp. 2d 1308, 1320-21 (N.D. Ga. 2001) (statements that are false or misleading because of events that had already occurred are not barred by the safe harbor or bespeaks caution doctrine and further noting that "[a]n otherwise actionable omission concerning past or present problems, however, cannot be sanitized by forward-looking statements about similar problems.").

The Underwriters claim that the internal controls statements are forward-looking statements does not make them so.[8] Indeed, the alleged internal control statements are firmly

---

[8] Likewise, Plaintiffs do not allege that the internal control statements contained a statement regarding the quality or effectiveness of internal controls. *Contra* UW Mot. at 15-16. But even so, the cautionary language the Underwriter Defendants highlight does state that Alfi's internal controls were adequate. *Id.* at 13 ("[i]mplementing any appropriate changes to our internal controls …. These changes may not, however, be effective in ***maintaining the adequacy*** of our internal controls, and any failure to ***maintain that adequacy*** ….").

rooted in the present: "[o]ur internal control over financial reporting *is* a process designed … to provide reasonable assurances …" and "[o]ur disclosures controls and procedures *are* designed to reasonably assure …." ¶¶145, 146. *See, e.g.*, *FindWhat*, 658 F.3d at 1298 ("we employ an integrated system" and "we enforce strict guidelines" are statements of present fact).

Moreover, the additional pages of risk disclosures emphasized in the Underwriters' Motion support the present-tense nature of Alfi's internal control statements. Stating that one intends to review and improve internal controls and would implement any appropriate changes, necessarily implies that the internal controls already existed. *See* UW Mot. at 13, 15 ("we intend to begin the process of documenting, *reviewing and improving* our internal controls and procedures for compliance with Section 404 of the Sarbanes-Oxley Act[;]" "[i]mplementing any appropriate *changes* to our internal controls …. These changes may not, however, be effective in *maintaining* the adequacy of our internal controls, and any failure *to maintain* that adequacy …."). But even so, the Eleventh Circuit has recently explained that "if a statement includes a distinct present-tense component that is readily severable from the forward-looking portion of the statement, the safe harbor protects only the forward-looking part." *Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022). As the Complaint demonstrates, the misleading internal control statements are easily severable from any supposed forward-looking portion of the Registration Statement's risk factors.

### (b) The Internal Control Statements Were Not Accompanied By Meaningful Cautionary Statements

Even if the internal control statements may be considered forward-looking, Defendants are not entitled to safe harbor or bespeaks caution protections because they were not "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i); *Bryant*, 187 F.3d at 1276 n.7.

Because the misleading nature of the internal control statements are based in the failure to disclose that Alfi's internal controls were *already* deficient, the cautionary language the Underwriter Defendants cite in their Motion (UW Mot. at 12-14, 15), which only discuss the possibility of *future* problems, are both general and insufficient to cure the misleading nature of the internal control statements. *Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*, No. MO:19-CV-217-DC, 2021 WL 9037758, at *17 (W.D. Tex. Sept. 13, 2021) (rejecting argument that IPO accurately warned that company was still in the process of evaluating its controls, because another, similar, alleged actionable risk had already come to pass); *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1116-17 (N.D. Cal. 2017) (similar); *MAZ Partners LP v. First Choice Healthcare Sols., Inc.*, No. 619CV619ORL40LRH, 2019 WL 5394011, at *13 (M.D. Fla. Oct. 16,

15

2019) (finding the bespeaks caution doctrine inapplicable, in part, because "the risk disclosures regarding the volatility of the company's stock were not sufficiently specific" and "because the risk disclosures did not include a forewarning about [present] market manipulation schemes."); *Marrari*, 395 F. Supp. 2d at 1179 (risk disclosures contained within the IPO materials inadequate because they "purport to be forward-looking when in fact the risks were already present"); *FindWhat*, 658 F.3d at 1299 ("Defendants' failure to disclose these defects rendered their statements materially misleading, which was not cured by any general cautionary or risk-disclosing language" that failed to warn about known problems); *see also Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.").

