## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-24232-KMW |
| Plaintiff, | |
| v. | |
| ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., | |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………………1

II.     OVERVIEW OF THE LITIGATION……………………………………………3

III.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION
        SETTLEMENTS…………………………………………………………………3

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE………………5

        A.      Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the
                Settlement Class.................................................................................5

        B.      The Settlement is the Product of Arm's-Length Negotiations Between
                Experienced Counsel ........................................................................6

        C.      The Relief Provided for the Settlement Class is Adequate............................6

                1.      The Settlement Amount is Within the Range of Reasonableness.........7

                2.      The Costs, Risks, and Delay of Trial and Appeal................................8

                3.      Other Factors Established by Rule 23(e)(2)(C) Support
                        Final Approval ................................................................10

        D.      All Settlement Class Members Are Treated Equitably..................................12

        E.      The Remaining Eleventh Circuit Factors Strongly Support Final
                Approval ........................................................................13

                1.      The Stage of Proceedings at Which Settlement was Achieved ..........13

                2.      The Substance and Amount of Opposition to the Settlement
                        Favors Final Approval of the Settlement .............................................13

V.      THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED……………...14

VI.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS………....14

VII.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE……………….....15

VIII.   CONCLUSION……………………………………………………………………17

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Access Now, Inc. v. Claire's Stores, Inc.*,
  2002 WL 1162422 (S.D. Fla. May 7, 2002) ....................................................... 14

*Atkinson v. Wal-Mart Stores, Inc.*,
  2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)................................................... 11

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)............................................................................. 15

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................................... *passim*

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ............................................................................ 4

*Carpenters Health & Welfare Fund v. The Coca-Cola Co.*,
  2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) .................................................... 8

*City of Omaha Police & Fire Ret Sys. v. LHC Grp.*,
  2015 WL 965693 (W.D. Lo. March 2, 2015) .................................................... 17

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ................................................... 11

*Francisco v. Numismatic Guar. Corp.*,
  2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ...................................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)............................................................................................. 8

*Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) .................................................. 13

*IBEW v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................................ 7

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................... 15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................................. 10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .................................................................. 12

*In re Catalina Mktg. Corp. Sec. Litig.*,
   2007 WL 9723529 (M.D. Fla. July 9, 2007) ................................................................... 17

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011) ...................................................................................... 6

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................................... 8

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ..................................................................................... 12, 15

*In re China Med. Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ................................................................... 6

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ......................................................................................... 13

*In re Healthsouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) ................................................................................ 12

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................................ 17

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................... 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................. 9, 15

*In re Mut. Funds Inv. Litig.*,
   2010 WL 2342413 (D. Md. May 19, 2010) .................................................................... 15

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ......................................................................................... 3

*In re OCA, Inc. Sec. & Deriv. Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) ............................................................... 10, 13

iii

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 9

*In re Rayonier Inc. Sec. Litig.*,
   2017 WL 4535984 (M.D. Fla. Oct. 5, 2017) ..................................................... 15

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ........................................................................... 3

*In re: Checking Account Overdraft Litig.*,
   2013 WL 11319392 (S.D. Fla. Aug. 5, 2013) ................................................... 8

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................... 6

*Monroe Cty. Emps.' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) ...................................................................... 5

*Morgan v. Public Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................. 6

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) .................................................................. 11

*Pritchard v. APYX Med. Corp.*,
   2020 WL 6940765 (M.D. Fla. Nov. 6, 2020) ................................................... 13

*Reyes v. AT&T Mobility Servs., LLC*,
   2013 WL 12219252 (S.D. Fla. June 21, 2013) ................................................ 11

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................ 9

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014) ................................................................... 6, 7

*Snyder v. Ocwen Loan Servicing, LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) .................................................... 6

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005) ..................................................................... 8

*Swinton v. SquareTrade, Inc.*,
   2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ................................................... 4

*Too v. Rockwell Medical, Inc.*,
    2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020)....................................................... 17

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ..................................................................... 10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ............................................................................ 13

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ......................................................................... 11

<u>STATUTES</u>

15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4) .................................................................. 12

