**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,<br><br>Defendants. | Case No. 1:21-cv-24232-KMW |

**PLAINTIFFS' COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES, AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'FEES FROM THE $1,725,000 SETTLEMENT FUND .................... 3

III.    A FEE AWARD OF 33⅓% OF THE SETTLEMENT FUND IS FAIR AND REASONABLE IN THIS CASE.................................................................. 4

    A.    The Requested 33⅓% Fee Is Reasonable Under the *Camden I* Factors ........... 4

        1.    The Time and Labor Expended Supports the Requested Fee ............... 4

        2.    The Novelty and Difficulty of the Issues Involved.............................. 7

        3.    The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys ........................ 11

        4.    The Preclusion of Other Employment ................................................ 12

        5.    The Requested Fee Is Customary for a Case Such as This One ......... 12

        6.    Plaintiffs' Counsel Assumed Substantial Risk and Pursued This Case on a Pure Contingency Basis ...................................................... 13

        7.    Time Limitations/Nature and Length of Attorney-Client Relationship ...................................................................................... 14

        8.    The Amount Involved and Results Obtained...................................... 14

        9.    The Undesirability of the Case ........................................................... 15

        10.    Awards in Similar Cases Support a Fee Award of 33⅓% of the Settlement Fund .................................................................................. 16

        11.    Lead Plaintiff Has Approved the Requested Fee ............................... 17

        12.    The Settlement Class's Reaction Also Supports the Requested Fee .. 18

IV.    THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.................................... 18

V.    THE COURT SHOULD GRANT PLAINTIFFS' PSLRA AWARD REQUESTS... 19

VI.    CONCLUSION.................................................................................................. 20

## TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ........................................................................................ 1

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................................ 3

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ...................................................................................................... 2

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) .................................................................................... 14

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................... 13, 18

*Bell v. Pension Committee of ATH Holding Co., LLC*,
  2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ............................................................... 2

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................................... 3

*Cabot East Broward 2 LLC v. Cabot*,
  2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) .......................................................... 4, 17

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ..................................................................... 3, 4, 11, 16

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................................................. 9

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................................. 11

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978) .................................................................................. 7

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ................................................ 7, 12, 17

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ................................................................................ 11

*David v. Am. Suzuki Motor Corp.*,
2010 WL 1628362 (S.D. Fla. April 15, 2010) .................................................................. 11

*Desue v. 20/20 Eye Care Network, Inc.*,
2023 WL 4420348 (S.D. Fla. July 8, 2023) ..................................................................... 7

*Dowdell v. City of Apopka*,
698 F.2d 1181 (11th Cir. 1983) ...................................................................................... 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................................................... 9

*Edmonds v. U.S.*,
658 F. Supp. 1126 (D.S.C. 1987) ................................................................................... 11

*Elkins v. Equitable Life Ins. of Iowa*,
1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ................................................................... 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................................................... 15

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc*.,
2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ................................................... 12, 16, 17

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ..................................................................... 9

*Garst v. Franklin Life Ins. Co*.,
1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) ............................................... 4

*Gevaerts v. TD Bank*,
2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ................................................................. 19

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
2019 WL 2249941 (S.D. Fla. May 24, 2019) ............................................................... 17

*Gross v. GFI Group, Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y., 2018) .......................................................................... 13

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................................... 20

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ....................................................................................................... 10

iii

*Hanley v. Tampa Bay Sports & Ent. LLC*,
   2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) .......................................................... 16

*Health Ins. Innovations Sec. Litig.*,
   2021 WL 1341881 (M.D. Fla. March 23, 2021) ...................................... 7, 15, 19, 20

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................................... 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................. 14

*IBEW v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................................ 15

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................ 14

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................ 8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................................... 10, 14

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................... 10

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ....................................................................... 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..................................................................................... 10

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................................... 4

*In re Dell Inc.*,
   2010 WL 2371834 (W.D. Tex. June 11, 2010) ................................................. 14, 15

*In re Enron Corp.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ....................................................................... 6

*In re Flowers Foods, Inc. Sec. Litig.*,
   2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) .................................................. 17, 20

iv

*In re King Res. Co. Sec. Litig.*,
 420 F. Supp. 610 (D. Colo. 1976)......................................................................................... 8

*In re Marsh & McLennan Cos. Sec. Litig.*,
 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................................... 20

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................ 11

*In re NetBank, Inc. Sec. Litig.*,
 2011 WL 13353222 (N.D. Ga. Nov. 8, 2011) ................................................................... 2, 7

*In re Ocean Power Tech., Inc., Sec. Litig.*,
 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................................................................ 16

*In re Priceline.com, Inc. Sec. Litig.*,
 2007 WL 2115592 (D. Conn. July 20, 2007) ....................................................................... 3

*In re Remeron End-Payor Antitrust Litig.*,
 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ........................................................................ 19

*In re Sterling Fin. Corp. Sec. Class Action*,
 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ...................................................................... 8

*In re Sunbeam Sec. Litig.*,
 176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................................................. 12

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
 364 F. Supp. 2d 980 (D. Minn. 2005)................................................................................. 14

*In re: Managed Care Litig. v. Aetna*,
 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)................................................................... 17

