**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., <br><br> Defendants. | Case No. 1:21-cv-24232-KMW |

**DECLARATION OF LEANNE H. SOLISH IN SUPPORT OF: (I) PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND
(II) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
<u>AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 2

II.     PROSECUTION OF THE ACTION ........................................................................... 5

        A.      Background ..................................................................................................... 5

        B.      Commencement of the Instant Action and Appointment of Lead Plaintiff and Lead Counsel ........................................................................................................... 6

        C.      The Comprehensive Pre-Filing Investigation and Preparation of the Complaint ... 7

        D.      Alfi's and Defendants' Motions to Dismiss the Complaint and Plaintiffs' Responses .................................................................................................... 7

        E.      The Bankruptcy Action .................................................................................. 8

        F.      Mediation Efforts, Settlement Negotiations, and Preliminary Approval of the Settlement ...................................................................................................... 8

III.    THE RISKS OF CONTINUED LITIGATION ........................................................ 10

        A.      Ability to Pay Risk ...................................................................................... 10

        B.      Risks to Proving Liability ............................................................................ 11

        C.      Risk of Proving Loss Causation and Damages ............................................ 13

        D.      Risks Faced in Obtaining and Maintaining Class Action Status ................ 14

        E.      Other Risks ................................................................................................... 14

        F.      The Settlement is Reasonable in Light of Potential Recovery in the Action ........ 15

IV.     PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE .................................................. 16

V.      ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT ........................ 18

VI.     PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES ...................................................... 20

        A.      The Outcome Achieved Is the Result of the Significant Time and Labor that Plaintiffs' Counsel Devoted to the Action ......................................................... 20

        B.      The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases ........................................... 22

i

C.      The Experience and Expertise of Plaintiffs' Counsel, and the Standing and Caliber of Defendants' Counsel .................................................................................. 23

D.      The Reaction of the Settlement Class Supports Plaintiffs' Counsel's Fee Request .......................................................................................................... 23

E.      Lead Plaintiff Support Plaintiffs' Counsel's Fee Request ................................... 24

F.      Reimbursement of the Requested Litigation Expenses Is Fair and Reasonable ... 24

VII.    CONCLUSION ............................................................................................................. 26

**TABLE OF EXHIBITS TO DECLARATION**

| EX. | TITLE |
|---|---|
| 1 | Declaration of Margery Craig Concerning: (A) Mailing of CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections |
| 2 | Declaration of Lead Plaintiff Candido Rodriguez in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 3 | Declaration of Named Plaintiff John K. Allen, on behalf of the Joseph M. Driscoll Trust, in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 4 | Declaration of Named Plaintiff Alexander C. Takian in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |
| 5 | Excerpts from Laarni T. Bulan and Laura E. Simmons *Securities Class Action Settlements, 2022 Review and Analysis* (Cornerstone Research 2023) |
| 6 | Declaration of Leanne H. Solish, Esq. in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses on Behalf of Glancy Prongay & Murray LLP |
| 7 | Declaration of Laurence M. Rosen, Esq. in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses on Behalf of The Rosen Law Firm, P.A. |
| 8 | Declaration of Adam Warden, Esq. in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses on Behalf of Saxena White P.A. |
| 9 | Table of Peer Law Firm Billing Rates |
| 10 | Excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) |
| 11 | Chart of Select Eleventh Circuit Cases Awarding Attorneys' Fee of 33% or Above |
| 12 | Chart of Select Cases Outside the Eleventh Circuit Awarding Attorneys' Fee of 33% or Above |

I, Leanne H. Solish, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.      I am an attorney duly licensed to practice law before all of the courts of the State of California and I am admitted *pro hac vice* in the above-captioned action (the "Action").[1]  I am a partner in the law firm of Glancy Prongay & Murray LLP ("GPM"), Court-appointed Lead Counsel in the Action.  Unless otherwise indicated, I have personal knowledge of the matters set forth herein based both on my extensive participation in the prosecution and settlement of the claims asserted in the Action and my supervision of those working at my direction.  If called upon, I could and would competently testify that the following facts are true and correct.

2.      I respectfully submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the incorporated memorandum in support thereof (the "Final Approval Memorandum").  As set forth in the Final Approval Memorandum, Plaintiffs seek final approval of the $1.725 million Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3.      I also respectfully submit this declaration in support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and the incorporated memorandum in support thereof (the "Fee Memorandum").  As set forth in the Fee Memorandum, Lead Counsel seeks an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (or $575,000, plus interest at the same rate as the Settlement Fund), and reimbursement of Litigation Expenses in the total amount of $107,097.91, which includes Plaintiffs' Counsel's total out-of-pocket expenses in the amount of $102,597.91 and an aggregate of $4,500 to Plaintiffs (or $1,500 each for Lead Plaintiff Candido Rodriguez, plaintiff John K. Allen, on behalf of the Joseph M. Driscoll Trust, and plaintiff Alexander C. Takian) pursuant to the Private Securities Litigation Reform Act of 1995 ("PLSRA") for costs incurred in connection with their representation of the Settlement Class.

4.      The Court preliminarily approved the proposed Settlement by its Order entered on October 31, 2023 (the "Preliminary Approval Order"), and thereby directed notice of the

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation") (ECF No. 122-1).

Settlement to be disseminated to the Settlement Class. *See* ECF No. 127. Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program whereby notice was given to potential Settlement Class Members by mail or email and by publication. *See* ¶¶60-68, *infra* (detailing notice program); *see also* Ex. 1 (Declaration of Margery Craig Concerning: (A) Mailing of CAFA Notice; (B) Mailing of the Postcard Notice; (C) Publication of the Summary Notice; and (D) Report on Requests for Exclusion and Objections, the "Craig Decl.," ¶¶4-11).

5.       In total, as of January 22, 2024, either a copy of the Postcard Notice was timely mailed or a link to the Notice and Claim Form was emailed, to approximately 96,769 potential Settlement Class Members. To date, not a single objection has been filed with the Court or request for exclusion received by Plaintiffs' Counsel or the Claims Administrator. *See* Ex. 1 (Craig Decl., ¶¶9, 14, 15).

## I.       INTRODUCTION

6.       Plaintiffs in this action allege claims pursuant to Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, arising from Defendants' alleged misrepresentations and omissions made during the Settlement Class Period from May 4, 2021 and March 11, 2022, inclusive (the "Settlement Class Period").

7.       The proposed Settlement presented to the Court for final approval provides for the resolution of all claims in the Action in exchange for a cash payment of $1,725,000 (the "Settlement Amount") for the benefit of the Settlement Class. As detailed herein, Plaintiffs and Plaintiffs' Counsel submit that the proposed Settlement represents an extremely favorable result for the Settlement Class in light of the significant risks to overcome and remaining in the Action, as well as ability to pay issues.

8.       The Settlement represents a recovery of 15.1% of the total maximum damages potentially available. This result is significantly better than the median recovery in other securities class actions alleging losses of a similar magnitude. *See* Ex. 5 (research finding median percentage of 2022 recoveries of 11.1% of estimated damages in securities class actions alleging losses under $25 million and a median recovery of 3.6% overall in securities class actions).

9.      Thus, the Settlement provides a substantial, certain, and immediate recovery, while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class could recover less than the Settlement Amount (or nothing at all) after years of additional litigation and delay.

10.     The Settlement was only achieved after a hard-fought litigation, during which Plaintiffs' Counsel became well informed of the relative strengths and weaknesses of Plaintiffs' claims in the Action.  In prosecuting the Action, Plaintiffs' Counsel expended great efforts and resources on behalf of the Settlement Class, including, *inter alia*:

    a.      conducting a detailed and substantive investigation into the allegedly wrongful acts, which included, among other things: (i) review and analysis of Alfi Inc.'s ("Alfi" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Alfi, and publicly available documents, reports, announcements, and news articles concerning Alfi and the Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; (iii) consultation with an expert in market efficiency, loss causation, and damages; and (iv) consultation with an accounting expert regarding Alfi's restatement of certain financial results;

    b.      drafting an initial complaint in *Kleinschmidt v. Alfi, Inc.*, Case No. 1:21-cv-24338 (ECF No. 1) and the comprehensive and factually detailed 75-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 82) incorporating the foregoing research and investigation efforts;

    c.      researching and drafting responses to Alfi and Defendants' ***three*** motions to dismiss (ECF No. 96-99), which were filed by Plaintiffs on October 11, 2022 (ECF Nos. 105-107);

    d.      after Alfi filed a voluntary bankruptcy petition, captioned *In re: Alfi, Inc.*, Case No. 22-10979 (KBO) (the "Bankruptcy Action"), hiring and consulting with bankruptcy counsel who filed a proof of claim based upon the causes of action alleged in this

3

           Action and advised counsel in the negotiating of the settlement terms with the Parties and Alfi's bankruptcy trustee;

e.       preparing for and participating in an adversarial mediation process and extensive settlement negotiations, which involved, (i) preparing a detailed mediation statement addressing liability, loss causation, and damages along with exhibits, (ii) reviewing and analyzing Defendants' three mediation statements as well as the mediation statement submitted on behalf of the trustee of Alfi's bankruptcy estate, and (iii) participating in a full-day mediation session with an experienced and highly respected mediator, Jed D. Melnick, Esq. of JAMS, where the Parties and counsel for the D&O insurance carrier engaged in full and frank discussions concerning the merits of the Action.  The session culminated in an agreement in principle to settle the Action for $1.725 million in cash;

f.       preparing the initial draft, and negotiating the terms, of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

g.      negotiating with Defendants' Counsel and counsel for the bankruptcy trustee the terms of the settlement agreement between the Parties and the trustee for Alfi's bankruptcy estate in the Bankruptcy Action;

h.      working with a consulting damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

i.       overseeing the implementation of the notice program; and

j.       drafting the preliminary and final approval briefs.

11.    Based on the foregoing efforts, Plaintiffs and Plaintiffs' Counsel are well informed of the strengths and weaknesses of the claims and defenses in the action and believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of the Settlement Class Members.  For all the reasons set forth herein and in the accompanying memoranda and declarations, Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Federal Rule of Civil Procedure 23(e).

12.    In addition, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable.  As discussed in further detail below, Plaintiffs' Counsel developed the Plan of Allocation with the assistance of a consulting damages expert.  ¶¶69-78, *infra* (discussing Plan of

Allocation). The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts. No Plaintiff, Settlement Class Member or segment of the Settlement Class receives preferential treatment under the plan.

13.    Finally, Plaintiffs' Counsel seeks approval of the request for attorneys' fees, and reimbursement of Litigation Expenses, as set forth in the Fee Memorandum. As discussed in detail in the accompanying Fee Memorandum, the requested 33⅓% fee is within the range of percentage awards granted by courts in this Circuit, and nationwide, in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check, and is warranted in light of the extent and quality of the work performed and the substantial result achieved. Likewise, the requested litigation expenses of $102,597.91 and the aggregate requested PSLRA award of $4,500 to Plaintiffs ($1,500 to each Plaintiff) are fair and reasonable. Accordingly, as set forth in the Fee Memorandum and for the additional reasons set forth herein below, I respectfully submit that Plaintiffs' Counsel's request for attorneys' fees and reimbursement of Litigation Expenses is fair and reasonable and should be approved.

## II.    PROSECUTION OF THE ACTION

### A.    Background

14.    Alfi was an advertising technology company founded in 2018 that claimed to use proprietary technology to deliver targeted advertising to the viewer of an Alfi-enabled device without storing personal identifiable information. *Id.* In May 2021, Alfi went public through an initial public offering ("IPO").

15.    Less than six months after Alfi's IPO, on October 28, 2021, Alfi announced that it had terminated one executive's employment and had placed its CEO and CFO on paid administrative leave, pending an independent internal investigation (the "Investigation") into "certain corporate transactions and other matters." On February 23, 2022, Alfi announced the results of the Investigation, admitting that "former senior management" caused Alfi to enter into multiple transactions without the Board's knowledge or approval, which included the issuance of Company stock, among other findings. Alfi also admitted that the former CEO, defendant Pereira, made multiple false statements to the market, including that a June 2021 statement that Alfi had "signed up" 22,000 rideshares was actually the number of drivers that "had expressed interest in applying to secure contracts with the Company and, in June 2021, 1,253 drivers had contracts with

5

the Company[,]" and that Pereira's disclosure of a $2 million stock buyback plan was made without the Board's knowledge or approval, and the Board *subsequently* approved the share repurchase program the following day. The results of the Investigation also found that Alfi's internal controls over financial reporting to be deficient in many respects.

16. On March 11, 2022, Alfi announced that its FY 2019 and FY 2020 financial results included in Alfi's IPO Registration Statement, as well as the quarterly results previously issued by the Company after its IPO, should no longer be relied upon and should be restated due to a number of identified accounting errors that violated GAAP. Alfi stated that it preliminarily expected its total stockholders' equity balances would decrease by $1.5 million as of December 31, 2019, by $2.9 million as of December 31, 2020, and by approximately $3.0 million as of June 30, 2021. After the end of the Settlement Class Period, Alfi restated these financial results (the "Restatement"), reducing Alfi's intangible asset balance and its tablet balances by huge margins. Alfi's stockholders' equity – *i.e.*, net worth – also decreased by millions of dollars. Alfi also confirmed that its internal controls were not effective and that a material weakness existed.

17. Plaintiffs allege that Defendants materially misled investors by issuing a materially false and misleading Registration Statement in connection with the Company's May 2021 IPO and by misleading investors about the Company's performance, financial results, internal controls, and material conflicted transactions throughout the Settlement Class Period.

**B.    Commencement of the Instant Action and Appointment of Lead Plaintiff and Lead Counsel**

18. Beginning on December 2, 2021, two class action complaints were filed in the United States District Court for the Southern District of Florida (the "Court"), styled *Steppacher v. Alfi, Inc.*, Case No. 1:21-cv-24232 and *Kleinschmidt v. Alfi, Inc.*, Case No. 1:21-cv-24338.

19. By order dated February 3, 2022, the Court consolidated the two cases and recaptioned the consolidated matter as *Steppacher, Jr., et al. v. Alfi, Inc. et al.*, Case No. 21-cv-24232-KMW. ECF No. 16.

20. On April 13, 2022, the Court appointed Candido Rodriguez as Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of GPM as Lead Counsel for the putative class, and Saxena White P.A. ("Saxena White") as Local Counsel for the putative class. The Court also directed that the case be re-styled accordingly. ECF No. 69.

### C. The Comprehensive Pre-Filing Investigation and Preparation of the Complaint

21. Lead Counsel conducted an extensive and detailed pre-filing investigation of Defendants, which included, among other things: (i) review and analysis of the Company's SEC filings, press releases, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Alfi, and publicly available documents, reports, announcements, and news articles concerning Alfi and the Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; (iii) consultation with an expert in market efficiency, loss causation, and damages; and (iv) consultation with an accounting expert regarding Alfi's restatement of certain financial results.

22. On June 13, 2022, Plaintiffs filed and served the detailed 75-page Complaint. ECF No. 82. The Complaint asserted claims against: (i) Alfi, Defendants, and then-defendant Mowser, under Section 11 of the Securities Act; (ii) the Individual Defendants and Mowser under Section 15 of the Securities Act; (iii) Alfi and defendants Pereira and McIntosh under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (iv) defendants Pereira and McIntosh under Section 20(a) of the Exchange Act. Among other things, the Complaint alleged that Defendants and Alfi issued a materially false and misleading registration statement in connection with Alfi's IPO, including materially false and misleading statements about Alfi's financial results and internal controls. The Complaint further alleged that following the IPO, Alfi and defendants Pereira and McIntosh continued to make materially false and misleading statements about Alfi's financial results, internal controls, performance, and material conflicted transactions. The Complaint also averred that the prices of Alfi Securities were artificially inflated as a result of the materially false and misleading statements, and declined when the truth was revealed.

### D. Alfi's and Defendants' Motions to Dismiss the Complaint and Plaintiffs' Responses

23. On August 12, 2022, Alfi and the Defendants filed three motions to dismiss arguing, among other things, that: (i) Plaintiffs failed to allege an actionable misstatement because the statements were not false and/or material, were inactionable forward-looking statements, and that Alfi warned of the exact risks that eventually materialized; (ii) Plaintiffs failed to plead particularized facts giving rise to the requisite inference of scienter; (iii) Plaintiffs failed to plead

loss causation for any of the alleged corrective disclosures; (iv) Plaintiffs' losses under their Securities Act claims were not attributable to the alleged misstatements and omissions in Alfi's registration statement; and (v) Defendants were exempt from Securities Act liability for "expertised" portions of the registration statement.  ECF Nos. 96-99.

24.     Plaintiffs filed oppositions to each of the motions to dismiss on October 11, 2022. ECF Nos. 105-107.  On November 28, 2022, Defendants filed their reply papers. ECF Nos. 109-111.

### E.     The Bankruptcy Action

25.     On October 14, 2022, Alfi commenced the Bankruptcy Action, filing a voluntary bankruptcy petition under Chapter 7 of the of Title 11 of the United States Code (11 U.S.C. §101 *et seq.* (the "Bankruptcy Code")) in the United States Bankruptcy Court for the District of Delaware.  On October 17, 2022, Alfi notified the Court of the pending bankruptcy, and pursuant to the Bankruptcy Code the Action was automatically stayed as to Alfi.  ECF No. 108.

26.     As a result of Alfi's bankruptcy petition, Plaintiffs' Counsel hired and consulted with bankruptcy counsel who filed a proof of claim based upon the causes of action alleged in this Action.

27.     On May 1, 2023, Plaintiffs dismissed Alfi from the Action.  ECF No. 120.

### F.     Mediation Efforts, Settlement Negotiations, and Preliminary Approval of the Settlement

28.     After Alfi's bankruptcy filing and the Defendants' filing their replies in support of their motions to dismiss, the Parties agreed to try and settle the case through mediation.  After much discussion, the Parties agreed to participate in a private mediation and selected Mr. Melnick to serve as the mediator.

29.     On February 21, 2023, Plaintiffs and Defendants filed a joint motion to stay the proceedings, including any oral argument or issuance of any decision and order on Defendants' motions to dismiss, pending the Parties' participation in a mediation session scheduled for March 24, 2023.  ECF No. 113.  The Court granted the joint motion on February 27, 2023, staying the action through April 3, 2023. ECF No. 114.

30.     In advance of the mediation session, Plaintiffs' Counsel dedicated substantial efforts to preparing a persuasive mediation statement along with exhibits, which addressed the

issues of liability and damages.  The Parties and Alfi's bankruptcy trustee exchanged mediation statements.

31.      On March 24, 2023, Plaintiffs' Counsel and counsel for Defendants, along with the Individual Defendants' insurance carriers and the carriers' counsel, and the Alfi bankruptcy trustee and his counsel, participated in a full-day virtual mediation session before Jed Melnick, Esq. of JAMS.  During the mediation session, the Parties engaged in full and frank discussions concerning the merits of this Action.  This negotiation process enabled the Parties to meaningfully assess the relative strengths and weaknesses of their respective claims and defenses.

32.      The session culminated in an agreement in principle to settle the Action for $1.725 million in cash, subject to the execution of a customary long-form stipulation and agreement of settlement and related papers.

33.      The Parties thereafter worked diligently to finalize the Settlement, which involved numerous complex terms and other issues that required substantial negotiation among the Parties. The terms of the Settlement are memorialized in the Stipulation dated July 20, 2023 (ECF No. 122-1).  The Parties also negotiated the terms of the settlement between the Parties and Alfi's bankruptcy estate in the Bankruptcy Action, which are memorialized in a Settlement Agreement dated August 1, 2023.  *See* Bankruptcy Action, ECF Nos. 107 (Order Approving Settlement Agreement) & 107-1 (Settlement Agreement).

34.      On July 21, 2023, Plaintiffs submitted their Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement.  ECF Nos. 121-122.

35.      On October 31, 2023, the Court issued its Order Preliminarily Approving Settlement and Providing for Notice.  ECF No. 127.  The order preliminarily approved the Settlement, conditionally certified the Settlement Class for settlement purposes only, appointed Plaintiffs as Class Representatives, appointed Lead Counsel as Class Counsel, approved the proposed procedure to provide notice of the Settlement to potential Settlement Class Members, and set March 5, 2024, as the date for the final-approval hearing.  *Id.*  The Settlement Class is defined as:

> all Persons and entities who or which purchased or otherwise acquired the common stock and/or warrants of Alfi (collectively, "Alfi Securities"): (i) pursuant and/or traceable to the Registration Statement issued in connection with the Company's initial public offering on or about May 4, 2021 (the "IPO") (*i.e.*, from May 4, 2021

9

through October 29, 2021, inclusive), and/or (ii) during the period from May 4, 2021 and March 11, 2022, inclusive (the "Settlement Class Period"), and were damaged thereby.  Excluded from the Settlement Class are (i) Defendants, Alfi and former defendant Richard Mowser ("Mowser"); (ii) any Person who served as a partner, control person, executive officer and/or director of Alfi or the Underwriter Defendants during the Settlement Class Period, and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Alfi and the Underwriter Defendants; (iv) any entity in which Alfi, Defendants or Mowser have or had a controlling interest; (v) any trust of which an Individual Defendant or Mowser is the settlor or which is for the benefit of an Individual Defendant or Mowser and/or member(s) of their Immediate Family; (vi) liability insurance carriers for Alfi or the Individual Defendants; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Notwithstanding any provision to the contrary, (a) any Investment Vehicle shall not be excluded from the Settlement Class; and (b) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants, including Alfi's employee retirement and/or benefit plan(s).

## III.   THE RISKS OF CONTINUED LITIGATION

36.   The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $1,725,000.  As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case proceeded through additional years of litigation to a potentially litigated verdict, followed by the inevitable appeals.  Indeed, Alfi's precarious financial condition and limited insurance, which would be significantly reduced by defense costs, claims asserted by the bankruptcy trustee, and the SEC's investigation into the Company and its executives, created the very real risk that Plaintiffs would not be able to recover on a judgment as large as the Settlement after trial and appeal.  Defendants also had or potentially had substantial arguments with respect to liability, loss causation, and damages in this case. These risks, among many others, were carefully considered in evaluating whether the Settlement was in the Settlement Class's best interests.  There was simply no guarantee that Plaintiffs and the Settlement Class would achieve any recovery, let alone one greater than $1.725 million.

### A.   Ability to Pay Risk

37.   The most immediate risks facing Plaintiffs and their counsel was the ability to pay a judgment.  On October 14, 2022, Alfi filed a Chapter 7 bankruptcy petition, which terminated

10

Alfi's operations, and a trustee began liquidating the Company's assets to satisfy its creditors. *See* Section II.E, *supra*.

38.     As a result of Alfi's bankruptcy filing, the Company had little to no assets to pay a judgement and thus there was a very substantial risk that, even if Plaintiffs prevailed on all issues through the remainder of the litigation and secured a verdict at trial, such a victory might be meaningless to the class because they would not be able to recover on that judgment.

39.     This meant that D&O insurance was likely the only practical source of any recovery in this Action.  However, this insurance was quickly wasting and covered litigation costs not only for this Action, but also the claims asserted by Alfi's bankruptcy trustee and the SEC's investigation into the Company and its executives and a later related subpoena.  These funds would be rapidly drained by continued defense costs surrounding this Action and the other claims. Accordingly, the single most certain source for Plaintiffs to obtain a monetary recovery was at risk had the Action not settled.

## B.     Risks to Proving Liability

40.     Plaintiffs and Plaintiffs' Counsel would face numerous additional risks at the motion to dismiss stage, summary judgment, and trial, including establishing Defendants' liability. Defendants forcefully argued in their motions to dismiss – and undoubtedly would have continued to argue at summary judgment and/or trial – that Plaintiffs would not have been able to establish the elements of their claims under the Securities Act and the Exchange Act.

41.     Defendants argued that many of the alleged misstatements and omissions were not material.  For example, Defendants argued that the accounting errors and GAAP violations that Alfi later admitted to in its Restatement were not material because GAAP violations are insufficient on their own, and that many of the accounting errors and GAAP violations were otherwise disclosed in Alfi's financial results.  Defendants also argued that Alfi's modest stock drop following the disclosure of these accounting errors demonstrated their immateriality. Defendants argued that the failure to disclose certain of former management's transactions were not material because the board was later able to sell the asset or later unwind the deals to some degree and that defendant Pereira's statement about the stock buyback was not material because Alfi's board of directors subsequently voted to approve the share repurchase program and conducted the buyback.  Defendants also argued that the statements about the number of rideshares "signed up" or "waiting" for Alfi tablets was not material because, in context, it was a statement

11

about growing demand and encouraging prospects of future earnings, and was thus nonactionable corporate puffery.

42.     Alfi and Defendants also argued that the Company, in its IPO registration statement, warned of the exact risk that happened.  Specifically, Alfi and the Defendants pointed to a warning in the registration statement that Alfi's management team had limited experience in managing a publicly traded company, and that they may not successfully manage the transition to becoming a public company, including complying with the reporting, procedures, and internal control obligations that Alfi was now subject to.  Defendants further argued that many of the statements about Alfi's internal controls, the statements about the number of rideshare drivers "signed up" for an Alfi tablet, and the statement about the stock repurchase were forward looking statements, and thus the PSLRA safe harbor applied because they adequately warned investors and Defendants did not have "actual knowledge" that the statements were false and misleading.

43.     The Underwriter Defendants additionally argued that they were exempt from liability for the false financial statements included in the Registration Statement under the "reliance" or "due diligence" affirmative defense afforded to them by the Securities Act, and further, that Plaintiffs failed to allege a basis for personal jurisdiction against the Underwriter Defendants.

44.     Alfi and individual defendants Pereira and McIntosh also argued that Plaintiffs failed to plead particularized facts giving rise to the requisite inference of scienter required for Plaintiffs' Exchange Act claims.  Moreover, these defendants argued that Plaintiffs' allegations, including that management failed to disclose weaknesses in financial reporting and disclosures controls, made accounting misstatements, caused Alfi to enter into multiple transactions that involved issuance of Company stock without the Board's knowledge or approval, and that the statements regarding the number of rideshare drivers that had signed up or were waiting for tablets, amounted to nothing more than mere corporate mismanagement, and not securities fraud, and should thus be dismissed.

45.     Although Plaintiffs believe they have strong arguments in response to each of these arguments, Defendants' contentions nevertheless pose significant risks to establishing liability had the litigation continued.  Indeed, despite believing that this Action is meritorious, Plaintiffs and Plaintiffs' Counsel are well aware of the high hurdle they would have to surmount in order to successfully plead and *prove* that Defendants violated the Securities Act and the Exchange Act.

12

### C.   Risk of Proving Loss Causation and Damages

46.   Even assuming Plaintiffs overcame the above risks and successfully established Defendants' liability, Plaintiffs would have confronted considerable challenges in establishing loss causation and classwide damages.

47.   Alfi and defendants Pereira and McIntosh argued that none of the announcements on October 28, 2021, November 15 & 16, 2021, and March 11, 2022, amount to "corrective disclosures" sufficient to establish loss causation under the Exchange Act.  First, they argued that the announcements on October 28, 2021, November 15, 2021 and November 16, 2021, could not be corrective disclosures because they did not reveal the truth of any alleged misrepresentations. These defendants also argued that Plaintiffs failed to include more "pertinent" disclosures in their allegations of loss causation and that following these disclosures of the alleged wrongdoing, Alfi's stock price actually *increased*; thereby negating loss causation.

48.   Alfi and defendants Pereira and McIntosh also argued that the March 11, 2022 announcement that Alfi would need to restate certain of its financial results and expected to conclude that material weaknesses in its internal controls over financial reporting for those periods failed to show loss causation because after an "initial, modest drop[]" "Alfi's stock price had a rapid and sustained recovery[.]"  For this same reason, Alfi and Defendants also argued that Plaintiffs' losses under the Securities Act claims were not attributable to the alleged misstatements and omissions in Alfi's registration statement.

49.   In order to prove loss causation and damages, Plaintiffs would have to proffer expert testimony demonstrating: (i) what the "true value" of Alfi's Securities would have been had there been no alleged material misstatements and omissions; (ii) the amount by which Alfi Securities were inflated by the alleged material misstatements and omissions; and (iii) the amount of artificial inflation removed by the disclosures on October 28, 2021, November 15, 2021, November 16, 2021, and March 11, 2022.  Defendants would almost certainly present their own damages expert(s) to present conflicting conclusions and theories regarding the reasons for Alfi Securities price decline on the alleged disclosure dates, requiring a jury to decide the "battle of the experts" – an expensive and intrinsically unpredictable process.

50.   Moreover, expert testimony can often rest on many assumptions, any of which risks being rejected by a jury.  A jury's reaction to such expert testimony is highly unpredictable, and Plaintiffs' Counsel recognized that, in such a battle, there is the possibility that a jury could be

swayed by Defendants' expert(s) and could find only a fraction of the amount of damages Plaintiffs contended were suffered by the Settlement Class. Thus, the amount of damages that the Settlement Class would recover at trial, even if successful on liability issues, was uncertain. Similarly, there was no assurance that any evidentiary documents and testimony relating to liability and damages could be obtained or would be admitted as evidence by the Court at trial. For instance, there is no guarantee that Plaintiffs would have been able to obtain relevant document discovery (including electronic discovery) from the bankruptcy estate. These issues could have seriously affected Plaintiffs' ability to successfully prosecute the allegations in this case.

51.     In sum, had any of Defendants' loss causation and damages arguments been accepted at summary judgment or trial, they could have dramatically limited—if not eliminated— any potential recovery.

### D.     Risks Faced in Obtaining and Maintaining Class Action Status

52.     Defendants would have argued against class certification. The Parties reached the Settlement before Plaintiffs filed a motion for class certification. While Lead Counsel is confident that all of the Rule 23 requirements would have been met, and that the Court would have certified the proposed class, Defendants would have undoubtedly raised arguments challenging the propriety of class certification. If the Court accepted any of Defendants' anticipated arguments in opposition to class certification, that would have created significant hurdles for the proposed class to overcome.

### E.     Other Risks

53.     It is also noteworthy that Plaintiffs' hard work led to a relatively early procedural settlement. Had the case not settled, Plaintiffs would have needed to complete substantial discovery, including reviewing and analyzing documents produced by Defendants, Alfi, and other relevant third parties, taking fact depositions and conducting all expert discovery, the costs of which are assuredly high and the fruits of which are highly uncertain. Plaintiffs also would have had to prevail at multiple stages in the litigation—motions for class certification and summary judgment, at trial and on the appeals that were likely to follow—if they were to collect anything. There was substantial risk at each of these stages, and even a victory at trial does not guarantee a recovery.

54.     Lead Counsel know from painful experience that despite the most vigorous and competent of efforts, attorneys' success in contingent litigation such as this case is never assured.

For instance, Lead Counsel lost a six-week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.).

55.     And, even if Plaintiffs had prevailed at all of those stages, they would have had to succeed on the post-trial appeals that would have surely followed.  This process could have extended for years and might have ultimately led to a smaller recovery—or no recovery at all. Indeed, considering the ability to pay issues, even prevailing at trial would not have guaranteed a recovery larger than the $1.725 million Settlement.

56.     Given these significant litigation risks, Plaintiffs and Plaintiffs' Counsel believe that the Settlement represents an excellent result for the Settlement Class.

**F.     The Settlement is Reasonable in Light of Potential Recovery in the Action**

57.     In addition to the attendant risks of litigation discussed above, the Settlement is also fair and reasonable in light of the potential recovery of available damages.  If Plaintiffs had fully prevailed in all of their claims at the motion to dismiss stage, summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each of the stock price drop dates alleged in this case—*i.e.*, Plaintiffs' ***best-case scenario***—estimated total maximum damages is approximately $11.44 million.  Thus, the $1.725 million Settlement Amount represents approximately 15.1% of the total ***maximum*** damages ***potentially*** available in this Action.

58.     Plaintiffs, taking the above information into account, also recognize that there are significant risks to recovering the maximum estimated damages.

59.     Having evaluated the relative strengths and weaknesses of the Action in light of Defendants' arguments, the stage of the litigation, and Defendants' ability to pay, it is the informed judgment of Plaintiffs' Counsel, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

**IV.    PLAINTIFFS'    COMPLIANCE    WITH    THE    COURT'S    PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE**

60.    The Court's Preliminary Approval Order (ECF No. 127) directed that the Postcard Notice be disseminated to the Settlement Class.  The Preliminary Approval Order also set a deadline of February 13, 2024, for the receipt of objections to the Settlement, Plan of Allocation and/or the application for attorneys' fees and expenses or to request exclusion from the Settlement Class, and set a final fairness hearing date of March 5, 2024 (the "Settlement Hearing").

61.    Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel instructed SCS, the Court-approved Claims Administrator, to begin mailing and emailing notice of the Settlement and to publish the Summary Notice.  Contemporaneously with the mailing of the Postcard Notice and emailing of the Notice and Claim Form, Plaintiffs' Counsel instructed SCS to post downloadable copies of the Notice and Claim Form online at www.strategicclaims.net/Alfi/ (the "Settlement Website").  Upon request, SCS mailed and/or emailed copies of the Notice and/or Claim Form to Settlement Class Members and will continue to do so until the deadline to submit a Claim Form has passed.

62.    The Postcard Notice provides a limited description of the Settlement and directs potential Settlement Class Members to downloadable versions of the Notice and Claim Form posted online on the Settlement Website.  The Notice contains, among other things, a description of the Action; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation; and a description of Settlement Class Members' right to participate in the Settlement, object to the Settlement, the Plan of Allocation and/or the application for attorneys' fees and expenses, or to exclude themselves from the Settlement Class.  The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, and for reimbursement of Litigation Expenses in an amount not to exceed $145,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class.  *See* Craig Decl., Ex. D (Notice) at ¶¶5, 67.

63.    To disseminate the Postcard Notice, Plaintiffs' counsel subpoenaed Alfi's transfer agent, Computershare, and requested the names and addresses of record holders of Alfi Securities that are potential Settlement Class Members.  Plaintiffs' counsel in turn, provided to SCS these

16

transfer records and SCS disseminated 30 copies of the Postcard Notice to each of these potential Settlement Class Members by first-class mail on November 21, 2023. *See* Craig Decl., ¶6.

64.     In addition, SCS maintains a proprietary database with the names and addresses of the largest and most common banks, brokers, and other nominees. *See id.* at ¶5. At the time of the initial mailing, SCS's proprietary master mailing list consisted of 832 banks and brokerage companies, as well as 1,328 mutual funds, insurance companies, pension funds, and money managers. *Id.* On November 17, 2023, SCS caused a letter to be sent by First-Class Mail or e-mailed to the 2,160 nominees contained in the SCS master mailing list. *Id.* The letter notified the nominees of the Settlement and requested that, within 7 calendar days from the date of the letter, they either (a) send a Postcard Notice to their customers who may be beneficial purchasers/owners, (b) email a link to the Notice and Claim Form to their customers who may be beneficial purchasers/owners, or (c) provide SCS with a list of names, mailing addresses or email addresses of such beneficial owners so that SCS could promptly provide notice to them. *Id.* at ¶5 & Ex. C (nominee letter).

65.     As of January 22, 2024, 96,769 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed the link to the Notice and Claim Form. *Id.* at ¶9.

66.     On December 11, 2023, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. *See id.* at ¶11 & Ex. E.

67.     Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on November 17, 2023, to provide potential Settlement Class Members with information concerning the Settlement, submit a claim online, download copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, Complaint, and other relevant documents. *Id.* at ¶13.

68.     The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the application for attorneys' fees and expenses, or to request exclusion from the Settlement Class is February 13, 2024. To date, no requests for exclusion have been received. *Id.* at ¶14. SCS will file a supplemental affidavit after the deadline addressing whether any requests for exclusion have been received. To date, no objection to the Settlement, the Plan of Allocation, or the application for attorneys' fees and expenses has been entered on this Court's docket, or has

otherwise been received by Plaintiffs' Counsel.  Plaintiffs' Counsel will file reply papers by February 27, 2024, that will address any objections that may be received.

## V.     ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

69.     Pursuant to the Preliminary Approval Order (ECF No. 127), and as set forth in the Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $1.725 million Settlement Amount plus any and all interest earned thereon less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court (which may include reimbursement o Plaintiffs for their costs and expenses incurred in representing the Settlement Class); and (iv) any attorneys' fees awarded by the Court) must submit a valid Claim Form with all required information submitted online or postmarked no later than March 29, 2024.  *See* Ex. 1-D (Notice at pp. 3, 6 & ¶¶33, 39); ECF No. 127 at ¶10.  The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, as subject to approval by the Court.

70.     The Plan of Allocation is detailed in the longform Notice.  *See* Ex. 1-D (Notice, pp. 9-15). The Notice is posted online at www.strategicclaims.net/alfi/, is downloadable, and upon request, will be mailed to any potential Settlement Class Members.  The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered losses as a proximate result of the alleged violations of the Securities Act and the Exchange Act as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the alleged violations of law.  Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on his, her, or its total Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants.  *See* Ex. 1-D (Notice at ¶¶44-46). As described in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund.  *Id.* at ¶45.

71.     The Plan of Allocation, developed by one of Plaintiffs' economic expert consultants working in conjunction with Plaintiffs' Counsel, is based on an out-of-pocket theory of damages

consistent with Section 10(b) of the Exchange Act and Section 11 of the Securities Act, and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Action.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' allegation that the price of Alfi's common stock and warrants was artificially inflated due to Defendants' materially false and misleading statements and omissions.

72.     The Plan of Allocation is based on the premise that the decreases in the price of Alfi Securities that followed the alleged corrective disclosures that occurred on October 29, 2021, November 16, 2021, and March 14, 2022 (the "Corrective Disclosure Dates") may be used to measure the alleged artificial inflation in the price of Alfi Securities prior to these disclosures.

73.     For those Settlement Class Members that purchased Alfi Securities pursuant to or traceable to the Offering, the Recognized Loss Amount for shares of Alfi common stock eligible for a recovery under both the Exchange Act and the Securities Act will be the maximum of: (i) the Recognized Loss Amount calculated under the Exchange Act; or (ii) the Recognized Loss Amount calculated under the Securities Act.  The Recognized Loss Amount for Alfi warrants eligible for a recovery under both the Exchange Act and the Securities Act will be the Recognized Loss Amount calculated under the Exchange Act.  *See* Ex. 1-D (Notice at ¶49).  Plaintiffs' consulting damages expert has determined that the Recognized Loss Amount calculated under the Exchange Act would exceed any recognized loss amount calculated in accordance with the Securities Act for all Alfi warrants eligible for both claims.  *Id*. at n.9.

74.     An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including when the Claimant purchased, acquired, or sold Alfi Securities during the Settlement Class Period, in what amounts, and if any securities were sold, when they were sold and in what amounts, as well as the number of valid claims filed by other Claimants.

75.     If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Alfi Securities during the Settlement Class Period, the Claimant's recovery under the Plan of Allocation will be zero.

76.     If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant.  Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater.  In Plaintiffs' Counsel's experience, processing and sending a check for less than $10.00 is cost prohibitive.

19

77.     In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund fairly among Settlement Class Members based on the losses they suffered on transactions in Alfi Securities that were attributable to the conduct alleged in the Complaint.  Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Plaintiffs prevailed at trial.

78.     To date, no objections to the proposed Plan of Allocation have been received by Lead Counsel or filed on the Court's docket.

## VI.     PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

79.     In addition to seeking final approval of the Settlement and Plan of Allocation, Plaintiffs' Counsel are applying for a fee award of 33⅓% of the Settlement Fund (*i.e.*, $575,000 plus interest accrued thereon).  Plaintiffs' Counsel also request reimbursement in the amount of $102,597.91 for out-of-pocket expenses incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of the Action and awards of $1,500 each to the Plaintiffs for their costs, including lost wages, incurred in connection to their roles as representative plaintiffs in the Action. The requested Litigation Expenses of $107,097.91 are below the maximum amount of $145,000 set forth in the Postcard Notice and the Notice.

80.     As set forth in the accompanying Fee Memorandum, the requested 33⅓% award is well within the range of fee awards in other comparable class action settlements, and the resulting fractional (or negative) multiplier on Plaintiffs' Counsel's lodestar of approximately 0.63 strongly supports the reasonableness of the requested attorneys' fee.  The legal authorities supporting the requested fees and expenses are set forth in the concurrently filed Fee Memorandum.  The primary factual bases for the requested fees and expenses are set forth below.

### A.     The Outcome Achieved Is the Result of the Significant Time and Labor that Plaintiffs' Counsel Devoted to the Action

81.     The work undertaken by Plaintiffs' Counsel in investigating and prosecuting the Action and arriving at the present Settlement in the face of substantial risks has been time-consuming and challenging.  At all times throughout the pendency of the Action, for a period of over two years, Plaintiffs' Counsel's efforts were driven and focused on advancing the Action to bring about the most successful outcome for the Settlement Class, whether through settlement or trial.  That work is summarized in ¶10 above.

82.     Moreover, Plaintiffs' Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval.  No additional compensation will be sought for this work.

83.     As set forth in Exhibits 6-8, respectively, Plaintiffs' Counsel expended a combined 1,273.25 hours prosecuting this Action, for a collective total lodestar of $913,104.50, as reflected below:

| LAW FIRM: | LODESTAR |
|---|---|
| Glancy Prongay & Murray LLP (Ex. 6) | $628,509.50 |
| The Rosen Law Firm, P.A. (Ex. 7) | $250,695.00 |
| Saxena White P.A. (Ex. 8) | $33,900.00 |
| **TOTAL LODESTAR** | **$913,104.50** |

84.     The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation.  Additionally, the rates billed by Plaintiffs' Counsel (ranging from $785-1,175 per hour for partners and $395-800 per hour for all other attorneys) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude.  *See* Ex. 9 (table of peer firm billing rates).

85.     Based on the work performed and the quality of the results achieved, Plaintiffs' Counsel respectfully submits that a 33⅓% fee is fully merited under the "percentage of the fund" methodology.  Furthermore, as set forth below, though not required in the Eleventh Circuit, we also respectfully submit that the requested fee is fully supported by a "lodestar multiplier cross-check."

86.     The requested 33⅓% attorneys' fee (which equates to $575,000, plus interest at the rate earned by the Settlement Fund) represents a 0.63 lodestar multiple compared to the base lodestar value of counsel's time.  As shown in Plaintiffs' Counsel's accompanying Fee Memorandum, such a multiplier is below the range of multipliers that courts often award in comparably complex securities class actions, and the fact that it is a negative (or fractional) multiplier is a strong indication that the percentage request is fair and reasonable.

87.     Plaintiffs' Counsel's substantial efforts resulted in the significant Settlement obtained for the benefit of the Settlement Class and, accordingly, this factor weighs strongly in favor of the requested 33⅓% award of attorneys' fees.

**B.      The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases**

88.      This prosecution was undertaken by Plaintiffs' Counsel on a pure contingency fee basis.  From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and to cover the considerable litigation costs required by a case like this one.

89.      With an average lag time of many years for complex cases like this case to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Plaintiffs' Counsel received no compensation during more than two years of litigation and incurred $102,597.91 in litigation-related expenses in prosecuting the Action.

90.      Plaintiffs' Counsel also bore the risk that no recovery would be achieved.  As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever.  Despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured.  Plaintiffs' Counsel knows from experience that the commencement of a class action does not guarantee a settlement.  To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.  And, even when that effort is put forth, sometimes you lose.

91.      Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("private securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets.") (internal quotation marks omitted).  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders.  If this important public

policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

**C.      The Experience and Expertise of Plaintiffs' Counsel, and the Standing and Caliber of Defendants' Counsel**

92.      As demonstrated by the firm resume attached hereto, Plaintiffs' Counsel have extensive and significant experience in the specialized area of securities litigation.  Exs. 6-C, 7-C, 8-C (firm résumés).  The attorneys who were principally responsible for leading the prosecution of this case have prosecuted securities claims throughout their careers and have recovered tens of millions of dollars on behalf of investors.  This experience allowed Plaintiffs' Counsel to develop and implement litigation strategies to address the complex obstacles that are inherent in securities class actions and those specific to this case that were raised by Defendants.  I believe that the recovery achieved here for the Settlement Class reflects the high quality of Plaintiffs' Counsel's representation.

93.      Additionally, the quality of the work performed by Plaintiffs' Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition.  Here, Alfi and Defendants were represented by Smith Gambrell & Russell LLP, Goodwin Procter LLP, and Sheppard, Mullin, Richter & Hampton LLP—well-respected law firms that vigorously represented the interests of their clients throughout this Action.  In the face of this experienced and formidable opposition, Plaintiffs' Counsel were nonetheless able to persuade Defendants to settle the case on terms favorable to the Settlement Class.

**D.      The Reaction of the Settlement Class Supports Plaintiffs' Counsel's Fee Request**

94.      As noted above, as of January 22, 2024, approximately 96,769 Postcard Notices or links to the Notice and Claim Form have been disseminated advising Settlement Class Members that Plaintiffs' Counsel would apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund.  *See* Craig Decl. ¶9 & Ex. D (Notice at ¶5).  In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted once over the *PR Newswire*.  *See* Craig Decl. ¶11 & Ex. E (confirmations of Summary Notice publications).  To date, no objections to the attorneys' fees maximum set forth in the Notice and Postcard Notice have been received by Plaintiffs' Counsel or entered on this Court's docket.  Any objections received after the date of this filing will be addressed in Plaintiffs' Counsel's reply papers to be filed on February 27, 2024.

95.     In sum, Plaintiffs' Counsel accepted this case on a fully contingent basis, committed significant resources to it, and prosecuted the case for more than two years without any compensation or guarantee of success.  Based on the result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, Plaintiffs' Counsel respectfully submit that a fee award of 33⅓%, resulting in a fractional multiplier of 0.63, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

### E.     Lead Plaintiff Support Plaintiffs' Counsel's Fee Request

96.     As set forth in the declaration submitted by Lead Plaintiff Candido Rodriguez, Lead Plaintiff has concluded that Plaintiffs' Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Action.  *See* Ex. 2 (Rodriguez Decl.) at ¶¶9-10.  Lead Plaintiff has been intimately involved in this case since its early stages, and his endorsement of Plaintiffs' Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

### F.     Reimbursement of the Requested Litigation Expenses Is Fair and Reasonable

97.     Plaintiffs' Counsel seek a total of $107,097.91 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes $102,597.91 in expenses reasonably and necessarily incurred by Plaintiffs' Counsel in connection with commencing, litigating, and settling the claims asserted in the Action; as well as a total of $4,500 for Plaintiffs directly related to their representation of the Settlement Class.  I respectfully submit that the request for reimbursement of Litigation Expenses is appropriate, fair, and reasonable and should be approved in the amounts submitted herein.

98.     From the inception of this Action, Plaintiffs' Counsel were aware that they might not recover any of the expenses they incurred in prosecuting the claims against Alfi and Defendants, and, at a minimum, would not recover any expenses until the Action was successfully resolved.  Plaintiffs' Counsel also understood that, even assuming the Action was ultimately successful, an award of expenses would not compensate Plaintiffs' Counsel for the lost use or opportunity costs of funds advanced to prosecute the claims against Alfi and Defendants.  Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

99. In my opinion, the expenses paid were necessary and appropriate for the prosecution and resolution of this Action. A list of the payments by category is set forth below:

| ITEM | AMOUNT |
|---|---|
| COURIER AND SPECIAL POSTAGE | $13.85 |
| COURT FILING FEES | $2,202.00 |
| EXPERTS | $65,452.57 |
| INVESTIGATIONS | $10,592.00 |
| MEDIATORS | $9,315.75 |
| ONLINE RESEARCH | $7,595.26 |
| PHOTOIMAGING | $18.70 |
| PRESS RELEASES | $202.31 |
| SERVICE OF PROCESS | $2,395.97 |
| TRAVEL/TRANSPORTATION/HOTEL/MEALS | $4,809.50 |
| TOTAL | $102,597.91 |

100. As set forth in the chart above, the largest expense was for the retention of experts, amounting to $65,452.57 or 63.8% of the total expenses—one accounting expert and two in the field of damages, loss causation and market efficiency, as well as bankruptcy counsel. These experts were consulted at different points throughout the litigation, including on matters related to the preparation of the Complaint, on matters relating to the negotiation of the Settlement, on matters related to Alfi's filing of bankruptcy and the settlement of the claims in the Bankruptcy Action, and on preparation of the proposed Plan of Allocation.

101. Another large component of expenses, $10,592, or approximately 10.3% of the total expenses, was expended on the retention of an investigator. The investigator conducted numerous interviews with former Alfi employees and other relevant third parties and assisted Lead Counsel in conducting the factual investigation required to develop claims in the Action.

102. Other large components of expenses include $9,315.75, or approximately 9.1% of the total expenses, expended on Plaintiffs' share of mediation fees paid for the services of Mr. Melnick, and $7,595.26, or approximately 7.4% of the total expenses, was expended on the use of online research vehicles to research and support Plaintiffs' various factual allegations in the Complaint and legal arguments while engaged in motion practice.

103. Finally, Lead Plaintiff Candido Rodriguez, plaintiff John K. Allen, on behalf of the Joseph M. Driscoll Trust, and plaintiff Alexander C. Takian seek reimbursement of their reasonable costs and expenses incurred directly in connection with representing the Settlement Class in the amount of $1,500 each. The substantial effort devoted to this Action by Plaintiffs is

25

detailed in their accompanying declarations. *See* Ex. 2 (Rodriguez Decl. ¶¶3-5); Ex. 3 (Allen Decl. ¶4); Ex. 4 (Takian Decl. ¶4). Based on the time and effort expended by Plaintiffs for the benefit of the Settlement Class, I would respectfully request that the Court grant Plaintiffs' request in full.

## VII.   CONCLUSION

104.   In view of the significant recovery for the Settlement Class and the substantial risks of this Action, as described herein and in the accompanying Final Approval Memorandum, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable. I further submit that the requested fee in the amount of 33⅓% of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses in the amount of $107,097.91 (which includes $4,500 for Plaintiffs' costs) should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this, the 30th day of January, 2024, at Los Angeles, California.

*s/ Leanne H. Solish*
Leanne H. Solish

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  January 30, 2024

/s/ Adam D. Warden
Adam D. Warden

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-24232-KMW |
| Plaintiff, | |
| v. | |
| ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., | |
| Defendants. | |

**DECLARATION OF MARGERY CRAIG CONCERNING: (A) MAILING OF CAFA NOTICE; (B) MAILING OF THE POSTCARD NOTICE; (C) PUBLICATION OF THE SUMMARY NOTICE; AND (D) REPORT ON REQUESTS FOR EXCLUSION AND OBJECTIONS**

I, Margery Craig, declare as follows:

1.    I am a Project Manager at Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.[1] I have over sixteen years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception. I have personal knowledge of the facts set forth herein, and if called on to do so, I could and would testify competently thereto.

2.    Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated October 31, 2023 (Dkt. No. 127) (the "Preliminary Approval Order"), SCS was

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated July 20, 2023 (Dkt. No. 122-1) (the "Stipulation").

retained as the Claims Administrator in the above-captioned Action.  Among other things, SCS will administer the Court-approved notice program, interface with Settlement Class Members, and process Claims.  I submit this declaration in order to provide the Court and the Parties with information regarding the notice program, as well as updates concerning other aspects of the Settlement administration process.

**MAILING OF CAFA NOTICE**

3.     At the request of Defendants' Counsel, and separate from our engagement as Claims Administrator, on July 31, 2023, SCS mailed a notice of proposed class action settlement, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), to the federal and state officials designated by Defendants' Counsel, by certified return receipt through the United States Postal Service.  The mailing consisted of: (a) a letter regarding the Settlement approved by Defendants' Counsel describing the mailing (the "CAFA Letter"); and (b) a CD-ROM containing copies of the documents referenced in the CAFA Letter.  Attached as **Exhibit A** is a copy of the CAFA Letter that SCS mailed.

**MAILING OF POSTCARD NOTICE**

4.     Pursuant to the Preliminary Approval Order, to provide actual notice to those persons and entities that purchased or acquired Alfi, Inc. ("Alfi") common stock and/or warrants ("Alfi Securities") during the period between May 4, 2021 and March 11, 2022, inclusive ("Settlement Class Period"), including Alfi Securities purchased or otherwise acquired pursuant and/or traceable to the Registration Statement issued in connection with Alfi's initial public offering on or about May 4, 2021, SCS printed and mailed the Postcard Notice to potential members of the Settlement Class.  A true and correct copy of the Postcard Notice is attached as **Exhibit B**.

2

5.      As in most class actions of this nature, the large majority of potential Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name" — *i.e.*, the securities are purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers.  The names and addresses of these beneficial purchasers are known only to the nominees.  SCS maintains a proprietary master list consisting of 832 banks and brokerage companies, as well as 1,328 mutual funds, insurance companies, pension funds, and money managers.  On November 17, 2023, SCS caused a letter to be mailed or e-mailed to the 2,160 nominees contained in the SCS master mailing list.  The letter notified them of the Settlement and requested that, within 7 calendar days from receipt of the letter, they either: (a) request from SCS sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from SCS a link to the Notice of (I) Pendency of Class Action, Certification of the Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Proof of Claim and Release Form ("Claim Form") and email the link to all such beneficial owners for whom valid email addresses are available within seven (7) calendar days of receipt of the link from the Claims Administrator; or (c) send a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial owners to SCS at *In re Alfi, Inc. Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, Suite 205, Media, PA 19063, in which event SCS would promptly mail the Postcard Notice, or email a link to the Notice and Claim Form, to such beneficial owners.  To the extent a nominee chose to follow procedures (a) or (b), SCS requested that, upon such mailing or emailing, the nominee send a statement to SCS confirming that the mailing or emailing was

made as directed.  A copy of the letter sent to these nominees is attached as **Exhibit C**, and a copy of the Notice and Claim Form is attached as **Exhibit D**.

6.      SCS mailed, by first class mail, postage prepaid, the Postcard Notice to 30 individuals and organizations identified in the transfer records that were provided to SCS by Plaintiffs' Counsel.  These records reflect persons and entities that purchased Alfi Securities for their own account, or for the account(s) of their clients, during the Settlement Class Period. The transfer record mailing was completed on November 21, 2023.

7.      Following these mailings, SCS received 31,778 additional names and addresses of potential Settlement Class Members from individuals or nominees requesting that a Postcard Notice be mailed by SCS.  SCS also received a request from one nominee for 11,000 Postcard Notices so that the nominee could forward them to their customers, and SCS was notified by two nominees that they mailed 40 Postcard Notices to their customers.  To date, 42,848 Postcard Notices have been mailed to potential Settlement Class Members.

8.      Additionally, SCS was provided with 29 email addresses by Plaintiffs' Counsel to email the link to the Notice and Claim Form, and SCS was notified by one of the nominees that they emailed 53,892 of their customers to notify them of this Settlement and provide the link to the Notice and Claim Form.  To date, 53,921 emails have been sent to potential Settlement Class Members.

9.      In total, 96,769 potential Settlement Class Members were notified either by mailed Postcard Notice or emailed the link to the Notice and Claim Form.

10.      SCS sent the Depository Trust Company ("DTC") a Notice and Claim Form for the DTC to publish on its Legal Notice System ("LENS") on November 17, 2023. LENS provides

4

DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.

## PUBLICATION OF THE SUMMARY NOTICE

11. Pursuant to the Preliminary Approval Order, the Summary Notice of (I) Pendency Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice") was published once in *Investor's Business Daily* and transmitted once over *the PR Newswire* on December 11, 2023, as shown in the confirmations of publications attached hereto as **Exhibit E.**

## TOLL-FREE PHONE LINE

12. SCS maintains a toll-free telephone number (1-866-274-4004) for potential Settlement Class Members to call and obtain information about the Settlement. Settlement Class Members may also request a Notice and Claim Form. SCS has promptly responded to each telephone inquiry and will continue to address Settlement Class Member inquiries.

## SETTLEMENT WEBPAGE

13. On November 17, 2023, SCS established a webpage on its website at www.strategicclaims.net/Alfi/ ("Settlement Website"). The Settlement Website is accessible 24 hours a day, 7 days a week. The Settlement Website contains information related to the current status of the Action; case deadlines; the online claim filing link; and important documents such as the Notice, Claim Form, Postcard Notice, Preliminary Approval Order, Stipulation with exhibits, and the operative Complaint. To date, the Settlement Website has received 4,735 pageviews from 1,753 unique users.

**REPORT ON EXCLUSIONS AND OBJECTIONS**

14.     The Postcard Notice, Notice, Summary Notice, and Settlement Website informed potential Settlement Class Members that written requests for exclusion are to be mailed to SCS such that they are received no later than February 13, 2024.  SCS has monitored all mail delivered for this case.  To date, SCS has not received any exclusion requests.

15.     The Postcard Notice, Notice, Summary Notice, and Settlement Website, further informed Settlement Class Members seeking to object to the Settlement, the proposed Plan of Allocation or Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, that objections must be submitted to the Clerk of the Court, Lead Counsel, and Defendants' Counsel such that they are received on or before February 13, 2024.  As of the date of this Declaration, SCS has not been notified of any objections or received any misdirected objections.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22nd day of January 2024, in Media, Pennsylvania.

Margery Craig

6



EXHIBIT A

Phone 866.274.4004
610.565.9202
Fax 610.565.7985

strategicclaims.net

July 31, 2023

**VIA CERTIFIED MAIL**

The Honorable Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

RE:     Notice of Proposed Class Action Settlement Pursuant to 28 U.S.C. § 1715

Dear Sir or Madam:

Strategic Claims Services has been retained by the Defendants in the lawsuit styled as *Rodriguez, et al. v. Alfi, Inc. et al.,* Case No. 1:21-cv-24232-KMW (the "Action") to provide notice of a proposed settlement of the Action as required under the Class Action Fairness Act. *See* 28 U.S.C. § 1715*.* The Action is pending before the Honorable Kathleen M. Williams in the United States District Court, Southern District of Florida, Miami Division.

This letter is to advise you that an Unopposed Motion for Preliminary Approval of Class Action Settlement was filed on July 21, 2023. The Court has not yet ruled on the motion.

The Defendants deny any and all wrongdoing, deny any liability to Lead Plaintiff or the proposed settlement class, and deny that Lead Plaintiff and the proposed class members have suffered any damages attributable to the Defendants' actions. The following documents referenced below are included on the CD that is enclosed with this letter:

1. **28 U.S.C. § 1715(b)(1) – Complaint and Related Materials:** A copy of the original Complaints filed in the action as well as the Amended Consolidated Class Action Complaint are provided on the enclosed CD ROM.

2. **28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing:** The Court has not scheduled a hearing on preliminary approval or final approval as of the date of this letter.

3. **28 U.S.C. § 1715(b)(3) – Notification to Class Members:** A copy of the *Notice* is enclosed on the CD ROM entitled "*Ex. A-1 – Long Form Notice"* as well as *"Ex. A-3 – Summary Notice".*

4. **28 U.S.C. § 1715(b)(4) – Proposed Class Action Settlement:** A copy of the parties' *Stipulation and Agreement of Settlement* (the "Settlement Stipulation") with Exhibits is provided on the enclosed CD ROM.

5. **28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreement:** The parties also contemporaneously agreed to a confidential Supplemental Agreement, which is referenced in the Settlement Stipulation, and which was not filed with the Court.  As described in the Settlement Stipulation, and as is customary in securities class action settlements, the purpose of the confidential Supplemental Agreement is to provide the Defendants with the option to terminate the Settlement if timely requests for exclusion from the class are submitted by eligible class members who/that meet the conditions set forth in the Supplemental Agreement.  The Supplemental Agreement remains confidential and has not been included with the enclosed materials.

6. **28 U.S.C. § 1715(b)(6) – Final Judgment:** As of the date of this letter, no Final Judgment has been issued by the Court.

600 North Jackson Street • Suite 205 • Media, PA 19063

7. **28 U.S.C. § 1715(b)(7)(A)-(B) – Names of Class Members/Estimated Proportionate Share:** Pursuant to 28 U.S.C. § 1715(b)(7)(A), CAFA also requires a defendant, "if feasible," to provide the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement or (B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement.  Because most of securities at issue are likely held in "street name," it is not feasible to provide the names of all class members who reside in each state, or to provide the estimated proportionate share of the claims of such members to the settlement.   For the same reason, it is not feasible at this time to provide a reasonable estimate of the number of class members residing in each state or the estimated proportionate share of the claims of such members to the settlement.

If for any reason, you believe the enclosed information does not fully comply with Section 1715, please contact the counsel for Defendants identified below, to address any concerns or questions that you may have.

SMITH GAMBRELL & RUSSELL LLP
Dan F. Laney, Esq.
1105 West Peachtree St.
N.E., Suite 1000
Atlanta, GA 30309
Counsel for Defendants Smith, Lee, Ficken, Bordes, Cook, and Elkouri

GOODWIN PROCTER LLP
Douglas H. Flaum, Esq.
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Counsel for Defendants Pereira and McIntosh

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Robert D. Weber, Esq.
1901 Avenue of the Stars
Suite 1600
Los Angeles, CA 90067
Counsel for Defendants Kingswood Capital Markets, Revere Securities, LLC, and Westpark Capital, Inc.

Sincerely,

Strategic Claims Services

By:  Matthew Shillady
Title: Director of Operations

Enclosure – CD ROM

600 North Jackson Street • Suite 205 • Media, PA 19063

*In re Alfi, Inc. Securities Litigation*
c/o Strategic Claims Services
600 N. Jackson Street, Suite 205
Media, PA 19063

# EXHIBIT B

*COURT-ORDERED LEGAL NOTICE*

**Forwarding Service Requested**

**Important Notice about a Securities Class Action Settlement.**

**You may be entitled to a CASH payment. This Notice may affect your legal rights. Please read it carefully.**

*Rodriguez et al. v. Alfi Inc., et al.*
Case No. 1:21-cv-24232-KMW

There has been a proposed Settlement of claims against certain officers, directors, and underwriters (collectively, the "Defendants") of Alfi, Inc. ("Alfi"). The Settlement would resolve a lawsuit in which Plaintiffs allege, among other things, that Defendants disseminated materially false and misleading information to the investing public about Alfi's financial results, internal controls, performance, and conflicted transactions in violation of the federal securities laws. Defendants deny any wrongdoing. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired Alfi common stock or warrants (collectively, "Alfi Securities") between May 4, 2021 and March 11, 2022, inclusive, and been damaged thereby.

The Settlement Amount is $1,725,000. The Settlement provides that the Settlement Fund, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and taxes, is to be divided among all Settlement Class Members who submit a valid Claim Form, in exchange for the settlement of this case and the release by Settlement Class Members of claims related to this case. **For Settlement details, including definitions of capitalized words in this notice, read the Stipulation and full Notice, available at www.strategicclaims.net/Alfi/ (the "Settlement Website").**

Your share of the Settlement proceeds will depend on the number of valid Claims submitted, and the number, size and timing of your transactions in Alfi Securities. If every eligible Settlement Class Member submits a valid Claim Form, the average recovery will be $0.19 per affected share of Alfi common stock, and $0.11 per affected Alfi warrant before expenses and other Court-ordered deductions. Your award will be determined *pro rata* based on the number of claims submitted. This is further explained in the detailed Notice found on the Settlement Website.

**To qualify for payment, you must submit a Claim Form**. The Claim Form can be found on the Settlement Website or will be mailed to you upon request to the Claims Administrator (866-274-4004). **Claim Forms must be postmarked or submitted online by March 29, 2024**. If you do not want to be legally bound by the Settlement, you must exclude yourself by February 13, 2024, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you want to object to the Settlement, you may file an objection by February 13, 2024. The detailed Notice explains how to submit a Claim Form, exclude yourself or object.

The Court will hold a hearing in this case on March 5, 2024, to consider whether to approve the Settlement and a request by the lawyers representing the Settlement Class for up to 33⅓% of the Settlement Fund in attorneys' fees, plus actual expenses up to $145,000 for litigating the case and negotiating the Settlement, which may include an application to reimbursement of Plaintiffs' costs and expenses related to their representation of the Settlement Class in an aggregate amount not to exceed $4,500. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll-free (866-274-4004) or visit the Settlement Website and read the detailed Notice.

**EXHIBIT C**

<u>REQUEST FOR NAMES, EMAILS AND ADDRESSES OF CLASS MEMBERS</u>
STRATEGIC CLAIMS SERVICES
600 N. JACKSON STREET, SUITE 205
MEDIA, PA   19063
PHONE: (610) 565-9202        EMAIL: info@strategicclaims.net        FAX: (610) 565-7985

November 17, 2023

This letter is being sent to all entities whose names have been made available to us, or which we believe may know of potential class members.

**We request that you assist us in identifying any individuals who fit the following description:**

ALL PERSONS AND ENTITIES WHO OR WHICH PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK AND/OR WARRANTS OF ALFI, INC.: (I) PURSUANT AND/OR TRACEABLE TO THE REGISTRATION STATEMENT ISSUED IN CONNECTION WITH THE COMPANY'S INITIAL PUBLIC OFFERING ON OR ABOUT MAY 4, 2021 (I.E. FROM MAY 4, 2021 THROUGH OCTOBER 29, 2021, INCLUSIVE), AND/OR DURING THE PERIOD FROM MAY 4, 2021 AND MARCH 11, 2022, INCLUSIVE.

Excluded from the Settlement Class are (i) Defendants, Alfi and Mowser; (ii) any Person who served as a partner, control person, executive officer and/or director of Alfi or the Underwriter Defendants during the Settlement Class Period, and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors or Alfi and the Underwriter Defendants; (iv) any entity in which Alfi, Defendants or Mowser have or had a controlling interest; (v) any trust of which an Individual Defendant or Mowser is the settlor or which is for the benefit of an Individual Defendant or Mowser and/or member(s) of their Immediate Family; (vi) liability insurance carriers for Alfi or the Individual Defendants; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Notwithstanding any provision to the contrary, (a) any Investment Vehicle shall not be excluded from the Settlement Class; and (b) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants, including Alfi's employee retirement and/or benefit plan(s).

**The information below may assist you in finding the above requested information.**

| | |
|---|---|
| *In re Alfi, Inc. Securities Litigation*<br>Case No. 1:21-cv-24232-KMW<br>Exclusion Deadline: February 13, 2024<br>Objection Deadline: February 13, 2024<br>Settlement Hearing: March 5, 2024<br>Claim Filing Deadline: March 29, 2024 | Cusip Number: 00161P109<br>Ticker Symbol: Common: ALF<br>Ticker Symbol: Warrants: ALFIW |

<u>PER COURT ORDER, PLEASE RESPOND WITHIN 7 CALENDAR DAYS FROM THE DATE OF THIS NOTICE.</u>

Please comply in one of the following ways:
1. If you have no beneficial purchasers/owners, please so advise us in writing; or
2. **Supply us with email addresses**, if email addresses are not available, provide us with names and last known addresses of your beneficial purchasers/owners and we will do the emailing of the link to the Notice and Claim Form or mailing of the Postcard Notice. Please provide us this information electronically. If you are not able to do this, labels will be accepted, but it is important that a hardcopy list also be submitted of your clients; or
3. Advise us of how many beneficial purchasers/owners you have, and we will supply you with ample postcards to do the mailing. After the receipt of the Postcard Notice, you have seven (7) calendar days to mail them; or
4. Request a link to the Notice and Claim Form and advise us that you will be emailing the link to your beneficial purchasers/owners within seven (7) days after receipt thereof.

You can bill us for any reasonable expenses actually incurred and **not to exceed**:
- **$0.03 per email notice sent** OR
- **$0.03 per name, address and email address** if you are providing us the records OR
- **$0.03 per name and address, including materials, plus postage at the current pre-sort rate used by the Claims Administrator** if you are requesting the Postcard Notice and performing the mailing.

**All invoices must be received within 30 days of this letter.**

You are on record as having been notified of the legal matter. A copy of the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Proof of Claim and Release Form and all the important documents are available on our website at www.strategicclaims.net/Alfi/. You can also request a copy via email at info@strategicclaims.net. Thank you for your prompt response.

Sincerely,
Claims Administrator
In re Alfi, Inc. Securities Litigation


**PLEASE NOTE - A COPY OF THE POSTCARD NOTICE IS ON THE REVERSE SIDE OF THIS LETTER**

*In re Alfi, Inc. Securities Litigation*
c/o Strategic Claims Services
600 N Jackson St., Ste. 205
Media, PA  19063

| | |
|---|---|
| **COURT-ORDERED LEGAL NOTICE**<br><br>**Forwarding Service Requested**<br><br><br>**Important Notice about a Securities Class Action Settlement.**<br><br>**You may be entitled to a CASH payment.  This Notice may affect your legal rights.  Please read it carefully.**<br><br>Rodriguez et al. v. Alfi Inc., et al.<br> Case No. 1:21-cv-24232-KMW | In re Alfi, Inc. Securities Litigation<br>c/o Strategic Claims Services<br>600 N. Jackson St., Suite 205<br>Media, PA 19063 |

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*PLEASE VISIT WWW.STRATEGICCLAIMS.NET/ALFI/ FOR MORE INFORMATION.*

There has been a proposed Settlement of claims against certain officers, directors, and underwriters (collectively, the "Defendants") of Alfi, Inc. ("Alfi"). The Settlement would resolve a lawsuit in which Plaintiffs allege, among other things, that Defendants disseminated materially false and misleading information to the investing public about Alfi's financial results, internal controls, performance, and conflicted transactions in violation of the federal securities laws. Defendants deny any wrongdoing. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired Alfi common stock or warrants (collectively, "Alfi Securities") between May 4, 2021 and March 11, 2022, inclusive, and been damaged thereby.

The Settlement Amount is $1,725,000. The Settlement provides that the Settlement Fund, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and taxes, is to be divided among all Settlement Class Members who submit a valid Claim Form, in exchange for the settlement of this case and the release by Settlement Class Members of claims related to this case. **For Settlement details, including definitions of capitalized words in this notice, read the Stipulation and full Notice, available at www.strategicclaims.net/Alfi/ (the "Settlement Website").**

Your share of the Settlement proceeds will depend on the number of valid Claims submitted, and the number, size and timing of your transactions in Alfi Securities. If every eligible Settlement Class Member submits a valid Claim Form, the average recovery will be $0.19 per affected share of Alfi common stock, and $0.11 per affected Alfi warrant before expenses and other Court-ordered deductions. Your award will be determined *pro rata* based on the number of claims submitted. This is further explained in the detailed Notice found on the Settlement Website.

**To qualify for payment, you must submit a Claim Form**. The Claim Form can be found on the Settlement Website or will be mailed to you upon request to the Claims Administrator (866-274-4004). **Claim Forms must be postmarked or submitted online by March 29, 2024**. If you do not want to be legally bound by the Settlement, you must exclude yourself by February 13, 2024, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you want to object to the Settlement, you may file an objection by February 13, 2024.  The detailed Notice explains how to submit a Claim Form, exclude yourself or object.

The Court will hold a hearing in this case on March 5, 2024, to consider whether to approve the Settlement and a request by the lawyers representing the Settlement Class for up to 33⅓% of the Settlement Fund in attorneys' fees, plus actual expenses up to $145,000 for litigating the case and negotiating the Settlement, which may include an application to reimbursement of Plaintiffs' costs and  expenses related to their representation of the Settlement Class in an aggregate amount not to exceed $4,500. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll-free (866-274-4004) or visit the Settlement Website and read the detailed Notice.

**EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,<br><br>      Defendants. | Case No. 1:21-cv-24232-KMW |

**NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:**  Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Southern District of Florida (the "Court"), if, during the period between May 4, 2021 and March 11, 2022, inclusive (the "Settlement Class Period"), you purchased or otherwise acquired Alfi, Inc. ("Alfi" or the "Company") common stock and/or warrants ("Alfi Securities"), including Alfi Securities purchased or otherwise acquired pursuant and/or traceable to the Registration Statement issued in  connection with Alfi's initial public offering on or about May 4, 2021 (the "IPO" or "Offering"), and were damaged thereby.[1]

**NOTICE OF SETTLEMENT:**  Please also be advised that the Court-appointed Lead Plaintiff Candido Rodriguez, along with plaintiff John K. Allen, on behalf of the Joseph M. Driscoll Trust, and plaintiff Alexander C. Takian (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class (as defined in ¶ 21 below), have reached a proposed settlement of the Action for $1,725,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from the Settlement.  If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact Alfi, any other Defendants in the Action, or their counsel.  All questions should be directed to Lead Counsel or the Claims Administrator (*see* ¶ 83 below).**

1.     **Description of the Action and the Settlement Class:**  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants Paul

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation"), which is available at www.strategicclaims.net/Alfi/.

Antonio Pereira, Dennis McIntosh, John M. Cook, II, Peter Bordes, Jim Lee, Justin Elkouri, Allison Ficken, and Frank Smith (collectively, the "Individual Defendants");[2] Kingswood Capital Markets, division of Benchmark Investments, LLC (f/k/a Benchmark Investments, Inc.), Revere Securities LLC and WestPark Capital, Inc. (collectively, the "Underwriter Defendants"; and together with the Individual Defendants, "Defendants"); and former-defendants Alfi and Richard Mowser ("Mowser"); violated the federal securities laws.[3]  A more detailed description of the Action is set forth in paragraphs 11-20 below.  The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 21 below.

2.    **Statement of the Settlement Class's Recovery:**  Subject to Court approval, Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $1,725,000 in cash (the "Settlement Amount") to be deposited into an escrow account.  The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class.  The proposed plan of allocation (the "Plan of Allocation") is set forth in paragraphs 44-66 below.

3.    **Estimate of Average Amount of Recovery Per Share or Warrant:**  Based on Plaintiffs' damages expert's estimates of the number of Alfi Securities purchased during the Settlement Class Period that may have been affected by the conduct at issue in the Action and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) is $0.19 per affected share of Alfi common stock, and $0.11 per affected Alfi warrant. Settlement Class Members should note, however, that the foregoing average recovery per share or warrant is only an estimate.  Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, which Alfi Securities they purchased, when and at what prices they purchased/acquired or sold their Alfi Securities, and the total number of valid Claim Forms submitted.  Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* pages 9-14 below) or such other plan of allocation as may be ordered by the Court.

4.    **Average Amount of Damages Per Share or Warrant:**  The Parties do not agree on the average amount of damages per share or warrant that would be recoverable if Plaintiffs were to prevail in the Action.  Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their alleged conduct.

5.    **Attorneys' Fees and Expenses Sought:**  Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2021, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action.  Court-appointed Lead Counsel, Glancy Prongay & Murray LLP, will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33⅓% of the Settlement Fund.  In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $145,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class.  Any fees and expenses awarded by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.  Estimates of the average cost per affected share or warrant, if the Court approves Lead Counsel's fee and expense application, is $0.08 per affected share of Alfi common stock, and $0.05 per affected Alfi warrant.

6.    **Identification of Attorneys' Representatives:**  Plaintiffs and the Settlement Class are represented by Leanne Solish, Esq. of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, CA 90067, (888) 773-9224, Email: settlements@glancylaw.com.

7.    **Reasons for the Settlement:**  Plaintiffs' principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action and the likely appeals that would follow a trial.  This process could be expected to last several years.

---

[2] The Individual Defendants were officers and/or directors of Alfi.

[3] Plaintiffs dismissed Alfi from the Action after it filed for bankruptcy, and Mowser was dismissed without prejudice by Court-order dated May 26, 2023.  Plaintiffs and Defendants are collectively referred to herein as the "Parties."

2

Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED NO LATER THAN MARCH 29, 2024.** | This is the only way to be eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in ¶ 27 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶ 28 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN FEBRUARY 13, 2024.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiffs' Claims. |
| **SUBMIT A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN FEBRUARY 13, 2024.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them. You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON MARCH 5, 2024 AT 1:30 P.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN FEBRUARY 13, 2024.** | Filing an objection and notice of intention to appear by February 13, 2024 allows you to speak in Court, at the discretion of the Court, about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do nothing, you will not be eligible to receive a payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

3

| WHAT THIS NOTICE CONTAINS | |
|---|---|

Why Did I Get Notice Of The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
What Is This Case About? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4
How Do I Know If I Am Affected By The Settlement?  Who Is Included
        In The Settlement Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5
What Might Happen If There Were No Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6
How Are Settlement Class Members Affected By The Action And
        The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6
How Do I Participate In The Settlement?  What Do I Need To Do? . . . . . . . . . . . . . . . . . Page 8
How Much Will My Payment Be? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8
What Payment Are The Attorneys For The Settlement Class Seeking?
        How Will The Lawyers Be Paid? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15
What If I Do Not Want To Be A Member Of The Settlement Class?
        How Do I Exclude Myself? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15
When And Where Will The Court Decide Whether To Approve The Settlement?
        Do I Have To Come To The Hearing?  May I Speak At The Hearing If I
        Don't Like The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16
What If I Bought Shares On Someone Else's Behalf? . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 17
Can I See The Court File?  Whom Should I Contact If I Have Questions? . . . . . . . . . . . . Page 17

| WHY DID I GET NOTICE OF THE SETTLEMENT? |
|---|

8.      The Court directed that the Postcard Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired one or more of the Alfi Securities (listed above) during the Settlement Class Period.  The Court also directed that this Notice be posted online at www.strategicclaims.net/Alfi/  and mailed to you upon request to the Claims Administrator.  The Court has directed us to disseminate these notices because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.

9.      The purpose of this Notice is to inform you of the existence of this class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It also informs you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").  *See* paragraphs 72-73 below for details about the Settlement Hearing, including the date and location of the hearing.

10.     The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

| WHAT IS THIS CASE ABOUT? |
|---|

11.     Two class action complaints were filed in the United States District Court for the Southern District of Florida, which by Order dated February 3, 2022, were consolidated and recaptioned as *Steppacher, Jr., et al. v. Alfi, Inc. et al.*, Case No. 21-cv-24232- KMW.  By further Order dated April 13, 2022, Lead Plaintiff, Lead Counsel, and Liaison Counsel were approved and appointed by the Court and the case was re-styled accordingly.

12.     On June 13, 2022, Plaintiffs filed and served their Amended Consolidated Class Action Complaint (the "Complaint").  The Complaint asserted claims against: (i) the Defendants, Alfi and former-defendant Mowser under Section 11 of the Securities Act of 1933 (the "Securities Act"); (ii) the Individual Defendants and former-defendant Mowser under Section 15 of the Securities Act; (iii) Alfi and defendants Pereira and McIntosh under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (iv) defendants Pereira and McIntosh under Section 20(a) of the Exchange Act. Among other things, the Complaint alleged that Defendants and Alfi issued a materially false and misleading Registration Statement in connection with Alfi's IPO, including materially false and misleading statements about Alfi's financial results and internal controls.

The Complaint alleges that following the IPO, Alfi and defendants Pereira and McIntosh made materially false and misleading statements about Alfi's financial results, internal controls, performance, and material conflicted transactions. The Complaint further alleged that the prices of Alfi common stock and warrants were artificially inflated as a result of Defendants' materially false and misleading statements, and declined when the truth was revealed.

13. On August 12, 2022, multiple motions to dismiss were filed by the Defendants challenging the sufficiency of the allegations against them. ECF Nos. 96-99. On October 11, 2022, Plaintiffs filed their papers in opposition to the motions to dismiss (ECF Nos. 105-107), and on November 28, 2022, various defendants served their reply papers in further support of their motions to dismiss. ECF Nos. 109-111.

14. On October 14, 2022, Alfi filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code (11 U.S.C. §101 *et seq.*) (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware, which was captioned *In re: Alfi, Inc.*, Case No. 22-10979 (KBO). Alfi notified the Court on October 17, 2022 of the pending bankruptcy, and that pursuant to the Bankruptcy Code this Action was automatically stayed as to Alfi.

15. Plaintiffs continued their investigation into the claims asserted, but they also recognized that the arguments in the various motions to dismiss underscored the risks attendant to this litigation. While the Parties believe in the merits of their respective positions, they also recognized the benefits that would accrue if they could reach an agreement to resolve the Action. They began to discuss the possibility of exploring whether a settlement could be reached through a mediation process. The Parties selected Jed Melnick, Esq. of JAMS to serve as the mediator.

16. On February 21, 2023, Plaintiffs, the Individual Defendants, and the Underwriter Defendants filed a joint motion to stay the proceedings, including any oral argument or issuance of any decision and order on Defendants' motion to dismiss, pending the Parties' participation in a mediation session scheduled for March 24, 2023. ECF No. 113. The Court granted the joint motion on February 27, 2023, staying the action through April 3, 2023.

17. In advance of the mediation, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements, including exhibits, that addressed the issues of liability and damages. On March 24, 2023, Plaintiffs' Counsel and counsel for the various defendant groups participated in a full-day virtual mediation session. The session resulted in an agreement in principle to settle the Action for $1,725,000 for the benefit of the Settlement Class.

18. Based on the investigation and mediation of the case and Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, each of the Plaintiffs has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things, (a) the substantial financial benefit that Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

19. Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation. Each of the Defendants denies any wrongdoing, and the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees (defined in ¶ 28 below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted. Similarly, the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

20. On October 31, 2023, the Court preliminarily approved the Settlement, authorized the Postcard Notice to be mailed to potential Settlement Class Members and this Notice to be posted online and mailed to potential Settlement Class Members upon request, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

---

### HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?

21. If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded. The Settlement Class consists of:

> all Persons and entities who or which purchased or otherwise acquired Alfi Securities: (i) pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO (*i.e.*, from May 4, 2021 through October 29, 2021, inclusive), and/or (ii) during the period from May 4,

2021 and March 11, 2022, inclusive (the "Settlement Class Period"), and were damaged thereby.

Excluded from the Settlement Class are (i) Defendants, Alfi and Mowser; (ii) any Person who served as a partner, control person, executive officer and/or director of Alfi or the Underwriter Defendants during the Settlement Class Period, and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Alfi and the Underwriter Defendants; (iv) any entity in which Alfi, Defendants or Mowser have or had a controlling interest; (v) any trust of which an Individual Defendant or Mowser is the settlor or which is for the benefit of an Individual Defendant or Mowser and/or member(s) of their Immediate Family; (vi) liability insurance carriers for Alfi or the Individual Defendants; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Notwithstanding any provision to the contrary, (a) any Investment Vehicle shall not be excluded from the Settlement Class; and (b) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants, including Alfi's employee retirement and/or benefit plan(s). Also excluded from the Settlement Class are any Persons and entities who or which submit a valid request for exclusion from the Settlement Class that is accepted by the Court. *See* "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself," on page 15 below.

**PLEASE NOTE: RECEIPT OF THE POSTCARD NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO A PAYMENT. IF YOU WISH TO BE ELIGIBLE FOR A PAYMENT, YOU MUST SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION POSTMARKED OR SUBMITTED ONLINE NO LATER THAN MARCH 29, 2024.**

| WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT? |
| --- |

22.     If there were no Settlement, the expense and length of continued proceedings necessary to pursue Plaintiffs' claims against the remaining Defendants through trial and appeals would be substantial. Additionally, if Plaintiffs failed to establish any essential legal or factual element of their claims against Defendants, neither Plaintiffs nor the other members of the Settlement Class would recover anything from Defendants. For example, Defendants assert that their statements were not actionable under the federal securities laws because they were not material, and that Defendants' had publicly warned of the exact risk that Plaintiffs allege to be false and misleading. Defendants also asserted that they were exempt from liability for the statements in Alfi's Registration Statement under the due diligence defense afforded to them by the Securities Act, and that statements were not made with the requisite state of mind to support the securities fraud claims alleged. If the litigation continued, Plaintiffs would have faced several obstacles, including—motions to dismiss, class certification, summary judgment, and trial, and if they prevailed on those, the appeals that were likely to follow. A loss at any stage could have resulted in a recovery far less than the Settlement, or no recovery at all. Moreover, Alfi has filed for bankruptcy under Chapter 7, meaning the Company's assets will be liquidated to pay its creditors, and thus there was a very substantial risk that, even if Plaintiffs prevailed on all issues through the remainder of the litigation and secured a verdict at trial, such a victory might be meaningless to the class because they would not be able to recover on that judgment. Thus, there were very significant risks attendant to the continued prosecution of the Action.

| HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED<br>BY THE ACTION AND THE SETTLEMENT? |
| --- |

23.     As a Settlement Class Member, you are represented by Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 16 below.

24.     If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?," on page 15 below.

25.     If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 16 below.

6

26. If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and on behalf of any other Person or entity legally entitled to bring Released Plaintiffs' Claims (as defined in ¶ 27 below) on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendants' Releasees (as defined in ¶ 28 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

27. "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiffs or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase, acquisition and/or sale of Alfi Securities during the Settlement Class Period. Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims asserted by the trustee in the Bankruptcy Action; and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

28. "Defendants' Releasees" means (i) each Defendant and Alfi; (ii) the Immediate Family members (as defined below) of the Individual Defendants; (iii) direct or indirect parent entities, subsidiaries, related entities, and affiliates of Alfi and the Underwriter Defendants; (iv) any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or his or her Immediate Family members; (v) for any of the parties or entities and individuals listed in parts (i) through (iv), their respective past and present general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors (including Mowser), managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, legal representatives, heirs, executors, administrators, and any controlling person thereof; and (vi) any entity in which a Defendant has a controlling interest; all in their capacities as such.

29. "Unknown Claims" means any Released Plaintiffs' Claims which any Plaintiff, any other Settlement Class Member, or any other Person or entity legally entitled to bring Released Plaintiffs' Claims on behalf of any Settlement Class Member in such capacity only, does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant, or any other Person or entity legally entitled to bring Released Defendants' Claims on behalf of the Defendants in such capacity only, does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class Members and releasing parties shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and other releasing parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

30. The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims (as defined in ¶ 31 below) on behalf of Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs'

Releasees (as defined in ¶ 32 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees.

31.    "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any Person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

32.    "Plaintiffs' Releasees" means (i) Plaintiffs, all other plaintiffs in the Action, their respective attorneys, including Plaintiffs' Counsel, and all other Settlement Class Members, and (ii) each of their respective Immediate Family members, and their respective general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, legal representatives, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, all in their capacities as such.

### HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

33.    To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked or submitted online no later than March 29, 2024 to the Claims Administrator**.  A Claim Form is available on the website maintained by the Claims Administrator for the Settlement, www.strategicclaims.net/Alfi/, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll free at 1-866-274-4004.  Please retain all records of your ownership of and transactions in Alfi Securities, as they may be needed to document your Claim.  If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

### HOW MUCH WILL MY PAYMENT BE?

34.    At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

35.    Pursuant to the Settlement, the Settlement Amount of one million seven hundred twenty-five thousand dollars ($1,725,000) will be deposited into an escrow account.  The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

36.    The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

37.    Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

38.    Approval of the Settlement is independent from approval of a plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

39.    Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked or submitted online on or before March 29, 2024 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in ¶ 27 above) against the Defendants' Releasees (as defined in ¶ 28 above) and will be enjoined and prohibited from filing, prosecuting, or

pursuing any of the Released Plaintiffs' Claims against any of the Defendants' Releasees whether or not such Settlement Class Member submits a Claim Form.

40.    Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in Alfi Securities held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares or warrants that they purchased or acquired outside of the ERISA Plan.  Alfi's employee retirement and/or benefit plan(s) are excluded from the Settlement Class.

41.    The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

42.    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

43.    Only Settlement Class Members will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities that are excluded from the Settlement Class by definition, or that exclude themselves from the Settlement Class pursuant to request, will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  Alfi common stock and warrants are the only securities that are included in the Settlement.

## PROPOSED PLAN OF ALLOCATION

44.    The Plan of Allocation (the "Plan of Allocation" or "Plan") set forth below is the plan for the distribution of the Net Settlement Fund that is being proposed by Plaintiffs and Lead Counsel to the Court for approval.  The Court may approve this Plan of Allocation or modify it without additional notice to the Settlement Class.  Any order modifying the Plan of Allocation will be posted on the Settlement website at www.strategicclaims.net/Alfi/.

45.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

46.    Based on the formulas set forth below, a "Recognized Loss Amount" shall be calculated by the Claims Administrator for each purchase or acquisition of Alfi common stock and/or warrants during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.[4, 5]

47.    Recognized Loss Amounts are based primarily on the price declines quantified by Plaintiffs' consulting damages expert over the period which Plaintiffs allege corrective information was entering the marketplace. In the Action, Plaintiffs allege that Defendants made false statements and omitted material facts in the Registration Statement, and that certain Defendants also made false statements and omitted material facts  during the Settlement Class Period (*i.e.*, May 4, 2021 through March 11, 2022, inclusive), which had the effect of allegedly artificially inflating the price of Alfi common stock and warrants. The estimated alleged artificial inflation in the price of Alfi common stock and warrants during the Settlement Class Period is reflected in Table 1 below.

48.    In order to have recoverable damages in the Action, disclosures correcting the alleged misrepresentations must be the cause of the decline in the price of the Alfi common stock and warrants.  In this matter, Plaintiffs allege that corrective disclosures removed the artificial inflation from the price of Alfi common stock and warrants on October 29, 2021, November 16, 2021, and March 14, 2022 (the "Corrective Disclosure Dates").  Accordingly, in order to have a Recognized Loss Amount, Alfi common stock and warrants must have been purchased or acquired during the Settlement Class Period and held at the opening of the U.S. financial markets on at least one of the

---

[4] In connection with the Company's May 2021 IPO, Alfi issued and sold 4,291,045 shares of common stock and warrants to purchase 4,291,045 shares of common stock at the combined public offering price of $4.15 per share and accompanying warrant.  The common stock and warrants were issued separately, and began trading on the Nasdaq Global Capital Market ("Nasdaq") on May 4, 2021 under the ticker symbols "ALF" and "ALFIW," respectively.  On October 25, 2022, after market close, the common stock and warrants were delisted from the Nasdaq and the securities began trading over-the-counter ("OTC") under the ticker symbols "ALFIQ" and "ALFWQ," respectively.

[5] For purposes of calculating an Authorized Claimant's Recognized Loss Amounts for Alfi common stock and accompanying warrants acquired directly in the IPO, the purchase price of each security shall be $3.75 per share of common stock and $0.38 per warrant, which is based on the first observable trading price of each security at the opening of trading on May 4, 2021.

9

alleged Corrective Disclosure Dates.  To the extent a Claimant's transaction in Alfi common stock and/or warrants do not satisfy the conditions set forth in the preceding sentence, his, her or its Recognized Loss Amount for those transactions will be zero.[6]

| Table 1* | | | |
| Alleged Artificial Inflation in Alfi Common Stock and Warrants | | | |
| From | To | Common Stock | Warrants |
| --- | --- | --- | --- |
| May 4, 2021 | October 28, 2021 | $1.58 | $0.86 |
| October 29, 2021 | November 15, 2021 | $0.34 | $0.20 |
| November 16, 2021 | March 11, 2022 | $0.08 | $0.09 |
| March 14, 2022 | Thereafter | $0.00 | $0.00 |

\* For each day during the Settlement Class Period, price inflation in the Alfi common stock and warrants shall be limited to that day's closing price for the respective security.

49.    The Action alleges claims under the Securities Act with respect to Alfi common stock and warrants purchased or otherwise acquired pursuant or traceable to the Company's IPO Registration Statement.[7] It alleges claims under the Exchange Act with respect to all purchases/acquisitions of Alfi common stock and warrants during the Settlement Class Period.[8]  The Recognized Loss Amount under the Exchange Act shall be calculated as described below in "Calculation of Recognized Loss Amount Under the Exchange Act."  The Recognized Loss Amount under the Securities Act shall be calculated as described below in "Calculation of Recognized Loss Amount Under the Securities Act."  The Recognized Loss Amount for shares of Alfi common stock eligible for a recovery under both the Exchange Act and the Securities Act shall be the maximum of: (i) the Recognized Loss Amount calculated under the Exchange Act; or (ii) the Recognized Loss Amount calculated under the Securities Act.  The Recognized Loss Amount for Alfi warrants eligible for a recovery under both the Exchange Act and the Securities Act shall be the Recognized Loss Amount calculated under the Exchange Act.[9]

50.    The "90-day look back" provision of the PSLRA is incorporated into the calculation of Recognized Loss Amounts under the Exchange Act.  This limitation provides that the Recognized Loss Amount for Alfi common stock and warrants purchased or otherwise acquired during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for such security and its average price during the 90-Day Lookback Period.  The Recognized Loss Amount for Alfi common stock or warrants purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for such security and its rolling average price during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

51.    In the calculations below, all purchase and sale prices shall exclude any fees, taxes, and commissions.  If a Recognized Loss Amount is calculated to be a negative number, that Recognized Loss Amount shall be set to zero.  Any transactions in Alfi common stock and warrants executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

---

[6] Section 11 of the Securities Act provides for an affirmative defense of negative causation which prevents recovery for losses that Defendants prove are not attributable to misrepresentations and/or omissions alleged by Plaintiffs in the registration statement.  Thus, the Recognized Loss calculation for claims under the Securities Act assumes that the decline in the price of Alfi common stock, net of market and industry effects, in response to the Corrective Disclosures alleged by Plaintiffs, is the only compensable loss.

[7] Alfi common stock and warrants purchased or otherwise acquired directly in the IPO from an underwriter or its agent, or in the open market during the period May 4, 2021 through October 29, 2021, inclusive, shall be considered a purchase pursuant or traceable to the Registration Statement.

[8] Alfi common stock and warrants purchased or otherwise acquired directly in the IPO from an underwriter or its agent, as well as purchases in the open market during the Settlement Class Period, are eligible for a claim under the Exchange Act.

[9] Plaintiffs' consulting damages expert has determined that the Recognized Loss Amount calculated under the Exchange Act would exceed any recognized loss amount calculated in accordance with the Securities Act for all Alfi warrants eligible for both claims.

**CALCULATION OF RECOGNIZED LOSS AMOUNT UNDER THE EXCHANGE ACT**

**Alfi Common Stock**

52.     Based on the formula set forth below, a Recognized Loss Amount shall be calculated under the Exchange Act for each purchase or acquisition of Alfi common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.

    i.  For each share that was purchased or otherwise acquired during the Settlement Class Period and sold prior to October 29, 2021, the Recognized Loss Amount is $0.00.

    ii.  For each share that was purchased or otherwise acquired during the Settlement Class Period and subsequently sold during the period October 29, 2021 through March 11, 2022, inclusive, the Recognized Loss Amount is *the lesser of*:

        a.  the price inflation per share on the date of purchase as provided in Table 1 above *minus* the price inflation per share on the date of sale as provided in Table 1 above; or

        b.  the purchase price *minus* the sale price.

    iii.  For each share that was purchased or otherwise acquired during the Settlement Class Period and subsequently sold during the period March 14, 2022 through June 9, 2022, inclusive (i.e., sold during the 90-Day Lookback Period), the Recognized Loss Amount is *the least of*:

        a.  the price inflation per share on the date of purchase as provided in Table 1 above; or

        b.  the purchase price *minus* the sale price; or

        c.  the purchase price *minus* the "90-Day Lookback Value" on the date of sale as appears in Table 2 below.

    iv.  For each share that was purchased or otherwise acquired during the Settlement Class Period and still held as of the close of trading on June 9, 2022, the Recognized Loss Amount is *the lesser of*:

        a.  the price inflation per share on the date of purchase as provided in Table 1 above; or

        b.  the purchase price *minus* the average closing price for Alfi common stock during the 90-Day Lookback Period, which is $1.46.

| Table 2 Common Stock 90-Day Lookback Values | | | | | |
|---|---|---|---|---|---|
| **Sale/Disposition Date** | **90-Day Lookback Value** | **Sale/Disposition Date** | **90-Day Lookback Value** | **Sale/Disposition Date** | **90-Day Lookback Value** |
| 3/14/2022 | $1.48 | 4/12/2022 | $1.72 | 5/12/2022 | $1.58 |
| 3/15/2022 | $1.50 | 4/13/2022 | $1.71 | 5/13/2022 | $1.57 |
| 3/16/2022 | $1.59 | 4/14/2022 | $1.70 | 5/16/2022 | $1.57 |
| 3/17/2022 | $1.64 | 4/18/2022 | $1.69 | 5/17/2022 | $1.56 |
| 3/18/2022 | $1.64 | 4/19/2022 | $1.68 | 5/18/2022 | $1.55 |
| 3/21/2022 | $1.68 | 4/20/2022 | $1.67 | 5/19/2022 | $1.55 |
| 3/22/2022 | $1.73 | 4/21/2022 | $1.67 | 5/20/2022 | $1.54 |
| 3/23/2022 | $1.75 | 4/22/2022 | $1.66 | 5/23/2022 | $1.53 |
| 3/24/2022 | $1.76 | 4/25/2022 | $1.66 | 5/24/2022 | $1.52 |
| 3/25/2022 | $1.78 | 4/26/2022 | $1.66 | 5/25/2022 | $1.52 |
| 3/28/2022 | $1.78 | 4/27/2022 | $1.65 | 5/26/2022 | $1.51 |
| 3/29/2022 | $1.79 | 4/28/2022 | $1.65 | 5/27/2022 | $1.50 |
| 3/30/2022 | $1.78 | 4/29/2022 | $1.64 | 5/31/2022 | $1.50 |
| 3/31/2022 | $1.77 | 5/2/2022 | $1.64 | 6/1/2022 | $1.49 |
| 4/1/2022 | $1.76 | 5/3/2022 | $1.63 | 6/2/2022 | $1.49 |
| 4/4/2022 | $1.76 | 5/4/2022 | $1.63 | 6/3/2022 | $1.48 |
| 4/5/2022 | $1.75 | 5/5/2022 | $1.62 | 6/6/2022 | $1.47 |
| 4/6/2022 | $1.75 | 5/6/2022 | $1.62 | 6/7/2022 | $1.47 |
| 4/7/2022 | $1.75 | 5/9/2022 | $1.61 | 6/8/2022 | $1.46 |
| 4/8/2022 | $1.74 | 5/10/2022 | $1.60 | 6/9/2022 | $1.46 |
| 4/11/2022 | $1.73 | 5/11/2022 | $1.59 | N/A | N/A |

**Alfi Warrants**

53.     Based on the formula set forth below, a Recognized Loss Amount shall be calculated under the Exchange Act for each purchase or acquisition of Alfi warrants during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.

    i.   For each warrant that was purchased or otherwise acquired during the Settlement Class Period and sold or exercised prior to October 29, 2021, the Recognized Loss Amount is $0.00.

    ii.   For each warrant that was purchased or otherwise acquired during the Settlement Class Period and subsequently sold or exercised during the period October 29, 2021 through March 11, 2022, inclusive, the Recognized Loss Amount is *the lesser of*:

        a.   the price inflation per warrant on the date of purchase as provided in Table 1 above *minus* the price inflation per warrant on the date of sale/exercise as provided in Table 1 above; or

        b.   the purchase price *minus* the sale price, if sold, or the closing price of the warrants on the date of exercise, if exercised.

    iii.   For each warrant that was purchased or otherwise acquired during the Settlement Class Period and subsequently sold or exercised during the period March 14, 2022 through June 9, 2022, inclusive (i.e., sold during the 90-Day Lookback Period), the Recognized Loss Amount is *the least of*:

        a.   the price inflation per warrant on the date of purchase as provided in Table 1 above; or

        b.   the purchase price *minus* the sale price, if sold, or the closing price of the warrants on the date of exercise, if exercised; or

        c.   the purchase price *minus* the "90-Day Lookback Value" on the date of sale/exercise as appears in Table 3 below.

    iv.   For each warrant that was purchased or otherwise acquired during the Settlement Class Period and still held as of the close of trading on June 9, 2022, the Recognized Loss Amount is *the lesser of*:

        a.   the price inflation per warrant on the date of purchase as provided in Table 1 above; or

        b.   the purchase price *minus* the average closing price for Alfi warrants during the 90-Day Lookback Period, which is $0.48.

| Table 3 Warrants 90-Day Lookback Values | | | | | |
|---|---|---|---|---|---|
| Sale/Disposition Date | 90-Day Lookback Value | Sale/Disposition Date | 90-Day Lookback Value | Sale/Disposition Date | 90-Day Lookback Value |
| 3/14/2022 | $0.39 | 4/12/2022 | $0.50 | 5/12/2022 | $0.48 |
| 3/15/2022 | $0.41 | 4/13/2022 | $0.50 | 5/13/2022 | $0.48 |
| 3/16/2022 | $0.41 | 4/14/2022 | $0.50 | 5/16/2022 | $0.48 |
| 3/17/2022 | $0.41 | 4/18/2022 | $0.50 | 5/17/2022 | $0.48 |
| 3/18/2022 | $0.47 | 4/19/2022 | $0.50 | 5/18/2022 | $0.48 |
| 3/21/2022 | $0.45 | 4/20/2022 | $0.49 | 5/19/2022 | $0.48 |
| 3/22/2022 | $0.45 | 4/21/2022 | $0.49 | 5/20/2022 | $0.48 |
| 3/23/2022 | $0.46 | 4/22/2022 | $0.49 | 5/23/2022 | $0.49 |
| 3/24/2022 | $0.46 | 4/25/2022 | $0.50 | 5/24/2022 | $0.48 |
| 3/25/2022 | $0.46 | 4/26/2022 | $0.51 | 5/25/2022 | $0.48 |
| 3/28/2022 | $0.47 | 4/27/2022 | $0.50 | 5/26/2022 | $0.48 |
| 3/29/2022 | $0.47 | 4/28/2022 | $0.50 | 5/27/2022 | $0.49 |
| 3/30/2022 | $0.46 | 4/29/2022 | $0.50 | 5/31/2022 | $0.49 |
| 3/31/2022 | $0.45 | 5/2/2022 | $0.50 | 6/1/2022 | $0.48 |
| 4/1/2022 | $0.47 | 5/3/2022 | $0.50 | 6/2/2022 | $0.48 |
| 4/4/2022 | $0.49 | 5/4/2022 | $0.50 | 6/3/2022 | $0.48 |
| 4/5/2022 | $0.49 | 5/5/2022 | $0.50 | 6/6/2022 | $0.48 |

12

| Table 3 Warrants 90-Day Lookback Values | | | | | |
|---|---|---|---|---|---|
| Sale/Disposition Date | 90-Day Lookback Value | Sale/Disposition Date | 90-Day Lookback Value | Sale/Disposition Date | 90-Day Lookback Value |
| 4/6/2022 | $0.51 | 5/6/2022 | $0.50 | 6/7/2022 | $0.48 |
| 4/7/2022 | $0.51 | 5/9/2022 | $0.50 | 6/8/2022 | $0.48 |
| 4/8/2022 | $0.51 | 5/10/2022 | $0.50 | 6/9/2022 | $0.48 |
| 4/11/2022 | $0.50 | 5/11/2022 | $0.49 | N/A | N/A |

## CALCULATION OF RECOGNIZED LOSS AMOUNT UNDER THE SECURITIES ACT

### Common Stock

54.     Based on the formula set forth below, a Recognized Loss Amount shall be calculated under the Securities Act for each purchase or acquisition of Alfi common stock pursuant or traceable to the Registration Statement that is listed in the Claim Form and for which adequate documentation is provided.

    i.   For each share that was sold prior to October 29, 2021, the Recognized Loss Amount is $0.00.

    ii.  For each share that was sold during the period October 29, 2021 through December 1, 2021, inclusive, the Recognized Loss Amount is *the lesser of*:

        a.   the price inflation per share on the date of purchase as provided in Table 1 above *minus* the price inflation per share on the date of sale as provided in Table 1 above; or

        b.   the purchase price (not to exceed $3.75) *minus* the sale price.

    iii. For each share that was sold during the period December 2, 2021[10] through March 11, 2022, inclusive, the Recognized Loss Amount is *the lesser of*:

        a.   the price inflation per share on the date of purchase as provided in Table 1 above *minus* the price inflation per share on the date of sale as provided in Table 1 above; or

        b.   the purchase price (not to exceed $3.75) *minus* the greater of the sale price and $3.34.

    iv.  For each share still held as of the close of the U.S. financial markets on March 11, 2022, the Recognized Loss Amount is *the lesser of*:

        a.   the price inflation per share on the date of purchase as provided in Table 1 above; or

        b.   the purchase price (not to exceed $3.75) *minus* $3.34.

## ADDITIONAL PROVISIONS

55.     The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined in paragraph 64 below) is $10.00 or greater.

56.     **FIFO Matching:** All purchases/acquisitions and sales/exercises shall be matched on a First In, First Out ("FIFO") basis.  Under FIFO, sales of Alfi common stock and warrants will be matched against previous purchases/acquisitions of like securities during the Settlement Class Period in chronological order, beginning with the earliest purchase/acquisition during the Settlement Class Period.

57.     **Calculation of Claimant's "Recognized Claim":**  A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her or its Recognized Loss Amounts for all shares of the Alfi common stock and warrants.

58.     **"Purchase/Sale" Dates:**  Purchases/acquisitions and sales/exercises of Alfi common stock and warrants shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of Alfi common stock and warrants during the Settlement Class Period shall not be deemed a purchase/acquisition of Alfi common stock and warrants for the calculation of an Authorized Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of any Alfi common stock or warrant unless (i) the donor/decedent purchased or otherwise acquired such Alfi common stock or warrant during the Settlement Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else

---

[10] December 2, 2021 is the filing date of the first complaint stating a claim under the Securities Act for shares acquired pursuant or traceable to the Registration Statement.  The closing price for Alfi common stock that day was $3.34.

with respect to such Alfi common stock or warrant; and (iii) it is specifically so provided in the instrument of gift or assignment.

59.     **Short Sales:**  The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the Alfi common stock.  The date of a "short sale" is deemed to be the date of sale of Alfi common stock.  Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.  In the event that a Claimant has an opening short position in Alfi common stock, the earliest Settlement Class Period purchases or acquisitions shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

60.     **Option Contracts:** Option contracts are not securities eligible to participate in the Settlement.  With respect to Alfi common stock purchased through the exercise of an option, the purchase date of the Alfi common stock shall be the exercise date of the option, and the purchase price of the Alfi common stock shall be the closing price of Alfi common stock on the date of exercise.  Any Recognized Loss Amount arising from purchases of Alfi common stock acquired during the Settlement Class Period through the exercise of an option on Alfi common stock shall be computed as provided for other purchases of Alfi common stock in the Plan of Allocation.

61.     **Common Stock Acquired Through Exercised Warrants:** With respect to Alfi common stock purchased through the exercise of an Alfi warrant, the purchase date of the Alfi common stock shall be the exercise date of the warrant, and the purchase price of the Alfi common stock shall be the closing price of Alfi common stock on the date of exercise.  Any Recognized Loss Amount arising from purchases of Alfi common stock acquired during the Settlement Class Period through the exercise of a warrant shall be computed as provided for other purchases of Alfi common stock in the Plan of Allocation.

62.     **Market Gains and Losses:** To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Alfi common stock and warrants during the Settlement Class Period, the value of the Claimant's Recognized Claim shall be zero.  To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in Alfi common stock and warrants during the Settlement Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

63.     For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in Alfi common stock and warrants during the Settlement Class Period or suffered a market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[11] and (ii) the sum of the Total Sales Proceeds[12] and the Holding Value.[13]  If the Claimant's Total Purchase Amount *minus* the sum of the Total Sales Proceeds and the Holding Value is a positive number, that number will be the Claimant's market loss on such securities; if the number is a negative number or zero, that number will be the Claimant's market gain on such securities.

64.     **Determination of Distribution Amount:**  The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.  Any Distribution Amounts of less than $10.00 will be included in the pool distributed to those Settlement Class Members whose Distribution Amounts are $10.00 or greater.

65.     After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks.  To the extent any monies remain in the fund at least nine (9) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator shall conduct a re-distribution

---

[11] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for all Alfi common stock and warrants purchased or acquired during the Settlement Class Period.

[12] The total amount received (excluding commissions and other charges) for sales of Alfi common stock and warrants during the Settlement Class Period shall be the "Total Sales Proceeds."

[13] The Claims Administrator shall ascribe a "Holding Value" to shares of Alfi common stock and warrants purchased or acquired during the Settlement Class Period and still held as of the close of trading on March 11, 2022, which shall be $1.48 for the common stock, and $0.39 for the warrants (*i.e.*, the closing price of the securities on the last Corrective Disclosure Date, March 14, 2022).  The total calculated holding values for all Alfi securities shall be the Claimant's "Total Holding Value."

of the funds remaining, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants, who have cashed their prior checks and who would receive at least $10.00 in such additional re-distributions, may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to the Public Justice Foundation, or such other non-sectarian, not-for-profit organization(s) approved by the Court.

66. Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Claimants. No person shall have any claim against Plaintiffs, Plaintiffs' Counsel, Plaintiffs' consulting damages expert, Defendants, Defendants' Counsel, or any of the other Releasees, or the Claims Administrator or other agent designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court. Plaintiffs, Defendants and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of Taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?

67. Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed $33^{1}/_{3}\%$ of the Settlement Fund. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $145,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs related to their representation of the Settlement Class in an aggregate amount not to exceed $4,500. The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?

68. Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *In re Alfi Inc. Securities Litigation*, EXCLUSIONS, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063. The exclusion request must be *received* no later than February 13, 2024. You will not be able to exclude yourself from the Settlement Class after that date. Each Request for Exclusion must: (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Rodriguez et al. v. Alfi Inc., et al.*, Case No. 1:21-cv-24232-KMW"; (c) identify and state the number of shares of Alfi common stock and warrants that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period (*i.e.*, between May 4, 2021 and March 11, 2022, inclusive), as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

69. If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendants' Releasees.

70. If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

15

71.    Defendants have the right to terminate the Settlement if valid requests for exclusion are received from members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiffs and Defendants.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

72.    **Settlement Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Hearing**.

73.    The Settlement Hearing will be held on March 5, 2024 at 1:30 p.m., before the Honorable Kathleen M. Williams at the United States District Court for the Southern District of Florida, Wilkie D. Ferguson, Jr. U.S. Courthouse, Courtroom 11-3, 400 North Miami Avenue, Miami, FL 33128.  The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

74.    Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Objections must be in writing.  You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Southern District of Florida at the address set forth below on or before February 13, 2024.  You must also serve the papers on Lead Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before February 13, 2024**.

| Clerk's Office | Lead Counsel | Defendants' Counsel |
|---|---|---|
| United States District Court Southern District of Florida Clerk of the Court Wilkie D. Ferguson, Jr. U.S. Courthouse 400 North Miami Avenue Miami, FL 33128 | **Glancy Prongay & Murray LLP** Leanne H. Solish, Esq. 1925 Century Park East, Suite 2100 Los Angeles, CA 90067 | **Smith Gambrell & Russell LLP** Dan F. Laney, Esq. 1105 West Peachtree Street. N.E., Suite 1000 Atlanta, GA 30309 **Goodwin Procter LLP** Douglas H. Flaum, Esq. The New York Times Building 620 Eighth Avenue New York, NY 10018 **Sheppard, Mullin, Richter & Hampton LLP** Robert D. Weber, Esq. 1901 Avenue of the Stars, Suite 1600 Los Angeles, CA 90067 |

75.    Any objection: (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of Alfi common stock and warrants that the objecting Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period (*i.e.*, between May 4, 2021 and March 11, 2022, inclusive), as well as the dates and prices of each such purchase/acquisition and sale.  You may not object to the Settlement, the Plan of Allocation or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

76.    You may file a written objection without having to appear at the Settlement Hearing.  You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

77.   If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* **on or before February 13, 2024**.  Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the discretion of the Court.

78.   You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing.  However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶ 74 above so that the notice is *received* **on or February 13, 2024**.

79.   The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class.  If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

80.   **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

### WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

81.   If you purchased or otherwise acquired Alfi Securities between May 4, 2021 and March 11, 2022, inclusive, including in the IPO, for the beneficial interest of Persons or organizations other than yourself as a nominee, you must within SEVEN (7) CALENDAR DAYS of receipt of the Postcard Notice either: (a) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within SEVEN (7) CALENDAR DAYS of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the Notice and Claim Form and email the link to all such beneficial owners for whom valid email addresses are available within SEVEN (7) CALENDAR DAYS of receipt of the link from the Claims Administrator; or (c) send a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial owners to the Claims Administrator at *In re Alfi, Inc. Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, in which event the Claims Administrator shall promptly mail the Postcard Notice, or email a link to the Notice and Claim Form, to such beneficial owners.  Nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available.  If you choose to follow procedures (a) or (b), the Court has directed that, upon such mailing or emailing, you send a statement to the Claims Administrator confirming that the mailing or emailing was made as directed.

82.   Upon full and timely compliance with these directions, nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed (a) $0.03 per name, mailing address and email address (to the extend available) provided to Claims Administrator; (b) $0.03 per email for emailing notice; or (c) $0.03 per postcard, plus postage at the pre-sort rate used by the Claims Administrator, for mailing the Postcard Notice, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  **YOU ARE NOT AUTHORIZED TO PRINT THE POSTCARD NOTICE YOURSELF. POSTCARD NOTICES MAY ONLY BE PRINTED BY THE COURT-APPOINTED CLAIMS ADMINISTRATOR**.

### CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

83.   This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Southern District of Florida, Wilkie D. Ferguson, Jr., U.S. Courthouse, 400 North Miami Avenue, Miami, FL 33128.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.strategicclaims.net/Alfi/.

17

All inquiries concerning this Notice and the Claim Form should be directed to the Claims Administrator or Lead Counsel for the Plaintiffs at:

| *In re Alfi, Inc. Securities Litigation* c/o Strategic Claims Services P.O. Box 230 600 N. Jackson Street, Suite 205 Media, PA 19063 (866) 274-4004 info@strategicclaims.net www.strategicclaims.net/Alfi/ | and/or | Leanne H. Solish, Esq. GLANCY PRONGAY & MURRAY LLP 1925 Century Park East, Suite 2100 Los Angeles, CA 90067 (888) 773-9224 settlements@glancylaw.com |
|---|---|---|

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: October 31, 2023

By Order of the Court
United States District Court
Southern District of Florida

18

*In re Alfi, Inc. Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
**Toll Free Number: (866) 274-4004**
**Settlement Website:** www.strategicclaims.net/Alfi/
**Email:** info@strategicclaims.net

## PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign the Proof of Claim and Release Form ("Claim Form") and either submit it online at www.strategicclaims.net/Alfi/  or mail it by first-class mail to the above address, **submitted online or postmarked no later than March 29, 2024.**

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties, or their counsel.  Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | **20** |
| **PART II – GENERAL INSTRUCTIONS** | **21** |
| **PART III – SCHEDULE OF TRANSACTIONS IN ALFI COMMON STOCK** | **24** |
| **PART IV – SCHEDULE OF TRANSACTIONS IN ALFI WARRANTS** | **25** |
| **PART V – RELEASE OF CLAIMS AND SIGNATURE** | **26** |

ALFI

## PART I – CLAIMANT INFORMATION

(Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Beneficial Owner's Name

Co-Beneficial Owner's Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit or box number)

| City | State | Zip Code |
|---|---|---|
| | | |

Foreign Country (only if not USA)

Last four digits of Social Security Number or Taxpayer Identification Number

| Telephone Number (home) | Telephone Number (work) |
|---|---|
| | |

Email address (Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)

Account Number (account(s) through which the securities were traded)[14]

Claimant Account Type (check appropriate box):
- ☐ Individual (includes joint owner accounts)
- ☐ Corporation
- ☐ IRA/401K
- ☐ Pension Plan
- ☐ Estate
- ☐ Other _____ (please specify)
- ☐ Trust

---

[14] If the account number is unknown, you may leave blank.  If the same legal entity traded through more than one account, you may write "multiple."  Please see paragraph 11 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, *i.e.*, when you are filing on behalf of distinct legal entities.

20

ALFI

## PART II – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice.  The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the Releases described in the Notice and provided for in this Claim Form.

2.      This Claim Form is directed to all Persons and entities who or which purchased or otherwise acquired the common stock and/or warrants of Alfi (collectively, "Alfi Securities"): (i) pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO on or about May 4, 2021 (*i.e.*, from May 4, 2021 through October 29, 2021, inclusive), and/or (ii) during the period from May 4, 2021 and March 11, 2022, inclusive (the "Settlement Class Period"), and were damaged thereby.[15]  All Persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.      Excluded from the Settlement Class are: (i) Defendants, Alfi and former-defendant Richard Mowser ("Mowser"); (ii) any Person who served as a partner, control person, executive officer and/or director of Alfi or the Underwriter Defendants during the Settlement Class Period, and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Alfi and the Underwriter Defendants; (iv) any entity in which Alfi, Defendants or Mowser have or had a controlling interest; (v) any trust of which an Individual Defendant or Mowser is the settlor or which is for the benefit of an Individual Defendant or Mowser and/or member(s) of their Immediate Family; (vi) liability insurance carriers for Alfi or the Individual Defendants; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Notwithstanding any provision to the contrary, (a) any Investment Vehicle shall not be excluded from the Settlement Class; and (b) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants, including Alfi's employee retirement and/or benefit plan(s).  Also excluded from the Settlement Class are any Persons and entities who or which submit a valid request for exclusion from the Settlement Class that is accepted by the Court.

4.      If you are not a Settlement Class Member do not submit a Claim Form.  YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER.  THUS, IF YOU ARE EXCLUDED FROM THE SETTLEMENT CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.      If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class.  Thus, if you are a Settlement Class Member, the Judgment will release, and enjoin the filing or continued prosecution of, the Released Plaintiffs' Claims against the Defendants' Releasees.

6.      You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Settlement Class and if you complete and return this form as specified below.  If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.      Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement.  The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8.      Use the Schedules of Transactions in Parts III–IV of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable Alfi Securities.  On the Schedules

---

[15] During the Settlement Class Period, Alfi common stock and Alfi warrants were listed on the Nasdaq Capital Market ("Nasdaq") under the ticker symbols "ALF" and "ALFIW," respectively.  On October 25, 2022, after market close, the common stock and warrants were delisted from the Nasdaq and the securities began trading over-the-counter ("OTC") under the ticker symbols "ALFIQ" and "ALFWQ," respectively.

of Transactions, please provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of the applicable Alfi Securities, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9.      Please note:  Only Alfi common stock and warrants purchased and/or acquired during the Settlement Class Period are eligible under the Settlement.  However, because the law provides for a "90-Day Lookback Period" (described in the Plan of Allocation set forth in the Notice), you must provide documentation related to your purchases and sales of Alfi common stock and warrants during the period from March 14, 2022 to June 9, 2022, inclusive, in order for the Claims Administrator to calculate your Recognized Loss amount under the Plan of Allocation and process your claim.

10.      You are required to submit genuine and sufficient documentation for all of your transactions and holdings in the Alfi Securities set forth in the Schedules of Transactions in Parts III–IV of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  The Parties and the Claims Administrator do not independently have information about your investments in Alfi Securities.  IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator.  Also, please do not highlight any portion of the Claim Form or any supporting documents.**

11.      Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name).  Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12.      All joint beneficial owners must sign this Claim Form.  If you purchased or otherwise acquired Alfi common stock and warrants during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired Alfi common stock and warrants during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities, but the third party is the record owner.  The beneficial owner, not the record owner, must sign this Claim Form.

13.      Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

(a)      expressly state the capacity in which they are acting;

(b)      identify the name, account number, Social Security Number (or taxpayer identification number), address, and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the Alfi Securities; and

(c)      furnish evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14.      By submitting a signed Claim Form, you will be swearing that you:

(a)      own(ed) the Alfi Securities you have listed in the Claim Form; or

(b)      are expressly authorized to act on behalf of the owner thereof.

15.      By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16.      If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after the completion of all

claims processing.  This could take substantial time.  Please be patient.

17.    **PLEASE NOTE:**  As set forth in the Plan of Allocation, each Authorized Claimant shall receive its pro rata share of the Net Settlement Fund.  If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

18.    If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator at *In re Alfi Inc. Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, or by email at info@strategicclaims.net, or by toll-free phone at (866)-274-4004, or you may download the documents from the Settlement website, www.strategicclaims.net/Alfi/.

19.    **NOTICE REGARDING ELECTRONIC FILES:**  Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the electronic filing requirements and file layout, you may visit the Settlement website at https://www.strategicclaims.net/institutional-filers/ or you may email the Claims Administrator's electronic filing department at efile@strategicclaims.net.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information.  Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at efile@strategicclaims.net to inquire about your file and confirm it was received and acceptable.

## IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD.  THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS.  IF YOU DO NOT RECEIVE AN  ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS  ADMINISTRATOR TOLL FREE AT (866) 274-4004.**

ALFI

## PART III – SCHEDULE OF TRANSACTIONS IN ALFI COMMON STOCK

Complete this Part III if and only if you purchased/acquired Alfi common stock in the Company's initial public offering on or about May 4, 2021 (the "IPO"), or during the period from May 4, 2021, through and including March 11, 2022.  Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, paragraph 10, above.  Do not include information in this section regarding securities other than Alfi common stock.

**1.  PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD:** Separately list each and every purchase/acquisition (including free receipts) of Alfi common stock in the Company's IPO or during the period from after the opening of trading on May 4, 2021, through and including the close of trading on March 11, 2022.  (Must be documented.)

| Date of Purchase (List Chronologically) (Month/Day/Year) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /      / | | $ | $ |
| /      / | | $ | $ |
| /      / | | $ | $ |
| /      / | | $ | $ |

**2.  PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOKBACK PERIOD:** State the total number of shares of Alfi common stock purchased/acquired (including free receipts) from after the opening of trading on March 14, 2022, through and including the close of trading on June 9, 2022.  If none, write "zero" or "0." _____

**3.  SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH JUNE 9, 2022:** Separately list each and every sale or disposition (including free deliveries) of Alfi common stock from after the opening of trading on May 4, 2021, through and including the close of trading on June 9, 2022.  (Must be documented.) — **IF NONE, CHECK HERE** ○

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /      / | | $ | $ |
| /      / | | $ | $ |
| /      / | | $ | $ |
| /      / | | $ | $ |

**4.  ENDING HOLDINGS:** State the total number of shares of Alfi common stock held as of the close of trading on June 9, 2022.  (Must be documented.)  If none, write "zero" or "0." _____

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

24

ALFI

### PART IV – SCHEDULE OF TRANSACTIONS IN ALFI WARRANTS

Complete this Part IV if and only if you purchased/acquired Alfi warrants in the Company's IPO or during the period from May 4, 2021, through and including March 11, 2022. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, paragraph 10, above. Do not include information in this section regarding securities other than Alfi warrants.

**1. PURCHASES/ACQUISITIONS DURING THE SETTLEMENT CLASS PERIOD:** Separately list each and every purchase/acquisition (including free receipts) of Alfi warrants in the Company's IPO or during the period from after the opening of trading on May 4, 2021, through and including the close of trading on March 11, 2022. (Must be documented.)

| Date of Purchase (List Chronologically) (Month/Day/Year) | Number of Warrants Purchased | Purchase Price Per Warrant | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**2. PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOKBACK PERIOD:** State the total number of Alfi warrants purchased/acquired (including free receipts) from after the opening of trading on March 14, 2022, through and including the close of trading on June 9, 2022. If none, write "zero" or "0." _____

**3. SALES DURING THE SETTLEMENT CLASS PERIOD THROUGH JUNE 9, 2022:** Separately list each and every sale/disposition (including free deliveries) of Alfi warrants from after the opening of trading on May 4, 2021, through and including the close of trading on June 9, 2022. (Must be documented.) | **IF NONE, CHECK HERE** ○

| Date of Sale (List Chronologically) (Month/Day/Year) | Number of Warrants Sold | Sale Price Per Warrant | Total Sale Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |
| / / | | $ | $ |

**4. WARRANT EXERCISES MAY 4, 2021 THROUGH JUNE 9, 2022:** Separately list each and every exercise of Alfi warrants from the opening of trading on May 4, 2021, through and including the close of trading on June 9, 2022. (Must be documented.) | **IF NONE, CHECK HERE** ○

| Date of Exercise (List Chronologically) (Month/Day/Year) | Number of Warrants Exercised |
|---|---|
| / / | |
| / / | |
| / / | |
| / / | |

**5. ENDING HOLDINGS:** State the total number of Alfi warrants held as of the close of trading on June 9, 2022. (Must be documented.) If none, write "zero" or "0." _____

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

25

ALFI

### *PART V – RELEASE OF CLAIMS AND SIGNATURE*
### *YOU MUST READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE 27 OF THIS CLAIM FORM.*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation, I (we), on behalf of myself (ourselves) and my (our) respective heirs, predecessors, successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim (as defined in the Stipulation and in the Notice) against the Defendants and the other Defendants' Releasees (as defined in the Stipulation and in the Notice), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

### CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), that:

1. I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2. The Claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice and in paragraph 2 on page 21 of this Claim Form, and is (are) not excluded from the Settlement Class by definition or pursuant to request as set forth in the Notice and in paragraph 3 on page 21 of this Claim Form;

3. I (we) own(ed) the Alfi common stock and/or Alfi warrants identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4. The Claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions of Alfi common stock or warrants, and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

5. The Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

6. I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator, or the Court may require;

7. The Claimant(s) waive(s) the right to trial by jury and agree(s) to the Court's summary disposition of the determination of the validity and amount of the claim made by means of this Claim Form and knowingly and intentionally waive(s) any right of appeal to any court including the U.S. Court of Appeals for the Eleventh Circuit;

8. I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

9. The Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it is no longer subject to backup withholding. **If the IRS has notified the Claimant(s) that he, she, or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

ALFI

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of Claimant                                                                    Date

_____

Print your name here

_____

Signature of joint Claimant, if any                                                 Date

_____

Print your name here

***If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:***

_____

Signature of person signing on behalf of Claimant                        Date

_____

Print your name here

_____

CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, *ETC*. (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 13 ON PAGE 22 OF THIS CLAIM FORM.)

## <u>REMINDER CHECKLIST:</u>

1. Please sign the above release and certification.  If this Claim Form is being made on behalf of joint Claimants, then both must sign.
2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.
3. Please do not highlight any portion of the Claim Form or any supporting documents.
4. Do not send original security certificates or documentation.  These items cannot be returned to you by the Claims Administrator.
5. Keep copies of the completed Claim Form and documentation for your records.
6. The Claims Administrator will acknowledge receipt of your Claim Form by mail within 60 days.  Your claim is not deemed filed until you receive an acknowledgement postcard.  **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at (866) 274-4004.**
7. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address.  If you change your name, please inform the Claims Administrator.
8. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@strategicclaims.net, or toll-free at **866-274-4004** or visit www.strategicclaims.net/Alfi/.  Please DO NOT call Alfi, Inc. or any of the other Defendants or their counsel with questions regarding your claim.

27

*In re Alfi, Inc. Securities Litigation*
c/o Strategic Claims Services
600 N. Jackson Street, Suite 205
Media, PA 19063

**IMPORTANT LEGAL NOTICE – PLEASE FORWARD**

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN MARCH 29, 2024**, ADDRESSED AS FOLLOWS:

*In re Alfi, Inc. Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
(866) 274-4004
info@strategicclaims.net
www.strategicclaims.net/Alfi/

**OR SUBMITTED ONLINE AT WWW.STRATEGICCLAIMS.NET/ALFI/ ON OR BEFORE MARCH 29, 2024**.

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before March 29, 2024 is indicated on the envelope and it is mailed First Class and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms. Please be patient and notify the Claims Administrator of any change of address.

# AFFIDAVIT

**STATE OF NEW JERSEY**                                    )
                                                                                )   ss:
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )**

I, Keith Oechsner, being duly sworn, depose and say that I am the advertising clerk of the Publisher of

INVESTORS BUSINESS DAILY, a weekly national newspaper of general circulation throughout  the

United States, and that the notice attached to this Affidavit has been regularly

published in INVESTORS BUSINESS DAILY for National distribution for

 1   insertion(s) on the following date(s):

DEC-11-2023

ADVERTISER: ALFI, INC.;

and that the foregoing statements are true and correct to the best of my knowledge.

Sworn to before me this
 13   day of   December     2023

_____
Notary Public



**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION**

CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

    v.

ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,

    Defendants.

cv-24232-KMW

---

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO:** All Persons and entities who or which purchased or otherwise acquired the common stock and/or warrants of Alfi, Inc. (collectively, "Alfi Securities"): (i) pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO on or about May 4, 2021 (*i.e.*, from May 4, 2021 through October 29, 2021, inclusive), and/or (ii) during the period from May 4, 2021 and March 11, 2022, inclusive, and were damaged thereby[1] (the "Settlement Class"):

**PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of Florida, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action, Certification of Settlement Class,  and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Plaintiffs in the Action have reached a proposed settlement of the Action for $1,725,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on March 5, 2024 at 1:30 p.m., before the Honorable Kathleen M. Williams at the United States District Court for the Southern District of Florida, Wilkie D. Ferguson, Jr. U.S. Courthouse, Courtroom 11-3, 400 North Miami Avenue, Miami, FL 33128, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation, and in the Notice, should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund**. The Notice and Proof of Claim Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.strategicclaims.net/Alfi/ ("Settlement Website"). You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at *In re Alfi, Inc. Securities Litigation*, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, 1-866-274-4004, info@strategicclaims.net.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form *postmarked* to the Claims Administrator, or online at the Settlement Website, no later than March 29, 2024. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than February 13, 2024, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than February 13, 2024, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, Alfi, Inc., or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

GLANCY PRONGAY & MURRAY LLP
Leanne H. Solish, Esq.
1925 Century Park East, Suite 2100, Los Angeles, CA 90067
(888) 773-9224
settlements@glancylaw.com

Requests for the Notice and Claim Form should be made to:

*In re Alfi, Inc. Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205, Media, PA 19063
(866) 274-4004
info@strategicclaims.net
www.strategicclaims.net/Alfi/

By Order of the Court

[1]   All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation"), which is available at www.strategicclaims.net/Alfi/.

## How To Read IBD Mutual Fund Tables

IBD tables have funds with 36-Month Performance Rating A+, A or A-, at least $200 million assets plus funds ranked by assets regardless of their performance. All other mutual funds are found at www.investors.com/ibd-data-tables. † denotes independent fund not part of family listed above. Each 36-Month Rating, vs. all other mutual funds, is recalculated monthly on a total return basis. Dividends and capital gains included. Daily accrual fund returns are calculated on a monthly basis. A+ = Top 5%, A = Top 10%, A- = Top 15%, B+ = Top 20%, B = Top 25%, B-=Top 30%, C+ =Top 35%, C = Top 40%, C- = Top 45%, D+ = Top 50%, D = Top 60%, D- = Top 70%, E = Below 70%. A+, A, A- and B+ 36-Month Ratings are boldfaced. Top 2% of funds in % performance yesterday are boldfaced. Performance of income funds may be compared to other income funds. b = assets used to pay 12(b)(1) plan distribution costs, r=redemption charge may apply, n=no initial load and appears after Net Asset Value, m=multiple fees, p=previous day's quote, s=split, x=ex-dividend or capital gains distribution. 5-Yr After Tax Rtn=5 year after-tax return assuming average income tax rate of 35% on dividends and 15% long-term capital gains rate.NAVChg is calculated vs. the prior session.

*[The majority of this page consists of dense mutual fund performance tables organized alphabetically, with columns: 36 Mo Performance Rating | Fund | YTD % Chg | 12Wk % Chg | 5 Yr After Tax Rtn | Net Asset Value | NAV Chg. The sections are labeled: Ivy Funds, –J–K–L–, Janus Henderson C, JHF III DispVal, JHITFunLgCpCorFd, John Hancock, John Hancock Class 1, John Hancock Funds A, John Hancock Instl, JPMorgan A Class, JPMorgan I Class, JPMorgan J Class, JPMorgan Z Class, Kinetics Funds, Laudus Funds, Lazard Instl, Legg Mason I, Loomis Sayles Fds, Lord Abbett A, Lord Abbett I, –M–N–O–, MainStay Fds A, Mairs&Power, Mass Mutual, MassMutual Select, Matthews Asian Funds, Metropolitan West, MFS Funds A, MFS Funds I, Morgan Stanley Inst, MorganStanleyPathway, Muhlenkmp, Munder Funds, Munder Funds CI A, Nationwide Fds R6, Nationwide Funds, Natixis Funds, Neuberger Berman Fds, Neuberger Berman Inv, Neuberger Berman Tr, New Covenant Funds, Nicholas Group, Northern Funds, Nuveen Funds A, Nuveen Funds I, –P–Q–R–, PACE Funds CI P, Parnassus Fds, Paydenfunds, Pear Tree, Perm Port Funds, PGIM Funds A, PGIM Jenn Funds A, PGIM Quant Funds A, PIMCO Fds Instl, PIMCO Funds I2, PIMCO Funds Instl, Pioneer Funds A, Pioneer Funds Y, Price Funds, –S–T–U–, Putnam Funds Class Y, RBB Fund, Royce Funds, Russell Funds S, Rydex Dynamic Fds, Rydex Investor Class, Schwab Funds, SEI Inst Intl F, SEI Tax Exempt F, Selected Funds, Shelton Funds, SmeadFds, Spirit of America, SSgA Funds, State Street Institu, TCW Funds, Third Avenue, Thrivent Funds, TIAACREF Inst, TIAACREF Retail, Tocqueville Funds, Torray Fund, Tortoise Capital, Touchstone Family Fd, Touchstone Funds Gro, Touchstone Strategic, Transamerica A, Trust for Professional Manager, Tweedy Browne Fds, Ultimus, UM Funds, USAA Aggressive Gr, USAA Gbl Mgd Vol, USAA Group, USAA Income, USAA IntmTerm Bd, USAA ShortTerm Bd, –V–W–X–, Value Line Funds, VanEck Funds, Vanguard Funds Adm, Vanguard Funds Ins, Vanguard Funds InsP, Vanguard Funds InstP, Vanguard Funds Inv, Victory Funds, Victory:Estab Val, Victory:Global En Tran, Victory:Integrity SCV, Victory:RS Global, Victory:RS Partners, VictoryIt:Mkt Neu I, Virtus Equity Trust, VirtusFunds, VirtusFunds CI I, Vivaldi Merger, Voya Fds, Wasatch, WCM Focus Funds, Weitz Funds, WesMark Funds, Western Asset, Westwood Quality Sma, Williamsburg Inv IT, Wilmington Funds, Wm Blair Funds CI I.]*

---

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION**

CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., Defendants.

Case No. 1:21-cv-24232-KMW

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION, CERTIFICATION OF SETTLEMENT CLASS, AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

TO: All Persons and entities who or which purchased or otherwise acquired the common stock and/or warrants of Alfi, Inc. (collectively, "Alfi Securities"): (i) pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO on or about May 4, 2021 (i.e., from May 4, 2021 through October 29, 2021, inclusive), and/or (ii) during the period from May 4, 2021 and March 11, 2022, inclusive, and damaged thereby" (the "Settlement Class"):

PLEASE READ THIS NOTICE CAREFULLY, YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of Florida, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Plaintiffs in the Action have reached a proposed settlement of the Action for $1,725,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on March 5, 2024 at 1:30 p.m., before the Honorable Kathleen M. Williams at the United States District Court for the Southern District of Florida, Wilkie D. Ferguson, Jr. U.S. Courthouse, Courtroom 11-3, 400 North Miami Avenue, Miami, FL 33128, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation, and in the Notice, should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund. The Notice and Proof of Claim Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www. strategicclaims.net/Alfi/ ("Settlement Website"). You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator or in Re Alfi, Inc. Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, 1-866-274-4004, info@strategicclaims.net.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form postmarked to the Claims Administrator, or online at the Settlement Website, no later than March 29, 2024. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is received no later than February 13, 2024, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are received no later than February 13, 2024, in accordance with the instructions set forth in the Notice.

Please do not contact the Court, the Clerk's office, Alfi, Inc., or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

GLANCY PRONGAY & MURRAY LLP
Leanne H. Solish, Esq.
1925 Century Park East, Suite 2100, Los Angeles, CA 90067
(888) 773-9224
settlements@glancylaw.com

Requests for the Notice and Claim Form should be made to:

In re Alfi, Inc. Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205, Media, PA 19063
(866) 274-4004
info@strategicclaims.net
www.strategicclaims.net/Alfi/

By Order of the Court

1 All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation"), which is available at www.strategicclaims.net/Alfi/.

**INVESTOR'S BUSINESS DAILY**

# 12 DAYS
# OF DEALS

Get some of the biggest discounts of the year on IBD products!

December 13-24   investors.com/12days

© 2023 Investor's Business Daily, LLC. Investor's Business Daily, IBD,
IBD Digital, IBD Live and Leaderboard are trademarks of Investor's Business Daily, LLC.

©2023 Investor's Business Daily, LLC. All rights reserved.

**mcraig@strategicclaims.net**

| | |
|---|---|
| **From:** | phhubs@prnewswire.com |
| **Sent:** | Monday, December 11, 2023 9:00 AM |
| **To:** | mcraig@strategicclaims.net |
| **Subject:** | PR Newswire: Press Release Distribution Confirmation for Glancy Prongay & Murray LLP. ID#4023294-1-1 |

Hello

Your press release was successfully distributed at: 11-Dec-2023 09:00:00 AM ET

Release headline: Glancy Prongay & Murray LLP Announces the Proposed Class Action Settlement on Behalf of Purchasers of the Common Stock and/or Warrants of Alfi, Inc. – ALF
Word Count: 944
Product Selections:
US1
Visibility Reports Email
Complimentary Press Release Optimization
PR Newswire ID: 4023294-1-1

View your release:* https://www.prnewswire.com/news-releases/glancy-prongay--murray-llp-announces-the-proposed-class-action-settlement-on-behalf-of-purchasers-of-the-common-stock-andor-warrants-of-alfi-inc--alf-301989758.html?tc=eml_cleartime

Thank you for choosing PR Newswire!

Regards,

Your 24/7 Content Services Team
888-776-0942
PRNCS@prnewswire.com

Achieve your communications goals every time you distribute content, with these tips for crafting your next perfect press release: https://www.cision.com/us/resources/tip-sheets/easy-pr-sharing-guide/?sf=false

US Members, find audience, engagement and other key metrics for your release by accessing your complimentary Visibility Reports in the Online Member Center: https://portal.prnewswire.com/Login.aspx

* If the page link does not load immediately, please refresh and try again after a few minutes .

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br> v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,<br><br>   Defendants. | Case No. 1:21-cv-24232-KMW |

**DECLARATION OF LEAD PLAINTIFF CANDIDO RODRIGUEZ IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF <u>LITIGATION EXPENSES</u>**

I, Candido Rodriguez, declare as follows:

1.    I am the Court-appointed Lead Plaintiff in the above-captioned securities class action (the "Action").[1]  ECF No. 69.  I respectfully submit this declaration in support of: (a) Plaintiffs' motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation; and (b) Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, including approval of my request to recover the reasonable costs and expenses I incurred in connection with my representation of the Settlement Class in the prosecution of this Action.

2.    I am aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1; 78u-4.  I have personal knowledge of the matters set forth herein, as I have been directly involved in monitoring and overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement, and I could and would testify competently to these matters.

I.    **LEAD PLAINTIFF'S OVERSIGHT OF THE LITIGATION**

3.    I have been actively involved in the prosecution of this case since April 13, 2022, when the Court appointed me to serve as Lead Plaintiff in this Action.  ECF No. 69.

4.    In fulfillment of my responsibilities as a Lead Plaintiff, I have worked closely with Plaintiffs' Counsel regarding the litigation and resolution of this case.

5.    Throughout the litigation, I received status reports from Plaintiffs' Counsel on case developments, and participated in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement.  In particular, I: (a) regularly

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 20, 2023.  ECF No. 122-1.

1

communicated with my attorneys regarding the posture and progress of the case, as well as strategy; (b) compiled and produced trading records to my attorneys; (c) reviewed and/or discussed with my attorneys all pleadings and briefs filed in the Action; (d) reviewed and/or discussed with my attorneys all Court Orders; (e) prepared for the mediation by, among other things, discussing with counsel the mediation statements and mediation strategy; (f) made myself available during the mediation and consulted with counsel regarding settlement negotiations; (g) evaluated the Settlement Amount, conferred with counsel, and ultimately approved the Settlement; and (h) communicated with counsel regarding the process of finalizing the Settlement.

6.      In short, I have done my best to vigorously promote the interests of the Settlement Class and to obtain the largest recovery possible under the circumstances.

## II.      APPROVAL OF THE SETTLEMENT

7.      As detailed in the paragraphs above, through my active participation I was both well-informed of the status and progress of the litigation, and the status and progress of the settlement negotiations in this Action.

8.      Based on my involvement in the prosecution and resolution of the claims asserted in the Action, I believe that the proposed Settlement provides a fair, reasonable, and adequate recovery for the Settlement Class, particularly in light of the risks of continued litigation, and I fully endorse approval of the Settlement by the Court.

## III.      PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

### A.      Attorneys' Fees And Litigation Expenses

9.      I believe Plaintiffs' Counsel's request for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund is fair and reasonable in light of the work Plaintiffs' Counsel performed on behalf of the Settlement Class.

2

10.     I have evaluated Plaintiffs' Counsel's fee request by considering the quality and amount of the work performed, the recovery obtained for the Settlement Class, and the risks Plaintiffs' Counsel bore in prosecuting this Action on behalf of myself, the other Plaintiffs, and the Settlement Class on a fully contingent basis, which included the fronting of all expenses. I have authorized this fee request for the Court's ultimate determination.

11.     I further believe the litigation expenses for which Plaintiffs' Counsel has requested reimbursement are reasonable, and represent costs and expenses necessary for the prosecution and resolution of the claims in the Action. Based on the foregoing, and consistent with my obligation to the Settlement Class to obtain the best result at the most efficient cost, I fully support Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

**B.      Lead Plaintiff's Litigation-Related Costs And Expenses**

12.     I understand that reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4). For this reason, in connection with Plaintiffs' Counsel's request for reimbursement of Litigation Expenses, I respectfully request reimbursement for the costs and expenses that I incurred directly relating to my representation of the Settlement Class in the Action.

13.     I am a farmer and the time I devoted to representing the Settlement Class in this Action was time that I otherwise would have spent at my job, investing, or on other activities and, thus, represented a cost to me. I respectfully request reimbursement in the amount of $1,500 for the time I devoted to participating in this Action. I make this request based on the conservative effort that I devoted approximately 15 hours in the litigation-related activities described above. It is my belief that this request for reimbursement is fair and reasonable and that the time and effort

3

I devoted to this litigation was necessary to help achieve an excellent result for the Settlement Class under the circumstances.

## IV.   CONCLUSION

14.   In conclusion, I strongly endorse the Settlement as fair, reasonable, and adequate. I appreciate the Court's attention to the facts presented in my declaration and respectfully request that the Court approve: (a) Plaintiffs' motion for final approval of the proposed Settlement and approval of the Plan of Allocation; (b) Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses; and (c) my request for reimbursement of the reasonable costs and expenses incurred in prosecuting the Action on behalf of the Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on ___12/23/2023___, in El Carpio, Valladolid, Spain.

_____          _____

Candido Rodriguez

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-24232-KMW |
| Plaintiff, | |
| v. | |
| ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., | |
| Defendants. | |

**DECLARATION OF NAMED PLAINTIFF JOHN K. ALLEN, ON BEHALF OF THE JOSEPH M. DRISCOLL TRUST, IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF <u>ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

DocuSign Envelope ID: BD882778-500F-454D-994E-BEB09863DD05

I, John K. Allen, on behalf of the Joseph M. Driscoll Trust, declare as follows:

1.      I am a named plaintiff in the above-captioned securities class action (the "Action").[1] *See* ECF No. 82.  I respectfully submit this declaration in support of: (a) Plaintiffs' motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation; and (b) Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, including approval of my request to recover the reasonable costs and expenses I incurred in connection with my representation of the Settlement Class in the prosecution of this Action.

2.      I am aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1; 78u-4.  I have personal knowledge of the matters set forth herein, and I could and would testify competently to these matters.

3.      As an additional named plaintiff in this Action, I have worked closely with Plaintiffs' Counsel regarding the litigation of this case.

4.      Throughout my involvement in the litigation, I received status reports from Plaintiffs' Counsel on case developments, and participated in discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement.  In particular, during course of my involvement, I: (a) regularly communicated with my attorneys regarding the posture and progress of the case, as well as strategy; (b) compiled and produced trading records to my attorneys; (c) reviewed all pleadings and briefs filed in the Action; (d) reviewed all Court Orders; (e) prepared for the mediation by, among other things, discussing with counsel the mediation statements and mediation strategy; (f) consulted with counsel regarding

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 20, 2023.  ECF No. 122-1.

1

DocuSign Envelope ID: BD882778-500F-454D-994E-BEB09863DD0D

settlement negotiations; (g) evaluated the Settlement Amount, conferred with counsel, and ultimately approved the Settlement; and (h) communicated with counsel regarding the process of finalizing the Settlement.

5.     In short, I have done my best to vigorously promote the interests of the Settlement Class and to obtain the largest recovery possible under the circumstances.

6.     As detailed in the paragraphs above, through my active participation I was both well-informed of the status and progress of the litigation, and the status and progress of the settlement negotiations in this Action.

7.     Based on my involvement in the prosecution and resolution of the claims asserted in the Action, I believe that the proposed Settlement provides a fair, reasonable, and adequate recovery for the Settlement Class, particularly in light of the risks of continued litigation, and I fully endorse approval of the Settlement by the Court.

8.     I understand that reimbursement of a named plaintiff's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4).  For this reason, in connection with Plaintiffs' Counsel's request for reimbursement of Litigation Expenses, I respectfully request reimbursement for the costs and expenses that I incurred directly relating to my representation of the Settlement Class in the Action.

9.     I am a CEO of a software company, and the time I devoted to representing the Settlement Class in this Action was time that I otherwise would have spent at my job, investing, or on other activities and, thus, represented a cost to me.  I respectfully request reimbursement in the amount of $1,500 for the time I devoted to participating in this Action.  I make this request based on the conservative effort that I devoted approximately 17 hours in the litigation-related activities described above.  It is my belief that this request for reimbursement is fair and reasonable

2

and that the time and effort I devoted to this litigation was necessary to help achieve an excellent result for the Settlement Class under the circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on January 23, 2024, in Easton, MA.

DocuSigned by:

John Allen

013FA1769AA44A7...

John K. Allen, on behalf of
the Joseph M. Driscoll Trust

3

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,

Defendants.

Case No. 1:21-cv-24232-KMW

**DECLARATION OF NAMED PLAINTIFF ALEXANDER C. TAKIAN IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF <u>LITIGATION EXPENSES</u>**

I, Alexander C. Takian, declare as follows:

1.      I am a named plaintiff in the above-captioned securities class action (the "Action").[1] *See* ECF No. 82.  I respectfully submit this declaration in support of: (a) Plaintiffs' motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation; and (b) Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, including approval of my request to recover the reasonable costs and expenses I incurred in connection with my representation of the Settlement Class in the prosecution of this Action.

2.      I am aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1; 78u-4.  I have personal knowledge of the matters set forth herein, and I could and would testify competently to these matters.

3.      As an additional named plaintiff in this Action, I have worked closely with Plaintiffs' Counsel regarding the litigation of this case.

4.      Throughout my involvement in the litigation, I received status reports from Plaintiffs' Counsel on case developments, and participated in discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement.  In particular, during course of my involvement, I: (a) regularly communicated with my attorneys regarding the posture and progress of the case, as well as strategy; (b) compiled and produced trading records to my attorneys; (c) reviewed all pleadings and briefs filed in the Action; (d) reviewed all Court Orders; (e) prepared for the mediation by, among other things, discussing with counsel the mediation statements and mediation strategy; (f) consulted with counsel regarding

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 20, 2023.  ECF No. 122-1.

1

settlement negotiations; (g) evaluated the Settlement Amount, conferred with counsel, and ultimately approved the Settlement; and (h) communicated with counsel regarding the process of finalizing the Settlement.

5.      In short, I have done my best to vigorously promote the interests of the Settlement Class and to obtain the largest recovery possible under the circumstances.

6.      As detailed in the paragraphs above, through my active participation I was both well-informed of the status and progress of the litigation, and the status and progress of the settlement negotiations in this Action.

7.      Based on my involvement in the prosecution and resolution of the claims asserted in the Action, I believe that the proposed Settlement provides a fair, reasonable, and adequate recovery for the Settlement Class, particularly in light of the risks of continued litigation, and I fully endorse approval of the Settlement by the Court.

8.      I understand that reimbursement of a named plaintiff's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4).  For this reason, in connection with Plaintiffs' Counsel's request for reimbursement of Litigation Expenses, I respectfully request reimbursement for the costs and expenses that I incurred directly relating to my representation of the Settlement Class in the Action.

9.      I am an sales engineer, and the time I devoted to representing the Settlement Class in this Action was time that I otherwise would have spent at my job, investing, or on other activities and, thus, represented a cost to me.  I respectfully request reimbursement in the amount of $1,500 for the time I devoted to participating in this Action.  I make this request based on the conservative effort that I devoted approximately 20 hours in the litigation-related activities described above.  It is my belief that this request for reimbursement is fair and reasonable and that the time and effort

2

I devoted to this litigation was necessary to help achieve an excellent result for the Settlement Class under the circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on January 22, 2024, in ____E. Greenwich____, _RI__.

DocuSigned by:

*ALEXANDER TAKIAN*

3315F298A199437...

Alexander C. Takian

3

# EXHIBIT 5



# CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

# Securities Class Action Settlements

2022 Review and Analysis

Type of Claim (continued)

- Only 4% of settlements in 2022 had "simplified tiered damages" less than $25 million, the lowest observed to date.

- Cases with smaller "simplified tiered damages" are more likely to be associated with issuers that had been delisted from a major exchange and/or declared bankruptcy prior to settlement. In 2022, the percentage of such issuers for settled cases was at an all-time low (11%).

- The 2022 median and average settlement as a percentage of "simplified tiered damages" of 3.6% and 5.4%, respectively, are all-time lows. *(See Appendix 5 for additional information on median and average settlements as a percentage of "simplified tiered damages.")*

---

Figure 5: Median Settlement as a Percentage of "Simplified Tiered Damages" by Damages Ranges in Rule 10b-5 Cases 2013–2022

(Dollars in millions)



Note: Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

# About the Authors

**Laarni T. Bulan**

Ph.D., Columbia University; M.Phil., Columbia University; B.S., University of the Philippines

Laarni Bulan is a principal in Cornerstone Research's Boston office, where she specializes in finance. Her work has focused on securities and other complex litigation addressing class certification, damages, and loss causation issues, firm valuation, and corporate governance, executive compensation, and risk management issues. She has also consulted on cases related to insider trading, market manipulation and trading behavior, financial institutions and the credit crisis, derivatives, foreign exchange, and securities clearing and settlement.

Dr. Bulan has published notable academic articles in peer-reviewed journals. Her research covers topics in dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan had a joint appointment at Brandeis University as an assistant professor of finance in its International Business School and in the economics department.

**Laura E. Simmons**

Ph.D., University of North Carolina at Chapel Hill; M.B.A., University of Houston; B.B.A., University of Texas at Austin

Laura Simmons is a senior advisor with Cornerstone Research. She has more than 25 years of experience in economic consulting. Dr. Simmons has focused on damages and liability issues in securities class actions, as well as litigation involving the Employee Retirement Income Security Act (ERISA). She has also managed cases involving financial accounting, valuation, and corporate governance issues. She has served as a testifying expert in litigation involving accounting analyses, securities case damages, ERISA matters, and research on securities lawsuits.

Dr. Simmons's research on pre– and post–Reform Act securities litigation settlements has been published in a number of reports and is frequently cited in the public press and legal journals. She has spoken at various conferences and appeared as a guest on CNBC addressing the topic of securities case settlements. She has also published in academic journals, including research focusing on the intersection of accounting and litigation. Dr. Simmons was previously an accounting faculty member at the Mason School of Business at the College of William & Mary. From 1986 to 1991, she was an accountant with Price Waterhouse.

The authors gratefully acknowledge the research efforts and significant contributions of their colleagues at Cornerstone Research in the writing and preparation of this annual update. The views expressed herein do not necessarily represent the views of Cornerstone Research.

Many publications quote, cite, or reproduce data, charts, or tables from Cornerstone Research reports. The authors request that you reference Cornerstone Research in any reprint, quotation, or citation of the charts, tables, or data reported in this study.

Please direct any questions and requests for additional information to the settlement database administrator at settlementdatabase@cornerstone.com.

**Boston**
617.927.3000

**Chicago**
312.345.7300

**London**
+44.20.3655.0900

**Los Angeles**
213.553.2500

**New York**
212.605.5000

**San Francisco**
415.229.8100

**Silicon Valley**
650.853.1660

**Washington**
202.912.8900

www.cornerstone.com

© 2023 by Cornerstone Research.
All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,<br><br>      Defendants. | Case No. 1:21-cv-24232-KMW |

**DECLARATION OF LEANNE H. SOLISH, ESQ. IN SUPPORT OF PLAINTIFFS'
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF
<u>GLANCY PRONGAY & MURRAY LLP</u>**

I, Leanne H. Solish, declare as follows:

1.        I am a partner at the law firm Glancy Prongay & Murray LLP ("GPM").[1]  GPM is the Court-appointed Lead Counsel in the above-captioned action (the "Action").  *See* ECF No. 69.  I submit this declaration in support of Plaintiffs' Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.  I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.        GPM, as Lead Counsel, was involved in all aspects of the Action and its settlement, as set forth in the Declaration of Leanne H. Solish in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

3.        The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by attorneys and professional support staff of my firm who, from inception of the Action through and including January 19, 2024, billed ten or more hours to the Action, and the lodestar calculation for those individuals based on my firm's billing rates for 2023.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in their final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.

4.        I am the partner who oversaw or conducted the day-to-day activities in the Action and I reviewed these daily time records in connection with the preparation of this declaration.  The purpose of this review was to confirm both the accuracy of the records as well as the necessity for,

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 20, 2023.  ECF No. 122-1.

1

and reasonableness of, the time committed to the litigation.  As a result of this review, I made reductions to certain of my firm's time entries such that the time included in Exhibit A reflects that exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time of the GPM attorneys and staff reflected in Exhibit A was reasonable and necessary for the effective and efficient prosecution and resolution of the Action.  No time expended on the application for fees and reimbursement of expenses has been included.

5.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are consistent with the rates approved by courts in other securities or shareholder litigation when conducting a lodestar cross-check.

6.      The total number of hours reflected in Exhibit A is 852.70 hours.  The total lodestar reflected in Exhibit A is $628,509.50, consisting of $584,444.50 for attorneys' time and $44,065.00 for professional support staff time.

7.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates .

8.      As detailed in Exhibit B, my firm is seeking reimbursement of a total of $70,312.58 in expenses incurred in connection with the prosecution of this Action from inception through January 24, 2024.  These expenses include expenses for travel to the final approval hearing, and airfare was at economy rates.

9.      The litigation expenses incurred in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  The expenses reflected in Exhibit B are the expenses actually incurred by my firm.

2

10.     Attached hereto as Exhibit C is a brief biography of GPM, including the attorneys who were involved in the Action.

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.  Executed on January 24, 2024, in Los Angeles, California.

*s/ Leanne H. Solish*
Leanne H. Solish

3

**EXHIBIT A**

*Rodriguez et al. v. Alfi Inc., et al.,*
**Case No. 1:21-cv-24232-KMW**

**Glancy Prongay & Murray LLP**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH JANUARY 19, 2024**

| TIMEKEEPER/CASE | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **ATTORNEYS:** | | | | |
| Robert Prongay | Partner | 44.70 | $900 | $40,230.00 |
| Joseph Cohen | Partner | 63.00 | $1,100 | $69,300.00 |
| Leanne Heine Solish | Partner | 599.20 | $785 | $470,372.00 |
| Ani Setian | Associate | 11.50 | $395 | $4,452.50 |
| **TOTAL ATTORNEY** | | **718.40** | | **$584,444.50** |
| **PROFESSIONAL STAFF:** | | | | |
| Harry Kharadjian | Senior Paralegal | 40.50 | $325.00 | $13,162.50 |
| Paul Harrigan | Senior Paralegal | 51.50 | $325.00 | $16,737.50 |
| John D. Belanger | Research Analyst | 13.50 | $350.00 | $4,725.00 |
| Michaela Ligman | Research Analyst | 12.80 | $350.00 | $4,480.00 |
| Gabrielle Zavaleta | Research Analyst | 16.00 | $310.00 | $4,960.00 |
| **TOTAL PROFESSIONAL STAFF** | | **134.30** | | **$44,065.00** |
| **TOTAL LODESTAR** | | **852.70** | | **$628,509.50** |

4

**EXHIBIT B**

*Rodriguez et al. v. Alfi Inc., et al.,*
**Case No. 1:21-cv-24232-KMW**

**Glancy Prongay & Murray LLP**

**EXPENSE REPORT**

**FROM INCEPTION THROUGH JANUARY 24, 2024**

| ITEM | AMOUNT |
|---|---|
| COURIER & SPECIAL POSTAGE | $13.85 |
| COURT FILING FEES | $1,200.00 |
| EXPERTS ACCOUNTING | $16,148.57 |
| EXPERTS DAMAGES | $9,200.00 |
| EXPERTS PLAN OF ALLOCATION | $15,250.50 |
| INVESTIGATIONS | $10,592.00 |
| MEDIATORS | $3,974.08 |
| ONLINE RESEARCH | $7,204.61 |
| PHOTOCOPYING/IMAGING | $18.70 |
| PRESS RELEASES | $110.00 |
| SERVICE OF PROCESS | $2,395.97 |
| TRAVEL AIRFARE | $1,722.21 |
| AUTOMOTIVE TRANSPORTATION | $200.62 |
| HOTELS | $2,261.94 |
| TRAVEL MEALS | $19.53 |
| **GRAND TOTAL** | **$70,312.58** |

**EXHIBIT C**

**Glancy Prongay & Murray LLP**

**FIRM RESUME**



1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: 310.201.9150

## FIRM RESUME

**Glancy Prongay & Murray LLP** (the "Firm") has represented investors, consumers and employees for over 25 years. Based in Los Angeles, with offices in New York City and Berkeley, the Firm has successfully prosecuted class action cases and complex litigation in federal and state courts throughout the country.  As Lead Counsel, Co-Lead Counsel, or as a member of Plaintiffs' Counsel Executive Committees, the Firm's attorneys have recovered billions of dollars for parties wronged by corporate fraud, antitrust violations and malfeasance. Indeed, the Institutional Shareholder Services unit of RiskMetrics Group has recognized the Firm as one of the top plaintiffs' law firms in the United States in its Securities Class Action Services report for every year since the inception of the report in 2003.  The Firm's efforts have been publicized in major newspapers such as the *Wall Street Journal*, the *New York Times*, and the *Los Angeles Times*.

Glancy Prongay & Murray's commitment to high quality and excellent personalized services has boosted its national reputation, and we are now recognized as one of the premier plaintiffs' firms in the country. The Firm works tenaciously on behalf of clients to produce significant results and generate lasting corporate reform.

The Firm's integrity and success originate from our attorneys, who are among the brightest and most experienced in the field. Our distinguished litigators have an unparalleled track record of investigating and prosecuting corporate wrongdoing. The Firm is respected for both the zealous advocacy with which we represent our clients' interests as well as the highly-professional and ethical manner by which we achieve results. We are ideally positioned to pursue securities, antitrust, consumer, and derivative litigation on behalf of our clients. The Firm's outstanding accomplishments are the direct result of the exceptional talents of our attorneys and employees.

## SECURITIES CLASS ACTION SETTLEMENTS

Appointed as Lead or Co-Lead Counsel by judges throughout the United States, Glancy Prongay & Murray has achieved significant recoveries for class members in numerous securities class actions, including:

*In re Mercury Interactive Corporation Securities Litigation*, USDC Northern District of California, Case No. 05-3395-JF, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $117 million.

*In re Real Estate Associates Limited Partnership Litigation*, USDC Central District of California, Case No. 98-7035-DDP, in which the Firm served as local counsel and plaintiffs achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

*In Re Yahoo! Inc. Securities Litigation*, USDC Northern District of California, Case No. 5:17-cv-00373-LHK, in which the Firm served as Co-Lead Counsel and achieved an $80 million settlement.

*The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, USDC District of Minnesota, Case No. 10-cv-04372-DWF/JJG, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at $62.5 million.

*Shah v. Zimmer Biomet Holdings, Inc.*, USDC Northern District of Indiana, Case No. 3:16-cv-815-PPS-MGG, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $50 million.

*Schleicher v. Wendt*, (Conseco Securities Litigation), USDC Southern District of Indiana, Case No. 02-1332-SEB, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of over $41 million.

*Robb v. Fitbit, Inc.*, USDC Northern District of California, Case No. 3:16-cv-00151, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $33 million.

*Yaldo v. Airtouch Communications*, State of Michigan, Wayne County, Case No. 99-909694-CP, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

*Lapin v. Goldman Sachs*, USDC Southern District of New York, Case No. 03-0850-KJD, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $29 million.

*In re Heritage Bond Litigation*, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, the Firm recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

*In re Livent, Inc. Noteholders Litigation*, USDC Southern District of New York, Case No. 99 Civ 9425-VM, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $27 million.

*Mild v. PPG Industries, Inc.*, USDC Central District of California, Case No. 18-cv-04231, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $25 million.

*Davis v. Yelp, Inc.*, USDC Northern District of California, Case No. 18-cv-0400, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $22.5 million.

*In re ECI Telecom Ltd. Securities Litigation*, USDC Eastern District of Virginia, Case No. 01-913-A, in which the Firm served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

*In re Sesen Bio, Inc. Securities Litigation*, USDC Southern District of New York, Case No. 21-cv-07025, a securities fraud class action, in which the Firm served as Lead Counsel for the Class and achieved a settlement of $21 million.

*Senn v. Sealed Air Corporation*, USDC New Jersey, Case No. 03-cv-4372-DMC, a securities fraud class action, in which the Firm acted as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Gilat Satellite Networks, Ltd. Securities Litigation*, USDC Eastern District of New York, Case No. 02-1510-CPS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Lumenis, Ltd. Securities Litigation*, USDC Southern District of New York, Case No.02-CV-1989-DAB, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

*Wilson v. LSB Industries, Inc.*, USDC Southern District of New York, Case No. 15-cv-07614, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $18.45 million.

*In re Infonet Services Corporation Securities Litigation*, USDC Central District of California, Case No. CV 01-10456-NM, in which as Co-Lead Counsel, the Firm achieved a settlement of $18 million.

*Pierrelouis v. Gogo Inc.*, USDC Northern District of Illinois, Case No. 18-cv-04473, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $17.3 million.

*In re ESC Medical Systems, Ltd. Securities Litigation*, USDC Southern District of New York, Case No. 98 Civ. 7530-NRB, a securities fraud class action in which the Firm served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

*Macovski v. Groupon, Inc.*, USDC Northern District of Illinois, Case No. 20-cv-02581, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $13.5 million.

*In re Musicmaker.com Securities Litigation*, USDC Central District of California, Case No. 00-02018-CAS, a securities fraud class action in which the Firm was sole Lead Counsel for the Class and recovered in excess of $13 million.

*In re Lason, Inc. Securities Litigation*, USDC Eastern District of Michigan, Case No. 99 76079-AJT, in which the Firm was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

*In re Inso Corp. Securities Litigation*, USDC District of Massachusetts, Case No. 99 10193-WGY, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

*In re National TechTeam Securities Litigation*, USDC Eastern District of Michigan, Case No. 97-74587-AC, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

*Taft v. Ackermans (KPNQwest Securities Litigation)*, USDC Southern District of New York, Case No. 02-CV-07951-PKL, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement worth $11 million.

*Derr v. RA Medical Systems, Inc.*, USDC Southern District of California, Case No. 19-cv-01079, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $10 million.

*Jenson v. First Trust Corporation*, USDC Central District of California, Case No. 05-cv-3124-ABC, in which the Firm was appointed sole lead counsel and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme.  Kevin Ruf of the Firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

## ANTITRUST PRACTICE GROUP AND ACHIEVEMENTS

Glancy Prongay & Murray's Antitrust Practice Group focuses on representing individuals and entities that have been victimized by unlawful monopolization, price-fixing, market allocation, and other anti-competitive conduct. The Firm has prosecuted significant antitrust cases and has helped individuals and businesses recover billions of dollars. Prosecuting civil antitrust cases under federal and state laws throughout the country, the Firm's Antitrust Practice Group represents consumers, businesses, and Health and Welfare Funds and seeks injunctive relief and damages for violations of antitrust and commodities laws. The Firm has served, or is currently serving, as Lead Counsel, Co-Lead Counsel or Class Counsel in a substantial number of antitrust class actions, including:

*In re Nasdaq Market-Makers Antitrust Litigation*, USDC Southern District of New York, Case No. 94 C 3996-RWS, MDL Docket No. 1023, a landmark antitrust lawsuit in which the Firm filed the first complaint against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in a case that recovered $900 million for investors.

New York  |  Los Angeles  |  Berkeley
**www.glancylaw.com**

*Sullivan v. DB Investments*, USDC District of New Jersey, Case No. No. 04-cv-2819, where the Firm served as Co-Lead Settlement Counsel in an antitrust case against DeBeers relate to the pricing of diamonds that settled for $295 million.

*In re Korean Air Lines Antitrust Litig.*, USDC Central District of California, Master File No. CV 07-05107 SJO(AGRx), MDL No. 07-0189, where the Firm served as Co-Lead Counsel in a case related to fixing of prices for airline tickets to Korea that settled for $86 million.

*In re Urethane Chemical Antitrust Litig.*, USDC District of Kansas, Case No. MDL 1616, where the Firm served as Co-Lead counsel in an antitrust price fixing case that settled $33 million.

*In re Western States Wholesale Natural Gas Litig.*, USDC District of Nevada, Case No. MDL 1566, where the Firm served as Class Counsel in an antitrust price fixing case that settled $25 million.

*In re Aggrenox Antitrust Litig.,* USDC District of Connecticut, Case No. 14-cv-2516, where the Firm played a major role in achieving a settlement of $54,000,000.

*In re Solodyn Antitrust Litig.,* USDC District of Massachusetts, Case No. MDL 2503, where the Firm played a major role in achieving a settlement of $43,000,000.

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*, USDC Eastern District of Pennsylvania, Case No. 16-md-2427, where the Firm is representing a major Health and Welfare Fund in a case against a number of generic drug manufacturers for price fixing generic drugs.

*In re Actos End Payor Antitrust Litig.*, USDC Southern District of New York, Case No. 13-cv-9244, where the Firm is serving on Plaintiffs' Executive Committee.

*In re Heating Control Panel Direct Purchaser* Action, USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of heating control panels.

*In re Instrument Panel Clusters Direct Purchaser Action,* USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of instrument panel clusters.

In addition, the Firm is currently involved in the prosecution of many market manipulation cases relating to violations of antitrust and commodities laws, including *Sullivan v. Barclays PLC* (manipulation of Euribor rate), *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, *In re Gold Futures & Options Trading Litig.*, *In re Platinum & Palladium Antitrust Litig.*, *Sonterra Cap. Master Fund v. Credit Suisse Group AG* (Swiss Libor rate manipulation), *Twin City Iron Pension Fund v. Bank of Nova Scotia* (manipulation of treasury securities), and *Ploss v. Kraft Foods Group* (manipulation of wheat prices).

New York | Los Angeles | Berkeley
**www.glancylaw.com**

Glancy Prongay & Murray has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields, or which have promoted shareholder rights in prosecuting these actions.  The Firm successfully argued the appeals in a number of cases:

In *Smith v. L'Oreal*, 39 Cal.4th 77 (2006), Firm partner Kevin Ruf established ground-breaking law when the California Supreme Court agreed with the Firm's position that waiting penalties under the California Labor Code are available to *any* employee after termination of employment, regardless of the reason for that termination.

## OTHER NOTABLE ACHIEVEMENTS

Spearheaded by Firm attorney Kevin Ruf, the Firm served as Co-Lead Counsel for a class of drivers misclassified as independent contractors in the landmark case Lee v. Dynamex, Case No. BC332016 (Super. Ct. of Cal), which made new law for workers' rights in the California Supreme Court. The *Dynamex* decision altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code. The California legislature, in response to the *Dynamex* decision, promulgated AB5, a statute that codifies the law of the *Dynamex* case and expands its reach.

Headed by Firm attorney Kara Wolke, the Firm served as additional plaintiffs' counsel in *Christine Asia Co. Ltd., et al. v. Jack Yun Ma et al. ("Alibaba")*, 1:15-md-02631 (SDNY), a securities class action on behalf of investors alleging violations of the Securities Exchange Act of 1934 in connection with Alibaba's historic $25 billion IPO, the then-largest IPO in history. After hard-fought litigation, including a successful appeal to the Second Circuit and obtaining class certification, the case settled for $250 million.

Other notable Firm cases include: *Silber v. Mabon I*, 957 F.2d 697 (9th Cir. 1992) and *Silber v. Mabon II*, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), the Firm won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint.  After this successful appeal, the Firm then recovered millions of dollars for defrauded investors of the GT Interactive Corporation.  The Firm also argued *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003), and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action initiated to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked.

The Firm also has been involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange.  Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of the Firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices.  The Firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Prongay & Murray LLP currently consists of the following attorneys:

## PARTNERS

**LEE ALBERT**, a partner, was admitted to the bars of the Commonwealth of Pennsylvania, the State of New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey in 1986.  He received his B.S. and M.S. degrees from Temple University and Arcadia University in 1975 and 1980, respectively, and received his J.D. degree from Widener University School of Law in 1986.  Upon graduation from law school, Mr. Albert spent several years working as a civil litigator in Philadelphia, PA.  Mr. Albert has extensive litigation and appellate practice experience having argued before the Supreme and Superior Courts of Pennsylvania and has over fifteen years of trial experience in both jury and non-jury cases and arbitrations.  Mr. Albert has represented a national health care provider at trial obtaining injunctive relief in federal court to enforce a five-year contract not to compete on behalf of a national health care provider and injunctive relief on behalf of an undergraduate university.

Currently, Mr. Albert represents clients in all types of complex litigation including matters concerning violations of federal and state antitrust and securities laws, mass tort/product liability and unfair and deceptive trade practices.  Some of Mr. Albert's current major cases include *In Re Automotive Wire Harness Systems Antitrust Litigation* (E.D. Mich.*); In Re Heater Control Panels Antitrust Litigation* (E.D. Mich.); *Kleen Products, et al. v. Packaging Corp. of America* (N.D. Ill.); *and In re Class 8 Transmission Indirect Purchaser Antitrust Litigation* (D. Del.).  Previously, Mr. Albert had a significant role in *Marine Products Antitrust Litigation* (C.D. Cal.); *Baby Products Antitrust Litigation* (E.D. Pa.); *In re ATM Fee Litigation* (N.D. Cal.); *In re Canadian Car Antitrust Litigation* (D. Me.); *In re Broadcom Securities Litigation* (C.D. Cal.); and has worked on *In re Avandia Marketing, Sales Practices and Products Liability Litigation* (E.D. Pa.); *In re Ortho Evra Birth Control Patch Litigation* (N.J. Super. Ct.); *In re AOL Time Warner, Inc. Securities Litigation* (S.D.N.Y.); *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.); and *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct.).

**BRIAN D. BROOKS** joined the New York office of Glancy Prongay & Murray LLP in 2019, specializing in antitrust, consumer, and securities litigation. His current cases include *In re Zetia Antitrust Litigation*, No. 18-md-2836 (E.D. Va.); *Staley, et al. v. Gilead Sciences,*

868675.9

*Inc., et al.*, No. 3:19-cv-02573-EMC (N.D. Cal.); and *In re: Seroquel XR (Extended Release Quetiapine Fumarate) Litigation*, No. 1:19-cv-08296-CM (S.D.N.Y.).

Prior to joining the firm, Mr. Brooks was an associate at Murray, Frank & Sailer, LLP in New York, where his practice was focused on antitrust, consumer, and securities matters, and later a partner at Smith, Segura & Raphael, LLP, in New York and Louisiana. During his tenure at Smith Segura & Raphael, LLP, Mr. Brooks represented direct purchasers in numerous antitrust matters, including *In re: Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, No. 2:13-md-02445 (E.D. Pa.), *In re: Niaspan Antitrust Litigation*, No. 2:13-md-02460 (E.D. Pa.), and *In re: Novartis & Par Antitrust Litigation (Exforge)*, No. 18-cv-4361 (S.D.N.Y.), and was an active member of the trial team for the class in *In re: Nexium (Esomeprazole) Antitrust Litigation*, No. 12-md-2409 (D. Mass.), the first post-*Actavis* reverse-payment case to be tried to verdict. He was also an active member of the litigation teams in the *King Drug Company of Florence, Inc. et al. v. Cephalon, Inc., et al. (Provigil)*, No. 2:06-cv-1797 (E.D. Pa.); *In re: Prograf Antitrust Litigation*, No. 1:11-md-2242 (D. Mass.) and *In re: Miralax* antitrust matters, which collectively settled for more than $600 million, and a member of the litigation teams in *In re: Relafen Antitrust Litigation*, No. 01-cv-12239 (D. Mass.); *In re: Buspirone Antitrust Litigaiton*, MDL Dkt. No. 1410 (S.D.N.Y.); *In re: Remeron Antitrust Litigation,* No. 02-2007 (D.N.J.); *In re: Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.); and *In re K-Dur Antitrust Litigation*, No. 10-cv-1652 (D.N.J.).

Mr. Brooks received his B.A. from Northwestern State University of Louisiana in 1998 and his J.D. from Washington and Lee School of Law in 2002, where he was a staff writer for the Environmental Law Digest and clerked for the Alderson Legal Assistance Program, handling legal matters for inmates of the Federal Detention Center in Alderson, West Virginia. He is admitted to practice in all state courts in New York and Louisiana, as well as the United States District Courts for the Southern and Eastern Districts of New York and the Eastern and Western Districts of Louisiana.

**JOSEPH D. COHEN** has extensive complex civil litigation experience, and currently oversees the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's securities, merger and derivative settlements.

Prior to joining the firm, Mr. Cohen successfully prosecuted numerous securities fraud, consumer fraud, antitrust and constitutional law cases in federal and state courts throughout the country.  Cases in which Mr. Cohen took a lead role include: *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431 (2002) (complex action in which the California Court of Appeal held that California's Non-Resident Vehicle $300 Smog Impact Fee violated the Commerce Clause of the United States Constitution, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists); *In re Geodyne Res., Inc. Sec. Litig.* (Harris Cty. Tex.) (settlement of securities fraud class action, including related litigation, totaling over $200 million); *In re Cmty. Psychiatric Centers Sec. Litig.* (C.D. Cal.) (settlement of $55.5 million was obtained from the company and its auditors, Ernst & Young, LLP); *In re McLeodUSA Inc., Sec. Litig.* (N.D. Iowa) ($30 million settlement); *In re Arakis Energy Corp. Sec. Litig.* (E.D.N.Y.) ($24 million settlement); *In re Metris Cos., Inc., Sec. Litig.* (D. Minn.) ($7.5 million settlement);

*In re Landry's Seafood Rest., Inc. Sec. Litig.* (S.D. Tex.) ($6 million settlement); and *Freedman v. Maspeth Fed. Loan and Savings Ass'n*, (E.D.N.Y) (favorable resolution of issue of first impression under RESPA resulting in full recovery of improperly assessed late fees).

Mr. Cohen was also a member of the teams that obtained substantial recoveries in the following cases: *In re: Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (partial settlements of approximately $2 billion); *In re Washington Mutual Mortgage-Backed Sec. Litig.* (W.D. Wash.) (settlement of $26 million); *Mylan Pharm., Inc. v. Warner Chilcott Public Ltd. Co.* (E.D. Pa.) ($8 million recovery in antitrust action on behalf of class of indirect purchasers of the prescription drug Doryx); *City of Omaha Police and Fire Ret. Sys. v. LHC Group, Inc.* (W.D. La.) (securities class action settlement of $7.85 million); and *In re Pacific Biosciences of Cal., Inc. Sec. Litig.* (Cal. Super. Ct.) ($7.6 million recovery).

In addition, Mr. Cohen was previously the head of the settlement department at Bernstein Litowitz Berger & Grossmann LLP.  While at BLB&G, Mr. Cohen had primary responsibility for overseeing the team working on the following settlements, among others: *In Re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.* (D.N.J.) ($1.062 billion securities class action settlement); *New York State Teachers' Ret. Sys. v. General Motors Co.* (E.D. Mich.) ($300 million securities class action settlement); *In re JPMorgan Chase & Co. Sec. Litig.* (S.D.N.Y.) ($150 million settlement); *Dep't of the Treasury of the State of New Jersey and its Division of Inv. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($84 million securities class action settlement); *In re Penn West Petroleum Ltd. Sec. Litig.* (S.D.N.Y.) ($19.76 million settlement); and *In re BioScrip, Inc. Sec. Litig.* ($10.9 million settlement).

**LIONEL Z. GLANCY**, a graduate of University of Michigan Law School, is the founding partner of the Firm.  After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at a New York law firm concentrating in securities litigation.  Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective.  Mr. Glancy has established a distinguished career in the field of securities litigation over the last thirty years, having appeared and been appointed lead counsel on behalf of aggrieved investors in securities class action cases throughout the country.  He has appeared and argued before dozens of district courts and a number of appellate courts.  His efforts have resulted in the recovery of hundreds of millions of dollars in settlement proceeds for huge classes of shareholders.  Well known in securities law, he has lectured on its developments and practice, including having lectured before Continuing Legal Education seminars and law schools.

Mr. Glancy was born in Windsor, Canada, on April 4, 1962.  Mr. Glancy earned his undergraduate degree in political science in 1984 and his Juris Doctor degree in 1986, both from the University of Michigan.  He was admitted to practice in California in 1988, and in Nevada and before the U.S. Court of Appeals, Ninth Circuit, in 1989.

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Since joining the firm in 2005, Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million.  He has prosecuted securities, derivative, merger & acquisition, and consumer cases throughout the country in both state and federal court, as well as represented defrauded investors at FINRA arbitrations.  Mr. Godino manages the Firm's consumer class action department.

While a senior associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in *Small v. Fritz Co.*, 30 Cal. 4th 167 (April 7, 2003), in which the California Supreme Court created new law in the State of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers.  The decision was widely covered by national media including *The National Law Journal*, the *Los Angeles Times*, the *New York Times*, and the *New York Law Journal*, among others, and was heralded as a significant victory for shareholders.

Mr. Godino's successes with Glancy Prongay & Murray LLP include: *Good Morning To You Productions Corp., et al., v. Warner/Chappell Music, Inc., et al.*, Case No. 13-04460 (C.D. Cal.) (In this highly publicized case that attracted world-wide attention, Plaintiffs prevailed on their claim that the song "Happy Birthday" should be in the public domain and achieved a $14,000,000 settlement to class members who paid a licensing fee for the song); *Ord v. First National Bank of Pennsylvania,* Case No. 12-766 (W. D. Pa.) ($3,000,000 settlement plus injunctive relief); *Pappas v. Naked Juice Co. of Glendora, Inc.,* Case No. 11-08276 (C.D. Cal.) ($9,000,000 settlement plus injunctive relief);*Astiana v. Kashi Company,* Case No. 11-1967 (S.D. Cal.) ($5,000,000 settlement); *In re Magma Design Automation, Inc. Securities Litigation*, Case No. 05-2394 (N.D. Cal.) ($13,500,000 settlement); *In re Hovnanian Enterprises, Inc. Securities Litigation*, Case No. 08-cv-0099 (D.N.J.) ($4,000,000 settlement); *In re Skilled Healthcare Group, Inc. Securities Litigation*, Case No. 09-5416 (C.D. Cal.) ($3,000,000 settlement); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa) ($3,200,000 settlement plus injunctive relief); (*Shin et al., v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (after defeating a motion to dismiss, the case settled on very favorable terms for class members including free replacement of cracked wheels); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.) ($3,936,812 settlement); *Esslinger, et al. v. HSBC Bank Nevada, N.A.*, Case No. 10-03213 (E.D. Pa.) ($23,500,000 settlement); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, Case No. 10-06994 ($10,500,000 settlement ); *In Re: Bank of America Credit Protection Marketing and Sales Practices Litigation,* Case No. 11-md-02269 (N.D. Cal.) ($20,000,000 settlement).

Mr. Godino was also the principal attorney in the following published decisions: *In re Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 714 Fed Appx. 761 (9th Cir. 2018) (reversing order dismissing class action complaint); *Small et al., v. University Medical Center of Southern Nevada, et al*., 2017 WL 3461364 (D. Nev. Aug. 10, 2017) (denying motion to dismiss); *Sciortino v. Pepsico, Inc.*, 108 F.Supp. 3d 780 (N.D. Cal.. June 5, 2015) (motion to dismiss denied); *Peterson v. CJ America, Inc*., 2015 WL 11582832 (S.D. Cal. May 15, 2015) (motion to dismiss denied); *Lilly v. Jamba Juice Company*, 2014 WL 4652283 (N. D. Cal. Sep 18, 2014) (class certification granted in part); *Kramer v. Toyota Motor Corp.,* 705 F. 3d 1122 (9th Cir. 2013) (affirming denial of

Defendant's motion to compel arbitration); *Sateriale, et al. v. R.J. Reynolds Tobacco Co.*, 697 F. 3d 777 (9th Cir. 2012) (reversing order dismissing class action complaint); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (motion to dismiss denied); *In re 2TheMart.com Securities Litigation*, 114 F. Supp. 2d 955 (C.D. Cal. 2002) (motion to dismiss denied); *In re Irvine Sensors Securities Litigation*, 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003) (motion to dismiss denied).

The following represent just a few of the cases Mr. Godino is currently litigating in a leadership position: *Small v. University Medical Center of Southern Nevada*, Case No. 13-00298 (D. Nev.); *Courtright, et al., v. O'Reilly Automotive Stores, Inc., et al.*, Case No. 14-334 (W.D. Mo); *Keskinen v. Edgewell Personal Care Co., et al.*, Case No. 17-07721 (C.D. CA); *Ryan v. Rodan & Fields, LLC*, Case No. 18-02505 (N.D. Cal)

**MATTHEW M. HOUSTON**, a partner in the firm's New York office, graduated from Boston University School of Law in 1988.  Mr. Houston is an active member of the Bar of the State of New York and an inactive member of the bar for the Commonwealth of Massachusetts.  Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts, and the Second, Seventh, Ninth, and Eleventh Circuit Court of Appeals of the United States.  Mr. Houston repeatedly has been selected as a New York Metro Super Lawyer.

Mr. Houston has substantial courtroom experience involving complex actions in federal and state courts throughout the country.  Mr. Houston was co-lead trial counsel in one the few ERISA class action cases taken to trial asserting breach of fiduciary duty claims against plan fiduciaries, *Brieger et al. v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.), and has successfully prosecuted many ERISA actions, including *In re Royal Ahold N.V. Securities and ERISA Litigation*, Civil Action No. 1:03-md-01539.  Mr. Houston has been one of the principal attorneys litigating claims in multi-district litigation concerning employment classification of pickup and delivery drivers and primarily responsible for prosecuting ERISA class claims resulting in a $242,000,000 settlement; *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700). Mr. Houston recently presented argument before the Eleventh Circuit Court of Appeals on behalf of a class of Florida pickup and delivery drivers obtaining a reversal of the lower court's grant of summary judgment.  Mr. Houston represented the interests of Nevada and Arkansas drivers employed by FedEx Ground obtaining significant recoveries on their behalf.  Mr. Houston also served as lead counsel in multi-district class litigation seeking to modify insurance claims handling practices; *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-cv-1000 (MDL 1552).

Mr. Houston has played a principal role in numerous derivative and class actions wherein substantial benefits were conferred upon plaintiffs: *In re: Groupon Derivative Litigation*, No. 12-cv-5300 (N.D. Ill. 2012) (settlement of consolidated derivative action resulting in sweeping corporate governance reform estimated at $159 million)  *Bangari v. Lesnik, et al.*, No. 11 CH 41973 (Illinois Circuit Court, County of Cook) (settlement of claim resulting in payment of $20 million to Career Education Corporation and implementation of extensive corporate governance reform); *In re Diamond Foods, Inc. Shareholder Litigation*, No. CGC-11-515895 (California Superior Court, County of San Francisco)

868675.9

New York     |     Los Angeles     |     Berkeley
**www.glancylaw.com**

($10.4 million in monetary relief including a $5.4 million clawback of executive compensation and significant corporate governance reform); *Pace American Shareholder Litigation*, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); *In re Bay Financial Securities Litigation*, Master File No. 89-2377-DPW, (D. Mass.) (J. Woodlock) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); *Goldsmith v. Technology Solutions Company*, 92 C 4374 (N.D. Ill. 1992) (J. Manning) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

In addition to numerous employment and derivative cases, Mr. Houston has litigated actions asserting breach of fiduciary duty in the context of mergers and acquisitions.  Mr. Houston has been responsible for securing millions of dollars in additional compensation and structural benefits for shareholders of target companies: *In re Instinet Group, Inc. Shareholders Litigation*, C.A. No. 1289 (Delaware Court of Chancery); *Jasinover v. The Rouse Company*, Case No. 13-C-04-59594 (Maryland Circuit Court); *McLaughlin v. Household International, Inc.*, Case No. 02 CH 20683 (Illinois Circuit Court); *Sebesta v. The Quizno's Corporation*, Case No. 2001 CV 6281 (Colorado District Court); *Crandon Capital Partners v. Sanford M. Kimmel*, C.A. No. 14998 (Del. Ch.); and *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch. 1996) (J. Chandler) (settlement of an action on behalf of shareholders of Transnational Reinsurance Co. whereby acquiring company provided an additional $10.4 million in merger consideration).

**JASON L. KRAJCER** is a partner in the firm's Los Angeles office.  He specializes in complex securities cases and has extensive experience in all phases of litigation (fact investigation, pre-trial motion practice, discovery, trial, appeal).

Prior to joining Glancy Prongay & Murray LLP, Mr. Krajcer was an Associate at Goodwin Procter LLP where he represented issuers, officers and directors in multi-hundred million and billion dollar securities cases.  He began his legal career at Orrick, Herrington & Sutcliffe LLP, where he represented issuers, officers and directors in securities class actions, shareholder derivative actions, and matters before the U.S. Securities & Exchange Commission.

Mr. Krajcer is admitted to the State Bar of California, the Bar of the District of Columbia, the United States Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central and Southern Districts of California.

**SUSAN G. KUPFER** is the founding partner of the Firm's Berkeley office. Ms Kupfer joined the Firm in 2003.  She is a native of New York City, and received her A.B. degree from Mount Holyoke College in 1969 and her Juris Doctor degree from Boston University School of Law in 1973.  She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, Ms. Kupfer has been a professor of law.  Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional

Law, Legal Ethics, and Jurisprudence. She has taught at Harvard Law School, Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law, and Northeastern University School of Law.  From 1991 through 2002, she was a lecturer on law at the University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws.  Her publications include articles on federal civil rights litigation, legal ethics, and jurisprudence.  She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco, and was the Executive Director of the Massachusetts Commission on Judicial Conduct.  She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio LLP before joining the Firm.

Ms. Kupfer's practice is concentrated in complex antitrust litigation.  She currently serves, or has served, as Co-Lead Counsel in several multidistrict antitrust cases: *In re Photochromic Lens Antitrust Litig.* (MDL 2173, M.D. Fla. 2010); *In re Fresh and Process Potatoes Antitrust Litig.* (D. ID. 2011); *In re Korean Air Lines Antitrust Litig.* (MDL No. 1891, C.D. Cal. 2007); *In re Urethane Antitrust Litigation* (MDL 1616, D. Kan. 2004); *In re Western States Wholesale Natural Gas Litigation* (MDL 1566, D. Nev. 2005); and *Sullivan et al v. DB Investments et al* (D. N.J. 2004).  She has been a member of the lead counsel teams that achieved significant settlements in: *In re Sorbates Antitrust Litigation* ($96.5 million settlement); *In re Pillar Point Partners Antitrust Litigation* ($50 million settlement); and *In re Critical Path Securities Litigation* ($17.5 million settlement).

Ms. Kupfer is a member of the bar of Massachusetts and California, and is admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, the District of Massachusetts, the Courts of Appeals for the First and Ninth Circuits, and the U.S. Supreme Court.

**CHARLES H. LINEHAN** is a partner in the firm's Los Angeles office.  He graduated summa cum laude from the University of California, Los Angeles with a Bachelor of Arts degree in Philosophy and a minor in Mathematics.  Mr. Linehan received his Juris Doctor degree from the UCLA School of Law, where he was a member of the UCLA Moot Court Honors Board.  While attending law school, Mr. Linehan participated in the school's First Amendment Amicus Brief Clinic (now the Scott & Cyan Banister First Amendment Clinic) where he worked with nationally recognized scholars and civil rights organizations to draft amicus briefs on various Free Speech issues.

**GREGORY B. LINKH** works out of the New York office, where he litigates antitrust, securities, shareholder derivative, and consumer cases. Greg graduated from the State University of New York at Binghamton in 1996 and from the University of Michigan Law School in 1999. While in law school, Greg externed with United States District Judge Gerald E. Rosen of the Eastern District of Michigan. Greg was previously associated with the law firms Dewey Ballantine LLP, Pomerantz Haudek Block Grossman & Gross LLP, and Murray Frank LLP.

Previously, Greg had significant roles in *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation* (settled for $125 million); *In re Crompton Corp. Securities Litigation* (settled $11 million); *Lowry v. Andrx Corp.* (settled for $8 million); *In re Xybernaut Corp. Securities MDL Litigation* (settled for $6.3 million); and *In re EIS Int'l Inc. Securities Litigation* (settled for $3.8 million). Greg also represented the West Virginia Investment Management Board ("WVIMB") in *WVIMB v. Residential Accredited Loans, Inc., et al.*, relating to the WVIMB's investment in residential mortgage-backed securities.

Currently, Greg is litigating various antitrust and securities cases, including *In re Korean Ramen Antitrust Litigation*, *In re Automotive Parts Antitrust Litigation*, and *In re Horsehead Holding Corp. Securities Litigation*.

Greg is the co-author of Inherent Risk In Securities Cases In The Second Circuit, NEW YORK LAW JOURNAL (Aug. 26, 2004); and Staying Derivative Action Pursuant to PSLRA and SLUSA, NEW YORK LAW JOURNAL, P. 4, COL. 4 (Oct. 21, 2005).

**BRIAN MURRAY** is the managing partner of the Firm's New York Park Avenue office and the head of the Firm's Antitrust Practice Group. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude,* from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros,* ESPAÇA JURÍDICO BOVESPA (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?,* 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove,* 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness,* 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba,* 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach,* 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard,* NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery,* NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit,* NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation,* INTERNATIONAL LITIGATION NEWS (Sept. 2007); Lifting the PSLRA "Automatic Stay" of Discovery, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933,* 73 ST. JOHN'S L. REV.633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers,* NEW YORK LAW JOURNAL (Sept. 24, 1998); and *Comment, Weissmann v. Freeman: The Second Circuit Errs in its Analysis of Derivative Copy-rights by Joint Authors,* 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under

868675.9                                        Page 14

Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Horsehead Holding Corp. Sec. Litig*., No. 16-cv-292, 2018 WL 4838234 (D. Del. Oct. 4, 2018) (recommending denial of motion to dismiss securities fraud claims where company's generic cautionary statements failed to adequately warn of known problems); *In re Deutsche Bank Sec. Litig.*, --- F.R.D. ---, 2018 WL 4771525 (S.D.N.Y. Oct. 2, 2018) (granting class certification for Securities Act claims and rejecting defendants' argument that class representatives' trading profits made them atypical class members); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (denying motion to dismiss securities fraud claims where confidential witness statements sufficiently established scienter); *In re Eagle Bldg. Tech. Sec. Litig.,* 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.,* 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig*., 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.,* 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.,* 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933).  Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in Cambridge Biotech Corp. v. Deloitte and Touche LLP, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts.  6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997).  In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages.  *In the Qiao Xing Universal Telephone* case, claimants received 120% of their recognized losses.

Among his current cases, Mr. Murray represents a class of investors in a securities litigation involving preferred shares of Deutsche Bank and is lead counsel in a securities class action against Horsehead Holdings, Inc. in the District of Delaware.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee, (2007-2010); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

**NATALIE S. PANG** is a partner in the firm's Los Angeles office. Ms. Pang has advocated on behalf of thousands of consumers during her career. Ms. Pang has extensive experience in case management and all facets of litigation: from a case's inception through the discovery process--including taking and defending depositions and preparing witnesses for depositions and trial--mediation and settlement negotiations, pretrial motion work, trial and post-trial motion work.

Prior to joining the firm, Ms. Pang lead the mass torts department of her last firm, where she managed the cases of over two thousand individual clients. There, Ms. Pang worked on a wide variety of complex state and federal matters which included cases involving pharmaceutical drugs, medical devices, auto defects, toxic torts, false advertising, and uninhabitable conditions. Ms. Pang was also trial counsel in the notable case, *Celestino Acosta et al. v. City of Long Beach et al.* (BC591412) which was brought on behalf of residents of a mobile home park built on a former trash dump and resulted in a $39.5 million verdict after an eleven-week jury trial in Los Angeles Superior Court.

Ms. Pang received her J.D. from Loyola Law School. While in law school, Ms. Pang received a Top 10 Brief Award as a Scott Moot Court competitor, was chosen to be a member of the Scott Moot Court Honor's Board, and competed as a member of the National Moot Court Team. Ms. Pang was also a Staffer and subsequently an Editor for Loyola's Entertainment Law Review as well as a Loyola Writing Tutor. During law school, Ms. Pang served as an extern for: the Hon. Rolf Treu (Los Angeles Superior Court), the Los Angeles City Attorney's Office, and the Federal Public Defender's Office. Ms. Pang obtained her undergraduate degree from the University of Southern California and worked in the healthcare industry prior to pursuing her career in law.

**ROBERT V. PRONGAY** is a partner in the Firm's Los Angeles office where he focuses on the investigation, initiation, and prosecution of complex securities cases on behalf of institutional and individual investors. Mr. Prongay's practice concentrates on actions to recover investment losses resulting from violations of the federal securities laws and various actions to vindicate shareholder rights in response to corporate and fiduciary misconduct.

Mr. Prongay has extensive experience litigating complex cases in state and federal courts nationwide. Since joining the Firm, Mr. Prongay has successfully recovered millions of dollars for investors victimized by securities fraud and has negotiated the implementation of significant corporate governance reforms aimed at preventing the recurrence of corporate wrongdoing.

Mr. Prongay was recently recognized as one of thirty lawyers included in the Daily Journal's list of Top Plaintiffs Lawyers in California for 2017. Several of Mr. Prongay's cases have received national and regional press coverage. Mr. Prongay has been interviewed by journalists and writers for national and industry publications, ranging from *The Wall Street Journal* to the *Los Angeles Daily Journal*. Mr. Prongay has appeared as a guest on Bloomberg Television where he was interviewed about the securities litigation stemming from the high-profile initial public offering of Facebook, Inc.

Mr. Prongay received his Bachelor of Arts degree in Economics from the University of Southern California and his Juris Doctor degree from Seton Hall University School of Law.  Mr. Prongay is also an alumnus of the Lawrenceville School.

**DANIELLA QUITT**, a partner in the firm's New York office, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second, Fifth, and Ninth Circuits, and the United States Supreme Court.

Ms. Quitt has extensive experience in successfully litigating complex class actions from inception to trial and has played a significant role in numerous actions wherein substantial benefits were conferred upon plaintiff shareholders, such as *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.) (settlement fund of $44.5 million); *In re Laidlaw Stockholders Litigation*, (D.S.C.) (settlement fund of $24 million); *In re UNUMProvident Corp. Securities Litigation*, (D. Me.) (settlement fund of $45 million); *In re Harnischfeger Industries* (E.D. Wisc.) (settlement fund of $10.1 million); *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); *In re JWP Inc. Securities Litigation*, (S.D.N.Y.) (settlement fund of $37 million); *In re Home Shopping Network, Inc., Derivative Litigation*, (S.D. Fla.) (settlement benefit in excess of $20 million); *In re Graham-Field Health Products, Inc. Securities* Litigation, (S.D.N.Y.) (settlement fund of $5.65 million); *Benjamin v. Carusona*, (E.D.N.Y.) (prosecuted action on behalf of minority shareholders which resulted in a change of control from majority-controlled management at Gurney's Inn Resort & Spa Ltd.); *In re Rexel Shareholder Litigation*, (Sup. Ct. N.Y. County) (settlement benefit in excess of $38 million); and *Croyden Assoc. v. Tesoro Petroleum Corp., et al.*, (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of *Alessi v. Beracha*, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt.  You did a good job and got a good result, and you should be proud of it."

Ms. Quitt has focused her practice on shareholder rights, securities class actions, and ERISA class actions but also handles general commercial and consumer litigation.  Ms. Quitt serves as a member of the S.D.N.Y. ADR Panel and has been consistently selected as a New York Metro Super Lawyer.

**JONATHAN M. ROTTER** leads the Firm's intellectual property litigation practice and has extensive experience in class action litigation, including in the fields of data privacy, digital content, securities, consumer protection, and antitrust.  His cases often involve technical and scientific issues, and he excels at the critical skill of understanding and organizing complex subject matter in a way helpful to judges, juries, and ultimately, the firm's clients.  Since joining the firm, he has played a key role in cases recovering over $100 million.  He handles cases on contingency, partial contingency, and hourly bases, and works collaboratively with other lawyers and law firms across the country.

Before joining the firm, Mr. Rotter served for three years as the first Patent Pilot Program Law Clerk at the United States District Court for the Central District of California, both in Los Angeles and Orange County.  There, he assisted the Honorable S. James Otero, Andrew J. Guilford, George H. Wu, John A. Kronstadt, and Beverly Reid O'Connell with hundreds of patent cases in every major field of technology, from complaint to post-trial motions, advised on case management strategy, and organized and provided judicial education.  Mr. Rotter also served as a law clerk for the Honorable Milan D. Smith, Jr. on the United States Court of Appeals for the Ninth Circuit, working on the full range of matters handled by the Circuit.

Before his service to the courts, Mr. Rotter practiced at an international law firm, where he argued appeals at the Federal Circuit, Ninth Circuit, and California Court of Appeal, tried cases, argued motions, and managed all aspects of complex litigation.  He also served as a volunteer criminal prosecutor for the Los Angeles City Attorney's Office.

Mr. Rotter graduated with honors from Harvard Law School in 2004.  He served as an editor of the Harvard Journal of Law & Technology, was a Fellow in Law and Economics at the John M. Olin Center for Law, Economics, and Business at Harvard Law School, and a Fellow in Justice, Welfare, and Economics at the Harvard University Weatherhead Center For International Affairs.  He graduated with honors from the University of California, San Diego in 2000 with a B.S. in molecular biology and a B.A. in music.

Mr. Rotter serves on the Merit Selection Panel for Magistrate Judges in the Central District of California, and served on the Model Patent Jury Instructions and Model Patent Local Rules subcommittees of the American Intellectual Property Law Association.  He has written extensively on intellectual property issues, and has been honored for his work with legal service organizations.  He is admitted to practice in California and before the United States Courts of Appeals for the First, Second, Ninth and Federal Circuits, the United States District Courts for the Northern, Central, and Southern Districts of California, and the United States Patent & Trademark Office.

**KEVIN F. RUF** graduated from the University of California at Berkeley with a Bachelor of Arts in Economics and earned his Juris Doctor degree from the University of Michigan. He was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation. In 1993, he joined the firm Corbin & Fitzgerald (with future federal district court Judge Michael Fitzgerald) specializing in white collar criminal defense work.

Kevin joined the Glancy firm in 2001 and works on a diverse range of trial and appellate cases; he is also head of the firm's Labor practice. Kevin has successfully argued a number of important appeals, including in the 9th Circuit Court of Appeals. He has twice argued cases before the California Supreme Court – winning both.

In *Smith v. L'Oreal* (2006), after Kevin's winning arguments, the California Supreme Court established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of their employment.

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

Kevin gave the winning oral argument in one of the most talked about and wide-reaching California Supreme Court cases of recent memory: *Lee v. Dynamex* (2018). The Dynamex decision altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code. The California legislature was so impressed with the Dynamex result that promulgated AB5, a statute to formalize this new definition of employment and expand its reach.

Kevin won the prestigious California Lawyer of the Year (CLAY) award in 2019 for his work on the *Dynamex* case.

In 2021, Kevin was named by California's legal paper of record, the Daily Journal, as one of 18 California  "Lawyers of the Decade."

Kevin has been named three times as one of the Daily Journal's "Top 75 Employment Lawyers."

Since 2014, Kevin has been an elected member of the Ojai Unified School District Board of Trustees. Kevin was also a Main Company Member of the world-famous Groundlings improv and sketch comedy troupe – where "everyone else got famous."

**BENJAMIN I. SACHS-MICHAELS**, a partner in the firm's New York office, graduated from Benjamin N. Cardozo School of Law in 2011. His practice focuses on shareholder derivative litigation and class actions on behalf of shareholders and consumers.

While in law school, Mr. Sachs-Michaels served as a judicial intern to Senior United States District Judge Thomas J. McAvoy in the United States District Court for the Northern District of New York and was a member of the Cardozo Journal of Conflict Resolution.

Mr. Sachs-Michaels is a member of the Bar of the State of New York. He is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**CASEY E. SADLER** is a native of New York, New York.  After graduating from the University of Southern California, Gould School of Law, Mr. Sadler joined the Firm in 2010.  While attending law school, Mr. Sadler externed for the Enforcement Division of the Securities and Exchange Commission, spent a summer working for P.H. Parekh & Co. – one of the leading appellate law firms in New Delhi, India – and was a member of USC's Hale Moot Court Honors Program.

Mr. Sadler's practice focuses on securities and consumer litigation. A partner in the Firm's Los Angeles office, Mr. Sadler is admitted to the State Bar of California and the United States District Courts for the Northern, Southern, and Central Districts of California.

**EX KANO S. SAMS II** earned his Bachelor of Arts degree in Political Science from the University of California Los Angeles. Mr. Sams earned his Juris Doctor degree from the University of California Los Angeles School of Law, where he served as a member of the *UCLA Law Review*. After law school, Mr. Sams practiced class action civil rights litigation

New York     |     Los Angeles     |     Berkeley
**www.glancylaw.com**

on behalf of plaintiffs. Subsequently, Mr. Sams was a partner at Coughlin Stoia Geller Rudman & Robbins LLP (currently Robbins Geller Rudman & Dowd LLP), where his practice focused on securities and consumer class actions on behalf of investors and consumers.

During his career, Mr. Sams has served as lead counsel in dozens of securities class actions and complex-litigation cases, and has worked on cases at all levels of the state and federal court systems throughout the United States. Mr. Sams was one of the counsel for respondents in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061 (2018), in which the United States Supreme Court ruled unanimously in favor of respondents, holding that: (1) the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") does not strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933; and (2) SLUSA does not empower defendants to remove such actions from state to federal court. Mr. Sams also participated in a successful appeal before a Fifth Circuit panel that included former United States Supreme Court Justice Sandra Day O'Connor sitting by designation, in which the court unanimously vacated the lower court's denial of class certification, reversed the lower court's grant of summary judgment, and issued an important decision on the issue of loss causation in securities litigation: *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). The case settled for $55 million.

Mr. Sams has also obtained other significant results. Notable examples include: *Beezley v. Fenix Parts, Inc.*, No. 1:17-CV-7896, 2018 WL 3454490 (N.D. Ill. July 13, 2018) (denying motion to dismiss); *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018) (largely denying motion to dismiss; case settled for $21 million); *In re King Digital Entm't plc S'holder Litig.*, No. CGC-15-544770 (San Francisco Superior Court) (case settled for $18.5 million); *In re Castlight Health, Inc. S'holder Litig.*, Lead Case No. CIV533203 (California Superior Court, County of San Mateo) (case settled for $9.5 million); *Wiley v. Envivio, Inc.*, Master File No. CIV517185 (California Superior Court, County of San Mateo) (case settled for $8.5 million); *In re CafePress Inc. S'holder Litig.*, Master File No. CIV522744 (California Superior Court, County of San Mateo) (case settled for $8 million); *Estate of Gardner v. Continental Casualty Co.*, No. 3:13-cv-1918 (JBA), 2016 WL 806823 (D. Conn. Mar. 1, 2016) (granting class certification); *Forbush v. Goodale*, No. 33538/2011, 2013 WL 582255 (N.Y. Sup. Feb. 4, 2013) (denying motions to dismiss); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) (upholding complaint; case settled for $8.5 million); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012) (granting class certification); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941 (E.D. Wis. 2011) (upholding complaint); *Mishkin v. Zynex Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) (denying motion to dismiss); and *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) (granting class certification; case settled for $10 million).

Additionally, Mr. Sams has successfully represented consumers in class action litigation. Mr. Sams worked on nationwide litigation and a trial against major tobacco companies, and in statewide tobacco litigation that resulted in a $12.5 billion recovery for California cities and counties in a landmark settlement. He also was a principal attorney in a

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

consumer class action against one of the largest banks in the country that resulted in a substantial recovery and a change in the company's business practices. Mr. Sams also participated in settlement negotiations on behalf of environmental organizations along with the United States Department of Justice and the Ohio Attorney General's Office that resulted in a consent decree requiring a company to perform remediation measures to address the effects of air and water pollution. Additionally, Mr. Sams has been an author or co-author of several articles in major legal publications, including "9th Circuit Decision Clarifies Securities Fraud Loss Causation Rule" published in the February 8, 2018 issue of the *Daily Journal*, and "Market Efficiency in the World of High-Frequency Trading" published in the December 26, 2017 issue of the *Daily Journal*.

**LEANNE HEINE SOLISH** is a partner in GPM's Los Angeles office.  Her practice focuses on complex securities litigation.

Ms. Solish has extensive experience litigating complex cases in federal courts nationwide. Since joining GPM in 2012, Ms. Solish has helped secure several large class action settlements for injured investors, including: *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank*, Case No. 10-4372--DWF/JJG (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *Mild v. PPG Industries, Inc. et al.*, Case No. 2:18-cv-04231 (C.D. Cal.) ($25 million settlement); *In re Penn West Petroleum Ltd. Securities Litigation*, Case No. 1:14-cv-06046-JGK (S.D.N.Y.) ($19 million settlement for the U.S. shareholder class as part of a $39 million global settlement); *In re ITT Educational Services, Inc. Securities Litigation (Indiana)*, Case No. 1:14-cv-01599-TWP-DML ($12.5375 million settlement); *In re Doral Financial Corporation Securities Litigation*, Case No. 3:14-cv-01393-GAG (D.P.R.) ($7 million settlement); *Larson v. Insys Therapeutics Incorporated, et al.*, Lead Case No. 14-cv-01043-PHX-GMS (D. Ariz.) ($6.125 million settlement); *In re Unilife Corporation Securities Litigation*, Case No. 1:16-cv-03976-RA ($4.4 million settlement); and *In re K12 Inc. Securities Litigation*, Case No. 4:16-cv-04069-PJH (N.D. Cal.) ($3.5 million settlement).

*Super Lawyers Magazine* has selected Ms. Solish as a "Rising Star" in the area of Securities Litigation for the past four consecutive years, 2016 through 2019.

Ms. Solish graduated *summa cum laude* with a B.S.M. in Accounting and Finance from Tulane University, where she was a member of the Beta Alpha Psi honors accounting organization and was inducted into the Beta Gamma Sigma Business Honors Society. Ms. Solish subsequently earned her J.D. from the University of Texas School of Law.

Ms. Solish is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Northern, and Southern Districts of California.  Ms. Solish is also a Registered Certified Public Accountant in Illinois.

**GARTH A. SPENCER**'s work focuses on securities litigation on behalf of investors, as well as whistleblower, consumer and antitrust matters for plaintiffs. He has substantially

contributed to a number of GPM's successful cases, including *Robb v. Fitbit Inc.* (N.D. Cal.) ($33 million settlement). Mr. Spencer joined the firm's New York office in 2016, and transferred to Los Angeles in 2020. Prior to joining GPM, he worked in the tax group of a transactional law firm, and pursued tax whistleblower matters as a sole practitioner.

**DAVID J. STONE** has a broad background in complex commercial litigation, with particular focus on litigating corporate fiduciary claims, securities, and contract matters. Mr. Stone maintains a versatile practice in state and federal courts, representing clients in a wide-range of matters, including corporate derivative actions, securities class actions, litigating claims arising from master limited partnership "drop down" transactions, litigating consumer class actions (including data breach claims) litigating complex debt instruments, fraudulent conveyance actions, and appeals. Mr. Stone also has developed a specialized practice in litigation on behalf of post-bankruptcy confirmation trusts, including investigating and prosecuting D&O claims and general commercial litigation. In addition, Mr. Stone counsels clients on general business matters, including contract negotiation and corporate organization.

Mr. Stone graduated from Boston University School of Law in 1994 and was the Law Review Editor. He earned his B.A. at Tufts University in 1988, graduating *cum laude*. Following law school, Mr. Stone served as a clerk to the Honorable Joseph Tauro, then Chief Judge of the U.S. District Court for the District of Massachusetts. Prior to joining GPM, Mr. Stone practiced at international law firms Cravath, Swaine & Moore LLP, Morrison & Foerster LLP, and Greenberg Traurig LLP.

Mr. Stone is a member of the bar in New York and California, and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Southern, and Central Districts of California, and the Court of Appeals for the Second and Third Circuits.

**RAY D. SULENTIC** is a partner in the firm's San Diego office where he litigates complex securities fraud, data privacy, and consumer fraud class actions. He also represents individuals in connection with the firm's SEC, CFTC, and qui tam whistleblower practice areas.

Before joining GPM, Mr. Sulentic worked extensively with financial markets as an institutional investor. His investment experience includes serving as a special situations (merger arbitrage) analyst at UBS O'Connor LLC, a multi-billion-dollar hedge fund in Chicago; and as a sell-side equity and commodity analyst for Bear Stearns & Co. Inc. in New York. While at Bear Stearns, Mr. Sulentic's investment analysis was featured in Barron's.

Following his career on Wall Street, Mr. Sulentic practiced law at DLA Piper LLP in San Diego, where he worked on securities litigation and corporate governance matters, and represented public companies facing investigations or inquiries by the SEC.

Since joining GPM, Mr. Sulentic has helped his clients successfully obtain significant settlements, including in complex accounting and securities fraud matters.

Mr. Sulentic's relevant legal experience includes:

• Represented lead plaintiffs in *In re Eros International PLC Securities Litigation*, 2:19-cv-14125-JMV-JSA (D.N.J.), a securities class action alleging violations of the Securities Exchange Act of 1934 ($25 million settlement).

• Represented lead plaintiffs in *Shen v. Exela Technologies Inc. et al.*, 3:20-cv-00691 (N.D. Tex.), a securities class action alleging violations of the Securities Exchange Act of 1934 ($5 million settlement).

• Represented lead plaintiffs in *In re Tintri Securities Litigation*, Case No. 17-civ-04321, San Mateo Superior Court, a securities class action alleging violations of Securities Act of 1933.  The parties have reached an agreement to settle the case for $7.0 million, subject to final court approval.

• Represented lead plaintiff in *Ivan Baron v. HyreCar Inc. et al.,* 2:21-cv-06918-FWS-JC (C.D. Cal), a securities class action alleging violations of the Securities Exchange Act of 1934. Plaintiffs in HyreCar defeated Defendants' motion to dismiss. The case is currently pending.

• Represented plaintiff in *Valenzuela v. Hacopian Design & Development Group LLC et al.*, Case No. 37-2022-101113-CU-BT-CTL, San Diego Superior Court (Valenzuela*) a fraud, conversion, and RICO case.  In Valenzuela, Mr. Sulentic argued and won many motions including a motion for summary judgment in his client's favor on one cause of action; a motion denying one defendant leave to amend her answer; a motion deeming his client's requests for admission admitted; and discovery sanctions against two defendants.  Following a bench trial against one defendant, and a default judgment prove up hearing against two other defendants, the court in Valenzuela awarded Mr. Sulentic's client a combined judgment of over $440,000, most of which was comprised of punitive damages on compensatory damages of just over $24,000.

**Valenzuela* was a pro bono matter not litigated by GPM, but by Mr. Sulentic in his individual capacity.

**KARA M. WOLKE** is a partner in the firm's Los Angeles office. Ms. Wolke specializes in complex litigation, including the prosecution of securities fraud, derivative, consumer, and wage and hour class actions. She also has extensive experience in appellate advocacy in both State and Federal Circuit Courts of Appeals.

With over fifteen years of experience in financial class action litigation, Ms. Wolke has helped to recover hundreds of millions of dollars for injured investors, consumers, and employees. Notable cases include: *Christine Asia Co. Ltd., et al. v. Jack Yun Ma, et al.*, Case No. 15-md-02631 (S.D.N.Y.) ($250 million securities class action settlement); *Farmington Hills Employees' Retirement System v. Wells Fargo Bank,* Case No. 10-4372 (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the

largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *Schleicher, et al. v. Wendt, et al.* (Conseco), Case No. 02-cv-1332 (S.D. Ind.) ($41.5 million securities class action settlement); *Lapin v. Goldman Sachs,* Case No. 03-850 (S.D.N.Y.) ($29 million securities class action settlement); *In Re: Mannkind Corporation Securities Litigation*, Case No. 11-929 (C.D. Cal) (approximately $22 million settlement – $16 million in cash plus stock); *Jenson v. First Trust Corp*., Case No. 05-3124 (C.D. Cal.) ($8.5 million settlement of action alleging breach of fiduciary duty and breach of contract against trust company on behalf of a class of elderly investors); and *Pappas v. Naked Juice Co*., Case No. 11-08276 (C.D. Cal.) ($9 million settlement in consumer class action alleging misleading labeling of juice products as "All Natural").

Ms. Wolke has been named a Super Lawyers "Rising Star," and her work on behalf of investors has earned her recognition as a LawDragon Leading Plaintiff Financial Lawyer for 2019 and 2020.

With a background in intellectual property, Ms. Wolke was a part of the team of lawyers who successfully challenged the claim of copyright ownership to the song "*Happy Birthday to You*" on behalf of artists and filmmakers who had been forced to pay hefty licensing fees to publicly sing the world's most famous song. In the resolution of that action, the defendant music publishing company funded a settlement of $14 million and, significantly, agreed to relinquish the song to the public domain. Previously, Ms. Wolke penned an article regarding the failure of U.S. Copyright Law to provide an important public performance right in sound recordings, 7 Vand. J. Ent. L. & Prac. 411, which was nationally recognized and received an award by the American Bar Association and the Grammy® Foundation.

Committed to the provision of legal services to the poor, disadvantaged, and other vulnerable or disenfranchised individuals and groups, Ms. Wolke also oversees the Firm's *pro bono practice*. Ms. Wolke currently serves as a volunteer attorney for KIND (Kids In Need of Defense), representing unaccompanied immigrant and refugee children in custody and deportation proceedings, and helping them to secure legal permanent residency status in the U.S.

Ms. Wolke graduated *summa cum laude* with a Bachelor of Science in Economics from The Ohio State University in 2001. She subsequently earned her J.D. (with honors) from Ohio State, where she was active in Moot Court and received the Dean's Award for Excellence during each of her three years.

Ms. Wolke is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, as well as the United States District Courts for the Northern, Southern, and Central Districts of California. She lives with her husband and two sons in Los Angeles.

### OF COUNSEL

**PETER A. BINKOW** has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States.  He served as Lead or Co-Lead Counsel in many class action cases, including: *In re Mercury Interactive Securities*

*Litigation* ($117.5 million recovery); *The City of Farmington Hills Retirement System v Wells Fargo* ($62.5 million recovery); *Schleicher v Wendt* (Conseco Securities litigation - $41.5 million recovery); *Lapin v Goldman Sach*s ($29 million recovery); *In re Heritage Bond Litigation* ($28 million recovery); *In re National Techteam Securities Litigation* ($11 million recovery for investors); *In re Lason Inc. Securities Litigation* ($12.68 million recovery), *In re ESC Medical Systems, Ltd. Securities Litigation* ($17 million recovery); and many others.  In *Schleicher v Wendt*, Mr. Binkow successfully argued the seminal Seventh Circuit case on class certification, in an opinion authored by Chief Judge Frank Easterbrook. He has argued and/or prepared appeals before the Ninth Circuit, Seventh Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow joined the Firm in 1994.  He was born on August 16, 1965 in Detroit, Michigan.  Mr. Binkow obtained a Bachelor of Arts degree from the University of Michigan in 1988 and a Juris Doctor degree from the University of Southern California in 1994.

**MARK S. GREENSTONE** specializes in consumer, financial fraud and employment-related class actions. Possessing significant law and motion and trial experience, Mr. Greenstone has represented clients in multi-million dollar disputes in California state and federal courts, as well as the Court of Federal Claims in Washington, D.C.

Mr. Greenstone received his training as an associate at Sheppard, Mullin, Richter & Hampton LLP where he specialized in complex business litigation relating to investment management, government contracts and real estate. Upon leaving Sheppard Mullin, Mr. Greenstone founded an internet-based company offering retail items on multiple platforms nationwide. He thereafter returned to law bringing a combination of business and legal skills to his practice.

Mr. Greenstone graduated Order of the Coif from the UCLA School of Law. He also received his undergraduate degree in Political Science from UCLA, where he graduated Magna Cum Laude and was inducted into the Phi Beta Kappa honor society.

Mr. Greenstone is a member of the Consumer Attorneys Association of Los Angeles, the Santa Monica Bar Association and the Beverly Hills Bar Association. He is admitted to practice in state and federal courts throughout California.

**ROBERT I. HARWOOD**, Of Counsel to the firm, graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange.  Mr. Harwood was a founding member of Harwood Feffer LLP.  He has prosecuted numerous securities, class, derivative, and ERISA actions.  He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute.  In a statewide survey of his legal peers published by Super Lawyers Magazine, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer."  Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research.  He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the

mentally ill in New York City.  Since 1999, Mr. Harwood has also served as a Village Justice for the Village of Dobbs Ferry, New York.

Commenting on Mr. Harwood's abilities, in *In re Royal Dutch/Shell Transport ERISA Litigation*, (D.N.J.), Judge Bissell stated:

> the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind.  Moreover, in this case it showed.  Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery….  So both skill and efficiency were brought to the table here by counsel, no doubt about that.

Likewise, Judge Hurley stated in connection with *In re Olsten Corporation Securities Litigation*, No. 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created:  "The quality of representation here I think has been excellent."  Mr. Harwood was lead attorney in *Meritt v. Eckerd*, No. 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars."  Mr. Harwood prosecuted the *Hoeniger v. Aylsworth* class action litigation in the United States District Court for the Western District of Texas (No. SA-86-CA-939), which resulted in a settlement fund of $18 million and received favorable comment in the August 14, 1989 edition of *The Wall Street Journal* ("*Prospector Fund Finds Golden Touch in Class Action Suit" p*. 18, col. 1).  Mr. Harwood served as co-lead counsel in *In Re Interco Incorporated Shareholders Litigation*, Consolidated C.A. No. 10111 (Delaware Chancery Court) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought.  There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in *Morse v. McWhorter* (Columbia/HCA Healthcare Securities Litigation), (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as *In re Bank One Securities Litigation*, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund.  Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $44.5 million; *In re Laidlaw Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $24 million; *In re AIG ERISA Litigation*, (S.D.N.Y.), which resulted in a settlement fund of $24.2 million*; In re JWP Inc. Securities Litigation*, (S.D.N.Y.), which resulted in a $37 million settlement fund; *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and *In re UNUMProvident Corp. Securities Litigation*, (D. Me.), which resulted in the creation of settlement fund of $45 million.  Mr. Harwood has also been one of the lead attorneys in litigating claims in *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700), a multi-district litigation concerning employment classification of pickup and delivery drivers which resulted in a $242,000,000 settlement.

**ERIKA SHAPIRO** has extensive experience in a broad range of litigation matters. Until 2019, Ms. Shapiro's work primarily focused on complex antitrust cases involving pharmaceutical companies, and through this work, she helped successfully defend pharmaceutical companies against antitrust and unfair competition allegations, with a particular concentration on the Hatch-Waxman Act, product hopping, and reverse payment settlement allegations. As of 2019, Ms. Shapiro has represented clients in a vast array of litigation, including commercial real estate matters, with a particular focus on the global COVID-19 pandemic's impact on commercial real estate, bankruptcy matters, commercial litigation involving breach of contract, tort, trademark infringement, and trusts and estates law with a focus on will contests. Ms. Shapiro has further managed multiple cases defending physicians and hospitals against allegations of malpractice.

Ms. Shapiro is committed to the academic community, and is the Founder and CEO of Study Songs, an app aimed at helping students study for the multistate bar exam through melodies contained in over 80 original songs and through pop-up definitions of over 1200 legal terms and concepts.

Ms. Shapiro's publications include: *Third Circuit Holds, "Give Peace a Chance": The De Beers Litigation and the Potential Power of Settlement*, Jack E. Pace, III, Erika L. Shapiro, 27-SPG Antitrust 48 (2013).

Ms. Shapiro graduated from Washington University in St. Louis with a Bachelor of Arts degree.  She received her Juris Doctor degree from Georgetown University Law Center. She also earned a Master's degree in Economic Global Law from Sciences-Po Universite.

### SENIOR COUNSEL

**PAVITHRA RAJESH** is Senior Counsel in the firm's Los Angeles office. She specializes in fact discovery, including pre-litigation investigation, and develops legal theories in securities, derivative, and privacy-related matters.

Ms. Rajesh has unique writing experience from her judicial externship for the Patent Pilot Program in the United States District Court for the Central District of California, where she worked closely with the Clerk and judges in the program on patent cases. Drawing from this experience, Ms. Rajesh is passionate about expanding the firm's Intellectual Property practice, and she engages with experts to understand complex technology in a wide range of patents, including network security and videogame electronics.

Ms. Rajesh graduated from University of California, Santa Barbara with a Bachelor of Science degree in Mathematics and a Bachelor of Arts degree in Psychology. She received her Juris Doctor degree from UCLA School of Law. While in law school, Ms. Rajesh was an Associate Editor for the UCLA Law Review.

**CHRISTOPHER M. THOMS** is Senior Discovery Counsel in Glancy, Prongay & Murray's Los Angeles office. His practice includes large-scale electronic discovery encompassing

New York    |    Los Angeles    |    Berkeley
**www.glancylaw.com**

all stages of litigation, securities and anti-trust litigation. He manages attorneys in fact-finding for depositions, expert discovery, and trial preparation.

Prior to joining Glancy, Prongay & Murray, Christopher worked as a staff attorney at O'Melveny & Meyers LLP where he managed eDiscovery issues in complex class actions and multi-district litigations.  Chris also worked as a contract attorney for various law firms in Los Angeles.

**MELISSA WRIGHT** is Senior Counsel in the firm's Los Angeles office.  Ms. Wright specializes in complex litigation, including the prosecution of securities fraud and consumer class actions.  She has particular expertise in all aspects of the discovery phase of litigation, including drafting and responding to discovery requests, negotiating protocols for the production of Electronically Stored Information (ESI) and all facets of ESI discovery, and assisting in deposition preparation.  She has managed multiple document production and review projects, including the development of ESI search terms, overseeing numerous attorneys reviewing large document productions, drafting meet and confer correspondence and motions to compel where necessary, and coordinating the analysis of information procured during the discovery phase for utilization in substantive motions or settlement negotiations.

Ms. Wright received her J.D. from the UC Davis School of Law in 2012, where she was a board member of Tax Law Society and externed for the California Board of Equalization's Tax Appeals Assistance Program focusing on consumer use tax issues. Ms. Wright also graduated from NYU School of Law, where she received her LL.M. in Taxation in 2013.

## ASSOCIATES

**REBECCA DAWSON** specializes in complex civil litigation, class action securities litigation, and anti-trust litigation.

Ms. Dawson previously worked at a highly respected plaintiff-side class action firm specializing in mass torts and anti-trust litigation where she managed a wide variety of complex state and federal matters including false advertising, environmental torts and product liability claims.

Ms. Dawson has also held two prestigious clerkships.  She was a clerking intern for the Chief Justice of the Court of International Trade during law school.  After law school, she clerked at the New York Supreme Court where she handled hundreds of complex commercial and civil litigation decisions. Ms. Dawson also participated in the Securities and Exchange Commission Honors program in the Office of the Investors Advocate.  Prior to law school, she worked for the Brooklyn Bar Association. Ms. Dawson also has a background in financial data analysis.

Ms. Dawson earned her J.D. from City University of New York School of Law, where she was a Moot Court Competition Problem Author.  She earned her B.A. from Bard College at Simon's Rock, where she majored in Political Science with a minor in Economics.

**CHRIS DEL VALLE** is an experienced attorney who has been a valuable member of the Glancy Prongay & Murray LLP team since 2017. During his time at the firm, he has worked on a range of complex securities fraud cases, including In re Akorn, Inc. Securities Litigation, Case No. 15-CV-01944, (N.D. Ill.); In re Yahoo! Inc. Securities Litigation, Case No. 17-CV-00373-LHK (N.D. Cal.); In re Endurance International Group Holdings, Case No. 1:15-cv-11775-GAO; In re LSB Industries, Inc. Securities Litigation, Case No. 1:15-cv-07614-RA-GWG; In re Alibaba Group Holding Limited Securities Litigation, Case No. 1:15-md-02631 (CM); In re Community Health Systems Inc, Case No.: 3:19-cv-00461.

One of Chris' most notable recent cases was Hartpence v. Kinetic Concepts, Inc., No. 19-55823 (9th Cir. 2022), alleging violations of the False Claims Act (FCA). Chris was part of the legal team that successfully represented a whistleblower in obtaining 9th Circuit reversal of the lower court's order granting summary judgment. This victory established Chris as a leading attorney in the field of FCA litigation.

With highly technical expertise in electronic discovery, Chris manages all facets of the firm's e-discovery needs, including crafting advanced search algorithms, predictive coding, and technology-assisted review. Chris also has a wealth of experience in deposition preparation, expert discovery, and preparing for summary judgment and trial.

Chris' experience prior to joining GPM includes trial and discovery preparation for complex corporate securities fraud litigation, patent prosecution, oral arguments, injunction hearings, trial work, mediations, drafting and negotiating contracts, depositions, and client intake.

He received a Bachelor of Arts degree from S.U.N.Y. Buffalo, majoring in English Literature/Journalism, and a Juris Doctor from California Western School of Law in San Diego. Chris is a proud native of Buffalo, New York, and a passionate fan of the Buffalo Bills, hosting a weekly podcast entitled The Bills Dudes. In addition to his legal work, Chris enjoys traveling, playing basketball, archery and is on a quest to locate the most flavorful tequila and mezcal ever produced in Mexico. With his experience in securities litigation and a strong educational background, Chris Del Valle is a valuable member of the GPM team.

**CHRISTOPHER FALLON** focuses on securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Fallon was a contract attorney with O'Melveny & Myers LLP working on anti-trust and business litigation disputes. He is a Certified E-Discovery Specialist through the Association of Certified E-Discovery Specialists (ACEDS).

Mr. Fallon earned his J.D. and a Certificate in Dispute Resolution from Pepperdine Law School in 2004. While attending law school, Christopher worked at the Pepperdine Special Education Advocacy Clinic and interned with the Rhode Island Office of the Attorney General. Prior to attending law school, he graduated from Boston College with a Bachelor of Arts in Economics and a minor in Irish Studies, then served as Deputy Campaign Finance Director on a U.S. Senate campaign.

**HOLLY HEATH** specializes in managing all aspects of discovery and trial preparation in securities and consumer fraud class actions. Since joining the firm in 2017, Ms. Heath has participated in cases that have led to over $100 million in recoveries for consumers and investors.

Ms. Heath started her career at a boutique business law firm in Century City that targeted trademark infringement. After that, Ms. Heath worked as a contract attorney for several New York firms including Gibson Dunn and Sullivan & Cromwell. Ms. Heath has handled various complex litigation matters such as patent infringement, anti-trust, and banking regulations.

While in law school, Ms. Heath advocated for children's rights at Children's Legal Services and served as a student attorney for Greater Boston Legal Services.

**THOMAS J. KENNEDY** works out of the New York office, where he focuses on securities, antitrust, mass torts, and consumer litigation.  He received a Juris Doctor degree from St. John's University School of Law in 1995.  At St. John's, he was a member of the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY.  Mr. Kennedy graduated from Miami University in 1992 with a Bachelor of Science degree in Accounting and has passed the CPA exam.  Mr. Kennedy was previously associated with the law firm Murray Frank LLP.

**JACOB M. SHOOSTER**, an Associate in the firm's New York Midtown 5th Avenue office, graduated from Fordham University School of Law in 2023. Mr. Shooster's practice focuses on shareholder litigation.

Mr. Shooster graduated from the University of Michigan with a Bachelor of Arts degree in Philosophy. He graduated from Fordham University School of Law with a Concentration in Business and Financial Law. While in law school, Mr. Shooster supported the Public Corruption Bureau of the Queens County District Attorney's Office as well as the school's Federal Tax Litigation Clinic where he represented indigent U.S. taxpayers in controversies in federal and state courts. Additionally, he was awarded the cum laude Murray award for public service.

Mr. Shooster is pending admission to the State Bar of New York.

**CHASE STERN** concentrates his practice on complex commercial litigation, with a particular emphasis on securities fraud and consumer protection class actions, as well as shareholder derivative matters. For nearly a decade, Mr. Stern's practice has been largely dedicated to representing individual and corporate entity plaintiffs in complex commercial and class action litigation in state and federal courts throughout the country. Mr. Stern's work and experience over the course of his career have proven instrumental in vindicating his clients' rights and helping recover tens of millions of dollars on their behalf. His work and experience have also led to his recent recognition as a Super Lawyers® Rising Star for 2022 – 2023.

Mr. Stern holds a B.S. in Finance and Entrepreneurship & Emerging Enterprises from Syracuse University and a J.D. from California Western School of Law, graduating from both institutions with honors.

**ROBERT YAN** is an associate specializing in international cases involving foreign language documents and foreign clients. He has expertise in all aspects of pre-trial litigation, including document productions, deposition preparation, deposition outlines, witness preparation, compilation of privilege logs, and translation of documents into English. He has served as team lead for various document review projects, conducted QC on large document populations, and worked with lead counsel to meet production deadlines.

Robert is a native speaker of Mandarin Chinese and fluent in Japanese. Robert has volunteered his services in the Los Angeles area including at the Elder Law Clinic and monthly APABA Pro Bono Legal Help Clinic. In his free time, Robert likes to play tennis and dodgeball and watches Jeopardy every day with his wife.

# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., <br><br> Defendants. | Case No. 1:21-cv-24232-KMW |

**DECLARATION OF LAURENCE M. ROSEN, ESQ. IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF THE <u>ROSEN LAW FIRM, P.A.</u>**

I, Laurence M. Rosen, declare as follows:

1. I am the Managing Partner at The Rosen Law Firm, P.A. ("RLF"), one of Plaintiffs' Counsel in the above-captioned action (the "Action").[1]  I submit this declaration in support of Plaintiffs' Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.  I have personal knowledge of the facts set forth herein based on my active supervision of, and participation in, the prosecution and settlement of the claims asserted in the Action and, if called upon, could and would testify thereto.

2. As counsel for Plaintiffs in this Action, RLF, among other things: (a) conducted case investigation and assessment of the factual and legal bases of the Action; (b) reviewed the initial complaints in the Action; (c) communicated with clients; (d) prepared a motion to consolidate cases and for appointment of lead plaintiff and lead counsel; (e) researched and worked with Lead Counsel in drafting the amended complaint; (f) reviewed and worked with Lead Counsel to oppose Defendants' three motions to dismiss; (g) engaged in settlement negotiations and participated in a mediation in conjunction with Lead Counsel; (h) reviewed and participated in the negotiating of the settlement documents; and (i) prepared initial drafts of the briefs in support of preliminary and final approval of the Settlement.

3. The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by attorneys and professional support staff employees of my firm who, from inception of the Action through and including January 19, 2024, billed ten or more hours to the Action, and the lodestar calculation for those individuals based on my firm's current billing rates.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 20, 2023.  ECF No. 122-1.

The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm. No time expended on the application for fees and reimbursement of expenses has been included.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are consistent with the rates approved by courts in other securities or shareholder litigation when conducting a lodestar cross-check.

**5.**      The total number of hours reflected in Exhibit A is 357.05 hours, all of which is attorney time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit B, my firm is seeking reimbursement of a total of $31,671.33 in expenses incurred in connection with the prosecution of this Action.

8.      The litigation expenses incurred in the Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. The expenses reflected in Exhibit B are the expenses actually incurred by my firm.

9.      Attached hereto as Exhibit C is a brief biography of RLF, including the attorneys who were involved in the Action.

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed on January 22, 2024, in New York, NY.

/s/Laurence M. Rosen
Laurence M. Rosen

2

**EXHIBIT A**

*Rodriguez et al. v. Alfi Inc., et al.,*
**Case No. 1:21-cv-24232-KMW**

**The Rosen Law Firm, P.A.**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH JANUARY 19, 2024**

| TIMEKEEPER | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Laurence Rosen | Partner | 2.4 | $1,175.00 | $2,820.00 |
| Phillip Kim | Partner | 8.5 | $1,025.00 | $8,712.50 |
| Erica Stone | Counsel | 8.9 | $800.00 | $7,120.00 |
| Leah Heifetz-Li | Attorney | 172.1 | $725.00 | $124,772.50 |
| Ha Sung (Scott) Kim | Attorney | 163.6 | $650.00 | $106,340.00 |
| Ryan Hedrick | Attorney | 1.55 | $600.00 | $930.00 |
| **TOTAL LODESTAR** | | **357.05** | | **$250,695.00** |

**EXHIBIT B**

*Rodriguez et al. v. Alfi Inc., et al.,*
**Case No. 1:21-cv-24232-KMW**

**The Rosen Law Firm, P.A.**

**EXPENSE REPORT**

**FROM INCEPTION THROUGH JANUARY 19, 2024**

| ITEM | AMOUNT |
|------|-------:|
| EXPERT FEES | $24,853.50 |
| ONLINE, COMPUTER, LEGAL RESEARCH, AND HOSTING FEES | $378.65 |
| MEDIATION FEES | $5,341.67 |
| PRO HAC VICE AND CERTIFICATE OF GOOD STANDING FEES | $400.00 |
| PRESS RELEASE AND NOTICE TO CLASS MEMBERS FEES | $92.31 |
| TRAVEL/TRANSPORTATION/HOTEL/MEAL FEES | $605.20 |
| **GRAND TOTAL** | **$31,671.33** |

**Exhibit C**

**THE ROSEN LAW FIRM P.A.**
**BIOGRAPHY**

**I.      ATTORNEYS**

**LAURENCE ROSEN  -  MANAGING PARTNER**

Laurence Rosen is a 1988 graduate of New York University School of Law.  He earned an M.B.A. in finance and accounting at the University of Chicago Graduate School of Business and a B.A. in Economics from Emory University.  Mr. Rosen served as a law clerk to the Honorable Stanley S. Brotman, Senior United States District Judge for the District of New Jersey.  Mr. Rosen entered private practice as an associate at the law firm of Skadden Arps Slate Meagher & Flom in New York City where he participated in a number of complex securities class action and derivative litigation matters. He later served as an associate at McCarter & English in Newark, New Jersey where he specialized in securities and business litigation.

After practicing general securities and commercial litigation in New York City with Solton Rosen & Balakhovsky LLP, Mr. Rosen founded The Rosen Law Firm to represent investors exclusively in securities class actions and derivative litigation.  Mr. Rosen is admitted to practice law in New York, California, Florida, New Jersey and the District of Columbia.  Mr. Rosen is also admitted to practice before numerous United States District Courts throughout the country and the United States Court of Appeals for the Second, Fourth, and Sixth Circuits.

In 2019-2023 Lawdragon named Mr. Rosen as one of the 500 Leading Plaintiff Financial Lawyers.  Mr. Rosen was also named by law360 as Titan of Plaintiffs' Bar for 2020. Mr. Rosen was selected to *Super Lawyers* in 2017-2023.

**PHILLIP KIM – PARTNER**

Mr. Kim graduated from Villanova University School of Law in 2002.  He received a B.A. in Economics from The Johns Hopkins University in Baltimore, Maryland in 1999.  Prior to joining

ROSEN LAW FIRM BIOGRAPHY                    1

The Rosen Law Firm, Mr. Kim served as Assistant Corporation Counsel for the City of New York in the Special Federal Litigation Division.  In that position, Mr. Kim defended a number of class action lawsuits, litigated numerous individual actions, and participated in more than seven trials. Mr. Kim focuses his practice on securities class actions and shareholder derivative litigation. Mr. Kim is admitted to the bar of the State of New York and admitted to practice in the Southern, Eastern, Northern and Western Districts of New York, the District of Colorado, the Eastern District of Wisconsin, and United States Court of Appeals for the Second, Sixth and Ninth Circuits.

In 2019-2023 Lawdragon named Mr. Kim as one of the 500 Leading Plaintiff Financial Lawyers.  In 2023 Mr. Kim was selected to *Super Lawyers.* Mr. Kim was recognized by Best Lawyers in The Best Lawyers of America 2024.

**JACOB A. GOLDBERG  – PARTNER**

Mr. Goldberg is a 1988 graduate of Columbia University.  Mr. Goldberg received his J.D., *cum laude*, from the Temple University School of Law in 1992.  For over 23 years, Mr. Goldberg has litigated complex cases at the highest levels, championing the rights of investors, employees and consumers.  Mr. Goldberg has recovered over $200 million for investors in securities class actions.  In addition to serving in leadership roles in securities class actions,  Mr. Goldberg  has litigated many cases under state corporations laws, against faithless boards of directors both on behalf of shareholders, in the mergers and acquisitions context, and, derivatively, on behalf of corporations, to remedy harm to the corporation itself.  Mr. Goldberg is admitted to practice law in the Commonwealth of Pennsylvania, New York, the United States Supreme Court, the United

States Court of Appeals for the Second, Third, Fourth and Sixth Circuits, and various United States District Courts across the country.

In 2019-2023 Lawdragon named Mr. Goldberg as one of the 500 Leading Plaintiff Financial Lawyers.

**JONATHAN A. SAIDEL – PARTNER**

Mr. Saidel has had a long and distinguished career in Pennsylvania politics, as well as in the roles of attorney, accountant and author. He served as Philadelphia city controller for four consecutive terms, each time earning reelection by a wide margin, and enacting financial reforms that have saved taxpayers upwards of $500 million. Later, in 2010 he went on to campaign for lieutenant governor of Pennsylvania, where he was runner-up to Scott Conklin by only a few thousand votes out of almost 1 million cast. A Lifelong resident of Northeast Philadelphia, Mr. Saidel's tireless dedication to fiscal discipline reduced the city's tax burden and spurred economic development. Mr. Saidel also pushed for important business tax incentives and expanded minority and small business lending, all of which have revitalized the city, helping it prosper and come back from the brink of bankruptcy in the early 1990's to become one of the most vibrant cities on the East Coast.

Mr. Saidel's book, "Philadelphia: A New Urban Direction", is widely considered an essential guide for effective government and corporate governance and is required reading at many colleges and universities.

Mr. Saidel received his JD from the Widener University of Law and is a graduate of Temple University. He is also an adjunct lecturer at the University of Pennsylvania Fels Institute of Government, and Drexel University's MBA Program. In addition to being a Certified Public Account, Jonathan is a recipient of the National Association of Local Government Auditor's Knighton Award, the President's Council on Integrity and Efficiency Award for Excellence,

multiple special project awards from the National Association of Local Government Auditors, and the "Controller of the Year" award, a peer recognition presented by the Pennsylvania City Controllers Association.

### SARA FUKS – PARTNER

Ms. Fuks graduated from Fordham University School of Law, *cum laude*, in February 2005, where she was a member of Fordham Law Review.  She received her B.A. in Political Science, *magna cum laude*, from New York University in 2001.  Ms. Fuks began her practice at Dewey Ballantine, LLP where she focused on general commercial litigation and then went on to prosecute numerous ERISA and securities class actions as an associate at Milberg LLP.  Ms. Fuks is admitted to the bar of the State of New York and admitted to practice in the United States Southern and Eastern District Courts of New York.  Ms. Fuks was selected to *SuperLawyers* in 2021-2023 and *SuperLawyers* Rising Stars in 2017-2019.

### JONATHAN HORNE- PARTNER

Mr. Horne is a 2009 graduate of New York University School of Law, where he received the Lederman/Milbank Law, Economics, and Business fellowship, and holds a B.A. in Economics & Philosophy from the University of Toronto.  Mr. Horne began his practice at Kaye Scholer LLP.  Mr. Horne specializes in securities litigation.  He is admitted to practice in New York and the United States District Courts for the District of Colorado and the Southern and Eastern Districts of New York. Mr. Horne was named a Super Lawyer – Rising Star for the New York Metro Area every year since 2015.

### YU SHI – PARTNER

Mr. Shi received his J.D. from Columbia Law School in 2011 and his B.A., *cum laude*, from Columbia University in 2008.  In 2022, Law360 named Mr. Shi as one of the top securities attorneys under the age of 40. He has been selected to *Super Lawyers* New York Metro Rising

ROSEN LAW FIRM BIOGRAPHY                    4

Stars list each year since 2018.  Mr. Shi began his career as a Special Assistant Corporation Counsel in the New York City Law Department's Economic Development Division.  Mr. Shi joined The Rosen Law Firm in 2012 and focuses his practice on securities litigation.  He is admitted to practice in the State of New York, the United States District Courts for the Eastern District of New York, Southern Districts of New York, and the District of Colorado, and the United States Court of Appeals for the Second Circuit.  Mr. Shi was selected to *Super Lawyers* New York Metro Rising Star list from 2018-2022. Mr. Shi was selected to *Super Lawyers* in 2023.

**JONATHAN STERN – PARTNER**

Mr. Stern graduated from New York University School of Law in May of 2008, where he was a Development Editor of the Annual Survey of American Law.  He received his B.A. in Philosophy with Honors from McGill University.  Mr. Stern began his practice in the litigation department of Simpson Thacher & Bartlett LLP, and then went on to practice at the litigation boutique of Simon & Partners LLP, where he participated in a Federal trial.  Mr. Stern is admitted to the bar of the State of New York and admitted to practice in the United States Southern and Eastern District Courts of New York and the United States Court of Appeals for the Second Circuit. for the First, Sixth, Seventh, Eighth and Ninth Circuits, and the United States Supreme Court.

**ROBIN BRONZAFT HOWALD – COUNSEL**

Ms. Howald is a graduate of Stanford Law School where she was a member of the Stanford Law Review.  Ms. Howald earned her BA from Barnard College, magna cum laude.  Ms. Howald joined the firm in 2021 and focuses her practice on securities litigation.  For the last 15 years, Ms. Howald has prosecuted major securities litigations.  She was one of the lead attorneys in cases that achieved settlements of $250 million for injured investors, including *Schleicher v. Wendt*, 618 F.3d 679 (7th Cir. 2010) ($41.5 million), *In re Mannkind Corp. Securities Litigation* (C.D. California) ($23 million); *In re ECI Telecom Ltd. Securities Litigation* (Eastern District of Virginia) ($21.75

million), *In re Gilat Satellite Networks, Ltd. Securities Litigation* (E.D.N.Y.) ($20 million), *In re Musicmaker.com Securities Litigation*, 2001 WL 34062431 (C.D. Cal. 2001) ($13.75 million), *In re Puda Coal Inc. Securities Litigation* (S.D.N.Y.) ($8.6 million following reconsideration of grant of summary judgment), *Jenson v. Fiserv Trust Co.*, 256 F. App'x. 924 (9th Cir. 2007) ($8.5 million recovered for victims of a Ponzi scheme).  Ms. Howald is admitted to the bars of California, New York, the United States District Courts for the Eastern and Southern Districts of New York, the Central, Eastern, and Northern Districts of California, the Eastern District of Michigan,  the United States Court of Appeals.

### BRIAN ALEXANDER – COUNSEL

Mr. Alexander graduated from Harvard Law School, *cum laude*, in 2008.  He received a B.A. from Cornell University, *magna cum laude*, in 2003.  Prior to joining the Rosen Law Firm, Mr. Alexander practiced complex commercial litigation at Boies Schiller Flexner LLP and other prominent law firms in New York. He also served as a law clerk to the Honorable Raymond J. Dearie of the United States District Court for the Eastern District of New York.  He is admitted to practice in New York and in the United States District Courts for the Eastern and Southern Districts of New York.

### JING CHEN - COUNSEL

Ms. Chen received a Juris Doctor degree from Pace University School of Law in 2011, Juris Master degree from China University of Political Science and Law in Beijing, China and B.A. in English Literature and Linguistics from Shandong University in Jinan, China.  She is admitted to practice in New York, New Jersey and China. Prior to joining The Rosen Law Firm, Ms. Chen practiced corporate law, commercial transactions and arbitration for over two years.

**GONEN HAKLAY – COUNSEL**

Mr. Haklay graduated from Stanford University School of Law in 1995.  He received a B.A. in Political Science from The University of Massachusetts at Amherst in 1992.  After several years as an associate at a large Philadelphia law firm, Mr. Haklay joined the Philadelphia District Attorney's office.  As a prosecutor, he tried over 100 criminal jury cases and handled both capital and non-capital homicide cases.  After 12 years as prosecutor, Mr. Haklay joined a prominent plaintiffs' firm where he tried over ten asbestos cases, recovering millions of dollars for his clients.  As a young man, Mr. Haklay served as an infantryman in the Israel Defense Forces.  Mr. Haklay is admitted to the bars of the Commonwealth of Pennsylvania, the State of New Jersey, the United States District Court for the Eastern District of Pennsylvania, and the United States Third Circuit Court of Appeals.

**DANIEL TYRE-KARP – COUNSEL**

Prior to joining The Rosen Law Firm in May 2018, Mr. Tyre-Karp was a senior associate in the securities litigation and corporate governance group at Weil, Gotshal & Manges, where he advised corporate and individual clients on a variety of high-stakes regulatory and litigation matters in state and federal courts.  Mr. Tyre-Karp's extensive experience includes working on several of the largest recent shareholder class action litigations (*In re American International Group, Inc. 2008 Securities Litigation*, Docket No. 08-CV-4772 (S.D.N.Y.) and related opt-out actions; *In re El Paso Corporation Shareholder Litigation*, Docket No. 6949 (Del. Ch.)), participating in complex business and bankruptcy litigations (*In re Lehman Brothers Holdings, Inc., et al*, Docket No. 1:08-bk-13555 (Bankr. S.D.N.Y.), and advising numerous clients facing FINRA and SEC investigations. Mr. Tyre-Karp graduated with honors from Wesleyan University in 2003 and received his J.D. from New York University School of Law in 2009, where he served as Senior Notes Editor of the Journal of Legislation and Public Policy.  He is admitted to practice

in New York and the United States District Courts for the Southern and Eastern Districts of New York.

**ERICA STONE- COUNSEL**

Ms. Stone graduated from the Benjamin N. Cardozo School of Law in 2013. She received her B.A. in Political Science and Communications, *cum laude,* from the University of Pennsylvania in 2009. She is admitted to practice in New York, New Jersey, and the United States District Courts for the Southern District and Eastern District of New York, the District of New Jersey, and the Eastern District of Wisconsin.

**JOSHUA BAKER – ATTORNEY**

Mr. Baker graduated from the New York University School of Law in 2013.  He received a B.A. from the University of Maryland in 2009.  Prior to joining the Rosen Law Firm, Mr. Baker practiced complex commercial litigation for a New York firm.  He is admitted to practice in New York, Massachusetts, and United States District Courts for the Eastern and Southern Districts of New York.

**CHRISTIE BUZZETTI- ATTORNEY**

Ms. Buzzetti graduated from Brooklyn Law School in 2022. She received her B.A. in Political Science from the University of California, Los Angeles in 2016.  Ms. Buzzetti is admitted practice in New York.

**MICHAEL COHEN - ATTORNEY**

Mr. Cohen focuses his practice on securities and shareholder derivative litigation.  Prior to joining The Rosen Law Firm in 2021, Mr. Cohen was an associate in the litigation practice of Kramer Levin Naftalis & Frankel LLP, where he advised corporate and individual clients on a wide variety of litigation and regulatory matters in federal and state courts.  He has also served as a law clerk to the Honorable Corinne Beckwith of the District of Columbia Court of Appeals. Mr.

Cohen is admitted to practice in New York and the United States District Courts for the Eastern and Southern Districts of New York. Mr. Cohen was recognized by Best Lawyers as Best Lawyers: Ones to Watch 2024.

**LUKE FOLEY – ATTORNEY**

Mr. Foley received his J.D. from the William and Mary Law School in 2022. He received his B.A. in History and Citizenship & Civic Engagement from Syracuse University in 2016. Prior to joining the Rosen Law Firm in September 2023, Mr. Foley was the Law Clerk to the Hon. Barbara Buono Stanton of the New Jersey Superior Court, Passaic County. Mr. Foley is admitted to practice Maryland.

**RYAN HEDRICK – ATTORNEY**

Mr. Hedrick received his J.D. from the University of Chicago in 2019. He received his B.A. in Linguistics and Political Science, *summa cum laude*, from The Ohio State University in 2015. Mr. Hedrick joined the Rosen Law Firm in August 2019. Mr. Hedrick is admitted to practice in New York, New Jersey, and the United States District Court for the District of New Jersey.

**HA SUNG (SCOTT) KIM – ATTORNEY**

Mr. Kim received his J.D. from the Columbia Law School in 2017. He received his B.A., *magna cum laude*, from Wheaton College in 2013. Mr. Kim joined the Rosen Law Firm in January 2020. Mr. Kim is admitted to practice in New York.

**BRENT LAPOINTE – ATTORNEY**

Mr. LaPointe received his J.D., *cum laude*, from the University of Michigan Law School in 2010, where he served as an Articles Editor on both the Michigan Journal of Law Reform and the Michigan Journal of Gender & Law. Mr. LaPointe received a B.B.A. in Accounting & Information Systems and Political Science, *cum laude*, from the University of Massachusetts-Amherst in 2006. Mr. LaPointe focuses his practice on securities litigation.

ROSEN LAW FIRM BIOGRAPHY                    9

**LEAH HEIFETZ-LI – ATTORNEY**

Ms. Heifetz-Li is a 2009 graduate of Columbia Law School, and received a B.A. from the University of Pennsylvania.  Ms. Heifetz-Li served as a Law Clerk to the Honorable Cynthia S. Kern, New York State Supreme Court, New York County.  She has extensive experience in class action litigation, having previously practiced at a large class action firm representing shareholders in merger and acquisition litigation as well as shareholder derivative actions.  Ms. Heifetz-Li has worked on case teams that secured significant financial recoveries for stockholders as well as corporate governance reforms in the Delaware Court of Chancery and other courts throughout the country.

**IAN MCDOWELL- ATTORNEY**

Mr. McDowell graduated *cum laude* from the University of Richmond School of Law in 2022. He received his B.A. from James Madison University in 2016. Mr. McDowell is admitted to practice in Maryland.

**HENRY BLOXENHEIM- LAW CLERK**

Mr. Bloxenheim graduated from Columbia Law School in 2023. Mr. Bloxenheim received his B.A. in Political Science, *summa cum laude*, from Brooklyn College. Mr. Bloxenheim's admission to the New York bar is pending.

II.    **RECENT ACCOMPLISHMENTS OF THE ROSEN LAW FIRM, P.A.**

- **Alibaba Group Holding Ltd.**, (S.D.N.Y.). Rosen Lead Counsel.  **$250 million**.

- **Fiat Chrysler Automobiles**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$110 million**.

- **Infinity Q Diversified Alpha Fund**, (N.Y. Supreme). Rosen Co-Lead Counsel. **$48 million**, pending court approval.

- **Silver Wheaton Corp.**, (C.D. Cal.). Rosen Lead Counsel. **$41.5 million**.

- **Omega Healthcare Investors, Inc.,** (S.D.N.Y.).  Rosen Lead Counsel.  **$30.75 million.**

- **Magnachip Semiconductor Corp.**, (N.D. Cal.). Rosen Co-Lead Counsel. **$29.7 million**.

- **Och-Ziff Capital Management Group LLC**,(S.D.N.Y.). Rosen Co-Lead Counsel. **$28.75 million**.

- **Walter Investment Management**, (S.D. Fla.). Rosen Co-Lead Counsel. **$24 million**.

- **Galena Biopharma, Inc.**, (D. Or.). Rosen Co-Lead Counsel. **$20.165 million**.

- **El Pollo Loco Holdings, Inc.**, (C.D. Cal.). Rosen Co-Lead Counsel. **$20 million**.

- **Tibet Pharmaceuticals, Inc.**, (D.N.J.). Rosen Lead Counsel. **$14 million bankruptcy settlement. $2.075 million** with auditor.

- **USA Technologies, Inc.**, (E.D. Pa.). Rosen Lead Counsel. **$15.3 million**.

- **Zillow Group, Inc. Sec. Litig.**, (W.D. Wash.). Rosen Lead Counsel. **$15 million.**

- **Silvercorp Metals, Inc.**, (S.D.N.Y.). Rosen Plaintiffs' Counsel. **$14 million**.

- **Sandridge Energy, Inc.**, (W.D. Okla.). Rosen Co-Lead Counsel. **$13.945 million**.

- **Blue Apron Holdings, Inc.**, (E.D.N.Y.). Rosen Co-Lead Counsel. **$13.25 million.**

- **Canopy Growth Corporation**, (D.N.J.). Rosen Co-Lead Counsel. **$13 million**.

- **SeaWorld Entertainment Inc. (Shareholder Derivative)** (Del. Ch.). Rosen Co-Lead Counsel. **$12.5 million.**

- **The RealReal, Inc.**, (N.D. Cal.). Rosen Lead Counsel. **$11 million**.

- **Prosper Marketplace, Inc.**, (Cal. Superior). Rosen Class Counsel. **$10 million.**

- **PG&E Corp.**, (N.D. Cal.). Rosen Co-Lead Counsel. **$10 million**.

- **Textainer Financial Servs. Corp.**, (Cal. Superior). Rosen Co-Lead Counsel. **$10 million**.

- **Quest Energy Partners LP**, (W.D. Okla.). Rosen Lead Counsel. **$10.1 million** all classes.

- **comScore, Inc. (Shareholder Derivative)**, Rosen Co-Lead Counsel. **$10 million**.

ROSEN LAW FIRM BIOGRAPHY                    11

- **Santander Consumer USA Holdings Inc.**, (N.D. Tex.). Rosen Co-Lead Counsel. **$9.5 million.**

- **Uxin Limited**, (E.D.N.Y.). Rosen Lead Counsel. **$9.5 million.**

- **Concordia International Corp.**, (S.D.N.Y.). Rosen Lead Counsel. **$9.25 million.**

- **PPDAI Group Inc.**, (E.D.N.Y.). Rosen Lead Counsel. **$9 million**.

- **Puda Coal**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$8.7 million**.

- **RINO International Corporation**, (C.D. Cal.). Rosen Lead Counsel. **$8,685,000**.

- **Acer Therapeutics, Inc.**, (S.D.N.Y.). Rosen Lead Counsel. **$8.35 million**.

- **Montage Technology Group Limited**, (N.D. Cal.). Rosen Lead Counsel. **$7.25 million.**

- **AgFeed Industries**, (M.D. Tenn.). Rosen Lead Counsel. **$7 million**.

- **Sundial Growers, Inc.**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$7 million**.

- **Akazoo S.A.**, (E.D.N.Y.). Rosen Co-Lead Counsel. **$6.51 million**.

- **Global Brokerage, Inc. f/k/a FXCM, Inc. Sec. Litig.**, (S.D.N.Y.). Rosen Lead Counsel. **$6.5 million**.

- **Aeterna Zentaris, Inc.**, (D. N.J.). Rosen Class Counsel. **$6.5 million**.

- **Sunlands Technology Group**, (E.D.N.Y.). Rosen Lead Counsel. **$6.2 million**.

- **Covia Holdings Corp.**, (N.D. Ohio). Rosen Lead Counsel. **$6 million**, pending court approval.

- **FalconStor Software, Inc.**, (E.D.N.Y.). Rosen Lead Counsel. **$5 million**.

- **Jumia Technologies AG**, (S.D.N.Y.). Rosen Lead Counsel. **$5 million**.

- **Momo, Inc.**, (S.D.N.Y.). Rosen Lead Counsel. **$5 million**.

- **SOS Limited**, (D.N.J.). Rosen Co-Lead Counsel. **$5 million.**

- **Jumia Technologies AG**, (S.D.N.Y.). **$5 million.**

- **State Street**, (D. Mass.). Rosen Lead Counsel. **$4.9 million**.

- **Altice USA Inc.**, (E.D.N.Y.). Rosen Lead Counsel. **$4.75 million**.

- **KIOR, Inc.**, (S.D. Tex.). Rosen Co-Lead Counsel. **$4.5 million**.

- **Entropin, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$4.5 million**.

- **Sonus Networks, Inc.**, (D. Mass). Rosen Co-Lead Counsel. **$4.5 million.**

- **Uni-Pixel, Inc.**, (S.D. Tex.). Rosen Co-Lead Counsel. **$4.5 million**.

- **China Expert Technology, Inc.**, (S.D.N.Y.). Rosen Lead Counsel. **$4.2 million**.

- **IDreamSky Technology Limited**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$4.15 million.**

- **Universal Travel Group, Inc.**, (D.N.J.). Rosen Lead Counsel. **$4.075 million**.

- **Allegiant Travel Co.**, (D. Nev.). Rosen Lead Counsel. **$4 million**.

- **Zynerba Pharms., Inc.**, (E.D. Pa.). Rosen Co-Lead Counsel. **$4 million**.

- **Liberty Oilfield Services, Inc.**, (D. Colo.). Rosen Lead Counsel. **$3.9 million**.

- **China Electric Motor, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$3,778,333.33**.

- **IsoRay, Inc.**, (E.D. Wash.). Rosen Co-Lead Counsel. **$3,537,500**.

- **Deer Consumer Products, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$3.55 million**.

- **SAExploration Holdings, Inc.,** (S.D. Tex.). **$3.55 million**.

- **L&L Energy, Inc.**, (S.D.N.Y.). Rosen Lead Counsel. **$3.5 million**.

- **Tarena International, Inc.**, N (E.D.N.Y.). Rosen Lead Counsel. **$3.5 million**, pending Court approval.

- **Catalyst Pharmaceutical Partners, Inc.**, (S.D. Fla.). Rosen Lead Counsel. **$3.5 million**.

- **Keyuan Petrochemicals, Inc. and Auditor**, (S.D.N.Y.) & (D.N.J.). Rosen Lead Counsel. **$3.5 million**.

- **StockerYale, Inc.**, (D.N.H.). Rosen Lead Counsel. **$3.4 million**.

ROSEN LAW FIRM BIOGRAPHY                    13

- **Industrial Enterprises of America, Inc.,** (S.D.N.Y.). Rosen Co-Lead Counsel. **$3.4 million**.

- **Ampio Pharmaceuticals, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$3.4 million**.

- **Textura Corporation**, (N.D Ill.). Rosen Lead Counsel. **$3.3 million**.

- **Roka Bioscience, Inc.**, (D.N.J.). Rosen Lead Counsel. **$3.275 million**.

- **Intrusion, Inc.,** No. 21-cv-307-SDJ (E.D. Tex.). Rosen Lead Counsel. **$3.25 million.**

- **Wedbush Morgan Securities, Inc.**, (Cal. Superior). Co-Lead Counsel. **$3.2 million**.

- **New Oriental Education & Technology Group Inc.**, (D.N.J.). Rosen Co-Lead Counsel. **$3.15 million**.

- **TierOne Corporation**, (D. Neb.). Rosen Lead Counsel. **$3.1 million**.

- **Hanmi Financial Corporation**, (C.D. Cal.). Rosen Lead Counsel. **$3 million**, pending court approval.

- **Cadiz, Inc.**, (C.D. Cal.). Rosen Co-Lead Counsel. **$3 million**.

- **Fat Brands, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$3 million.**

- **China Finance Online Co. Limited**, (S.D.N.Y.). Rosen Lead Counsel. **$3 million**.

- **Skilled Healthcare Group, Inc.**, (C.D. Cal.). Rosen Co-Lead Counsel. **$3 million**.

- **Spectrum Pharms. Inc.**, (D. Nev.). Rosen Lead Counsel. **$2.995 million**.

- **MiMedx Group, Inc.**, (N.D. Ga.). Rosen Lead Counsel. **$2.979** million.

- **Pegasus Communications Corp**, (E.D. Pa.). Rosen Lead Counsel. **$2.95 million**.

- **Albany Molecular Research**, (E.D.N.Y.). Rosen Lead Counsel. **$2.868 million**.

- **Lihua International, Inc.**, (S.D.N.Y.). Rosen Lead Counsel. **$2.865 million**.

- **TVIA, Inc.**, (N.D. Cal.). Rosen Lead Counsel. **$2.85 million**.

- **New Source Energy Partners LP**, (S.D.N.Y.). Rosen Lead Counsel. **$2.85 million**.

- **Innocoll Holdings Public Ltd.**, (E.D. Pa.). Rosen Lead Counsel. **$2.755 million**.

- **Natural Health Trends Corp., et al.**, (N.D. Tex.). Rosen Lead Counsel. **$2.75 million**.

- **Sequans Communications**, (E.D.N.Y.). Rosen Co-Lead Counsel. **$2.75 million**.

- **Akari Therapeutics PLC**, (S.D.N.Y.). Rosen Lead Counsel. **$2.7 million.**

- **Growlife, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$2.7 million (cash and stock)**.

- **Tangoe, Inc.**, (D. Conn.). Rosen Co-Lead Counsel. **$2.55 million**.

- **Twitter, Inc.**, (Cal. Superior). Rosen Co-Lead Counsel. **$2.5 million**.

- **Radient Pharmaceuticals Corporation**, (C.D. Cal.). Rosen Lead Counsel. **$2.5 million**.

- **Robert T. Harvey Securities Litigation**, (C.D. Cal.). Rosen Co-Lead Counsel. **$2.485 million**.

- **China Education Alliance, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$2.425 million.**

- **Oasmia Pharmaceuticals AB.**, (E.D.N.Y.). Rosen Co-Lead Counsel. **$2.35 million.**

- **BioAmber, Inc.**, (E.D.N.Y.). Rosen Co-Lead Counsel. **$2.25 million**.

- **NetApp, Inc.**, (N.D. Cal.). Rosen Lead Counsel. **$2.25 million**.

- **Akers Biosciences, Inc.**, (D.N.J.). Rosen Lead Counsel. **$2.25 million**.

- **Kanzhun Limited,** (D.N.J.). Rosen Lead Counsel. **$2.25 million**.

- **SkyPeople Fruit Juice**, (S.D.N.Y.). Rosen Lead Counsel. **$2.2 million**.

- **Caesarstone Sdot-Yam Ltd.**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$2.2 million**.

- **RCI Hospitality Holdings Inc.**, (S.D. Tex.). Rosen Co-Lead Counsel. **$2.2 million**.

- **Fuwei Films**, (S.D.N.Y.). Rosen Lead Counsel. **$2.15 million**.

- **Gulf Resources, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$2.125 million**.

- **PTC Inc.**, (D. Mass.). Rosen Lead Counsel. **$2.1 million**.

- **DS Healthcare Group, Inc.**, (S.D. Fla.). Rosen Lead Counsel. **$2.1 million**.

ROSEN LAW FIRM BIOGRAPHY                    15

- **Indivior PLC**, (D.N.J.).  Rosen Lead Counsel. **$2 million**.

- **Orient Paper, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$2 million**.

- **Mesoblast Limited**, (S.D.N.Y.). Rosen Lead Counsel.  **$2 million.**

- **GTT Communications, Inc.**, No. 21-CV-270-DOC-AS (C.D. Cal.). **$2 million**.

- **iBio, Inc.**, (D. Del.). Rosen Lead Counsel. **$1.875 million**.

- **CD Projekt SA**, No. CV-20-11627 (FMO)(RAOx) (C.D. Cal.).  $**1.85 million**, pending court approval.

- **Ignite Restaurant Group, Inc.**, (S.D. Tex.). Rosen Lead Counsel. **$1.8 million**.

- **Electronic Game Card, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$1.755 million**.

- **BMW AG**, (D.N.J.).  Rosen Lead Counsel.  **$1.75 million**.

- **Natural Health Trends Corp.**, (C.D. Cal.). Rosen Co-Lead Counsel. **$1.75 million**.

- **Corrrevio Pharma Corp.**,(S.D.N.Y.). Rosen Co-Lead Counsel.  **$1.75 million**.

- **Delstaff LLC (Merger Litigation)***, *(Cal. Superior). **$1.6425 million.**

- **Worldwide Energy & Manufacturing USA, Inc**, (Cal. Superior). Rosen Lead Counsel. **$1.615 million**.

- **Alliance MMA, Inc.**, (D.N.J.). Rosen Lead Counsel. **$1.55 million**.

- **Lightinthebox Holding Co., Ltd.**, (S.D.N.Y.).  Rosen Lead Counsel.  **$1.55 million.**

- **Nutracea, Inc.**, (D. Ariz.). Rosen Lead Counsel.  **$1.5 million**.

- **Kraton Corporation**, (S.D. Tex.). Rosen Lead Counsel.  **$1.5 million**.

- **RMG Networks Holding Corporation (Merger Litigation)***, *(Del. Ch.). **$1.5 million**.

- **BlueNRGY Group Ltd, f/k/a CBD Energy Ltd.**, (S.D. Tex.). Rosen Lead Counsel. **$1.5 million**.

- **Ambow Education Holding Ltd.**, (C.D. Cal.). Rosen Lead Counsel.  **$1.5 million**.

- **Active Power, Inc.**, (W.D. Tex.). Rosen Lead Counsel. **$1.5 million**.

- **Northfield Laboratories, Inc.**, (N.D. Ill.). Rosen Lead Counsel. **$1.5 million**.

- **PartsBase.com, Inc.**, (S.D. Fla.). Rosen Lead Counsel. **$1.5 million**.

- **China Natural Gas, Inc.**, (D. Del.). Rosen Lead Counsel. **$1.5 million**.

- **FAB Universal Corp.**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$1.5 million**.

- **Sogou, Inc.**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$1.45 million**.

- **Code Rebel Corp.**, (S.D.N.Y.). Rosen Co-Lead Counsel. **$1.415 million**.

- **Empyrean Bioscience**, (N.D. Ga.). Rosen Lead Counsel. **$1.4 million**.

- **Shattuck Labs, Inc.**, (E.D.N.Y.).  Rosen Lead Counsel. **$1.4 million,** pending Court approval.

- **Longeveron, Inc.**, (S.D. Fla.). Rosen Lead Counsel. **$1.395 million**, pending Court approval.

- **Agria, Inc.**, (D.N.J.). Rosen Lead Counsel. **$1.3 million**.

- **Ateerian, Inc.**, (S.D.N.Y.).  Rosen Lead Counsel. **$1.3 million**.

- **CoCrystal Pharma, Inc.**, (D.N.J.). Rosen Lead Counsel. **$1.265 million**.

- **Wins Financial Holdings, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$1.26 million**, pending Court approval.

- **ERBA Diagnostics, Inc.**, (S.D. Fla.).  Rosen Lead Counsel. **$1.215 million.**

- **Yingli Green Energy Holding Co. Ltd.,** (C.D. Cal.). Rosen Lead Counsel. **$1.2 million**.

- **Himax Technologies, Inc.**, (C.D. Cal.).  Rosen Co-Lead Counsel. **$1.2 million**.

- **Flight Safety Technologies, Inc.**, (D. Conn.). Rosen Lead Counsel. **$1.2 million**.

- **M.H. Meyerson & Co.**, (D.N.J.). Rosen Lead Counsel. **$1.2 million**.

- **Izea, Inc.**, (C.D. Cal.). Rosen Co-Lead Counsel. **$1.2 million**.

ROSEN LAW FIRM BIOGRAPHY                    17

- **India Globalization Capital, Inc.**, (D. Md.). Rosen Co-Lead Counsel. **$1 million.**

- **National Lampoon, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$1 million**.

- **Lentuo International, Inc.**, (C.D. Cal.). Rosen Lead Counsel. **$1 million**.

- **Katanga Mining Limited**, (D.N.J.). Rosen Lead Counsel. **$1 million.**

- **Busybox.com, Inc.**, (Cal. Superior). Rosen Co-Lead Counsel. **$1 million**.

## III. SECURITIES CLASS ACTIONS IN WHICH THE ROSEN LAW FIRM, P.A. IS CURRENTLY LEAD COUNSEL

In re Maiden Holdings, Ltd. Securities Litigation, No. 19-CV-5296-RMB-JS (D.N.J.) Rosen Co-Lead Counsel.

Acerra v. Trulieve Cannabis Corp., No. 20-cv-186-RH-MJF (N.D. Fla.). Rosen Lead Counsel.

In re ChinaCast Education Corporation Sec. Litig., No. CV 12-4621- JFW (PLAx) (C.D. Cal.). Rosen Co-Lead Counsel.

White v. Just Energy Group Inc., No. H-20-590 (S.D. Tex.). Rosen Lead Counsel.

Kasillingam v. Tilray, Inc., No. 20-CV-3459 (PAC) (S.D.N.Y.). Rosen Lead Counsel.

In re NIO, Inc. Securities Litigation, No. 19-CV-1424 (NGG) (JRC) (E.D.N.Y.). Rosen Class Counsel.

In re JPMorgan Chase & Co. Sec. Litig., No. 20-cv-5124 (ENV)(RML) (E.D.N.Y.). Rosen Co-Lead Counsel.

City of Taylor General Employees Retirement System v. Astec Industries, Inc., No. 1:19-cv-PLR-CHS. (E.D. Tenn.). Rosen Lead Counsel.

Lee v. IQIYI, Inc., No. 20-cv-1830 (LDH)(JO) (E.D.N.Y). Rosen Co-Lead Counsel.

Alagappan v. Baidu, Inc., No. 20-cv-3794 (DG)(TAM) (E.D.N.Y.). Rosen Co-Lead Counsel.

Lavin v. Virgin Galactic Holdings Inc., No. 21-CV-3070 (ARR)(TAM) (E.D.N.Y.).  Rosen Lead Counsel.

Handal v. Tenet Fintech Group, Inc., No. 21-cv-6461 (PKC)(RLM) (E.D.N.Y.).  Rosen Lead Counsel.

Baker v. Twitter, Inc., No. 22-cv-6525-MCS (C.D. Cal.).  Rosen Lead Counsel.

Atery v. Astra Space, Inc., No. 22-cv-737 (NM)(MMH) (E.D.N.Y.).  Rosen Co-Lead Counsel.

Hoang v. ContextLogic, Inc., No. 21-cv-3930-BLF (N.D. Cal.).  Rosen Co-Lead Counsel.

Mallozzi v. Innovative Industrial Properties, Inc., No. 22-cv-2359-EP-JRA (D.N.J.).  Rosen Lead Counsel.

Gru v. Axsome Therapeutics, Inc., No. 22-cv-3925 (AGS) (S.D.N.Y.).  Rosen Co-Lead Counsel.

Pratyush v. Full Truck Alliance Co., No. 21-cv-3903 (LDH)(MMH) (E.D.N.Y.).  Rosen Lead Counsel.

Farhar v. Ontrak, Inc., No. 21-CV-1987-FLA-A (C.D. Cal.).  Rosen Lead Counsel.

Cao v. Uber Technologies, Inc., No. 22-cv-4688-YGR (N.D. Cal.).  Rosen Lead Counsel.

Chen v. Missfresh Limited, No. 22-CV-4065 (WFK)(VMS) (E.D.N.Y.). Rosen Co-Lead Counsel.

In re Vanguard Chester Funds Litig., No. 22-cv-955-ER (E.D. Pa.).  Rosen Lead Counsel.

In re Walmart Secs. Litig., No. 21-cv-55-CFC (D. Del.).  Rosen Lead Counsel.

Sanchez v. Arrival SA, No. 220cv0172 (DG)(RLM) (E.D.N.Y.).  Rosen Lead Counsel.

In re Evolus Inc., Sec. Litig., No. 20-cv-8647 (PGG) (S.D.N.Y.). Rosen Lead Counsel.

Winter v. Stronghold Digital Mining, Inc., No. 22-CV-3088 (RA).   Rosen Co-Lead Counsel.

ROSEN LAW FIRM BIOGRAPHY                    19

In re January 2021 Short Squeeze Trading Litig., 21-2989-MDL (S.D. Fla.).  Rosen Lead Counsel.

In re VEON Ltd. Sec. Litig., No. 15-cv-8672 (ALC)(OTW) (S.D.N.Y.). Rosen Lead Counsel.

Hacker v. Electric Last Mile Solutions, No. 22-CV-545-CCC (D.N.J.).  Rosen Lead Counsel.

In re Volkswagen AG Sec. Litig., No. 22-cv-45-RDA-TCB (E.D. Va.).  Rosen Lead Counsel.

Coggins v. Camber Energy, Inc., No. 21-cv-3574 (S.D. Tex.). Rosen Co-Lead Counsel.

Friel v. Dapper Labs, Inc., No. 21-CV-5837 (VM) (S.D.N.Y.).  Rosen Lead Counsel.

Cheng v. Activision Blizzard, Inc., No. 21-CV-6240-PA-JEM (C.D. Cal.). Rosen Lead Counsel.

In re DiDi Global Inc. Sec. Litig., No. 21-CV-5807 (LAK) (S.D.N.Y). Rosen Lead Counsel.

Patterson v. TerraForm Labs Pte Ltd., No. 22-cv-3600-TLT (N.D. Cal.). Rosen Lead Counsel.

Diaz v. The Gap, Inc., No. 22-cv-7371 (DG)(RER) (E.D.N.Y.). Rosen Lead Counsel.

Freudiger v. Molecular Partners AG, No. 22-CV-5925 (ER) (S.D.N.Y.).  Rosen Lead Counsel.

Armbruster v. Gaia, Inc., No. 22-CV-3267 (D. Colo.).  Rosen Lead Counsel.

Pang v. Levitt (Core Scientific, Inc.), No. 22-CV-1191-LY (W.D. Tex.). Rosen Lead Counsel.

Fung v. Sunlight Financial Holdings, Inc., No. 22-CV-10658 (AKH) (S.D.N.Y.).  Rosen Lead Counsel.

Goodman v. Wheels Up Experience, Inc., No. 23-cv-2900 (OEM)(VMS) (E.D.N.Y.). Rosen Lead Counsel.

Brennan v. Latch, Inc., No. 22-CV-7473 (JGK) (S.D.N.Y.). Rosen Lead Counsel.

Weir v. Allianz SE, No. 23-cv-719-DSF-MAA (C.D. Cal.). Rosen Lead Counsel.

In re Enovix Corp. Sec. Litig., No. 23-cv-71-SI (N.D. Cal.). Rosen Co-Lead Counsel.

Gambrill v. CS Disco, Inc., No. 23-cv-8270 (LAK)(SN) (S.D.N.Y.). Rosen Lead Counsel.

Lewandowski v. Tal Education Group, No. 23-cv-1769 (MEF) (JRA) (D.N.J.). Rosen Lead Counsel.

Bergmann v. GDS Holdings Limited, CV-23-4900 (JAK)(BFMx) (C.D. Cal.). Rosen Lead Counsel.

HRSA-ILA Funds v. adidas AG, No. 23-CV-629-IM (D. Or.). Rosen Lead Counsel.

Zhao v. Eqonex Limited, No. 23-CV-3346 (GHW) (S.D.N.Y.). Rosen Lead Counsel.

Tan v. PacWest Bancorp., No. CV-23-1685 (JWH)(ADSx) (C.D. Cal.). Rosen Co-Lead Counsel.

Maschhoff v. Polished.com, No. 22-cv-6605 (NGG)(VMS) (E.D.N.Y.). Rosen Lead Counsel.

Bergman v. Caribou Biosciences, Inc., No. 23-cv-1742 (N.D. Cal.). Rosen Co-Lead Counsel.

Donley v. Live Nation Entertainment, Inc., No. CV-23-6343 (KK)(ASx) (C.D. Cal.). Rosen Co-Lead Counsel.

Pelham v. VBIT Tech. Corp., No. 23-CV-162-CFC-SRF (D. Del.). Rosen Lead Counsel.

Fernandez v. DouYu International Holdings Ltd., No. 23-cv-3161-EP-ESK. (D.N.J.). Rosen Co-Lead Counsel.

ROSEN LAW FIRM BIOGRAPHY                21

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC.,<br><br>        Defendants. | Case No. 1:21-cv-24232-KMW |

**DECLARATION OF ADAM WARDEN, ESQ. IN SUPPORT OF PLAINTIFFS'
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES
<u>FILED ON BEHALF OF SAXENA WHITE P.A.</u>**

I, Adam Warden, declare as follows:

1.      I am a senior attorney at Saxena White P.A.  ("Saxena White"), the Court-appointed Local Counsel in the above-captioned action (the "Action").[1]  *See* ECF No. 69.  I submit this declaration in support of Plaintiffs' Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.  I have personal knowledge of the facts set forth herein based on my active supervision of, and participation in, the prosecution and settlement of the claims asserted in the Action and, if called upon, could and would testify thereto.

2.      As Local Counsel for Plaintiffs in this Action, Saxena White, among other things: (a) reviewed and filed pleadings, briefs, and communications with the Court, (ii) advised Lead Counsel regarding local practice, procedure, and requirements, and (iii) served as the principal contact between Plaintiffs and the Court.

3.      The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by attorneys and professional support staff employees of my firm who, from inception of the Action through and including January 15, 2024, billed five or more hours to the Action, and the lodestar calculation for those individuals based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 20, 2023.  ECF No. 122-1.

1

4.      I am the attorney who oversaw or conducted my firm's activities in the Action, and I reviewed these daily time records in connection with the preparation of this declaration.  The purpose of this review was to confirm both the accuracy of the records as well as the necessity for, and reasonableness of, the time committed to the litigation.  As a result of this review, I made reductions to certain of my firm's time entries such that the time included in Exhibit A reflect that exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time of Saxena White attorneys and staff reflected in Exhibit A was reasonable and necessary for the effective and efficient prosecution and resolution of the Action.  No time expended on the application for fees and reimbursement of expenses has been included.

5.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are consistent with the rates approved by courts in other securities or shareholder litigation when conducting a lodestar cross-check.

6.      The total number of hours reflected in Exhibit A is 63.5 hours.  The total lodestar reflected in Exhibit A is $33,900, consisting of $27,225 for attorneys' time and $6,675 for professional support staff time.

7.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

8.      As detailed in Exhibit B, my firm is seeking reimbursement of a total of $614 in expenses incurred in connection with the prosecution of this Action.

9.      The litigation expenses incurred in the Action are reflected in the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and

2

other source materials and are an accurate record of the expenses incurred. The expenses reflected in Exhibit B are the expenses actually incurred by my firm.

10.     Attached hereto as Exhibit C is a brief biography of Saxena White, including the attorneys who were involved in the Action.

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed on January 19, 2024, in Boca Raton, Florida.

_____
Adam Warden

3

**EXHIBIT A**

*Rodriguez et al. v. Alfi Inc., et al.,*
**Case No. 1:21-cv-24232-KMW**

**Saxena White P.A.**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH JANUARY 15, 2024**

| TIMEKEEPER | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| ATTORNEYS: | | | | |
| Adam Warden | Senior Attorney | 30.25 | $660.00 | $19,965.00 |
| Jonathan Lamet | Senior Attorney | 11.00 | $660.00 | $7,260.00 |
| | | | | |
| TOTAL ATTORNEY | | 41.25 | | $27,225.00 |
| PROFESSIONAL STAFF: | | | | |
| Brandon Smith | Paralegal | 6.75 | $300.00 | $2,025.00 |
| Harry Joseph | Paralegal | 15.50 | $300.00 | $4,650.00 |
| | | | | |
| TOTAL PROFESSIONAL STAFF | | 22.25 | | $6,675.00 |
| TOTAL LODESTAR | | 63.50 | | $33,900.00 |

4

**EXHIBIT B**

*Rodriguez et al. v. Alfi Inc., et al.,*
**Case No. 1:21-cv-24232-KMW**

**Saxena White P.A.**

**EXPENSE REPORT**

**FROM INCEPTION THROUGH JANUARY 15, 2024**

| ITEM | AMOUNT |
|---|---|
| COURT FILING FEES | $602.00 |
| ONLINE RESEARCH | $12.00 |
| **GRAND TOTAL** | **$614.00** |

**EXHIBIT C**

**Saxena White P.A.**

**FIRM RESUME**



# SAXENA WHITE

"A highly experienced
group of lawyers
with national reputations in large securities class actions..."

*- Hon. Alan Gold, U.S. District Court, Southern District of Florida*

## FIRM RESUME

FLORIDA  |  NEW YORK  |  CALIFORNIA  |  DELAWARE
www.saxenawhite.com

S
W

## SAXENA WHITE

Saxena White P.A. was founded in 2006 by Maya Saxena and Joseph White. After spending many years at one of the country's largest class action law firms, we wanted to do business a different way. Our goal in forming the Firm was to become big enough to handle prominent and complex litigation while remaining small enough to offer each client responsive, ethical, and personalized service.

Today our Firm's capabilities exceed those of our largest competitors. We obtain victories against major corporations represented by the nation's top defense firms. We represent some of the largest pension funds in major securities fraud cases and have recovered billions of dollars on behalf of injured investors. We have succeeded in improving how corporations do business by requiring the implementation of significant corporate governance reforms. We have formed long-lasting relationships with our clients who know we are only a phone call away. However, the most important attribute of the Firm, and the key to its continued success, is the people. Saxena White was built upon the quality, integrity, and camaraderie, of its people — attributes that continue to be its greatest legacy.

### *What Makes us Different?*

- *We are proud to be a nationally certified woman- and minority-owned securities litigation firm specializing in representing institutional investors.*

- *We take a selective approach to litigation, recommending only a few fraud cases per year and litigating them aggressively.*

- *The securities fraud cases in which we have served as lead counsel are rarely dismissed due to our careful selection criteria.*

- *We offer tailored portfolio monitoring services to our clients that reflect their individual philosophies toward litigation.*

- *We emphasize community outreach and welcome opportunities to support our clients in their communities.*



## NOTABLE RECOVERIES

### ■ *In re Wells Fargo & Company Shareholder Derivative Litigation*

This landmark case alleged that the Board and executive management of Wells Fargo & Company knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those customers' consent, in an attempt to drive up "cross selling," i.e., selling complementary Wells Fargo banking products to prospective or existing customers.

Over significant competition from the top law firms in our industry, the court selected Saxena White as one of the two firms most qualified in the nation to lead this high-profile case, noting the superior quality of the work performed. Through this shareholder derivative action, Saxena White held Defendants accountable for a scandal that has significantly damaged one of America's largest financial institutions.

Saxena White zealously advocated for the interests of the company and obtained excellent results. After a thorough investigation of the relevant claims; the filing of a detailed complaint; successfully defeating two motions to dismiss; active intervention in, stays of, and dismissals of multiple state court actions; consolidation and coordination with related federal actions; extensive review of over 3.5 million pages of documents; and consultation with experts, a $240 million settlement was reached in this derivative action. The settlement included the $240 million cash payment from Defendants' insurers – which at the time was the largest insurance-funded monetary component of any shareholder derivative settlement.

In approving this historic settlement, the court remarked that "this represents an excellent result for the shareholders" of Wells Fargo. The court noted "the risk" that Saxena White "took in litigation on a contingency basis – a risk they have borne for more than three years."

### ■ *In re Wilmington Trust Securities Litigation*

This historic $210 million recovery was the culmination of eight years of hard-fought litigation against Wilmington Trust. Our investigation revealed rampant misconduct related to Wilmington Trust's loan underwriting practices, its manipulation of the asset review process, and its violations of numerous accounting practices and standards, all designed to conceal the bank's true financial state.

Following extensive briefing and discovery, the court certified a class, and in doing so, created important precedent for aggrieved shareholders nationwide who have fallen victim to securities fraud. The court's opinion rejected Defendants' argument that the Supreme Court's opinion in Comcast Corp. v. Behrend, 569 U.S. 27 (2013) requires plaintiffs to submit a damages methodology and model at the class certification stage. Having defeated an argument that securities fraud defendants frequently relied upon to avoid liability for their illegal actions, Saxena White's precedent-setting efforts provided investors with a powerful weapon for combatting corporate wrongdoing at the class certification stage. In addition to certifying the class, the court applauded Saxena White's "excellent lawyers" and noted that Ms. Saxena's "argument was very well argued."

The Firm embarked on a monumental discovery effort, closely reviewing and analyzing nearly 13 million pages of documents. After two years of hard-fought motion practice, we successfully compelled the Federal Reserve and the Office of the Comptroller of the Currency to waive the bank examination privilege for over 35,000 documents that those regulators had withheld. Compelling the production of such documents was a rare feat and was the culmination of a multi-year effort to relentlessly fight for the information and facts that were relevant to the prosecution of the case. We also prevailed over the U.S. Attorney's Office,

2



successfully moving to lift the discovery stay imposed at its request. As a result, we were able to depose key fact witnesses. In all, we deposed 39 witnesses in seven states, which generated nearly 11,000 pages of testimony and almost 900 exhibits.

This remarkable settlement resulted in a recovery of nearly 40% of the class's maximum likely recoverable damages, eight times greater than the 5% median recovery in the Third Circuit in 2018. At the time of settlement, the recovery ranked among the top ten securities fraud settlements in the Third Circuit, and was in the top 5% of all securities fraud settlements since the PSLRA was enacted in 1995. Notably, the court twice observed that Saxena White achieved the recovery independently of the Government's criminal investigation. The court was also complimentary of the "legal prowess" exhibited by Saxena White's "highly experienced attorneys."

■ *Employees Retirement System of the City of St. Louis v. Charles E. Jones (FirstEnergy Corp. Derivative Litigation)*

Saxena White secured a landmark settlement of a shareholder derivative action against utility company FirstEnergy Corp.'s board of directors and certain officers, which included a cash payment of $180 million and unprecedented corporate governance reforms. At the time of settlement, the $180 million recovery represented the largest shareholder derivative recovery in the history of the Sixth Circuit and was among the highest derivative recoveries ever achieved, in any forum, in the history of the U.S.

The action alleged that FirstEnergy's board of directors failed to properly oversee the company's corporate political activities, allowing FirstEnergy personnel and lobbyists to bribe elected officials with over $60 million in corporate funds. Commenting on the indictments, which made national headlines, the U.S. Attorney called this illicit political spending "likely the largest bribery, money laundering scheme ever perpetrated against the people of the state of Ohio." Saxena White aggressively pursued the derivative litigation, which spanned multiple trial courts and the U.S. Court of Appeals for the Sixth Circuit.

In addition to the $180 million monetary recovery, FirstEnergy agreed to implement unprecedented corporate governance reforms, including the departures of six defendants from the company's board of directors. The settlement also required the board to enact new reforms designed to ensure that the company's political and lobbying activities comply with the law. In approving the settlement, the federal court overseeing the litigation stated that the litigation team was "at the top of their class nationally" and noted that the reforms achieved by Saxena White were broader and more comprehensive than even those reforms imposed on the company by the Department of Justice.

■ *Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita Inc.*

After four years of complex litigation, Saxena White secured an outstanding recovery of $135 million. At the time of settlement, the $135 million recovery represented the second largest all-cash securities class action recovery ever obtained in the District of Colorado, ranking among the Tenth Circuit's top five securities fraud class action recoveries in history. This settlement also ranked as the third largest North American securities class action settlement of 2021. Additionally, the settlement amount consisted not only of the proceeds from Defendants' insurance tower, but also included a substantial monetary contribution from DaVita—a rare occurrence in securities class actions that underscores the exceptional nature of the recovery and the tenacity of Saxena White in achieving it.

Before agreeing to settle the case against DaVita, Saxena White undertook extensive efforts to advance the class's claims and to ensure that Plaintiffs were in a position to maximize their recovery. Significantly,



Saxena White not only initiated this action by filing the initial complaint, but the Firm also filed the only leadership application at the lead plaintiff stage—a rare occurrence in these types of cases, where the PSLRA specifically requires publication of notice of the lead plaintiff deadline, typically resulting in multiple lead plaintiff applications. Thus, absent the efforts of Saxena White, it is almost certain that settlement class members would have recovered nothing for their claims.

### In re Novo Nordisk Securities Litigation

Saxena White represented Co-Lead Plaintiff Employees' Pension Plan of the City of Clearwater in a securities class action against Novo Nordisk A/S and several of its top executives, which resulted in a $100 million settlement for the class—the eighth largest shareholder class action settlement of 2022.

The complaint alleged that Novo Nordisk, a global healthcare company and one of three diabetes-drug producers that dominated the U.S. and global insulin market, defrauded investors by falsely attributing its revenues and growth to purported innovation and product-specific qualities. According to the complaint, however, Novo's financial results were driven by a scheme in which the company paid increasingly large kickbacks to pharmacy benefit managers in exchange for market access, while Novo raised list prices for its drugs in lockstep with its competitors in order to support the ever-growing kickbacks.

The $100 million settlement followed more than four years of litigation, including the review of over five million pages of documents, over 40 depositions, and extensive summary judgment briefing.

### In re Lehman Brothers Equity/Debt Securities Litigation

After conducting an extensive investigation into Lehman Brothers and its executives, Saxena White was the first firm to file a complaint alleging violations of the federal securities laws. Subsequent events, including the largest bankruptcy filing in U.S. history, interjected unique challenges to prosecuting this case – not the least of which was that because Lehman itself was in bankruptcy, damaged shareholders could not recover damages from it.

Despite these formidable obstacles, we continued to prosecute the case. Our efforts paid off. In the spring of 2012, the court approved a $90 million partial settlement with Lehman's senior executives and directors, and a $426 million settlement with several dozen underwriters of its securities. After nearly two more years of hard-fought litigation, we reached a $99 million settlement with Ernst & Young, Lehman's outside auditor, which was approved in the spring of 2014. The $99 million settlement ranks among the largest ever obtained from an outside auditor and is an outstanding recovery for damaged shareholders.

### Fulton County Employees Retirement System, derivatively on behalf of The Goldman Sachs Group, Inc. v. Blankfein

The settlement of this action by Saxena White was the culmination of more than three years of litigation on what courts across the country have noted is "possibly the most difficult legal theory in corporation law upon which a plaintiff might hope to win a judgment."

Saxena White initiated this shareholder derivative action against current and former directors and officers of Goldman Sachs in connection with a corporate scandal and criminal conspiracy involving the Malaysian sovereign wealth fund 1MDB, for which Goldman affiliates underwrote three bond issuances in 2012 and 2013. Saxena White sought to hold Goldman's board of directors accountable for breaching their fiduciary duties by disregarding these red flags and by failing to implement appropriate internal controls and reporting

4



systems. Multiple criminal and civil actions were filed against Goldman across the globe, resulting in billions in fines, penalties, and disgorgement.

Saxena White obtained a $79.5 million cash payment from Defendants' insurers, which at the time of settlement, represented the second largest derivative settlement in Second Circuit history and ranked among the top 20 such settlements ever. Plaintiff not only obtained this extraordinary cash recovery for Goldman, but it also negotiated the requirement that these funds be used solely for compliance purposes. As the Court noted in its preliminary approval order, "[t]his [requirement] is particularly significant because the gravamen of Plaintiff's allegations argue that the transactions would not have occurred had Goldman's compliance and controls been more robust and detected the highly suspicious deals and their terms." In addition, Saxena White secured significant corporate governance reforms aimed at strengthening compliance at Goldman, which the court noted "would likely be unachievable" had this case continued to trial.

### ▌ *In re Rayonier Inc. Securities Litigation*

Saxena White prosecuted this class action against Rayonier for allegedly misleading investors about its timber inventory and harvesting rates in the Pacific Northwest. When the company's new management ultimately disclosed that Rayonier had overharvested its premium Pacific Northwest timberlands by over 40% each year for over a decade and overstated its merchantable timber by 20% in this critical region, the company's stock price declined significantly, causing investors substantial losses.

After litigating this case for nearly three years and defeating Defendants' motion to dismiss, Saxena White negotiated a $73 million cash settlement on behalf of the class, which at the time of settlement, resulted in the second largest recovery from a securities class action achieved in the Middle District of Florida. The $73 million settlement was nearly nine times the national median settlement and nearly ten times greater than the median recovery in the Eleventh Circuit. As noted by Judge Timothy J. Corrigan, this was an "exceptional result[] achieved for the benefit of the Settlement Class."

### ▌ *In re Jefferies Group, Inc. Shareholders Litigation*

The settlement of this action was one of the largest merger-related settlements in the Delaware Court of Chancery. Specifically, this shareholder class action involved the merger of investment bank Jefferies Group, Inc. with holding company Leucadia National Corporation. As alleged in the complaint, Jefferies' CEO leveraged his relationship with Leucadia's founders—who were nearing retirement and who served on Jefferies' board of directors—to merge with the larger company and take over as CEO of the combined corporation. Negotiating in secret for months before informing the independent board members, Chairman Handler and Leucadia's founders structured a deal that greatly benefitted Leucadia, to the detriment of Jefferies shareholders.

After aggressively litigating this case and defeating Defendants' motion to dismiss and motion for summary judgment, the firm ultimately negotiated a settlement that required Leucadia to pay $70 million to class members, an outstanding result for former Jefferies shareholders.

### ▌ *Plymouth County Retirement System v. Patterson Companies, Inc.*

Saxena White secured a $63 million recovery against dental supplier Patterson Companies, Inc., which was the product of a significant effort on many fronts, including: drafting a 94-page amended complaint, surviving defendants' motion to dismiss, fully briefing class certification to a victorious outcome, reviewing several hundred thousand pages of documents, taking or defending more than three dozen depositions, engaging in



significant expert discovery, opposing defendants' motion for summary judgment, and preparing for trial. In its decision to grant class certification, the court specifically lauded Saxena White as "experienced in leading large securities class actions and hav[ing] obtained substantial recoveries for plaintiffs in such lawsuits," as well as having "demonstrated diligence and expertise in their work in this case."

Notably, at the time of the settlement's final approval, the $63 million recovery ranked among the top ten of all settlements ever achieved in a securities class action in the District of Minnesota, the largest securities class action settlement in that District since 2012, and the third largest securities class action settlement in the Eighth Circuit over the past 10 years.

### ▍ *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*

This derivative case arose out of Bank of America's acquisition of Merrill Lynch during the height of the financial crisis in late 2008. After successfully defending the complaint's core allegations against multiple motions to dismiss, Saxena White embarked on an extensive discovery process that included 31 depositions of senior BofA and Merrill executives and their attorneys, the review and analysis of 3 million pages of documents from BofA, Merrill, and multiple third parties, and close consultation with nationally- recognized financial and economic experts.

The settlement included a $62.5 million cash component and fundamental corporate governance reforms. The extensive corporate governance reforms included the creation of a Board-level committee tasked with special oversight of mergers and acquisitions, aimed at preventing the alleged deficiencies surrounding the Merrill Lynch acquisition. The corporate governance reforms also involved other components, including revisions to committee charters and director education requirements, which caused one noted scholar to observe that as a result, BofA was at the forefront of corporate governance practices.

### ▍ *Central Laborers' Pension Fund v. SIRVA, Inc.*

After two and a half years of hard-fought litigation, an extensive investigation that involved conducting nearly 120 witness interviews across North America and Europe, and the review of approximately 2.7 million documents produced by defendants, Saxena White achieved a $53.3 million settlement for shareholders of SIRVA, a then-giant among moving companies. According to the complaint, SIRVA had serious and systemic problems in its European operations, its network services segment was materially under reserved, and defendants were allegedly using the reserves and other accounting manipulations to manage SIRVA's earnings and meet SIRVA's estimates.

In addition to the significant $53.3 million cash recovery, the corporate governance changes brought about as a result of the settlement achieved by Saxena White provided considerable additional value for SIRVA shareholders. The company formally recognized, in writing, that the lawsuit was one of the main reasons it reformed its governance standards, which confirmed that Saxena White was the key catalyst compelling SIRVA to recognize the need to change the way it conducted business.

In addition, Saxena White obtained even more governance improvements by convincing SIRVA's Board to discard their plurality (or cumulative) standard for the election of their directors in favor of a modified majority standard. This important change improved director accountability by forcing directors who do not receive a majority of the votes to tender their resignation for the Board's consideration. Furthermore, SIRVA also agreed to strengthen its requirements regarding director attendance at shareholder meetings, which created more director accountability and increased shareholder input. Importantly, judges are unable to order these types of governance changes – it was only the negotiation and litigation pressures that we imposed upon the company that enabled the implementation of these changes.



### ■ *John Cumming v. Wesley R. Edens (New Senior Investment Group)*

Described as a "landmark" settlement by *Law360*, in 2019, the Delaware Court of Chancery approved a $53 million settlement in a shareholder derivative action against real estate investment trust New Senior Investment Group. The suit targeted New Senior's $640 million acquisition of a portfolio of senior living properties owned by an affiliate of its investment manager, which, according to Plaintiff's experts, damaged New Senior by over $100 million. At the time, the settlement represented the largest derivative action settlement as a percentage of market capitalization in Delaware and one of the top ten derivative action settlements in the history of the Court of Chancery.

The Firm's extensive discovery efforts in the case included the review of more than 800,000 pages of documents, 16 depositions, and the filing of six motions to compel. After extensive negotiations, the parties agreed to settle the litigation in exchange for the payment of $53 million in cash to New Senior. The settlement also included valuable corporate governance reforms, including the board's agreement to approve and submit to New Senior's stockholders for adoption at the annual meeting amendments to New Senior's bylaws and certificate of incorporation, which would (a) provide that directors be elected by a majority of the votes cast in any uncontested election of directors, and (b) eliminate New Senior's staggered board, so that all directors are elected on an annual basis.

In his remarks at the final settlement hearing, Vice-Chancellor Joseph R. Slights called the settlement "impressive" and further described counsel's efforts as "hard fought, but fought in the right way to reach a productive result."

### ■ *In re HD Supply Holdings, Inc. Securities Litigation*

Saxena White engaged in extensive litigation efforts against HD Supply, one of the largest commercial distributors in the country. This action was based on allegations that defendants falsely assured investors that HD Supply had successfully recovered from a massive supply chain breakdown that crippled the company's operations in the months leading up to the class period. Defendants' alleged scheme enabled HD Supply's President and Chief Executive Officer to liquidate virtually his entire stake in the company over just five trading days at prices near the class period high, for a staggering haul of over $53 million. Significantly, as a result of the filing of the complaint, the SEC subsequently commenced an investigation into HD Supply's then-CEO's alleged insider trading.

Ultimately, the parties participated in settlement negotiations through which Plaintiffs obtained a $50 million cash settlement on behalf of the class – one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia.

### ■ *In re AmTrust Financial Services, Inc. Stockholder Litigation*

Saxena White's litigation against AmTrust and its board of directors proceeded for over four years, beginning with a shareholder derivative action filed in the U.S. District Court for the District of Delaware related to the company's allegedly fraudulent accounting practices. When the company's controlling shareholder family announced a plan to take the company private—which threatened the Plaintiffs' standing in the shareholder derivative action—Saxena White investigated the proposed take-private deal and found numerous improprieties.

Following that investigation, Saxena White filed a shareholder class action in the Delaware Court of Chancery, defeated Defendants' motions to dismiss, and ultimately negotiated a $40 million settlement.



### ■ *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*

One of our Firm's areas of expertise is litigating cases against foreign corporations. We obtained a significant victory against Brazilian corporation Aracruz Celulose. Accomplishing what no other law firm had ever done, Saxena White successfully served process on all three individual executives under the Inter-American Convention on Letters Rogatory. Our efforts included working closely with a Brazilian law firm to defeat Defendants' challenges to service in both the Brazilian trial and appellate courts.

After defeating three motions to dismiss filed by the foreign Defendants, Saxena White began the massive and highly technical discovery process. Because the vast majority of the documents were in Portuguese, we hired native Brazilian attorneys to analyze and translate the tens of thousands of documents that were produced. These documents were also incredibly complex, dealing with five dozen separate financial derivative instruments. Simply valuing one instrument required approximately 50,000 calculations. We consulted closely with highly respected industry and academic experts to gain an unprecedented understanding of the workings of these instruments and how they were valued.

In the end, our hard work paid off. Saxena White successfully negotiated a $37.5 million settlement against Aracruz and its executives. This represented up to 50% of the maximum provable damages – an outstanding result compared to the average national recovery in cases of this magnitude.

### ■ *City of Hollywood Police Officers' Retirement System v. Henry Schein, Inc. (Covetrus, Inc.)*

Saxena White secured a $35 million recovery for Covetrus Inc. shareholders, that, at the time of settlement, was among the Eastern District of New York's top ten securities fraud class action recoveries in history and the second largest securities class action settlement achieved in the Eastern District of New York in over a decade.

Covetrus – a distributor of veterinarian products and software – was created as a result of a major spin-off and merger in the animal health industry. The complaint alleged that throughout the class period, defendants materially misled investors regarding the status of its crucial merger integration process and corresponding financial health. When Covetrus's true condition was revealed, investors lost over $1 billion, and the company's CEO and CFO were ousted.

Saxena White vigorously prosecuted this action from the outset, conducting a thorough pre-filing investigation of the claims in this matter and initiating the action on behalf of the class. The Firm's efforts resulted in a $35 million settlement for the company's shareholders.

### ■ *In re Perrigo Company plc Securities Litigation*

This action alleged that Perrigo Company plc, a global pharmaceutical company, headquartered in Michigan but domiciled in Ireland for tax reasons, misrepresented its potential tax liability in connection with the sale of its sole remaining core asset—a 50% stake in its multiple sclerosis flagship drug—for $3.25 billion plus contingent royalty payments.

Saxena White engaged in extensive fact discovery, including depositions that spanned two continents. Ultimately, the Firm secured an excellent recovery of $31.9 million on behalf of the settlement class, representing 22.5% of estimated maximum recoverable damages. This recovery would not have been achieved without two crucial evidentiary rulings won by Saxena White resulting in (1) the Court granting Plaintiffs' motion to compel the production of thousands of documents related to an advice-of-counsel defense and withheld by



Perrigo, and (2) the Court granting Plaintiffs' motion to preclude Perrigo's accounting expert from testifying. These two victories required aggressive and innovative legal advocacy, enabling Saxena White to obtain summary judgment—rare in securities litigation—on the key elements of falsity and materiality. Saxena White was prepared to proceed to trial with the case set on the Court's calendar for October 2021, when it successfully negotiated the settlement.

### ■ *Milbeck v. TrueCar*

Saxena White engaged in extensive litigation efforts on an exceptionally expedited case schedule, including defeating Defendants' motion to dismiss, reviewing over 200,000 documents produced by Defendants, and obtaining class certification. Thereafter, the parties participated in negotiations through which Saxena White ultimately obtained a $28.25 million cash settlement on behalf of the class.

TrueCar is an online car buying service that purports to provide consumers with the "true" price, or market price, for new and used cars. The settlement resolved allegations that the company and its senior executives misled investors about TrueCar's business and relationship with its most significant business partner, United States Automobile Association (USAA), which accounted for nearly one-third of TrueCar's annual revenues.

### ■ *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc.*

Brixmor Property Group is a real estate investment trust that operates a wholly-owned portfolio of shopping centers across the country. This action alleged that Defendants purposefully falsified Brixmor's income for over two years to portray consistent quarterly same property net operating income growth; the company lacked adequate internal and financial controls; and as a result, Defendants' class period statements about Brixmor's business, operations, and prospects were false and misleading.

Saxena White obtained a $28 million settlement of this action. Significantly, the settlement embodied the Second Circuit's directive to promote "efficient prosecution and early resolution," as it secured an immediate and meaningful benefit for shareholders that avoided the risk, delay, and expense inherent in years of litigation, as it was achieved during the motion to dismiss stage.

### ■ *In re Sadia S.A. Securities Litigation*

Saxena White reached a $27 million settlement against Sadia, a Brazilian company specializing in poultry and frozen goods that exported a majority of its products. The company engaged in wildly speculative currency hedging while telling investors that its hedges were conservative and used to protect against sudden changes in currency fluctuation. Plaintiffs filed a securities fraud complaint against Sadia and its senior executives and Board members alleging violations of the federal securities laws. Because the individual Defendants in this case were also citizens of Brazil, they had to be served pursuant to the Inter-American Convention on Letters Rogatory. We successfully served the individuals, once again accomplishing what few other law firms have been able to do.

We prevailed on the motion to dismiss and on the motion for class certification. Discovery was greatly complicated by the fact that the vast majority of the documents were in Portuguese, and the Court had no subpoena power to force witnesses to appear for deposition. Despite these hurdles, we hired attorneys fluent in Portuguese to help us with the review and we were able to depose one of the company's executives.



### ▪ *Plymouth County Retirement System v. GTT Communications, Inc.*

In April 2021, a $25 million settlement was approved in this securities class action filed against a cloud networking company and four of its executives. Saxena White engaged in significant litigation efforts against GTT, including: drafting the initial complaint, an 88-page amended complaint, and a second, 115-page amended complaint incorporating newly uncovered accounting fraud claims; fully defeating defendants' motion to dismiss; reviewing over 400,000 pages of documents; obtaining certification of the class; and engaging in extensive expert discovery, including the submission of a detailed report by plaintiff's expert on loss causation and damages.

Saxena White was able to secure the $25 million recovery despite a rapidly dwindling D&O insurance tower and significant ability to pay issues stemming from GTT's financial distress (GTT would later declare bankruptcy and was delisted by the New York Stock Exchange). The court concluded that Saxena White had "conducted the litigation and achieved the [s]ettlement with skill, perseverance and diligent advocacy, and with considerable challenges from formidable opposition."

### ▪ *Plymouth County Retirement System v. Evolent Health, Inc.*

After three years of vigorous litigation, Saxena White obtained an excellent recovery of $23.5 million on behalf of the settlement class. This litigation concerned the partnership between Evolent, a provider of technology-enabled clinical and administrative services to health systems, and Passport Health Plan, a Kentucky-based non-profit Medicaid plan that represented as much as 20% of Evolent's annual revenues.

Saxena White's extensive efforts to obtain documents from Kentucky via open records requests led to our uncovering of critical, non-public documents supporting Plaintiffs' claims, including, *inter alia*, a series of letters assessing significant penalties against Passport as a result of Evolent's claims-processing failures. Moreover, Saxena White successfully amended the operative complaint to incorporate allegations based on information provided by a new confidential witness—a high ranking former Passport executive—that were critical to surviving Defendants' motion to dismiss. The Court's finding of scienter expressly hinged on the penalty letters and the facts provided by this confidential witness. Later, following an intensive review of Defendants' document productions, the Firm filed a Third Amended Complaint incorporating new allegations from some of these documents, and successfully defeated another motion to dismiss, thereby nearly doubling the length of the operative class period and significantly increasing the settlement class's maximum recoverable damages. Without these specific efforts, any recovery would have been far less.

### ▪ *In re Merit Medical Systems, Inc. Securities Litigation*

Through its effective advocacy, Saxena White achieved an $18.25 million settlement for the benefit of the class in this securities class action against Merit Medical Systems Inc. The settlement represents a substantial recovery of up to 55% of the settlement class's maximum realistic trial damages.

Merit is a medical device company that historically acquired companies that created "medical accessory" products, and in recent years began to acquire companies that create therapeutic devices. Merit announced its acquisition of Cianna, a company that sells SCOUT, a therapeutic device designed to treat breast cancer, for $200 million. Subsequently, Merit announced its acquisition of Vascular Insights, along with its product line ClariVein, which is marketed to treat varicose veins, for $60 million. The complaint alleged, generally, that Defendants made false statements regarding Merit's acquisitions of Cianna and ClariVein.



### ■ *Teamsters Local 456 Pension Fund v. Universal Health Services, Inc.*

Saxena White's $17.5 million settlement with Universal Health Services, Inc., an owner and operator of health care facilities, was especially noteworthy considering that the action had been dismissed with prejudice by the U.S. District Court for the Eastern District of Pennsylvania twice and was on appeal to the Third Circuit Court of Appeals at the time of the settlement.

The case involved a disturbing fact pattern first reported by *Buzzfeed News*, whereby UHS allegedly engaged in a scheme to increase its bottom line by coaxing unwitting patients through its doors, manipulating and fabricating patient testimonials to make them appear dangerous to themselves or others, and then admitting them into the company's facilities—often involuntarily—for as many days as their insurance would provide reimbursement.

Notably, the $17.5 million settlement was more than double the inflation-adjusted median for securities class action settlements in the Third Circuit from 2011 through 2020.

### ■ *City of Birmingham Retirement and Relief System v. Credit Suisse Group AG*

After more than two and a half years of litigation, Saxena White achieved a $15.5 million settlement for the class. The settlement represented up to 63% of the class's maximum estimated damages—a rate 11 to 30 times greater than the 2.1% median recovery for securities class actions in 2019. Lead Plaintiffs' claims centered on Credit Suisse's alleged misrepresentations related to the company's "binding" risk limits, which were alleged to have been raised to accommodate growing exposure to highly risky and illiquid positions in its fixed-income franchise. The company's alleged violations of its own risk control and risk-limit policies allegedly allowed Credit Suisse to amass $4.3 billion in exposure to these investments, which included collateralized loan obligations and distressed debt instruments. These securities, which were difficult to liquidate and consumed substantial amounts of regulatory capital, allegedly made the company susceptible to enormous losses in the volatile credit markets. Credit Suisse ultimately incurred over $1 billion in losses from these investments, the announcement of which allegedly led to a decline in the price of the company's ADRs.

### ■ *Fernandez v. Knight Capital Group, Inc.*

Saxena White achieved a $13 million settlement on behalf of Knight Capital Group investors. As a result of the company's lack of internal controls and risk management practices, on August 1, 2012, the company accumulated an unintended market position of $7 billion worth of securities in the span of 45 minutes.

Notably, in approving the settlement, Judge Arleo of the District of New Jersey stated: "I look at the skill and efficiency of counsel. There are many lawyers that wouldn't touch this case or couldn't touch this case, didn't have the skill or expertise. Lead counsel here are national experts in the field of securities and complex litigation, and I am satisfied that their personal skill and efforts were the large reason why this case was able to settle on such favorable terms." Judge Arleo continued her praise of Saxena White's efforts in obtaining the settlement: "There were many complex issues attendant to this case, as in many security fraud cases, including scienter, including inflation damages, **et cetera**, and there's no question that we have skilled counsel on the defense end, and I think they met their match with Plaintiff's counsel, and their strong reputation for excellence also is not lost on this Court."

### ■ *Julian Keippel v. Health Insurance Innovations, Inc.*

In this securities fraud class action, Saxena White asserted that health insurer Health Insurance Innovations, Inc. (HIIQ) and several of its top executives made false statements related to its compliance standards and



its level of customer complaints. An enforcement action by the FTC and related federal court receivership proceedings revealed that HIIQ's most lucrative call center, called "Simple Health"—which was responsible for as much as 50% of the company's revenue—was "a classic bait-and-switch scam whereby unwitting consumers were falsely led to believe that they were purchasing a Preferred Provider Organization medical insurance policy ('PPO') that is compliant with the Affordable Care Act ('ACA'), but in reality were sold limited benefit indemnity plans that are not compliant with the ACA." In response to the FTC's action, HIIQ's stock price suffered steep declines, dropping more than 60% over six months.

After extensive litigation efforts, including the review and analysis of over 1.9 million pages of documents and several depositions, Saxena White secured an $11 million settlement on behalf of damaged investors.

### ▪ *FindWhat Investor Group v. FindWhat.com.*

Saxena White has significant appellate experience. In this Eleventh Circuit appeal, we won a precedent-setting opinion: the court held that corporations and their executives who make fraudulent statements that prevent artificial inflation in a company's stock price from dissipating are just as liable under the securities laws as those whose fraudulent statements introduce artificial inflation into the stock price in the first place. The Eleventh Circuit rejected Defendants' position that the mere repetition of lies already transmitted to the market cannot damage investors. "We decline to erect a per se rule," wrote the court, that "once a market is already misinformed about a particular truth, corporations are free to knowingly and intentionally reinforce material misconceptions by repeating falsehoods with impunity."

The Eleventh Circuit's opinion is a significant win for aggrieved investors – the first such ruling from any of the Courts of Appeals in the nation, and it will continue to help defrauded investors seeking to recover damages due to fraud.

### ▪ *In re Clear Channel Outdoor Holdings, Inc. Derivative Litigation*

Saxena White filed a derivative action on behalf of outdoor advertising company Clear Channel Outdoor Holdings ("Outdoor") against its majority stockholder, Clear Channel Communications, Inc. ("CCC"), certain current and former Outdoor directors, and other entities concerning a $1 billion unsecured loan by Outdoor to CCC. The action asserted that Outdoor's directors breached their fiduciary duties by approving the loan to its controlling stockholder on terms so favorable to CCC that no rational third party would have ever agreed to such terms. In response to Plaintiffs' action, the company's board of directors established a Special Litigation Committee (the "SLC") to investigate the claims.

After its investigation, the SLC engaged with Plaintiffs and certain Defendants to explore the prospects of settlement. After several months of working with the SLC, the parties reached a settlement providing that Outdoor would demand immediate repayment of $200 million outstanding under the loan, which Outdoor would then immediately pay out in dividends to its shareholders. The settlement also provided significant governance and procedural protections that allowed Outdoor's independent directors to more effectively monitor the loan and prevent uncontrolled growth in its balance.

### ▪ *In re Palantir Technologies Class F Stock Litigation*

On March 31, 2021, Saxena White commenced direct class action litigation on behalf of Palantir Technologies Inc. stockholders in the Delaware Court of Chancery against the company and its three founder-directors, with our client alleging that the company's novel dual-class stock structure untethered the founders' voting power from their equity ownership. Specifically, the founders were given exclusive ownership over the

S
W

company's Class F stock, which gave them 49.999999% of the vote irrespective of the amount of stock they owned.

Following extensive litigation efforts, we secured a settlement that institutes numerous corporate reforms geared towards increased transparency in the company's corporate elections and towards limiting the founders' ability to use the Class F stock to force through significant corporate actions without an independent check. Among other measures, corporate actions that bring a personal benefit to the founders must now be approved by independent directors and/or a vote of the company's unaffiliated public shareholders. The settlement was approved by the Delaware Court of Chancery in September 2022.

■ *International Union of Operating Engineers of Eastern Pennsylvania and Delaware v. Ressler (J2 Global, Inc.)*

In this shareholder derivative action, Saxena White secured a settlement that relieved J2 Global, Inc. from paying over $86 million in future management fees and capital contributions in connection with a related party transaction.

Following an extensive books-and-records investigation, Saxena White worked closely with a Special Committee formed by J2. The result of these efforts was a settlement effectively relieving J2 of its obligation to pay any additional management fees or capital contributions to the allegedly conflicted investment fund, retaining for the company a combined total of more than $86 million that would otherwise have been contributed. The settlement also included a valuable corporate governance reform through a new policy that requires any future transactions with J2's chairman or his affiliates to be subjected to independent committee approval.



## SHAREHOLDERS & DIRECTORS



### MAYA SAXENA

Widely recognized as one of the nation's top securities litigators, Maya Saxena, Co-Founder of Saxena White P.A., has accomplished something remarkable. Under her direct leadership, since its founding in 2006, Ms. Saxena has grown the Firm into a national powerhouse. Instrumental in recovering billions of dollars on behalf of investors, Ms. Saxena has led trial teams in numerous major securities and shareholder actions and protected shareholders by prosecuting important corporate governance actions and obtaining meaningful reforms. Having built one of the nation's only woman- and minority-owned securities class action firms representing institutional investors, her emphasis on diversity and inclusion has become a model for the legal industry.

Ms. Saxena has been practicing exclusively in the securities litigation field for nearly 25 years, representing institutional investors in shareholder actions involving breaches of fiduciary duty and violations of the federal securities laws. Recently, Ms. Saxena played a key role in obtaining a $240 million settlement on behalf of Wells Fargo & Company. The cash payment from Defendants' insurers represents one of the largest insurance-funded monetary components of any shareholder derivative settlement. Ms. Saxena also led the litigation team that recovered $210 million from Wilmington Trust—one of the largest settlements in 2018. Other prominent recoveries for injured investors include: Rayonier, Inc. ($73 million settlement), SIRVA, Inc. ($53.3 million settlement), HD Supply ($50 million settlement—one of the largest ever achieved in the Northern District of Georgia), Aracruz Celulose ($37.5 million settlement), Perrigo Company plc ($31.9 million), and Sunbeam (settled with Arthur Andersen LLP for $110 million—one of the largest settlements ever with an accounting firm—and a $15 million personal contribution from former CEO Al Dunlap).

Prior to forming Saxena White, Ms. Saxena served as the Managing Partner of the Florida office of one of the nation's largest securities litigation firms, successfully directing numerous high-profile securities cases. Ms. Saxena gained valuable trial experience before entering private practice while serving as an Assistant Attorney General in Ft. Lauderdale, Florida. During her time in that role, Ms. Saxena represented the State of Florida in civil cases at the appellate and trial levels and prepared amicus curiae briefs in support of state policies at issue in state and federal courts. In addition, Ms. Saxena represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.

Ms. Saxena is a frequent speaker at educational forums involving public pension funds and advises public and multi-employer pension funds on how to address fraud-related investment losses. She is an active member of the National Association of Public Pension Attorneys (NAPPA), and co-chairs its Securities Litigation Committee. As part of her professional endeavors, Ms. Saxena writes numerous articles on protecting shareholder rights, and works closely with other NAPPA members to author, update, and publish a white paper on post-Morrison international securities litigation.

For her professional achievements, Ms. Saxena is frequently recognized by top industry publications. She was named a *Law360* 2021 Securities MVP, one of only five attorneys chosen in the area. Ms. Saxena was also named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon* for the last several years. *The National Law Journal* named Ms. Saxena one of the "Elite Women in the Plaintiffs Bar" in 2023. She was recognized in the *South Florida Business Journal's* "Best of the Bar" as one of the top lawyers in South Florida and has been selected to the Florida *Super Lawyers* list for over a decade. She has also been named a Florida "Legal Elite" by *Florida Trend* magazine and a "Litigation Star" by *Benchmark Litigation.*

14



Ms. Saxena graduated from Syracuse University *summa cum laude* in 1993, with a dual degree in policy studies and economics, and graduated from Pepperdine University School of Law in 1996. Ms. Saxena is a member of the Florida Bar, and is admitted to practice before the United States District Courts for the Southern and Middle Districts of Florida, as well as the Eleventh Circuit Court of Appeals, and the Supreme Court of the United States.



### JOSEPH E. WHITE, III

Joseph E. White, III, Co-Founder of Saxena White P.A., has represented shareholders in major securities fraud class actions and derivative actions for over 20 years. He has represented lead and representative plaintiffs in front-page cases, including actions against Wells Fargo, Bank of America, Lehman Brothers, Goldman Sachs, and Washington Mutual. He has successfully settled cases yielding billions of dollars against numerous publicly traded companies, including cases against DaVita Inc. ($135 million settlement), Goldman Sachs Group ($79.5 million case recovery – the second largest derivative settlement in Second Circuit history), Rayonier, Inc. ($73 million settlement), SIRVA, Inc. ($53.3 million settlement), and one of the largest settlements in 2018, Wilmington Trust ($210 million). Mr. White has also developed an expertise in litigating precedent-setting cases against foreign publicly traded companies, and settled two cases involving Brazilian corporations: Aracruz Celulose ($37.5 million), and Sadia, Inc. ($27 million).

Additionally, Mr. White has achieved meaningful corporate governance and monetary recoveries for shareholders in merger related and derivative lawsuits. Recently, Mr. White played an instrumental role in obtaining a $240 million settlement in *In re Wells Fargo & Company Shareholder Litigation*. The settlement included the $240 million cash payment from Defendants' insurers - representing the largest insurance-funded monetary component of any shareholder derivative settlement. In *In re Clear Channel Outdoor Holdings Derivative Litigation*, Mr. White's efforts obtained repayment of a $200 million loan from Outdoor's parent which was then paid as a special dividend to Outdoor shareholders. In addition, Mr. White has successfully settled cases that have presented important public health issues that are of serious concern across the nation, including cases against Novo Nordisk, Universal Health Services, and Patterson Companies.

Mr. White regularly lectures on topics of interest to pension trustees, and advises municipal, state, and international institutional investors on instituting effective systems to monitor and prosecute securities and related litigation. For the last several years, Mr. White has been named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*. He was also named a Florida's "Legal Elite" by *Florida Trend* magazine, a Florida *Super Lawyers* award recipient, and has been recognized as a "Top Lawyer" by *Palm Beach Illustrated*. He is also a *Lawyers of Distinction* Certified Member.

Mr. White earned an undergraduate degree in Political Science from Tufts University before obtaining his Juris Doctor from Suffolk University School of Law.

Mr. White is a member of the Massachusetts, Florida, New York and Pennsylvania Bars. He is also admitted to the United States District Courts for the Southern, Northern, and Middle Districts of Florida, the Southern District of New York, the District of Massachusetts, the District of Colorado, the Western District of Michigan, and the Northern District of Illinois. Mr. White is also admitted to the United States Circuit Courts of Appeals for the First and Eleventh Circuits, and the Supreme Court of the United States.





### RACHEL A. AVAN

Rachel A. Avan, Director, has more than a decade of experience in securities litigation. She focuses on investigating and developing U.S. and non-U.S. securities fraud class, group, and individual actions, as well as advising institutional investors regarding alternatives for recovery for fraud-related investment losses.

Ms. Avan's analysis of new and potential matters is informed by her extensive experience as a securities litigator. Prior to joining Saxena White, Ms. Avan was of counsel at a nationally recognized securities litigation firm, where she assisted in prosecuting numerous high-profile securities class actions and corporate governance matters. She also served as a key member of the firm's case evaluation team and managed the firm's non-U.S. securities litigation practice for several years.

Ms. Avan has significant expertise analyzing the merits, risks, and benefits of potential claims outside the United States—in virtually all countries in which it is possible for injured shareholders to seek a recovery. She has played an essential role in ensuring that institutional investors receive substantial recoveries through non-U.S. securities litigation.

Ms. Avan brings valuable insight into corporate matters, having served as an associate at a corporate law firm, where she counseled domestic and international public companies regarding compliance with federal and state securities laws. Her analysis of corporate securities filings is also informed by her previous work assisting with the preparation of responses to inquiries by the U.S. Securities and Exchange Commission and the Financial Industry Regulatory Authority.

Ms. Avan has authored multiple articles relating to U.S. and non-U.S. securities litigation, which have been published in *The New York Law Journal, Financial Executive, Law360,* and *The NAPPA Report*, among other publications. For her achievements, Ms. Avan consistently has been selected as a "Rising Star" by *Super Lawyers*, a Thomson Reuters publication.

Ms. Avan earned her Juris Doctor from Benjamin N. Cardozo School of Law in 2006. She received her master's degree in English and American Literature from Boston University in 2002 and her bachelor's degree, *cum laude*, in Philosophy and English from Brandeis University in 2000. Ms. Avan is a member of the New York Bar and Connecticut Bar. She is admitted to the United States District Court for the Southern District of New York.



### THOMAS CURRY

Thomas Curry is a Director at Saxena White and manages the Firm's Delaware office and corporate governance litigation team. He represents institutional and individual investors in a wide variety of corporate governance and shareholder rights matters, with a particular focus on disputes arising under Delaware corporate law and litigation in the Delaware Court of Chancery.

Mr. Curry has played a leading role in several of the most significant corporate governance and shareholder rights matters to arise in recent years. He led the Saxena White team that litigated shareholder derivative claims on behalf of FirstEnergy Corp. in connection with a political bribery scandal, achieving a settlement that included a $180 million monetary recovery, as well as the departures of six defendants from the company's board of directors, and other wide-ranging governance reforms. The $180 million monetary recovery achieved represented the largest derivative recovery in the history of the Sixth Circuit.



In another recent shareholder derivative action, Mr. Curry led a Saxena White team that pursued claims on behalf of J2 Global, Inc. in connection with an allegedly-conflicted related party investment agreement, achieving a settlement relieving the company of obligations to pay more than $71 million in future management fees and capital contributions, and instituting a new board-level related party transactions policy. He also served as a key member of the Saxena White team that litigated shareholder derivative claims on behalf of Goldman Sachs in connection with its high-profile 1MDB scandal, achieving a settlement that included a $79.5 million monetary recovery and significant governance reforms.

Mr. Curry also maintains an active practice in matters seeking to protect shareholder voting rights. He led the Saxena White team that litigated a novel challenge to the validity of founder-entrenching voting provisions in Palantir Technologies Inc.'s certificate of incorporation, achieving a settlement reforming Palantir's voting procedures and implementing significant new governance protections designed to prevent future controller overreach at the company. Prior to joining Saxena White, Mr. Curry worked at a nationally recognized securities litigation firm.

Mr. Curry has been widely recognized for his work on behalf of investors. He was named a 2024 "Litigation Star" by *Benchmark Litigation* and a "Rising Star" by *Law360* in 2023, one of only six attorneys nationwide chosen in the area of securities law. Also in 2023, he was named a "Rising Star of the Plaintiffs Bar" by the *National Law Journal*. In both 2019 and 2020, he was recognized by *The Legal 500* as a "Rising Star" in the field of M&A litigation. He is a Board Member of the Institute for Law and Economic Policy, a policy and research educational foundation seeking to enhance consumer and investor access to the justice system.

Mr. Curry earned his Juris Doctor from Cornell Law School in 2013 and a Bachelor of Arts degree from Temple University in 2010. Mr. Curry is admitted to practice in Delaware, the United States District Court for the District of Delaware, and the United States Court of Appeals for the Sixth Circuit.



### MARISA N. DEMATO

Marisa DeMato, Director and Chief Diversity Officer, has more than 18 years of experience advising leading pension funds and other institutional investors on issues related to corporate fraud in U.S. securities markets, and provides representation in complex civil actions. Her work focuses on monitoring the well-being of institutional investments and counseling clients on best practices in corporate governance of publicly traded companies.

Prior to joining Saxena White, Ms. DeMato was a partner with a nationally recognized securities litigation firm where she represented institutional investors in shareholder litigation and achieved significant settlements on behalf of clients. She represented Seattle City Employees' Retirement System in a $90 million derivative settlement that achieved historic corporate governance reforms from Twenty-First Century Fox, Inc., following allegations of workplace harassment incidents at Fox News. Ms. DeMato also successfully represented investors in high-profile cases against LifeLock, Camping World, Rent-A-Center, and Castlight Health. In addition, Ms. DeMato was an integral member of legal teams that secured multimillion dollar securities and consumer fraud settlements, including *In re Managed Care Litigation* ($135 million recovery); *Cornwell v. Credit Suisse Group* ($70 million recovery); *Michael v. SFBC International, Inc.* ($28.5 million recovery); *Ross v. Career Education Corporation* ($27.5 million recovery); and *Village of Dolton v. Taser International Inc.* ($20 million recovery).

An accomplished speaker, Ms. DeMato has lectured on topics pertaining to securities fraud litigation, fiduciary responsibility, and corporate governance issues throughout the U.S. and Europe. Notably, Ms. DeMato has testified before the Texas House of Representatives Pensions Committee on the changing legal landscape for

17



public pensions following the Supreme Court's *Morrison* decision and best practices for non-U.S. investment recovery.

Ms. DeMato is Saxena White's Chief Diversity Officer, and one of the industry's leading advocates for institutional investing in women- and minority-owned firms. She also chairs Saxena White's Women's Alliance, which is designed to foster women-centered development and leadership in the pension, investment and legal communities. Ms. DeMato previously served as co-chair of an annual Women's Initiative Forum, which has been recognized by *Euromoney and Chambers USA* as one of the best gender diversity initiatives.

Recently, Ms. DeMato was recognized by *The National Law Journal* as a "Plaintiffs' Trailblazer" and was named a "Northeast Trailblazer" by *The American Lawyer*. Ms. DeMato was also named one of the "500 Leading Plaintiff Financial Lawyers in America" by *Lawdragon* for the last four consecutive years.

Ms. DeMato is an active member of the National Association of Securities Professionals (NASP), the American Association for Justice (AAJ), and the National Association of Public Pension Attorneys (NAPPA), where she serves on the NAPPA Securities Litigation Committee. As a member of the SACRS Education Committee, she is responsible for developing and planning educational programming for the State Association of County Retirement Systems (SACRS) in California.

Ms. DeMato earned her Juris Doctor from the University of Baltimore School of Law. She received her Bachelor of Arts from Florida Atlantic University.

Ms. DeMato is a member of the State Bars of Florida and the District of Columbia and is admitted to practice in the United States District Court for the Southern and Northern Districts of Florida.



### KYLA GRANT

Kyla Grant, Director, has extensive experience in federal securities class action suits, securities enforcement, and complex commercial litigation in both federal and state courts. Since joining Saxena White, Ms. Grant has played a key role on litigation teams that have successfully recovered hundreds of millions of dollars on behalf of injured shareholders in settlements totaling over $600 million. For example, recent notable settlements include:

- *In re Wells Fargo & Company Shareholder Litigation* ($240 million shareholder derivative settlement - one of the largest shareholder derivative settlements in history - in an action relating to well-known "fake account" scandal at Wells Fargo);

- *Peace Officers' Annuity and Benefit Fund of Georgia et al. v. DaVita Inc., et al.* ($135 million settlement in securities fraud class action involving allegations that DaVita improperly "steered" end-stage kidney patients off of Medicare/Medicaid and into private insurance plans);

- *Plymouth County Retirement System v. Patterson Companies, Inc. et al.* ($63 million settlement in securities fraud class action - ranking among the top-ten of all such settlements ever achieved in the District of Minnesota - involving alleged price-fixing scheme between Patterson and its main competitors in the dental supply industry); and

- *In re Perrigo Company plc Securities Litigation* ($31.9 million settlement in securities fraud class action regarding Perrigo's receipt of a nearly $2 billion tax bill from Irish Revenue, and involving significant victories at summary judgment rarely obtained by plaintiffs in a securities fraud case on the key elements of falsity andmateriality).

18

Ms. Grant was also involved in obtaining significant securities fraud class action settlements in cases involving Covetrus, Inc. ($35 million settlement), TrueCar, Inc. ($28.25 settlement), Brixmor Property Group, Inc. ($28 million settlement), and GTT Communications, Inc. ($25 million settlement).

Before joining Saxena White, Ms. Grant practiced securities litigation at two top-ranked global law firms, Shearman & Sterling LLP and WilmerHale.

Ms. Grant graduated from the University of Hawai'i at Mānoa with distinction in 2004, where she received a Bachelor of Arts degree in both English and Political Science. She received her Juris Doctor degree from the University of Virginia School of Law in 2008. While attending law school, she was a recipient of the Dean's Scholarship, was appointed as a Dillard Fellow (a role in which she worked with first year students to improve their persuasive writing skills), and was an Articles Editor for the *Virginia Journal of International Law.*

Ms. Grant is a member of the New York State Bar and the United States District Court for the Southern District of New York.



## LESTER R. HOOKER

Lester R. Hooker, Director, is involved in all of Saxena White's practice areas, including securities class action litigation and shareholder derivative actions. During his tenure at Saxena White, Mr. Hooker has obtained substantial monetary recoveries of over $1 billion and secured groundbreaking corporate governance reforms on behalf of institutional investors nationwide.

Mr. Hooker played a key role on the litigation teams that have successfully prosecuted numerous historic securities fraud class and derivative actions, including:

• *In re Wells Fargo & Company Shareholder Litigation* ($240 million settlement in a shareholder derivative action – one of the largest such settlements ever – relating to the well-known "fake account" scandal at Wells Fargo, which included the $240 million cash payment from Defendants' insurers as well as credit for valuable corporate governance reforms at the bank);

• *Employees Retirement System of the City of St. Louis v. Charles E. Jones et al. (FirstEnergy Corp. Derivative Litigation)* ($180 million settlement in a derivative action – the largest shareholder derivative recovery in Sixth Circuit history – which also included unprecedented corporate governance reforms);

• *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.* ($135 million settlement of a securities class action);

• *Fulton County Employees Retirement System, derivatively on behalf of The Goldman Sachs Group, Inc., v. Blankfein et al.* ($79.5 million cash recovery in a shareholder derivative action, which represented the second largest derivative settlement in Second Circuit history and ranked among the top-twenty such settlements ever nationwide);

• *In re Rayonier Inc. Securities Litigation* ($73 million settlement, which at the time of settlement represented the second largest recovery from a securities class action achieved in the Middle District of Florida);

• *Plymouth County Retirement System v. Patterson Companies, Inc., et al.,* ($63 million settlement in a securities class action, ranking among the top ten of all settlements ever achieved in a securities class action in the District of Minnesota); and



- *In re HD Supply Holdings, Inc. Securities Litigation* ($50 million settlement, one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia).

Mr. Hooker was profiled in the February 2023 edition of *Lawdragon's Lawyer Limelight*, and named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon* for the fifth consecutive year. He was also named a "Plaintiffs' Attorney Trailblazer" by *The National Law Journal*, a "Rising Star" and a "Top Attorneys In Florida Rising Star" by *Super Lawyers*. Recently, Mr. Hooker received the 2023 *Profiles in Diversity Journal* Latino Leadership Award, an honor bestowed upon accomplished Latino leaders who have blazed new trails, welcomed challenges, mentored others, advanced diversity and inclusion in the workplace and the community, and excelled in their chosen fields. Mr. Hooker is a member of *Law360*'s 2023 Securities Editorial Advisory Board and provides expert insight on *Law360*'s coverage.

Mr. Hooker received a Bachelor of Arts degree with a Major in English from the University of California at Berkeley. Mr. Hooker earned his Juris Doctor from the University of San Diego School of Law, where he was awarded the Dean's Outstanding Scholar Scholarship. Mr. Hooker received his Master's Degree in Business Administration with an emphasis in International Business from the University of San Diego School of Business, where he was awarded the Ahlers Center International Graduate Studies Scholarship.

Mr. Hooker is a member of the State Bars of California, Florida, New York, and the District of Columbia, and is admitted to practice law in the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Southern, Middle and Northern Districts of Florida, the Southern District of New York, the Western District of Michigan, the District of Colorado, and the Northern District of Illinois. Mr. Hooker is also admitted to practice law in the United States Court of Appeals for the Second, Sixth, and Ninth Circuits.



### DAVID KAPLAN

David Kaplan is a Director at Saxena White and manages the Firm's California office. Mr. Kaplan has over 20 years of experience in the field of securities and shareholder litigation. He has helped investors achieve hundreds of millions of dollars in recoveries in federal and state courts nationwide, including in securities class actions, direct "opt-out" actions, and shareholder derivative litigation.

Mr. Kaplan is currently leading teams prosecuting complex securities class actions in California, Texas, Virginia, and Pennsylvania federal courts. These cases involve a variety of industries – spanning oil and gas E&P, biopharmaceuticals, online technologies, to commercial insurance – and involve billions of dollars in investor losses.

Prior to joining Saxena White, Mr. Kaplan was a partner at another nationally recognized securities litigation firm, where he co-chaired its direct-action practice, represented lead plaintiffs in securities class actions, and counseled institutional investor clients on potential legal claims as a member of the firm's new matters department. Before that, Mr. Kaplan was a senior associate at Irell & Manella LLP, where he handled a variety of high-stakes business disputes and complex litigation matters.

In addition to leading teams prosecuting high-stakes securities class actions, a large part of Mr. Kaplan's day-to-day practice involves advising mutual funds, hedge funds, pension funds, sovereign wealth funds, insurance companies, and other institutional asset managers on whether to remain passive participants in securities class actions or opt out to protect and maximize their securities fraud recoveries. Mr. Kaplan has represented prominent institutional investor opt-out groups in federal courts nationwide.



Mr. Kaplan also has extensive experience advising institutional clients on pursuing securities fraud recoveries in international jurisdictions. His work in this area includes virtually all countries in which shareholder collective actions are authorized by law, including Canada, Australia, England, the Netherlands, Germany, Italy, France, Japan, Israel, and Brazil.

Mr. Kaplan is a frequent speaker at national conferences on issues of interest to the institutional investor community. He has authored multiple articles relating to class actions and the federal securities laws, which have been published in *The National Law Journal, The Daily Journal, Law360, Pensions & Investments, The D&O Diary,* and *The NAPPA Report*, among other publications. Mr. Kaplan is also an editor of the American Bar Association's Class Actions and Derivative Suits Committee's newsletter.

Mr. Kaplan was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon* for the last four consecutive years, and has repeatedly been selected as a "Rising Star" by *Super Lawyers*.

Mr. Kaplan graduated with a Bachelor of Arts, *cum laude*, from Washington and Lee University, and earned his Juris Doctor, High Honors, from Duke University School of Law, where he was an editor of the *Duke Law Review.*

Mr. Kaplan is admitted to practice in California, United States District Courts for the Central, Northern, and Southern Districts of California, and the Eastern District of Wisconsin. He is also admitted to the United States Court of Appeals for the Ninth Circuit, and the United States Bankruptcy Court for the Central District of California.



### LISA RIVERA

Lisa Rivera, Director, serves as the Firm's Chief Financial and Operating Officer and brings over 30 years of experience in both the public and private sectors, having served in key positions with direct responsibility for fiscal management, policy and strategic planning, operations, and compliance. Ms. Rivera has represented commercial litigation clients in the area of forensic accounting, as well as served public accounting clients with their tax and business advisory needs.

Ms. Rivera graduated from New York University's Stern School of Business in 1994, where she received a Bachelor of Science degree, majoring in Accounting. She received her Juris Doctor degree from Rutgers University School of Law in 2003. Ms. Rivera is a Certified Public Accountant and Chartered Global Management Accountant.



### JOSHUA H. SALTZMAN

Joshua H. Saltzman, Director, focuses his practice on securities and derivative litigation. Before joining Saxena White, Mr. Saltzman litigated investor class actions, opt-out securities actions, and derivative actions at two boutique law firms in New York City. Recently, Mr. Saltzman was a member of the respective litigation teams that achieved a $63 million settlement for shareholders of Patterson Companies, Inc., a $23.5 million settlement for shareholders of Evolent Health, Inc., and a $31.9 million settlement for shareholders of Perrigo Company, plc. Mr. Saltzman was also a member of the litigation team that obtained a $50 million settlement on behalf of shareholders of HD Supply Holdings, Inc. – one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia. He was a member of the litigation team that obtained a $53 million derivative



settlement on behalf of New Senior Investment Group, which was the largest settlement of all time in a derivative lawsuit when measured as a percentage of the company's total market capitalization.

Additionally, Mr. Saltzman has been a member of litigation teams that have obtained numerous other substantial recoveries on behalf of investors, including cases involving American International Group ($40 million settlement on behalf of AIG employees who invested in AIG's company stock fund, representing one of the largest ERISA stock drop recoveries of all time), Cornerstone Therapeutics ($17.9 million for minority stockholders of Cornerstone Therapeutics whose shares were purchased in a controller buyout), and Petrobras (high percentage recovery on behalf of the state pension system in opt-out securities action).

Mr. Saltzman has been recognized for his work on behalf of investors, including being recognized by *Super Lawyers* as a 2022 "Rising Star" and a 2023 New York *Super Lawyer*.

Mr. Saltzman received a Bachelor of Arts degree in English from Rutgers University in 2002, and a Juris Doctor degree from Brooklyn Law School in 2011, graduating *magna cum laude*. During law school, Mr. Saltzman served as an editor on the Brooklyn Law Review, where he published a note and interned for the Honorable Victor Marrero in the United States District Court for the Southern District of New York.

Mr. Saltzman is a member of the New York Bar, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Third Circuit.



### STEVEN B. SINGER

Steven B. Singer, Director of Litigation, oversees the Firm's securities litigation practice. Mr. Singer brings his tireless advocacy on behalf of shareholders, as well as his nearly 30 years of trial and litigation experience at the top of the field.

During his career, Mr. Singer has been the lead partner responsible for prosecuting many of the most significant and high-profile securities cases in the country, which collectively have recovered over $12 billion for investors. He led the litigation against Bank of America relating to its acquisition of Merrill Lynch, which resulted in a landmark settlement shortly before trial ($2.43 billion), one of the largest recoveries in history. Mr. Singer's work on that case was the subject of extensive media coverage, including numerous articles published in *The New York Times*. He also has substantial trial experience and was one of the lead trial lawyers on the WorldCom securities litigation ($6 billion settlement after a four-week jury trial).

As demonstrated by recent wins and accomplishments, Mr. Singer has had another extraordinary year. Mr. Singer helped Saxena White achieve nearly $300 million in monetary recoveries alongside major corporate governance reforms, establishing valuable precedent to prevent future C-Suite misconduct. Recent settlements include cases involving FirstEnergy Corp. ($180 million recovery — the largest in Sixth Circuit history and among the largest derivative recoveries ever), DaVita Inc. ($135 million recovery), Goldman Sachs ($79.5 million monetary recovery—the second largest derivative recovery in the history of the Second Circuit) and Patterson Companies, Inc. ($63 million recovery). Mr. Singer also led the Saxena White litigation team that successfully recovered a $240 million cash payment in a derivative action involving Wells Fargo & Company. The settlement includes one of the largest insurance-funded monetary components of any shareholder derivative settlement.

In addition, Mr. Singer has been significantly involved in numerous other actions that have resulted in substantial settlements, including cases involving Citigroup Inc. ($730 million, representing the second largest recovery in a case brought on behalf of bond purchasers), Lucent Technologies ($675 million),

S
W

Mills Corp. ($203 million), WellCare Health Plans ($200 million), Satyam Computer Services ($150 million), Biovail Corp. ($138 million), Bank of New York Mellon ($180 million), JP Morgan Chase ($150 million), and one of the largest settlements in 2018, Wilmington Trust ($210 million).

Mr. Singer has been consistently recognized by industry observers for his legal excellence and achievements. In 2023, Mr. Singer was named a "Titan of the Plaintiffs Bar" by *Law360*. Additionally, he has been selected as one of the "500 Leading Lawyers in America" by *Lawdragon* for the last several years, a "Litigation Star" by *Benchmark Litigation*, and as one of the "Leading Lawyers" in securities litigation by the *Legal 500 US Guide* — one of only seven plaintiffs' attorneys so recognized.

Mr. Singer graduated *cum laude* from Duke University in 1988, and from Northwestern University School of Law in 1991. He is a member of the New York State Bar, as well as the United States District Courts for the Southern and Eastern Districts of New York, and the Northern District of Illinois.



## A T T O R N E Y S



### M A R I O   A L V I T E

Mario Alvite has been with the Firm since 2018. Mr. Alvite plays a key role in new case development by analyzing opportunities for recovery for injured investors and shareholders, including the viability of claims that may be advanced in securities fraud, derivative, and corporate governance-related actions. Mr. Alvite assembles and assesses information that helps support the theories behind Saxena White's litigation efforts, and he assists with formulating complaints and lead plaintiff motions. He also is an important member of the Firm's client services team, for which he protects the financial interests of our clients by advising them on settlement matters.

In his work, Mr. Alvite draws on over ten years of experience in e-discovery and project management in the corporate litigation, transactional, and regulatory areas. During his time at Saxena White, Mr. Alvite served on the litigation teams that successfully prosecuted securities fraud class actions and shareholder derivative actions involving Wells Fargo ($240 million settlement, among the largest derivative recoveries ever achieved in the United States), Wilmington Trust ($210 million settlement and one of the largest securities class action settlements of 2018), FirstEnergy Corp. ($180 million settlement), and Rayonier Inc. ($73 million settlement).

Mr. Alvite has been recognized as a "Top Lawyer" by *Palm Beach Illustrated* for the past three years. He has also served on Saxena White's Diversity and Social Responsibility Committee since 2019. In 2023, Mr. Alvite co-authored the article *The Supreme Court Considers Whether Innovation in Direct Securities Listings Can Coexist with Long-Standing Investor Protections* published in the American Bar Association's Class Actions and Derivative Suits Committee's Newsletter. In 2021, Mr. Alvite authored the article *ESG, Diversity, Enforcement – Turning the Page on Securities Regulation* published in Saxena White's newsletter.

Mr. Alvite received his Bachelor of Business Administration from Florida International University in 2001. He later earned his Juris Doctor from Nova Southeastern University in 2004.

Mr. Alvite is a member of the Florida Bar and is admitted to practice in the United States District Court for the Southern and Middle Districts of Florida.



### E M I L Y   B I S H O P

Emily R. Bishop is an Attorney at Saxena White's California office, where she focuses her practice on prosecuting securities fraud class and direct actions, as well as shareholder derivative and corporate governance matters. Prior to joining Saxena White, Ms. Bishop was an associate at a law firm in San Diego where she represented individual and institutional shareholders in a variety of complex shareholder litigation. For her achievements, Ms. Bishop has been recognized by *Super Lawyers* as a 2023 "Rising Star."

Ms. Bishop graduated from the University of San Diego in 2014, where she received a Bachelor of Business Administration degree, double majoring in Business Economics and Real Estate, and a Bachelor of Arts degree in Political Science. She received her Juris Doctor degree from the University of San Diego School of Law in 2017, graduating *cum laude*, and a Masters of Laws in Taxation in 2018. While attending law school Ms. Bishop served as an editor of the *San Diego International Law Journal*, and was president of Phi Delta Phi, the international legal honor society and oldest legal organization in continuous existence in the United States.



Ms. Bishop is a member of The State Bar of California and is admitted to practice in the United States District Court for the Northern, Southern and Eastern Districts of California.



### RHONDA CAVAGNARO

Rhonda Cavagnaro is Special Counsel to Saxena White and a member of the Firm's Institutional Outreach group. She brings extensive expertise in many areas of employee benefits and pension administration with nearly two decades of public fund experience. Ms. Cavagnaro frequently speaks at industry conferences to further trustee education on fiduciary issues facing institutional investors.

Ms. Cavagnaro began her legal career as an Assistant District Attorney in New York City, where she was instrumental in creating the office's General Crimes Unit, covering major crimes. As an Assistant District Attorney, Ms. Cavagnaro gained valuable trial experience and prosecuted hundreds of misdemeanor and felony cases.

Ms. Cavagnaro started her career serving public pensions as Assistant General Counsel at the New York City Employees' Retirement System. She then went on to become the first General Counsel to the New York City Police Pension Fund in February 2002, where she worked for over 11 years, providing advice to the Board of Trustees and 140-member staff with respect to benefits administration, fiduciary issues, employment issues, legislation, and transactional matters. Ms. Cavagnaro last served as the Assistant CEO for the Santa Barbara County Employee's Retirement System, where under the general direction of the CEO and Board of Trustees, she oversaw the day to day operations of the System.

Ms. Cavagnaro graduated with a Bachelor of Arts in Political Science and History from the University of Rochester, in Rochester, New York, and earned her Juris Doctor from the California Western School of Law in San Diego, California. She is a member of the New York and New Jersey State Bars, and is admitted to the United States District Court for the Southern and Eastern Districts of New York, and is a current member of the National Association of Public Pension Attorneys.



### OMAR D. DAVIS

Omar D. Davis has an extensive background as a retirement plan legal advisor and manager that has provided him with a deep understanding of the issues and challenges facing institutional investors. Mr. Davis has served in various capacities for several large retirement plans. Most recently, Mr. Davis was the Director of Employer Services at the Public School and Education Employee Retirement Systems of Missouri (PSRS/PEERS), a $50+ billion pension plan serving retired educators and school employees across the State of Missouri. His public retirement plan background extends to earlier roles at the Missouri Department of Transportation & Missouri State Highway Patrol Employees' Retirement System (MPERS), where he was General Counsel, and the Missouri State Employees' Retirement System (MOSERS), where he served as Investment Legal & Compliance Counsel.

Prior to his retirement system background, Mr. Davis worked for more than a decade in Missouri state government as an agency leader, including as the Director of the Department of Revenue and the Director of the Department of Labor & Industrial Relations. He has been recognized for his leadership and service numerous times throughout his career.



Prior to joining Saxena White, Mr. Davis offered client organizations a wealth of public sector experience as an executive search consultant, focusing on the public retirement, public agency, asset owner, and manager sectors.

Mr. Davis is a recipient of the 2022 *Profiles in Diversity Journal* Black Leadership Award, an honor bestowed upon accomplished leaders of color who have also supported and furthered the careers of others. He also serves on Saxena White's Diversity and Social Responsibility Committee.

Mr. Davis received his Bachelor of Science from Kansas State University in 1998 and his Juris Doctor from the University of Missouri School of Law in 2001.

Mr. Davis is a member of the Missouri Bar.



### SARA DILEO

Sara DiLeo has extensive experience in federal securities class action lawsuits, derivative litigation, and complex commercial litigation in both federal and state courts. Ms. DiLeo has served as a member of the litigation teams that achieved securities fraud class action settlements for shareholders of Evolent Health, Inc. ($23.5 million settlement), DaVita, Inc. ($135 million settlement, the second largest all-cash securities class action settlement in the U.S. District Court for the District of Colorado history), GTT Communications, Inc. ($25 million settlement), HD Supply Holdings, Inc. ($50 million settlement, one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), and TrueCar, Inc. ($28.25 million settlement).

Ms. DiLeo also played a key role on the litigation teams that have successfully prosecuted significant derivative actions, including *In re Wells Fargo & Company Shareholder Litigation* ($240 million cash payment from Defendants' insurers, representing the largest insurance-funded monetary component of any shareholder derivative settlement), and *Employees Retirement System of the City of St. Louis v. Jones, et al.* ($180 million landmark monetary recovery as well as the departures of six defendants from the company's board of directors).

Before joining Saxena White, Ms. DiLeo practiced securities litigation for nine years at a top-ranked global law firm, Skadden, Arps, Slate, Meagher & Flom LLP.

Ms. DiLeo graduated from New York University's College of Arts & Sciences program in 2003, where she received a Bachelor of Arts degree with a double major in Political Science and Psychology. She received her Juris Doctor degree from Fordham University School of Law in 2008. While attending law school, Ms. DiLeo was an Articles Editor for the *Fordham Urban Law Journal* and interned for the Honorable Barbara Jones in the United States District Court for the Southern District of New York.

Ms. DiLeo is a member of the New York Bar.



### MARCO A. DUEÑAS

Marco A. Dueñas is a Senior Attorney at Saxena White and a lead member of the Firm's case development team. He focuses his practice on the identification, investigation, and commencement of complex securities litigation cases in trial courts throughout the United States and abroad.



Prior to joining Saxena White, Mr. Dueñas was an associate at a nationally recognized securities litigation firm where he investigated and commenced securities class actions, prosecuted direct and opt-out actions on behalf of institutional investors, and led efforts to prosecute securities claims related to public offerings in state courts following the U.S. Supreme Court's decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund.*

Mr. Dueñas represents institutional investors in domestic and multinational securities cases to recover investment losses and vindicate shareholder rights. Skilled in all phases of litigation including pleadings, dispositive motions, discovery, trial, and appeal, he develops innovative, fact-based case theories to expose violations of the securities laws and recover clients' financial losses. Mr. Dueñas has represented dissenting shareholders in a foreign appraisal action in the Cayman Islands, securing a favorable judgment on behalf of his clients following a three-week bench trial.

Mr. Dueñas has played a key role prosecuting and resolving several high-profile cases, such as those against Nord Anglia Education (more than $130 million judgment following a $37.68 per share fair value appraisal—a 16% premium over the take-private transaction price), ADT ($30 million settlement), Spectrum Brands Holdings, Inc. ($9 million settlement), and Livent Corporation ($7.4 million settlement).

For his achievements, Mr. Dueñas has been recognized as a New York Metro "Rising Star" by *Super Lawyers*.

Mr. Dueñas earned his Bachelor of Science, *summa cum laude*, from Farmingdale State College. Mr. Dueñas earned his Juris Doctor, *cum laude*, from Brooklyn Law School, where he served on the Brooklyn Journal of International Law and the Moot Court Honor Society, Appellate Division. Mr. Dueñas is a member of the New York State Bar. He is admitted to the United States District Court for the Eastern and Southern Districts of New York and the United States District Court of Appeals for the Ninth Circuit.

Mr. Dueñas is fluent in Spanish.



### WILLIAM FORGIONE

Prior to joining Saxena White, William Forgione served as a senior legal executive with Teachers Insurance and Annuity Association ("TIAA") and its subsidiaries for over 25 years. While at TIAA, he held a variety of leadership positions, including Executive Vice President and General Counsel with TIAA Global Asset Management and Nuveen, a leading financial services group of companies that provides investment advice and portfolio management through TIAA and numerous investment advisors. He oversaw the legal, compliance, and corporate governance aspects associated with the organization's $900 billion investment portfolios and asset management businesses, including TIAA's general account, various separate accounts, registered and unregistered funds, and institutional investment mandates.

Under Mr. Forgione's leadership, TIAA was actively involved in a number of significant investment litigation matters in order to recover the maximum amount for the benefit of its investment portfolios and the beneficial owners. These included acting as lead plaintiff in class action lawsuits, initiating proxy contests, pursuing direct actions where appropriate, and asserting appraisal rights when it felt the consideration to be paid to shareholders in connection with various merger and acquisition activity involving portfolio companies was inadequate.

Mr. Forgione also served as Deputy General Counsel to TIAA, where among his many responsibilities, he acted as a strategic partner and advisor to the heads of TIAA's pension and insurance business lines. He also



served as a member of TIAA's Senior Leadership Team, actively participating on a number of management committees. In addition, Mr. Forgione has valuable corporate governance experience, having advised and served on a number of boards, including Nuveen, the Westchester Group, several foreign operating subsidiaries of TIAA, as well as various Risk Management, Investment, Asset-Liability, and Audit Committees. He also served as lead counsel on several large business acquisitions.

Prior to joining TIAA, Mr. Forgione was associated with Fried, Frank, Harris, Shriver & Jacobson LLP, and Csaplar & Bok, where he practiced in the areas of mergers and acquisitions and corporate finance.

After graduating *summa cum laude* from Binghamton University with a Bachelor of Science in Accounting, Mr. Forgione received his Juris Doctor degree from Boston University. Among many industry associations, he has served as President and a member of the Board of Trustees of the Association of Life Insurance Counsel, President and Trustee of the American College of Investment Counsel, and Chairman of the Investment Committee of the Life Insurance Council of New York. Mr. Forgione has spoken at many industry conferences and seminars, taught undergraduate and graduate courses in Accounting and Law, and has won awards such as *Charlotte Business Journal's* "Corporate Counsel Award" for his success in corporate law.

Mr. Forgione is a member of the New York State Bar.



### SCOTT GUARCELLO

Combining both legal and technical expertise, Scott Guarcello's practice focuses on e-discovery, including topics concerning information governance, preservation, ESI protocols, protective orders, data collection, large-scale document review workflows leveraging technology-based analytical tools, document requests and related responses and objections, and production analyses and management. With over 13 years of significant complex e-discovery experience, Mr. Guarcello brings an expertise honed by the numerous e-discovery services and training programs that he created, led, and contributed to in key roles while serving as a Senior Managing Attorney for a global e-discovery consulting and services provider.

As a core member of the firm's litigation practice group, Mr. Guarcello has contributed to the successful settlement recoveries obtained on behalf of investors, totaling over $800 million across numerous cases, including *City of Hollywood Police Officers' Retirement System and Pembroke Pines Pension Fund for Firefighters and Police Officers v. Henry Schein, Inc., et al., Plymouth County Retirement System v. Patterson Companies, Inc., et al., Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.,* and *In re Wells Fargo & Company Shareholder Derivative Litigation*.

Mr. Guarcello earned a Bachelor of Science from Stetson University and received a Juris Doctor from Florida International University where he graduated *cum laude* with a concentration in securities law. He was a regular recipient of the Dean's List Award and received the CALI Book Awards for the Complex Litigation and Corporate Tax courses. Mr. Guarcello has been awarded *Best Lawyers* "Ones to Watch!" 2023-2024, *Palm Beach Illustrated* "Top Attorney" 2020-2022, *Super Lawyers* "Rising Star" 2020, and the *Florida Trend* "Legal Elite" Award 2017-2018, and holds extensive e-discovery-related certifications. As an active participant in the e-discovery community, Mr. Guarcello has been a guest speaker for both small and large groups and is a member of The Sedona Conference.

Mr. Guarcello is a member of the Florida Bar.





### SCOTT KOREN

Scott Koren is an Attorney at Saxena White. Mr. Koren concentrates his practice on litigating securities actions and derivative actions involving publicly traded companies. Mr. Koren's efforts are focused on all stages of litigation including new case development, motion practice, and pre-trial discovery. Mr. Koren has served on various litigation teams that successfully prosecuted cases against HD Supply Holdings, Inc., DaVita, Inc., FirstEnergy Corp., Evolent Health, Inc., and ProAssurance Corp., each settling with a favorable recovery for investors.

Mr. Koren received his Bachelor of Science in Business Management and Entrepreneurship from the University of Arizona and earned his Juris Doctor degree from Pace University School of Law.

Mr. Koren is a member of the New York Bar.



### JUSTIN KRUMPER

Justin Krumper is an Attorney in Saxena White's New York office, where he works on complex securities fraud matters.

Mr. Krumper received his Juris Doctor degree from The George Washington University Law School in 2022, where he graduated with honors. During law school, he was an Associate Editor of the *American Intellectual Property Law Association Quarterly Journal*, where he had his note published. He received his Bachelor of Science in Finance and Political Science from Florida State University, *cum laude*, in 2019 and was a Presidential Scholar.

Mr. Krumper is a member of the New York Bar.

### JONATHAN D. LAMET

Jonathan D. Lamet has extensive experience in litigating direct securities actions and derivative actions involving publicly traded companies. Recently, Mr. Lamet was a member of the litigation teams that successfully recovered a $180 million derivative settlement for shareholders of FirstEnergy Corp. and a $79.5 million derivative settlement for shareholder of Goldman Sachs Inc. He was also part of the securities class action litigation teams that obtained a $63 million settlement for shareholders of Patterson Cos. and a $25 million settlement for shareholders of GTT Communications, Inc. Before joining Saxena White, Mr. Lamet practiced securities litigation and class action defense at an Am-Law 100 firm, Akerman LLP.

Mr. Lamet has been recognized for his work on behalf of investors, including being named a 2021 "Up and Comer" in Florida Trend's *Florida Legal Elite* and a 2023 "Rising Star" by *Super Lawyers.*

Mr. Lamet graduated from Yeshiva University, Sy Syms School of Business in 2010, where he received his Bachelor of Science in Business Management. He received his Juris Doctor degree from University of Miami School of Law in 2013, where he was a member of the *University of Miami Law Review.* While attending law school, Mr. Lamet interned for the United States Attorney's Office, Economic Crimes Division, for the Southern District of Florida, and for the Honorable William Turnoff in the United States District Court for the Southern District of Florida.

Mr. Lamet is a member of the Florida Bar and the United States District Courts for the Southern and Middle Districts of Florida.





### JILL MILLER

Jill Miller focuses her practice on e-discovery, including project management and litigation support services for securities fraud class and derivative actions. As Managing Discovery Attorney, she oversees the staff attorneys at the Firm and manages the document review process. Ms. Miller was a member of the litigation teams that secured one of the largest settlements in 2018, *In re Wilmington Trust Corporation Securities Litigation* ($210 million). She was also part of the litigation teams that successfully prosecuted Wells Fargo ($240 Million settlement), and DaVita ($135 million settlement, the second largest all-cash securities class action settlement in U.S. District Court for the District of Colorado history).

Prior to joining Saxena White, Ms. Miller served as team lead at various law firms for discovery in large, complex class actions and mass torts in the areas of securities fraud, software technology, pharmaceutical and patent infringement. Prior to her litigation experience, Ms. Miller was an associate at Ruden McClosky where she practiced real estate law. During her 11 years with the firm, she represented large developers of residential and commercial real estate throughout the South Florida area. Ms. Miller began her legal career as an associate in the real estate practice division of a major New Jersey law firm where she concentrated her practice on residential and commercial real estate transactions and development. She also dedicated a significant portion of her practice to casino licensing and compliance.

For the past 12 years, Ms. Miller has volunteered her time as a Guardian ad Litem, protecting the rights of abused and neglected children in Broward County, Florida. She has been recognized as a "Top Lawyer" by *Palm Beach Illustrated*.

Ms. Miller graduated from the University of Maryland, College Park with a Bachelor of Arts in Political Science in 1983. She received her law degree from Hofstra University in 1986, where she was the Articles Editor of the *International Property Investment Journal*. She also interned at the United States Federal Court, Eastern District of New York during law school.

Ms. Miller is a member of the Florida Bar and is admitted to the United States District Court for the Southern District of Florida.



### DIANNE PITRE

Dianne Pitre is a Senior Attorney at Saxena White and prosecutes securities fraud and corporate governance litigation on behalf of injured shareholders. With over a decade of experience litigating securities fraud class actions and shareholder derivative actions, Ms. Pitre has served on the litigation teams that successfully secured hundreds of millions of dollars in settlements, including in *In re Wells Fargo & Company Shareholder Litigation* ($240 million settlement), *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.* ($135 million settlement, the second largest all-cash securities class action settlement in United States District Court for the District of Colorado history), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), and *Plymouth County Retirement System v. Patterson Companies, Inc. et al.* ($63 million settlement).

Ms. Pitre is the Chair of Saxena White's Diversity and Social Responsibility Committee. She has been recognized as a 2024 *Best Lawyers* "Ones to Watch," a 2023 "Rising Star of the Plaintiffs Bar" by ALM's *The National Law Journal*, a *Super Lawyers* "Rising Star" for the last five years in a row, and a "Top Lawyer" by *Palm Beach Illustrated*.



Before joining Saxena White, Ms. Pitre was a legal intern for Jack in the Box, Inc. and Alliant Insurance Services, Inc., where she worked extensively with their in-house departments. Ms. Pitre was an intern for Jewish Family Service of San Diego and Housing Opportunities Collaborative, two San Diego pro bono legal organizations. Additionally, she served as a Legal Intern for the San Diego City Attorney's Office with their Advisory Division, Public Works Section.

Ms. Pitre graduated from the University of California, San Diego in 2008, where she received a Bachelor of Arts degree, majoring in Political Science with a minor in Law and Society. In 2012, she received her Juris Doctor degree from the University of San Diego School of Law. While attending law school, Ms. Pitre earned various scholarships and awards, including the San Diego La Raza Lawyers Association Scholarship and Frank E. and Dimitra F. Rogozienski Scholarship for outstanding academic performance in business law courses. She received two CALI Excellence for the Future Awards for receiving the top grade in her Fall 2011 International Sports Law and Entertainment Law classes. Ms. Pitre is an alumnus of Phi Delta Phi, the international legal honor society and oldest legal organization in continuous existence in the United States.

Ms. Pitre is a member of the Florida and California State Bars. She is admitted to practice before the United States District Courts for the Southern and Northern Districts of Florida and the Northern, Central, Southern, and Eastern Districts of California.

Ms. Pitre is fluent in Spanish.



### DAVID SCHWARTZ

David Schwartz is Of Counsel to Saxena White and focuses his practice on event-driven and special situation litigation using legal strategies to enhance clients' investment returns. His extensive experience includes prosecuting, as well as defending against, securities and corporate governance actions for an array of domestic and international clients, including hedge funds, merger arbitrageurs, retail investors, pension funds, mutual funds, and asset management companies.

Mr. Schwartz has played a pivotal role in some of the largest securities class action and corporate governance cases in recent years, achieving over $200 million in settlements in 2022 alone, including:

- *In re CannTrust, Inc. Securities Litigation* ($129.5 million settlement);
- *In re Resideo Securities Litigation* ($55 million settlement, one of the three largest in the Eighth Circuit);
- *Makris, et al. v. Ionis Pharmaceuticals, Inc., et al.* ($12.5 million settlement); and
- *In re Mindbody, Inc. Securities Litigation* ($9.75 million settlement).

Mr. Schwartz has helped secure leadership roles on behalf of his clients in some of the largest securities and Delaware breach of fiduciary duty class actions, including cases against Lordstown, Nikola, Alta Mesa, Novavax, Everbridge, QAD, and others.

Mr. Schwartz has been named a "Future Star" by *Benchmark Litigation* and was selected for three consecutive years to their "40 & Under Hot List," which recognized him as one of the nation's most accomplished attorneys. *Lawdragon* has recognized him as one of the country's "500 Leading Plaintiff Financial Lawyers" and he has also been featured in *Lawdragon's Lawyer Limelight* series.

Mr. Schwartz graduated *cum laude* from The University of Chicago in 2003 with a major in Economics and earned his Juris Doctor from Fordham University School of Law in 2008, where he served on the *Urban Law Journal*.

31



Mr. Schwartz is a member of the New York State Bar and is admitted to practice in the United States District Court for the Southern District of New York.



### DAVID L. WALES

David L. Wales is Senior Counsel at Saxena White P.A., focusing on corporate governance litigation. Mr. Wales is an experienced securities litigator and trial attorney, and a former Assistant United States Attorney for the Southern District of New York.

During his career, Mr. Wales has led numerous significant corporate governance actions, including the derivative action against the board of directors of Pfizer Inc., arising out of the off-label marketing of pharmaceuticals, resulting in a $75 million recovery and the first case requiring the establishment of a board-level regulatory compliance committee. Mr. Wales has been a leader in the fight against corporate abuse in the sale of opioids, including a derivative action on behalf of McKesson Corporation, achieving a $175 million recovery and substantial corporate governance reforms, and successfully tried a books and records action against Walmart Inc. He was a leader in the action against the board and senior management of Twenty-First Century Fox, Inc., arising out of workplace harassment, obtaining a $90 million recovery and ground-breaking corporate governance reforms. Mr. Wales has successfully litigated numerous actions arising out of mergers and acquisitions, as well as conflicted transactions, including *In re New Senior Investment Group, Inc. Derivative Litigation*, a $53 million recovery arising out of a conflicted transaction, and *In re Jefferies Group, Inc. Shareholders Litigation*, a $70 million settlement on behalf of shareholders in the sale of the company.

Mr. Wales currently plays a key role on litigation teams for several significant shareholder rights matters, including matters involving the misuse of "shareholder agreements" to undermine the rights of investors to have companies managed by their elected board of directors, and matters involving self-dealing transactions to benefit a company's largest shareholder at the expense of the company and its public shareholders.

Mr. Wales also has extensive experience successfully prosecuting class actions under the federal securities laws, including *In Re Merck & Co., Inc. Securities Litigation*, achieving a $1.06 billion settlement weeks before trial, *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.,* obtaining a $315 million settlement after arguing the first successful class certification motion in an RMBS action, and *In re Sepracor Corp. Securities Litigation*, a $52.5 million recovery in a certified securities fraud class action.

Mr. Wales has been consistently recognized for his legal excellence. He is AV rated, the highest rating from *Martindale-Hubbell*®. He has also been named a top practitioner by *Legal 500*, a "New York Super Lawyer" in securities litigation by *Thomson Reuters*, and as one of the "500 Leading Plaintiff Financial Lawyers" by *Lawdragon*. Mr. Wales is a frequent speaker on corporate governance including ESG and securities fraud matters.

Mr. Wales graduated *magna cum laude* from the State University of New York at Albany and *cum laude* from the Georgetown University Law Center.

Mr. Wales is a member of the New York Bar and the District of Columbia Bar. He is admitted to the United States District Court for the Northern, Southern, Eastern and Western Districts of New York, the District of Columbia, the Eastern District of Michigan, and the Northern District of Illinois and the Trial Bar. He is also admitted to the United States Court of Appeals for the Second, Third and Fourth Circuits.





### ADAM WARDEN

Adam Warden is a Senior Attorney at Saxena White. His practice focuses on representing institutional and individual investors in litigation involving corporate governance matters, class and derivative actions alleging breaches of fiduciary duty, and disputes involving mergers and acquisitions.

Mr. Warden has served on the litigation teams prosecuting several of the largest shareholder derivative actions in history, including *Employees Retirement System of the City of St. Louis v. Jones* ($180 million settlement, along with valuable corporate governance reforms, in connection with FirstEnergy Corp.'s political bribery scheme in Ohio), *Fulton County Employees Retirement System v. Blankfein* (Goldman Sachs) ($79.5 million settlement and corporate governance reforms, in connection with Goldman Sachs's role in a Malaysian bribery scheme), and *In re Wells Fargo & Company Shareholder Litigation* ($240 million settlement, in connection with Wells Fargo's fake account scandal).

Mr. Warden has extensive experience litigating in the Delaware Court of Chancery, serving as a member of the litigation teams prosecuting *Cumming v. Edens* (New Senior Investment Group) ($53 million derivative settlement related to acquisition by senior living operator New Senior Investment Group, Inc., one of the largest recoveries by market cap in Delaware history), *In re Jefferies Group, Inc. Shareholders Litigation* (class action settlement of $70 million, challenging conflicted merger transaction), and many other cases.

Mr. Warden has also litigated several securities fraud class actions, including *City of Birmingham Retirement and Relief System v. Credit Suisse Group* ($15 million settlement) and *Keippel v. Health Insurance Innovations, Inc.* ($11 million settlement).

Mr. Warden has been recognized as a *Super Lawyers* "Rising Star," a *South Florida Legal Guide* "Up and Comer," and a *Palm Beach Illustrated* "Top Lawyer." He earned his Bachelor of Arts degree from Emory University in 2001 with a double major in Political Science and Psychology. He received his Juris Doctor from the University of Miami School of Law in 2004. During law school, Mr. Warden served as the Articles Editor of the *University of Miami International* and *Comparative Law Review*.

Mr. Warden is a member of the Florida Bar. He is admitted to the United States District Courts for the Southern, Middle, and Northern Districts of Florida.



### WOLFRAM T. WORMS

Wolfram T. Worms works with Saxena White as a Case Starting Analyst. Mr. Worms has 20 years of experience in securities litigation and has assisted shareholders in recovering over a billion dollars.

 Mr. Worms began his career practicing law at a nationally recognized securities litigation firm and at Gibson Dunn and Crutcher LLP, a national defense firm. Prior to joining Saxena White, Mr. Worms owned and operated a private investigation business specializing in securities fraud and related forms of corporate misconduct. In this capacity, Mr. Worms was engaged by court-appointed lead counsel, or prospective lead counsel, on hundreds of securities fraud cases. Representative examples of Mr. Worms' successful engagements as a private investigator include the securities class actions against Regions Financial Corporation ($90 million settlement), Hospira, Inc. ($60 million settlement), Sirva, Inc. ($53 million settlement), and Baxter International ($42.5 million settlement). Mr. Worms has also coordinated with the U.S. Securities Exchange Commission and the U.S. Department of Justice on major securities fraud investigations and advised the U.S. Senate Financial Crisis Inquiry Commission regarding the role of rating agencies in the mortgage crisis.

S
W

Mr. Worms leverages his extensive experience in the field of securities litigation to identify and investigate potential new matters.

Mr. Worms received his Bachelor of Arts degree with a major in History from Western Oregon University. He earned his Juris Doctor from the UCLA School of Law.

Mr. Worms is a member of the California Bar. He is admitted to the United States District Courts for the Northern, Southern, Central, and Eastern Districts of California.



## PROFESSIONALS



### SHERRIL CHEEVERS
*Health and Wellness Coordinator*

Sherril Cheevers is Saxena White's Health and Wellness Coordinator. In this role, she provides guidance and support to employees on how to optimize their overall health and achieve their wellness objectives. Ms. Cheevers develops and coordinates wellness programs, educational presentations, and events for our employees to participate in. Ms. Cheevers also assists with organizing charitable events and opportunities for the Firm to give back to the community.

In addition to her role as Health and Wellness Coordinator, Ms. Cheevers is also a member of the Firm's Institutional Outreach group. Ms. Cheevers attends industry conferences and events and helps maintain client relations.

Ms. Cheevers earned her Bachelor of Science in Physical Education from the University of Tampa where she minored in Sports Management.



### MICHAEL A. D'ALONZO
*Senior Investigator*

Michael A. D'Alonzo is a Senior Investigator at Saxena White. Prior to joining Saxena White, Mr. D'Alonzo served over 21 years with the FBI, most recently as the Assistant Special Agent in Charge of the FBI Miami Office. In this role, he was responsible for the oversight of the Miami Division's Resident Agencies and the Special Operations Group. As head of the Resident Agencies, he was responsible for both the counterterrorism and criminal investigations in the Fort Pierce, West Palm Beach, Homestead, and Key West Resident Agencies.

During his service with the FBI, Mr. D'Alonzo served as a Supervisory Special Agent for over nine years. While in the FBI Newark Division in New Jersey, he was responsible for Newark's Special Operations Group which provided support to covert and undercover operations, and Newark's Human Intelligence (HUMINT) Squad, responsible for identifying and addressing FBI intelligence gaps. In the Newark Division, he developed educational platforms for state and local law enforcement entities regarding the Newark Division Intelligence Program, while maintaining effective liaison with New Jersey colleges and universities, increasing domain awareness and intelligence production efforts.

Prior to his service with the FBI Newark Division, Mr. D'Alonzo served in the FBI New York Office as both a criminal and counterterrorism Supervisory Special Agent. In this role, he was responsible for New York's Civil Rights and Crimes Against Children programs. This role involved oversight of investigations related to human trafficking and kidnappings.

As a counterterrorism Supervisory Special Agent, Mr. D'Alonzo was responsible for a Joint Terrorism Task Force, ensuring coordination between other field offices, legal attaché offices, local law enforcement, state police, the Central Intelligence Agency, National Security Agency, Department of Homeland Security, and Department of Defense. Mr. D'Alonzo was also engaged with international terrorism cases that were worked hand in hand with foreign law enforcement organizations such as the Canadian Security Intelligence Service, Royal Canadian Mounted Police, New Scotland Yard, and British Security Services. He oversaw high profile



investigations including Operation High Rise, Operation Silent Digit, Aafia Siddiqui, and Syed Hashmi, all of whom were found guilty of terrorism related charges.

Mr. D'Alonzo was elevated to Supervisory Special Agent at FBI Headquarters in the Counterterrorism Division's International Terrorism Operations Section I. In this role, he served as a program manager for numerous FBI field offices and was responsible for the coordination and support for FBI forward operations in the field. As a Special Agent assigned to the FBI New York Office, Mr. D'Alonzo was part of the FBI's Special Operations Group and the Criminal Division, working South American, Columbian drugs. Prior to his FBI employment, Mr. D'Alonzo served as a police officer in the State of New Jersey for nine years following his graduation from Villanova University.



### SAM JONES
*Senior Financial Analyst*

Sam Jones is a Senior Financial Analyst with Saxena White's California office. Prior to joining Saxena White, Mr. Jones worked for over 10 years as a financial and securities analyst at a leading securities litigation law firm, where he specialized in developing techniques for data modeling and visualization. He worked on numerous landmark securities cases including *In re Bank of America Securities Litigation* ($2.425 billion recovery), *In re Lehman Brothers Equity/Debt Securities Litigation* ($735 million recovery), *In re Wachovia Corp. Securities Litigation* ($627 million recovery), and Merrill Lynch Mortgage Pass-Through Litigation ($315 million recovery).

In the fallout of the housing and credit crisis, Mr. Jones pioneered techniques in data management and analysis for the firm's then-developing RMBS and structured finance practice. He has worked on numerous individual and class action RMBS cases against most of the major Wall Street banks.

Since joining Saxena White in 2019, Mr. Jones has worked on numerous cases from initial analysis of the fraud, through litigation and settlement. He has helped the Firm reach many landmark settlements against major corporations, including Covetrus ($35 million settlement), Evolent Health ($23.5 million settlement), GTT Communications ($25 million settlement), Health Insurance Innovations ($11 million settlement), Merit Medical Systems ($18.25 million settlement), and United Health Services ($17.5 million settlement).

Mr. Jones currently works with the Firm's case-starting team, monitoring markets to identify and develop new litigation opportunities. In addition to identifying new cases, he also works with the Firm's opt-out practice group to identify possible opt-out cases and client outreach efforts.

Mr. Jones graduated from Vassar College in 1996, where he studied anthropology with a focus on history and economics. After graduation he worked extensively as a field archaeologist throughout the U.S. and in Israel before transitioning to a career in securities litigation and financial analysis.



### STEFANIE LEVERETTE
*Manager of Client Services*

Stefanie Leverette is Saxena White's Manager of Client Services and has been with the Firm for nearly two decades. In this role, she manages the Firm's client outreach and development programs and oversees the Firm's portfolio monitoring program, through which the Firm provides customized monitoring, claims evaluation, and litigation services to more than 200 institutional clients who manage trillions of dollars in assets. Ms. Leverette is the primary liaison between institutional clients and the Firm.



Since joining Saxena White, Ms. Leverette has been responsible for the Firm's presence at national industry conferences and has represented the Firm in numerous professional organizations across the United States. She has also been a member of the Firm's Case Starting Team, providing institutional clients with important information regarding potential litigation. She works closely with the Firm's attorneys to assist clients through litigation-related discovery and with Firm Management on strategic initiatives that impact the Firm. In addition, Ms. Leverette supervises the team that timely distributes all client reports, notifications, new cases, and class action settlements that may impact investment portfolios and oversees the Firm's proprietary online client portal.

Ms. Leverette is a founding member of the Firm's Diversity and Social Responsibility Committee and a member of the Women's Initiative Subcommittee. She manages Saxena White's involvement in local and national charities and organizations that are meaningful to the Firm and its clients.

Ms. Leverette earned her undergraduate degree in Business Administration with a focus on Management from the University of Central Florida and her Master's in Business Administration with an emphasis on International Business from Florida Atlantic University.



### JEROME PONTRELLI
*Chief of Investigations*

With over two decades of law enforcement experience, including 12 years with the Federal Bureau of Investigation, Jerome Pontrelli serves as Saxena White's Chief of Investigations. He oversees all of the Firm's efforts to detect, investigate, and prosecute securities cases. Prior to joining Saxena White, Mr. Pontrelli was Director of Investigations at a nationally recognized securities litigation firm, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Throughout his award-winning career in the FBI and in private practice, Mr. Pontrelli has led over 100 investigations of possible securities violations and has developed extensive experience in securities-related matters. Mr. Pontrelli began his career with the FBI in Covert Special Operations and was later assigned to the FBI/NYPD Joint Bank Robbery Task Force. Following the September 11th attacks, Mr. Pontrelli was assigned to the Joint Terrorism Task Force. He later transferred to the White Collar Crime Health Care Fraud Unit. Mr. Pontrelli has an extensive network of high-level relationships throughout the state and federal law enforcement communities.

Mr. Pontrelli has been recognized for his outstanding law enforcement service with the Director's Award, Agent of the Month Award, U.S. Customs Merit Award, Special Operations Award, and a 9-11 Commendation. He was also inducted into the New Jersey Police Honor Legion.

Mr. Pontrelli received a Bachelor of Arts degree from St. Thomas Aquinas College and a Master of Arts degree from Seton Hall University. He graduated from the FBI Academy in 1996.



### EDWARD STINSON
*Manager of Information Technology*

Edward Stinson has been Saxena White's Manager of Information Technology (IT) for over a decade. Mr. Stinson oversees all of Saxena White's various IT needs, projects, and maintenance,



and coordinates all internal and external IT partners. He is also responsible for managing the Firm's day-to-day IT support, including all computer operations, cyber security, physical system maintenance, IT deliverables, and ongoing recommendations for risk mitigation. During his time with Saxena White, Mr. Stinson designed and built an entire network system spanning over four office locations, and including dozens of servers and the hosting of nearly 100 users. He also designed and implemented a SD-WAN solution utilizing FortiGate routers as a fault-tolerant component to an overall business continuity strategy.

Before joining Saxena White, Mr. Stinson was an aviation electrician in the United States Marines Corp. After honorably serving the military, he leveraged his skills and training to start his own Information Technology business in 1997. Mr. Stinson's specializes is in Network/System Administration and Engineering and has achieved multiple certifications in his field, including Certified Information Systems Security Professional, Microsoft Certified Systems Engineer, and Certified Network Administration. Mr. Stinson adheres to the "Semper Fidelis" motto and is committed to honing his expertise.

Mr. Stinson is a Certified Information Systems Security Professional and a Microsoft Certified Systems Engineer.



### DANIEL SUNDQVIST
*European Client Relations*

Daniel Sundqvist oversees Saxena White's European Client Relations, working to expand the Firm's footprint throughout Europe. Prior to joining the Firm, since 2010 Mr. Sundqvist has worked in senior sales roles for Nordic institutions. For the last 12 years, Mr. Sundqvist was Head of Sales, a member of the executive committee, and Partner at Lannebo Fonder, one of Sweden's largest asset managers.

Mr. Sundqvist has significant experience working with Nordic institutions and works closely in a Consultant role with the Firm's leadership on institutional investor outreach as well as corporate governance and ESG matters.

Mr. Sundqvist earned his MSc in Finance from Umeå School of Business.



### ANABELLE TUCHMAN
*Firm Administrator*

Anabelle Tuchman is Saxena White's Firm Administrator. In this role, she supervises Firm operations, including human resources, hiring and managing the support staff, overseeing administrative and billing matters, and handles other day-to-day Firm operation responsibilities. Ms. Tuchman also serves on Saxena White's Diversity and Social Responsibility Committee.

Ms. Tuchman brings nearly 20 years of experience in human resources in a law firm setting and has a strong background in talent acquisition, management, and training non-attorney staff members. She has distinctive interpersonal skills that aid her in identifying, attracting, and retaining highly qualified candidates.

Ms. Tuchman earned her Bachelor of Science from Emory University. She is a Society for Human Resource Management (SHRM) Certified Professional and is also certified by the Professional in Human Resources (PHR).





### RIAN WROBLEWSKI

*Head of Investigative Intelligence*

With over 21 years of intelligence gathering experience, Rian Wroblewski serves as Saxena White's Head of Investigative Intelligence. He oversees all of the Firm's efforts to generate proprietary sources of intelligence using advanced technological tools, systems, and methods. Prior to joining Saxena White, Mr. Wroblewski was Senior Manager of Investigative Intelligence at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Over the years, Mr. Wroblewski has provided expert commentary to *The Washington Post, Investor's Business Daily*, Canadian Broadcasting Corporation, and other news outlets. Mr. Wroblewski has provided consulting to database providers, e-discovery vendors, corporate boards, and government entities throughout the world. He has extensive pro bono experience assisting political asylum seekers and targets of honor killings, working alongside the FBI and Department of State. Mr. Wroblewski is an active member of the FBI's InfraGard Program. He has an extensive network of high-level relationships within the global intelligence community.

Mr. Wroblewski received a Bachelor of Science degree from John Jay College of Criminal Justice in 2007.



## STAFF ATTORNEYS



### CHRISTOPHER DONNELLY

Christopher Donnelly has extensive experience in the securities industry as both an attorney and a securities analyst for bond rating agencies, institutional investors, and investment banks. Mr. Donnelly has most recently dedicated his expertise to working for plaintiffs who have been the victims of securities fraud. His legal practice has focused primarily on early resolution of matters, with an objective toward achieving just results for clients through thorough pre-trial preparation and sound litigation strategy. He has extensive experience in e-discovery, project management, and litigation support services for class actions and other complex litigation. While at Saxena White, he has been part of the discovery teams that assisted the Firm in successfully obtaining settlements against DaVita ($135 million settlement) and Perrigo ($31.9 million settlement).

Mr. Donnelly received his Bachelor of Arts from Rutgers University and his Juris Doctor from the University of Pennsylvania. Mr. Donnelly also earned an LL.M. in Taxation from New York University.

Mr. Donnelly is a member of the California Bar, the Florida Bar, the New Jersey Bar and the New York Bar.



### MICHELE FASSBERG

Michele Fassberg focuses her practice on e-discovery and document review. She also performs legal research and assists attorneys with preparation for depositions and mediation. She was a member of the discovery teams that assisted the Firm in successfully obtaining settlements against Davita ($135 million settlement), TrueCar ($28.25 million settlement) and Perrigo ($31.9 million settlement).

Prior to working at Saxena White, Ms. Fassberg practiced in the areas of personal injury, worker's compensation, default, Fair Debt Collection Practices Act, and the Florida Deceptive and Unfair Trade Practices Act. She also worked as in-house counsel for a national lending institution.

Ms. Fassberg received her Bachelor of Arts from Florida International University and her Juris Doctor from St. Thomas University College of Law. Prior to beginning her legal career, Ms. Fassberg interned for the Honorable Michael H. Salmon in the 11th Judicial Circuit of Miami-Dade County, Florida.

Ms. Fassberg is a member of the Florida Bar and is admitted to the United States District Court for the Southern District of Florida.



### TARA HEYDT

With over 25 years of experience, Tara Heydt has extensive experience with e-discovery in class actions, securities fraud, and other complex litigation matters. At Saxena White, in addition to document review, Ms. Heydt's responsibilities include quality control, deposition and mediation preparation, and legal research. She was a member of the discovery teams that assisted the Firm in successfully obtaining settlements against DaVita ($135 million settlement), Wells Fargo ($240 million settlement), and GTT ($25 million settlement).



Ms. Heydt began her legal career in California, where her practice focused on civil litigation. After four years in private practice, Ms. Heydt served as a Research Attorney with the Los Angeles County Superior Court for 12 years, where she provided judges with recommended rulings on civil law and motion matters, both pre-trial and post-trial.

Ms. Heydt received her Bachelor of Arts, *magna cum laude*, from the University of Pennsylvania and her Juris Doctor from the University of California, Los Angeles School of Law.

Ms. Heydt is a member of the Florida Bar.



### RYAN JOSEPH

Ryan Joseph concentrates his practice on e-discovery and deposition preparation. He was a member of the discovery teams that assisted the Firm in successfully obtaining settlements in HD Supply ($50 million settlement), Davita ($135 million settlement), and GTT ($25 million settlement).

Mr. Joseph began his legal career practicing complex commercial and securities litigation at a boutique Miami law firm, where he represented one of the world's largest hedge fund providers of administrative and custodial services, Citco Fund Services, in a multi-billion dollar state and federal class action suit arising out of the Ponzi scheme perpetrated by Bernard L. Madoff Investment Securities LLC. Mr. Joseph is an experienced e-discovery attorney having worked on several class actions including the Volkswagen emissions scandal, NHL concussion lawsuit, and Fiat emissions scandal.

Mr. Joseph received his Bachelor of Science in Business Administration, *magna cum laude*, from Boston University and his Juris Doctor, *magna cum laude*, from New York Law School where he was a member of the Law Review.

Mr. Joseph is a member of the Florida Bar.



### VALERIE KANNER BONK

Valerie Kanner Bonk is experienced in e-discovery and litigation support services for class actions and other litigation. She has over 12 years of litigation experience in matters related to the Federal Trade Commission, U.S. Securities and Exchange Commission, Family Law, and Trusts & Estates. She was a member of the discovery team that assisted the Firm in successfully obtaining a settlement against Perrigo ($31.9 million settlement).

Ms. Kanner Bonk received her Bachelor of Arts from the University of Maryland, College Park and her Juris Doctor from the Catholic University of America, Columbus School of Law.

Ms. Kanner Bonk is a member of the Maryland Bar.





### REBECCA NILSEN

Rebecca Nilsen focuses her practice on e-discovery and litigation support services for class actions and other complex litigation. She was a member of the discovery teams that assisted the Firm in successfully obtaining settlements in Wilmington Trust ($210 million settlement), Wells Fargo ($240 million settlement), and DaVita ($135 million settlement). Prior to joining Saxena White, she was a litigator for 13 years in matters related to the Federal Trade Commission, the U.S Securities and Exchange Commission, the Fair Debt Collection Practices Act, and the Consumer Financial Protection Bureau.

Ms. Nilsen received her Bachelor of Arts, *cum laude*, from Florida Atlantic University and her Juris Doctor from Nova Southeastern University, Shepard Broad College of Law. While attending law school, Ms. Nilsen interned in the Pro Bono Honor Program earning the "Gold Award" for 2001 – 2002.

 Ms. Nilsen is a member of the Florida Bar and is admitted to the United States District Court for the Southern and Northern Districts of Florida.



### CHRISTINE SCIARRINO

Christine Sciarrino has extensive experience in e-discovery and litigation support services for class action securities fraud litigation. Her legal practice has focused primarily on early resolution of matters, with an objective toward achieving optimum results for litigating parties through superb pre-trial preparation and informed decision making. As an experienced practitioner for plaintiffs who have been wronged by financial institutions and other entities, Ms. Sciarrino has most recently dedicated her expertise exclusively to this area. She was a member of the discovery teams that assisted the Firm in successfully obtaining settlements in Wilmington Trust ($210 million settlement), Wells Fargo ($240 million settlement), and DaVita ($135 million settlement).

Ms. Sciarrino received her Bachelor of Arts with a major in History from Florida Atlantic University. She received her Juris Doctor from the St. Thomas University School of Law. Ms. Sciarrino also earned a Master of Fine Arts in Creative Writing at Florida Atlantic University in 2004.

Ms. Sciarrino is a member of the Florida Bar.



### ZERIN TAHER

Zerin Taher has been involved in e-discovery matters since 2020. Some of Ms. Taher's responsibilities include assisting with the prosecution of complex securities fraud class actions and shareholder derivative actions, preparing for depositions, reviewing and analyzing documents produced in the course of litigation, performing legal research, and drafting memoranda and discovery-related materials. She was a member of the discovery team that assisted the Firm in successfully obtaining a settlement against Perrigo ($31.9 million settlement).

Ms. Taher received her Master of Business Administration and Bachelor of Science from Nova Southeastern University and her Juris Doctor from Western Michigan University. While attending law school, Ms. Taher was the President of the Florida Association for Women Lawyers (FAWL) for her school's student chapter. Ms. Taher speaks fluent Hindi, Urdu, and Bangla.

Ms. Taher is a member of the Florida Bar.





### COURTNEY WEISHOLTZ

Courtney Weisholtz has more than 20 years of professional experience in civil litigation focusing in the areas of insurance subrogation, collections, foreclosure, and family law. Ms. Weisholtz also has significant experience in e-discovery. At Saxena White, she focuses her practice on e-discovery and litigation support services for class actions and other complex litigation. She was a member of the discovery team that assisted the Firm in successfully obtaining a settlement against TrueCar ($28.25 million settlement).

Ms. Weisholtz received her Bachelor of Arts from Northern Illinois University and her Juris Doctor from Nova Southeastern University.

Ms. Weisholtz is a member of the Florida Bar and is admitted to the United States District Court for the Southern District of Florida.



## OFFICES

**FLORIDA**

7777 Glades Road
Suite 300
Boca Raton, FL 33434
P: 561.394.3399
F: 561.394.3382

**NEW YORK**

10 Bank Street
Suite 882
White Plains, NY 10606
P: 914.437.8551
F: 888.631.3611

**CALIFORNIA**

505 Lomas Santa Fe Drive
Suite 180
Solana Beach, CA 92075
P: 858.997.0860
F: 858.369.0096

**DELAWARE**

824 N Market Street
Suite 1003
Wilmington, DE 19801
P: 302.485.0483
F: 888.424.8566

www.saxenawhite.com

44

# EXHIBIT 9

Law Firm Billing Rates

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman LLP | In re Wells Fargo & Company Securities Litigation, No. 1:20-cv-04494 | (S.D.N.Y.) (Aug. 2023) (Dkt. No. 190-9) | Senior Counsel: $775 - $825<br><br>Associates: $425 - $650<br><br>Staff Attorneys: $350 -$450<br><br>Case Managers & Paralegals: $325 - $400 | $900 - $1,300 |
| | In re Myriad Genetics, Inc. Securities Litigation, No. 2:19-cv-00707 | (D. Utah) (Nov. 2023) (Dkt. No. 290) | Senior Counsel: $775 - $825<br><br>Associates: $450 - $600<br><br>Staff Attorneys: $425 - $450 | $900 - $1,250 |
| | Lord Abbett Affiliated Fund, Inc., et al. v. Navient Corp., et al., No. 1:16-cv-00112--MN | (D. Del.) (Feb. 2022) (Dkt. No. 347-5) | Senior Counsel: $775<br><br>Associate: $425 - $700<br><br>Staff Attorney: $350 - $400<br><br>Paralegal: $325 - $350 | $900 - $1,300 |
| | SEB Investment Management AB, et al. v. Symantec Corporation and Gregory S. Clark, No. 3:18-cv-02902-WHA | (N.D.Cal.) (Dec. 2021) (Dkt. No. 415-3) | Senior Counsel: $775 - $800<br><br>Associate: $425 - $575<br><br>Staff Attorney: $375 - $425<br><br>Investigator: $300 - $575<br><br>Paralegal: $325 - $350 | $875 - $1,300 |
| Boies, Schiller & Flexner LLP | In re Grupo Televisa Securities Litigation, No. 1:18-cv-01979 | (S.D.N.Y.) (Jul. 2023) (Dkt. No. 356) | Counsel: $940 - $970<br><br>Associate: $670 - $830<br><br>Summer Associate: $450<br><br>Staff Attorney: $380 - $460<br><br>Paralegal: $350 | $1,140 - $2,110 |

Law Firm Billing Rates

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Boies, Schiller & Flexner LLP | Brown et al. v. Google LLC, No. 4:30-cv-03664-YGR-SVK | (N.D.Cal.) (Jun. 2022) (Dkt. No. 597) | Associate: $475 - $950<br><br>Paralegal: $225 - $380 | $725 - $1,950 |
| Cohen Milstein Sellers & Toll, PLLC | In re Wells Fargo & Company Securities Litigation, No. 1:20-cv-04494 | (S.D.N.Y.) (Aug. 2023) (Dkt. No. 190-9) | Senior Counsel: $925<br><br>Associates: $525 - $700<br><br>Staff Attorneys: $600 - $650<br><br>Discovery Attorneys: $245 - $495 | $750 - $1,225 |
| Hausfeld LLP | In re TikTok, Inc., Consumer Privacy Litigation, MDL No. 2948 | (N.D.Ill.) (Mar. 2022) (Dkt. No. 197-20) | Of Counsel: $875<br><br>Associate: $500 - $610<br><br>Paralegal: $300 - $325 | $725 - $1,525 |
| | In re Foreign Exchange Benchmark Rates Antitrust Litigation, No. 1:13-cv-07789-LGS | (S.D.N.Y.) (Jan. 2018) (Dkt. No. 939-3) | Associate: $350 - $500<br><br>Staff Attorney: $350 - $600<br><br>Contract Attorney: $350 - $425<br><br>Paralegal: $75 - $280 | $630 - $1,375 |
| Keker, Van Nest & Peters LLP | OpenGov, Inc. v. GTY Technology Holdings Inc. et al, No. 3:18-cv-07198-JSC | (N.D. Cal.) (Mar. 2019) (Dkt. No. 40-1) | Of Counsel: $775 - $1,075<br><br>Paralegal: $250 - $290 | $700 - $1,500 |
| Labaton Sucharow LLP | Boston Retirement System v. Alexion Pharmaceuticals, Inc. et al., No. 3:16-cv-02127-AWT | (D.Conn.) (Nov. 2023) (Dkt. No. 319-10) | Of Counsel: $650 - $875<br><br>Associate: $475 - $625<br><br>Staff Attorney: $375 - $475<br><br>Paralegal: $325 - $390 | $700 - $1,325 |
| | In re The Allstate Corporation Securities Litigation, No. 1:16-cv-10510 | (N.D.Ill.) (Nov. 2023) (Dkt. No. 555) | Of Counsel: $650 - $875<br><br>Associate: $425 - $625<br><br>Staff Attorney: $335 - $475<br><br>Paralegal: $150 - $390 | $900 - $1,375 |

Law Firm Billing Rates

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Levi & Korsinsky LLP | In re Nutanix, Inc. Securities Litigation, No. 3:21-cv-04080 | (N.D.Cal.) (Aug. 2023) (Dkt. No. 318-2) | Of Counsel: $450 - $850<br><br>Associate: $500 - $675<br><br>Staff Attorney: $475 | $900 - $1,050 |
| | In re U.S. Steel Consolidated Casts, No. 2:17-cv-00579-CB | (W.D.Penn.) (Mar. 2023) (Dkt. No. 351) | Of Counsel: $450 - $850<br><br>Associate: $425 - $850 | $765 - $1,050 |
| Lieff Cabraser Heimann & Bernstein, LLP | In re BofI Holding, Inc. Securities Litigation, No. 3:15-cv-02324-GPC-KSC | (S.D.Cal) (Jul. 2022) (Dkt. No. 383-2) | Associate: $395 - $535<br><br>Staff Attorney: $415 | $555 - $1,150 |
| Motley Rice LLC | Boston Retirement System v. Alexion Pharmaceuticals, Inc. et al., No. 3:16-cv-02127-AWT | (D.Conn.) (Nov. 2023) (Dkt. No. 319-10) | Senior Counsel: $860 - $950<br><br>Associate: $550 - $680<br><br>Staff Attorney: $400 - $500<br><br>Contract Attorney: $325 - $410<br><br>Paralegal: $200 - $425 | $895 - $1,315<br><br>(Called "Member" Rates) |
| | In re Twitter Inc. Securities Litigation, No. 4:16-cv-05314-JST (SK) | (N.D.Cal.) (Oct. 2022) (Dk. No. 664-1) | Senior Counsel: $925<br><br>Associate: $425 - $600<br><br>Staff Attorney: $400 - $425<br><br>Contract Attorney: $395<br><br>Paralegal: $175 - $375 | $725 - $1,100 |
| Pomerantz LLP | Solomon v. Sprint Corporation et al., No. 1:19-cv-05272 | (S.D.N.Y.) (Jul. 2023) (Dkt. No. 95) | Associate: $425 - $650<br><br>Paralegal: $120 - $365 | $875 - $1,250 |
| | Gong v. Neptune Wellness Solutions Inc. et al., No. 2:21-cv-01386 | (E.D.N.Y.) (May 2023) (Dkt. No. 64) | Associate: $450 - $650<br><br>Paralegal: $110 - $365 | $875 - $1,000 |

Law Firm Billing Rates

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Pomerantz LLP | Klein v. Altria Group, Inc. et al., No. 3:20-cv-00075-DJN | (E.D. Va.) (Feb. 2022) (Dkt. No. 311-5) | Of Counsel: $645 - $660<br><br>Associate: $375 - $660<br><br>Paralegal: $335 | $815 - $1,025 |
| Quinn Emanuel Urquhart & Sullivan, LLP | Alaska Electrical Pension Fund, et al., v. Bank of America, N.A., et al., No. 14-cv-07126-JMF-OTW | (S.D.N.Y.) (Mar. 2018) (Dkt. No. 617-1) | Of Counsel: $885 - $920<br><br>Associate: $630 - $875<br><br>Staff Attorney: $350 - $535<br><br>Paralegal: $300 - $320<br><br>Litigation Support: $175 - $365 | $940 - $1,375 |
| Robbins Geller Rudman & Dowd LLP | Oregon Laborers Employers Pension Trust Fund v. Maxar Technologies, Inc. et al., No. 1:19-cv-00124 | (D.Colo.) (Oct. 2023) (Dkt. No. 201-1) | Of Counsel: $960 - $1,080<br><br>Associate: $465 - $535<br><br>Staff Attorney: $450 - $460 | $760 - $1,250 |
| | Flynn v. Exelon Corporation et al., No. 1:19-cv-08209 | (N.D.Ill.) (Aug. 2023) (Dkt. No. 207) | Associate: $400 - $595<br><br>Staff Attorney: $390 - $460<br><br>Research Analyst: $315<br><br>Economic Analyst: $355 - $450 | $760 - $1,315 |
| | Purple Mountain Trust, Individually and on Behalf of All Others Similarly Situated v. Wells Fargo & Company et al., No. 3:18-cv-03948 | (N.D.Cal.) (Jul. 2023) (Dkt. No. 232-1) | Of Counsel: $600 - $1,110<br><br>Associate: $250 - $550<br><br>Staff Attorney: $300 - $450<br><br>Research Analyst: $315<br><br>Paralegal: $275 - $395<br><br>Litigation Support: $175 - $400 | $735 - $1,375 |

Law Firm Billing Rates

| Plaintiffs' Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Robbins Geller Rudman & Dowd LLP | Azar v. Grubhub Inc., et al., No. 1:19-cv-07665 | (N.D.Ill.) (Dec. 2022) (Dkt. No. 2279) | Of Counsel: $955<br><br>Associate: $375 - $650<br><br>Staff Attorney: $410 -$445<br><br>Research Analyst: $295<br><br>Investigator: $290 | $675 - $1,350 |
| | Gordon v. Vanda Pharmaceuticals, Inc. and Mihael H Polymeropoulos, No. 1:19-cv-01108-FB-LB | (E.D.N.Y.) (Dec. 2022) (Dkt. No. 104-6) | Of Counsel: $1,090<br><br>Associate: $375 - $630<br><br>Staff Attorney: $420 - $445<br><br>Litigation Support: $300<br><br>Investigator: $290 | $785 - $1,350 |
| Scott+Scott, Attorneys at Law, LLP | Abadilla, et al. v. Precigen, Inc. et al., No. 5:20-cv-06936-BLF | (N.D.Cal.) (Sep. 2023) (Dkt. No. 138) | Of Counsel: $1,050<br><br>Associate: $625 - $795<br><br>Staff Attorney: $675<br><br>Paralegal: $395 - $415 | $1,095 - $1,595 |
| | In re Infinity Q Diversified Alpha Fund Securities Litigation, No. 651295/2021 | (New York County, New York) (Dec. 2022) (Dkt. No. 230) | Associate: $675 - $795<br><br>Staff Attorney: $650<br><br>Research Analyst: $395<br><br>Paralegal: $395 | $995 - $1,395 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Akin Gump Strauss Hauer & Feld LLP | In re Yellow Corporation, *et al.* , Debtors, No. 23-11069 (CTG) | (Bankr. D.Del.) (Oct. 2023) (Dkt. No. 889) | Senior Counsel and Counsel: $1,055 - $1,500<br><br>Associate:  $790 - $1,125<br><br>Paralegal: $435 - $510 | $1,420 - $1,995 |
| | In re Pipeline Health System, LLC, *et al.* , Debtors, No. 22-90291 (MI) | (Bankr. S.D.Tex.) (Mar. 2023) (Dkt. No. 1169) | Senior Counsel: $1,105 - $1,300<br><br>Counsel: $1,025 - $1,190<br><br>Associate: $670 - $880<br><br>Paraprofessional: $510 | $1,400 - $1,775 |
| | In re GTT Communications, Inc., *et al.* , Debtors, No. 21-11880-MEW | (Bankr. S.D.N.Y.) (Nov. 2021) (Dkt. No. 133) | Senior Counsel: $845 - $1,655<br><br>Counsel: $1,025 - $1,225<br><br>Associate: $605 - $1,130 ("2022 Range") | $1,125 - $1,995 ("2022 Range") |
| Arnold & Porter Kaye Scholer LLP | In re Akorn Holding Company LLC, *et al.* , Debtors, No. 23-10253 (KBO) | (Bankr. D.Del.) (Feb. 2023) (Dkt. No. 581) | Senior Associate: $876<br><br>Associate: $752 | $1,169 - $1,194 |
| | In re BDC Inc., *et al.* , Debtors, No. 20-10010 (CSS) | (Bankr. D. Del.) (Feb. 2021) (Dkt. No. 1423) | Counsel: $920 - $1,050<br><br>Associate: $520 - $910<br><br>Staff Attorney: $545 - $610 | $910 - $1,240 |
| Boies, Schiller Flexner LLP | In re Marshall Broadcasting Group, Inc., Debtor, No. 19-36743 (DRJ) | (Bankr. S.D.Tex.) (Mar. 2021) (Dkt. No. 443) | Associate: $850 - $890 | $1,050 - $1,080 |
| Cleary Gottlieb Steen & Hamilton LLP | In re ViewRay, Inc., *et al.* , Debtors, No. 23-10935 (KBO) | (Bankr. D.Del.) (Nov 2023) (Dkt. No. 428-2) | Associate: $965 - $1,105<br><br>Paralegal: $430<br><br>Non-Legal: $370 | $1,305 - $1,930 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | In re Genesis Global Holdco, LLC, *et al.* , Debtors, No. 23-10063 (SHL) | (Bankr. S.D.N.Y.) (May 2023) (Dkt. No. 316) | Counsel: $1,280 - $1,765<br><br>Associate: $845 - $1,400<br><br>Contract Attorney: $300 - $375<br><br>Litigation Paralegal: $370 - $430 | $1,305 - $2,135 |
| Dechert LLP | In re Bintago Inc., *et al.* , Debtors, No. 23-11394 (SHL) | (Bankr. S.D.N.Y.) (Nov. 2023) (Dkt. No. 220) | Counsel: $1,175<br><br>Associate: $775 - $1,140<br><br>Legal Assistant: $435 - $490 | $1,275 - $1,650 |
| | In re PURDUE PHARMA L.P., *et al.,* Debtors, No. 19-23649-shl | (Bankr. S.D.N.Y.) (Aug. 2023) (Dkt. No. 5840) | Associate: $880 - $1,050<br><br>Paralegal: $300 | $1,125 - $1,650 |
| DLA Piper LLP (US) | In re Instant Brands Acquisition Holdings Inc, *et al.* , Debtors, No. 23-90716 (DRJ) | (Bankr. S.D.Tex.) (Nov. 2023) (Dkt. No. 724-1) | Associate: $670 - $1,080<br><br>Law School Graduate: $730<br><br>Research Analyst: $500<br><br>Case Manager: $380 - $475 | $1,200 - $1,640 |
| | In re Amsterdam House Continuing Care Retirement Community, Inc., Debtor, No. 23-70989-ast | (Bankr. E.D.N.Y.) (Jun. 2023) (Dkt. No. 254) | Associate: $750 - $1,195<br><br>Paralegal: $380 - $475 | $1,195 - $1,240 |
| Freshfields Bruckhaus Deringer LLP | In re Talen Energy Supply, LLC, et al., Debtors, No. 22-90054 (MI) | (Bankr. S.D.Tex.) (Jun. 2023) (Dkt. No. 2114-2) | Counsel: $1,425<br><br>Associate: $980 - $1,200 | $1,690 - $1,945 |
| | In re Revlon, Inc. *et al.* , Debtors, No. 22-10760 (DSJ) | (Bankr. S.D.N.Y.) (Apr. 2023) (Dkt. No. 1835) | Counsel: $843<br><br>Associate: $321 - $1,323<br><br>Paralegal/Non-Legal Staff: $320 - $525 | $1,057 - $1,723 |
| Gibson, Dunn & Crutcher LLP | In re Stimwave Technologies Incorporated, *et al.* , Debtors, No. 22-10541 (TMH) | (Bankr. D.Del.) (May 2023) (Dkt. No. 901) | Associate: $1,105 - $1,210 | $1,860 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Gibson, Dunn & Crutcher LLP | In re Sequential Brands Group, Inc., *et al.*, Debtors, No. 21-11194 (JTD) | (Bankr. D.Del.) (Sep. 2021) (Dkt. No. 95) | Counsel: $1,025 - $1,210<br><br>Associate: $610 - $1,060 | $1,095 - $1,645 |
| Goodwin Procter LLP | In re Party City Holdco Inc., Debtor, No.23-90005 | (Bankr. S.D.Tex.) (Nov. 2023) (Dkt. No. 1939-2) | Counsel: $1,150<br><br>Associate: $710 - $1,095<br><br>Paralegal: $520 | $1,250 - $1,775 |
| | In re Clarus Therapeutics Holdings, Inc., Debtor, No. 22-10845-MFW | (Bankr. D.Del.) (Mar. 2023) (Dkt. No. 354-1) | Counsel: $1,075<br><br>Associate: $675 - $945<br><br>Paralegal: $355 - $495 | $1,095 - $1,800 |
| Greenberg Traurig LLP | In re Vesttoo Ltd., *et al.*, Debtors, No. 23-11160 (MFW) | (Bankr. D.Del.) (Nov. 2023) (Dkt. No. 399) | Senior Counsel: $1,645<br><br>Of Counsel: $855 - $900<br><br>Associate: $650 - $895<br><br>Paralegal: $390 - $475 | Shareholder: $880 - $1,665 |
| | In re Kabbage, Inc. d/b/a Kservicing, *et al.*, Debtors, No. 22-10951 (CTG) | (Bankr. D.Del.) (Jun. 2023) (Dkt. No. 855) | Associate: $870<br><br>Paralegal: $435 | Shareholder: $1,255 - $1,540 |
| Hogan Lovells US LLP | In re Mallinckrodt PLC, *et al.*, Debtors, No. 23-11258 (JTD) | (Bankr. D.Del.) (Dec. 2023) (Dkt. No. 744) | Senior Counsel: $1,444<br><br>Of Counsel: $1,135 - $1,175<br><br>Senior Associate: $1,065 - $1,110<br><br>Associate: $650 - $890<br><br>Senior Research Analyst: $390<br><br>Paralegal: $390 | $885 - $1,585 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Hogan Lovells US LLP | In re LTL Management LLC, Debtor, No. 21-30589 (JCW) | (Bankr. D.N.J.) (May 2022) (Dkt. No. 2240-1) | Counsel: $910 - $1,735<br><br>Associate: $605 - $1,055<br><br>Paralegal: $275 - $550 | $950 - $2,465 |
| Jones Day | In re LTL Management LLC, Debtor, No. 23-12825 (MBK) | (Bankr. D.N.J.) (Sep. 2023) (Dkt. 1327) | Of Counsel: $925 - $1,275<br><br>Associate: $325 - $925<br><br>Staff Attorney: $600 - $625<br><br>Paralegal: $213 - $500 | $563 - $1,800 |
| | In re Purdue Pharma L.P., et al., Debtors, No. 19-23649 (SHL) | (Bankr. S.D.N.Y.) (Jun. 2023) (Dkt. No. 5669) | Associate: $650 -$880<br><br>Paralegal & Staff: $325 - $450 | $1,050 - $1,418 |
| Katten Muchin Rosenman LLP | In re Capstone Green Energy Corporation, et al., Debtors, No. 23-11634 (LSS) | (Bankr. D.Del.) (Dec. 2023) (Dkt. No. 148-2) | Of Counsel: $735 - $1,440<br><br>Counsel and Special Staff: $460 - $1,230<br><br>Associate: $300 - $935<br><br>Paralegal: $90 - $650 | $835 - $1,795 |
| | In re Voyager Digital Holdings, Inc. et al., Debtors, No. 22-10943 (MEW) | (Bankr. S.D.N.Y.) (Mar. 2023) (Dkt. No. 1147) | Associate: $765 - $815 | $1,040 - $1,755 |
| | In re: Sheridan Holding Company I, LLC, et al. Reorganized Debtors, No. 20-31884 (DRJ) | (Bankr. S.D.Tex.) (Apr. 2020) (Dkt. No. 124) | Of Counsel: $895 - $1,475<br><br>Associate: $460 - $970<br><br>Paraprofessional: $195 - $580 | $770 - $1,555 |
| King & Spalding LLP | In re DCL Holdings (USA), Inc., et al., Debtors, No. 22-11319 (JKS) | (Bankr. D.Del.) (May 2023) (Dkt. No. 442) | Associate: $685 - $1,315<br><br>Project Assistant: $250 | $1,340 - $1,780 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| King & Spalding LLP | In re Briggs & Stratton Corporation, *et al.*, Debtors, No. 20-43597 | (Bankr. E.D.Mo.) (Jul. 2020) (Dkt. No. 194) | Counsel: $750 - $1,005<br><br>Associate: $440 - $750<br><br>Paraprofessional: $190 - $325 | $820 - $1,290 |
| Kirkland & Ellis, LLP | In re MVK Farmco LLC, *et al.*, Debtors, No. 23-11721 (LSS) | (Bankr. D.Del). (Dec. 2023) (Dkt. No. 353) | Associate: $715 - $1,295 | $1,245 - $2,045 |
|  | In re: Celsius Network LLC, No. 22- 10964 | (Bankr. S.D.N.Y.) (Aug. 2022) (ECF No. 360) | Of Counsel: $805 - $1,845<br><br>Associate: $650 - $1,245 | $1,135 - $1,995 |
| Mayer Brown LLP | In re GWG Holdings, Inc., *et al.*, Debtors, No. 22-90032 (MI) | (Bankr. S.D.Tex.) (Dec. 2022) (Dkt. No. 1220) | Counsel: $1,025 to $1,250<br><br>Associate: $590 - $1,075<br><br>Paraprofessionals: $210 - $475 | $1,120 - $1,940 |
|  | In re Greensill Capital Inc., Debtor, No. 21-10561 (MEW) | (Bankr. S.D.N.Y.) (Sep. 2021) (Dkt. No. 262) | Counsel: $995<br><br>Associate: $505 - $870<br><br>Paralegal: $400 | $865 - $1,425 |
| McDermott Will & Emery LLP | In re OSG Holdings, Inc., *et al.*, Debtors, No. 23-90799 (CML) | (Bankr. S.D.Tex.) (Dec. 2023) (Dkt. No. 223) | Associate: $655 - $1,170<br><br>Paralegal: $295 - $670 | $1,215 - $1,860 |
|  | In re: Voyager Digital Holdings, Inc., No. 22-0943 | (Bankr. S.D.N.Y.) (Aug. 2022) (Dkt. No. 317) | Of Counsel: $755 - $1,300<br><br>Associate: $545 - $1,190 | $875 - $1,510 |
| Milbank LLP | In re Voyager Aviation Holdings, LLC *et al.*, Debtors, No. 23-11177 (JPM) | (Bankr. S.D.N.Y.) (Jan. 2024) (Dkt. No. 662) | Of Counsel: $1,625<br><br>Special Counsel: $1,425<br><br>Associate: $575 - $1,300<br><br>Case Manager: $450<br><br>Legal Assistant: $300 - $390 | $1,495 - $2,045 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Milbank LLP | In re Talen Energy Supply, LLC, *et al.*, Debtors, No. 22-90054 (MI) | (Bankr. S.D.Tex.) (Mar. 2023) (Dkt. No. 1931) | Special Counsel: $1,320<br><br>Associate: $695 - $1,200 | $1,495 - $2,045 |
| Norton Rose Fulbright US LLP | In re 8E14 Networks, Inc. d/b/a Ananda Networks, Debtor, No. 22-10708 (BLS) | (Bankr. D.Del.) (Jan. 2023) (Dkt. No. 257-2) | Counsel: $780<br><br>Associate: $495 - $580<br><br>Paralegal: $250 - $365 | $780 - $1,135 |
| | In re TRIVASCULAR SALES LLC, *et al.*, No. 20-31840-SGJ | (Bankr. E.D.Tex.) (Aug. 2020) (Dkt. No. 291) | Of Counsel: $670 - $1,225<br><br>Senior Counsel: $520 - $1,175<br><br>Associate: $355 - $855<br><br>Paraprofessional: $230 - $480 | $700 - $1,350 |
| O'Melveny & Myers LLP | In re: FHC Holdings Corporation, *et al.*, Debtors, No. 20-13076-BLS | (Bankr. D. Del.) (Jun. 2021) (Dkt. No. 792) | Senior Counsel: $1,105<br><br>Associate: $708 - $940 | $1,100 - $1,400 |
| | In re Remington Outdoor Company, Inc., *et al.*, Debtors, No. 20-81688-11 | (Bankr. N.D. Ala.) (Jul. 2020) (Dkt. No. 24) | Associate and Counsel: $545 - $995<br><br>Paraprofessional and Legal Assistant: $180 - $415 | $955 - $1,555 |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | In re Proterra Inc, *et al.*, Debtors, No. 23-11120 (BLS) | (Bankr. D.Del.) (Oct. 2023) (Dkt. No. 428) | Counsel: $1,650<br><br>Associate: $825 - $1,380<br><br>Staff Attorney: $595 - $625<br><br>Senior Research Analyst: $380<br><br>Paralegal: $410 - $470 | $1,815 - $2,175 |
| | In re Mallinckrodt PLC, *et al.*, Debtors, No. 20-12522 (JTD) | (Bankr. D.Del.) (Apr. 2022) (Dkt. No. 7037) | Counsel: $1,525<br><br>Associate: $1,040 - $1,135 | $1,605 - $2,025 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Proskauer Rose LLP | In re Off Lease Only LLC, *et al.* , Debtors, No. 23-11388 (CTG) | (Bankr. D.Del.) (Nov. 2023) (Dkt. No. 206) | Senior Counsel: $1,395 - $1,425<br><br>Associate: $995 - $1,215<br><br>Paralegal: $340 - $530 | $1,550 - $1,950 |
| | In re Alpha Media Holdings LLC, *et al.* , Debtors, No. 21-30209 (KRH) | (Bankr. E.D. Va.) (Mar. 2021) (Dkt. No. 197) | Senior Counsel: $1,150 - $1,375<br><br>Associate: $730 - $1,195 | $1,225 - $1,795 |
| Quinn Emanuel Urquhart & Sullivan, LLP | In re FTX Trading LTD, et al., Debtors, No. 22-11068 (JTD) | (Bankr. D.Del.) (Sep. 2023) (Dkt. No. 2531) | Counsel: $1,215<br><br>Associate: $747 - $1,337<br><br>Paralegal: $432 | $1,247 - $1,917 |
| | In re J.C. Penney Company, Inc., *et al.* , Debtors, No. 20-20182 (DRJ) | (Bankr. S.D. Tex.) (Jan. 2021) (Dkt. No. 2313) | $750 - $1,100 | $1,200 - $1,325 |
| Ropes & Gray LLP | In re VH Legacy/Liquidation, LLC, *et al.* , Debtors, No. 22-11019 (LSS) | (Bankr. D.Del.) (May 2023) (Dkt. No. 417) | Associate: $900 - $1,310<br><br>Law Clerk: $770<br><br>Paralegal: $320 - $565 | $1,520 - $1,900 |
| | In re Vewd Software USA, LLC, *et al.* , Debtors, No. 21-12065 (MEW) | (Bankr. S.D.N.Y.) (Jan. 2022) (Dkt. No. 62) | Counsel: $770 - $1,140<br><br>Associate: $700 - $1,270<br><br>Paraprofessional: $290 - $485 | $1,400 - $2,100 |
| Shearman & Sterling LLP | In re Venus Liquidation Inc., *et al.* , Debtors, No. 23-10738 (JPM) | (Bankr. S.D.N.Y.) (Jan. 2024) (Dkt. No. 727) | Counsel: $1,300<br><br>Associate: $1,215 - $1,415<br><br>Law Clerk: $225 - $995 | $1,975 - $2,130 |
| | In re Carlson Travel, Inc., *et al.* , Reorganized Debtors, No. 21-90017 (MI) | (Bankr. S.D. Tex.) (Jan. 2022) (Dkt. No. 249) | Associate: $435 - $1,210<br><br>Paralegal: $395 | $1,195 - $1,825 |
| Sheppard, Mullin, Richter & Hampton LLP | In re Mariner Health Central, Inc., *et al.* , Debtors, No. 22-41079 | (Bankr. N.D. Cal.) (Apr. 2023) (Dkt. No. 522) | Associate: $700 - $945 | $1,355 - $1,555 |
| | In re Buckingham Heights Business Park (a California Limited Partnership), Debtor, No. 2:21-bk-17060-BB | (Bankr. C.D. Cal.) (Jun. 2022) (Dkt. No. 169) | Associate: $550 - $765<br><br>Paralegal: $440 | $850 - $1,050 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Sidley Austin LLP | In re Legacy IMDBS, Inc., *et al.* , Debtors, No. 23-10852 (KBO) | (Bankr. D.Del.) (Nov. 2023) (Dkt. No. 782) | Associate: $960 - $1,230<br><br>Paralegal: $555 | $1,625 - $1,800 |
| | In re Tricida, Inc., Debtor, No. 23-10024 (JTD) | (Bankr. D.Del.) (Apr. 2023) (Dkt. No. 419) | Associate: $700 - $1,275<br><br>Paralegal: $540 | $1,300 - $1,850 |
| | In re: GVS Texas Holdings I, LLC, *et al.* , Debtors, No. 21-31121-MVL | (Bankr. N.D. Tex.) (Nov. 2021) (Dkt. No. 279) | Counsel: $1,075<br><br>Associate: $815 - $930<br><br>Paralegal: $415 - $490 | $1,100 - $1,450 |
| Simpson Thacher & Bartlett LLP | In re Zymergen Inc., *et al.* , Debtors, No. 23-11661 (KBO) | (Bankr. D.Del.) (Jan. 2024) (Dkt. No. 314) | Counsel: $1,525<br><br>Associate: $ 745 - $1,290<br><br>Paralegal: $545 | $1,795 - $2,195 |
| | In re MetlinPatterson Global Opportunities Partners II L.P., *et al.* , Debtors, No. 21-11255-DSJ | (Bankr. S.D.N.Y.) (Nov. 2021) (Dkt. No. 243) | Senior Counsel and Counsel: $1,320 - $1,350<br><br>Associate: $655 - $1,240<br><br>Paralegal: $320 - $475 | $1,550 - $1,895 |
| Skadden, Arps, Slate, Meagher & Flom LLP | In re: Armstrong Flooring, Inc., No. 22-bk-10426 | (Bankr. D. Del. May 2022) (ECF No. 187) | Of Counsel: $1,300 - $1,495<br><br>Associate: $550 - $1,275 | $1,465 - $1,980 |
| | In re VIVUS, Inc. *et al.* , Reorganized Debtors, No. 20-bk-11779 (LSS) | (Bankr. D. Del.) (Jan. 2021) (Dkt. No. 443) | Of Counsel: $1,260<br><br>Associate: $695 - $1,120 ($495 for Associate pending Admission) | $1,425 - $1,565 |
| | In re JCK Legacy Company, *et al.,* Debtors, No. 20-10418 (MEW) | (Bankr. S.D.N.Y.) (Oct. 2020) (Dkt. No. 938) | Counsel: $1,125 - $1,325<br><br>Associate: $575 - $1,120<br><br>Paraprofessional: $95 - $520 | $1,275 - $1,775 |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| Sullivan & Cromwell LLP | In re SVB Financial Group, Debtor, No. 23-10367 (MG) | (Bankr. S.D.N.Y.) (Sep. 2023) (Dkt. No. 543) | Senior Counsel: $2,165<br><br>Special Counsel: $1,575 - $1,790<br><br>Associate: $775 - $1,475<br><br>Paralegal: $425 - $595<br><br>Legal Analyst: $595 | $1,083 - $2,165 |
| | In re FTX Trading LTD, *et al.*, Debtors, No. 22-11068 (JTD) | (Bankr. D. Del.) (Aug. 2023) (Dkt. No. 2271) | Of Counsel: $2,165<br><br>Special Counsel: $1,575 - $1,825<br><br>Associate: $775 - $1,475<br><br>Law Clerk: $550<br><br>Paralegal: $425 - $595<br><br>Legal Analyst: $595 | $1,595 - $2,165 |
| Vinson & Elkins LLP | In re Core Scientific, Inc., *et al.*, Debtors, No. 22-90341 (DRJ) | (Bankr. S.D.Tex.) (Sep. 2023) (Dkt. No. 1251) | Counsel: $1,590<br><br>Associate: $730 - $1,220<br><br>Paralegal: $420 | $1,425 - $1,920 |
| | In re Heartbrand Holdings, Inc., *et al.*, Reorganized Debtors, No. 22-90127 (CML) | (Bankr. S.D.Tex.) (Nov. 2023) (Dkt. No. 339) | Counsel: $1,040 - $1,130<br><br>Senior Associate: $1,005<br><br>Associate: $615 - $950<br><br>Paralegal: $385 - $480 | $1,130 - $1,810 |
| Weil, Gotshal & Manges LLP | In re Pacificco Inc., *et al.*, Reorganized Debtors, No. 23-10620 (KBO) | (Bankr. D. Del.) (Jan. 2024) (Dkt. No. 21-4) | Counsel: $1,375 - $1,425<br><br>Associate: $750 - $1,345<br><br>Paralegal: $460 - $530<br><br>*Excluding German Counsel and Associate Rates* | $1,450 - $2,095<br><br>*Excluding German Partner Rates* |

Law Firm Billing Rates

| Defense Firm Name | Case Name | Citation | Non-Partner Attorneys' Fee Range | Partners' Fee Range |
|---|---|---|---|---|
| | In re ORG GC MIDCO, LLC, Debtor, No. 21-90015 (MI) | (Bankr. S.D. Tex.) (Dec. 2021) (Dkt. No. 124-2) | Associate: $630 - $1,100<br><br>Paraprofessional: $260 - $460 | $1,225 - $1,795 |
| Willkie Farr & Gallagher LLP | In re Core Scientific, Inc., et al., Debtors, No. 22-90341 (CML) | (Bankr. S.D.Tex.) (Nov. 2023) (Dkt. No. 1429) | Counsel: $1,380<br><br>Associate: $680 - $1,315<br><br>Paralegal: $315 | $1,625 - $2,050 |
| | In re Western Global Airlines, Inc., *et al.*, Debtors, No. 23-11093 (KBO) | (Bankr. D.Del.) (Nov. 2023) (Dkt No. 440-1) | Counsel: $1,380<br><br>Associate: $680- $1,315<br><br>Paralegal: $315 - $540 | $1,500 - $2,050 |
| Wilson Sonsini Goodrich & Rosati | In re Tonopah Solar Energy, LLC, Debtor, No. 20-11884 (KBO) | (Bankr. D. Del.) (Jul. 2020) (Dkt. No. 43) | Counsel: $440 - $1,350<br><br>Associate: $510 - $920<br><br>Legal Staff: $120 - $480 | Member: $925 - $1,750 |
| | In re Insys Therapeutics, Inc., *et al.*, Debtors, No. 19-11292 (JTD) | (Bankr. D. Del.) (Apr. 2020) (Dkt. No. 1289) | Associate: $590- $815 | Member: $840 -$1,390 |

# EXHIBIT 10



NERA
ECONOMIC CONSULTING

24 January 2023



# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

Federal Filings Declined for the Fourth Consecutive Year

Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores

Insight in Economics™

## Analysis of Motions

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2013–2022 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

### Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 73% of these cases, while 18% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of the motions were withdrawn by defendants. Among the cases where a decision was reached, 61% were granted (with or without prejudice) and only 20% were denied (see Figure 11).

Figure 11. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2013–December 2022



### Motion for Class Certification

A motion for class certification was filed in only 17% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases where a motion for class certification was filed. Almost all of the other 40% of cases were resolved with a settlement. Among the cases where a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases (see Figure 12). Approximately 65% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 13). The median time was about 2.7 years.

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*



To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.



Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2023
National Economic Research Associates, Inc.

All rights reserved.
Printed in the USA.

# EXHIBIT 11

| Select Eleventh Circuit Cases with 33% or Higher Fee Awards | | |
|---|---|---|
| Case | Settlement Amount | Fee Award |
| In re: Managed Care Litig. v. Aetna, No. 00-md-01334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) | $100,000,000 | 35.50% |
| Cabot East Broward 2 LLC v. Cabot, No. 16-cv-61218, 2018 WL 5905415 at *11 (S.D. Fla. Nov. 9, 2018) | $100,000,000 | 33.33% |
| Gutter v. E.I. Dupont De Nemours & Co., No. 95-cv-2152, 2003 U.S. Dist. LEXIS 27238, at *12 (S.D. Fla. May 30, 2003) | $77,500,000 | 33.33% |
| Owens v. Metropolitan Life Insurance Company (Owens settlement), No. 14-cv-00074, ECF No. 239 (N.D. Ga. Nov. 19, 2019) | $75,000,000 | 33.33% |
| Columbus Drywall & Insulation, Inc. v. Masco Corporation, No. 04-cv-03066, 2012 WL 12540344 at *8 (N.D. Ga. Oct. 26, 2012) | $75,000,000 | 33.33% |
| In re Terazosin Hydrochloride Antitrust Litig., No. 99-md-01317, 2005 U.S. Dist. LEXIS 43082 at *22 (S.D. Fla. Apr. 19, 2005) | $72,500,000 | 33.33% |
| Champs Sports Bar & Grill Co. et al v. Mercury Payment Systems, LLC, 275 F.Supp.3d 1350 (N.D.Ga. 2017) | $52,000,000 | 33.33% |
| City Pension Fund for Firefighters and Police. V. Aracruz Celulose S.A., No. 08-cv-23317, 2013 WL 12489095 (S.D.Fla. 2013) | $37,500,000 | 33.33% |
| Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp., No. 20-cv-00856, ECF No. 171 (N.D. Ala. Jan 17, 2024) | $28,000,000 | 33.00% |
| Belin v. Health Insurance Innovations, Inc., No. 19-cv-61430, 2022 WL 1126006, at *6 (S.D. Fla. Mar. 20, 2022) | $27,500,000 | 33.33% |
| Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc. 15-cv-22782, 2017 WL 7798110, at *5 (S.D. Fla. Dec. 18, 2017) | $25,000,000 | 35.00% |
| In re Walter Energy, Inc. Sec. Litig., No. 2:12-cv-00281, 2016 WL 7230505, at *1 (N.D. Ala. May 3, 2016) | $25,000,000 | 33.00% |
| Swift v. BancorpSouth Bank, No. 10-cv-00090, 2016 WL 11529613 at *19 (N.D. Fla. July 15, 2016) | $24,000,000 | 35.00% |
| Thorpe et al v. Walter Investment Management Inc. et al, No. 14-cv-20880, 2016 WL 10518902 at *11 (S.D. Fla. Oct. 14, 2016) | $24,000,000 | 33.33% |
| In re Flowers Foods, Inc. Sec. Litig., No. 16-cv-00222, 2019 WL 6771749 at *2 (M.D.Ga. 2019) | $21,000,000 | 33.33% |
| Barba v. Shire U.S., Inc., No. 13-cv-21158, ECF No. 441 (S.D. Fla. Dec. 2, 2016) | $14,750,000 | 35.00% |
| Wolff v. Cash 4 Titles, No. 03-cv-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) | $14,500,000 | 33.30% |
| Smith et al v. Floor and Decor Outlets of America, Inc., No. 15-cv-04316, 2017 WL 11495273 at *7 (N.D.Ga. 2016) | $14,000,000 | 33.33% |
| In re NetBank, Inc. Sec. Litig., No. 07-cv-02298, 2011 WL 13353222, at *2 (N.D. Ga. Nov. 9, 2011) | $12,500,000 | 34.00% |
| In re Health Insurance Innovations Sec. Litig., 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021) | $11,000,000 | 33.33% |
| In re Theragenics Corp. Sec. Litig., No. 99-cv-00141, ECF No. 143 (N.D. Ga. Sept. 29, 2004) | $10,000,000 | 33.33% |
| Lunsford v. Woodforest Nat'l Bank, No. 12-cv-00103, 2014 WL 12740375, at *10 (N.D. Ga. May 19, 2014) | $7,750,000 | 33.00% |
| Legg v. Spirit Airlines, Inc., No. 14-cv-61978, 2016 WL 8670162 at *3 (S.D. Fla. Aug. 2, 2016) | $7,500,000 | 33.00% |
| In re Profit Recovery Grp. Int'l, Inc. Sec. Litig., No. 00-cv-01416, 2005 WL 8172262 at *3 (N.D. Ga. May 26, 2005) | $6,750,000 | 33.33% |
| Grand Lodge of Pennsylvania v. Coast Financial Holdings et al., No. 07-cv-00479, 2009 WL 1582618 (M.D.Fla. 2009) | $6,349,000 | 33.00% |
| Smith v. Wm. Wrigley Co., No. 09-cv-60646, ECF No. 102 (S.D. Fla. Nov. 8, 2010) | $6,000,000 | 33.30% |
| In re Home Loan Servicing Solutions Ltd. Sec. Litig., No. 16-cv-60165, ECF No. 119 (S.D.Fla. Nov. 17, 2017) | $6,000,000 | 33.33% |
| Siegmund v. Bian, No. 16-cv-62506, ECF No. 310 (S.D.Fla. Nov. 20, 2019) | $6,000,000 | 33.33% |
| In re Digital Domain Media Group, Inc. Sec. Litig., No. 12-cv-14333, ECF No. 116 (S.D.Fla. Apr. 12, 2017) | $5,500,000 | 33.00% |

| Case | Settlement Amount | Fee Award |
|---|---|---|
| Morgan v. Public Storage, 301 F.Supp.3d 1237, 1257-8  (S.D. Fla. 2016) | $5,000,000 | 33.00% |
| Owens v. Metropolitan Life Insurance Company (Smith settlement), No. 14-cv-00074, ECF No. 239 (N.D. Ga. Nov. 19, 2019) | $5,000,000 | 33.33% |
| In re Clarus Corp. Sec. Litig., No. 00-cv-02841, ECF No. 148 (N.D. Ga. Jan. 6, 2005) | $4,500,000 | 33.33% |
| In re Medirisk, Inc. Sec. Litig., No. 98-CV-01922,  ECF. No. 181 (N.D. Ga. Mar. 22, 2004) | $4,000,000 | 33.33% |
| Stoll v. Musculoskeletal Institute, No. 20-cv-01798, 2022 WL 16927150, at *4 (M.D. Fla. July 27, 2022) | $4,000,000 | 33.00% |
| Aranaz et al v. Catalyst Pharmaceutical Partners Inc et al , No. 13-cv-23878, ECF No. 153 (S.D.Fla. Mar. 16, 2015) | $3,500,000 | 33.33% |
| Cervantes v. Invesco Holding Co. (US), Inc., et al., No. 18-cv-02551, ECF No. 110 N.D. Ga. Aug. 13, 2020) | $3,470,000 | 33.00% |
| Reyes v. AT&T Mobility Servs., LLC, No. 10-cv-20837, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) | $3,287,500 | 33.33% |
| Sawyer v. Intermex Wire Transfer, LLC, No. 19-cv-22212, 2020 WL 5259094 at *2 (S.D. Fla. Sept. 3, 2020) | $3,250,000 | 33.33% |
| In re Pediatric Servs. of Am., Inc. Sec. Litig., No. 99-cv-00670, ECF No. 82 (N.D. Ga. Mar. 15, 2002) | $3,200,000 | 33.33% |
| Pritchard v. Apyx Medical Corporation et al., No. 19-cv-00919, 2020 WL 6937821, at *2 (M.D. Fla. Nov. 18, 2020) | $3,000,000 | 33.33% |
| In re The Maxim Group, Inc. Sec. Litig., No. 99-cv-01280, ECF No. 143 (N.D. Ga. July 29, | $3,000,000 | 33.33% |
| Pritchard v. Apyx Med. Corp., No. 19-cv-00919. 2020 WL 6937821 at *1 (M.D.Fla. 2020) | $3,000,000 | 33.33% |
| In re MiMedx Group, Inc. Securities Litigation, No. 13-cv-03074, 2016 WL 11645384 (N.D.Ga. 2016) | $2,979,000 | 33.33% |
| In re Health Insurance Innovations Sec. Litig., No. 17-cv-02186, ECF No. 184 (M.D.Fla. Mar. 30, 2021) | $2,800,000 | 33.00% |
| Murdeshwar v. Searchmedia Holdings Ltd., No. 11-cv-20549 ECF No. 103 (S.D.Fla. Apr. 25, 2012) | $2,750,000 | 33.33% |
| Kemper v. Rent-A-Center, Inc., No. 00-cv-00435 No. 15 (N.D. Fla. Dec. 28, 2000) | $2,675,000 | 33.33% |
| Wood v. J Choo USA, Inc., No. 15-cv-81487, 2017 WL 4304800, at *5 (S.D. Fla. May 9, 2017) | $2,500,000 | 33.30% |
| Waters v. Cook's Pest Control, Inc., No. 07-cv-00394, 2012 WL 2923542, at *16 (N.D. Ala. July 17, 2012) | $2,500,000 | 35.00% |
| Mims v. Wells Fargo Home Mortg., Case No. 07-CV-14-WLS, 2015 WL 13449658 at *2 (M.D. Ga. Jan. 28, 2015) | $2,400,000 | 33.00% |
| Zucco Partners, LLC v. Findwhat.com et al, No. 05-cv-00201, ECF No. 247 (M.D.Fla.  Sept. 15, 2014) | $2,400,000 | 33.33% |
| In re Harbinger Corp. Sec. Litig., Civil Action No. 99-CV-02353, 2001 WL 36522796  (N.D. Ga. Oct. 18, 2001) | $2,250,000 | 33.33% |
| In re DS Healthcare Group, Inc. Securities Litigation, No. 16-cv-60661, ECF No. 81 (S.D.Fla. Sept. 29, 2017) | $2,100,000 | 33.33% |
| Atkinson v. Wal-Mart Stores, Inc., No. 08-cv-00691, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) | $2,020,000 | 33.30% |
| Schultz v. Applica,  Inc., No. 06-cv-60149, ECF No. 51 (S.D.Fla. Jan. 14, 2008) | $2,000,000 | 33.00% |
| Tran v. ERBA Diagnostics Inc et al., No. 15-cv-24440, ECF No. 85 (S.D.Fla. Feb. 28, 2018) | $1,215,000 | 33.33% |
| Dear v. Q Club Hotel, LLC, No. 15-cv-60474, 2018 WL 1830793, at *3 (S.D. Fla. Mar. 14, | $1,200,000 | 33.30% |
| White v. Granite Telecommunications, LLC, No. 17-cv-03243, ECF No. 71 (N.D.Ga. Sept. 13, 2018) | $1,107,000 | 33.33% |
| Morefield v. NoteWorld, LLC, No. 10-cv-00117, 2012 WL 1355573, at *5 (S.D. Ga. Apr. 18, 2012) | $1,040,000 | 33.30% |

# EXHIBIT 12

| Select Second Circuit Cases with 33% or Higher Fee Awards | | |
| --- | --- | --- |
| **Case** | **Settlement Amount** | **Fee Award** |
| In re Initial Pub. Offering Securities Litig., 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) | $586,000,000 | 33⅓% |
| In re U.S. Foodservice, Inc. Pricing Litig, No. 07-md-01894, 2014 WL 12862264, at *3 (D.Conn. Dec. 9, 2014) | $297,000,000 | 33⅓% |
| Qsberg v. Foot Locker, Inc., No. 07-cv-1358, ECF No. 423 (S.D.N.Y. June 8, 2018) | $288,479,943 | 33.0% |
| In re Buspirone Antitrust Litig., No. 01-md-01413, ECF No. 171 (S.D.N.Y. Nov. 21, 2003) | $220,000,000 | 33.3% |
| Pearlstein v. BlackBerry Limited, No. 13-cv-07060, 2022 WL 4554858, at *9-*11 (S.D.N.Y. Sept 29, 2022) | $165,000,000 | 33⅓% |
| Haddock v. Nationwide Life Ins. Co., No. 01-cv-01552, ECF Nos. 598-1, 601 (D. Conn. Apr. 9, 2015) | $140,000,000 | 35.0% |
| Landmen Partners, Inc. v. The Blackstone Grp., L.P., No. 08-cv-03601, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) | $85,000,000 | 33.33% |
| In re J.P. Morgan Stable Value Fund ERISA Litig., No. 12-cv-02548, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) | $75,000,000 | 33⅓% |
| In re Nat. Gas Commodities Litig., No. 03-cv-06186 (VM), ECF No. 445  (S.D.N.Y. May 26, 2006) | $72,762,500 | 33⅓% |
| In re JP Morgan Precious Metals Spoofing Litig., No. 18-cv-10356, ECF No. 114 (S.D.N.Y. July 7, 2022) | $60,000,000 | 33.33% |
| Nichols v. Noom, Inc., No. 20-cv-03677, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) | $56,000,000 | 33.33% |
| In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig., No. 18-md-02819, 2020 WL 6193857, at *5-6 (E.D.N.Y. Oct. 7, 2020) | $51,025,000 | 33⅓% |
| In re Chicago Bridge & Iron Co. N.V. Sec. Litig., No. 17-cv-01580, 2022 WL 3220783, at *1 (S.D.N.Y Aug. 5, 2022) | $44,000,000 | 33⅓% |
| In re Crazy Eddie Sec. Litig., 824 F.Supp. 320, 326 (E.D.N.Y. 1993) | $42,000,000 | 33.8% |
| In re Medical X-Ray Film Antitrust Litig., No. 93-cv-5904, 1998 WL 661515, at *7-8 (E.D.N.Y. Aug. 7, 1998) | $39,360,000 | 33⅓% |
| In re Marsh ERISA Litig., 265 F.R.D. 128, 149, at *9 (S.D.N.Y. 2010) | $35,000,000 | 33⅓% |
| In re Perrigo Company PLC Securities Litig., No. 19-cv-00070 (DLC), ECF No. 331 (S.D.N.Y. Feb. 18, 2022) | $31,900,000 | 33⅓% |
| In re Cnova N.V. Sec. Litig., No. 16-cv-00444, ECF No. 148 (S.D.N.Y. Mar. 20, 2018) | $28,500,000 | 33⅓% |
| In re Nat. Gas Commodities Litig., No. 03-cv-06186 (VM), ECF No. 507  (S.D.N.Y. Jun. 22, 2007) | $28,087,500 | 33⅓% |
| In re Facebook Inc. IPO Sec. and Deriv. Litig., No. 12-md-2389, 2015 WL 6971424 at *9 (S.D.N.Y. Nov. 9, 2015) | $26,500,000 | 33.0% |
| In re Apac Teleservs., Inc. Sec. Litig., No. 97-cv-9145, ECF No. 58 (S.D.N.Y. Dec. 12, 2001) | $21,000,000 | 33⅓% |
| In re NYSE Specialists Securities Litig., No. 03-cv-08264, ECF No. 403 (S.D.N.Y. June 10, 2013) | $18,500,000 | 41.1% |
| In re Deutsche Bank AG Sec. Litig., No. 09-cv-01714, 2020 WL 3162980 at *1 (S.D.N.Y. June 11, 2020) | $18,500,000 | 33⅓% |
| Wilson v. LSB Industries, Inc. et al., No. 15-cv-07614, 2019 WL 3542844 at *1 (S.D.N.Y. June 28, 2019) | $18,450,000 | 33⅓% |
| Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc., No. 18-cv-00299, ECF No. 230 (S.D.N.Y. Feb. 14, 2022) | $18,000,000 | 33.3% |
| In re Oxycontin Antitrust Litig, No. 04-md-01603, ECF No. 360 (S.D.N.Y. Jan. 25, 2011) | $16,000,000 | 33⅓% |
| Newman v. Caribiner Int'l Inc., No. 99-cv-2271, ECF No. 31 (S.D.N.Y. Oct. 25, 2001) | $15,000,000 | 33⅓% |
| In re Ubiquiti Networks Inc. Securities Litig., No. 18-cv-01620, ECF No. 49 (S.D.N.Y. Mar. 27, 2020) | $15,000,000 | 33⅓% |
| City of Providence v. Aeropostale, Inc., No. 11-cv-7132, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) | $15,000,000 | 33.0% |
| Merryman v. Citigroup, Inc., No. 15-cv-09185, ECF No. 163 (S.D.N.Y. 2019 July 15, 2019) | $14,750,000 | 33⅓% |
| Gruber v. Gilbertson, No. 16-cv-09727, 2022 WL 17828609, at *19 (S.D.N.Y. Dec. 21, 2022) | $13,950,000 | 33⅓% |
| Nguyen v. NewLink Genetics Corporation, No. 16-cv-03545, ECF No. 132 (S.D.N.Y. Sept. 22, 2021) | $13,500,000 | 33.3% |
| Martinek v. AmTrust Financial Services, Inc., No. 19-cv-08030, ECF No. 112 (S.D.N.Y. Nov. 16, 2022) | $13,000,000 | 33.3% |
| In re Giant Interactive Group, Inc. Securities Litig., 279 F.R.D. 151, 166 (S.D.N.Y. 2011) | $13,000,000 | 33.0% |
| McIntire v. China Media Express Holdings, Inc., No. 11-cv-00804, ECF No. 263 (S.D.N.Y. Sept. 18, 2015) | $12,000,000 | 33.3% |
| Maley, et al v. Del Global Technology, et al., No. 00-cv-08495, ECF No. 50 (S.D.N.Y. Jan. 29, 2000) | $11,500,000 | 33⅓% |
| Gould v. Winstar Communications, Inc., No. 01-cv-03014, ECF No. 363 (S.D.N.Y. Nov. 13, 2013) | $10,000,000 | 33.3% |
| Levin v. Resource Capital Corporation, No. 15-cv-07081, ECF No. 95 (S.D.N.Y. Aug. 3, 2018) | $9,500,000 | 33.0% |
| Machniewicz v. Uxin Limited, No. 19-cv-00822, ECF No. 61 (E.D.N.Y. Sept. 8, 2021) | $9,500,000 | 33.3% |
| Khait v. Whirlpool Corp., No. 06-cv-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) | $9,250,000 | 33.0% |
| Ferraiori v. Triterras, Inc. , No. 20-cv-10795, ECF No. 82 (S.D.N.Y. Sept 8, 2022) | $9,000,000 | 33.3% |
| Hayes v. Harmony Gold Mining Co., No 08-cv-03653, 2011 WL 6019219 at *1 (S.D.N.Y. Dec 2, 2011) | $9,000,000 | 33.3% |
| Beach v. JPMorgan Chase Bank, No. 17-cv-00563-JMF, ECF No. 232 at 2 (S.D.N.Y. Oct. 7, 2020) | $9,000,000 | 33.0% |
| In re PPDAI Group Inc. Sec. Litig., No. 18-cv-06716, 2022 WL 198491 at *16 (E.D.N.Y. Jan 21, 2022) | $9,000,000 | 33⅓% |
| In re Qudian Inc. Sec. Litig., No. 17-cv-09741, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) | $8,500,000 | 33⅓% |
| Skiadas v. Acer Therapeutics Inc. et al., No. 19-cv-06137 (GHW), ECF No. 136 (S.D.N.Y. Jan. 7, 2022) | $8,350,000 | 33⅓% |
| In re Van der Moolen Holding  N.V. Sec. Litig., No. 03-cv-08284, ECF No. 45 (S.D.N.Y. Dec. 6, 2006) | $8,000,000 | 33⅓% |
| Becher v. Long Island Lighting Co., 64 F.Supp.2d 174, 182, at  *3 (E.D.N.Y. 1999) | $7,750,000 | 33⅓% |
| Willix v. Healthfirst, Inc., No. 07-cv-01143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) | $7,675,000 | 33.0% |
| In re Fuqi Int'l Inc. Sec. Litig., No. 10-cv-02515, 2016 WL 736649, at *2 (S.D.N.Y. Feb. 19, 2016) | $7,500,000 | 33.3% |
| Lea v. TAL Education Group, No. 18-cv-05480, 2021 WL 5578665 at *11 (S.D.N.Y Nov 30, 2021) | $7,500,000 | 33⅓% |
| Guevoura Fund Ltd. v. Sillerman, No. 15-cv-07192, 2019 WL 6889901, at *1 (S.D.N.Y. Dec. 18, 2019) | $7,500,000 | 33⅓% |
| Panther Partners Inc. v. Jianpu Technology Inc. , No. 18-cv-09848, ECF No. 130 (S.D.N.Y. May 12, 2022) | $7,500,000 | 33.3% |
| In re Sundial Growers Inc. Sec. Litig.,No. 19-cv-08913, ECF No. 117 (S.D.N.Y. Oct. 6, 2022) | $7,000,000 | 33.3% |
| Zeltser v. Merrill Lynch & Co., Inc., No. 13-cv-01531, 2014 WL 4816134, at *11 (S.D.N.Y. Sept. 23, 2014) | $6,900,000 | 33⅓% |
| In re Austin Capital Management, Ltd., Securities & ERISA Litig., No. 09-md-02075, ECF No. 103 (S.D.N.Y. Oct. 2, 2014) | $6,850,000 | 33⅓% |
| Cohen v. Apache Corp., No. 89-cv-00076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) | $6,750,000 | 33⅓% |
| Guevoura Fund Ltd. v. Robert F.X. Sillerman, No. 15-cv-07192, 2019 WL 6889901, at *1 (S.D.N.Y. Dec. 18, 2019) | $6,750,000 | 33⅓% |
| Fogarazzo v. Lehman Bros. Inc., No. 03-cv-5194, 2011 WL 671745, *4 (S.D.N.Y. Feb. 23, 2011) | $6,750,000 | 33.3% |
| In re Global Brokerage, Inc. Sec. Litig., No. 17-cv-00916, ECF No. 374 (S.D.N.Y. July 7, 2023) | $6,500,000 | 33.3% |
| In re Patriot National, Inc. Securities Litig., No. 17-cv-01866, 2019 WL 5882171, at *1-2 (S.D.N.Y. Nov. 6, 2019) | $6,500,000 | 33.0% |
| In re Ability, Inc. Securities Litigation, No. 16-cv-03893, ECF No. 107 (S.D.N.Y. Sept. 17, 2018) | $6,250,000 | 33.0% |
| Mo-Kan Iron Workers Pension Fund v. Teligent, Inc. ,No. 19-cv-03354, ECF No. 102 (S.D.N.Y. Dec. 1, 2021) | $6,000,000 | 33.3% |
| Clark v. Ecolab Inc., No. 07-cv-08623, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) | $6,000,000 | 33.0% |
| Piazza v. Nevsun Resources, Ltd., No. 12-cv-01845, ECF No. 55 (S.D.N.Y. Feb 13, 2015) | $5,995,000 | 33⅓% |

| Case | Settlement Amount | Fee Award |
|---|---|---|
| Murphy III v. JBS S.A., No. 17-cv-03084, ECF No. 57 (E.D.N.Y. July 22, 2019) | $5,866,600 | 33.5% |
| Karic v. Major Automotive Companies, Inc., No. 09-cv-05708, 2016 WL 1745037, at *12 (E.D.N.Y. Apr. 27, 2016) | $5,500,000 | 33.3% |
| Li v. Duoyuan Global Water, Inc., No. 10-cv-07233, ECF No. 205 (S.D.N.Y. Feb. 5, 2014) | $5,150,000 | 33.3% |
| Bensley v. Falconstor Software, Inc., No. 10-cv-04572, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) | $5,000,000 | 33⅓% |
| Marchand v. Momo Inc. et al., No. 19-cv-04433, ECF No. 80 (S.D.N.Y. Aug. 4, 2021) | $5,000,000 | 33⅓% |
| In re Stellantis N.V. Sec. Litig., No. 19-cv-06770, ECF No. 70 (E.D.N.Y. Feb. 23, 2022) | $5,000,000 | 33.3% |
| In re Ideanomics, Inc. Sec. Litig., No. 19-cv-06741, ECF No. 132 (S.D.N.Y. Jan. 25, 2022) | $5,000,000 | 33.3% |
| Beckman v. Keybank, N.A., 293 F.R.D. 467, 482, at *6-7 (S.D.N.Y. 2013) | $4,900,000 | 33⅓% |
| In re Akazoo S.A. Sec. Litig., No. 20-cv-01900 2021, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) | $4,900,000 | 33⅓% |
| In re DDAVP Indirect Purchaser Antitrust Litig., No. 05-cv-02237,  2013 WL 10114257, at *3 (S.D.N.Y. Dec. 18, 2013) | $4,750,000 | 33.0% |
| Toure v. Amerigroup Corp. et al., No. 10-cv-05391, 2012 WL 3240461, at *7 (E.D.N.Y. Aug. 6, 2012) | $4,450,000 | 33⅓% |
| Frank Satty, et al. v. NetEase.com, No. 01-cv-09296, ECF No. 20 (S.D.N.Y. May 30, 2003) | $4,350,000 | 33.3% |
| Perry et al v. Duoyuan Printing, Inc. et al., No. 10-cv-07235, ECF No. 185 (S.D.N.Y. Nov 27, 2013) | $4,300,000 | 33⅓% |
| Leach et al v. NBC Universal Television Group et al., No. 15-cv-07206, ECF No. 329 (S.D.N.Y. Aug 24, 2017) | $4,269,867 | 33⅓% |
| In re iDreamSky Technology Limited Securities Litig., No. 15-cv-02514, 2018 WL 8950640, at *4 (S.D.N.Y. April 6, 2018) | $4,150,000 | 33⅓% |
| In re Hi-Crush Partners L.P. Sec. Litig., No. 12-cv-08557, 2014 WL 7323417, at *19 (S.D.N.Y. Dec. 19, 2014) | $3,800,000 | 33⅓% |
| Solomon v. Sprint Corporation, No. 19-cv-05272, ECF No. 98 (S.D.N.Y. Aug. 14, 2023) | $3,750,000 | 33.3% |
| Wilchfort et al v. Knight et al., No. 17-cv-01046, ECF No. 97 (E.D.N.Y. Dec. 4, 2019) | $3,750,000 | 33⅓% |
| Too v. Rockwell Medical, Inc., No. 18-cv-04253, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) | $3,700,000 | 33⅓% |
| Gormley v. Magijack Vocaltec Ltd. et al., No. 16-cv-01869, ECF No. 70 (S.D.N.Y. Jan. 19, 2018) | $3,650,000 | 33.0% |
| In re L & L Energy, Inc., No. 13-cv-06704, ECF No. 86 (S.D.N.Y. Aug 3, 2015) | $3,500,000 | 33⅓% |
| Sanders v. The CJS Solutions Grp., LLC, No. 17-cv-3809, ECF No. 106 (S.D.N.Y June 22, 2018) | $3,240,000 | 33⅓% |
| In re Loop Industries, Inc. Securities Litigation, No. 20-cv-09031, ECF No. 59 (S.D.N.Y. Jan 5, 2023) | $3,100,000 | 33⅓% |
| In re Ability, Inc. Securities Litig., No. 16-cv-03893, ECF No. 107 (S.D.N.Y. Sept. 17, 2018) | $3,000,000 | 33.3% |
| Enriquez v. Nabriva Therapeutics plc, No. 19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021) | $3,000,000 | 33.3% |
| Stefaniak v. HSBC Bank USA, N.A., No. 05-cv-07208, 2008 WL 7630102 at *10 (W.D.N.Y. June 28, 2008) | $2,900,000 | 33.0% |
| Gauquie v. Albany Molecular Research, Inc., No. 14-cv-06637, ECF No. 72 (E.D.N.Y. Oct. 13, 2017) | $2,868,000 | 33.3% |
| Vaccaro v. New Source Energy Partners Lp., No. 15-cv-8954, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) | $2,850,000 | 33⅓% |
| In re Blech Sec. Litig., No. 94-cv-07696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) | $2,795,000 | 33⅓% |
| Bensinger v. Denbury Resources Inc., No. 10-cv-01917, ECF No. 146 (E.D.N.Y. July 20, 2015) | $2,750,000 | 33⅓% |
| In re Namaste Technologies Inc. Securities Litig., No. 18-cv-10830, ECF No. 76 (S.D.N.Y. Mar. 11, 2020) | $2,750,000 | 33.3% |
| In re Akari Therapeutics PLC Securities Litigation, No. 17-cv-03577, ECF No. 106 (S.D.N.Y. Nov. 28, 2018) | $2,700,000 | 33.3% |
| In re Tangoe, Inc. Securities Litig., No. 17-cv-00146, ECF No. 78 (D. Conn. Apr. 4, 2018) | $2,550,000 | 33.3% |
| Mikhlin v. Oasmia Pharmaceutical AB et al., No. 19-cv-04349, ECF No. 45 (E.D.N.Y.) | $2,350,000 | 33⅓% |
| In re Fuwei Films Sec. Litig., No. 07-cv-09416, ECF No. 86 (S.D.N.Y. Apr. 27, 2011) | $2,150,000 | 33.0% |
| In re Revolution Lighting Technologies, Inc. Sec. Litig., No. 19-cv-00980, ECF No. 86 (S.D.N.Y. Aug. 11, 2020) | $2,083,333 | 33.3% |
| Kristal v. Mesoblast Limited, No. 20-cv-08430, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) | $2,000,000 | 33⅓% |
| Menkes v. Stolt-Nielsen S.A., No. 03-cv-00409, ECF No. 142 (D.Conn. Jan. 25, 2011) | $2,000,000 | 33.3% |
| Pilgaonkar v. Kitov Pharmaceuticals Holdings Ltd., No. 17-cv-00917, ECF No. 86 (S.D.N.Y. Mar. 22, 2019) | $2,000,000 | 33.3% |
| Levine v. Atricure, Inc. et al., No. 06-cv-14324, ECF No. 85 (S.D.N.Y. May 27, 2011) | $2,000,000 | 33.3% |
| Perry v. Duoyuan Printing, Inc., No. 10-cv-07235, ECF No. 218 (S.D.N.Y. June 16, 2015) | $1,893,750 | 33.3% |
| Lin v. Liberty Health Sciences Inc., No. 19-cv-00161, ECF No. 100 (S.D.N.Y. Nov. 16, 2021) | $1,800,000 | 33.3% |
| In re Noah Education Holdings Ltd. Securities Litigation, No. 08-cv-09203, ECF No. 80 (S.D.N.Y. May 27, 2011) | $1,750,000 | 33⅓% |
| Calfo and Demsar v. Messina, Sr., et al., No. 15-cv-04010, ECF No. 184 (S.D.N.Y. Oct. 30, 2017) | $1,650,000 | 33.3% |
| In re Altair Nanotechnologies Securities Litigation, No. 14-cv-07828, ECF No. 53 (S.D.N.Y. June 15, 2016) | $1,500,000 | 33.0% |
| In re FAB Universal Corporation Securities Litigation, No. 13-cv-08216, ECF No. 74 (S.D.N.Y. Jan. 28, 2016) | $1,500,000 | 33.0% |
| Strougo v. Bassini, No. 258 F.Supp.2d 254, 262, at *4-5 (S.D.N.Y. 2003) | $1,500,000 | 33⅓% |
| In re Akazoo S.A. Sec. Litig., No. 20-cv-01900,  2022 WL 14915812 at *4 (E.D.N.Y. Oct. 07, 2022) | $1,470,000 | 33⅓% |
| Tate v. Aterian, Inc., No. 21-cv-04323, ECF No. 99 (S.D.N.Y. Sept. 12, 2022) | $1,300,000 | 33.3% |
| Tiro v. Public House Investments, LLC, No. 11-cv-07679, ECF No. 113 (S.D.N.Y. Sept. 10, 2013) | $1,300,000 | 33⅓% |
| Grice v. Pepsi Beverages Company et al., No. 17-cv-08853, ECF No. 66 (S.D.N.Y Jan. 28, 2019) | $1,192,275 | 33⅓% |
| Henry et al v. Little Mint, Inc. et al., No. 12-cv-03996, ECF No. 71 (S.D.N.Y. May 23, 2014) | $1,162,500 | 33.3% |
| In re China Sunergy Company Limited, No. 07-cv-07895, ECF No. 66 (S.D.N.Y. May 12, 2011) | $1,050,000 | 33.3% |
| Springer v. Code Rebel Corp., No. 16-cv-03492, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) | $1,000,000 | 33.3% |

| Select Third Circuit Cases with $1M Settlements and 33% or Higher Fee Awards | | |
|---|---|---|
| **Case** | **Settlement Amount** | **Fee Award** |
| In re Tricor Direct Purchaser Antitrust Litig., No. 05-cv-00340, Dkt. No. 543 (D. Del. Apr. 23, 2009) | $250,000,000 | 33.33% |
| In re Flonase Antitrust Litig., 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) | $150,000,000 | 33.33% |
| In re: Tycom, Ltd. Sec. Litig., No. 03-cv-03540, ECF No. 150 (D.N.J. Aug. 25, 2010) | $79,000,000 | 33.33% |
| Howard v. Arconic, Inc., No. 17-cv-01057, ECF No. 253 (W.D.Pa. Aug. 9, 2023) | $74,000,000 | 33.33% |
| Castro v. Sanofi Pasteur Inc., No. 11-cv-07178, 2017 WL 4776626, at *10 (D.N.J. Oct. 20, 2017) | $61,500,000 | 33.33% |
| In re General Instruments Sec. Litig., 209 F. Supp. 2d 423 (E.D. Pa. 2001) | $48,000,000 | 33.33% |
| In re Merck & Co., Inc., Vytorin ERISA Litig., No. 08-cv-00285, 2010 WL 547613, at *13–14 (D.N.J. Feb. 9, 2010) | $41,500,000 | 33.33% |
| Vrakas v. United States Steel Corporation, No.17-cv-00579, ECF No. 358 (W.D.Pa. Mar. 21, 2023) | $40,000,000 | 33.33% |
| In re Automotive Refinishing Paint Antitrust Litig., 2008 WL 63269, at *1 (E.D. Pa. Jan. 3, 2008) | $39,000,000 | 33.33% |
| Bodnar v. Bank of America, N.A., 2016 WL 4582084, at *5 (E.D. Pa. Aug. 4, 2016) | $27,500,000 | 33.00% |
| In re Heckmann Corporation Sec. Litig., No.10-cv-00378, ECF No. 308 (D. Del. June 26, 2014) | $27,000,000 | 33.33% |
| Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc., No.94-cv-02348, ECF No. 72 (D.N.J. Mar. 5, 1998) | $22,000,000 | 33.00% |
| Lincoln Adventures, LLC v. Certain Underwriters at Lloyd's London, 2019 WL 13159891 (D.N.J. Oct. 3, 2019) | $21,950,000 | 33.33% |
| In re Virgin Mobile USA IPO Litigation, No. 07-cv-05619, ECF No. 146 (D.N.J. Dec. 9, 2010) | $19,500,000 | 33.33% |
| Larson v. Sprint Nextel Corp., No. 07-cv-05325, 2010 WL 234934 (D.N.J. Jan. 15, 2010) | $18,500,000 | 33.33% |
| Hall v. AT&T Mobility LLC, No. 07-cv-05325, 2010 WL 405347 (D.N.J. Oct. 13, 2010) | $18,000,000 | 33.33% |
| Heed v. Universal Health Services Inc., No.17-cv-02817, ECF No. 90 (E.D. Pa. July 21, 2021) | $17,500,000 | 33.33% |
| Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services, Inc., No. 12-cv-00993, ECF No. 309 (M.D. Pa. May 19, 2023) | $15,000,000 | 35.00% |
| Mylan Pharmaceuticals, Inc. v. Warner Chilcot Public Limited Company, No. 12-cv-03824, 2014 WL 12778314, at *7 (E.D. Pa. Sept. 15, 2014) | $15,000,000 | 33.33% |
| In re Horsehead Holding Corporation Sec. Litig., No.16-cv-00292, 2021 WL 2309689, at *3 (D. Del. June 4, 2021) | $14,750,000 | 33.33% |
| Milliron v. T–Mobile USA, Inc., No. 08-cv-04149, 2009 WL 3345762, at *14 (D.N.J. Sept. 10, 2009) | $13,500,000 | 33.33% |
| In re Toronto-Dominion Bank Sec. Litig., No.17-cv-01665, ECF No. 129 (D.N.J. Oct 4, 2019) | $13,250,000 | 33.30% |
| Fernandez v. Knight Capital Group, Inc., No.12-cv-06760, 2015 WL 13901241, at *3 (D.N.J. July 6, 2015) | $13,000,000 | 33.33% |
| In re Insurance Brokerage Antitrust Litigation, No. 04-cv-05184, 297 F.R.D. 136 at *7 (D.N.J. Aug. 1, 2023) | $10,500,000 | 33.00% |
| In re Viropharma Sec. Litig., No. 02-cv-01627, ECF No. 87 (E.D. Pa. Nov. 16, 2004) | $9,000,000 | 33.33% |
| Ahrendsen v. Prudent Fiduciary Services LLC, No. 21-cv-02157, 2023 WL 4139151 at *8 (E.D. Pa. June 22, 2023) | $8,700,000 | 33.33% |
| Checchia v. Bank of America, N.A., No. 21-cv-03585, 2023 WL 6164406, at *10 (E.D. Pa. Sept. 21, 2023) | $8,000,000 | 33.33% |
| In re Navient Corporation Sec. Litig., No.17-cv-08373, ECF No. 139 (D.N.J. Apr. 14, 2022) | $7,500,000 | 33.33% |
| Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) | $7,300,000 | 33.33% |
| Vitiello v. Bed Bath & Beyond Inc., No. 20-cv-04240, ECF No. 90 (D.N.J. June 3, 2022) | $7,000,000 | 33.30% |
| In re Corel Corp. Sec. Litig., 293 F. Supp. 2d 484 at 495-98 (E.D. Pa. Oct. 28, 2003) | $7,000,000 | 33.33% |
| In re Ravisent Technologies, Inc. Sec. Litig., No. 00-cv-01014, 2005 WL 906361, at *10 (E.D. Pa. April 18, 2005) | $7,000,000 | 33.33% |
| Stevens v. SEI Investments Company, No. 18-cv-04205, 2020 WL 996418, at *15 (E.D. Pa. Feb. 28, 2020) | $6,800,000 | 33.33% |
| Aharoni v. Enzymotec Ltd., No. 14-cv-05556, ECF No. 87 (D.N.J. Jan. 24, 2018) | $6,500,000 | 33.33% |
| Li v. Aeterna Zentaris, Inc., No. 14-cv-07081, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) | $6,500,000 | 33.33% |
| McIntyre v. RealPage, Inc., No. 18-cv-03934, 2023 WL 2643201, at *2 (E.D. Pa. Mar. 24, 2023) | $6,500,000 | 33.33% |
| Carmack v. Amaya, Inc., No. 16-cv-01884, ECF No. 153 (D.N.J. Dec. 21, 2018) | $5,750,000 | 33.33% |
| Beltran v. SOS Limited, No. 21-cv-07454, 2023 WL 316294 (D.N.J. Jan. 19, 2023) | $5,000,000 | 33.33% |
| In re Safety Components, Inc. Sec. Litig., 166 F. Supp. 2d 72, 101 (D.N.J. 2001) | $4,500,000 | 33.33% |
| In re Greenwich Pharm. Sec. Litig., No. 92-03071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) | $4,375,000 | 33.33% |
| Serr v. The Medicines Company, No. 14-cv-01149, ECF No. 73 (D.N.J. June 24, 2016) | $4,250,000 | 33.00% |
| P. Van Hove BVBA v. Universal Travel Group, No.11-cv-02164, 2017 WL 2734714 (D.N.J. June 30, 2017) | $4,075,000 | 33.33% |
| De Vito v. Liquid Holdings Group, Inc., No. 15-cv-06969, ECF No. 283 (D.N.J. Jan. 10, 2020) | $4,062,500 | 33.00% |
| Zynerba Pharmaceuticals, Inc., No. 19-cv-04959, ECF No. 51 (E.D. Pa. Sept. 16, 2021) | $4,000,000 | 33.33% |
| Fergus v. Immunomedics, Inc., No. 16-cv-03335, ECF No. 127 (D.N.J. Jan. 19, 2023) | $4,000,000 | 33.33% |
| Underland v. Alter, No. 10-cv-03621, ECF No. 220 (E.D. Pa. Sept. 8, 2014) | $3,550,000 | 33.30% |
| Chan v. New Oriental Education, No. 16-cv-09279, ECF No. 94 (D.N.J. Oct. 20, 2021) | $3,150,000 | 33.00% |
| Matsukawa co., LLC v. Braskem S.A., No. 20-cv-11366, ECF No. 74 (D.N.J. May 5, 2023) | $3,000,000 | 33.33% |
| Elkin v. Walter Investment Management Corp., No. 17-cv-02025, ECF No. 61 (E.D. Pa. Dec. 18, 2018) | $2,950,000 | 33.33% |
| In re Innocoll Holdings Public Ltd. Co. Sec. Litig., No. 17-cv-00341, 2022 WL 16533571, at *11 (E.D. Pa. Oct. 28, 2022) | $2,755,000 | 33.33% |
| Graham v. Olympus Corporation, No. 11-cv-07103, ECF No. 102 (E.D. Pa. May 13, 2014) | $2,603,500 | 33.33% |

| Case | Settlement Amount | Fee Award |
|---|---|---|
| Brown v. Esmor Correctional Servs., Inc., 2005 WL 1917869, at *14 (D.N.J. Aug. 10, 2005) | $2,500,000 | 33.33% |
| Faulkner v. Akers Biosciences, Inc., No. 18-cv-10521, ECF No. 52 (D.N.J. Dec. 23, 2019) | $2,250,000 | 33.33% |
| Bell v. Kanzhun Limited, No. 21-cv-13543, ECF No. 53 (D.N.J. Apr. 5, 2023) | $2,250,000 | 33.33% |
| In re DVI, Inc. Sec. Litig., No. 03-cv-05336, ECF No. 1006 (E.D. Pa. June 24, 2015) | $2,200,000 | 37.50% |
| Dartell V. Tibet Pharmaceuticals, Inc., No 14-cv-03620, 2017 WL 2815073, at *10 (D.N.J. June 29, 2017) | $2,075,000 | 33.33% |
| P. Van Hove BVBA v. Universal Travel Group, Inc., No. 11-cv-02164, 2017 WL 2734714 (D.N.J. June 26, 2017) | $2,075,000 | 33.33% |
| Van Dorp v. Indivior PLC, No. 19-cv-10792, ECF No. 57 (D.N.J. Jan. 6, 2022) | $2,000,000 | 33.33% |
| In re OpNext, Inc. Sec. Litig., No. 08-cv-00920, ECF No. 104 (D.N.J. Jan. 6, 2010) | $2,000,000 | 33.33% |
| Andavarapua v. iBio, Inc., No. 14-cv-01343, ECF No. 69 (D. Del. Apr. 21, 2016) | $1,875,000 | 33.33% |
| He v. China Zenix Auto International Limited, No. 18-cv-15530, ECF No. 61 (D.N.J. Oct. 8, 2021) | $1,800,000 | 33.33% |
| In re Galena Biopharma, Inc. Sec. Litig., No. 17-cv-00929, ECF No. 137 (D.N.J. Feb. 24, 2022) | $1,600,000 | 33.00% |
| Shapiro v. Alliance MMA, Inc. , No. 17-cv-02583, 2018 WL 10050181, at *1 (D.N.J. Oct. 15, 2018) | $1,550,000 | 33.33% |
| Ratz v. PhotoMedex, Inc., No. 13-cv-06808, ECF No. 39 (E.D. Pa. Aug. 11, 2015) | $1,500,000 | 33.00% |
| Sun v. Telestone Technologies Corp., No. 15-cv-00703, ECF No. 77 (D.N.J. Mar. 6, 2018) | $1,250,000 | 33.33% |
| Anderson v. PolyMedix, Inc., No. 12-cv-03721, ECF No. 65 (E.D. Pa.  Apr. 30, 2015) | $1,150,000 | 33.33% |
| In re Interpool, Inc. Sec. Litig., No. 04-cv-00321, ECF No. 58 (D.N.J. Aug. 29, 2006) | $1,000,000 | 33.33% |

| Select Fifth Circuit Cases Awarding Attorneys' Fee Awards of 33% or Above | | |
|---|---|---|
| **Case** | **Settlement Amount** | **Fee Award** |
| In re Shell Oil Refinery, No. 88-cv-01935, 155 F.R.D. 552, 575 (E.D. La. Oct. 20, 1993) | $170,000,000 | 33⅓% |
| In re Combustion, Inc., No. 94-mdl-04000, 968 F. Supp. at 1136, 1142  (W.D. La. June 4, 1997) | $127,396,000 | 36.00% |
| Erica P. John Fund, Inc. v. Halliburton Company, No. 02-cv-01152, 2018 WL 1942227 (N.D. Tex. Apr. 25 2018) | $100,000,000 | 33.33% |
| Sims v. Shearson Lehman Bros., No. 90-cv-00252, 1993 WL 646022, at *3 (N.D. Tex. Nov. 29, 1993) | $30,000,000 | 33⅓% |
| In re Bayou Sorrel Class Action, No. 04-cv-01101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) | $28,000,000 | 36% |
| Burford v. Cargill, Inc., No. 05-cv-00283, ECF No 339, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) | $27,500,000 | 33⅓% |
| Prause v. Technip FMC plc, No. 17-cv-02368, ECF No. 215 (S.D. Tex. Mar. 23, 2021) | $19,500,000 | 33.00% |
| Rougier v. Applied Optoelectronics, Inc., No. 17-cv-02399, ECF No. 156 (S.D. Tex. Nov. 24, 2020) | $15,500,000 | 34.20% |
| Al's Pet care v. Woodforest National Bank, NA, 2019 WL 387409, at *4 (S.D. Tex. Jan 30, 2019) | $15,000,000 | 33.33% |
| In re Universal Access, Inc. Sec. Litig., No. 02-cv-00103, ECF No. 182 (E.D. Tex. May 16, 2005) | $11,000,000 | 33⅓% |
| Glock v. FTS Int'l, Inc., No. 20-cv-03928, 2021 WL 1422714, at *1-2 (S.D. Tex. Apr. 13, 2021) | $9,875,000 | 33.00% |
| Parmelee v. Santander Consumer USA Holdings Inc., No. 16-cv-00783, ECF No. 86 (N.D. Tex. June 3, 2019) | $9,500,000 | 33⅓% |
| Singh v. 21Vianet Group, Inc., No. 14-cv-00894, 2018 WL 6427721, at *2 (E.D. Tex. Dec. 7, 2018) | $9,000,000 | 33.3% |
| In re DrKoop.com, No. 00-cv-00427, ECF No. 48 (W.D. Tex. Nov. 14, 2001) | $8,550,000 | 33⅓% |
| Friedman v. Penson Worldwide, Inc., No. 11-cv-02098, ECF No. 100 (N.D. Tex. Aug. 23, 2013) | $6,500,000 | 33⅓% |
| In re Bristow Group Inc. Sec. Litig., No. 19-cv-00590, ECF No. 70 (S.D. Tex. Aug. 6, 2021) | $6,250,000 | 33.00% |
| In re: Pool Products Distr. Market Antitrust Litig., 12-md-02328, 2016 WL 235781 at *12 (E.D. La. Jan. 20, 2016) | $6,000,000 | 33⅓% |
| Williams v. Go Frac, LLC, No. 15-cv-00199, 2017 WL 3699350 at *2 (E.D. Tex. Apr. 26, 2017) | $5,782,848 | 35% |
| In re Forterra Inc. Sec. Litig., No. 18-cv-01957, 2020 WL 4727070, at *1 (N.D. Tex. Aug. 12, 2020) | $5,500,000 | 33⅓% |
| Miller v. Global Geophysical Services, Inc., No. 14-cv-00708, ECF No. 137 (S.D. Tex. Jan. 1, 2016) | $5,300,000 | 33⅓% |
| In re EZCORP, Inc. Sec. Litig., No. 15-cv-00608, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) | $4,875,000 | 33.00% |
| In re: CaptureRX Data Breach Litig., 21-cv-00523, ECF No. 49 (W.D. Tex. June 23, 2022) | $4,750,000 | 33⅓% |
| Carlton v. Cannon, No. 15-cv-00012, ECF No. 158 (S.D. Tex. June 7, 2017) | $4,500,000 | 33⅓% |
| Bodin v. SAExploration Holdings, Inc., No. 19-cv-03089, ECF No. 103 (S.D. Tex. Aug 12, 2021) | $4,500,000 | 33.33% |
| Jenkins v. Trustmark Nat'l Bank, No. 12-cv-00380, 300 F.R.D. at 307 (S.D. Miss. Mar 25, 2014) | $4,000,000 | 33⅓% |
| Kemp v. Unum Life Insurance Company of America, No. 14-cv-00944, 2015 WL 8526689, at *9 (E.D. La. Dec 11, 2015) | $3,738,402 | 33⅓% |
| Celeste v. Intrusion Inc., No. 21-cv-00307, ECF No. 74 (E.D. Tex. Dec 16, 2022) | $3,250,000 | 33⅓% |
| Fairway Med. Ctr., L.L.C. v. McGowan Enterprises, Inc., No. 16-cv-03782, 2018 WL 1479222, at *2 (E.D. La. Mar. 27, 2018) | $3,250,000 | 33⅓% |
| Fitzpatrick v. Uni-Pixel, Inc., No. 13-cv-01649, ECF No. 58 (S.D. Tex. Apr. 30, 2015) | $2,350,000 | 33⅓% |
| In re: RCI Hospitality Holdings, Inc. Sec. Litig., No. 19-cv-01841, ECF No. 81 (S.D. Tex. Aug 12, 2022) | $2,200,000 | 33⅓% |
| Vassallo v. Goodman Networks, Inc., No. 15-cv-00097, 2016 WL 6037847, at *4, *6 (E.D. Tex. Oct 14, 2016) | $2,000,000 | 39.78% |
| Branca v. First USA Paymentech, Inc., No. 97-cv-02507, ECF No. 59 (N.D. Tex. Jan. 4, 2001) | $2,000,000 | 33⅓% |
| Campton v. Ignite Rest. Grp., Inc., No. 12-cv-02196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015) | $1,800,000 | 33⅓% |
| Barfuss v. DGSE Co. Inc., No. 12-cv-03664, ECF No. 52 (N.D. Tex. Sept. 16, 2013) | $1,700,000 | 33⅓% |
| Faircloth v. Certified Fin. Inc., No. 99-cv-03097, 2001 WL 527489, at *9 (E.D. La. May 16, 2001) | $1,534,321 | 35.00% |
| Lee v. Active Power, Inc., No. 13-cv-00797, ECF No. 65 (W.D. Tex. May 15, 2015) | $1,500,000 | 33⅓% |
| In re CBD Energy Limited Sec. Litig., No. 15-cv-01668, ECF No. 147 (S.D. Tex. July 27, 2017) | $1,500,000 | 33⅓% |

| Select Sixth Circuit Cases with $3M Settlements and  33% or Higher Fee Awards | | |
|---|---|---|
| **Case** | **Settlement Amount** | **Fee Award** |
| In re Southeastern Milk Antitrust Litig., No. 08-md-1000, 2013 WL 2155387 (E.D.Tenn. May 17, 2013) | $158,600,000 | 33.33% |
| In re Southeastern Milk Antitrust Litig, No. 07-cv-00208, ECF No. 1897 (E.D.Tenn. July 11, 2012) | $145,000,000 | 33.33% |
| In re Skelaxin (Metaxalone) Antitrust Litig, No. 12-md-02343, ECF No. 747 (E.D.Tenn. June 30, 2014) | $73,000,000 | 33.33% |
| In re Community Health Sys., Inc. S'holder Derivative Litig., No. 11-cv-00489, ECF Nos. 272-1, 274 (M.D. Tenn. Jan 17, 2017) | $60,000,000 | 33.33% |
| Grae v. Corrections Corporation of America et al., No. 16-cv-02267, ECF No. 478 (M.D.Tenn Nov. 8, 2021) | $56,000,000 | 33.33% |
| Morse v. McWhorter, No. 97-cv-0370, ECF No. 310 (M.D.Tenn. Mar. 12, 2004) | $49,500,000 | 33.33% |
| Jackson County Employees Retirement System v. Ghosn et al., No. 18-cv-01368, ECF No. 267 (M.D. Tenn. Oct. 7, 2022) | $36,000,000 | 33.33% |
| Cosby v. Miller et al., No. 16-cv-00121, ECF No. 268 (E.D. Tenn. July 12, 2022) | $35,000,000 | 33.33% |
| In re Omnicare, Inc. Sec. Litig., No. 06-cv-00026, ECF No. 332 (E.D. Ky. June 27, 2019) | $20,000,000 | 33.33% |
| In re Prandin Direct Purchaser Antitrust Litigation, No. 10-cv-12141, ECF No. 68 (E.D. Mich. Jan. 20, 2015) | $19,000,000 | 33.33% |
| In re Reciprocal of America Sales Practice Litig. No. 4-md-01551, ECF No. 1004 (W.D.Tenn. May 28, 2015) | $15,000,000 | 33.33% |
| In re Sirrom Capital Corporation Sec. Litig., No. 98-cv-00643, ECF No. 92 (M.D.Tenn. Feb 8, 2000) | $15,000,000 | 33.33% |
| In re: Foundry Resins Antitrust Litigation, No. 04-md-1638, ECF No. 247 (S.D.Ohio  March 31, 2008) | $14,156,421 | 33.33% |
| Stein v. U.S. Xpress Enterprises, Inc., No. 19-cv-00098, ECF No. 228 (E.D. Tenn. June 5, 2023) | $13,000,000 | 33.33% |
| Burges et al. v. BancorpSouth, Inc. et al., No. 14-cv-01564, ECF No. 265 (M.D.Tenn. Sept 21, 2018) | $13,000,000 | 33.33% |
| In re Envoy Corporation Sec. Litig., No. 98-cv-0760, ECF No. 164 (M.D.Tenn. Dec 18, 2003) | $11,000,000 | 33.33% |
| Abadeer et al v. Tyson Foods Inc, No. 09-cv-00125, ECF No. 420 (M.D.Tenn. Oct. 17, 2014) | $7,750,000 | 33.33% |
| Bowers v. Windstream Kentucky East, LLC, No. 09-cv-00440, 2013 WL 593401, at *5 (W.D. Ky. Nov 1, 2013) | $7,500,000 | 33.33% |
| Martin v. Trott Law PC , No. 15-cv-12838, ECF No. 198 (E.D. Mich. Sept. 28, 2018) | $7,500,000 | 33.30% |
| Zaller v. Fred's, Inc., No. 19-cv-02415, ECF No. 105 (W.D. Tenn. July 6, 2022) | $7,250,000 | 33.33% |
| Struck et al v. PNC Bank N.A., No. 11-cv-00982, ECF No. 156 (S.D.Ohio May 14, 2014) | $7,000,000 | 33.00% |
| Knights v. Publix Super Markets, Inc., No. 14-cv-00720, ECF No. 69 (M.D.Tenn. Nov. 10, 2014) | $6,812,775 | 35.16% |
| Eshe Fund v. Fifth Third Bancorp, No. 08-cv-00421, ECF No. 234 (S.D.Ohio July 11, 2016) | $6,000,000 | 33.33% |
| Sandusky Wellness Center LLC et al v. Heel Inc et al, No. 12-cv-01470, ECF No. 95 (N.D.Ohio Apr. 25, 2014) | $6,000,000 | 33.33% |
| Greater Pennsylvania Carpenters Pension Fund v. Chemed Corp. et al., No. 12-cv-00028, ECF No. 66 (S.D. Ohio July 15, 2014) | $6,000,000 | 33.00% |
| BleachTech LLC v. United Parcel Service, Inc., No. 14-cv-12719, 2022 WL 2900796, at *12 (E.D. Mich. July 20, 2022) | $5,700,000 | 33.33% |
| Nolan v. Detroit Edison Company, No. 18-cv-13359, ECF No. 89 (E.D. Mich. Oct. 4, 2022) | $5,500,000 | 33.33% |
| In re Provectus Biopharmaceuticals, Inc. Sec. Litig., 2016 WL 7735229, at *3 (E.D. Tenn. Dec. 12, 2016) | $3,500,000 | 33.30% |
| Davidson v. Henkel Corporation et al, No. 12-cv-14103, ECF No. 157 (E.D.Mich. Dec. 8, 2015) | $3,350,000 | 38.39% |
| Adams v. Standard Knitting Mills, Inc. , No. 72-cv-08052, 1978 WL 1074, at *3 (E.D. Tenn. Jan. 6, 1978) | $3,343,385 | 34.70% |
| North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc., No. 11-cv-00595, ECF No. 143 (M.D.Tenn. May 12, 2014) | $3,250,000 | 33.30% |
| Carroll v. Guardian Home Care Holdings, Inc. et al, No. 14-cv-01722, ECF No. 68 (M.D.Tenn. Aug. 31, 2015) | $3,000,000 | 33.33% |
| In re Caraco Pharmaceutical Laboratories, Ltd. Sec. Litig., No. 09-cv-12830, ECF No. (E.D. Mich. June 26, 2013) | $2,975,000 | 33.00% |
| Castillo v. Morales, Inc., No. 12-cv-00650, ECF No. 123 (E.D.Ohio Dec. 22, 2015) | $2,200,000 | 33.33% |
| Capannari et al v. Galemmo et al., No. 13-cv-00883, ECF No. 373 (S.D. Ohio Aug. 16, 2018) | $1,805,085 | 33.11% |
| Oatman v. InfoCision, Inc. et al, No. 12-cv-02770, ECF No. 90 (N.D.Ohio March 28, 2014) | $1,700,000 | 33.33% |
| Worthington v. CDW Corp., No. 03-cv-00649, 2006 WL 8411650, at *4 (S.D. Ohio May 22, 2006) | $1,450,000 | 33.33% |
| Daoust v. Maru Restaurant, LLC , No. 17-cv-13879, 2019 WL 2866490, at *4 (E.D. Mich. July 3, 2019) | $1,450,000 | 33.33% |
| Dallas v. Alcatel-Lucent USA, Inc., No. 09-cv-14596, 2013 WL 2197624, at *14 (E.D. Mich. May 20, 2013) | $1,400,000 | 33.00% |
| Barnes v. Winking Lizard, Inc., No. 18-cv-00952, 2019 WL 1614822, at *7 (N.D. Ohio Mar. 26, 2019) | $1,125,000 | 33.33% |

| Select Seventh Circuit Cases Awarding Attorneys' Fees of 33% or Above | | |
|---|---|---|
| Case | Settlement Amount | Fee Award |
| In re Broiler Chicken Antitrust Litig., No. 16-cv-08637, 2021 WL 5709250, at *4 (N.D. Ill., Dec 1, 2021) | $169,601,600 | 33⅓% |
| Standard Iron Works v. ArcelorMittal, No. 08-cv-5214, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) | $163,900,000 | 33% |
| City of Greenville v. Syngenta Crop Prot., Inc., 904 F. Supp. 2d 902, 908-09 (S.D. Ill. Oct 23, 2012) | $105,000,000 | 33⅓% |
| in re TikTok, Inc., Consumer Privacy Litigation, No. 20-cv-04699, 617 F.Supp.3d 904, 28-37 (N.D. Ill. July 28, 2022) | $92,000,000 | 33⅓% |
| In re Plasma-Derivative Protein Therapies Antitrust Litig., No. 09-cv-7666, ECF No. 693 at 7 (N.D. Ill. Jan. 22, 2014) | $64,000,000 | 33⅓% |
| Abbott v. Lockheed Martin Corp., 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) | $62,000,000 | 33% |
| Spano v. Boeing Co., No. 06-cv-0743, 2016 WL 3791123, at *2 (S.D. Ill. March 31, 2016) | $57,000,000 | 33⅓% |
| In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig., 80 F. Supp. 3d 838, at 862 (N.D. Ill. Feb 20, 2015) | $46,000,000 | 33⅓% |
| Mansfield v. Air Line Pilots Ass'n Intl'l, No. 06-cv-6869, ECF No. 373 (N.D. Ill. Dec. 14, 2009) | $44,000,000 | 35% |
| Gehrich v. Chase Bank, USA, N.A., No. 12-cv-5510, ECF No. 117 (N.D. Ill. Aug. 12, 2014) | $33,000,000 | 33.33% |
| In re Steel Antitrust Litig., No. 08-cv-05214, ECF No. 680 (N.D. Ill. Feb. 16, 2017) | $30,000,000 | 33% |
| Perry v. Nat'l City Bank, No. 05-cv-0891, ECF No. 81 at 2 (S.D.Ill. Mar. 3, 2008) | $27,500,000 | 33% |
| Kaufman v. Motorola, Inc., No. 95-CV-1069, ECF No. 355 (N.D. Ill. May 24, 2001) | $25,000,000 | 33⅓% |
| In re Potash Antitrust Litig., No. 08-CV-6910, ECF No. 589 at 2 (N.D. Ill. June 12, 2013) | $20,250,000 | 33⅓% |
| Martin v. Caterpillar Inc., No. 07-cv-1009, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) | $16,500,000 | 33⅓% |
| Will v. General Dynamics Corporation, No. 06-cv-0698, 2010 WL 4818174, at *4 (S.D. Ill. Nov 22, 2010) | $15,150,000 | 33⅓% |
| Desai v. ADT Sec. Servs., Inc., No. 11-cv-1925, ECF No. 243 (N.D. Ill. June 21, 2013) | $15,000,000 | 33.33% |
| Boutchard, et al. v. Gandhi, No. 18-cv-07041, ECF No. 154 (N.D. Ill. July 30, 2021) | $15,000,000 | 33% |
| Borders v. Wal-Mart Stores, Inc., No. 17-cv-00506, ECF No. 150 at 3-4 (S.D. Ill. Apr. 29, 2020) | $14,000,000 | 33⅓% |
| Kolinek v. Walgreen Co., 311 F.R.D. 483, 58-59 (N.D. Ill. Nov 23, 2015) | $11,000,000 | 36% |
| Abante Rooter and Plumbing, Inc. v. Oh Ins. Agency, 2019 WL 10248700, at *4 (N.D. Ill. Dec. 10, 2019) | $10,500,000 | 33⅓% |
| Meyenburg v. Exxon Mobil Corp., No. 05-cv-00015, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) | $10,000,000 | 40% |
| Crumpton v. Octapharma Plasma, Inc., No. 19-cv-8402, ECF No. 92 at 16 (N.D. Ill. Feb 16, 2022) | $9,987,380 | 33.3% |
| Weiner v. Quaker Oats Co., No. 98 C 3123, ECF No. 134  (N.D. Ill. Sept. 14, 2001) | $9,900,000 | 33⅓% |
| Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc., No. 12-cv-3297, ECF No. 130 (N.D. Ill. Jul 22, 2015) | $9,750,000 | 33% |
| George v. Kraft Foods Global, Inc., No. 08-cv-3799, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) | $9,500,000 | 33⅓% |
| Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 601 (N.D. Ill. July 29, 2011) | $9,500,000 | 33⅓% |
| Charvat v. Valente, No. 12-cv-5746, 2019 WL 5576932, at *13 (N.D. Ill. Oct 28, 2019) | $9,267,452 | 33.99% |
| Cummings v. Sallie Mae, 12-C-9984, ECF No. 91 (N.D. Ill. May 30, 2014) | $9,250,000 | 33% |
| Gupta v. Power Sols. Int'l, Inc., No. 16-cv-8253, 2019 WL 2135914, at *1 (N.D. Ill. May 13, 2019) | $8,500,000 | 33⅓% |
| In re Guidant Corp. ERISA Litig., No. 05-cv-1009, ECF No. 194 at 2 (S.D. Ind. Sept. 10, 2010) | $7,000,000 | 38% |
| Briggs v. PNC Financial Services Group, Inc., No. 15-cv-10447, 2016 WL 7018566, at *15 (N.D. Ill. Nov. 29, 2016) | $6,000,000 | 33⅓% |
| Hinman v. M&M Rental Ctr., Inc., No. 06-cv-1156, ECF No. 225 (N.D. Ill. Oct. 6, 2009) | $5,817,150 | 33.33% |
| Coleman v. Sentry Insurance a Mutual Company, No. 15-cv-1411, 2016 WL 6277593, at *2 (S.D. Ill. Oct. 27, 2016) | $5,718,825 | 33⅓% |
| In re Ready–Mixed Concrete Antitrust Litig., No. 05-cv-0979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) | $5,515,000 | 33⅓% |

| Case | Settlement Amount | Fee Award |
|------|------------------|-----------|
| Martin v. Dun & Bradstreet, Inc. et al, No. 12-cv-0215, ECF No. 63 (N.D. Ill. Jan. 16, 2014) | $4,900,000 | 33.33% |
| Goldsmith v. Tech. Sols. Co., No. 92-c-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 11, 1995) | $4,600,000 | 33⅓% |
| Thome v. NOVAtime Tech, Inc., No. 19-cv-6256, ECF No. 90 at 21 (N.D. Ill. Mar. 8, 2021) | $4,100,000 | 33.3% |
| Brasher v. Broadwind Energy, Inc., No. 11-cv-0991, ECF No. 141 at *4 (N.D. Ill. Jun 27, 2013) | $3,915,000 | 33% |
| Conlee v. WMS Industries Inc., No. 11-cv-3503, ECF No. 118 at *4 (N.D. Ill. May 20, 2014) | $3,700,000 | 33% |
| Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc., No. 11-cv-0592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013) | $3,500,000 | 33⅓% |
| Kitson v. Bank of Edwardsville, No. 08-cv-507, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) | $3,415,000 | 33⅓% |
| Brewer v. Molina Healthcare, Inc., No. 16-cv-9523, 2018 WL 2966956, at *3 (N.D. Ill. Jun 12, 2018) | $3,375,520 | 33⅓% |
| Beezley v. Fenix Parts, Inc., No. 17-cv-7896, 2020 WL 4593823 (N.D. Ill. Aug 7, 2020) | $3,300,000 | 33⅓% |
| Castillo v. Noodles & Company, No. 16-cv-3036, 2016 WL 7451626 at *4 (N.D. Ill., Dec 23, 2016) | $3,000,000 | 33⅓% |
| Porter v. Pipefitters Ass'n Local Union 597, No. 12 C 9844, Dkt. 254 at 10; Dkt. 259 at 3-4 (N.D. Ill. Nov. 24, 2020 & Feb. 8, 2021) | $3,000,000 | 33⅓% |
| Koszyk v. Country Financial aka CC Services, Inc., No. 16-cv-3571, 2016 WL 5109196 at *2 (N.D. Ill. Jun 12, 2018) | $2,825,000 | 33⅓% |
| Burlinski v. Top Golf USA Inc., No. 19-cv-6700, ECF No. 103 at 8 (N.D. Ill. Oct. 13, 2021) | $2,596,034 | 33.33% |
| Firerock Global Opportunity Fund LP v. Rubicon Technology, Inc., No. 15-cv-03813, ECF No. 87 (N.D. Ill.  May 20, 2016) | $2,500,000 | 33% |
| Paldo Sign and Display Company v. Topsail Sportswear, Inc., No. 08-cv-05959, ECF No. 116 (N.D. Ill. Dec. 21, 2011) | $2,000,000 | 33.33% |
| In re Great Lakes Dredge & Dock, No. 13-cv-02115, ECF No. 78 at 6  (N.D. Ill. Sep. 17, 2015) | $1,955,000 | 33.33% |
| Martinez v. Nando's Rest. Grp.,Inc., No. 19-cv-7012, ECF No. 63 at 17  (N.D. Ill. Oct. 27, 2020) | $1,787,000 | 33.33% |
| Kelly v. Bluegreen Corp., No. 08-cv-0401, ECF No. 151 at 4 (W.D. Wis. Oct. 30, 2009) | $1,530,000 | 33⅓% |
| In re Acura Pharms., Inc. Sec. Litig., No. 10-cv-5757, ECF No. 102 at 5  (N.D. Ill. Mar. 14, 2012) | $1,500,000 | 33⅓% |
| Dixon v. Washington & Jane Smith Cmty.-Beverly, No. 17-cv-8033, ECF No. 103 at 1 (N.D. Ill. Aug 20, 2019) | $1,356,000 | 33.3% |
| In re Lithotripsy Antitrust Litig., No. 98-c-8394, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) | $1,300,000 | 33⅓% |
| Wolfe v. TCC Wireless, LLC, No. 16-cv-11663, 2018 WL 11215318 at *3 | $1,150,000 | 33⅓% |
| Bryant v. Loews Chicago Hotel, Inc., No. 19-cv-3195, ECF No. 77 at 1  (N.D. Ill. Oct. 30, 2020) | $1,036,396 | 33.3% |
| Pavlik v. FDIC, No. 10-cv-0816, 2011 WL 5184445, at *4 (N.D. Ill. Nov. 1, 2011) | $1,026,829 | 33⅓% |

| Select Ninth Circuit Cases with 33% or Above Fee Awards | | |
|---|---|---|
| Case | Settlement Amount | Fee Award |
| Perez v. Rash Curtis & Assocs., No. 16-cv-03396, 2020 WL 1904533 at *15 (N.D. Cal. Apr. 17, 2020) | $267,000,000 | 33⅓% |
| In re Apollo Grp. Inc. Sec. Litig., No. 04-cv-02147, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) | $145,000,000 | 33.33% |
| In re Lidoderm Antitrust Litig., No. 14-md-02521, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) | $104,750,000 | 33⅓% |
| Meijer, Inc. v. Abbott Labs., No. 07-cv-05985, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) | $52,000,000 | 33.33% |
| Beaver v. Tarsadia Hotels, No. 11-cv-01842, 2017 WL 4310707 at *12, (S.D. Cal. Sept. 28, 2017) | $51,150,000 | 33⅓% |
| Hageman v. AT&T Mobility LLC, No. 13-cv-00050, 2015 WL 9855925, at *4 (D. Mon. Feb. 11, 2015) | $45,000,000 | 33⅓% |
| Carlin v. DairyAmerica, Inc., 380 F.Supp.3d 998, at *1023 (E.D. Cal. 2019) | $40,000,000 | 33.30% |
| Thomas & Thomas Rodmakers Inc. v. Newport Adhesives and Composites, Inc., No. 99-cv-07796, ECF No. 802, (C.D. Cal. Oct. 18, 2005) | $36,250,000 | 33.00% |
| In re Public Service Co., No. 91-cv-00536, 1992 U.S. Dist. LEXIS 16326, at *9 (S.D. Cal. July 28, 1992) | $33,000,000 | 33.00% |
| Bickley v. Schneider Nat'l Carriers, Inc., No. 08-cv-05806, 2016 WL 6910261, at *3-4 (N.D. Cal. Oct. 13, 2016) | $28,000,000 | 33⅓% |
| In re Heritage Bond Litig., No. 02-ml-1475, 2005 WL 1594403, at *23 (C.D. Cal. Jun. 10, 2005) | $27,783,000 | 33.33% |
| Wren v. RGIS Inventory Specialists, No. 06-cv-05778, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) | $27,000,000 | 42.00% |
| In re Tezos Sec. Litig., No. 17-cv-06779, ECF No. 262 (N.D. Cal. Aug 28, 2020) | $25,000,000 | 33.33% |
| Dakota Medical, Inc. v. RehabCare Grp., Inc., No. 14-cv-02081, 2017 WL 4180497, at *9-10 (E.D. Cal. Sept. 21, 2017) | $25,000,000 | 33⅓% |
| NECA-IBEW Pension Trust Fund v. Precision Castparts Corp., No. 16-cv-01756, ECF No. 169 (D. Or. May 7, 2021) | $21,000,000 | 33.30% |
| Abdullah v. U.S. Security Associates, Inc., No. 09-cv-09554, 2017 WL 11630767 (C.D. Cal. Dec 4, 2017) | $20,613,339 | 33⅓% |
| Alvarez v. XPO Logistics Cartage, LLC ,No. 18-cv-03736, ECF No. 584, (Feb. 17, 2022) | $20,000,000 | 33.33% |
| In re Banc of Cal. Sec. Litig., No. 17-cv-00118, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) | $19,750,000 | 33.00% |
| Waldbuesser v. Northrop Grumman Corp., No. 06-cv-06213, 2017 WL 9614818, at *3 (C.D. Cal. Oct 24, 2017) | $16,750,000 | 33⅓% |
| Morris v. Lifescan, Inc., 54 Fed. App'x 663, 664 (9th Cir. 2003) | $14,800,000 | 33.00% |
| In re Allied Nevada Gold Corp. Sec. Litig., No. 14-cv-00175, ECF No. 215 (D. Nev. Nov. 16, 2020) | $14,000,000 | 33⅓% |
| Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc., No. 13-cv-04460, ECF No. 349, (C.D. Cal. June 30, 2016) | $14,000,000 | 33.00% |
| Tawfilis v. Allergan, Inc., No. 15-cv-00307, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) | $13,450,000 | 33⅓% |
| Kendall v. Odonate Therapeutics, Inc., No. 20-cv-01828, 2022 WL 1997530, at *6-7 (S.D. Cal. June 6, 2022) | $12,750,000 | 33⅓% |
| Marshall v. Northrop Grumman Corp., No. 16-cv-06794, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) | $12,375,000 | 33⅓% |
| In re Pacific Enters. Sec. Litig., 47 F.3d at 373 at *10 (9th Cir. 1995) | $12,000,000 | 33.00% |
| Singh v. Roadrunner Intermodal Servs., LLC, No. 15-cv-01497, 2019 WL 316814 at *9 (E.D. Cal. Jan. 24, 2019) | $9,250,000 | 33⅓% |
| Jenson v. First Tr. Corp., No. CV 05-03124, 2008 WL 11338161 (C.D. Cal. Jun. 9, 2008) | $8,500,000 | 33⅓% |
| Fernandez v. Victoria Secret Stores, LLC, No. 06-cv-04149, 2008 WL 8150856, at *16 (C.D. Cal. Jul. 21, 2008) | $8,500,000 | 34.00% |
| Vigueras v. Red Robin Inter'l, Inc., No. 17-cv-01422, ECF No. 182 (C.D. Cal. Dec. 2, 2020) | $8,500,000 | 33.33% |
| Azar v. Yelp, Inc. et al., No. 18-cv-00400, ECF No. 202 (N.D. Cal. Jan 27, 2023) | $22,250,000 | 33.3% |
| Jones v. CertifiedSafety, Inc., No. 17-cv-02229, ECF No. 232 (N.D. Cal. Jun. 1, 2020) | $6,000,000 | 33.33% |
| Linney v. Cellular Alaska P'ship, No. 96-cv-03008, 1997 WL 450064, at *7 (N.D. Cal. July 18, | $6,000,000 | 33⅓% |
| Boyd v. Bank of Am. Corp., No. 13-cv-00561, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) | $5,800,000 | 33⅓% |

| Case | Settlement Amount | Fee Award |
|---|---|---|
| In re First Regional Bancorp Sec. Litig., No. 10-cv-00537, ECF No. 4964 (C.D. Cal. July 21, 2014) | $5,500,000 | 33.30% |
| In re Interlink Elec., Inc. Sec. Litig., No. 05-cv-08133, ECF No. 165 (C.D. Cal. June 1, 2009) | $5,000,000 | 33⅓% |
| Berry v. Urban Outfitters Wholesale, Inc., No. 13-cv-02628, ECF No. 114 (N.D. Cal. Apr. 7, 2016) | $5,000,000 | 33.33% |
| In re Orexigen Therapeutics, Inc. Sec. Litig., No. 15-cv-00540, ECF No. 155 (S.D. Cal. Nov. 30, 2021) | $4,800,000 | 33.00% |
| Hodges v. Akeena Solar, Inc., No. 09-cv-02147, ECF No. 167 (N.D. Cal. Dec. 15, 2011) | $4,770,000 | 33⅓% |
| Aguilar v. Wawona Frozen Foods, No. 15-cv-00093, 2017 WL 2214936 (E.D. Cal. May 19, 2017) | $4,500,000 | 33⅓% |
| West v. Cal. Serv. Bureau, Inc., No. 16-cv-03124, ECF No. 128 (N.D. Cal. Jan. 23, 2019) | $4,100,000 | 33.33% |
| Larson v. Harman-Mgmt. Corp., No. 16-cv-00219, 2020 WL 3402406 at *8 (E.D. Cal. June 19, 2020) | $4,000,000 | 33⅓% |
| In re K12 Inc. Sec. Litig., No. 16-cv-04069, ECF No. 120 (N.D. Cal. July 10, 2019) | $3,500,000 | 33.00% |
| Cook v. Atossa Genetics, Inc., No. 13-cv-01836, ECF No. 98 (W.D. Wash. July 20, 2018) | $3,500,000 | 33.00% |
| Mathein v. Pier 1 Imports (U.S.), Inc., No. 16-cv-00087, 2018 WL 1993727 (E.D. Cal. Apr 27, 2018) | $3,500,000 | 33⅓% |
| In re K12 Inc. Sec. Litig., No. 16-cv-04069, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) | $3,500,000 | 33.00% |
| Wise v. Ultra Salon, Cosmetics & Fragrance, Inc., No. 17-cv-00853, 2020 WL 1492672 (E.D. Cal. Mar. 27, 2020) | $3,500,000 | 33⅓% |
| Vandervort v. Balboa Cap. Corp., 8 F.Supp.3d 1200, 1210 (C.D. Cal. Mar. 27, 2014) | $3,300,000 | 33.00% |
| Gonzalez v. CoreCivic of Tenn., LLC, No. 16-cv-01891, 2020 WL 1475991 at *10 (E.D. Cal. Mar. 26, 2020) | $3,200,000 | 33⅓% |
| Antonopulos v. N. Am. Thoroughbreds. Inc., No. 87-cv-00979, 1991 WL 427893, at *4, (S.D. Cal. May 6, 1991) | $3,098,000 | 33⅓% |
| In re Mikohn Gaming Corp. Sec. Litig., No. 05-cv-1410, ECF No. 96, (D. Nev. June 6, 2007) | $2,800,000 | 33.33% |
| In re Resonant Inc. Sec. Litig., No. 15-cv-01970, ECF No. 154 (C.D. Cal. Nov. 20, 2017) | $2,750,000 | 33.00% |
| In re 2TheMart.com, Inc. Sec. Litig., No. 99-cv-1127, ECF No. 161 (C.D. Cal. July 8, 2002) | $2,700,000 | 33⅓% |
| Elliot v. China Green Agric. Inc., No. 10-cv-00648, ECF No. 166 (D. Nev. Aug. 12, 2014) | $2,500,000 | 33⅓% |
| In re Merix Corp. Sec. Litig., No. 04-cv-00826, ECF No. 236 (D. Or. Jan. 3, 2011) | $2,500,000 | 33.33% |
| Brulee v. DAL Global Servs., LLC, No. 17-cv-06433, ECF No. 51 (C.D. Cal. Dec 13, 2018) | $2,500,000 | 33.33% |
| Emmons v. Quest Diagnostics Clinical Labs., Inc., No. 13-cv-00474, 2017 WL 749018 (E.D. Cal. Feb. 27, 2017) | $2,350,000 | 33⅓% |
| Cheng Jiangchen v. Rentech, Inc., No. 17-cv-01490, 2019 WL 5173771, at *9 (C.D. Cal. Oct 10, 2019) | $2,050,000 | 33⅓% |
| Yaron v. Intersect ENT, Inc., No. 19-cv-02647, ECF No. 80 (N.D. Cal. Nov. 5, 2021) | $1,900,000 | 33⅓% |
| Likas v. ChinaCache Int'l Holdings Ltd., No. 19-cv-06942, ECF No. 95 (C.D. Cal. Mar. 14, 2022) | $1,800,000 | 33.30% |
| In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) | $1,725,000 | 33⅓% |
| In re AudioEye, Inc. Sec. Litig., No. 15-cv-00163, ECF No. 100 (D. Ariz. May 8, 2017) | $1,525,000 | 33.33% |