# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| CANDIDO RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-24232-KMW |
| Plaintiff, | |
| v. | |
| ALFI, INC., PAUL ANTONIO PEREIRA, DENNIS MCINTOSH, JOHN M. COOK, II, PETER BORDES, JIM LEE, JUSTIN ELKOURI, ALLISON FICKEN, FRANK SMITH, AND RICHARD MOWSER, KINGS WOOD CAPITAL MARKETS, REVERE SECURITIES LLC, AND WESTPARK CAPITAL, INC., | |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER, AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.     BACKGROUND ........................................................................................................... 1

II.    CLAIMS ADMINISTRATION ................................................................................... 3

III.   LATE BUT OTHERWISE ELIGIBLE CLAIMS ................................................. 5

IV.   DISTRIBUTION OF NET SETTLEMENT FUND ............................................. 6

V.    RELEASE OF CLAIMS ............................................................................................ 8

VI.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES ................................................................................................ 9

VII.  RECORDS RETENTION AND DESTRUCTION ............................................. 9

VIII. CONCLUSION ...................................................................................................... 10

**TABLE OF AUTHORITIES**

CASES

*Hartman v. Powell*,
2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................. 6

*In re "Agent Orange" Prod. Liab. Litig.*,
689 F. Supp. 1250 (E.D.N.Y. 1988) ............................................................................. 5

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ............................................................... 6

*In re Friedman's, Inc. Sec. Litig.*,
2009 WL 10671836 (N.D. Ga. July 23, 2009)............................................................... 9

*In re Gypsum Antitrust Cases*,
565 F. 2d 1123 (9th Cir. 1977) .............................................................................. 5, 6

*In re Miva, Inc.*,
2015 WL 12834962 (M.D. Fla. Sept. 23, 2015) ........................................................... 9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F. 3d 315 (3d Cir. 2001)........................................................................................ 5

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2025 WL 924928 (C.D. Cal. Mar. 24, 2025).................................................... 5, 7, 9

*In re Toyota Motor Corp. Sec. Litig.*,
2014 WL 12586787 (C.D. Cal. Aug. 4, 2014)............................................................... 5

*Nacif v. Athira Pharma, Inc.*,
2024 WL 4654238 (W.D. Wash. Nov. 1, 2024) ........................................................... 8

*Wilson v. LSB Indus., Inc.*,
2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020)............................................................. 9

Court-appointed Lead Plaintiff Candido Rodriguez and additional plaintiffs John K. Allen, on behalf of the Joseph M. Driscoll Trust, and Alexander C. Takian (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this unopposed motion and memorandum of law in support of their unopposed motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Craig Declaration.  *See* Craig Decl. ¶¶21(a)-(e).

## I.  BACKGROUND

On July 20, 2023, the Parties entered into the Stipulation, the terms of which established a $1,725,000 Settlement Fund for the benefit of the Settlement Class.  Subject to certain exclusions, the Settlement Class consists of all Persons and entities who or which purchased or otherwise acquired the common stock and/or warrants of Alfi, Inc. (collectively, "Alfi Securities"): (i) pursuant and/or traceable to the Registration Statement issued in connection with the Alfi's IPO on or about May 4, 2021 (*i.e.*, from May 4, 2021 through October 29, 2021, inclusive), and/or (ii) during the period from May 4, 2021 and March 11, 2022, inclusive, and were damaged thereby.

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation and Agreement of Settlement dated July 20, 2023 (the "Stipulation") (ECF No. 122-1), or in the concurrently filed Declaration of Margery Craig Concerning the Results of the Claims Administration Process ("Craig Decl." or "Craig Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("Claims Administrator").

The Court granted preliminary approval of the Settlement on October 31, 2023.  ECF No. 127 (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, the Claims Administrator: (i) either mailed a Postcard Notice or sent an email containing a link to the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and Claim Form to 103,940 potential Settlement Class Members; (ii) published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service); (c) established a case-specific webpage dedicated to the Settlement (www.strategicclaims.net/Alfi/ ("Settlement Website")), and set up a toll-free telephone helpline.  *See* Craig Decl. ¶¶5-7.  The Settlement Website provided Settlement Class Members with information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims.  ECF No. 135-1, ¶6.  It also provided Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form.  *See id.*, *see also* Settlement Website.

On March 11, 2024, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate.  ECF No. 139.  That same day, the Court entered an order approving the Plan of Allocation, which was explained in the Notice posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund.  ECF No. 141.

Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.     CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than March 29, 2024.  *See* ECF No. 132, Exs. 1-B (Postcard Notice) & 1-D (Notice) at p. 3.  The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant of the actions necessary to cure the deficiency.  Craig Decl., ¶¶9-15, 19.

Of the 16,803 Claims submitted to and fully processed by the Claims Administrator, 57 were paper submissions, and 696 were online submissions through the online filing portal on the Settlement Website.  *Id.*, ¶13.  The remaining 16,050 Claims were filed electronically ("Electronic Claims").  *Id.*  Electronic Claims are typically filed by banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers").  *Id*., ¶13 & n.5.  Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry.  *Id*. This process is designed to expedite the claims process.  *See id.*

If a paper, online or Electronic Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit A to the Craig Declaration.  *Id.*, ¶12 & Ex. A.  The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection.  *Id.*, ¶12.  Of the 753 paper and

3

online Claims, the Claims Administrator sent Deficiency Notices for 93 Claims (or approximately 12.35%).  *Id*., ¶13.[2]

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.  *Id*., ¶¶12-15, 19(b).  Ultimately, as detailed in the Craig Declaration, after the deficiency process was complete, the Claims Administrator determined that 2,822 Claims are acceptable and should receive a distribution.  *Id*., ¶19(a).  This number includes 2,789 timely and valid claims, and 33 Late But Otherwise Eligible Claims (addressed in Section III below).  *Id*., ¶19(a) & Exs. C-1 & C-2.