As such, the Underwriter Defendants' reliance on *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232 (S.D.N.Y. 2019) and *Yaroni v. Pintec Tech. Holdings Ltd.*, No. 20-CV-8062 (JMF), 2022 WL 1215450 (S.D.N.Y. Apr. 25, 2022) is misplaced. In *Barilli*, as the Motion explains, "the prospectus 'disclosed both weaknesses in its internal controls' and the risk that continued weakness in internal controls would cause harm." UW Mot. at 15 (quoting *Barilli*, 389 F. Supp 3d at 243). The offering documents in *Yaroni* similarly identified a material weakness in internal controls. 2022 WL 1215450 , at *7. Here, Alfi's Registration Statement made no mention of the existing weaknesses in internal controls.

Lastly, the internal control statements are not mere puffery, but were material. UW Mot. at 15-16.[9]  As a result of these material weaknesses and deficiencies in Alfi's controls, the FY 2019 and FY 2020 financial results were materially overstated, and top executives were able to repeatedly use the Company for their own personal benefit. *See, e.g.*, *Propetro Holding Corp.*, 2021 WL 9037758, at *17 (internal control statements were material even though the defective controls did not result in misstated financials); *LendingClub*, 254 F. Supp. 3d at 1117 ("the mere fact that [the CEO] had engaged in the improper transactions ... made the adequacy of LendingClub's internal controls material.").

---

[9] Sec. III.B of Plaintiffs' concurrently-filed opposition to the Alfi Defendants' motion to dismiss for a discussion on the applicable legal standards to plead materiality.

IV.    **THE COURT HAS PERSONAL JURISDICTION OVER THE UNDERWRITER DEFENDANTS**

The Underwriters alternatively contend that Plaintiffs' claims must be dismissed under Rule 12(b)(2) for failure to establish personal jurisdiction under Florida's long-arm statute.  UW Mot. at 17-18.  This jurisdictional challenge fails.

In reviewing a challenge to personal jurisdiction, courts must "first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process."  *S.E.C. v. Marin*, 982 F.3d 1341, 1349 (11th Cir. 2020).

Plaintiffs' claim against the Underwriter Defendants arise under the Securities Act which authorizes nationwide service of process and "establish[es] a statutory basis under the federal securities laws for personal jurisdiction over the defendant."  *Long v. Sports44.com, Inc.*, No. 806-CV-2384-T-27TGW, 2007 WL 3072405, at *3-4 (M.D. Fla. Oct. 19, 2007) (citing *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540 (11th Cir.1997));[10] ¶31 (alleging, *inter alia*, jurisdiction under Section 22 of the Securities Act (15 U.S.C. §77v).

Thus Florida's long-arm statute does not, as Underwriter Defendants insist, govern here. *BankAtlantic v. Coast to Coast Contractors, Inc.*, 947 F. Supp. 480, 484 (S.D. Fla. 1996) ("Rule 4(e) provides that if a federal statute provides for service of process, then the Court must use the federal statutory provision rather than a state long-arm statute."); *Sports44.com*, 2007 WL 3072405, at *3 (agreeing that "plaintiffs' claims based upon the Securities Act of 1933 … make the Florida long-arm statute and the Fourteenth Amendment inapplicable.").  The Court's inquiry may end here.  *See Sports44.com*, 2007 WL 3072405, at *3 (noting that defendant's erroneous argument as to lack of personal jurisdiction "should simply [be] reject[ed]").

Even though the Court may end its inquiry here, the exercise of jurisdiction over Underwriter Defendants also comports with due process.  "[W]hen, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth,

---

[10] *See also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."); *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579-80 (11th Cir. 2014) (holding that the nationwide service-of-process provision of the Securities Exchange Act of 1934, identical to the Securities Act's provision, "grants district courts nationwide personal jurisdiction over any defendant that has minimum contacts with the United States.").

rather than the Fourteenth, Amendment." *BCCI Holdings*, 119 F.3d at 942.  The Eleventh Circuit has explained that "[t]he Fifth Amendment's Due Process Clause, like the Fourteenth's, is designed to protect individuals by providing them with fair notice that their activities will render them liable to suit in a particular forum.  This fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum."  *Marin*, 982 F.3d at 1349 (quoting *BCCI Holdings*, 119 F. 3d at 945).  Due process is satisfied when "(1) the nonresident defendant has purposefully established minimum contacts with the forum and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice."  *Marin*, 982 F.3d at 1349.  In the securities context, the appropriate forum here is the United States.  *Carrillo*, 115 F.3d at 1543; *Sports44.com*, 2007 WL 3072405, at \*4.