<u>RULES</u>

Fed. R. Civ. P. 23 ........................................................................................ *passim*

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Candido Rodriguez and additional plaintiffs John K. Allen, on behalf of the Joseph M. Driscoll Trust, and Alexander C. Takian (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submits this unopposed motion for: (1) final approval of the proposed settlement resolving the Action in exchange for payment of $1.725 million in cash for the benefit of the Settlement Class (the "Settlement"), and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[1]

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Parties have reached an agreement to settle this Action in exchange for a non-reversionary $1,725,000 all cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class.  This is a favorable result for the Settlement Class, and it is both substantively and procedurally fair.

Substantively, Plaintiffs' damages expert estimates that if Plaintiffs overcame all of the obstacles to establishing liability, and completely prevailed on all of their loss causation and damages theories, the $1.725 million settlement would equate to approximately 15.1% of the total *maximum* damages *potentially* available in this Action.  However, Defendants raised credible arguments that the fall in stock price following certain of the alleged disclosures quickly recovered and that the stock price rose following more pertinent disclosures.[2]  If Defendants had succeeded on these loss causation arguments, it would have significantly reduced—if not eliminated—the total amount of potential damages.  A recovery of at least 15.1% of maximum damages is a very good result for the Settlement Class.  In fact, it exceeds the average recovery in similar situations.

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation") (ECF No. 122-1), or in the concurrently filed Declaration of Leanne H. Solish in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Solish Declaration").  Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Solish Declaration.

[2] Defendants are Paul Antonio Pereira ("Pereira"), Dennis McIntosh ("McIntosh"), John M. Cook, II, Peter Bordes, Jim Lee, Justin Elkouri, Allison Ficken, and Frank Smith (collectively, the "Individual Defendants"), and Kingswood Capital Markets, a division of Benchmark Investments, LLC (f/k/a Benchmark Investments, Inc.), Revere Securities LLC, and WestPark Capital, Inc. (collectively, the "Underwriter Defendants").

*See* Solish Decl., Ex. 5 (Laarni T. Bulan and Laura E. Simmons, "Securities Class Action Settlements: 2022 Review and Analysis," at p. 6 Figure 5 (Cornerstone Research 2023) ("Cornerstone Report") (median recovery in securities class actions in 2022 was 11.1% in cases alleging less than $25 million in damages, and 3.6% overall for all securities class actions)).  The recovery is all the more favorable given the very real ability to pay issues that are present in this case.  For these reasons, and as further discussed herein and in the Solish Declaration, the Settlement is substantively fair.

The Settlement also is procedurally fair.  By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Plaintiffs' Counsel, *inter alia*:

- conducted a detailed and substantive investigation of Defendants and the fraudulent misrepresentations and omissions alleged in the Action, which included: (i) review and analysis of Alfi, Inc.'s ("Alfi" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, transcripts of Alfi's investor calls, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Alfi, and publicly available documents, reports, announcements, and news articles concerning Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; (iii) consultation with an expert in market efficiency, loss causation, and damages; and (iv) consultation with an accounting expert regarding Alfi's restatement of certain financial results;

- prepared and filed the initial complaint in *Kleinschmidt v. Alfi, Inc.*, Case No. 1:21-cv-24338 (ECF No. 1) and the comprehensive and factually detailed 75-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 82) incorporating the foregoing research and investigation efforts;

- filed briefs opposing Defendants' ***three*** motions to dismiss the Complaint (ECF Nos. 105-107);

- hired and consulted with bankruptcy counsel after Alfi filed a voluntary bankruptcy petition, captioned *In re: Alfi, Inc.*, Case No. 22-10979 (KBO) (Bankr. D. Del.), and filed a proof of claim based upon the causes of action alleged in this Action; and

- engaged in an adversarial mediation process and extensive settlement negotiations, which involved: (i) preparing a detailed mediation statement addressing liability, loss causation, and damages, along with exhibits; (ii) reviewing and analyzing Defendants' three mediation statements as well as the mediation statement submitted on behalf of the trustee of Alfi's bankruptcy estate; and (iii) participating in a full-day mediation session with an experienced and highly respected mediator, Jed D. Melnick, Esq. of

JAMS, where the Parties and counsel for the D&O insurance carrier engaged in full and frank discussions concerning the merits of the Action.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below, Plaintiffs and their counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Consequently, Plaintiffs respectfully request that the Court grant the Settlement final approval.

Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiffs' consulting damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. No Settlement Class Member is favored over another under the proposed Plan; rather, all Settlement Class Members—including Plaintiffs—are treated in the same manner. *See* Ex. 1-D at ¶¶44-66. The Plan of Allocation is, therefore, fair and reasonable and, as such, it too should be approved.

## II.   OVERVIEW OF THE LITIGATION

The Solish Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action, and the nature of the claims asserted (¶¶14-27); the negotiations leading to the Settlement (¶¶28-35); the risks and uncertainties of continued litigation (¶¶36-59); and the terms of the Plan of Allocation of the Net Settlement Fund. ¶¶69-78.

## III.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class-wide basis. The standard for determining whether to grant final approval of a class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). Courts within this Circuit recognize that "public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).[3] "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d

---

[3] All emphasis is added and all internal citations and quotations are omitted.

1088, 1105 (5th Cir. 1977).[4]

Rule 23(e)(2) requires courts to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)     have the class representatives and class counsel adequately represented the class;

(B)     was the proposal negotiated at arm's-length;

(C)     is the relief provided for the class adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     does the proposal treat class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at 918. For this reason, the traditional Eleventh Circuit factors in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), for evaluating whether a class action settlement is fair, reasonable, and adequate under Rule 23—certain of which overlap with Rule 23(e)(2)—are still relevant to the analysis. *See Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The Court will therefore consider the Rule 23(e)(2) factors along with the factors developed by courts in the Eighth Circuit."). The *Bennett* factors are:

(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

As discussed below, application of the factors set forth in Rule 23(e)(2), and the relevant, non-duplicative Eleventh Circuit factors, confirm that the Settlement merits final approval.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Plaintiffs and Plaintiffs' Counsel adequately represented the Settlement Class.

Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and they have no antagonistic interests. Indeed, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *See Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019) (finding adequacy where "[p]laintiffs' interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests of absent Class members"). Plaintiffs have also contributed significantly to the Action by overseeing the litigation, communicating regularly with counsel, reviewing pleadings, producing documents to Plaintiffs' Counsel with respect to their transactions in Alfi Securities, and participating in settlement discussions with Plaintiffs' Counsel.

In addition, Plaintiffs retained counsel who are highly experienced in securities litigation (*see* Ex. 6-C, 7-C, 8-C (Plaintiffs' Counsel's firm résumés)) and who have vigorously prosecuted Plaintiffs' claims. As set forth in the Solish Declaration, Plaintiffs' Counsel, among other things: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) drafted the comprehensive and factually detailed 75-page operative Complaint; (iii) opposed Defendants' three motions to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) identified, retained and worked with accounting, loss causation and damages experts; (v) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected neutral; (vi) engaged in negotiations regarding the terms of the proposed Settlement; (vii) prepared the initial draft of the Stipulation and supporting documents; and (viii) worked with Plaintiffs' consulting damages experts to craft the Plan of Allocation. ¶¶10, 18-33, 71. Consequently, this factor supports final approval.

5

Based on the foregoing, it is clear that Plaintiffs and their counsel adequately represented the Settlement Class. *See Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (finding adequacy of representation of the class under 23(e)(2)(A) where named plaintiffs "participated in the case diligently" and class counsel "fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative").

### B.   The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." "The Court must consider whether there is any evidence the settlement was the product of collusion, by examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). "Moreover, the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016).

As noted above, the proposed Settlement was achieved only after an all-day mediation session overseen by Mr. Melnick. As part of those discussions, the Parties prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. The negotiations focused on heavily disputed issues, which were explored in-depth. ¶¶30-32. Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect." *Public Storage*, 301 F. Supp. 3d at 1248. Accordingly, this factor weighs in favor of final approval. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

### C.   The Relief Provided for the Settlement Class is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant

factors.  Fed. R. Civ. P. 23(e)(2)(C).