*Ingram v. The Coca-Cola Co.*,
 200 F.R.D. 685 (N.D. Ga. 2001)........................................................................................... 7

*Johnson v. Georgia Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ............................................................................................... 4

*Johnson v. NPAS Sols., LLC*,
 2020 WL 5553312 (11th Cir. Sept. 17, 2020) ................................................................... 19

*Jones v. Diamond*,
 636 F.2d 1364 (5th Cir. 1981) ........................................................................................... 13

*Jorling v. Anthem, Inc.*,
836 F. Supp. 2d 821 (S.D. Ind. 2011) ................................................................. 9

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ............................................................................. 7

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ................................................................. 6, 7

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ......................................................................................... 6

*Morgan v. Public Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) ......................................................... 12, 16

*Pinto v. Princess Cruise Lines Ltd.*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................... 7, 12, 13

*Pritchard v. APYX Medical Corp.*,
2020 WL 6937821 (M.D. Fla. Nov. 18, 2020) ................................................... 19

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) .............................................................. 8, 14, 18

*Reyes* v. *AT&T Mobility Servs., LLC*,
2013 WL 12219252 (S.D. Fla. June 21, 2013) ................................................... 16

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ........................................................................ 14

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Jan. 13, 2006) ................................................ 12, 16

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................................. 17

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ............................................................................ 16

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ................................................. 7, 20

*Varljen v. H.J. Meyers & Co., Inc.*,
2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...................................................... 20

*Waters v. Cook's Pest Control, Inc.*,
2012 WL 2923542 (N.D. Ala. July 17, 2012) .......................................................................... 12

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ...................................................................................... 6, 17

*Wolff v. Cash 4 Titles*,
2012 WL 5290155 (S.D. Fla Sept. 26, 2012) ...................................................................... 13, 17

STATUTES

11 U.S.C. §§ 101.............................................................................................................. 11

15 U.S.C. § 77k(e) ........................................................................................................... 10

15 U.S.C. § 78u-4(a)(6) ...................................................................................................... 3

15 U.S.C. §§ 77z-1(a)(4)................................................................................................... 19

Plaintiffs' Counsel[1] respectfully moves for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (or $575,000, plus interest at the same rate as the Settlement Fund). Plaintiffs' Counsel also seek reimbursement of $102,597.91 in litigation-related expenses, as well as a total of $4,500 (or $1,500 each) for Court-appointed Lead Plaintiff Candido Rodriguez, plaintiff John K. Allen, on behalf of the Joseph M. Driscoll Trust, and plaintiff Alexander C. Takian (collectively, "Plaintiffs"), as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## MEMORANDUM OF LAW

### I.      INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $1,725,000 in exchange for the resolution of the Action, represents an extremely favorable result for the Settlement Class, particularly when juxtaposed against the significant obstacles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this case, Plaintiffs' Counsel faced numerous challenges to establishing liability, loss causation, and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Plaintiffs' Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel under the PSLRA's heightened pleading standard and automatic stay of discovery.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[2]  Despite these risks, Plaintiffs' Counsel collectively worked over 1,273.25 hours over the course of more than two years, and advanced $102,597.91 in hard costs, all on a fully contingent basis, with no guarantee

---

[1] Plaintiffs' Counsel consists of Lead Counsel, Glancy Prongay & Murray LLP ("Lead Counsel"); Liaison Counsel, Saxena White P.A.; and additional counsel for Plaintiffs, The Rosen Law Firm, P.A. and The Law Offices of Frank R. Cruz.  Unless otherwise defined herein, all capitalized terms are defined in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation") (ECF No. 122-1), or in the concurrently filed Declaration of Leanne H. Solish in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Solish Declaration").  Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Solish Declaration.

[2] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

of ever being compensated.  The work performed by Plaintiffs' Counsel is summarized below (*see* § II.A.1, *infra*) and set forth in detail in the Solish Declaration.[3]

Plaintiffs' Counsel respectfully request a fee award in the amount of 33⅓% of the Settlement Fund as compensation for their significant efforts and achievements on behalf of the Settlement Class.  The requested fee is consistent with attorney-fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar.  Indeed, the requested fee represents a fractional (or negative) multiplier of 0.63 on Plaintiffs' Counsel's lodestar, which itself is a strong indication of the reasonableness of the requested fee.  *See In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 8, 2011) (lodestar/multiplier "cross-check that yields a negative multiplier … further confirms that the awarded [percentage] fee is wholly proper.").

Plaintiffs' Counsel also seek reimbursement of $102,597.91 in out-of-pocket litigation expenses incurred in prosecuting this Action.  *See* ¶¶97-102.  The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action.  Accordingly, they should be approved.

Finally, each Plaintiff respectfully requests a PSLRA award of $1,500 to compensate them for the time and effort they expended on behalf of the Settlement Class.  Exs. 2-4.  Each Plaintiff familiarized himself with the facts of the case, reviewed relevant pleadings, conferred with Plaintiffs' Counsel about the litigation, collected and produced relevant documents to their Counsel, and authorized Plaintiffs' Counsel to settle the case.  *See* Ex. 2 ("Rodriguez Decl.") at ¶¶3-5; Ex. 3 ("Allen Decl.") at ¶4; Ex. 4 ("Takian Decl.") at ¶4.  But for their efforts, the Settlement Class would have recovered nothing.  *See Bell v. Pension Committee of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [Plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible."); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and [the Supreme] Court … have recognized that meritorious private actions to enforce

---

[3] The Solish Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a history of the Action (¶¶14-35); summary of the work performed by Plaintiffs' Counsel (¶¶10, 18-35); and additional information on the factors that support this fee request (¶¶36-59), including the lodestar cross-check (¶¶83-87).