The Claims Administrator also determined that 52 Claims were ineligible due to inadequate documentation (*see id*., at ¶19(b) & Ex. D), and 13,929 Claims are not eligible and should be rejected for the following reasons: (i) 13,783 Claims had no Recognized Loss under the Plan of Allocation; (ii) 51 Claims involved Alfi Securities that were received or granted by gift, inheritance, or operation of law, but the original purchase information for the securities was not provided; (iii) 43 Claims involved Alfi Securities that were sold short; (iv) 33 Claims involved Alfi Securities that were purchased outside of Settlement Class Period and/or not traceable to the Registration Statement issued in connection with Alfi's May 4, 2021 initial public offering; (v) 12 Claims were duplicates; (vi) 4 Claims were filed for securities other than Alfi Securities; and (vii) 3 claims filed by excluded parties as defined in the Stipulation.  *See Id*., ¶¶19(c) & Ex. E; *see also* ECF No. 139, ¶5 (setting forth excluded persons and entities).

---

[2] Of the 16,050 Electronic Claims, none were incomplete or had defects or conditions of ineligibility.  *Id*. at ¶13.

### III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the March 29, 2024, claim filing deadline.  *Id.* at n.3.  "There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place."  *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at *3 (C.D. Cal. Mar. 24, 2025) (citing *See In re Gypsum Antitrust Cases,* 565 F. 2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted)); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F. 3d 315, 329 (3d Cir. 2001).  Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Craig Decl., ¶¶3 & n.3, 13 & n.4. Accordingly, the Claims Administrator imposed a cut-off date of January 14, 2025.  *Id.*, ¶¶19(a) & 21(e).

Of the 2,822 properly documented valid Claims, 33 were received or postmarked after the Court-approved claims filing deadline of March 29, 2024, but before the Claim's Administrator's imposed cut-off date of January 14, 2025 ("Late But Otherwise Valid Claims").  Craig Decl., ¶19(a) & Ex. C-2.  These 33 Late But Otherwise Eligible Claims have been recommended for payment.  *Id.*  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed.  *See In re Gypsum*, 565 F. 2d at 1128 (district court has discretion to grant late claims); *In re Stable Road*, 2025 WL 924928, at *3 (accepting "Late but Otherwise Eligible Claims"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (same); *see also In re "Agent Orange" Prod. Liab.*

*Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court allowed qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small.  No significant administrative costs need be incurred to allow the late claims and opt-out claims").  Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan.  *See* Craig Decl., ¶19(a) & Ex. C-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no new Proofs of Claim may be accepted after January 14, 2025, and no further adjustments to submitted Proofs of Claim may be made for any reason after February 3, 2025.  *See* Craig Decl., ¶¶20, 21(e).  "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F. 2d at 1127).

## IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution").  *See* Craig Decl., ¶¶21(a)(i)-(vi).  Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly.  To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses

relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE."  *Id*., ¶21(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution.  However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so.  *Id*., ¶21(b).  During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution.  *Id*.  Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible.  *Id*., ¶21(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to "the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy."  *In re Stable Road*, 2025 WL 924928, at \*4; *see also* Craig Decl., ¶21(d); Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10 & ¶¶11-12 (listing securities cases in which the Public Justice Foundation received court approval as

the *cy pres* beneficiary); *Nacif v. Athira Pharma, Inc.*, 2024 WL 4654238, at \*9 (W.D. Wash. Nov. 1, 2024) (designating the Public Justice Foundation as the *cy pres* recipient in a securities class action).

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

8

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g.*, *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Miva, Inc.*, 2015 WL 12834962, at *2 (M.D. Fla. Sept. 23, 2015); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at *2 (N.D. Ga. July 23, 2009); *In re Stable Road*, 2025 WL 924928, at *4.

## VI.     THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the administration of the Settlement incurred and paid through December 27, 2024, totals $190,766.44. Craig Decl., ¶24. The estimate to conduct the Initial Distribution and 2025 tax work, which will be reserved prior to the Initial Distribution, is $7,700. *Id*. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $7,770.[3] *Id.*

## VII.    RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that: (i) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy paper

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund. Craig Decl., ¶24.

9

copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶22.

## VIII.   CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Motion be granted.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Plaintiffs' Counsel has conferred with Defendants' Counsel regarding the requested relief, and Defendants do not oppose Plaintiffs' motion.

Dated:  May 1, 2025

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Adam D. Warden*
Joseph E. White, III (FL Bar No. 621064)
Adam D. Warden (FL Bar No. 873691)
Jonathan D. Lamet (FL Bar No. 106059)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
jwhite@saxenawhite.com
awarden@saxenawhite.com
jlamet@saxenawhite.com

*Local Counsel for Lead Plaintiff and*
*Local Counsel for the Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Joseph D. Cohen (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcohen@glancylaw.com
lsolish@glancylaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Settlement Class*

10

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq., Fla. Bar No. 0182877
Phillip Kim, Esq. (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
lrosen@rosenlegal.com
pkim@rosenlegal.com
skim@rosenlegal.com

*Counsel for Plaintiff John K. Allen,*
*on behalf of the Joseph M. Driscoll Trust and*
*Plaintiff Alexander C. Takian*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel for Lead Plaintiff*

11

## **CERTIFICATE OF SERVICE**

The undersigned counsel for Plaintiffs hereby certifies that on May 1, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of all counsel of record in this matter.

Dated:  May 1, 2025

*/s/ Adam D. Warden*
Adam D. Warden