Underwriting Alfi's IPO (¶¶49-51) constitutes minimum contacts for purposes of specific jurisdiction.  Indeed, the act of underwriting the IPO (1) directly relates and gives rise to Plaintiffs' cause of action, (2) constitutes "purposeful availment" of the "privilege of conducting activities within" not only the United States, but this District specifically, and (3) provides sufficient contacts such that Underwriter Defendants should reasonably anticipate being haled into court here. *Carrillo*, 115 F. 3d at 1542, 1544-1547.  There can be no question otherwise: the Securities Act specifically imposes liability upon every underwriter of an offering, 15 U.S.C. §77k(a)(5), and authorizes an action in the district where the stock offering took place if the defendant participated therein, 15 U.S.C. §77v(a).  But even on a more fundamental level, each of the Underwriter Defendants are U.S. businesses headquartered in New York City and Los Angeles.  *See* UW Mot. at 4-5.  This alone satisfies the purposeful availment requirement.  *Marin*, 982 F. 3d at 1350 ("a United States resident or business, which necessarily has directed activities at the United States through her choice of residence or incorporation, satisfies the purposeful availment component of Fifth Amendment due process analysis.").

The assertion of jurisdiction also adheres to principles of fairness and substantial justice. The Eleventh Circuit instructs courts to "ask first whether the party challenging jurisdiction has 'presented a compelling case' that the exercise of jurisdiction would be so unreasonable that the party's 'liberty interests have actually been infringed.'  …If, and only if, the challenging party has made this showing, we proceed to balance the burdens imposed on the individual defendant against the federal interest involved in the litigation."  *Marin*, 982 F.3d at 1350 (quoting *BCCI Holdings*, 119 F.3d at 946).  Underwriter Defendants proffer no reason, let alone a "compelling case" as to

18

why jurisdiction would be unreasonable.  Although defending this action in this forum may be less convenient for these defendants, "modern methods of transportation and communication have ameliorated this sort of burden."  *Carrillo*, 115 F.3d at 1547.  U.S. Courts also have an "obvious interest in enforcing its federal securities laws and protecting its markets." *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Cellulose S.A.*, 41 F. Supp. 3d 1369, 1407 (S.D. Fla. 2011).

Thus, for all these reasons, the Underwriters' argument in support of dismissal for failure to establish personal jurisdiction should be denied.

## V.   CONCLUSION

Plaintiffs respectfully request that the Court deny the Underwriter Defendants' entire Motion.  If the Court is inclined to grant, in whole or in part, the Underwriter Defendants' Motion, Plaintiffs respectfully request that dismissal be without prejudice and with leave to amend to cure any defects via an amended pleading.  *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given); *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2013 WL 1149668, at *9 (S.D. Fla. Mar. 19, 2013).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs hereby respectfully request that the Court, in its discretion, schedule oral argument on the Underwriter Defendants' Motion. Given the complex securities law matters raised in this motion, Plaintiffs submit that oral argument may assist the Court in its analysis and resolution of the Motion. Plaintiffs estimate that 30 minutes of time on their behalf would be sufficient to address the specific issues raised by the Underwriters in their Motion.

///

///

///

///

///

19

Dated: October 11, 2022

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Adam D. Warden*
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road
Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Lead Plaintiff and*
*Local Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
lsolish@glancylaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq. (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com
skim@rosenlegal.com

*Counsel for Plaintiff John K. Allen,*
*on behalf of the Joseph M. Driscoll Trust and*
*Plaintiff Alexander C. Takian*

20

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will automatically serve all counsel of record registered with the Court's CM/ECF system.


_s/ Adam D. Warden_
Adam D. Warden