**1.      The Settlement Amount is Within the Range of Reasonableness**

The $1,725,000 non-reversionary Settlement Amount is well within the range of reasonableness to warrant final approval.[5]  Here, Plaintiffs' consulting damages expert estimates that if Plaintiffs had ***fully prevailed*** at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $11.44 million.  Thus, the $1,725,000 Settlement Amount represents approximately 15.1% of the total ***maximum*** damages ***potentially*** available.  Conversely, if Defendants' arguments in their motions to dismiss were accepted by the trier of fact, the maximum recoverable damages would have been drastically reduced, if not eliminated.  A recovery of 15.1% is above the average recovery in similar situations.  *See* Ex. 5 (Cornerstone Report, at p. 6 Figure 5 (median recovery in securities class actions in 2022 was 11.1% in cases alleging less than $25 million in damages, and 3.6% overall for all securities class actions)); *see also IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

Moreover, this Action had serious ability to pay risks.  Alfi filed for bankruptcy protection under Chapter 7 in October 2022, and while D&O insurance was available to finance the defense of this lawsuit and Settlement on behalf of the Individual Defendants, the insurance was wasting.  The cost of defending: (i) this Action; (ii) claims asserted by Alfi's bankruptcy trustee; and (iii) the SEC's investigation into the Company and its executives; would have rapidly depleted the D&O insurance, assuming of course, that the carriers did not disclaim coverage.  Thus, the single most certain source for Plaintiffs to obtain a monetary recovery was at risk had the Action not settled.

In light of these risks, among others, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of final approval.

---

[5] Similarly, the second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate.  *Bennett*, 737 F.2d at 986.  These factors are "easily combined." *Chase Bank*, 297 F.R.D. at 693.

### 2.      The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal."[6]  The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (court need not determine if settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.").

Here, there is no question that continued litigation would have been costly, risky, and protracted.  Courts have repeatedly noted that "[s]tockholder litigation is notably difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008).  Indeed, Plaintiffs would have to prevail on the pending motions to dismiss, obtain class certification, and ***prove*** their claims.  Overcoming these hurdles would be no small task, and Plaintiffs and Plaintiffs' Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.  These risks were magnified by Alfi's filing for bankruptcy, which adds another layer of complexity, including expense for the Settlement Class in representing their claims in the Bankruptcy Action, and creates substantial obstacles for discovery, such as Alfi's ability to respond to propounded discovery and/or subpoenas as a dissolved entity.

While Plaintiffs and Plaintiffs' Counsel are confident that the Settlement Class meets the requirements for certification (*see* ECF No. 121 (Preliminary Approval Motion) at § IV), the class had not been certified at the time of settlement, and Plaintiffs are aware there is a risk the Court could disagree, or that the class period could be shortened based on decisions related to falsity, scienter, and/or loss causation.  *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("defendants must be afforded an opportunity before class certification to defeat

---

[6] Similarly, the first and fourth *Bennett* factors look at "the likelihood of success at trial," and "the complexity, expense and duration of litigation," respectively.  *Bennett*, 737 F.2d at 986; *see also In re: Checking Account Overdraft Litig.*, 2013 WL 11319392, at *8 (S.D. Fla. Aug. 5, 2013) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

the [fraud-on-the-market] presumption [of reliance] through evidence that an alleged misrepresentation did not actually affect the market price of the stock."). Had Plaintiffs failed to obtain class certification, or the proposed class period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. Moreover, assuming class certification was achieved, the Court could revisit certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Furthermore, there was a substantial risk that Plaintiffs would be unable to prove their claims. At the time the Settlement was reached, the Court had not ruled on the Defendants' motions to dismiss. While Plaintiffs believe they had effectively ***plead*** that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued that their statements were not materially false and misleading and/or were inactionable statements as a matter of law. Additionally, Defendants Pereira and McIntosh contend that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Defendants also made a number of loss causation arguments that, if accepted, would have severely reduced, if not eliminated, the amount of potentially recoverable damages.