2

federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions.").

For the reasons set forth herein, and in the Solish Declaration, Plaintiffs' Counsel respectfully request that the Court award Plaintiffs' Counsel 33⅓% of the Settlement Fund, approve reimbursement of $102,597.91 in litigation-related expenses, and grant PSLRA awards to Plaintiffs Rodriguez, Allen, and Takian in the aggregate amount of $4,500.

## II. PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE $1,725,000 SETTLEMENT FUND

The Supreme Court and the Eleventh Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and prevent unjust enrichment of persons who benefit from a lawsuit without bearing its cost. *See Boeing*, 444 U.S. at 478. Courts have also recognized that, in addition to providing just compensation, fee awards serve to "encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis," and "perpetuate the availability of skilled counsel for future cases of this nature." *In re Priceline.com, Inc. Sec. Litig*., 2007 WL 2115592, at *5 (D. Conn. July 20, 2007).[4]

In *Camden I*, the Eleventh Circuit announced the rule that "attorneys' fees awarded from a common fund ***shall*** be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. This approach is consistent with the PSLRA. 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

A percentage-based fee award accomplishes several objectives:

---

[4] *Accord Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006). ("Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.' … Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct.").

> First, it is consistent with the private marketplace where contingent fee attorneys are regularly compensated on a percentage of recovery method. Second, it provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances. Finally, the percentage approach reduces the burden [on] the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members.

*Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *83-*84 (N.D. Ala. June 25, 1999). These rationales support the percentage-based award requested by Plaintiffs' Counsel.

**III.   A FEE AWARD OF 33⅓% OF THE SETTLEMENT FUND IS FAIR AND REASONABLE IN THIS CASE**

**A.      The Requested 33⅓% Fee Is Reasonable Under the *Camden I* Factors**

In the Eleventh Circuit, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) (same). In application, this means that "the amount of any fee 'must be determined upon the facts of each case' after evaluating certain criteria." *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *1 (S.D. Fla. Nov. 9, 2018), quoting *Camden I*, 946 F.2d at 774-75. That criterion includes the 12 *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). *Camden I* also recognized that in awarding a percentage fee award, a court may properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel … and the economics involved in prosecuting a class action." *Id.* at 775.

### 1.      The Time and Labor Expended Supports the Requested Fee

The "time and labor" required confirms the reasonableness of the fee. *Camden I*, 946 F.2d at 772 n.3. As detailed herein and in the Solish Declaration, Plaintiffs' Counsel have litigated the Action for a little more than two years. ¶¶10, 18-35. In the course of the litigation, Plaintiffs'

Counsel, among other things:

- conducted a detailed and substantive investigation of Defendants and the fraudulent misrepresentations and omissions alleged in the Action, which included: (i) review and analysis of Alfi, Inc.'s ("Alfi" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, transcripts of Alfi's investor calls, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Alfi, and publicly available documents, reports, announcements, and news articles concerning Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; (iii) consultation with an expert in market efficiency, loss causation, and damages; and (iv) consultation with an accounting expert regarding Alfi's restatement of certain financial results;

- prepared and filed the initial complaint in *Kleinschmidt v. Alfi, Inc.*, Case No. 1:21-cv-24338 (ECF No. 1) and the comprehensive and factually detailed 75-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 82) incorporating the foregoing research and investigation efforts;

- filed briefs opposing Defendants' *three* motions to dismiss the Complaint (ECF Nos. 105-107);

- hired and consulted with bankruptcy counsel after Alfi filed a voluntary bankruptcy petition, captioned *In re: Alfi, Inc.*, Case No. 22-10979 (KBO) (Bankr. D. Del.), and filed a proof of claim based upon the causes of action alleged in this Action;

- engaged in an adversarial mediation process and extensive settlement negotiations, which involved: (i) preparing a detailed mediation statement addressing liability, loss causation, and damages, along with exhibits; (ii) reviewing and analyzing Defendants' three mediation statements as well as the mediation statement submitted on behalf of the trustee of Alfi's

5

bankruptcy estate; and (iii) participating in a full-day mediation session with an experienced and highly respected mediator, Jed D. Melnick, Esq. of JAMS, where the Parties and counsel for the D&O insurance carrier engaged in full and frank discussions concerning the merits of the Action;

- prepared the initial draft, and negotiated the terms, of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- negotiating with Defendants' Counsel and counsel for the bankruptcy trustee the terms of the settlement agreement between the Parties and the trustee for Alfi's bankruptcy estate in the Bankruptcy Action;

- worked with a consulting damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the preliminary approval motion and supporting papers;

- oversaw the implementation of the notice process; and

- drafted the final approval motion and supporting papers. ¶¶10, 18-35.