Had the Action continued, Defendants would have no doubt argued at summary judgment and trial that the evidence demonstrated that their public statements did not contain any material misstatements or omissions, that Plaintiffs could not have proven scienter, that Defendants were exempt from Securities Act liability for "expertised" portions of the registration statement, and that Plaintiffs and the Settlement Class suffered no damages. Plaintiffs would have to prevail on all of these issues at trial, as well as the inevitable appeals that would follow, before they recovered anything. And, of course, the ultimate outcome—many years in the future—would remain uncertain. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury

9

verdit of $81 million for plaintiffs).[7]

Finally, given, among other the things, the extensive discovery necessary to prove the case, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement").

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $1.725 million Settlement, or, if they did, that they would be able to collect upon it. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3. Other Factors Established by Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (2) "the terms of any proposed award of attorneys' fees, including timing of payment," and (3) "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors militates in favor of the Settlement's final approval or is neutral.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS")—the Claims Administrator selected by Plaintiffs' Counsel subject to Court approval—will process claims under the guidance of Plaintiffs' Counsel, provide

---

[7] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

claimants with an opportunity to cure any deficiency in their claim or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, after submission and Court-approval of Plaintiffs' distribution motion.  This type of claims processing is standard in securities class action settlements and it is effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

     *Second*, Plaintiffs' Counsel is applying for a percentage of the common fund fee award in the amount of 33⅓% to compensate Plaintiffs' Counsel for their services rendered on behalf of the Settlement Class.  As discussed in detail in the accompanying memorandum in support of Plaintiffs' Counsel's request for award of attorneys' fees and reimbursement of Litigation Expense, the proposed fee award of 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the substantial work and efforts of Plaintiffs' Counsel, the risks that they faced in the litigation, the results achieved, and awards in similar complex cases.  *See, e.g.*, *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.");  *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (awarding "customary fee" of 33.3% of $2,020,000; *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming 33⅓% award of $40 million).[9]

     *Third*, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* ECF 122-1 (Stipulation) at ¶13.

[9] *See also* Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% of $25 million and stating, "[c]ourts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund") (citing cases).

Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

        **D.**       **All Settlement Class Members Are Treated Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D); *see also In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (standard for approval of a plan of allocation is the same as approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties.").

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Plaintiffs' Counsel, is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. 1-D (Notice), at ¶¶44-66. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss Amount for each Settlement Class Member's Settlement Class Period transactions. *Id.*

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the Alfi Securities were purchased and sold, the type of Alfi Securities purchased or sold, the purchase and sale price of the Alfi Securities, and the estimated artificial inflation in the price of the Alfi Securities at the time of purchase or sale as determined by Plaintiffs' damages expert. The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis based on the relative size of their Recognized Loss(es). Because the Plan of Allocation does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Plaintiffs, this factor supports final approval of the proposed Settlement.[10] *See, e.g.,*

---

[10] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §§ 78u-

*In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 (M.D. Fla. Mar. 23, 2021) (approving similar plan of allocation and stating that "Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation"); *see also Pritchard v. APYX Med. Corp.*, 2020 WL 6940765, at *1-2 (M.D. Fla. Nov. 6, 2020) (approving similar plan of allocation).

      **E.**    **The Remaining Eleventh Circuit Factors Strongly Support Final Approval**

          **1.**    **The Stage of Proceedings at Which Settlement was Achieved**

Courts also consider "the stage of proceedings at which settlement was achieved." *Bennett*, 737 F.2d at 986. In weighing this *Bennett* factor, a Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted. *Francisco v. Numismatic Guar. Corp.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008). "[F]ormal discovery [is not] a necessary ticket to the bargaining table" (*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)), and courts have rejected the notion that such discovery must take place. *See, e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts").