The efforts that were required to complete these tasks, as well as others, were extensive and represented a considerable risk, given the contingency-based nature of Plaintiffs' Counsel's representation. ¶¶36-56, 88-91. To date, Plaintiffs' Counsel have spent over 1,273.25 hours litigating this case. ¶83. Plaintiffs' Counsel have also incurred $102,597.91 in unreimbursed litigation expenses. ¶97. These numbers reflect Plaintiff's Counsel's commitment to vigorously pursuing this Action for the benefit of Plaintiffs and the Settlement Class.

Additionally, while not required by the Eleventh Circuit, an analysis of the requested fee utilizing the "lodestar/multiplier" approach as a cross-check, further supports the reasonableness of the requested fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Here, the cumulative time expended by Plaintiffs' Counsel, multiplied by current or 2023 rates,[5] results in a lodestar of $913,104.50. The

---

[5] Plaintiffs' Counsel's rates range from $785-1,175 per hour for partners, to $395-800 per hour for all other attorneys. ¶85. Courts use current rather than historic rates to "compensate for delay in receiving fees." *In re Enron Corp.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 700 (M.D. Ala. 1988) (court "should take into account the time value of money and the effects of

requested fee thus equates to a negative (or fractional) multiplier of 0.63 (*i.e.*, the requested fee is *less than* Plaintiff's Counsel's lodestar).[6]  Courts have routinely recognized that a fractional multiplier strongly supports a finding that the fee award is reasonable.  *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. March 23, 2021) (the "negative multiplier of 0.33" supports the reasonableness of the requested fee because, "[t]ypically, courts award a [positive] multiplier range of 2.5 to 4 in class actions"), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *Netbank*, 2011 WL 13353222, at *3 (fact that counsel recovered a fraction of their lodestar "further confirms that the awarded fee is wholly proper"); *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *10 (S.D. Fla. July 8, 2023) ("This negative multiplier supports the reasonableness of the fee request.").[7]

Accordingly, this factor supports the fee request.  *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8 (S.D. Fla. Oct. 17, 2016) (finding the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported counsel's fee request).

### 2.    The Novelty and Difficulty of the Issues Involved

Courts have repeatedly recognized that securities litigation is "notoriously difficult and unpredictable" (*Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)), and that "a securities case, by its very nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  Courts have

---

inflation and generally award compensation at current rates rather than historic rates."). Additionally, Plaintiffs' Counsel's rates are comparable to firms engaged in similar complex litigation (*see* Ex. 9), and Courts within this Circuit have consistently approved rates similar to Plaintiffs' Counsel's rates.  *See Finerman v. Marriott Ownership Resorts, Inc.*, No. 3:14-cv-01154-J-32MCR (M.D. Fla Aug. 15, 2018) (Dkt. No. 222) (approving *2018* rates of $950 for partners, $864 for associates); *Bishop v. Shorter Univ., Inc.*, No. 4:15-cv-00033 (N.D. Ga. Feb. 20, 2015) (Dkt. Nos. 91, 95) (approving *2015* rates as high as $950 per hour for partners).

[6] The multiplier is calculated by dividing the $575,000 fee request by the $913,104.50 in lodestar that Plaintiffs' Counsel incurred.

[7] *See also Mashburn*, 684 F. Supp. at 702 ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable."); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *accord Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741, at *36 (M.D. Fla. Jan. 27, 1998); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001).

also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes to the law. *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.  These challenges are exacerbated … where a number of controlling decisions have recently shed new light on the standard for loss causation.").  This case was no exception.  "The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 637 (D. Colo. 1976).

Throughout this litigation, Plaintiffs' Counsel assumed the significant risk that Defendants would aggressively defend this case at every stage of litigation.  Indeed, at the time of settlement, ***three*** motions to dismiss had been fully briefed and were pending.  While Plaintiffs' Counsel believe that the motions would have been denied, they also understood that Defendants raised credible arguments challenging the sufficiency of the allegations of falsity, materiality, scienter, loss causation and damages, and success was not a foregone conclusion. *See* ¶¶40-51; *see also Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (noting "all the multi-faceted and complex legal questions endemic to § 10(b) litigation, including proving scienter, materiality, causation, and damages.").

For instance, Defendants argued in their motions to dismiss and throughout the litigation that Plaintiffs had failed to plead and would be unable to prove liability.  Among other things, Defendants argued that: (i) statements related to Alfi's internal controls were not material or false because Alfi specifically warned of the risk that the Company may not establish or maintain effective internal controls; (ii) the Company's GAAP accounting methods were fully disclosed to the public, non-compliance with GAAP and/or GAAS are in and of themselves insufficient to constitute a violation of the securities laws, and the accounting errors were immaterial and did not impact earnings; (iii) certain Defendants were entitled to, and did, rely on the accountants and auditors who certified that the financial statements were prepared in accordant with GAAP (a so-called "reliance" or "due diligence" defense in Securities Act cases); and (iv) with respect to the Underwriter Defendants, that Plaintiffs failed to allege a basis for personal jurisdiction. Defendants also vehemently asserted that certain statements were protected by the PSLRA's safe

8

harbor provisions because: (i) the statements were forward looking and accompanied by meaningful, specific cautionary language; and (ii) Plaintiffs could not demonstrate that Defendants had actual knowledge that the statements were false and misleading.  In short, according to Defendants, Plaintiffs alleged, at most, a failure to successfully transition from a small startup to a public company—a risk that had been fully disclosed in the registration statement.