Here, "[b]ecause the PSLRA prohibits formal discovery during the pendency of any motion to dismiss, the parties were prohibited from engaging in formal discovery until the Court ruled on defendants' motion to dismiss ...." *OCA*, 2009 WL 512081, at *12. Nevertheless, as discussed in detail above, Plaintiffs and their counsel obtained a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement. Consequently, "[Plaintiffs'] Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Numismatic Guaranty Corp.*, 2008 WL 649124, at *11.

          **2.**    **The Substance and Amount of Opposition to the Settlement Favors Final Approval of the Settlement**

While the deadline to file objections is February 13, 2024, to date, no objections to the Settlement or Plan of Allocation have been received. ¶¶5, 68, 78. Such a favorable reaction of the

_____

4(a)(4), 77z-1(a)(4).

Settlement Class to the Settlement also supports its approval. *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement"). Plaintiffs will file reply papers by February 27, 2024 addressing any objections or exclusions that may be received.

*    *    *

Accordingly, each of these factors favors approval of the Settlement.

## V.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's October 31, 2023 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 127, ¶¶1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Motion (*see* ECF No. 121, at § IV), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VI.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in the Preliminary Approval Order, and Plaintiffs executed the notice program in accordance with the provisions therein. ¶¶60-67. Notice was given to potential Settlement Class Members via Postcard Notice, the Settlement Website (www.strategicclaims.net/Alfi/), and publication.[11]  ¶¶61-67. As of January 22, 2024, either a copy of the Postcard Notice was timely mailed or a link to the Notice and Claim Form was emailed to 96,769 potential Settlement Class Members. Craig Decl. at ¶9.

On December 11, 2023, the Court-approved Summary Notice was published in *Investors' Business Daily* and transmitted once over the *PR Newswire*. ¶66; Craig Decl. ¶11 & Ex. E. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See* Craig Decl. at Ex. E.

Finally, the Claims Administrator posted the Notice, Claim Form, Stipulation, Complaint and other relevant documents online at the Settlement Website, and provided a toll-free telephone

---

[11] The Settlement Website was established on November 17, 2023. Ex. 1 (Declaration of Margery Craig Concerning: (A) Mailing of CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections, the "Craig Decl.," ("Craig Decl.")) at ¶13. From this website, potential Settlement Class Members can, *inter alia*, download copies of the Notice and Claim Form and submit claims online. ¶¶61, 67.

14

number for Settlement Class Members to call with any questions concerning the Settlement.  ¶67; Craig Decl. ¶¶12-13.  Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23.  *See Murdeshwar v. SearchMedia Holdings Ltd., et al.*, Partial Final Judgment and Order Approving Partial Settlement and Partially Dismissing the Action with Prejudice, Case No. 1:11-cv-20549-KMW, ECF No. 103 (S.D. Fla April 25, 2012) (approving combination of postcard notice, summary notice and detailed notice online); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical"); *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 182-83 n.3 (S.D.N.Y. 2014) (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.").

## VII.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In the Preliminary Approval Order, the Court approved the Notice, which contains the Plan of Allocation.  Plaintiffs now request final approval of the Plan of Allocation.  Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole—the plan must be fair, adequate, and reasonable.  *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4535984, at *1 (M.D. Fla. Oct. 5, 2017); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").  And, district courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website.  Craig Decl., Ex. D (Notice), at ¶¶44-66.  Plaintiffs' Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages consultant with the objective of equitably distributing the Net Settlement Fund to Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The computations under the Plan of Allocation are a method to weigh the Claims of Authorized Claimants against one another for the purposes

15

of making *pro rata* allocations of the Net Settlement Fund. ¶¶70-77.