In addition to challenging Plaintiffs' allegations of material misstatements and omissions, Defendants would also have continued to vigorously dispute that they had acted with scienter, an element commonly regarded as the most difficult to prove in a securities fraud action.  *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[t]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do."). For example, Defendants asserted, *inter alia*, that Plaintiffs failed to plead: (i) particularized facts giving rise to the requisite inference of scienter as required under the PSLRA; (ii) that Defendants had actual knowledge or were directly informed of the GAAP or GAAS violations; and (iii) that defendants Pereira or McIntosh actually benefited from the alleged fraud or took advantage of the inflated stock prices to sell their own stock.

While Plaintiffs believed that they had adequately addressed these issues in their opposition briefs, these were not idle arguments, and there existed a very real risk that the Court would dismiss Plaintiffs' Complaint.  *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").  Accordingly, had the litigation continued, there is simply no guarantee that Plaintiffs would have prevailed at the pleading stage.  *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process").[8]

Even assuming Plaintiffs survived the motions to dismiss and were able to establish liability, there still existed major obstacles to ***proving*** loss causation and damages.  *See Dura*

---

[8] *See also* Ex. 10 (excerpt from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) at p. 11 (Fig. 11) (finding motions to dismiss filed in 96% of securities class action lawsuits, with a decision reached in 73% of the cases, and stating that "[a]mong the cases where a decision was reached, 61% were granted (with or without prejudice) and only 20% were denied.").

*Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs burden to prove "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Defendants would contend, among other things, that: (i) Plaintiffs have no recoverable damages under Section 11's statutory formula for calculating damages (*i.e.*, the difference between the offering price and the stock price at the time the suit was brought (*see* 15 U.S.C. § 77k(e)) given that the alleged corrective disclosure relating to the Securities Act claims took place on March 11, 2022, several months *after* the filing of the initial complaint in the Action; (ii) Defendants would prevail under a Section 11 negative loss causation affirmative defense because, while the stock price dropped modestly following the alleged corrective disclosure on March 11, 2022, it quickly recovered for an 11.8% gain; (iii) the stock price drop on November 16, 2021, was attributable to the disclosure of a revenue shortfall, not the falsity of a prior misstatement; and (iv) the October 28, 2021 and November 15, 2021, announcements did not specifically relate to the alleged fraud so they could not be corrective. Each of these issues created additional risk because the jury would have had to decide them based on expert testimony. *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Had any of Defendants' arguments concerning loss causation or damages been accepted in whole or in part, it could have eliminated or greatly reduced any potential recovery. A victory—much less one that exceeded $1,725,000—was far from assured. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based on plaintiffs' expert's failure to disaggregate certain negative information), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).[9]

Finally, this case presented serious ability-to-pay issues. Like many technology startups, Alfi was never able to earn any meaningful revenues, and in October 2022, it filed a petition for

---

[9] *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("defendants must be afforded an opportunity before class certification to defeat the [fraud-on-the-market] presumption [of reliance] through evidence that an alleged misrepresentation did not actually affect the market price of the stock.").

bankruptcy under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* Alfi's precarious financial condition and limited financial upside, combined with the fact that the Company's insurance funds would be significantly reduced by defense costs, claims asserted by the bankruptcy trustee, and the SEC's investigation into the Company and its executives, raised the very real risk that the Action might yield a recovery smaller than $1,725,000—or indeed no recovery at all—following many years of hard-fought litigation. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (finding "[t]he risk of nonpayment in this case was acute" where, *inter alia*, the corporate defendant "lacked significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained" and there was "the risk that the wasting policy would run out by the time a trial was over").

Despite the substantial risks inherent in this complex litigation, Plaintiffs' Counsel were able to achieve a $1,725,000 settlement. This is an extremely favorable result for the Settlement Class in light of the aforementioned risks and, as such, this factor weighs heavily in favor of the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3. The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The Court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. April 15, 2010), as well as "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

As demonstrated by their respective firm résumés, Plaintiffs' Counsel have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions. *See* Exs. 6-C, Ex. 7-C, and Ex. 8-C. Plaintiffs' Counsel's experience allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, and formulate strategies to effectively prosecute the Action. Without question, Plaintiffs' Counsel's skill and experience were a major factor in obtaining the excellent result achieved by this Settlement. *See Edmonds v. U.S.*, 658 F.

11

Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."); *see also Columbus Drywall*, 2012 WL 12540344, at *4 ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.").

In evaluating the quality of Plaintiffs' Counsel's work, it is also important to consider the "quality of the opposition the plaintiffs' attorneys faced." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001). Here, Defendants were vigorously represented by experienced, aggressive, and highly skilled counsel from Smith Gambrell & Russell LLP, Goodwin Procter LLP, and Sheppard, Mullin, Richter & Hampton LLP. Notwithstanding this formidable opposition, Plaintiffs' Counsel's thorough investigation, opposition to Defendants' motions to dismiss, and mediation efforts, positioned Plaintiffs to achieve a favorable recovery for the Settlement Class. Thus, this factor militates in favor of the requested fee. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Jan. 13, 2006) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4. The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—1,273.25 hours (¶83)—was time Plaintiffs' Counsel could have devoted to other matters. Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work. Consequently, this factor further supports the requested fee.