Under the Plan of Allocation, a Claimant's Recognized Claim is calculated based on the estimated alleged artificial inflation in the price of their Alfi Securities during the Settlement Class Period, as determined by Plaintiffs' consulting damages expert. Plaintiffs' consulting damages expert reviewed publicly available information regarding Alfi and performed statistical analyses of the price movements of Alfi Securities relative to the price performance of market and peer indices during the Settlement Class Period. From this data, she calculated the alleged artificial inflation by isolating the losses in Alfi Securities that resulted from the alleged violations of the federal securities laws, eliminating losses attributable to market factors, industry factors, or alleged Company-specific factors unrelated to the alleged violations of law. The amount of artificial inflation in Alfi common stock and warrants on each day of the Settlement Class Period is set forth in Table 1 in the Notice. *See* Craig Decl., Ex. D (Notice), at ¶48.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or other acquisition of Alfi Securities during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation will be based on several factors, including when the Alfi Securities were purchased and sold, the type of Alfi Securities purchased or sold, the purchase and sale price of the Alfi Securities, and the estimated artificial inflation in the price of the Alfi Securities at the time of the purchase or sale of the Alfi Securities.[12] If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Alfi Securities during the Settlement Class Period, or if the Claimant purchased Alfi Securities during the Settlement Class Period, but did not hold any of those Alfi Securities through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be

---

[12] For those Settlement Class Members that purchased Alfi Securities pursuant to or traceable to the Offering, the Recognized Loss Amount for shares of Alfi common stock eligible for a recovery under both the Exchange Act and the Securities Act will be the maximum of: (i) the Recognized Loss Amount calculated under the Exchange Act; or (ii) the Recognized Loss Amount calculated under the Securities Act. The Recognized Loss Amount for Alfi warrants eligible for a recovery under both the Exchange Act and the Securities Act will be the Recognized Loss Amount calculated under the Exchange Act. *See* Notice at ¶49. Plaintiffs' consulting damages expert has determined that the Recognized Loss Amount calculated under the Exchange Act would exceed any recognized loss amount calculated in accordance with the Securities Act for all Alfi warrants eligible for both claims. *Id*. at n.9.

16

zero, as any loss suffered would not have been caused by the revelation of the alleged fraud.  ¶75.

In general, the Recognized Loss Amount will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sale price, whichever is less.  With respect to the Exchange Act claims, the Recognized Loss Amount also incorporates the "90-day look back" provision of the PSLRA.  *See* Notice at ¶¶50, 52-53.  With respect to the Securities Act claims, the Recognized Loss Amount is limited to the price at which the Alfi Securities were offered to the public.[13]  The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims, subject to a $10 *de minimis* provision.  *See* Notice at ¶¶57, 64-65.

Plaintiffs' Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action.  *See City of Omaha Police & Fire Ret Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. Lo. March 2, 2015) (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses."); *Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (approving substantially similar plan of allocation).  Moreover, to date, no Settlement Class Members have objected to the Plan of Allocation.  *See In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007) (finding that no objections supports approval of the plan of allocation); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").  The Court should, therefore, approve the Plan of Allocation.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the

---

[13] The price at which the Alfi Securities were offered to the public is estimated based on the first observable trading price on the first day of trading on the Nasdaq (*i.e.*, May 4, 2021).  In addition, for Alfi Securities not disposed of during the Settlement Class Period, the price at which such security shall have been disposed of is based on the price of the Alfi Securities as of the time the Securities Act suit was brought (*i.e.*, December 2, 2021).  *See* Notice at ¶54.

proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class for the purposes of settlement.[14]

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Plaintiffs' Counsel has conferred with Defendants' Counsel regarding the requested relief, and Defendants do not oppose Plaintiffs' motion.

Dated:  January 30, 2024

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Adam D. Warden*
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Lead Plaintiff and*
*Local Counsel for the Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Joseph D. Cohen (pro hac vice)
Leanne H. Solish (pro hac vice)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcohen@glancylaw.com
lsolish@glancylaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Settlement Class*

---

[14] A proposed Final Judgment and Order of Dismissal with Prejudice and a proposed Order Approving Plan of Allocation will be submitted with Plaintiffs' reply papers on February 27, 2024, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq. (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
lrosen@rosenlegal.com
pkim@rosenlegal.com
skim@rosenlegal.com

*Counsel for Plaintiff John K. Allen,*
*on behalf of the Joseph M. Driscoll Trust and*
*Plaintiff Alexander C. Takian*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Plaintiffs hereby certifies that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  January 30, 2024

*/s/ Adam D. Warden*
Adam D. Warden