### 5. The Requested Fee Is Customary for a Case Such as This One

"The court [also] considers the market rate when determining fee awards to class counsel." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Princess Cruise Lines*, 513 F. Supp. 2d at 1340. "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id*. at 1341.[10]

---

[10] *See also Waters v. Cook's Pest Control, Inc*., 2012 WL 2923542, at *16 (N.D. Ala. July 17, 2012) (finding that the customary fee factor weighed in favor of a 35% fee award because class counsel "customarily enters into contingency fee agreements allowing for recovery of 33% in low risk cases with uncontested or moderately contested liability, and up to 49% in higher risk cases with difficult liability issues"); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc*., 2017

12

Plaintiffs' Counsel's request for 33⅓% of the Settlement Fund is well within the private marketplace range and is consistent with what courts routinely award in class actions, as discussed below.  *See infra* at § III.A.10.  Accordingly, this factor weighs in favor of the requested fee.

### 6. Plaintiffs' Counsel Assumed Substantial Risk and Pursued This Case on a Pure Contingency Basis

Courts have consistently recognized that "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."  *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).[11]  Moreover,

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.  If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions — must be promoted.

*Behrens*, 118 F.R.D at 548.

The risk of no recovery in complex cases like this one is not illusory.  Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed.  *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, and a multi-week trial, the jury returned a verdict in favor of defendants).[12]

---

WL 7798110, at \*4 (S.D. Fla. Dec. 18, 2017) ("The requested fee also falls within the range of the customary fee in the private marketplace, where 40 percent fee contracts are common for complex cases such as this.").

[11] *See also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at \*1 (S.D. Fla Sept. 26, 2012) ("It was Class Counsel alone that bore the entire risk of this representation – a significant finding in support of the requested fee."); *Princess Cruise Lines*, 513 F. Supp. 2d at 1339 ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee ... and the fact that the risks of failure and nonpayment in a class action are extremely high.").

[12] *See also Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y., 2018) (GPM served as Co-Lead Counsel in securities fraud action that lost at summary judgment after four years of

And, Lead Counsel are not alone. There are many other hard-fought lawsuits where counsel suffered major defeats after years of litigation in which they expended millions of dollars in time and expenses and received no compensation at all, even after a trial victory.[13] The significant risks inherent in this case justify the requested fee. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

### 7. Time Limitations/Nature and Length of Attorney-Client Relationship

"[T]hese factors are inapplicable to this case, and are therefore neutral." *In re Dell Inc.*, 2010 WL 2371834, at *18 (W.D. Tex. June 11, 2010).

### 8. The Amount Involved and Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The proposed $1,725,000 all cash, non-reversionary Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through a decision on class certification, summary judgment, and trial. Plaintiffs' damages expert estimates that if Plaintiffs had ***fully prevailed*** at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' ***best case scenario***—the total ***maximum*** damages would be approximately $11.44 million. Thus, the $1,725,000 Settlement Amount represents approximately 15.1% of the total ***maximum*** damages ***potentially*** available. Conversely, if Defendants' arguments in their motions to dismiss were accepted by the trier of fact, the maximum recoverable damages would have been drastically

---

litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019).

[13] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs in securities class action); *BankAtlantic*, 2011 WL 1585605 at *38; *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

14

reduced, if not eliminated. A recovery of 15.1% is well above the median recovery in securities class actions of a similar magnitude, and it is an excellent result when compared to the risks of continued litigation. *See* Ex. 5 (Cornerstone Report, "Securities Class Action Settlements: 2022 Review and Analysis," at p. 6 Figure 5 (reporting median percentage of 2022 recoveries of 11.1% in cases alleging less than $25 million in damages, and 3.6% overall for all securities class actions)); *see also IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

### 9.     The Undesirability of the Case

The tenth *Johnson* factor, undesirability of the case, also supports the requested fee. Securities class actions have been recognized as "undesirable" due to the elevated risk of litigating under the PSLRA, formidable opposition, high out-of-pocket costs, and the distinct possibility of no recovery. *See Health Ins. Innovations*, 2021 WL 1341881, at *12 ("The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable."); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) ("[T]he risk of non-recovery and undertaking expensive litigation against well-financed corporate defendants on a contingent fee has been held to make a case undesirable, warranting a higher fee." (cleaned up)); *see also Dell*, 2010 WL 2371834, at *19 ("Class action cases often carry with them elevated risks, a requirement of lengthy investigation through informal discovery, and a possibility of no recovery, all of which speak to the undesirability of such a case.").

This case was no exception. Plaintiffs' Counsel undertook the Action on a fully contingent basis, assuming the significant risk that the litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are typically paid an hourly rate and regularly reimbursed for their expenses, Plaintiffs' Counsel have not been compensated for *any* time or reimbursed for any of their out-of-pocket expenses since this case began over two years ago. ¶89. The only certainty was that there would be no fee, or reimbursement of out-of-pocket expenses, without a successful result.

Furthermore, the risks in this case were manifold. As discussed in greater detail above and in the Solish Declaration, Defendants were represented by highly skilled litigators, and Plaintiffs' Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened

pleading standards and automatic stay of discovery, the complex nature of the claims at issue, which hinged in large part on highly subjective and technical accounting standards, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. *See Schwartz*, 2005 WL 3148350, at *32 ("the risk of no recovery in complex [securities] cases of this type is very real."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."). Indeed, as discussed above, Alfi was a technology startup that had never achieved meaningful revenues. This signaled a potential collectability risk, which, by the end of the case, had materialized. ¶¶25-27.

All of these facts and obstacles further underscore the undesirability of this case from a risk perspective, and the strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain."). Consequently, this factor weighs in favor of the requested fee.

**10.      Awards in Similar Cases Support a Fee Award of 33⅓% of the Settlement Fund**

When *Camden I* was decided 27 years ago, the "'benchmark' percentage fee award" was considered to be 25%, although the Court made clear that there "is no hard and fast rule mandating a certain percentage of a common fund … because the amount of any fee must be determined upon the facts of each case." 946 F.2d at 774-75. Today's "benchmark" is much higher, particularly in complex cases like this. *See Reyes* v. *AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases and stating, "Class Counsel's request for one-third of the settlement fund is consistent with the trend in this Circuit."); *Morgan*, 301 F. Supp. 3d at 1257-58 (collecting cases and stating, "a fee award of 33% … is consistent with attorneys' fees awards in federal class actions in this Circuit[.]"). Recent empirical studies have shown that in this Circuit, the median percentage fee award is currently 33%, which is not surprising as "courts within this Circuit have routinely awarded attorneys' fees of ***33 percent or more*** of the gross settlement fund." *Fernandez*, 2017 WL 7798110, at *4 (collecting cases); *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding a "slight increase from the one-

16

third benchmark"); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund").[14]

Moreover, a review of attorneys' fees awarded in comparable complex litigation settlements in the Eleventh Circuit, as well as nationwide, strongly supports the reasonableness of the 33⅓% fee request here. *See Waters*, 190 F.3d at 1294-95 (affirming 33⅓% award of $40 million common fund); *Fernandez*, 2017 WL 7798110, at *4 (awarding 35% of $25 million); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding 33⅓% of $21 million); *Cabot*, 2018 WL 5905415, at *1 (awarding 33⅓% of $100 million settlement fund); *In re: Managed Care Litig. v. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Columbus Drywall*, 2012 WL 12540344, at *1 (awarding one-third of the $75 million settlement fund).[15]

In sum, the fees commonly awarded in comparable complex litigation settlements strongly demonstrate the reasonableness of the requested fee.

### 11.   Lead Plaintiff Has Approved the Requested Fee

As set forth in Lead Plaintiff's declaration, he played an active role in the prosecution and resolution of the Action, and thus has a sound basis for assessing the reasonableness of the fee request. *See* Rodriguez Decl. at ¶¶3-5. Lead Plaintiff carefully evaluated the fee request and fully support and approves the fee request as fair and reasonable in light of the result obtained, the work performed by Plaintiffs' Counsel, and the risks of the litigation. *See id.* at ¶¶9-10.

---

[14] S*ee also Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that … fee awards in class actions average around one-third of the recovery."); *Cash 4 Titles*, 2012 WL 5290155, at *6 (collecting cases and stating that "the [33%] requested fee is entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I*.").

[15] *See also* Ex. 11 (collecting Eleventh Circuit cases); *Cash 4 Titles*, 2012 WL 5290155, at *5 ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide— roughly one-third."); Ex. 12 (collecting cases outside the Eleventh Circuit).

### 12.   The Settlement Class's Reaction Also Supports the Requested Fee

The reaction of the Settlement Class to date further confirms the reasonableness of the requested fee.  Here, the Settlement Class was notified of the Settlement and the request for attorney's fees and reimbursement of Litigation Expenses by a combination of first-class mail, publication, email, and the settlement website (www.strategicclaims.net/Alfi/, the "Settlement Website").  As of January 22, 2024, the Claims Administrator, Strategic Claims Services ("SCS"), has disseminated the notice to approximately 96,769 potential Settlement Class Members and their nominees informing them of Plaintiffs' Counsel's intention to apply to the Court for an award of attorneys' fees of 33⅓% of the Settlement Fund, and reimbursement of Litigation Expense up to $145,000, which could include an application for reimbursement of the reasonable costs incurred by the Plaintiffs directly related to their representation of the Settlement Class.  *See* Ex. 1 (Craig Decl., at ¶¶4-9 and Ex. B (Postcard Notice)).  Settlement Class Members were also informed of their right to object to such an application.  *Id.*  In addition, SCS caused the Notice and other case-related documents to be posted on the Settlement Website, and the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  *Id.* at ¶¶11, 13; Ex. E.  While the time to object does not expire until February 13, 2024, to date, no objections to the request for attorneys' fees and expenses have been received.[16]  ¶15.  The lack of objections is "strong evidence of the propriety and acceptability" of the fee request.  *Ressler*, 149 F.R.D. at 656.

## IV.   THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' Counsel's fee application includes a request for reimbursement of expenses that were "reasonable and necessary to obtain the [S]ettlement reached."  *Ressler*, 149 F.R.D. at 657; *see also* ¶¶97-102.  These expenses are properly recoverable.  *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action").  As set forth in detail in the Solish Declaration, Plaintiffs' Counsel incurred $102,597.91 in litigation-related expenses.  ¶¶97-102.

The types of expenses for which Plaintiffs' Counsel seek reimbursement were necessarily

---

[16] Plaintiffs' Counsel will address any objections that may be received in the reply papers to be filed with the Court on February 27, 2024.

incurred in litigation and are routinely charged to classes in contingent litigation and clients billed by the hour.  These expenses include, among others: costs for experts in accounting, loss causation and damages, and the plan of allocation; online factual and legal research; mediation; travel and lodging; copying; service of process; court filing fees; and the PSLRA mandated notice.  *Id.* "Reimbursement of similar expenses is routinely permitted."  *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005); *see also Gevaerts v. TD Bank*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of expenses related to, among other things, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses.").  Moreover, from the outset, Plaintiffs' Counsel were aware that they might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved.  Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action.  ¶98.

Both the Postcard Notice and Notice informed potential Settlement Class Members that Plaintiffs' Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $145,000. Ex. 1-B; 1-D, ¶5.  The total Litigation Expenses, in the amount of $107,097.91 ($102,597.91 in hard costs incurred in prosecuting the Action, plus an aggregate of $4,500 to the Plaintiffs as reimbursement for their reasonable costs incurred in representing the Settlement Class) is below the amount listed in the notices and, to date, there has been no objection to the request for expenses.  ¶68.

## V.      THE COURT SHOULD GRANT PLAINTIFFS' PSLRA AWARD REQUESTS

In connection with Plaintiffs' Counsel's request for payment of litigation expenses, Plaintiffs respectfully request a total of $4,500 (or $1,500 for each Plaintiff) in PSLRA awards to reimburse Plaintiffs for time spent prosecuting the Action.[17]   15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4).  "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal

---

[17] The fact that the Plaintiff awards requested here are specifically allowed by federal statute differentiates them from the "incentive payments" that the Eleventh Circuit recently held were forbidden in certain class actions.  *Compare Johnson v. NPAS Sols., LLC*, 2020 WL 5553312, at *12 (11th Cir. Sept. 17, 2020) ("If either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute."), *with Pritchard v. APYX Medical Corp.*, 2020 WL 6937821, at *2 (M.D. Fla. Nov. 18, 2020) (granting PSLRA award following *Johnson* decision) and *Health Ins. Innovations*, 2021 WL 1341881, at *13 (same).

securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*22 (S.D.N.Y. Dec. 18, 2019); *Health Ins. Innovations*, 2021 WL 1341881, at \*13 (PSLRA award to lead plaintiff in the amount of $3,125 "for his time"). Reimbursement of such costs is allowed because they "encourage[] participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at \*5 n.2 (S.D.N.Y. Nov. 8, 2000).

As set forth in their respective declarations, Plaintiffs have actively and effectively fulfilled their obligations as representatives of the Settlement Class. Plaintiffs, among other things: (i) participated in regular discussions with Plaintiffs' Counsel concerning the prosecution of the Action and strengths and weaknesses of the claims; (ii) reviewed significant pleadings; (iii) collected and produced documents to counsel; and (iv) were closely involved in mediation efforts and settlement negotiations. *See* Rodriguez Decl. at ¶3-5; Allen Decl. at ¶4; Takian Decl. at ¶4.

The foregoing efforts are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at \*21 (S.D.N.Y. Dec. 23, 2009); s*ee also Thorpe*, 2016 WL 10518902, at \*12 (awarding $15,000 to each class representative as "fair and reasonable"); *Flowers Foods*, 2019 WL 6771749, at \*2 (awarding plaintiffs $10,000 each "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class").

Accordingly, Plaintiffs' Counsel request that the Court award $1,500 to each Plaintiff.[18]

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request the Court grant the motion.[19]

### LOCAL RULE 7.1(a)(3) CERTIFICATION

Plaintiffs' Counsel has conferred with Defendants' Counsel regarding the requested relief, and Defendants do not take a position on Plaintiffs' Counsel's motion.

---

[18] To date, there has been no objection to this request.

[19] A proposed Order granting the requested relief will be submitted with Plaintiffs' Counsel's reply papers on February 27, 2024, after the deadline for objecting to the motion has passed.

Dated:  January 30, 2024

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Adam D. Warden*
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Lead Plaintiff and*
*Local Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Joseph D. Cohen (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcohen@glancylaw.com
lsolish@glancylaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (Fla. Bar No. 0182877)
Phillip Kim (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
lrosen@rosenlegal.com
pkim@rosenlegal.com
skim@rosenlegal.com

*Counsel for Plaintiff John K. Allen,*
*on behalf of the Joseph M. Driscoll Trust and*
*Plaintiff Alexander C. Takian*

21

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  January 30, 2024


*/s/ Adam D. Warden*
Adam D. Warden